UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LARRY FREUDENBERG, Individually and on Behalf of All Others Similarly Situated, <br><br>  Plaintiff, <br><br> vs. <br><br> E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN and ROBERT J. SIMMONS <br><br>  Defendants. | Civil No. 1:07-CV-08538-RWS <br><br> CLASS ACTION <br><br> ELECTRONICALLY FILED |

**MEMORANDUM OF LAW IN SUPPORT OF SKANDIA LIFE INSURANCE COMPANY LTD.'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF COUNSEL**

| | |
|---|---|
| WILLIAM BOSTON, Individually and on Behalf of All Others Similarly Situated, <br><br>                Plaintiff,<br><br>-against-<br><br>E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN and ROBERT J. SIMMONS,<br><br>                Defendants. | Civil No. 1:07-CV-8808-RWS<br><br><u>CLASS ACTION</u> |
| ROBERT D. THULMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>-against-<br><br>E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN and ROBERT J. SIMMONS,<br><br>                Defendants. | Civil No. 1:07-9651-RWS<br><br><u>CLASS ACTION</u> |
| WENDY M. DAVIDSON, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>-against-<br><br>E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN and ROBERT J. SIMMONS,<br><br>                Defendants. | Civil No. 1:07-CV-10400-UA<br><br><u>CLASS ACTION</u> |

740294.1

**TABLE OF CONTENTS**

INTRODUCTION………………………………………………………………………………...1

FACTUAL BACKGROUND……………………………………………………………………..2

PROCEDURAL BACKGROUND………………………………………………………………..4

ARGUMENT……………………………………………………………………………………...4

     I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED………………..…4

     II.     SKANDIA SHOULD BE APPOINTED LEAD PLAINTIFF…………………....5

          A.     The Legal Requirements Under The PSLRA……………………………..5

          B.     Skandia Satisfies The Lead Plaintiff Requirements Of The
Exchange Act………………………………………………………………...5

               1.     Skandia Has Complied With the Exchange Act and Should
Be Appointed Lead Plaintiff………………………………………....5

               2.     Skandia Is Precisely the Type of Lead Plaintiff Congress
Envisioned When It Passed the PSLRA……………………….……6

               3.     Skandia Has the Requisite Financial Interest in the Relief
Sought by the Class……………………………………………..…8

               4.     Skandia Otherwise Satisfies the Requirements of Rule 23……..…9

     III.     THE COURT SHOULD APPROVE SKANDIA'S CHOICE OF COUNSEL….11

CONCLUSION…………………………………………………………………………………..12

## INTRODUCTION

Pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, Skandia Life Insurance Company Ltd. ("Skandia") respectfully moves this Court for an order consolidating these related actions,[1] appointing Skandia as the Lead Plaintiff on behalf of all persons[2] who purchased the common stock of E*TRADE Financial Corporation (E*TRADE" or the "Company") between December 14, 2006 and November 11, 2007, inclusive (the "Class Period"),[3] and for approval and appointment of its selection of Motley Rice LLC ("Motley Rice") as Lead Counsel and Lieff, Cabraser, Heimann & Bernstein, LLP as Liaison Counsel.

For the reasons set forth below, Skandia is the most adequate plaintiff, and hence the presumptive lead plaintiff, in this proceeding. Skandia is a large institutional investor, accustomed to acting as a fiduciary. As its duly executed certification shows, Skandia purchased 700,042 shares of E*TRADE common stock on the NASDAQ exchange during the Class Period. Declaration of James M. Hughes ("Hughes Decl."), Ex. A. Attached as Exhibit C to the Hughes Declaration is Skandia's loss chart, showing that it had net expenditures of $10,244,730 during

---

[1] Four actions (the "Actions") are pending in this Court against E*TRADE Financial Corporation and certain of its officers and directors for violations of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5, 17 C.F.R. § 240.10b-5. The four Actions are Freudenberg v. E*Trade Financial Corp., No. 07-cv-8538-RWS (S.D.N.Y. filed Oct. 2, 2007); Boston v. E*Trade Financial Corp., No. 07-cv-8808-RWS (S.D.N.Y. filed Oct. 12, 2007); Thulman v. E*Trade Financial Corp., No. 07-cv-9651-RWS (S.D.N.Y. filed Oct. 30, 2007); and Davidson v. E*Trade Financial Corp., No. 07-cv-10400-UA (S.D.N.Y. filed Nov. 16, 2007). No motion for consolidation has previously been made. The Davidson Complaint alleges a Class Period from December 14, 2006 through November 11, 2007, inclusive; the other three Complaints allege a Class Period from December 14, 2006 through September 25, 2007, inclusive.

[2] The Class excludes Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

[3] Skandia has used the longest class period alleged for purposes of its Motion. See In re Party City Sec. Litig., 189 F.R.D. 91, 94 n.3 (D.N.J. 1999) (relying on the longest class period alleged in the class actions filed against the defendants).

1

the Class Period and losses of $9,111,370.[4]  As a sophisticated institutional investor, Skandia is ideally suited to serve as the lead plaintiff in this action.  Skandia should be appointed lead plaintiff and its proposed Lead and Liaison Counsel should be approved.

## FACTUAL BACKGROUND[5]

E*TRADE, through its subsidiaries, offers financial services to retail and institutional customers worldwide, including retail investments and trading, checking, money market and savings accounts.  In 2003, the Company began to transition into more than just an online broker by purchasing mortgages, home-equity loans, and other mortgage-related assets.  Shortly thereafter, the Company began originating its own loans.

On December 14, 2006 – the beginning of the Class Period – E*TRADE held a conference call with analysts and investors in which Defendant Caplan stated that "the annual guidance we establish today reflects revenue growth of 14% to 24% from the low to high end of the range, GAAP EPS growth of 15% to 26%, with an annual operating margin of 47%.  Most importantly, we expect to deliver these strong results even as we make additional investments in marketing and service."  On April 18, 2007, in another conference call, Defendant Caplan recognized that "we are operating in a changing credit environment" but that "with respect to subprime loans, based on the standard industry definition of borrowers with FICO scores of 620 or below, we hold approximately $50 million of balances, or less than on-fifth of 1% of our $29 billion whole loan portfolio, a de minimis amount."  In response to these statements, the next

---

[4] The loss is calculated using the "first in-first out" (FIFO) method.  Under the "last in-first out" (LIFO) method, Skandia still suffered a loss of $8,712,005.

[5] This factual summary is based on the Complaint filed in <u>Davidson v. E*TRADE Financial Corp.</u>, No. 1:07-cv-10400-US (S.D.N.Y. filed Nov. 16, 2007).

2

trading day the Company's shares fell $1.04 per share, or 4.7%, to close on April 19, 2007 at $21.09 per share, on heavy trading volume.

On July 25, 2007, the Company changed its earnings guidance from $1.55-$1.75 per share to $1.53-$1.67 per share. On this news, E*TRADE shares fell $1.41 per share, or almost 7%, to close on July 26, 2007 at $19.05 per share on heavy trading volume. The Wall Street Journal published an article entitled "MarketWatch Weekend Investor: E*Trade Financial: An Online Broker in the Clothing of a Mortgage REIT?" on August 11, 2007, highlighting possible problems with E*TRADE's position in mortgages. Over the next three trading days, E*TRADE shares fell $3.10 per share, or over 18.2%, to close on August 15, 2007 at $13.91 per share, on heavy trading volume.

On September 17, 2007, E*TRADE shocked analysts and investors with its announcement that "[t]he Company is exiting or restructuring non-core businesses that lack a direct strategic connection with its retail customers" and "is increasing the provision for loan losses due to charge-offs expected as a result of the disturbance in the credit markets." The Company also announced it was exiting its wholesale mortgage operations, and that it was revising it earnings guidance downward to $1.05-$1.15 per share, from its previous guidance of $1.53-$1.67. On this news, over the next six trading days E*TRADE shares fell $2.32, or over 16.3%, to close on September 25, 2007 at $11.89 per share, on heavy trading volume. Finally, on November 12, 2007 – the last day of the class period – the Company's stock fell $5.04 per share, or 59%, to close at $3.55 per share on heavy trading volume after it had announced the previous Friday that it would take a write-down on a portfolio of securities and mortgage-backed CDOs.

3

## PROCEDURAL BACKGROUND

The PSLRA requires the counsel who files the first complaint to issue a notice to investors in a widely circulated national business-oriented publication within twenty days of the date the complaint is filed, advising class members of the pendency of the lawsuit and the nature of the allegations, their right to seek appointment as lead plaintiff within sixty days of the publication of the notice, and the purported class period. See 15 U.S.C. § 78u-4(a)(3)(A)(1). The first action against E*TRADE was filed on October 2, 2007. That same day, counsel in the first-filed action issued the required Notice on the Business Wire.[6]

The PSLRA requires putative class members to move for appointment as lead plaintiff within 60 days of the date the Notice was issued. See 15 U.S.C. § 78u-4(a)(3)(A)(1). Skandia has satisfied this requirement by filing its motion within the sixty-day period. Accordingly, the procedural mandates of the PSLRA have been satisfied.

## ARGUMENT

## POINT I

## THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Each of the Related Actions involves class action claims on behalf of class members who purchased publicly traded securities of E*TRADE during the Class Period in reliance on the materially false and misleading statements and omissions at all relevant times. Consolidation is appropriate when, as here, there are actions involving common questions of law or fact. See Fed. R. Civ. P. 42(a); Werner v. Satterlee, Stephen, Burke & Burke, 797 F. Supp. 1196 (S.D.N.Y.

---

[6] The Business Wire has consistently been recognized as a suitable vehicle for meeting the PSLRA's statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." See, e.g., Greebel v. FTP Software, Inc., 939 F. Supp. 57, 62-64 (D. Mass. 1996); Lax v. First Merchants Acceptance Corp., No. 97 C 2715, 1997 WL 461036, at *1 (N.D. Ill. Aug. 6, 1997); see also Bassin v. deCODE Genetics, Inc., 230 F.R.D. 313, 313 (S.D.N.Y. 2005) (stating that "[n]otice was published that same day in the Business Wire, a national, business oriented newswire service, as required by 15 U.S.C. §§ 78u-4(a)(3)(A)(i)"). A copy of the Notice is attached as Exhibit B to the Hughes Decl.

4

1992) (ruling consolidation appropriate in securities actions when complaints are based on same public statements and reports and there are common questions of law and fact). That test is met here. Therefore, the Related Actions should be consolidated.

## POINT II

## SKANDIA SHOULD BE APPOINTED LEAD PLAINTIFF

**A.    The Legal Requirements Under The PSLRA**

The PSLRA provides a rebuttable presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that:

(aa) has either filed the complaint or made a motion in response to a notice . . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (1997); see generally Bassin v. deCODE Genetics, Inc., 230 F.R.D. 313 (S.D.N.Y. 2005).

**B.    Skandia Satisfies The Lead Plaintiff Requirements Of The Exchange Act**

    **1.    Skandia Has Complied With the Exchange Act and Should Be Appointed Lead Plaintiff**

The 60-day time period in which class members may move to be appointed Lead Plaintiff under 15 U.S.C. § 78u-4(a)(3)(A)-(b) expires on Monday, December 3, 2007. Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice, Skandia timely moves this Court to be appointed lead plaintiff on behalf of all members of the Class.

The Head of Administration and Compliance and the CIO of Skandia have duly signed and filed a sworn certification on behalf of Skandia pursuant to the PSLRA. See Hughes Decl.,

Ex. A.  In addition, Skandia has selected and retained competent counsel to represent it and the class.  See Hughes Decl., Exs. D-E.  Therefore, Skandia has satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and is entitled to have its application for appointment as lead plaintiff and selection of lead and liaison counsel considered and, for the reasons set forth herein, approved by the Court.

### 2. Skandia Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA

Skandia is a large institutional investor based in Sweden, providing worldwide financial and insurance services.  The Congressional objective in enacting the lead plaintiff provisions was to encourage large, organized institutional investors to play a more prominent role in securities class actions.  See H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); see also Glauser v. EVCI Ctr. Colleges Holding Corp., 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("'[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.'") (quoting In re Veeco Instruments, Inc., 233 F.R.D. 330, 332-33 (S.D.N.Y. 2005)).

Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation.  Skandia, a large institutional investor, is precisely the type of lead plaintiff Congress envisioned when it passed the PSLRA.  See H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 733 ("Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class

6

members with small amounts at stake.").

The fact that Skandia is a foreign investor is of no moment. This is especially true given that Skandia's purchases occurred on the NASDAQ exchange. See In re NPS Pharm., Inc. Sec. Litig., No. 2:06-cv-00570-PGG-PMW (D. Utah Nov. 17, 2006) (rejecting argument that foreign institutional investor that bought shares of a U.S. company on a U.S. exchange may be subject to the unique defenses of subject matter jurisdiction and res judicata) (attached as Hughes Decl., Ex. G). Courts across the country have frequently appointed foreign investors lead plaintiffs in putative securities class actions. See, e.g., In re Molson Coors Brewing Co. Sec. Litig., 233 F.R.D. 147, 151 (D. Del. 2005) (observing that a foreign lead plaintiff movant was "correct in its assertion that many courts, including this one, have approved foreign investors as lead plaintiffs in cases such as this" and holding that a group of investors led by a German investment firm was entitled to appointment as lead plaintiff because it had the largest financial interest of any movant, was otherwise adequate and typical, and would not be subject to unique defenses because of its foreign status) (citing cases).[7]

In In re: The Goodyear Tire & Rubber Co. Sec. Litig., No. 5:03 CV 2166, 2004 WL 3314943, at *5-6 (N.D. Ohio, May 12, 2004) (Hughes Decl., Ex. F-4b) the court appointed a foreign

---

[7] Cases in which other courts have appointed foreign investors lead plaintiff in securities class actions include Welmon v. Chicago Bridge & Iron Co. N.V., No. 06-CV-01283 (JES) (S.D.N.Y. May 11, 2006); In re Able Labs. Sec. Litig., No. 05-2681 (JAG) (D.N.J. Mar. 17, 2006); Mirco Investors, LLC v. Inspire Pharms., Inc., No. 1:05CV00118 (M.D.N.C. Mar. 1, 2006); Kadagian v. Harley-Davidson, Inc., No. 05-C-0547 (E.D. Wis. Feb. 14, 2006); In re General Motors Corp. Sec. Litig., No. 05-CV-8088 (RMB) (S.D.N.Y. Feb. 6, 2006); In re Conagra Foods, Inc. Sec. Litig., No. 8:05-cv-00292-LES-TDT (D. Neb. Dec. 2, 2005); In re Dreamworks Animation SKG, Inc., Sec. Litig., No. CV 05-03966 (C.D. Cal. Nov. 7, 2005); Olsen v. New York Cmty. Bancorp, Inc., No. 04-CV-4165 (E.D.N.Y. Aug. 9, 2005); Cox v. Delphi Corp., No. 1:05-CV-2637(NRB) (S.D.N.Y. June 27, 2005); In re Sipex Corp. Sec. Litig., No. C 05-00392 WHA (N.D. Cal. May 24, 2005); South Ferry LP #2 v. Killinger, No. CV04-1599 JCC (W.D. Wash. Nov. 30, 2004); Conway Inv. Club v. Corinthian Colleges, Inc., No. 2:04-cv-05025 (C.D. Cal. Nov. 1, 2004); Curtis v. BEA Sys., Inc., No. C04-2275 SI (N.D. Cal. Sept. 24, 2004); In re Parmalat Sec. Litig., No. 04 Civ. 0030 (LAK) (S.D.N.Y. May 25, 2004); In re: The Goodyear Tire & Rubber Co. Sec. Litig., No. 5:03 CV 2166, 2004 WL 3314943, at *5-6 (N.D. Ohio, May 12, 2004); In re Nortel Networks Corp. Sec. Litig., No. 01 Civ. 1855 (S.D.N.Y. Sept 5, 2003); In re Williams Sec. Litig., No. 02-CV-0072-H(M) (N.D. Okla. July 8, 2002). A compendium of copies of these decisions is attached hereto as Exhibits F1-F6 to the Hughes Decl.

investor lead plaintiff in a putative securities class action against an American corporation, despite an opposing movant's "attempt to discredit Capital Invest on the ground that it is a non-domestic (Austrian) investment firm." Goodyear, 2004 WL 3314943, at *5-6.  The court there recognized that many foreign citizens are "entitled by treaty to the same rights and privileges before United States Courts as United States citizens" and observed that "[e]ven in the absence of a treaty, to exclude a foreign investor from lead plaintiff status on nationality grounds would defy the realities and complexities of today's increasingly global economy." Id.

Skandia is a sophisticated institutional investor that is familiar with the provisions governing the appointment of lead plaintiffs in PSRLA actions.  Headquartered in Stockholm, Sweden, Skandia is the largest insurance company in Sweden, with over 1.7 million customers and approximately $101 billion of assets under management.  After due consideration by its Head of Administration and Compliance and CIO, including a review of the merits of this action and the qualifications of its proposed lead counsel, Skandia has affirmatively decided to seek appointment as lead plaintiff.  Skandia is fully committed to serving as a fiduciary to the class and to the zealous prosecution of this matter as the lead plaintiff.[8]

### 3. Skandia Has the Requisite Financial Interest in the Relief Sought by the Class

As shown in the Certification of Marie Schöllin and Hans Sterte, Skandia purchased 320,133 net shares of E*TRADE common stock (ETFC) on the NASDAQ exchange during the putative Class Period and had net expenditures of $10,244,730 and losses of over $9.1 million. Hughes Decl., Exs. A ¶ 8; C.  Upon information and belief, Skandia thus has the largest financial

---

[8] If the Court would like to review the written retainer agreement between Motley Rice LLC and Skandia, Movant will be happy to provide a copy to the Court for in camera inspection.

interest in the relief sought by the class of any class member who has appeared and is presumptively the most adequate plaintiff to serve as lead plaintiff.

### 4. Skandia Otherwise Satisfies the Requirements of Rule 23

The PSLRA requires that lead plaintiffs, in addition to having the largest financial interest, must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(1)(cc).

Rule 23(a) requires that (1) the class be so numerous that joinder of all members is impracticable; (2) there be questions of law or fact common to the class; (3) such claims be typical of those of the class; and (4) the representatives fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. See Glauser, 236 F.R.D. at 188 ("Typicality and adequacy of representation, however, 'are the only provisions relevant to a determination of lead plaintiff under the PSLRA.'") (quoting Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 49 (S.D.N.Y. 1998)). Also, at the lead plaintiff stage, the moving party need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23. Id.

The typicality requirement is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality exists if the "claims of the Lead Plaintiff arise from the same event or course of conduct that gives rise to the claims of the other class members, where these claims are based on the same legal theory, and where the class members and Lead Plaintiff were injured by the same conduct." Glauser, 236 F.R.D. at 188-89 (citing Dietrich v. Bauer, 192 F.R.D. 119, 124 (S.D.N.Y. 2000));

9

see also In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992). Also, a difference in the factual situations of class members alone does not defeat typicality under Rule 23(a)(3). See Priest v. Zayre Corp., 118 F.R.D. 552, 555 (D. Mass. 1988). Thus, courts have repeatedly held that typicality is satisfied in securities class actions when the class representative, like all other class members, purchased the subject stock during the relevant time period at prices that they allege were artificially inflated by false and misleading statements by defendants and allegedly suffered damages. See, e.g., Glauser, 236 F.R.D. at 189; In re Sprint Corp. Sec. Litig., 164 F. Supp 2d 1240, 1243-44 (D. Kan. 2001); Chisholm v. Transouth Fin. Corp., 184 F.R.D. 556, 563 (E.D. Va. 1999).

Skandia's claims are typical of those of the putative class. Skandia purchased E*TRADE stock during the Class Period at prices artificially inflated and distorted by Defendants' misrepresentations and omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when it is established that a representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is met when the proposed Lead Plaintiff "does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class that he seeks to represent." Glauser, 236 F.R.D. at 189.

Skandia is an adequate representative of the class. The interests of Skandia are clearly aligned with the interests of the members of the class because it, like other class members, paid artificially inflated prices due to Defendants' materially false and misleading statements. There

is no antagonism between Skandia's interests and those of the putative class.  Finally, Skandia has taken significant steps that demonstrate that it will protect the interests of the class: (1) Skandia has executed a sworn certification detailing its Class Period transactions and expressing its willingness to serve as lead plaintiff; (2) Skandia has timely moved this Court for appointment as lead plaintiff; and (3) Skandia has retained competent and experienced counsel to prosecute these claims.  As shown below, Skandia's proposed counsel are highly qualified, experienced, and able to conduct this complex litigation in a professional manner.  Thus, Skandia prima facie satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this Motion.

## POINT THREE

### THE COURT SHOULD APPROVE SKANDIA'S CHOICE OF COUNSEL

The PSLRA provides that the lead plaintiff shall, subject to court approval, select and retain lead counsel.  15 U.S.C. § 78u-4(a)(3)(B)(v); Glauser, 236 F.R.D. at 190.  A court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  Skandia has selected the law firm of Motley Rice LLC as lead counsel and Lieff, Cabraser, Heimann & Bernstein, LLP as liaison counsel.  Motley Rice LLC members have substantial experience in the prosecution of shareholder and securities class actions.[9]  Lieff, Cabraser, Heimann & Bernstein, LLP also has substantial experience in complex litigation, including securities fraud class actions, and is amply qualified to serve as liaison counsel in this matter.  See Hughes Decl., Exs. D-E.  Therefore, the Court should approve Skandia's selection of counsel.

---

[9] As the district court noted when appointing Motley Rice Co-Lead Counsel in Marsden v. Select Med. Corp., No. 04-4020 (E.D. Pa. Order entered Oct. 5, 2006), "Motley Rice LLC possess[es] the requisite knowledge and skill in securities litigation to ably prosecute this matter on behalf of the class."

11

## CONCLUSION

For all of the above reasons, Skandia respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint Skandia as lead plaintiff in the proposed consolidated actions; and (3) approve its selection of counsel.

Respectfully submitted this 3rd Day of December, 2007,

/s/ Daniel P. Chiplock

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Steven E. Fineman, Esq. (SF – 8481)
Daniel P. Chiplock, Esq. (DC – 1137)
780 Third Avenue, 48th Floor
New York, New York 10017-2024
Tel: 212-355-9500
Fax: 212-355-9592

[Proposed] Liaison Counsel

MOTLEY RICE LLC
Ann K. Ritter, Esq.
James M. Hughes, Esq.
P.O. Box. 1792 (29465)
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Tel: (843) 216-9000
Fax: (843) 216-9450

[Proposed] Lead Counsel

STURMAN LLC
Deborah Sturman, Esq.
112 Madison Avenue
New York, New York 10016-7416
Tel: 646-932-2040
Fax: 917-546-2544

Counsel for Skandia Life Insurance Company Ltd.