# EXHIBIT  F-1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

APR 9 2007

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                  DEPUTY CLERK

*In re*

DELL INC., SECURITIES LITIGATION

Case No. A-06-CA-726-SS

## O R D E R

BE IT REMEMBERED on the _9th_ day of April 2007 the Court reviewed the file in the above-styled cause, specifically the motions for appointment as lead plaintiff filed by the Institutional Investor Group [#20, #137], the Pension Fund Group [#25], the Boca Raton Police and Firefighters' Retirement System [#26], Union Asset Management Holding AG [#39], and I.U.O.E Local 68 Pension and Annuity Funds [consolidated complaint] . Having considered these motions, the memoranda filed in support and opposition thereto, the applicable law, and the consolidated case file as a whole, the Court now enters the following opinion and order.

### Background

This case consolidates four class actions alleging violations under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u-4, and Rule 10b-5 promulgated thereunder. Plaintiff Marc Abrams filed this action on September 13, 2006, individually and on behalf of all those who purchased common stock of Dell, Inc. ("Dell") between February of 2003 and September of 2006. Abrams claims Dell, during this period, disseminated materially false and misleading statements regarding its earnings and expected growth and reported incorrect financial data in its required SEC filings.

As required by the PSLRA, counsel for Abrams published notice of the pending class action in a "widely circulated national business-oriented publication or wire service" on September 13, 2006. 15 U.S.C. §78u-4(a)(3)(A)(i).  On November 13, 2006, several parties moved to be appointed lead plaintiff in this case pursuant to the PSLRA.[1]  Abrams moved to appoint the Institutional Investor Group (made up of plaintiffs Wolverhampton City Council and Amalgamated Bank) as Lead Plaintiff with Joe Kendall of Provost & Umphrey LLP and Patrick Coughlin of Lerach Coughlin Stoia Gellar Rudman & Robbins LLP as Co-Lead Counsel. The Pension Fund Group (made up of Plaintiffs Mississippi Public Employees' Retirement System, Sjunde AP-Fonden, Stichting Pensioenfunds ABP, and Pensionskassernes Administration A/S) also moved for appointment as Lead Plaintiff, with counsel from the law firms of Grant & Eisenhofer P.A. and Schiffrin and Barroway, LLP as Lead Counsel. Plaintiff Union Asset Management Holding AG ("Union") moved for appointment as Lead Plaintiff with counsel from the firms of Motley Rice LLC and Byrd, Davis, Furman, LLP as Lead Counsel.[2]  The City of Boca Raton Police and Firefighters' Retirement System filed its motion to be appointed Lead Plaintiff, with counsel from the firm of Lieff, Cabraser, Heimann and Bernstein, LLP as Lead Counsel.  Plaintiff I.U.O.E Local 68 Pension and Annuity Funds ("I.U.O.E.") filed a parallel complaint on November 13, 2006.

On November 16, 2006, the Court held a hearing regarding consolidation of the Abrams and I.U.O.E. complaints and related ERISA and derivative actions against Dell.  The Court issued an

---

[1] On November 13, 2006, the Policemen's Annuity and Benefit Fund of Chicago moved for appointment as Lead Plaintiff , but later withdrew the motion. The DeKalb County Pension Fund likewise moved for appointment as Lead Plaintiff on November 13, 2006, but later withdrew the motion.

[2] Union's motion is marked "filed" on November 16, 2006, but the motion itself is dated November 13, 2006.

Order directing "each group seeking to be lead counsel and represent the named representative plaintiff" in a consolidated action to "file an amended complaint on or before January 31, 2007, specifically alleging the class or classes to be established and the reasons why it should be selected as lead counsel and its client the named representative plaintiff." Order of Nov. 16, 2006. In response, the Pension Fund Group filed a parallel lawsuit on January 31, 2007. The Institutional Investor Group also filed a parallel suit on January 31, 2007. Union Asset Management filed an amended complaint in the *Abrams* action on January 31, 2007.

The Court also requested that all named plaintiffs file affidavits (in addition to the certifications required by the PSLRA, 15 U.S.C. §78u-4(a)(2)(A)) "confirming that the client solicited the attorney or firm to represent him . . . and the client made the first contact with the attorney." Order of Nov. 16, 2006. It appears that Abrams, the Pension Fund Group, and Union have filed such affidavits, but no representative of I.U.O.E. Local 68 Pension and Annuity Funds has done so. The additional filings requested by the Court are intended to aid the Court in determining which movant is the most adequate Lead Plaintiff, but the Court will consider each motion filed in accordance with the PSLRA regardless of whether the movant has filed the affidavits and amended complaint requested in the November 16, 2006 Order. *See* 15 U.S.C. §78u-4(a)(3)(B)(i) (the Court "*shall* consider any motion made by a purported class member in response to the notice") (emphasis added). The Court consolidated the related securities class action complaints on February 28, 2007, and now considers the motions for appointment as Lead Plaintiff.

**Analysis**

Where a court has pending before it one or more class actions arising under the Securities Exchange Act of 1934, the PSLRA directs that a Lead Plaintiff be selected early in the case, and that

the Lead Plaintiff is to select and retain lead counsel, subject to court approval. *See* 15 U.S.C. §

78u-4(a)(3)(B)(v). One of the main goals of the PSLRA is "to have the plaintiff class, represented

by a member with a substantial financial interest in the recovery as incentive, monitor the litigation

to prevent its being lawyer-driven." *See In re Waste Management, Inc. Sec. Litig.*, 128 F. Supp. 2d

401, 411-12 (S.D. Tex. 2000).

## I.  The Most Adequate Plaintiff

The PSLRA provides that the Court shall consider all timely-filed motions made by

purported class members seeking to be appointed Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i).

The Court shall appoint as Lead Plaintiff the member or members of the purported plaintiff class that

the court considers most capable of adequately representing the interests of the class members. *Id.*

This Lead Plaintiff is termed the "most adequate plaintiff." *Id.*

The PSLRA directs the Court to adopt a presumption that the most adequate plaintiff is the

person or group of persons that (1) filed a complaint or a timely motion to be appointed lead

plaintiff, (2) "has the largest financial interest in the relief sought by the class," and (3) "otherwise

satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §

78u-4(a)(3)(B)(iii)(I).  The PSLRA does not delineate a procedure for determining the "largest

financial interest" among the proposed class members.  Both the approximate loss claimed and the

total number of shares purchased are, however, significant factors in determining the largest financial

interest in the litigation.  *See, e.g. In re Waste Management, Inc.*, 128 F. Supp. 2d 401, 414 (S.D.

Tex. 2000) ("The term 'largest financial interest' . . . should be read broadly in terms of (1) the

number of shares purchased, (2) the number of net shares purchased, (3) the total net funds expended

by the plaintiff(s) during the class period, and (4) the approximate losses suffered by the

plaintiff(s).") (citation omitted). Accordingly, the Court considers the number of shares purchased

and the total loss claimed by each movant in determining which proposed Lead Plaintiff has the

largest financial interest in this litigation.

     The Court has five motions for appointment as Lead Plaintiff to consider:

| Proposed Lead Plaintiff | Proposed Lead Counsel | Claimed Losses | Shares Purchased |
|---|---|---|---|
| Pension Fund Group | Grant & Eisenhofer P.A.; Schiffrin Barroway Topaz & Kessler, LLP | $87.93 million | 18.84 million |
| Union Asset Management Holding AG | Motley Rice LLC | $20.25 million | 3.23 million |
| Institutional Investors' Group | Lerach Coughlin Stoia Gellar Rudman & Robbins LLP | $5.86 million | 629,412 |
| I.U.O.E. Local 68 Annuity & Pension Fund | Seeger Weiss LLP | $1.32 million | 59,522 |
| City of Boca Raton Police & Firefighters Retirement System | Lieff Cabraser Heiman & Bernstein LLP | $235,483.98 | 41,300 |

## II. Aggregation of Financial Interests

     Several of the proposed Lead Plaintiffs are actually small groups of investors.  In particular,

the Pension Fund Group ("PFG") is made up of four separate entities: Stichting Pensioenfonds ABP

("ABP"), Mississippi PERS ("Mississippi"), Sjunde AP-Fonden ("AP7"), and Pensionskassernes

Administration A/S ("PKA"). The Institutional Investors' Group ("IIG") is made up of two separate

entities: Amalgamated Bank and the Wolverhampton City Council.  Finally, Union Asset

Management Holding AG ("Union") is a fund manager that manages seven different funds ("the

Union funds"). Each of these groups has claimed losses based on aggregating the total losses suffered by each member. Courts are divided over whether multiple plaintiffs may be aggregated to satisfy the "largest financial interest" requirement. *See Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1067 (C.D. Cal. 1999) (collecting cases). The majority of courts addressing this issue, however, have permitted the aggregation of claims. *See, e.g., In re Advanced Tissue Sciences Sec. Litig.*, 184 F.R.D. 346, 353 (S.D. Cal. 1998) (allowing the aggregation of six plaintiffs); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 45-48 (S.D. N.Y. 1998) (appointing three plaintiffs as lead plaintiffs); *Chill v. Green Tree Financial Corp.*, 181 F.R.D. 398, 409 (D. Minn. 1998) (aggregating six plaintiffs). Courts have arrived at this result because the Act expressly permits a court to appoint more than one lead plaintiff. The court "shall appoint as lead plaintiff the member *or members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added).

Courts within this Circuit, however, tend to adopt a "strict" view of aggregation, reasoning that although there is "no textual statutory obstacle to considering the [grouped] plaintiffs' financial interests together," *Bell v. Ascendant Solutions, Inc.*, No. 3:01-CV-0166-P, 2002 U.S. Dist. LEXIS 6850 (N.D. Tex. April 17, 2002), the express purpose of the PSLRA is to ensure that securities litigation is overseen by competent interested parties rather than driven by lawyers. *Id.* To ensure the type of proactive representation by plaintiffs envisioned by the PSLRA, a strict definition of appropriate "group" plaintiffs should be adopted, "requiring at maximum a small group with the largest financial interest in the outcome of the litigation and a pre-litigation relationship based on more than their losing investment." *In re Waste Management*, 128 F. Supp. 2d at 413. Under this

-6-

"strict" aggregation approach, "[t]he burden is on those seeking to aggregate to demonstrate the cohesiveness of their purported 'group' and . . . failure to provide significant information about the identity of the members other than a conclusory statement of names, transactions for purchase of securities, and largest financial interest should result in denial of their application for appointment as Lead Plaintiff." *Id.* (citing *Switzenbaum v. Orbital Sciences Corp.* ("Orbital I"), 187 F.R.D. 246, 250 (E.D. Va. 1999)).

The Institutional Investors' Group argues the Court should not consider the Pension Fund Group's aggregate loss because this group is "lawyer-driven," cobbled together for the purpose of achieving the greatest aggregated financial interest in the case. This is an interesting argument from a group whose own filings show no evidence whatsoever of any relationship between the entities beyond this litigation, and whose counsel initially represented a totally different named plaintiff (Abrams) whose losses were much smaller. Nevertheless, the Institutional Investors' Group makes a good point. Neither PFG nor IIG has shown any non-litigation relationship between the members of the proposed Lead Plaintiff groups.

PFG argues its members are not an unrelated group because two of its members, ABP and Mississippi, are currently serving together as lead plaintiffs in *In re Delphi Corporation Sec. Litig.*, No. 06-10026 (E.D. Mich.); and AP7 and PKA previously filed a joint lead plaintiff motion in *In re UnitedHealth Group Inc. PSLRA Litig.*, No. 06-cv-1691-JMR-FLN (D. Minn. May 5, 2006). This argument, however, does little to counter the argument that the Pension Fund Group's relationship is "lawyer-driven" and arises out of litigation alone. The Court also notes that PFG member Mississippi is presumptively disqualified from serving as a lead plaintiff, because it has participated

as lead plaintiff in more than five securities class actions in the last 3 years. 15 U.S.C. §78u-4(a)(3)(B)(5).

Though some courts have adopted group Lead Plaintiffs on the theory that diversity among plaintiffs helps ensure that all class members' interests are represented, *see, e.g. In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998), there is no such diversity in either of the groups proposed by PFG or IIG. All of the members of these proposed groups are institutional investors. With respect to the Lead Plaintiff groups proposed by PFG and IIG, the Court finds no "advantages that outweigh the disservice to the PSLRA's interest in creating a small number of lead plaintiffs to counterbalance the influence of lawyers." *Bell*, 2002 U.S. Dist. LEXIS 6850.

In contrast, Union Asset Management, AG ("Union") is a single fund management company that oversees several different funds. The Court in *In re Waste Management* recognized that "[a]n institutional investor that invests the monies pooled into it from numerous, interrelated funds, . . . under the direction of a single individual" functions as a single investor under the PSLRA. *In re Waste Mgmt.*, 128 F. Supp. 2d at 432. Even if Union is considered as a group of separate investors, aggregation of their losses is appropriate because the funds have "a pre-litigation relationship based on more than their losing investment." *Id.* at 413.

## III. ABP is the Presumptively Most Adequate Plaintiff

Even when considered in the aggregate, however, Union has the second-largest claimed loss in this litigation. The PFG's largest member, Stichting Pensioenfonds ABP ("ABP") purchased 18,484,148 shares of Dell stock during the class period and claims a loss of $68 million. The PFG has requested that ABP be considered as an alternate Lead Plaintiff movant if the Court rejects its

group motion. Accordingly, the Court considers whether ABP, the movant with the largest financial interest in this litigation, is the most adequate plaintiff under the PSLRA.

"The rebuttable presumption created by the PSLRA, which favors the plaintiff with the largest financial interest, was not intended to obviate the principle of providing the class with the most adequate representation and in general the Act must be viewed against established principles regarding Rule 23 class actions." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. at 49. *See* Although the inquiry at this stage of the litigation in determining the Lead Plaintiff is not as searching as the one triggered by a subsequent motion for class certification, the proposed Lead Plaintiff must make at least a preliminary showing that it has claims that are typical of those of the putative class and the capacity to provide adequate representation for those class members. *In re Waste Management, Inc.*, 128 F. Supp. 2d at 411.Only the typicality and adequacy requirements of Rule 23 are directly relevant to the choice of the Lead Plaintiff in securities fraud cases. *Id.*

The proposed Lead Plaintiff's claims are typical of the class if there are "no differences among the class members that would substantially alter the proof required for one member's claims versus another's." *Bell*, 2002 U.S. Dist. LEXIS 6850 (citing *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997)). It is not necessary that a proposed Lead Plaintiff's claims be identical to the claims of other class members. *Id.* ABP, as a member of the PFG, has submitted a complaint alleging it, like other members of the proposed class, purchased Dell securities and lost money as a result of Dell's material misstatements and omissions. Though the class period differs slightly from the period alleged in the other complaints, and ABP is not pursuing some of the defendants and claims at issue in the related cases, there is no significant difference in the proof required to prove

ABP's claims and the claims asserted by other named plaintiffs in these related cases. Therefore, ABP's claims are typical of the proposed class.

"[T]he adequacy requirement mandates an inquiry into [1] the zeal and competence of the representative[s'] counsel and . . . [2] the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees[.]" *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001) (citation omitted). There is no question that APB's chosen counsel is competent and zealous; the detailed complaint and the thorough pleadings filed in connection with ABP/PFG's Lead Plaintiff Motion are ample proof of that. ABP's affidavit, filed in response to this Court's Order of November 16, 2006, establishes that ABP is prepared to take an active role in the litigation.

Because ABP filed a timely motion (as part of the Pension Fund Group) to be appointed Lead Plaintiff, has the largest financial interest in this litigation, and satisfies the typicality and adequacy requirements of Rule 23, ABP is presumptively the "most adequate plaintiff" under the PSLRA. This presumption may be rebutted only by proof by another member of the purported plaintiff class that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

## IV. Rebutting the Presumption

Union Asset Management and the Institutional Investors' Group present several challenges to ABP's ability to fairly and adequately represent the class and allege ABP is subject to multiple unique defenses.

-10-

a. **PriceWaterhouse Coopers**

The Pension Fund Group is the only proposed Lead Plaintiff whose complaint does not name

Dell's auditor, PriceWaterhouseCoopers , as a defendant.  Union and IIG argue this is because the

Pension Fund Group's largest member, ABP, uses the auditing services of a European affiliate of

PriceWaterhouseCoopers.  In response, ABP points out that the Fifth Circuit rejected a similar

conflict of interest challenge in *Feder v. Electronic Data Sys. Corp.*, 429 F. 3d 125, 133–34 (5th Cir.

2005).  In *Feder*, a defendant argued that the lead plaintiff, the state of New Jersey, was not an

adequate class representative because KPMG, a potential defendant, was New Jersey's auditor.

Specifically, defendants argued "that New Jersey's failure to name KPMG as a defendant in this

case, coupled with the fact that KPMG is New Jersey's auditor, demonstrates a conflict of interest

with the class that should disqualify New Jersey from serving as class representative." *Id.* at 134.  The

Fifth Circuit Court of Appeals flatly rejected this argument and affirmed the District Court's decision

finding New Jersey to be an adequate class representative, holding:

> New Jersey is only a client of KPMG-not vice versa-so it has no self-interest in
> appeasing KPMG .... New Jersey would not necessarily benefit financially by
> maintaining a good relationship with KPMG. Thus, the Court does not believe
> there are unique circumstances here that threaten adequacy.

*Id.* at 135 (quoting *In re Electronic Data Sys. Corp. Sec. Litig*, 226 F.R.D. 559, 570 (E.D. Tex.

2005)).  However, the *Feder* Court based its decision on the facts of the case:  plaintiffs alleged the

defendant had "concealed its fraud from the market and from [the auditor]." *Id.*  In contrast, the

complaints filed by IIG and by Union in this case both allege PriceWaterhouseCoopers was complicit

and actively participated in Dell's alleged fraudulent scheme.  In particular, many of the securities

fraud allegations against Dell rest on its use of non-GAAP accounting procedures in SEC filings;

PriceWaterhouseCoopers approved Dell's accounting methods and signed off on these filings. In these circumstances, it is somewhat troubling that ABP has not named PriceWaterhouseCoopers as a defendant. Although "generally, failure to join all defendants is a strategy choice, and . . . is probably not grounds for finding inadequacy," *id.* at 135 (quoting *Paper Systems, Incorporated v. Mitsubishi Corporation*, 193 F.R.D. 601 (E.D. Wis. 2000), it is also true that "[t]he omission to sue a potential defendant cannot but prejudice the class." *Dubin v. Miller*, 132 F.R.D. 269, 272 (D. Colo. 1990). In these circumstances, "plaintiff is obligated to supply a persuasive reason for the non-joinder." *Id.*

ABP asserts that it is merely following the Court's directive to "be careful whom you sue" and further argues that, if selected as lead plaintiff, it "may well name PwC as a defendant if the circumstances warrant." Reply at 7. ABP points out that in a case pending in the United States District Court for the District of New Jersey, ABP named as a defendant PricewaterhouseCoopers U.K., LLP, a European subsidiary of PriceWaterhouseCoopers. *See Stichting Pensioenfonds ABP v. Royal Dutch Shell plc*, Civil Action No. 06-095. Nevertheless, in light of ABP's relationship with PriceWaterhouseCoopers and the detailed allegations against this auditing firm filed by other proposed Lead Plaintiffs, the Court is troubled by ABP's failure to join PriceWaterhouseCoopers as defendants in their Amended Complaint. The Court need not determine whether this potential conflict of interest is fatal, however, because ABP is also subject to unique defenses that disqualify it as an appropriate Lead Plaintiff.

**b. Short selling**

Union Asset Management asserts that ABP is not the most adequate plaintiff because it adopts both long and short selling strategies and would therefore be subject to unique defenses.

-12-

Several courts have rejected short-sellers as potential lead plaintiffs in securities class actions, even where those plaintiffs also took "long" market positions, reasoning that short sales are inconsistent with the fraud-on-the-market theory on which most securities fraud claims are based. *In re Critical Path*, 156 F. Supp. 2d 1102, 1109-1110 (D. Cal. 2001); see also *In re Bank One Shareholders Class Actions*, 96 F. Supp. 2d 780 (N.D. Ill. 2000). "Short sales raise the question of whether the seller was actually relying on the market price, and the class is not served by its representative coming under such scrutiny." *In re Critical Path*, 156 F. Supp. at 1109. Each of the complaints filed in the related Dell Securities Class Actions relies on the fraud-on-the-market theory. Therefore, ABP's position as a short-seller may well undermine the claims of the other class members.

## V. Union is Entitled to the Presumption

Union, the proposed Lead Plaintiff with the next largest financial interest in this case, has not taken any short positions on Dell stock and its fraud-on-the-market claims would not be subject to this defense. Nor has any other movant identified a potential conflict of interest between Union and the proposed class. Union satisfies the adequacy and typicality requirements of Rule 23. The detailed complaint and affidavit Union filed in response to this Court's Order of November 16, 2006 establish that Union has claims for securities fraud similar to those of the other class members and is prepared to take an active role in the litigation.

The Institutional Investors' Group objects that Union is a foreign entity. IIG argues that foreign entities should be "appointed alongside qualified and experienced American investors" in order to avoid unique defenses and mitigate the inconvenience of long-distance litigation. IIG, however, fails to identify any particular defense or inconvenience that would disqualify Union Asset Management. "There is, of course, a marked difference between affirmatively demonstrating that

[the presumptive Lead Plaintiff] is not an adequate representative or is subject to unique defenses and simply claiming that [Plaintiff] might be subject to such arguments in the future." *Gluck*, 976 F. Supp. at 547. There is neither a bar nor a presumption against appointing foreign entities to serve as lead plaintiff, particularly where, as here, the defendant is a U.S. company and the foreign entities bought their shares in the United States. *See In Re NPS Pharms., Inc. Sec. Litig.*, No. 2:06-00570, 2006 U.S. Dist. LEXIS 87231, at *13 (D. Ut. Nov. 17, 2006) (rejecting challenge to foreign lead plaintiff movant as inadequate or subject to unique defense, holding "concerns over subject matter jurisdiction and res judicata . . . are not present" where the foreign plaintiffs purchased stock in a United States company via a United States stock exchange). *See also In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 153 (D. Del. 2005) (court appointed German investment manager lead plaintiff, calling "res judicata argument a red herring"); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, No 5:03-2166, 2004 U.S. Dist Lexis 27043 (N.D. Ohio May 12, 2004) (appointing Austrian institution as lead plaintiff, holding "[t]he...attempt to discredit Capital Invest on the ground that it is a non-domestic (Austrian) investment firm...is insupportable."); *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 505 (S.D. Fla. 2002)("In light of today's travel and communication methods, the geographical location of the [foreign lead plaintiff movants] is irrelevant").

Because ABP, the Plaintiff with the largest financial interest in this litigation, is subject to unique defenses, it is not the most adequate plaintiff. Union Asset Management Holding AG has the next largest financial interest in the case, satisfies the typicality and adequacy requirements of Rule 23, and has timely filed a motion to be appointed Lead Plaintiff. Union is therefore presumptively the most adequate plaintiff. No other movant has shown that Union would be subject to unique defenses or would be unable to adequately represent the class. Furthermore, Union's

-14-

relationship with its chosen counsel is exactly the type of relationship the PSLRA seeks to sponsor: Union is an institutional investor "dedicated to the strengthening of corporate governance to protect investors." Affid. Gaebel & Von Cornberg, Mot. for Appt. as Lead Pl. Ex. D. After evaluating the merits of the case and the extent of its losses, Union decided to move for appointment as lead plaintiff and selected the firm of Motely Rice as proposed Lead Counsel. *Id.* Union worked with Motley Rice to select Byrd Davis Furman L.L.P. as liason counsel. *Id.* It seems clear from the affidavit of Union's in-house counsel that Union is firmly in the drivers' seat with regard to this litigation. Appointing this institutional investor as Lead Plaintiff and approving its choice of Lead Counsel will serve the PSLRA's goal of encouraging shareholders to protect their interests via securities class actions while discouraging "lawyer-driven" litigation.

## Conclusion

Accordingly,

IT IS ORDERED that the Motion for Appointment of Lead Plaintiff of Union Asset Management Holding AG [#39] is GRANTED.

IT IS FURTHER ORDERED that Union's choice of Lead Counsel and Liason Counsel is APPROVED. The firm of Motley Rice appears to have extensive experience in securities class action litigation, and the local firm of Byrd Davis Furman is amply qualified to assist as liason counsel in this matter. Ronald Motley, Joseph Rice, Lauren S. Antonino, James M. Hughes, and Ann Kimmel Ritter of Motley Rice LLC are appointed Lead Counsel in this case, and Don L. Davis of Byrd Davis Furman is appointed Liason Counsel.

IT IS FINALLY ORDERED that the miscellaneous motions to file supplemental briefing and pleadings over the page limit regarding the Motions for Appointment as Lead Plaintiff [Documents

#21, #137, #144] are GRANTED.  The Court gave full consideration to all arguments on this

important threshold issue in the consolidated securities class action.


      SIGNED this the _____ day of April 2007.


                                SAM SPARKS

                                UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MASSACHUSETTS LABORERS' | § | |
| ANNUITY FUND, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-3022 |
| | § | |
| ENCYSIVE PHARMACEUTICALS | § | |
| INC., *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This is a consolidated action brought under the Securities Exchange Act of 1934 by investors who purchased publicly traded securities of Encysive Pharmaceuticals Inc. ("Encysive"). The case is now before the Court on Motions to be Appointed Lead Plaintiff filed by The Graham Group [Doc. # 14] and Oppenheim Pramerica Asset Management S.á.r.l. ("OPAM") [Doc. # 19].[1] Each of these parties seeks appointment as lead plaintiff in this case pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4.

---

[1]   Fernando Dow, the Massachusetts Laborers' Pension and Annuity Fund, and the Scott Group have withdrawn their requests to be appointed lead plaintiff, leaving the Graham Group and OPAM as the only parties currently requesting appointment as lead plaintiff.

OPAM responded to the Graham Group's Motion [Doc. # 38], and the Graham Group responded to OPAM's Motion [Doc. # 42]. The Graham Group filed a reply [Doc. # 54], as did OPAM [Doc. # 55]. Following a hearing on January 18, 2007, the parties supplemented their briefing. OPAM filed a supplement to its original Motion [Doc. # 60], to which both Encysive[2] [Doc. # 61] and the Graham Group [Doc. # 62] responded. The Graham Group filed a Reply to Encysive's response [Doc. # 63], OPAM filed a "Supplemental Reply Brief" [Doc. # 64], and the Graham Group filed its own "Supplemental Reply Brief" [Doc. # 73].

Having reviewed the parties' submissions, all matters of record, and the relevant legal authorities, the Court **appoints** OPAM as lead plaintiff in this matter. The Court **appoints** Motley Rice LLC as lead counsel and Zummo & Midkiff, L.L.P. as liaison counsel.

## I.     BACKGROUND

Encysive, a pharmaceutical firm based in Houston, Texas, developed Thelin, a drug intended to treat pulmonary arterial hypertension. Encysive allegedly claimed that Thelin had reached an advanced stage in the review process at the Food and Drug Administration ("FDA"). Plaintiffs allege that expectations for the profitability of this

---

[2]     Encysive, the defendant in this matter, takes no position regarding whether OPAM or the Graham Group should be appointed lead plaintiff. *See* Statement of Defendants Regarding Lead Plaintiff Motions [Doc. # 55].

new drug caused the value of Encysive's shares to increase, allowing the company to complete two successful public offerings.

In March 2006, however, the FDA asked Encysive to provide more information and advised Encysive it might be required to conduct further studies to ensure that Thelin was safe and effective. The FDA announced that it would withhold approval of the drug pending its review of the new data. The price of Encysive's stock fell 49% on the news, dropping from $9.08 to $4.60 per share. When Encysive acknowledged in July that the FDA still had concerns, the shares' value dropped an additional 40%.

Plaintiffs allege that Encysive and its officers made misleading statements regarding Thelin's anticipated commercial value and its prospects for FDA approval, and failed to disclose adverse material facts. Plaintiffs also allege that Encysive's officers engaged in insider trading to capture profits from the company's artificially high valuation. Massachusetts Laborers' Annuity Fund and others filed suit against Encysive in the fall 2006. All of the lawsuits have been consolidated into this case.

## II. **THE PSLRA**

The PSLRA requires plaintiffs in a securites fraud case to publish a notice to members of the prospective class, informing them of "the pendency of the action, the claims asserted therein, and the purported class period." 15 U.S.C. § 78u-4(a)(3)(A)(i)(I). Within 60 days of the notice, any prospective class member may file

a motion to serve as lead plaintiff for the class. *Id*. The court is then required to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." *Id*. § 78u-4(a)(3)(B)(i).

The court's selection of a lead plaintiff is guided by a rebuttable presumption that the party that responded to the initial notice, has the largest financial interest in the case, and meets the requirements of Federal Rule of Civil Procedure 23 is the "the most adequate plaintiff." *Id*. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted with evidence that the prospective lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id*. § 78u-4(a)(3)(B)(iii)(II).

The Fifth Circuit has stated that "Congress enacted the 'lead plaintiff' provisions of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B), to direct courts to appoint, as lead plaintiff, the most sophisticated investor available and willing so to serve in a putative securities class action. Insofar as possible following the procedure prescribed by § 78u-4(a)(3)(B), the lead plaintiff should be an investor capable of understanding and controlling the litigation." *Berger v. Compaq Computer Corp.*, 279 F.3d 313 (5th Cir. 2002).

III. **ANALYSIS**

A.    **Initial Presumption**

Each candidate filed its Motion within the requisite time period.  Therefore, in order to apply the statutory rebuttable presumption that one candidate is more fit to serve as lead plaintiff, the Court looks to the candidates' comparative losses and considers whether the candidates satisfy the typicality and adequacy requirements of Rule 23.

The Graham Group consists of a husband, his wife, and a family testamentary trust for which the husband is the trustee.  It claims to be a cohesive group, able to make joint decisions based on their marital relationship.  The Graham Group asserts, as does OPAM, that its claims are typical of the claims of members of the proposed Class.  It represents that it is "prepared to direct the course of this Action and to fulfill their responsibilities as class representative."  *See* Memorandum of Law in Support of the Motion of the Graham Group ("Graham Group Memorandum") [Doc. # 15], at 6. The Graham Group alleges a loss of $384,371.40.

OPAM is a large "fund company that launches and manages investment funds under Luxembourgian law."  Memorandum of Law in Support of the Motion of OPAM ("OPAM Memorandum") [Doc. # 23], at 6.  Its institutional status weighs in its favor in the Court's analysis, as "Congress has unequivocally expressed its preference for

securities fraud litigation to be directed by large institutional investors."[3]  *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997).  OPAM's fund lost over $1.67 million, approximately four times the Graham Group's losses.

The Court finds that OPAM's claims are typical because they "arise from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory."  *See Longden v. Sunderman*, 123 F.R.D. 547, 556 (N.D. Tex. 1988).  OPAM has established the "adequacy" requirement of Rule 23 by showing that it does not have a conflict with the class,[4] that it is willing and able to take an active role in the litigation and protect the class members' interests, and that it has chosen qualified, experienced counsel.  *See, e.g., Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001).

In its Response, the Graham Group contends that OPAM has not actually incurred any losses because it is a fund manager, not an investor in its own right.  In *In re Molson Coors Brewing Co. Securities Litigation*, 233 F.R.D. 147 (D. Del. 2005),

---

[3]    The Graham Group argues that Congress's preference is for pension funds, not mutual funds, but cites no authority prohibiting mutual funds from serving as lead plaintiff.

[4]    The Graham Group argued that OPAM has a potential conflict of interest based on its fiduciary duties to its own investors.  When the Graham Group initially presented this argument, some of OPAM's investors still owned Encysive shares.  Because that is no longer the case, this argument has become moot.  Additionally, contrary to the Graham Group's suspicions, the Court finds nothing nefarious in OPAM's decision to sell the remaining Encysive shares.

the Delaware district court agreed to attribute a fund's losses to the fund manager where the manager presented evidence through an affidavit that it was an "attorney in fact for the investors in the identified funds, has authority to make decisions and act on their behalf, and is able to recover moneys for them." *Id.* at 152. In this case, OPAM has presented the joint affidavit of Max von Frantzius and Andreas Jockel, OPAM's chief legal counsel and managing director, respectively, attesting that "OPAM controls and manages and is attorney-in-fact for the fund." OPAM Memorandum, Exhibit A, ¶ 2. It is OPAM, not the individuals investing in the various funds managed by OPAM, who makes investment decisions on behalf of those individual investors. The Court agrees with the Delaware Court that this sworn evidence is sufficient to attribute the fund's losses to OPAM for purposes of this securities fraud litigation. Given the magnitude of those losses, OPAM is entitled to the statutory presumption that it is the most appropriate lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

## B.   **Rebuttal Evidence**

The PSLRA allows contenders for the role of lead plaintiff to rebut the statutory presumption by submitting proof that the party benefitting from the presumption is subject to unique defenses not applicable to the overall class or that it "will not fairly and adequately protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). The Graham Group presents several arguments in an attempt to rebut the statutory

presumption in OPAM's favor. For the reasons discussed below, the Court finds none of the arguments persuasive.

The Graham Group challenges OPAM's standing to bring this lawsuit because it is merely a fund manager with an investment advisor, Medical Strategy GmbH ("Medical Strategy"). The evidence does not support the Graham Group's argument. OPAM has submitted sworn testimony from its corporate officers which satisfies the Court that OPAM is authorized to undertake this litigation on behalf of the fund.[5] OPAM has also shown that it makes the investment decisions for its funds and that its investment advisor is simply that – an independent advisor whose suggestions OPAM can accept or reject. Based on the current record, OPAM appears to have standing to pursue this securities fraud litigation.

The Graham Group also asserts that OPAM cannot adequately represent the interests of the class because it is jointly owned by Sal Oppenheim International, S.A. and Pramerica International, a trade name of Prudential. According to the Graham Group, Prudential was an underwriter for Encysive's public offerings at issue in this suit. The Graham Group argues that Prudential will be "an important fact witness" in this case, and alleges that Prudential may have "contributed in some actionable form

---

[5]     A similar affidavit was found to be sufficient in *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 255 (S.D.N.Y. 2003).

to the misinformation in the market concerning Encysive and its prospects." *See* Graham Group Response [Doc. # 42], at 9. The Graham Group, however, fails to present sufficient evidence to support its argument and thereby rebut the presumption in OPAM's favor. In OPAM's supplementary declaration, Von Frantzius and OPAM senior associate Johann Will state that OPAM has "never discussed its purchase of Encysive stock with Prudential" and that Prudential "has not underwritten any stock for Encysive since 2000." *See* Von Frantzius/Will Declaration, Exh. B to OPAM's Reply Memorandum [Doc. # 54], ¶ 5. According to OPAM, Encysive conducted several public offerings after 2000, none of which were underwritten by Prudential. Consequently, Prudential's role in Encysive's public offerings predates by six years the drop in share prices on which this suit is predicated, and is not a barrier to OPAM's appointment as lead plaintiff.

The Graham Group also contends that OPAM's complex corporate structure and foreign ownership preclude its service as lead plaintiff. The argument is unpersuasive. Courts have appointed foreign corporations as lead plaintiff in similar securities litigation. *See, e.g., In re Molson*, 233 F.R.D. at 151-52. OPAM has clearly indicated its willingness, if appointed lead plaintiff, to send its representatives to the United States to carry out its fiduciary duty to the class. As discussed above, large institutional

investors—which routinely have complex corporate structures—are preferred as lead plaintiffs. *See Gluck*, 976 F. Supp. at 548.

The Graham Group also argues that OPAM, as a foreign entity, may not be bound by *res judicata* in this case. Accordingly, it contends, OPAM would have a reduced incentive to represent the class, because it could later pursue a second round of litigation in a European court. OPAM has, however, affirmed that it and its funds will be bound by any judgment or other order in this case. In reaching its decision to appoint OPAM as lead plaintiff, the Court relies on OPAM's assertion in this regard, and OPAM will not be allowed to take a different position in the future.

The Graham Group challenges OPAM's ability to serve as lead plaintiff by questioning OPAM's liability for potential sanctions and costs. As an initial matter, the Court anticipates that all parties and their counsel will prosecute and defend this case in a professional manner and that, as a result, sanctions will not become an issue. Moreover, OPAM has affirmatively committed to pay any sanctions or costs which may be imposed and the Court will, if necessary, hold OPAM to its commitment.

The Graham Group argues also that OPAM made "off-market" trades that will prevent it from relying on the "fraud on the market" argument on the reliance issue.[6]

---

[6]     Contrary to the Graham Group's contention in its "Supplemental Reply Brief," OPAM has presented clear sworn testimony that all shares of Encysive stock were purchased on the NASDAQ stock exchange. *See* Von Frantzius/Will Declaration, ¶ 6.

In support of this argument, the Graham Group points to trades that are not within the high and low NASDAQ prices for the day indicated. OPAM has shown, however, that the dates listed for its trades are the settlement dates, not the transaction dates as assumed by the Graham Group. As a result, the factual basis for the Graham Group's argument has been refuted.

The Graham Group argues that OPAM will also face a unique challenge to its reliance on the "fraud on the market" argument because the fund's annual report included a statement that its investment strategy was to take advantage of market inefficiency. The Graham Group's reliance on this statement, which is taken out of context, is unpersuasive. The statement is within a section of the 2004 Annual Report [Exh. C to Doc. # 64] describing the large institutional investors' focus on companies with a high market capitalization, leaving companies with smaller capitalization "out of the picture." OPAM describes the result of this lack of institutional investors' research as "an inefficient market for these second-line stocks." OPAM then states that Medical Strategy, its investment advisor, can "exploit this market inefficiency" by conducting its own "carefully targeted analysis" of these "as yet unknown companies." Neither OPAM nor Medical Strategy indicate in the 2004 Annual Report that Encysive is considered an "as yet unknown" company that has been "out of the picture." Indeed, the evidence in the record is to the contrary. Moreover, Medical Strategy has, through

its declaration, stated under oath that it "relied on the integrity of the market for Encysive shares in making its investment recommendation to OPAM . . .." *See* Declaration of Medical Strategy (signed by Michael Fischer, its Chief Executive Officer), Exh. A to Supplemental Reply Brief [Doc. # 64], ¶ 6. The comments in the 2004 Annual Report, when read in context and in light of the record as a whole, do not raise a unique defense against OPAM.

The Graham Group contends that OPAM is a "professional plaintiff," and that Congress's intent in crafting the PSLRA was to prevent investors from taking lead roles in multiple securities cases. The PSLRA specifically prohibits any party from being a lead plaintiff in more than five securities class actions during a three-year period. *See* 15 U.S.C. § 78u-4(a)(3)(B)(vi). Although OPAM has *sought* to become a lead plaintiff in five different securities class actions in 2006, the Graham Group concedes that OPAM has been appointed as a lead plaintiff only once.

## III. CONCLUSION AND ORDER

OPAM has demonstrated that its losses were significantly greater than any other investor in the proposed class, and more than three times larger than the Graham Group's losses. It satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure. Consequently, OPAM is presumed to be the better

candidate for lead plaintiff. The Graham Group has not refuted this presumption in OPAM's favor. Accordingly, it is

**ORDERED** that Oppenheim Pramerica Asset Management S.á.r.l.'s Motion for Appointment as Lead Plaintiff and Approval of Its Selection of Counsel [Doc. # 19] is **GRANTED**. OPAM is hereby **APPOINTED** lead plaintiff. The law firm of Motley Rice LLC is **APPOINTED** lead counsel, and Zummo & Midkiff, L.L.P. is **APPOINTED** liaison counsel. It is further

**ORDERED** that the Graham Group's Motion to be Appointed Lead Plaintiff [Doc. # 14] is **DENIED**.

The Clerk of Court is directed to change the style of this case to reflect that "Oppenheim Pramerica Asset Management S.á.r.l., on behalf of itself and others similarly situated" is the lead plaintiff in this case.

**SIGNED** at Houston, Texas, this **20th** day of **March**, **2007**.

Nancy F. Atlas
United States District Judge