# EXHIBIT  F-4A

BUCHWALD.

USDC SDNY
DOCUMENT
ELECTRONIC ...
DOC #:
DATE FILED: 6/27/05

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHNNY COX, on behalf of himself and
all others similarly situated,

                   Plaintiff,

         v.

DELPHI CORPORATION (F/K/A DELPHI
AUTOMOTIVE SYSTEMS), J.T.
BATTENBERG, III, ALAN S. DAWES,
PAUL R. FREE, and JOHN SHEEHAN,

                   Defendants.

Civil Action No. 1:05-CV-2637 (NRB)

THOMAS MORRISON, on behalf of
himself and all others similarly situated,

                   Plaintiff,

         v.

DELPHI CORPORATION, J.T.
BATTENBERG, III, RODNEY O=NEAL,
ALAN S. DAWES, and JOHN G.
BLAHNIK,

                   Defendants.

Civil Action No. 1:05-CV-2656 (NRB)

[Captions continued on next page]

**STIPULATION AND [~~PROPOSED~~] ORDER REGARDING APPOINTMENT OF LEAD
PLAINTIFFS AND APPROVAL OF LEAD PLAINTIFFS' SELECTION OF LEAD
COUNSEL**

ROBERT HILLMAN, on behalf of himself )
and all others similarly situated,        )
                                          )
                    Plaintiff,            )
                                          )
          v.                              )    Civil Action No. 1:05-CV-2732 (NRB)
                                          )
DELPHI CORPORATION, J.T.                  )
BATTENBERG, III, ALAN S. DAWES,           )
PAUL R. FREE, and JOHN D. SHEEHAN, )
                                          )
                    Defendants.           )
                                          )

CORINNE C. OREM, on behalf of herself )
and all others similarly situated,        )
                                          )
                    Plaintiff,            )
                                          )
          v.                              )    Civil Action No. 1:05-CV-2854 (NRB)
                                          )
DELPHI CORPORATION, J.T.                  )
BATTENBERG, III, RODNEY O=NEAL,           )
ALAN S. DAWES, and JOHN G.                )
BLAHNIK,                                  )
                                          )
                    Defendants.           )

VANESSA JONES, individually and on    )
behalf of all others similarly situated,  )
                                          )
                    Plaintiff,            )
                                          )
          v.                              )    Civil Action No. 1:05-CV-3323 (BSJ)
                                          )
DELPHI CORPORATION, J.T.                  )
BATTENBERG, III, RODNEY O=NEAL,           )
ALAN S. DAWES, and JOHN G.                )
BLAHNIK,                                  )
                                          )
                    Defendants.           )

[Captions continued on next page]

IRA GAINES, on behalf of himself and all )
others similarly situated, )
                           )
               Plaintiff, )
                           )
           v. )     Civil Action No. 1:05-CV-3439 (BSJ)
                           )
DELPHI CORPORATION, J.T. )
BATTENBERG, III, ALAN S. DAWES, )
PAUL R. FREE, and JOHN D. SHEEHAN, )
                           )
              Defendants. )
                           )

POLICEMEN'S ANNUITY & BENEFIT )
FUND OF CHICAGO, on behalf of itself )
and all others similarly situated, )
                           )
              Plaintiff, )
                           )     Civil Action No. 1:05-CV-4476 (UA)
           v. )
                           )
DELPHI CORPORATION, JOHN D. )
SHEEHAN, J.T. BATTENBERG, III, )
ALAN S. DAWES, and PAUL R. FREE, )
                           )
              Defendants. )

WHEREAS, on March 7, 2005, the first captioned class action complaint (*Cox v. Delphi Corp. (f/k/a Delphi Automotive Systems, LLC), et al.*, No. 1:05-CV-2637 (NRB)) alleging violations of federal securities laws was filed in the United States District Court for the Southern District of New York;

WHEREAS, twelve related complaints were subsequently filed. Six of those complaints were filed in the United States District Court for the Southern District of New York (*Morrison v. Delphi Corp., et al.*, No. 1:05-CV-2656 (NRB); *Hillman v. Delphi Corp., et al.* No. 1:05-CV-2732 (NRB); *Orem v. Delphi Corp., et al.*, No. 1:05-2854 (NRB); *Jones v. Delphi Corp., et al.*, No. 1:05-CV-3323 (BSJ); *Gaines v. Delphi Corp., et al.*, No. 1:05-CV-3439 (BSJ); and *Policemen's Annuity & Benefit Fund of Chicago v. Delphi Corp., et al.*, No. 1:05-CV-4476 (UA)) and six of those complaints were filed in the United States District Court for the Eastern District of Michigan (*Priest v. Delphi Corp., et al.*, No. 05-CV-70907-DPH-VMM; *City of Delray Beach Police and Firefighters Ret. Sys. v. Delphi Corp., et al.*, No. 05-CV-70945-DPH-VMM; *Karlin v. Delphi Corp., et al.*, No. 05-CV-70952-DPH-VMM; *Bennett v. Delphi Corp. (f/k/a Delphi Automotive Systems), et al.*, No. 05-CV-71157-VAR-MKM; *Raphael v. Delphi Corp., et al.*, No. 05-CV-71238-DPH-VMM; and *Police and Fire Ret. Sys. of the City of Detroit v. Delphi Corp., et al.*, No. 05-CV-60102-JCO-WC.) (All thirteen of the above actions shall be referred to collectively as the "Actions");

WHEREAS, on March 7, 2005, pursuant to Section 21D(a)(3)(A) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(A), notice was published which informed class members of their right to seek appointment as lead plaintiff;

WHEREAS, on May 6, 2005, putative class members Teachers' Retirement System of Oklahoma ("OTRS"), Oklahoma Law Enforcement Retirement System ("OLERS"), Public

Employees' Retirement System of Mississippi ("Mississippi PERS"), and San Diego City

Employees' Retirement System ("SDCERS") (collectively, the "Public Pension Fund Group")

timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment

as lead plaintiff and for approval of Bernstein Litowitz Berger & Grossmann LLP and Nix,

Patterson & Roach, L.L.P. as lead counsel;

WHEREAS, on May 6, 2005, putative class members Nextra Investment Management

S.G.R. S.p.A. on behalf of the NIS US Equities Fund, the Nextra Azioni Beni Di Consumo Fund,

the Nextra Azioni Nord America Fund, the Primavera Trading Azioni Nord America Fund, and

the Nextra Azioni Nord America Dinamico Fund (collectively, "Nextra") and Raiffeisen

Kapitalanlage-Gesellschaft m.b.H. ("Raiffeisen") timely moved this Court, pursuant to Section

21(D)(a)(3) of the Exchange Act, for appointment as lead plaintiff and for approval of Schiffrin

& Barroway, LLP as lead counsel;

WHEREAS, on May 6, 2005, putative class member Stichting Pensioenfonds ABP

("ABP") timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for

appointment as lead plaintiff and for approval of Grant & Eisenhofer, P.A. as lead counsel;

WHEREAS, on May 6, 2005, putative class member Secure Trading Group, Inc. ("STG")

timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment

as lead plaintiff and for approval of Entwistle & Cappucci, LLP as lead counsel;

WHEREAS, on May 6, 2005, putative class members Illinois State Board of Investment

("ISBI") and State Universities Retirement System of Illinois ("SURS") (collectively, the

"Illinois Funds") timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act,

for appointment as lead plaintiff and for approval of Berman DeValerio Pease Tabacco Burt &

Pucillo as lead counsel;[1]

WHEREAS, on May 6, 2005, putative class members International Union of Painters and Allied Trades Industry Pension Fund, National Roofing Industry Pension Fund, and California Ironworkers Field Trust Funds (collectively, the "Institutional Funds") timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment as lead plaintiff and for approval of Lerach Coughlin Stoia Geller Rudman & Robbins, LLP as lead counsel;

WHEREAS, on May 6, 2005, putative class members Metzler GmbH, Activest Investmentgesellschaft mbH, and Amalgamated Bank as Trustee of the Longview Collective Investment, Longview Quantitative FD-Prude and Longview VEBA 500 Funds (collectively, the "Institutional Investor Group") timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment as lead plaintiff and for approval of Milberg Weiss Bershad & Schulman, LLP as lead counsel;

WHEREAS, on May 6, 2005, putative class member Police and Fire Retirement System of the City of Detroit ("Detroit") timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment as lead plaintiff and for approval of Kirby McInerney & Squire, LLP as lead counsel;[2]

WHEREAS, on May 6, 2005, putative class member Government Employees' Retirement System of the Virgin Islands timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment as lead plaintiff and for approval of Barrack Rodos & Bacine as lead counsel;

WHEREAS, on May 6, 2005, putative class member Policemen's Annuity & Benefit

---

[1] Subsequently, on May 17, 2005, SURS withdrew its application for appointment as lead plaintiff.

[2] Subsequently, on May 23, 2005, Detroit withdrew its application for appointment as lead plaintiff.

Fund of Chicago timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment as lead plaintiff and for approval of Much Shelist Freed Denenberg Ament & Rubenstein, P.C. as lead counsel;

WHEREAS, on May 6, 2005, putative class members Louisiana District Attorneys' Retirement System ("LADARS"), Richard Cameron ("Cameron"), Bruce Chernofsky and Samuel & Harriet Chernofsky (the "Chernofsky Family") timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment as lead plaintiff and for approval of Pomerantz Haudek Block Grossman & Gross, LLP as lead counsel;

WHEREAS, pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court is to presume that the "most adequate plaintiff" is the person or group of persons who, "in the determination of the court has the largest financial interest in the relief sought by the class;"

WHEREAS, pursuant to the PSLRA, the lead plaintiff is vested with authority to select and retain lead counsel, subject to Court approval;

WHEREAS, OTRS, Mississippi PERS, ABP and Raiffeisen independently determined that it would be in the best interests of the Class to prosecute the Actions jointly as Lead Plaintiffs, with their respective law firms, Nix, Patterson & Roach, L.L.P., Bernstein Litowitz Berger & Grossmann LLP, Grant & Eisenhofer, P.A., and Schiffrin & Barroway, LLP, serving as Lead Counsel for the Class;

WHEREAS, OTRS, Mississippi PERS, ABP and Raiffeisen, whether taken independently of one another or together, have the largest loss of all other persons who filed motions seeking appointment as lead plaintiff;

WHEREAS, counsel for STG, the Police and Fire Retirement System of the City of Detroit, the Government Employees' Retirement System of the Virgin Islands, the Policemen's Annuity & Benefit Fund of Chicago, LADARS, Cameron and the Chernofsky Family have represented to counsel for OTRS, Mississippi PERS, ABP and Raiffeisen that they either support or do not oppose the appointment of OTRS, Mississippi PERS, ABP and Raiffeisen as Lead Plaintiffs for the Class and their choice of Lead Counsel for the Class; and

WHEREAS, counsel for the ISBI have represented to counsel for OTRS, Mississippi PERS, ABP and Raiffeisen that ISBI does not take any position on this matter.

IT IS HEREBY STIPULATED AND AGREED, by OTRS, Mississippi PERS, ABP and Raiffeisen through their undersigned counsel as follows:

      1.    OTRS, Mississippi PERS, ABP and Raiffeisen shall, subject to the approval of the Court, be appointed Lead Plaintiffs pursuant to Section 21(D)(a)(3) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B) in the Actions and all related actions consolidated herewith; and

      2.    Lead Plaintiffs' selection of the law firms of Nix, Patterson & Roach, L.L.P., Bernstein Litowitz Berger & Grossmann LLP, Grant & Eisenhofer, P.A., and Schiffrin & Barroway, LLP shall, subject to the approval of the Court, be approved as Lead Counsel for the Class pursuant to Section 21(D)(a)(3)(B)(v) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B)(v).

Respectfully submitted,

NIX, PATTERSON & ROACH, L.L.P.

Dated: May 23, 2005          By:     *Bradley Beckworth/JKC*

Bradley E. Beckworth
Jeffrey J. Angelovich
Susan Whatley
205 Linda Drive
Daingerfield, TX 75638
Telephone:    (903) 645-7333
Facsimile:     (903) 645-4415

*Counsel for OTRS and Proposed Lead Counsel*

BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP

Dated: May 23, 2005          By:     *Gerald Silk/JKC*

Douglas M. McKeige
Gerald H. Silk
Jai K. Chandrasekhar
1285 Avenue of the Americas
New York, NY 10019
Telephone:    (212) 554-1400
Facsimile:     (212) 554-1444

*Counsel for Mississippi PERS and*
*Proposed Lead Counsel*

GRANT & EISENHOFER, P.A.

Dated: May 23, 2005          By:     *Jay Eisenhofer/JKC*

Jay W. Eisenhofer
Sidney S. Liebesman
James L. Sabella
45 Rockefeller Center
650 Fifth Avenue
New York, NY 10111
Telephone:    (212) 755-6501
Facsimile:     (212) 755-6503

- and -

Geoffrey C. Jarvis
Sharan Nirmul
1201 North Market Street, Suite 2100
Wilmington, DE 19801
Telephone:    (302) 622-7000
Facsimile:    (302) 622-7100

*Counsel for ABP and Proposed Lead Counsel*

**SCHIFFRIN & BARROWAY, LLP**

Dated: May 23, 2005        By:    _Stuart Berman /OKC_
                                  Richard S. Schiffrin
                                  Stuart L. Berman
                                  Darren J. Check
                                  Sean M. Handler
                                  Robin Winchester
                                  280 King of Prussia Road
                                  Radnor, PA 19087
                                  Telephone:    (610) 667-7056
                                  Facsimile:    (610) 667-7706

*Counsel for Raiffeisen and
Proposed Lead Counsel*

**IT IS SO ORDERED:**

Dated: _June 27, 2005_        _[signature]_
                              The Honorable Naomi Reice Buchwald, U.S.D.J.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SIPEX CORPORATION SECURITIES LITIGATION _____/ AND CONSOLIDATED CASES _____/ | No. C 05-00392 WHA **ORDER APPOINTING LEAD PLAINTIFFS GLOBIS CAPITAL PARTNERS LP AND SHAYE HIRSCH** |

**INTRODUCTION**

Pursuant to the Private Securities Litigation Reform Act of 1995 (PSLRA), Pub. L. No. 104–67, 109 Stat. 737 (codified as additions and amendments to 15 U.S.C. 77–78 and 18 U.S.C. 1964), this order appoints Globis Capital Partners LP and Shaye Hirsch as the lead plaintiffs for two cases previously consolidated as the above-named action. The consolidated actions involve securities fraud. This order sets forth the criteria for selection and approval of lead plaintiff and also sets forth the procedure that will be used for the selection and approval of class counsel.

**FACTS**

These consolidated class actions arise from the alleged financial misrepresentation by Sipex Corporation. Sipex designs, manufactures and markets semiconductors that are used by original equipment manufacturers in the computing, consumer electronics, communications and networking infrastructure markets (Jacobson Compl. ¶ 2). During the alleged class period, Sipex reported positive results in its SEC filings (*id.* ¶ 3).[1] In publicly disseminated press

_____

[1] The alleged class period is April 10, 2003, through and including January 20, 2005.

1   releases, the company attributed the results to increased semiconductor sales and cost savings

2   resulting from restructuring its operations (*ibid*).  On January 20, 2005, after the market closed,

3   Sipex issued a press release announcing that it might need to restate its reported financial

4   statements for fiscal year 2003 and for the first three quarters of fiscal year 2004 due to possible

5   "improper recognition of revenue" and that the company's audit committee and board of

6   directors had commenced an internal investigation of the matter (*id.* ¶ 4).  As a result of the

7   investigation, Sipex stated that it would not be able to file its 2004 annual report with the SEC

8   on time (*ibid.*).  In reaction to this news, the price of Sipex common stock dropped 23% from its

9   previous trading day's closing price (*ibid*).

10          Four class actions were filed.[2]  Plaintiffs named Sipex corporation and its officers,

11   Douglas M. McBurnie, Walid Maghribi, Phillip Kagel and Clyde Ray Wallin as defendants.

12   The complaints alleged that defendants violated Section 10(b) and 20(a) of the Securities

13   Exchange Act of 1934 and Rule 10b-5, promulgated thereunder, by making allegedly false and

14   misleading statements, causing plaintiffs to purchase Sipex securities at artificially inflated

15   prices.

16          Initially, there were several competing movants for the position of lead plaintiff:

17   Walter Bednarszyk and James T. Collier, Roy and Margaret Gentles, the "Young Group" that

18   included six individuals and the "Globis Group" that included Globis Capital Partner LP and

19   Shaye Hirsch.  Before the hearing on the appointment of lead plaintiff, the Court requested each

20   lead plaintiff to complete a questionnaire.  The Court's questionnaire alerted movants that it

21   would evaluate the qualifications of single investors, not groups, as lead plaintiffs.  The Court's

22   questions focused on the qualifications of the lead plaintiff, their experience in managing

23   litigation, potential conflicts and transactions related to the instant securities case.  The Court

24   received back two questionnaires, one from Paul Packer, on behalf of Globis Capital Partners

25

26

27          [2]  Initially the following five related actions were filed:  *Barbara Keller v. Sipex*, C05-00331 WHA,
     *Coil Partners, LLC v. Sipex*, C05-00392 WHA, *Levy v. Sipex*, C05-00505 WHA and *Alfred H. Jacobson v.*
28   *Sipex*, C05-00712 WHA.  Eventually, all the actions voluntarily dismissed except for *Coil Partners, LLC v.*
     *Sipex* and *Alfred H. Jacobson v. Sipex*.  They were consolidated into this action.

2

United States District Court
For the Northern District of California

1   LP, and one from Shaye Hirsch. None of the other movants returned questionnaires.

2   Subsequently, the Gentiles moved for withdrawal of appointment as lead plaintiff.

3       The Court held a hearing on the appointment of lead plaintiff on May 12, 2005. The

4   only candidates present were Mr. Packer, on behalf of Globis, and Mr. Hirsch. The Court

5   questioned both plaintiffs on their qualifications, experience and financial loss.

6       Mr. Packer is the managing member of Globis Capital Partners LP, a hedge fund that

7   deals with small and mid-cap-value companies. He has previous experience as a lead-plaintiff.

8   Before the alleged class period he held 520,570 shares of Sipex stock. During the alleged class

9   period he purchased 1,110,086 shares of stock and sold 1,201,229 shares of stock. Despite

10  being a net seller during the alleged class period, Globis' alleged estimated loss is $725,857, a

11  point discussed below. Mr. Hirsch is an individual investor. During the alleged class period he

12  bought $7,000 shares. He estimates his total loss to be between $20,000 and $25,000. Globis

13  and Mr. Hirsch asked the Court to appoint them as joint lead-plaintiffs. Mr. Packer and Mr.

14  Hirsch are friends and their families have known each other for many years. Each had seen the

15  published notice of the class action and had contacted the law firm of Bernstein Liebhard &

16  Lipshitz LLP. The firm represents Mr. Packer in other matters and Mr. Hirsch had a personal

17  relationship with a partner at the firm.

18      At the hearing, the Court noted that Globis appears to have been a net seller and asked

19  counsel to provide the Court with supplemental briefing as to whether defendants would assert

20  at class certification that Globis is not an appropriate class representative. The defendants and

21  Globis provided the Court with supplemental briefing. Defendants' position is that Globis,

22  being a net seller, profited from the alleged stock price inflation and therefore is not

23  representative of a typical and adequate plaintiff in this class action. Globis' position is that it

24  is an adequate and typical lead plaintiff in this class action if one calculates financial loss using

25  a "first-in/first-out" (FIFO) method of accounting. This issue is addressed in depth below.

26      After the hearing, three of the fives cases were voluntarily dismissed and the Court

27  issued an order consolidating the remaining two actions. The following two actions were

28

United States District Court
For the Northern District of California

3

1  consolidated into the present case: *Coil Partners, LLC v. Sipex*, C05-00392 WHA and *Alfred*

2  *H. Jacobson v. Sipex*, C05-00712 WHA.

3                                    ANALYSIS

4        The PSLRA seeks to place a real investor, not a lawyer, in charge of the litigation on

5  behalf of the class. This statutory responsibility now resides in what the PSLRA calls the "lead

6  plaintiff." This representative acts as a fiduciary for all members of the proposed class and

7  must provide fair and adequate representation and management to obtain the largest recovery

8  for the proposed class consistent with good faith and meritorious advocacy.

9        The PSLRA provides that the Court "shall appoint as lead plaintiff the member or

10  members of the purported plaintiff class that the court determines to be the most capable of

11  adequately representing the interests of the class members in accordance with this

12  subparagraph." 15 U.S.C. § 78u-4(a)(3)(B)(l). The Act creates a rebuttable presumption that

13  the most adequate plaintiff should be the plaintiff who:  (1) has brought the motion for

14  appointment of lead counsel in response to the publication of notice; (2) has the "largest

15  financial interest" in the relief sought by the class; and (3) otherwise satisfies the requirements

16  of FRCP 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc). The above presumption may be

17  rebutted only upon proof that the presumptive lead plaintiff (1) will not fairly and adequately

18  protect the interests of the class or (2) is subject to "unique defenses" that render such plaintiff

19  incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)–(bb).

20        The PSLRA does not provide any guidance concerning the method of calculating which

21  plaintiff has the "largest financial interest." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Courts

22  in this district have equated "largest financial interest" with the amount of potential recovery.

23  *See In Re Critical Path, Inc. Sec Litig.*, 156 F. Supp. 2d 1102, 1107–08 (N.D. Cal 2001); *In Re*

24  *Network Assocs., Inc. Sec. Litig.*, 76 F. Supp.2d 1017, 1030 (N. D. Cal. 1999); *Weisz v. Calpine*

25  *Corp.*, 2002 WL 32818827, *5 (N.D. Cal 2002). In determining which lead plaintiff has

26  suffered the greatest loss under the PSLRA, the law regulating securities losses must be

27  reviewed in part, a discussion that will presently include the issue of the "first-in/first-out"

28  (FIFO) and "last-in/first-out" (LIFO) methods.

United States District Court
For the Northern District of California

4

United States District Court
For the Northern District of California

1    Under the purchaser-seller rule, only purchasers who actually buy or sellers who

2  actually sell in reliance on fraud may sue. Those who simply refrain from buying or selling,

3  even if in reliance on fraud, may not sue. *Blue Chip Stamps et al. v. Manor Drug Stores*, 421

4  U.S. 723, 731–755 (1975). The class period begins when the market was first defrauded. It

5  ends on the date when the truth was fully revealed or when the misinformation became too stale

6  to matter. Those defrauded in between can sue. Once the full truth comes out, an investor

7  electing to keep the stock and gamble on the future events cannot sue for future losses.

8  Otherwise, securities manipulators would become guarantors of a floor market price — even

9  after their manipulations had run their course. *See, e.g., SEC v. Shapiro*, 494 F.2d 1301, 1309

10  (2nd Cir. 1979).

11    The rule of loss causation, in the typical case, requires that the purchaser prove that

12  when the truth came out, the stock price dropped and did so by reason of the exposure of the

13  fraud rather than by reason of industry-wide down trends or other negative factors.

14  *Dura Pharmaceuticals, Inc., v. Michael Brudo*, ___ U. S. ___, 125 S. Ct. 1627, 1631 (2005).

15  Put another way, it is not enough to show that at the time of the purchase, the misrepresentation

16  had created a so-called "fraud premium," *i.e.*, that had the truth been known at the time of

17  purchase, the market price would have been lower. Rather than focusing on the time of the

18  *purchase*, we must, for damages purposes, focus on the time of the *sale* and determine the

19  extent to which revelation of fraud depressed the price as of the sale date. To be more precise,

20  the key inquiry is to isolate the extent of misrepresentations (originally inducing the purchase)

21  that became known during the time the shares were held and then to determine the contributory

22  and cumulative effect of those revelations on the price as of the date of sale, the date of sale

23  being the date of an actual sale within the class period or, constructively, the end of the class

24  period for all shares held to the end.

25    Suppose a share is purchased for $100 in reliance on an actionable misrepresentation.

26  The entire truth then suddenly comes out. The share price immediately drops $60. The only

27  reason for the plunge is the revelation. The entire $60 is recoverable.

28

**United States District Court**
For the Northern District of California

1   What happens, however, if the defrauded investor sells before the end of the class

2   period?  In the case of a purchaser (within the class period) who sells *before any* of the truth is

3   revealed, of course, recovery might be doubtful.  This is because the market has absorbed the

4   misinformation and imposed a fraud premium on both the purchase and sale.  Often the fraud

5   premium will be the same in each case, thus cancelling the loss.  In the case of a purchaser

6   (within the class period) who sells immediately after a partial revelation of the truth with a

7   resultant plunge in the stock price, the critical inquiry, again, is the extent to which the partial

8   revelation has depressed the price as of the date of the sale.  Again, the focus is not on the fraud

9   premium on the day of purchase.  The focus must be on the day of sale and on the contribution

10  to the loss due to the partial revelation of fraud.

11   Turning now to a scenario closer to our immediate case, what happens when an investor

12  already owns some shares going into the class period and/or trades actively within the class

13  period?  When an investor already owns shares at the outset of the class period and sells them

14  during the class period, the investor actually profits from the fraud by recovering a fraud

15  premium over and above the true value of the shares.  When the same investor already holds

16  shares at the outset of the class period but, in addition, buys and sells shares during the class

17  period, the gains received must be used to reduce the losses incurred.  Otherwise, the investor

18  would reap a windfall.

19   Over the course of the class period, there are two items needed for this calculus.  One

20  may be called the "loss-causation contribution."  This is the contribution made to the overall

21  loss by revelation of fraud between the dates of the purchase and sale.  This item is relevant to

22  recoverable damages as set forth by the Supreme Court.  *See Dura Pharm. Inc.,* 125 S. Ct. at

23  1631–2.  The other is the "fraud premium," *i.e.,* the extent to which the price remains inflated

24  due to unrevealed fraud.  The second item is relevant to the offsetting of windfall for shares sold

25  during the class period.

26   The LIFO/FIFO issue arises, among other scenarios, when a trader has an inventory of

27  the shares in question going into the class period and trades during the class period, as here.

28  Suppose one share is owned going into the class period, another share is then bought in reliance

United States District Court

For the Northern District of California

1   on the fraud, one share is then sold midway through the class period and, finally, one share is

2   sold at the end of the class period.  Recovery is allowable, of course, only for the share

3   purchased during the class period.  But which share was sold when?  Under FIFO, the

4   previously-held (non-actionable) share would be the first sold share.  The fraud-induced

5   (actionable) share would be the last.  Under LIFO, it would be the opposite.  In doing the math

6   for the recoverable loss and the offsetting windfall, it would be necessary to determine the fraud

7   premium and loss-causation contribution.  Depending on which of the two sales is deemed to be

8   actionable, these calculations will vary.[3]

9        The FIFO method would dictate that the actionable purchase was sold later.  That loss

10  would be offset by a windfall of any fraud premium received on the first sale.  The LIFO

11  method would dictate that the actionable purchase was sold first.  There would be no windfall

12  on the later sale since, by definition, any fraud premium will always completely be eliminated

13  by the end of the class period.  This, plus the fact that the recoverable loss will often be less

14  during the mid-range of the class period explains why defendants prefer the LIFO method and

15  plaintiffs prefer the FIFO, although this preference can be reversed in particular cases.

16       In the Court's view, LIFO is closer to the economic realities of market investing and the

17  purposes of the securities acts.  If a trader buys and sells the same number of shares of the same

18  issue, on the same day, the economic reality of the basic investment decision is a net of one

19  against the other, *i.e.*, no change in position, at least as of the end of the day.  Put differently, if

20  a trader buys and sells shares of the same issue over a brief period, the trader is relying on the

21  same basic market analysis and same market information.  If a fraudulent misrepresentation has

22  affected the market, it has affected *both* sides of the equation.  The LIFO method better tracks

23  the impact of investment decisions and how market fraud impacts them.  This is at the core of

24  the securities acts.  So, this Court will follow a LIFO convention for investors who both buy and

25  sell within the class period.

26

27   _____

28     [3]  This Court expresses no opinion on the scenario in which the stock price goes up during the class
     period in the presence of fraud but where the stock price would have gone up even in absence of the fraud. *See*
     *Dura Pharm., Inc.*, 125 S. Ct. at 1632.

                                                7

United States District Court<br>For the Northern District of California

1      This conclusion is in accordance with the weight of authority. *See, e.g., In re McKesson*

2      *HBOC, Inc. Sec. Litig.,* 97 F. Supp. 2d 993, 996 fn.2 (N. D. Cal. 1999); *In re Network Assoc.*

3      *Inc. Sec. Litig.,* 76 Supp. 2d 1017, 1027 (N.D. Cal. 1999); *Weisz v. Calpine Corp.,* 2002 WL

4      32818827, *7 (N.D. Cal 2002); *In re Clearly Canadian Sec. Litig.,* 1999 U.S. Dist. LEXIS

5      14273, *12–14 (N.D. Cal. 1999); *In re Comdisco Sec. Litig.,* 150 F. Supp. 2d 943, 945 (N.D. Ill.

6      2001).

7      At the May 12, 2005 hearing, counsel for Globis relied on an unpublished decision,

8      *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.,* 2004 U.S. Dist. LEXIS

9      27008 (N.D. Cal. 2004), that cites *Broudo v. Dura Pharmaceuticals Inc.,* 339 F.3d 933, 938

10     (9th Cir. 2003), for the proposition that damages may be proved by simply showing that

11     plaintiffs purchased stock at an inflated price. As discussed, *Broudo* has been subsequently

12     overturned by *Dura Pharmaceuticals, Inc. v. Michael Broudo,* 125 S. Ct. 1627, 1631 (2005). In

13     its supplemental briefing, Globis cited published cases that used FIFO as an accounting

14     methodology for determining financial losses and several unpublished cases. *See e.g. Chill v.*

15     *Green Tree Financial Corp.,* 181 F.R.D. 398, 411 (D. Minn 1998); *Vansguard v. Ariba, Inc.,*

16     C-03-00277 JF, slip op. (N.D. Cal. 2003). These cites, however, are not helpful. While the

17     courts accepted the calculation of damages based on FIFO, they did not arrive at the application

18     of FIFO after a reasoned discussion of the merits. It was merely a background fact.

19     Since Globis, an active trader, was a net *seller* throughout the class period, there is a

20     plausible chance that Globis will have no net recovery. This is not yet certain, however,

21     because the necessary calculations are unknowable at this early stage. Only with the benefit of

22     expert evidence could the necessary items be determined and then netted. For the time being,

23     Globis has a sufficient stake to be appointed as one of two lead plaintiffs. Because the net loss

24     is speculative for Globis at this point and because Globis may eventually be shown to have no

25     net loss, Mr. Hirsch will be made a co-lead plaintiff. This ruling is without prejudice to defense

26     arguments to be made later, on the class certification motion. The same is true for the other

27     Rule 23 issues raised by the defense. (No other competing lead plaintiff is challenging the Rule

28     23 qualifications of the pending candidates).

8

**United States District Court**
For the Northern District of California

### RESPONSIBILITIES OF LEAD PLAINTIFF

1    The lead plaintiffs must take affirmative steps to keep themselves informed at all times

2 of the progress and status of the case, the strengths and weaknesses of the case, the prospects for

3 settlement, and the resources invested in the suit or proposed to be invested. With respect to

4 each major litigation event, such as important motions, settlement discussions, trial, and trial

5 preparation, the lead plaintiffs must actively inform themselves in advance and shall have the

6 authority and responsibility to direct counsel, after, of course, receiving the advice of counsel.

7 The lead plaintiffs must consult with counsel in advance to determine whether major tasks

8 proposed by counsel are likely to add more value to the case than would be incurred in time and

9 expense. The lead plaintiffs shall meet in person with lead trial counsel at least quarterly to

10 review the progress and status of the case, shall attend all major hearings and mediation

11 sessions and shall, at a minimum, attend all sessions of the trial where the jury is present. And,

12 of course, the lead plaintiff must give testimony. No settlement will be approved by the Court

13 without the lead plaintiffs' careful recommendation in favor of it. Reasonable travel, telephone

14 and business expenses incurred as a result of the lead plaintiff duties, if detailed and itemized,

15 may be reimbursed as expenses from any recovery.

16    Appended to this order are two forms of certification which Mr. Hirsch and Mr. Packer,

17 on behalf of Globis Partners LLP, individually, must sign, file and serve on or before

18 JUNE 1, 2005, in order to complete the appointment, obligating themselves to carry out the

19 responsibilities as lead counsel and the procedure for selecting and approving class counsel, a

20 procedure to which this order now turns.

### PROCEDURE FOR SELECTING AND APPROVING CLASS COUNSEL

21    Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the

22 court, select and retain counsel to represent the class." 15 U.S.C. 78u-4(a)(3)(B)(v). Selection

23 and approval of class counsel are important responsibilities for the lead plaintiff and the court.

24 The selection and approval require an assessment of the strengths, weaknesses and experience

25 of counsel as well as the financial burden — in terms of fees and costs — on the class.

9

1  *Wenderhold v. Cylink Corp.*, 191 F.R.D. 600, 602–03 (N.D. Cal. 2000); *Network Assocs.*,

2  76 F. Supp. 2d at 1033–34.

3    Any important decision made by a fiduciary should be preceded by due diligence. A

4  lead plaintiff is a fiduciary for the investor class. No decision by the lead plaintiff is more

5  important than the selection of class counsel. Consequently, the lead plaintiff should precede

6  his or her choice with due diligence. The extent of such due diligence is a matter of judgment

7  and reasonableness based on the facts and circumstances.

8    The lead plaintiffs should immediately proceed to perform their due diligence and,

9  through counsel, move for the appointment and approval of their selected counsel no later than

10  JUNE 17. The motion should be accompanied by declarations from each lead plaintiff

11  explaining the due diligence undertaken by each with respect to the selection of class counsel.

12  The declarations should also explain why the counsel selected was favored over other potential

13  candidates. The declarations should be filed under seal and not served on defendants. The

14  motion for approval of lead plaintiffs' choice of counsel, however, should be served on defense

15  counsel. No hearing will be held on the motion unless the Court determines that it would be

16  beneficial. Once class counsel is approved, the first order of business will be to file a

17  consolidated complaint. The Court expects this to be done by JULY 14 and any motion to

18  dismiss to be filed by AUGUST 11.

19

20    **IT IS SO ORDERED.**

21

22  Dated: May 24, 2005.

23    WILLIAM ALSUP
       UNITED STATES DISTRICT JUDGE

24

25

26

27

28

United States District Court
For the Northern District of California

1
2
3
4
5
6                IN THE UNITED STATES DISTRICT COURT
7
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
9
IN RE SIPEX CORPORATION                    No. C 05-00392 WHA
10  SECURITIES LITIGATION
11  _____/        **CERTIFICATION OF LEAD
                                             PLAINTIFF SHAYE HIRSCH**
12  AND CONSOLIDATED CASES
13  _____/

14        I have read and understand the Court's Order Appointing Lead Plaintiffs Globis Capital

15  Partners LP and Shaye Hirsch, including the duties of lead plaintiff and the procedure for

16  selecting and approving class counsel.  I agree and promise to faithfully execute those provisions

17  and to abide by the order.  Once class counsel are selected and approved, I will work and

18  cooperate fully with such counsel for the benefit of the investor class.

19

20  Dated:

21                                          Mr. Shaye Hirsch  _____

22                                          Address: _____

23

24                                          _____

25

26

27

28

United States District Court
For the Northern District of California

1
2
3
4
5
6          IN THE UNITED STATES DISTRICT COURT
7
           FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
9
10  IN RE SIPEX CORPORATION              No. C 05-00392 WHA
    SECURITIES LITIGATION
11  _____/    **CERTIFICATION OF LEAD
                                         PLAINTIFF GLOBIS CAPITAL**
12  AND CONSOLIDATED CASES               **PARTNERS LP**
13  _____/

14      I have read and understand the Court's Order Appointing Lead Plaintiffs Globis Capital

15  Partners LP and Shaye Hirsch, including the duties of lead plaintiff and the procedure for

16  selecting and approving class counsel.  I agree and promise to faithfully execute those

17  provisions and to abide by the order.  Once class counsel are selected and approved, I will work

18  and cooperate fully with such counsel for the benefit of the investor class.

19

20  Dated:                               _____

21                                       Mr. Paul Packer on behalf of Globis
22                                       Partners LP

23                                       Address: _____

24                                       _____

25

26

27

28

United States District Court
For the Northern District of California