# EXHIBIT F-5

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22077464 (S.D.N.Y.)
(Cite as: 2003 WL 22077464 (S.D.N.Y.))

Page 1

▷

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
In re NORTEL NETWORKS CORP. SECURITIES
LITIGATION
No. 01 Civ. 1855(RMB).

Sept. 8, 2003.

Investor, on behalf of putative class, brought securities fraud action against corporation and its officers. Investor moved for class certification. The District Court, Berman, J., held that: (1) investor satisfied prerequisites to class certification; (2) common questions of law or fact predominated; (3) class action was superior method of adjudicating controversy; and (4) court had subject matter jurisdiction over foreign investors for purposes of class certification.

Motion granted.

West Headnotes

[1] Federal Civil Procedure ⚖187
170Ak187 Most Cited Cases
Investor seeking class certification in securities fraud action satisfied numerosity prerequisite, inasmuch as class likely numbered in the hundreds or thousands. Securities Exchange Act of 1934, § § 10(b), 20(a), as amended, 15 U.S.C.A. § § 78j(b), 78t(a); 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 23(a)(1), 28 U.S.C.A.

[2] Federal Civil Procedure ⚖187
170Ak187 Most Cited Cases
Securities fraud case satisfied commonality prerequisite to class certification, given existence of such common legal and factual issues as whether defendants violated federal securities laws through acts and conduct alleged and whether corporation issued false and misleading statements during class period. Securities Exchange Act of 1934, § § 10(b), 20(a), as amended, 15 U.S.C.A. § § 78j(b), 78t(a); 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.

[3] Federal Civil Procedure ⚖187
170Ak187 Most Cited Cases
Investor seeking class certification in securities fraud action satisfied typicality prerequisite to certification, despite contention that investor's use of indexed trading strategy did not involve reliance on integrity of market and would give rise to atypical defenses, given that reliance was clearly alleged and jury could conclude that pursuing index strategy entailed reliance. Securities Exchange Act of 1934, § § 10(b), 20(a), as amended, 15 U.S.C.A. § § 78j(b), 78t(a); 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.

[4] Federal Civil Procedure ⚖187
170Ak187 Most Cited Cases
Investor satisfied prerequisite to class certification addressing adequacy of representation in securities fraud action, in that investor's claims appeared to be in harmony with those of other members of proposed class, investor took several significant "hands on" steps to prosecute case, and its counsel was qualified to pursue securities fraud litigation. Securities Exchange Act of 1934, § § 10(b), 20(a), as amended, 15 U.S.C.A. § § 78j(b), 78t(a); 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.

[5] Federal Civil Procedure ⚖187
170Ak187 Most Cited Cases
Common questions of law or fact predominated in securities fraud action, supporting investor's motion for class certification, notwithstanding defendants' contention that investor was not entitled to rely on fraud-on-the-market theory of reliance because market was not efficiently driven by fundamental value. Securities Exchange Act of 1934, § § 10(b), 20(a), as amended, 15 U.S.C.A. § § 78j(b), 78t(a); 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

[6] Federal Civil Procedure ⚖187
170Ak187 Most Cited Cases
Class action was superior method of resolving securities fraud litigation, supporting class certification, given that claims likely would be numerous but would, in many instances, be too small to pursue individually, and that multiple lawsuits would be inefficient. Securities Exchange Act of 1934, § § 10(b), 20(a), as amended, 15 U.S.C.A. § §

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22077464 (S.D.N.Y.)
(Cite as: 2003 WL 22077464 (S.D.N.Y.))

Page 2

78j(b), 78t(a); 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

[7] Federal Civil Procedure ⇐187
170Ak187 Most Cited Cases
For purposes of class certification in securities fraud action, district court had subject matter jurisdiction over claims of foreign buyers who acquired corporation's stock on foreign exchange, given allegations that, during class period, corporation and its officers extended vendor financing to United States customers which they knew to be uncreditworthy so as to artificially inflate corporation's revenues, and thus engaged in substantial fraudulent activity in United States directly causing losses to foreign investors, and given court's ability to shape class more precisely to fit issues of case as they emerged during litigation. Securities Exchange Act of 1934, §§ 10(b), 20(a), as amended, 15 U.S.C.A. §§ 78j(b), 78t(a); 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

DECISION AND ORDER ON CLASS CERTIFICATION

BERMAN, J.

*1 THIS DOCUMENT RELATES TO: ALL CLASS ACTIONS

I. Background

In this action filed on March 2, 2001, the Trustees of the Ontario Public Employees' Union Pension Trust Fund ("OPTrust"), on behalf of a putative class, allege that Nortel Networks Corporation ("Nortel"), John Andrew Roth, Nortel's Chief Executive Officer and President during the Class Period, Clarence Chandran, Nortel's Chief Operating Officer during the Class Period, and Frank Dunn, Nortel's Chief Financial Officer during the Class Period (collectively, "Defendants") violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) by, among other things, "knowingly or recklessly issu[ing] a stream of materially false and misleading representations to the investing public." (Second Consolidated and Amended Class Action Complaint ("Complaint") ¶ 3, at 2.) [FN1]

   FN1. For a more detailed recitation of the facts, see this Court's Order resolving Defendants' motion to dismiss the Complaint against Nortel, reported at 238 F.Supp.2d 613 (S.D.N.Y.2003).

OPTrust moves to certify a class "consisting of all persons and entities who, during the period October 24, 2000 and continuing through and including February 15, 2001, purchased Nortel common stock or call options or sold Nortel put options, and who suffered damages thereby, including, but not limited to, those persons who traded in Nortel Securities on the New York Stock Exchange and/or the Toronto Stock Exchange." (Mem. of Law in Supp. of Lead Pl.'s Motion for Class Certification ("Pl.Br.") at 7.) OPTrust argues that "this action meets all of the requirements of Rule 23 of the Federal Rules of Civil Procedure for the maintenance of a class action" (Pl. Br. at 2) and, among other things, that all members of the class relied upon Defendants' allegedly "deceptive and materially false and misleading statements to the investing public." (Compl. ¶ 198, at 84; see id. ¶ 203, at 86 ("Lead Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, traded in Nortel Securities at prices artificially inflated or distorted by defendants' wrongful conduct.") Defendants oppose class certification, arguing that (1) OPTrust is atypical because it is subject to unique defenses; (2) OPTrust is an inadequate representative because it has ceded control of the litigation to its lawyers; (3) common questions of law or fact do not predominate "because plaintiffs cannot rely upon the fraud-on-the-market theory of reliance." (Def. Mem. of Law in Opp'n to Lead Pl.'s Motion for Class Certification ("Def.Br.") at 1-12); and (4) the Court does not have subject matter jurisdiction over foreign purchasers of Nortel Securities. For the reasons set forth below, the Court grants Plaintiff's motion for class certification and appoints OPTrust as Class representative.

II. Standard of Review

*2 To succeed on a motion to certify a class, plaintiffs first must satisfy the prerequisites listed in Rule 23(a) of the Federal Rules of Civil Procedure: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a); In re AMF Bowling Sec. Litig., 99 Civ. 3023, 2002

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                     Page 3
Not Reported in F.Supp.2d, 2003 WL 22077464 (S.D.N.Y.)
(Cite as: 2003 WL 22077464 (S.D.N.Y.))

WL 461513, at *3 (S.D.N.Y. Mar.26, 2002). "Second, plaintiffs must show that the putative class falls within one of the three categories set forth in Rule 23(b)." *Id.* [FN2]

> FN2. Plaintiffs seek certification under Rule 23(b)(3), which requires that the Court find "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

"[T]he Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation and has explicitly noted its preference for class certification in securities cases." *Mavwalt v. Parker & Parsley Petroleum Co.,* 147 F.R.D. 51, 54 (S.D.N.Y.1993); *see In re Blech Sec. Litig.,* 187 F.R.D. 97, 102 (S.D.N.Y.1999) ("Class action treatment of related claims is particularly appropriate when plaintiffs seek redress for violations of the securities laws....").

"Although a court must conduct a rigorous inquiry in determining whether the requirements of Rule 23 have been satisfied, it must accept plaintiffs' allegations as true and refrain from conducting an examination of the merits when determining the propriety of class certification." *In re AMF,* 2002 WL 461513, at *3 (citations omitted); *see Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 291 (2d Cir.1999); *Shelter Realty Corp. v. Allied Maintenance Corp.,* 574 F.2d 656, 661 n. 15 (2d Cir.1978).

III. Analysis

The Court has reviewed, among other things, Pl. Br., dated March 21, 2003; Def. Br., dated May 30, 2003, which attaches the (expert) reports of Professor Paul A. Gompers and Professor Christopher M. James; "Lead Plaintiff's Reply Memorandum of Law in Further Support of its Motion for Class Certification," dated August 1, 2003 ("Pl.Reply"), which attaches the (expert) reports of Professor Anthony Saunders, Blaine F. Nye, Ph.D., and Professor Sanjai Bhagat; and the Complaint, dated January 18, 2002. The Court heard oral argument on September 3, 2003.

A. *Fed.R.Civ.P. 23(a)(1)--Numerosity*

[1] According to OPTrust, approximately 3,006,967,918 shares of Nortel were outstanding during the class period. (Pl. Br. at 7; *see* Compl. ¶ 39, at 15.) OPTrust estimates that "there are, at a minimum, thousands of members of the Class who purchased Nortel common stock during the Class Period." (Compl. ¶ 39, at 15.) Defendants do not dispute that the proposed class is sufficiently numerous and that joinder would be impractical. (*Accord* Def. Br.) Indeed, the class likely will number in the hundreds or thousands. *See Mavwalt,* 147 F.R.D. at 55; *see also In re Frontier Ins. Group, Inc. Sec. Litig.,* 172 F.R.D. 31, 40 (E.D.N.Y.1997) (" 'In securities fraud actions brought against publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.' " (citation omitted)); *Dietrich v. Bauer,* 192 F.R.D. 119, 123 (S.D.N.Y.2000).

B. *Fed.R.Civ.P. 23(a)(2)--Commonality*

*3 [2] OPTrust asserts that common legal and factual issues here include, among others, "whether defendants violated the federal securities laws by the acts and conduct alleged" and "whether Nortel issued false and misleading statements during the Class Period." (Pl. Br. at 10.) Defendants do not dispute commonality. (*Accord* Def. Br.) "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *Robinson v. Metro-North Commuter R.R.,* 267 F.3d 147, 155 (2d Cir.2001) (citation omitted). "The commonality requirement of Rule 23(a)(2) has been applied permissively by courts in the context of securities fraud litigation." *In re Blech,* 187 F.R.D. at 104; *see also In re Frontier,* 172 F.R.D. at 40.

C. *Fed.R.Civ.P. 23(a)(3)--Typicality*

[3] OPTrust's claims, as well as those of the other members of the proposed class, arise out of alleged misrepresentations by Defendants concerning Nortel. (*See* Pl. Br. at 10-11.) OPTrust argues, among other things, that its "use of an indexed trading strategy [does not] give[ ] rise to atypical defenses" because "indexed trading typifies its reliance on the integrity of the market." (Pl. Reply at 5.) Moreover, OPTrust alleges specifically that it relied on Defendants' alleged misrepresentations. (*See, e.g.,* Compl. ¶ 203, at 86 ("Lead Plaintiff ... relying on the materially false and misleading statements described herein, ... traded in Nortel Securities ...." (emphasis added))); *see also In re Avon Sec. Litig.,* 91 Civ. 2287, 1998

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22077464 (S.D.N.Y.)
(Cite as: 2003 WL 22077464 (S.D.N.Y.))

Page 4

WL 834366, at *5 (S.D.N.Y. Nov.30, 1998) ("Decisions regarding class certification are to be based on the allegations set forth in the complaint, which are accepted as true."). [FN3]

> FN3. In addition, OPTrust argues that "[c]ourts have repeatedly held that additional purchases after the price of the security drops as a result of corrective disclosure do *not* give rise to atypical defenses." (Pl. Reply at 5-6 (citing cases)); *see, e.g., In re Frontier,* 172 F.R.D. at 42 (concluding that a plaintiff's purchase of defendant's stock after the disclosure of alleged misrepresentations "has no bearing on whether or not she relied on the integrity of the market during the class period" and did not defeat typicality).

Defendants dispute OPTrust's claim that it satisfies the typicality requirement because " 'class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation .' " (Def. Br. at 12-13 (citing, among other opinions, *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir.1990)).) Defendants argue that, unlike the putative class described in the Complaint, OPTrust "did not rely on the 'integrity' of Nortel's stock price" when OPTrust purchased Nortel stock. (Def. Br. at 13 ("[OPTrust's] trading strategy ran directly counter to market sentiment because its investment advisors concluded that the stock was highly 'overvalued' and indeed saw the emergence of a 'bubble' far earlier than the rest of the market. Yet, OPTrust bought Nortel stock largely because it was tracking an index, not because it was lulled into believing that Nortel was trading at 'a fair market price.' ").) [FN4]

> FN4. Defendants also argue that OPTrust's purchase of Nortel stock "well after the alleged 'fraud' was 'exposed' " militates against typicality. (*Id.* at 16.)

"[T]he claims of the class representatives [must] be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." ' *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir.1997) (per curiam). Because, among other things, "reliance" is clearly alleged, (*see, e.g.,* Compl. ¶ 203, at 86), and because a jury may conclude that pursuing an index strategy entails reliance (*see* Pl.

Reply at 5 ("Indexed trading is the ultimate acknowledgment that the market is efficient because it cannot be beat.")), OPTrust satisfies the typicality requirement. *See In re Blech,* 187 F.R.D. at 106 ("[T]he typicality requirement is satisfied because, as set forth in the Complaint, the Plaintiffs' claims of fraud arise from the same course of conduct.").

*4 Moreover, "[t]he rule barring certification of plaintiffs subject to unique defenses is not 'rigidly applied in this Circuit." *In re Frontier,* 172 F.R.D. at 41; *see also In re Gaming Lottery Sec. Litig.,* 58 F.Supp.2d 62, 72 (S.D.N.Y.1999) ("Because a person is ineligible to represent a class of securities purchasers only if he 'clearly did not rely upon either the misleading financials *or* on the integrity of the market price or information, [Plaintiff] remains qualified to serve as a class representative." (citation omitted)); *see also In re Indep. Energy Holdings PLC Sec. Litig.,* 210 F.R.D. 476, 481 (S.D.N.Y.2002) (While the extent of any non-reliance on [plaintiff's] part will certainly be a fact question to be decided at trial, it is unlikely to significantly shift the focus of the litigation to the detriment of the absent class members.").

D. *Fed.R.Civ.P. 23(a)(4)*--Adequate Representative

[4] Defendants argue that OPTrust is "a wholly inadequate class representative, for it is a reluctant party that has ceded control over the litigation to lawyers." (Def. Br. at 17.) OPTrust responds that its "interests are not antagonistic to those of the Class" and that the "interests of the Class will be protected and advanced by OPTrust because its claims and interests are coextensive with those of the absent Class members." (Pl. Br. at 12.) In addition, OPTrust asserts that it has been "zealously representing the interests of the proposed Class by, among other things, retaining experienced counsel and devoting substantial time and effort to the prosecution of this case." (*Id.*) "Representatives of OPTrust met with senior attorneys from Milberg Weiss on three separate occasions to discuss the substantive allegations, the procedural posture of the litigation, the responsibilities of a class representative and OPTrust's potential interest in stepping into a lead role." (Pl. Reply at 7.) "Independent from the lawyers, OPTrust's Board of Trustees formed a Nortel Class Action Subcommittee ... to 'monitor developments, develop overall strategic direction and report to the Board in respect to the class action lawsuit" and "[a]t a Special Board of Trustees meeting on December 18, 2001--with the advice and assistance of an independent consultant--the Board

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22077464 (S.D.N.Y.)
(Cite as: 2003 WL 22077464 (S.D.N.Y.))

Page 5

passed a resolution confirming its desire to seek the role of Lead Plaintiff." (*Id.; see also id.* at 8 n. 14 ("[W]e have a number of responsibilities, one of them being to manage the litigation ... [and] we have set up a subcommittee to do that." (quoting the deposition testimony of OPTrust's Chief Investment Officer, Morgan Eastman)).)

Under Fed.R.Civ.P. 23(a)(4), "adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interests of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 60 (2d Cir.2000). OPTrust satisfies the adequacy requirement. Its claims appear to be in harmony with those of the other members of the proposed class; it has taken several significant "hands on" steps to prosecute this case; and its counsel, Milberg Weiss Bershad Hynes & Lerach LLP, is clearly qualified to pursue this sort of litigation. *See also id.* at 61.

E. *Fed.R.Civ.P. 23(b)(3)*

*Predominance of Common Questions of Law or Fact*

*5 [5] Defendants argue in their brief that "because plaintiffs cannot rely upon the fraud-on-the-market theory of reliance" common questions of law or fact do not predominate over individual questions. (Def. Br. at 1); *see also Crommer Fin. Ltd. v. Berger,* 205 F.R.D. 113, 130 n. 21 (S.D.N.Y.2001) (citing *In re Towers Fin. Corp. Noteholders Litig.,* 93 Civ. 0810, 1995 WL 571888, at *21 (S.D.N.Y. Sept.20, 1995), which states: "The [fraud-on-the-market theory] 'presumes that the market is a 'transmission belt which efficiently translates all information concerning a security into a price. In other words, it presumes the operation of an efficient market." ')). Defendants argue that "[t]he market was not efficiently driven by fundamental value, and that is the death knell to application of the fraud-on-the-market theory." (Def. Br. at 12; *see id.* at 2 ("Without resort to the presumption, a class cannot be certified since individual claims of reliance would have to be proven and would overwhelm the common issues.").) Defendants urge the Court, preliminarily and by a separate proceeding, to "determine whether the plaintiffs are entitled to rely on the [fraud-on-the-market] presumption for purposes of class certification," (*id.* at 4 & n. 3 ("The availability of the fraud-on-the-market presumption is a legal issue that must be resolved by the Court for purposes of deciding class certification.")) citing several cases (from other Circuits) for this proposition. *Cammer v. Bloom,* 711 F.Supp. 1264, 1290 (D.N.J.1989), *Szabo v. Bridgeport Machs., Inc.,* 249 F.3d 672, 677 (7th Cir.2001), and *O'Neil v. Appel,* 165 F.R.D. 479, 496-505 (W.D.Mich.1996). [FN5]

> FN5. Defendants submitted a letter to the Court, dated August 12, 2003, seeking to postpone a decision on OPTrust's motion for class certification so that the parties may conduct more "[e]xpert discovery followed by a possible hearing" on these issues. OPTrust responded with a letter to the Court, dated August 19, 2003, arguing "[t]he Court can and should decide the motion on the basis of the admittedly 'substantial' record already before it." The Court agrees with OPTrust on this issue. That is, the parties' thoughtful and comprehensive briefs on the motion to certify the class, which included submission of expert reports from Defendants and OPTrust, and helpful oral argument, have afforded the parties a full opportunity to address all salient points and authorities. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."); *Baffa,* 222 F.3d at 58 ("[A] motion for class certification is not an occasion for examination of the merits of the case.... 'Nothing in either the language or history of Rule 23 ... gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." ' (citations omitted)). And, Defendants themselves have acknowledged that the existing class certification record is substantial as recently as July 29, 2003. (July 29, 2003 Tr. at 2 ("We have submitted a detailed brief, two expert reports, and I anticipate the plaintiffs will be doing the same. It's a pretty substantial record.").)

OPTrust contends that "it enjoys the benefit of the fraud on the market evidentiary rule, pursuant to which, in a Rule 10b-5 action against a public company such as Nortel, whose shares are traded in an open, well-developed market, it is presumed that (a) the alleged misrepresentations, so long as they are

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22077464 (S.D.N.Y.)
(Cite as: 2003 WL 22077464 (S.D.N.Y.))

Page 6

material, will inflate the value of the Company's shares and (b) plaintiff and all members of the Class relied upon the integrity of the market for those shares" and that "reliance is a common issue in this action." (Pl. Br. at 14.) OPTrust also argues " '[w]hether or not a market for a stock is open and efficient is a question of fact' that must wait for resolution at trial." (Pl. Reply at 1 (quoting *RMED Int'l Inc. v. Sloan's Supermarkets*, 94 Civ. 5587, 2002 WL 31780188 (S.D.N.Y. Dec.11, 2002))); *see also In re Laser Arms Corp. Sec. Litig.*, 794 F.Supp. 475, 490 (S.D.N.Y.1989) ("Whether in fact Laser Arms traded in an efficient market is a question of fact. Therefore, resolution of that issue must await presentation of further proof at trial."), *aff'd*, 969 F.2d 15 (2d Cir.1992). OPTrust argues that "Defendants' attempt to transform class certification into a complicated battle of the experts is precisely what the Supreme Court sought to preclude by barring 'preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.' " (Pl. Reply at 1 (quoting *Eisen*, 417 U.S. at 177).)

*6 The parties have been afforded "substantial" opportunity to present their respective points of view. [FN6] *See In re Frontier*, 172 F.R.D. at 42 ("For the purposes of this motion [for class certification], the court assumes the market for Frontier stock is an efficient one incorporating all public information about the company."); *Crommer*, 205 F.R.D. at 133 ("While [defendant] has identified evidence and arguments it may use at trial to rebut the presumption, it remains true that it is logical and fair to presume reliance here."); *see also Baffa*, 222 F.3d at 58 ("[A] motion for class certification is not an occasion for examination of the merits of the case.... Nothing in either the language or history of Rule 23 ... gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." ' (citations omitted)); *In re Frontier*, 172 F.R.D. at 39 ("In evaluating a motion for class certification, the court accepts as true the substantive allegations in the complaint and does not conduct even a preliminary inquiry into the merits of the case." (citing *Eisen*, 417 U.S. at 177-78); *In re Blech*, 187 F.R.D. at 107 ("[W]hen determining whether common questions predominate courts focus on the liability issue ... and if the liability issue is common to the class, common questions are held to predominate over individual questions." (citation omitted)).

FN6. *See also supra* note 5.

*Superiority of Class Action*

[6] The Court considers the following factors in making the determination of superiority: "(A) the interest of members of the class in individually controlling the prosecution or defenses of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3).

Here, a class action is superior to other alternatives. The claims likely will be numerous but, in many instances, too small to pursue individually and, even if individual plaintiffs chose to pursue the action, multiple lawsuits would be inefficient. *See In re Blech*, 187 F.R.D. at 107 ("In general, securities suits such as this easily satisfy the superiority requirement of Rule 23. Most violations of the federal securities laws, such as those alleged in the Complaint, inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible. Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would neither be 'fair' nor an adjudication of their claims.").

F. *Subject Matter Jurisdiction over Foreign Purchasers*

*7 [7] Defendants argue that, even if the Court certifies a class in this action, the Court "should exclude foreign purchasers of Nortel stock." (Def. Br. at 20.) Citing *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 985-90 (2d Cir.1975), Defendants argue that "[w]hen foreign purchasers on a foreign exchange seek to rely upon the Exchange Act, the Second Circuit has held that our securities laws should not be exported to foreign countries that are perfectly capable of policing the companies that reside within them." (Def. Br. at 21.) Defendants emphasize Nortel's connection to Canada. (*Id.* at 22 ("The essence of the fraud alleged here is that Nortel's senior management --- all based in Canada -- - made a series of representations, which materially overstated the Company's earnings."; "All of the allegedly fraudulent statements were disseminated from Nortel's headquarters in Ontario. Moreover, all challenged accounting decisions likewise were made in Canada." (footnote omitted)).) Defendants also

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22077464 (S.D.N.Y.)
(Cite as: 2003 WL 22077464 (S.D.N.Y.))

Page 7

argue that "as a matter of international comity, accepting jurisdiction over Canadian purchasers would overlap and supplant at least three pending Canadian class actions brought on behalf of such purchasers in the courts of Canada. Moreover, issues of judicial administration would be a nightmare...." (*Id.* at 24-25.) [FN7]

> FN7. Relatedly, the Court received a letter, dated August 25, 2003 from counsel for plaintiffs in a Canada-wide class action entitled *Law, et al. v. Nortel Networks Corp., et al.*, 02-CL-4605 (Ontario Superior Court of Justice), which notes that "the other two cases are, to the best of our knowledge, limited to the Provinces of British Columbia and Quebec" and that "the Canadian courts are the proper place for determining the claims of Canadian citizens who purchased Nortel shares on the Toronto Stock Exchange." (Letter to the Court from Joel P. Rochon, dated Aug. 25, 2003 at 2-3.) The Court received a letter in response, dated September 2, 2003 from counsel for OPTrust, which argues, among other things, that "there is nothing in the applicable case law, or any proposition of international law identified by defendants, that would bar the extraterritorial application of the federal securities laws in this case ... provided that the applicable Second Circuit standards are met, which they are." (Letter to the Court from Steven G. Schulman, dated Sept. 2, 2003 at 2.)

OPTrust counters that "defendants' substantial activities in the United States are much more than merely preparatory to the fraud and thus favor a finding of subject-matter jurisdiction." (Pl. Reply at 8-9.) "The vast preponderance of customers and potential customers with whom Nortel did business during the Class Period were fiber-optic cable networks and internet service providers overwhelmingly located in the U.S." and "Nortel used its artificially inflated stock to fund an aggressive growth-by-acquisition strategy, then misled investors by failing to write down the goodwill associated with its numerous U.S. acquisitions despite substantial declines in their value.... Many of these acquisitions involved properties in the U.S." (*Id.* at 9.) In addition, OPTrust argues that the mere existence of Canadian lawsuits should not persuade the Court to deny certification. (*Id.* at 9 n. 15. ("Defendants offer no information about the nature or status of these actions, and fail to mention important differences between U.S. and Canadian securities law--most notably the unavailability of the fraud-on-the-market-theory to Canadian plaintiffs. This Court should not grant defendants' request to avoid application of the securities laws to persons executing trades in Canada, given that Second Circuit standards for extending those laws to foreign investors in this case are satisfied.").)

"Since the Securities Exchange Act is silent as to its extraterritorial application, courts have developed two tests for determining the subject matter jurisdiction over foreign transactions." *Nathan Gordon Trust v. Northgate Exploration, Ltd.*, 148 F.R.D. 105, 108 (S.D.N.Y.1993). "Under the 'conduct' test, a federal court has subject matter jurisdiction if the defendant's conduct in the United States was more than merely preparatory to the fraud, and particular acts or culpable failures to act within the United States directly caused losses to foreign investors abroad. A federal court also has jurisdiction under the 'effects' test where illegal activity abroad causes a 'substantial effect' within the United States." *Id.* (quoting *Alfadda v. Fenn*, 935 F.2d 475, 478 (2d Cir.1991).

*8 Defendants activities in the United States satisfy the test for subject matter jurisdiction. Among other things, OPTrust alleges that "defendants were consummating risky vendor financing deals in an effort to boost reported 'revenues' throughout the Class Period." (Compl. ¶ 64, at 26.) According to OPTrust, Defendants were extending vendor financing to "numerous U.S. customers that defendants knew to be uncreditworthy, so as to artificially inflate the Company's revenues." (Pl. Reply at 9); *see In re Gaming Lottery Sec. Litig.*, 58 F.Supp.2d 62, 73-75 (S.D.N.Y.1999) ("Subject matter jurisdiction is thus supported by substantial fraudulent activity in the United States directly causing harm abroad, the manner in which the same fraudulent scheme, allegedly straddled both sides of the border, and the degree of economic activity connecting [defendant] to the United States."). The Court also notes, in finding subject matter jurisdiction, that "it is well established that a court can certify a class while reserving the right to shape the class more precisely to fit the issues of the case as those emerge during the litigation." *Langner v. Brown*, 95 Civ.1981, 1996 WL 709757, at *4 (S.D.N.Y. Dec.10, 1996).

IV. Conclusion

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22077464 (S.D.N.Y.)
(Cite as: 2003 WL 22077464 (S.D.N.Y.))

Page 8

For the reasons stated herein, the Court grants OPTrust's motion to certify the class.

Not Reported in F.Supp.2d, 2003 WL 22077464 (S.D.N.Y.)

Motions, Pleadings and Filings (Back to top)

• 2004 WL 2973931 (Trial Motion, Memorandum and Affidavit) Nortel's Memorandum of Law in Opposition to Class Plaintiffs' Application for an Order to Show Cause (Jan. 15, 2004)

• 2003 WL 23671561 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Opposition to Lead Plaintiff's Motion for Class Certification (May. 30, 2003)

• 2003 WL 23671559 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Lead Plaintiff's Motion for Class Certification (Mar. 21, 2003)

• 2002 WL 32595571 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Nortel Shareholder and Jds Uniphase Shareholder Complaints (Sep. 30, 2002)

• 2002 WL 32595569 (Trial Motion, Memorandum and Affidavit) Lead Plaintiffs' Joint Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Nortel Shareholder and JDS Uniphase Shareholder Complaints (Sep. 17, 2002)

• 2002 WL 32595570 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Motion to Dismiss the Nortel Shareholder and JDS Uniphase Shareholder Complaints (Aug. 16, 2002)

• 2002 WL 32595566 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Nortel Shareholder and JDS Uniphase Shareholder Complaints (Jul. 05, 2002)

• 2002 WL 32595557 (Trial Motion, Memorandum and Affidavit) Lead Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Second Consolidated Amended Class Action Complaint (Jun. 03, 2002)

• 2002 WL 32595564 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Motion to Dismiss the Nortel Shareholder and JDS Uniphase Shareholder Complaints (Apr. 01, 2002)

• 2002 WL 32768665 (Trial Pleading) Motion and Incorporated Memorandum for Withdrawal as Attorney of Record (Mar. 18, 2002)

• 2002 WL 32595550 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Fiducie Desjardins Inc.'s Motion for Appointment of Lead Plaintiff and Lead Counsel Pursuant to Section 21D of the Securities and Exchange Act of 1934 and for Consolidation of the Actions Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure (Feb. 14, 2002)

• 2001 WL 34611498 (Trial Motion, Memorandum and Affidavit) The JDSU Investors Group's Memorandum of Law in Opposition to the Nortel Investors Group's Motion for Appointment of Lead Plaintiffs and Lead Counsel (May. 04, 2001)

• 2001 WL 34611496 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion of the Nortel Investors Group for Appointment of Lead Plaintiff and Approval of the Proposed Lead Plaintiff's Selection of Lead Counsel (Apr. 17, 2001)

• 1:01cv01855 (Docket) (Mar. 02, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.