UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LARRY FREUDENBERG, Individually, and On Behalf Of All Others Similarly Situated | : : : | 07 Civ. 8538 (RWS) Judge Robert W. Sweet |
| v. | : : | |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN, AND ROBERT J. SIMMONS | : : : : | |

[Captions continued on the following page]

# MEMORANDUM OF LAW IN SUPPORT OF THE INSTITUTIONAL INVESTOR GROUP'S MOTION TO CONSOLIDATE ACTIONS, TO BE APPOINTED LEAD PLAINTIFF AND FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL

GRANT & EISENHOFER P.A.
Jay W. Eisenhofer (JE-5503)
485 Lexington Avenue
29th Floor
New York, New York  10017
Tel: (646) 722-8500
Fax: (646) 722-8501

    and

GRANT & EISENHOFER P.A.
Geoffrey C. Jarvis (GJ-7040)
1201 N. Market Street, Suite 2100
Wilmington, Delaware 19801
Tel: (302) 622-7000
Fax: (302) 622-7100

SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP
Richard S. Schiffrin
Sean M. Handler
Darren J. Check
280 King of Prussia Road
Radnor, Pennsylvania 19087
Tel: (610) 667-7706
Fax: (610) 667-7056

*Counsel for the Institutional Investor Group and Proposed Lead Counsel for the Class*

| | | |
|---|---|---|
| WILLIAM BOSTON, Individually, and On Behalf Of All Others Similarly Situated | : : : | 07 Civ. 8808 (RWS) Judge Robert W. Sweet |
| v. | : : | |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN, AND ROBERT J. SIMMONS | : : : : | |
| ROBERT D. THULMAN, Individually, and On Behalf Of All Others Similarly Situated | : : : | 07 Civ. 9651 (RWS) Judge Robert W. Sweet |
| v. | : : | |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN, AND ROBERT J. SIMMONS | : : : : | |
| WENDY M. DAVIDSON, Individually, and On Behalf Of All Others Similarly Situated | : : : | 07 Civ. 10400 (UA) Judge Unassigned |
| v. | : : | |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN, AND ROBERT J. SIMMONS | : : : : | |
| JOSHUA FERENC, Individually, and On Behalf Of All Others Similarly Situated | : : : | 07 Civ. 10540 (SHS) Judge Sidney H. Stein |
| v. | : : | |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN, AND ROBERT J. SIMMONS | : : : : | |

# **TABLE OF CONTENTS**

**PAGE(S)**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ...................................................................................................3

ARGUMENT ........................................................................................................................5

I.    Consolidation Of The Related Actions Is Appropriate .......................................6

II.    The PSLRA Favors Institutional Investors Who Have A Large Financial Interest In The Lawsuit..................................................6

    A.    The Institutional Investor Group Has The Largest Financial Interest Of The Plaintiffs Who Have Come Forward In This Class Action, And Is Comprised Of The Type Of Institutional Investors Favored By The PSLRA ................................8

    B.    The Institutional Investor Group Satisfies The Requirements Of Rule 23 .............9

        i.    The Institutional Investor Group's Claims Are Typical Of The Class's Claims .......................................................................................10

        ii.    The Institutional Investor Group Will Adequately Represent The Interests Of The Class........................................................11

II.    The Court Should Approve The Institutional Investor Group's Choice Of Counsel ...............................................................................................................12

CONCLUSION...................................................................................................................13

## **TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   No. MDL 1500, 2003 WL 102806 (S.D.N.Y. Jan. 10, 2003)..................................................9

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ...............................................................................................13

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)..................................................................................................12

*Cromer Fin. Ltd. v. Berger*,
   205 F.R.D. 113 (S.D.N.Y. 2001) ..........................................................................................11

*Gesenhues v. Checchi*,
   No. 05-CIV-10653 (RJH), 2006 WL 1169673 (S.D.N.Y. May 3, 2006) ................................6

*Glauser v. EVCI Career Colleges Holding Corp.*,
   236 F.R.D. 184, (S.D.N.Y. 2006) ..................................................................................6, 7, 9

*Hicks v. Morgan Stanley & Co.*,
   No. 01-CIV-10071 (HB), 2003 WL 21672085 (S.D.N.Y. July 16, 2003) .............................11

*In re Initial Pub. Offering Sec. Litig.*,
   214 F.R.D. 117 (S.D.N.Y. 2002) ............................................................................................9

*In re Nice Sys. Sec. Litig.*,
   188 F.R.D. 206 (D.N.J. 1999)................................................................................................12

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) .......................................................................................12

*In re Olsten Corp. Sec. Litig.*,
   181 F.R.D. 218 (E.D.N.Y. 1998) ............................................................................................8

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ......................................................................................10, 11

*In re Party City Sec. Litig.*,
   189 F.R.D. 91 (D.N.J. 1999)..............................................................................................8, 10

*Rozenboom v. Van Der Moolen Holding, N.V.*,
   No. 03 Civ. 8284 (RWS), 2004 U.S. Dist. LEXIS 6382 (S.D.N.Y. Apr. 14, 2004) ...........9, 10

*Skwortz v. Crayfish Co., Ltd.*,
 No. 00-Civ.-6766 (DAB), 2001 WL 1160745 (S.D.N.Y. Sept. 28, 2001) ...............................8, 12

*Sofran v. LaBranche & Co., Inc.*,
 220 F.R.D. 398 (S.D.N.Y. 2004) ......................................................................................7, 9, 14

*In re Universal Access Inc. Sec. Litig.*,
 209 F.R.D. 379 (E.D. Tex. 2002)..............................................................................................10

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
 216 F.R.D. 248 (S.D.N.Y. 2003) ..............................................................................................10

*Zemel Family Trust v. Philips Int'l Realty Corp.*,
 205 F.R.D. 434 (S.D.N.Y. 2002) ................................................................................................8

**FEDERAL STATUTES AND RULES**

15 U.S.C. § 78u-4(a)(3) ............................................................................................... *passim*

FED. R. CIV. P. 23 ........................................................................................................ *passim*

FED. R. CIV. P. 42 ..............................................................................................................6, 7

**OTHER AUTHORITIES**

1 H. Newberg, *Newberg on Class Actions* § 3.13 (3d ed. 1992) ....................................................11

# PRELIMINARY STATEMENT

The Mississippi Public Employees' Retirement System ("Mississippi PERS") and AFA Livförsäkringsaktiebolag, AFA Sjukförsäkringsaktiebolag, AFA Trygghetsförsäkringsaktiebolag and Kollektivavtalsstiftelsen TSL (collectively, "AFA" and with Mississippi PERS, collectively, the "Institutional Investor Group"), hereby move to consolidate various related securities fraud class actions[1] filed against E*TRADE Financial Corporation (referred to hereinafter as "E*TRADE" or the "Company"), and other defendants, and to be appointed as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B)(1998), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). The Institutional Investor Group further moves for approval of its selection of the law firms of Grant & Eisenhofer P.A. and Schiffrin Barroway Topaz & Kessler, LLP as Lead Counsel.

The relief sought by the Institutional Investor Group is precisely what the framers of the PSLRA hoped to accomplish by enacting the PSLRA's lead plaintiff provision – to have complex class actions arising under the federal securities laws controlled by large institutional investors. As Congress noted in the Statement of Managers, the PSLRA was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, among other reasons, institutional investors and other class members with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." Conference Report on Securities Litigation Reform, H.R. REP. NO. 104-369, at 34 (1995); *reprinted in* 1996 U.S.S.C.A.N. 730; REP. NO. 104-98 (1995), *reprinted in* 1996

---

[1] The related securities fraud class actions include the following: (1) *Freudenberg v. E*TRADE Financial Corporation, et al.*, No. 07-Civ.-8358 (RWS); (2) *Boston v. E*TRADE Financial Corporation, et al.*, No. 07-Civ.-8808 (RWS); (3) *Thulman v. E*TRADE Financial Corporation, et al.*, No. 07-Civ.-9651 (RWS); (4) *Davidson v. E*TRADE Financial Corporation, et al.*, No. 07-Civ.-10400 (UA); and (5) *Ferenc v. E*TRADE Financial Corporation, et al.*, No. 07-Civ.-10540 (SHS).

U.S.S.C.A.N. 679.  The Institutional Investor Group, with billions of dollars of combined assets, is comprised of exactly the type of large institutional investors envisioned by Congress as the most adequate lead plaintiffs in securities class action suits.

As detailed in the certifications submitted herewith, between April 20, 2006 and November 9, 2007, inclusive (the "Class Period"),[2] the Institutional Investor Group, combined, purchased over 800,000 shares of E*TRADE stock, suffering potential losses of $13,485,987 in connection with its transactions.[3]  *See* Certification of George W. Neville, Esq., dated November 30, 2007 ("Mississippi PERS' Certification"), and Certification of Lars Öhrstedt and Michael Abrahamsson, dated November 27, 2007 ("AFA Certification") (collectively, "Institutional Investor Group's Certifications"), attached to the Declaration of Jay W. Eisenhofer In Support Of The Institutional Investor Group's Motion To Consolidate Actions, To Be Appointed Lead Plaintiff and For Approval Of Its Selection Of Lead Counsel, dated December 3, 2007 ("Eisenhofer Decl."), at Exs. A and B, and submitted herewith.  In addition to evidencing the Institutional Investor Group's significant stake in the outcome of this litigation, the Institutional Investor Group's Certifications demonstrate their desire to serve as lead plaintiffs in this action,

---

[2] The complaints filed in this action have differing class periods as follows.  (1) *Freudenberg v. E*TRADE Financial Corporation, et al.*, No. 07-Civ.-8358 (RWS), asserts a class period between December 14, 2006 and September 25, 2007, inclusive (*see* Eisenhofer Decl., Ex. E); (2) *Boston v. E*TRADE Financial Corporation, et al.*, No. 07-Civ.-8808 (RWS), asserts a class period between December 14, 2006 and September 25, 2007, inclusive (*see* Eisenhofer Decl., Ex. F); (3) *Thulman v. E*TRADE Financial Corporation, et al.*, No. 07-Civ.-9651 (RWS), asserts a class period between December 14, 2006 and September 25, 2007, inclusive (*see* Eisenhofer Decl., Ex. G); (4) *Davidson v. E*TRADE Financial Corporation, et al.*, No. 07-Civ.-10400 (UA), asserts a class period between December 14, 2006 and November 9, 2007, inclusive (*see* Eisenhofer Decl., Ex. H); and (5) *Ferenc v. E*TRADE Financial Corporation, et al.*, No. 07-Civ.-10540 (SHS), asserts a class period between April 20, 2006 through November 9, 2007, inclusive (*see* Eisenhofer Decl., Ex. I).  The earliest commencement date is April 20, 2006 and the latest closing date is November 9, 2007; for purposes of this motion, the Institutional Investor Group has used the longest class period (*i.e.*, April 20, 2006 through November 9, 2007) for purposes of calculating its losses.

[3] The breakdown of the Institutional Investor Group's losses is as follows:  Mississippi PERS - $8,931,150; and AFA - $4,554,837.  Losses were calculated using a "90-Day Average Look-Back Price" of $4.8071, calculated as of November 30, 2007.  *See* 15 U.S.C. § 78u-4(e).

2

as well as their understanding of the attendant duties and obligations of serving in that role. *See id.*

The Institutional Investor Group believes that its losses represent the largest known financial interest of any class member seeking appointment as lead plaintiff in this action. The Institutional Investor Group is not aware of any other class member that has filed an action or filed an application for appointment as lead plaintiff that sustained greater financial losses due to defendants' fraud. In addition, the Institutional Investor Group satisfies each of the applicable requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and therefore, is qualified for appointment as lead plaintiff in this action. Thus, pursuant to the PSLRA's lead plaintiff provision, the Institutional Investor Group is presumptively the most adequate plaintiff and should be appointed Lead Plaintiff for the class. Additionally, the Court should approve the Institutional Investor Group's selection of Grant & Eisenhofer P.A. and Schiffrin Barroway Topaz & Kessler, LLP as Lead Counsel.

## STATEMENT OF FACTS

### The Institutional Investor Group

Both members of the Institutional Investor Group are large, well-established institutional investors. Established by the Mississippi Legislature in 1952, Mississippi PERS serves as the retirement system for nearly all non-federal public employees in the state of Mississippi. As of June 30, 2005, Mississippi PERS' membership exceeded 300,000 and its assets under management surpassed $17 billion. AFA, with approximately $25 billion in assets under management, is based in Stockholm, Sweden and is one of the twenty largest fund managers in Europe. Through its own funds, AFA manages and administers the pensions of various private-sector Swedish labor federations. *See* Institutional Investor Group's Certifications, attached to the Eisenhofer Decl. at Exs. A and B. Combined, the Institutional Investor Group lost

3

$13,485,987 as a result of purchasing E*TRADE's securities at artificially inflated prices during the Class Period.  *See id.*  Moreover, Mississippi PERS has experience serving as a lead plaintiff in securities class actions.  Indeed, Mississippi PERS has been appointed lead plaintiff in several class actions, including two appointments by this Court.  *See* Mississippi PERS Certification, attached to the Eisenhofer Decl. as Ex. A.

**Background Regarding E*TRADE's Wrongdoing**

E*TRADE is a global financial services company with headquarters located in this District.  Its stock trades on NASDAQ.  Its core business was traditionally discount stock brokerage services.

In or about 2003, E*TRADE started to deviate from its traditional brokerage business model and expanded into mortgage lending when the housing boom was in full swing.  As a consequence, a majority of E*TRADE's recent revenue growth was driven by its mortgage assets.  By 2006, the Company derived about 58% of its revenues from net interest earned on its loan portfolio, while brokerage commissions and revenue from primarily market making transactions accounted for only about 30% of revenue.

During this transition period, E*TRADE orchestrated a scheme designed to conceal a risky and unsound "subprime" mortgage portfolio (*i.e.*, mortgage loans to borrowers with lesser creditworthiness).  As the subprime housing market began to unravel in 2006 and continue its plunge into 2007, E*TRADE failed to increase its level of provision for loan losses, as is required under Generally Accepted Accounting Principles ("GAAP"), because defendants knew that would be detrimental to earnings.

Throughout the Class Period, E*TRADE failed to make any of the necessary adjustments to its reserve for loan losses or to its level of charge-offs for the substantial mortgage portfolio that it was holding, despite reports of increased delinquencies and foreclosures each quarter and

a continuously deteriorating housing market. This failure was done purposefully in an effort to prop-up the Company's overall earnings in light of its sagging brokerage business. E*TRADE increased its earnings guidance despite the abundant warning signs of impending problems in the subprime housing market, and failed to adequately disclose the devastating effects that even slight value reductions to its mortgage portfolio would (and eventually did) have on the Company's earnings and balance sheet. As the truth about the actual risks and true value of E*TRADE's various mortgage-backed securities were revealed to the market, E*TRADE was forced to incur massive write downs of the value of its mortgage-backed assets held on its balance sheet.

On September 17, 2007, after the close of the market, E*TRADE announced that it was exiting the wholesale mortgage business and revising its 2007 earnings guidance to account for higher provision for loan losses, potential securities impairments and reduced balance sheet growth and restructuring charges, and slashed its earnings guidance for future periods. As a result of these disclosures, E*TRADE's stock price was down more than 35% during the period between the July 2007 announcement and the September 2007 disclosure. Thereafter, during September, 2007, the stock price hovered in the $13 range.

Late on Friday, November 9, 2007, E*TRADE announced that further deterioration in its mortgage-backed securities portfolio would lead to larger than expected write-downs in the fourth-quarter of 2007, withdrew its earnings guidance and reported that the SEC had commenced an investigation. The stock plummeted from a close of $8.59 on November 9 to $3.55 on Monday, November 12, 2007, a drop of 58.67% on extremely heavy trading volume of over 303 million shares, which is roughly 30 times normal trading volume.

## ARGUMENT

In determining which movants to appoint as lead plaintiff, the Court must consider two factors: (1) which movant has the largest financial interest in the litigation; and (2) does that movant meet the typicality and adequacy requirements of Rule 23. *See Gesenhues v. Checchi,* No. 05-CIV-10653 (RJH), 2006 WL 1169673, at *2 (S.D.N.Y. May 3, 2006) ("The PSLRA . . . provides that the most adequate plaintiff has (1) 'the largest financial interest' in the relief sought by the class and (2) satisfies the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure"). Here, the Institutional Investor Group is comprised of exactly the type of large institutional investors envisioned by Congress as the most adequate lead plaintiffs in a securities class action lawsuit. Further, the Institutional Investor Group has timely filed this motion in accordance with the statutory requirements and has the resources, expertise and the willingness to be fully involved in this litigation and to obtain the maximum possible compensation for class members. Accordingly, the Institutional Investor Group should be appointed as Lead Plaintiff and its selection of Lead Counsel should be approved.

### I.      Consolidation Of The Related Actions Is Appropriate

FED. R. CIV. P. 42(a) permits courts to consolidate actions involving "common questions of law or fact." "While district courts have 'broad discretion' in determining the propriety of consolidation, this Court has recognized that consolidation is particularly appropriate in the context of securities class actions if the complaints are 'based on the same public statements and reports.'" *Glauser v. EVCI Career Colleges Holding Corp.,* 236 F.R.D. 184, 186 (S.D.N.Y. 2006) (citations omitted). Here, the Related Actions are ideally suited for consolidation. The Related Actions assert claims on behalf of plaintiffs that transacted in E*TRADE shares during the Class Period based on the integrity of the defendants' representations to the market. Moreover, the Related Actions involve common legal issues. Accordingly, the Related Actions

should be consolidated under Rule 42(a). *See Sofran v. LaBranche & Co., Inc.*, 220 F.R.D. 398, 401 (S.D.N.Y. 2004) (Sweet, J.) (consolidating multiple class actions in securities fraud case).

## II.   The PSLRA Favors Institutional Investors Who Have A Large Financial Interest In The Lawsuit

The process for appointing a lead plaintiff under the PSLRA is straightforward. Under the PSLRA, any member of the purported class may move for appointment as lead plaintiff within 60 days of the publication of the notice announcing the filing of the action. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II); Eisenhofer Decl. at Ex. E (notice of first filed complaint). Subsequently, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i). Consistent with its legislative history, the PSLRA provides that the court shall make a significant presumption when determining the "most capable" plaintiff:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person **or group of persons** that –
>
> (aa)  has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii) (emphasis added). This presumption may be overcome only by proof that the presumed lead plaintiff(s) will not fairly and adequately represent the class or is subject to unique defenses. *Id.* Courts construing this provision have noted Congress' preference for institutional investors. *See, e.g.*, *Glauser*, 236 F.R.D. at 188 (noting PSLRA was passed to increase likelihood institutional investors will serve as lead plaintiff and finding presumption that institutional investor is most adequate plaintiff was not rebutted by other

7

movants); *Zemel Family Trust v. Philips Int'l Realty Corp.*, 205 F.R.D. 434, 437 (S.D.N.Y. 2002) (discussing Congressional intent while denying lead plaintiff status to non-institutional investor plaintiff); *In re Olsten Corp. Sec. Litig.*, 181 F.R.D. 218, 220-21 (E.D.N.Y. 1998) ("By establishing the presumptive criterion that the most adequate plaintiff is the one who 'has the largest financial interest in the relief sought by the class,' PSLRA § 21D(a)(3)(B)(iii)(bb), Congress intended 'to increase the likelihood that institutional investors will serve as lead plaintiffs. . . .'").

The PSLRA's lead plaintiff provision also serves to "ensure[] that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation, not lawyers." *In re Party City Sec. Litig.*, 189 F.R.D. 91, 104 (D.N.J. 1999) (citation omitted); *Skwortz v. Crayfish Co., Ltd.*, No. 00-Civ.-6766 (DAB), 2001 WL 1160745, at *2 (S.D.N.Y. Sept. 28, 2001) ("Congress believed that [the purpose behind the PSLRA] could best be achieved by encouraging institutional investors to serve as lead plaintiffs."). As set forth below, the Institutional Investor Group is comprised of exactly the type of large institutional investors envisioned by Congress in enacting the PSLRA, as its members satisfy all of the criteria contemplated by the PSLRA for determining the most adequate lead plaintiff(s). As such, the Institutional Investor Group should be appointed as Lead Plaintiff in this action.

> **A.     The Institutional Investor Group Has The Largest Financial Interest Of The Plaintiffs Who Have Come Forward In This Class Action, And Is Comprised Of The Type Of Institutional Investors Favored By The PSLRA**

The Institutional Investor Group believes it has a greater financial interest in this action than any other class member who has come forward by virtue of their aggregate approximate damages of over $13.4 million. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, 2003 WL 102806, at *2 (S.D.N.Y. Jan. 10, 2003) (appointing as lead plaintiff the

8

institutional investor with the "largest financial stake in the litigation."); *Sofran*, 220 F.R.D. at 400, 402 (appointing group of five unrelated plaintiffs as lead plaintiff under PSLRA); *Rozenboom v. Van Der Moolen Holding, N.V.*, No. 03 Civ. 8284 (RWS), 2004 U.S. Dist. LEXIS 6382, at *16 (S.D.N.Y. Apr. 14, 2004) (Sweet, J.) (appointing two unrelated plaintiffs as lead plaintiff under PSLRA).

Although the PSLRA does not mandate a particular method for calculating financial interest, "courts in this Circuit have traditionally examined the following four factors in calculating that interest: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (defined as the number of shares retained at the end of the class period); (3) the total net funds expended during the class period; and (4) the approximate loss suffered during the class period." *Glauser*, 236 F.R.D. at 187 (citing *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002)). Here, the Institutional Investor Group purchased 848,700 shares of E*TRADE common stock during the Class Period. *See* Eisenhofer Decl. at Exs. A and B. The approximate total loss suffered by the Institutional Investor Group is $13,485,987. Based on a review of the pending complaints and other documents filed in the Related Actions, the Institutional Investor Group does not believe any other movant has a larger financial interest in this litigation.

      **B.**     **The Institutional Investor Group Satisfies The Requirements Of Rule 23**

Section 21D(a)(3)(B)(iii)(cc) of the PSLRA further provides that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(cc). Rule 23(a) provides that a party may serve as a class representative so long as the following four requirements are satisfied:

9

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"Of the four prerequisites to class certification [under Rule 23(a)], only two – typicality and adequacy – directly address the personal characteristics" of the lead plaintiff under the PSLRA which must be satisfied. *See Rozenboom*, 2004 U.S. Dist. LEXIS, at *17. On a motion for lead plaintiff, therefore, "the moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003); *see also id.* (citing *In re Party City*, 189 F.R.D. at 106) ("In fact, a 'wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.'"); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA.") (citations omitted). The remaining requirements of Rule 23 relate to the adequacy of the claims themselves and should not enter into the Court's analysis in its determination of who should serve as lead plaintiff. Rather, the Court should defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See In re Universal Access Inc. Sec. Litig.*, 209 F.R.D. 379, 385 (E.D. Tex. 2002) (stating that the Court should defer examination of the remaining requirements until the lead plaintiff moves for class certification). The Institutional Investor Group meets both applicable requirements.

### i. The Institutional Investor Group's Claims Are Typical Of The Class's Claims

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that "the claims . . . of the representative parties" be "typical of the claims . . . of the class." A proposed lead plaintiff's claims are typical of the claims of the class when the proposed lead plaintiff's claims and injuries "arise from the same conduct from which the other class members' claims and injuries arise." *Oxford Health Plans*, 182 F.R.D. at 50 (citations omitted); *Hicks v. Morgan Stanley & Co.*, No. 01-CIV-10071 (HB), 2003 WL 21672085, at *2 (S.D.N.Y. July 16, 2003) ("The typicality requirement is met when the class representative's claim 'arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory.'") (citations omitted); *see also* 1 H. Newberg, *Newberg on Class Actions* § 3.13 (3d ed. 1992) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met regardless of minor variations in fact patterns underlying individual claims."). The Rule 23(a)(3) typicality requirement "is to ensure that 'maintenance of a class action is economical and that the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 122 (S.D.N.Y. 2001) (quoting *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

Here, the Institutional Investor Group's claims arise from the same course of conduct from which the claims of all other class members arise. As public stockholders of E*TRADE, the Institutional Investor Group, like other members of the class, is an innocent victim of defendants' fraudulent conduct. The Institutional Investor Group's losses, like the losses suffered by other members of the class, arise from the artificial inflation of E*TRADE's

securities caused by the misrepresentations regarding the Company's exposure to the subprime mortgage market, which were knowingly and deliberately made by the defendants.  The Institutional Investor Group is not subject to any unique or special defenses.  Thus, its claims are in all respects "typical" of the claims of the class.

### ii. The Institutional Investor Group Will Adequately Represent The Interests Of The Class

Rule 23(a)(4)'s requirement of adequate representation is satisfied: "if (1) the class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the interests of the class are not antagonistic to one another; and (3) the lead plaintiff has a sufficient interest in the outcome to ensure vigorous advocacy." *Skwortz*, 2001 WL 1160745, at *6 (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998)).  Rule 23(a)(4)'s requirement of "[a]dequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests between the proposed lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff to vigorously prosecute the action." *In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 219 (D.N.J. 1999).  Moreover, "one of the best ways for a court to ensure that . . . [the movant] will fairly and adequately represent the interests of the class is to inquire whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a ***reasonable retainer agreement with that counsel***." *In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001) (emphasis added).  Here, Mississippi PERS and AFA have negotiated fee agreements with proposed lead counsel Grant & Eisenhofer P.A. and Schiffrin Barroway Topaz & Kessler, LLP.  By negotiating fee agreements with proposed lead counsel, the Institutional Investor Group has already demonstrated its commitment and ability to manage this litigation in the best interests of the class. *See id*.  Accordingly, the Institutional Investor Group easily meets the adequacy requirement.

Moreover, the Institutional Investor Group's interests are the same as those of other class members. Like other class members, the Institutional Investor Group seeks to hold the defendants liable for the consequences of their violations of the federal securities laws. There are no facts that indicate any conflicts of interest between the Institutional Investor Group and other class members.

Further, the Institutional Investor Group has the resources and sophistication to fulfill the statutory role of Lead Plaintiffs. Mississippi PERS and AFA each have substantial and dedicated staff with the legal, financial and organizational expertise to effectively oversee this proceeding and direct the actions of proposed Lead Counsel. The resources and sophistication of the Institutional Investor Group will serve the Class well, as it will permit the Institutional Investor Group to closely monitor the litigation and prosecute the case in the Class's best interest.

Finally, as explained below, the Institutional Investor Group has chosen Grant & Eisenhofer P.A. and Schiffrin Barroway Topaz & Kessler, LLP to serve as Lead Counsel.

## II. The Court Should Approve The Institutional Investor Group's Choice Of Counsel

Pursuant to § 21D(a)(3)(B)(v), 15 U.S.C. § 78u-4(a)(3)(B)(v), of the PSLRA, the Institutional Investor Group has selected and retained counsel to represent the Class, subject to the Court's approval. This Court should not disturb Lead Plaintiffs' choice of counsel unless it is necessary to protect the interests of the class. *See In re Cavanaugh*, 306 F.3d 726, 734 (9th Cir. 2002) ("Selecting a lawyer in whom a litigant has confidence is an important client prerogative and we will not lightly infer that Congress meant to take away this prerogative from securities plaintiffs. And, indeed, it did not. While the appointment of counsel is made subject to the approval of the court, the Reform Act clearly leaves the choice of class counsel in the hands of the lead plaintiff"). In that regard, the Institutional Investor Group has selected and retained the

law firms of Grant & Eisenhofer P.A. and Schiffrin Barroway Topaz & Kessler, LLP as proposed Lead Counsel for the class. Grant & Eisenhofer P.A. and Schiffrin Barroway Topaz & Kessler, LLP are among the preeminent securities class action firms in the country and have a history of working effectively together having recently litigated, among other cases, the Tyco International securities class action case for approximately five years and achieved a record-setting settlement (subject to court approval) that will return more than $3.2 billion to injured investors. *See Sofran*, 220 F.R.D. at 404 (approving choice of experience securities class action firms as co-lead counsel).

Grant & Eisenhofer achieved national recognition in representing institutional investors, particularly public pension funds, in federal securities fraud and related litigation. As lead counsel, the firm has recovered and collected over six billion dollars for shareholders. Grant & Eisenhofer has been lead counsel in others of the largest securities class actions in history, and in the case with the largest recovery in the long history of the Delaware Court of Chancery. In addition to Tyco International, Grant & Eisenhofer P.A. is currently serving as lead or co-lead counsel in several complex securities fraud cases involving, *inter alia*, Marsh & McLennan, Parmalat, Pfizer, Alstom, and Refco. *See* Grant & Eisenhofer biography attached to the Eisenhofer Decl. at Ex. C.

Schiffrin Barroway Topaz & Kessler, LLP has recovered billions of dollars for shareholders in shareholder class actions. In addition to Tyco International, the firm is currently serving as lead or co-lead counsel in several complex securities fraud cases. *See* Schiffrin Barroway Topaz & Kessler, LLP biography attached to the Eisenhofer Decl. at Ex. D.

Accordingly, the Court should approve the Institutional Investor Group's selection of Grant & Eisenhofer P.A. and Schiffrin Barroway Topaz & Kessler, LLP as Lead Counsel.

## **CONCLUSION**

In light of the foregoing, the Institutional Investor Group respectfully requests that the Court: (i) consolidate the Related Actions; (ii) appoint the Institutional Investor Group to serve as Lead Plaintiffs for the Class; and (iii) approve the Institutional Investor Group's selection of Grant and Eisenhofer P.A. and Schiffrin Barroway Topaz & Kessler, LLP to serve as Lead Counsel for the Class.

Dated: December 3, 2007

                                            Respectfully submitted,

                                            /s Geoffrey C. Jarvis
                                            Jay W. Eisenhofer (JW-5503)
                                            GRANT & EISENHOFER P.A.
                                            485 Lexington Avenue, 29th Floor
                                            New York, New York 10017
                                            Tel:   (646) 722-8500
                                            Fax:   (646) 722-8501

                                            - and -

                                            Geoffrey C. Jarvis (GJ-7040)
                                            GRANT & EISENHOFER P.A.
                                            Chase Manhattan Centre
                                            1201 N. Market Street
                                            Wilmington, Delaware 19801
                                            Tel:   (302) 622-7000
                                            Fax:   (302) 622-7100

                                            SCHIFFRIN BARROWAY TOPAZ &
                                            KESSLER, LLP
                                            Richard S. Schiffrin
                                            Sean M. Handler
                                            Darren J. Check
                                            280 King of Prussia Rd.
                                            Radnor, PA 19087
                                            Telephone:   (610) 667-7706
                                            Facsimile:   (610) 667-7056

                                            *Counsel for the Institutional Investor Group and Proposed Lead Counsel for the Class*

15