Gregory M. Nespole (GN-6820)
Thomas H. Burt (TB-7601)
Laurence J. Hasson (LH-5834)
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
Attorneys for Plaintiffs
270 Madison Avenue
New York, New York 10016
(212) 545-4600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LARRY FREUDENBERG, individually and on Behalf of All Others Similarly Situated, | ECF CASE |
| Plaintiff(s), | Civil Action No. 07-8538 (RWS) |
| -against- | CLASS ACTION |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN, and ROBERT J. SIMMONS, | |
| Defendant(s). | |

(Captions Continued. . .)

**MEMORANDUM OF LAW IN SUPPORT OF FIRST DERIVATIVE TRADERS LP
AND ROBERT AND JESSICA GRANT'S MOTION FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFFS, AND
<u>APPROVAL OF LEAD PLAINTIFFS' SELECTION OF LEAD COUNSEL</u>**

| | |
|---|---|
| WILLIAM BOSTON, Individually and On Behalf of All Others Similarly Situated, | ECF CASE |
| | Civil Action No.   07-8808 (RWS) |
| Plaintiff(s), | |
| -against- | CLASS ACTION |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN, and ROBERT J. SIMMONS, | |
| Defendant(s). | |
| ROBERT D. THULMAN, Individually and On Behalf of All Others Similarly Situated, | ECF CASE |
| | Civil Action No. 07-9651 (RWS) |
| Plaintiff(s), | |
| -    against – | CLASS ACTION |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN, and ROBERT J. SIMMONS, | |
| Defendants. | |

TABLE OF CONTENTS

TABLE OF AUTHORITIES …………………………………………………………..ii

INTRODUCTION ................................................................................................. 1

PROCEDURAL HISTORY .................................................................................. 2

STATEMENT OF FACTS .................................................................................... 3

ARGUMENT ........................................................................................................ 4

I.     THE ACTIONS SHOULD BE CONSOLIDATED ........................................... 4

II.    FIRST DERIVATIVE AND THE GRANTS SHOULD BE APPOINTED LEAD
       PLAINTIFF.............................................................................................. 5

       A.     The Procedure Required Under the PSLRA ......................................... 5

       B.     First Derivative and The Grants Satisfy the "Lead Plaintiff" Requirements of
              PSLRA ............................................................................................. 6

              1.     First Derivative and The Grants Have Complied with the PSLRA and
                     Should Be Appointed "Lead Plaintiffs".................................... 6

              2.     First Derivative and the Grants Have the Largest Financial Interest in the
                     Relief ought by the Class ........................................................ 7

              3.     First Derivative and the Grants Otherwise Satisfy Rule 23 ........ 7

III.   THE COURT SHOULD APPROVE FIRST DERIVATIVE AND THE GRANTS'
       CHOICE OF COUNSEL ......................................................................... 10

CONCLUSION.................................................................................................... 11

# TABLE OF AUTHORITIES

**CASES**                                                                                                    **Page(s)**

In re AMF Bowling Securities Litigation,
   No. 99 Civ. 3023, 2002 U.S. Dist. LEXIS 4949 (S.D.N.Y. Mar. 26, 2002) .........................14

Bassin v. Decode,
   No. 04 Civ. 7050, 2005 U.S. Dist. LEXIS 51 (S.D.N.Y. Jan. 3, 2005)..................................12

Bishop v. New York City Department of Housing Preservation and Development,
   141 F.R.D. 229 (S.D.N.Y. 1992) ........................................................................................14

In re Cavanaugh,
   306 F.3d 726 (9th Cir. 2002) ..............................................................................................11

Ferrari v. Impath,
   No. 03 Civ. 5667, 2004 U.S. Dist. LEXIS 13898  (S.D.N.Y. July 15, 2004) .......................12

Fischler v. Amsouth Bancorporation,
   No. 96 Civ. 1567, 1997 U.S. Dist. LEXIS 2875 (M.D. Fla. Feb. 6, 1997) ....................13, 14

Greebel v. FTP Software,
   939 F. Supp. 57 (D. Mass. 1996)........................................................................................11

Johnson v. Celotex Corporation,
   899 F.2d 1281 (2d Cir. 1990), cert. denied, 498 U.S. 920 (1990)...........................................9

Lax v. First Merchants Acceptance Corporation,
   97 Civ. 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 11, 1997)................................13

In re Livent, Inc. Noteholders Securities Litigation,
   210 F.R.D. 512 (S.D.N.Y. 2002) ........................................................................................15

Pirelli Armstrong Tire Corporation v. LaBranche & Co., Inc.,
   No. 03 Civ. 8264, 2004 U.S. Dist. LEXIS 9571 (S.D.N.Y. May 27, 2004)..........................12

Sczesny Trust v. KPMG LLP,
   223 F.R.D. 319 (S.D.N.Y. 2004) ........................................................................................12

In re Sumitomo Copper Litigation,
    194 F.R.D. 480 (S.D.N.Y. 2000) ..........................................................................14

In re Sumitomo Copper Litigation,
    182 F.R.D. 85 (S.D.N.Y. 1998) ............................................................................14

Zaltzman v. Manugistics Group, Inc.,
    No. 98 Civ. 1881, 1998 U.S. Dist. LEXIS 22867 (D. Md. Oct. 8, 1998) ..............14

## STATUTES & RULES

Federal Rules of Civil Procedure
    R. 23 .......................................................................................................................15
    R. 23(a) ...................................................................................................................13
    R. 23(a)(4) ..............................................................................................................15
    R. 42(a) .....................................................................................................................9

United States Code
    15 U.S.C. § 77z-1(a)(3)(A) ....................................................................................10
    15 U.S.C. § 78u-4(a)(1) .........................................................................................10
    15 U.S.C. § 78u-4(a)(3)(A) ....................................................................................10
    15 U.S.C. § 78u-4(a)(3)(B) ............................................................................ *passim*

First Derivative Traders LP ("First Derivative") and Robert and Jessica Grant (together, the "Grants") jointly submit this memorandum of law in support of their motion for: (i) consolidation of the actions referenced in the instant captions (the "Actions"); (ii) appointment as Lead Plaintiff, pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (iii) appointment of Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") as Lead Counsel.

## **INTRODUCTION**

These Actions are securities class actions against E*TRADE Financial Corporation (E*TRADE or the "Company") and certain of the Company's officers and directors for violations of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder. The Actions were filed on behalf of a class (the "Class") consisting of all persons, other than Defendants, who acquired E*TRADE's securities between December 14, 2006 and September 25, 2007, inclusive (the "Class Period") to recover damages caused by Defendants' violations of the federal securities laws.

The complaints allege that throughout the Class Period Defendants failed to disclose material adverse facts about the Company's financial well-being, business relationships and prospects. Specifically, Defendants failed to disclose or indicate the following: (1) that the Company was experiencing increased delinquencies in its mortgage and home equity portfolios; (2) that the Company failed to adequately reserve for loan losses; (3) that consequently the Company would be forced to take $95 million in charge-offs and provision expenses of $245 million in the second half of 2007; (4) that the Company failed to timely record impairments on certain securities, and as a result, such portfolios were materially overvalued; and (5) that as a

result of the foregoing, the Company's statements about its 2007 financial and operational results were lacking in any reasonable basis when made.

First Derivative is an institutional investor. During the Class Period, First Derivative sustained losses of approximately $375,856.85 as a result of Defendants' misconduct.

The Grants are individual investors. During the Class Period, the Grants sustained losses of approximately $180,794.32 as a result of Defendants' misconduct.

First Derivative, together with the Grants, believe that they suffered the largest financial interest in the litigation of any movant, and otherwise qualify as the most qualified Lead Plaintiffs. Indeed, their combined loss is approximately $556,351.17.

Apart from the substantial monetary loss suffered by First Derivative and the Grants, the parties exemplify the type of Lead Plaintiffs Congress envisioned when crafting the PSLRA. On December 3, 2007, each of the parties executed declarations detailing their transactions in E*TRADE securities during the Class Period. They also indicated their willingness to serve as Lead Plaintiffs on behalf of the Class and to work closely with their selected counsel, Wolf Haldenstein, during the prosecution of this litigation. Accordingly, this Court should grant First Derivative and the Grants' application seeking an order appointing them Lead Plaintiffs, as well as approval of their selection of Wolf Haldenstein as Lead Counsel for themselves and the Class as set forth herein.

## PROCEDURAL HISTORY

On October 2, 2007, Plaintiff Freudenberg filed a complaint against E*TRADE and certain of its officers and directors in the Southern District of New York. The *Freudenberg* complaint alleges a class period of December 14, 2006, to September 25, 2007, inclusive (the "Class Period"). Two additional complaints were subsequently filed in the Southern District of New York arising out of the same facts. The *Boston* complaint was filed on October 12, 2007,

and the *Thulman* complaint was filed on October 30, 2007.   The complaints in the New York cases are nearly identical.

Pursuant to the strictures of the PSLRA, on October 2, 2007, notice was published over a nationally recognized newswire advising the Class that a stockholder initiated a lawsuit against the Company and certain of its officers and directors.

In accordance with the PSLRA, First Derivative and the Grants now timely move to be appointed Lead Plaintiffs in the consolidated actions and for Wolf Haldenstein to be appointed as Lead Counsel.

## STATEMENT OF FACTS

E*TRADE, through its subsidiaries, "provides financial services, including trading, investing, banking, and lending for retail and institutional customers."

On September 17, 2007, the Company shocked investors when it announced that it was exiting the wholesale mortgage business, restructuring its institutional brokerage business, and revising its previously issued 2007 guidance.  The Company disclosed that it expected charge-offs of $95 million and total provision expenses of $245 million in the second half of 2007 due to an increased allowance for loan losses, and that it estimated severance, restructuring and other exit charges to be $32 million.  Additionally, the Company revised its earnings guidance for 2007, and that it now expected earnings per share ("EPS") of between $1.05 and $1.15 for the year, significantly lower that the Company's previously issued guidance of between $1.53 to $1.67 EPS for the year.

On this news, the Company's shares fell $2.32 per share, or over 16.3%, over the next six trading days, to close on September 25, 2007 at $11.89 per share, on heavy trading volume.

The complaints allege that throughout the Class Period Defendants failed to disclose material adverse facts about the Company's financial well-being, business relationships and

prospects. Specifically, Defendants failed to disclose or indicate the following: (1) that the Company was experiencing increased delinquencies in its mortgage and home equity portfolios; (2) that the Company failed to adequately reserve for loan losses; (3) that consequently the Company would be forced to take $95 million in charge-offs and provision expenses of $245 million in the second half of 2007; (4) that the Company had failed to timely record impairments on certain securities, and as a result, such portfolios were materially overvalued; and (5) that as a result of the foregoing, the Company's statements about its 2007 financial and operational results were lacking in any reasonable basis when made.

Plaintiffs and the Class suffered serious financial damage as a result of Defendants' material misstatements and omissions, and bring these Actions to recover damages incurred thereby as well as the costs and expenses of this litigation and any further relief as may be just and proper.

**ARGUMENT**

## I.      ACTIONS SHOULD BE CONSOLIDATED

Consolidation is appropriate where, as here, there are actions involving common questions of law or fact. See Fed. R. Civ. P. 42(a); Johnson v. Celotex Corp., 899 F.2d 1281, 1284 (2d Cir. 1990), cert. denied, 498 U.S. 920 (1990). The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." 15 U.S.C. § 77z-1(a)(3)(A)(ii) and 15 U.S.C. § 78u-4(a)(3)(A)(ii). All three Actions involve class action claims on behalf of all purchasers of E*TRADE common stock during the Class Period. Each Action alleges the same set of operative facts, and substantially similar violations of the federal securities laws. The consolidation test, therefore, has been met and it is highly unlikely that Defendants will take a counter position to consolidation. Accordingly, consolidation is appropriate.

4

## II.    FIRST DERIVATIVE AND THE GRANTS SHOULD <u>BE APPOINTED LEAD PLAINTIFFS</u>

### A.    <u>The Procedure Required Under the PSLRA</u>

The PSLRA established procedures that govern the appointment of a lead plaintiff in "each action arising under [the Exchange Act of 1934] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i).  Here, notice of a related action was published via Business Wire on October 2, 2007.  See Nespole Decl., Ex. 1

Second, within 60 days after publication of the first notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed lead plaintiff, whether or not they previously filed a complaint in the action.  15 U.S.C. § 78u-4(a)(3)(A) and (B).

Third, the PSLRA provides that within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members.  15 U.S.C. § 78u-4(a)(3)(B).  In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> aa) has either filed the complaint or made a motion in response to a notice . . .
>
> bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

cc) otherwise satisfies the requirements of Rule 23 of the Federal
Rules of Civil Procedure.

U.S.C. § 78u-4(a)(3)(B)(iii).  See Greebel v. FTP Software, 939 F. Supp. 57, 64 (D. Mass. 1996).

See also In re Cavanaugh, 306 F.3d 726, 729 n.2 (9th Cir. 2002): "The Act sets up a rebuttable

presumption that the plaintiff with the largest stake in the controversy will be the lead plaintiff."

Nevertheless, the Court may consider other factors in addition to the size of the loss.  These

considerations include whether under Rule 23, the candidate is a typical and adequate

representative.  Moreover, even if a movant does not have the largest loss per se, it may rebut the

presumption afforded the larger stockholder by demonstrating that the larger stockholder does

not satisfy Rule 23 or that the movant is otherwise more adequate.

**B.    First Derivative and The Grants Satisfy the
"Lead Plaintiff" Requirements of the PSLRA**

**1.    First Derivative and The Grants Have Complied with the
PSLRA and Should Be Appointed "Lead Plaintiffs".**

Pursuant to the provisions of the PSLRA, First Derivative and the Grants timely moved

to be appointed Lead Plaintiffs.  They signed and filed declarations stating that: (i) they have

reviewed the complaints filed in this Action; and (ii) are willing to serve as a representative party

on behalf of the Class.  See Nespole Decl., Ex. 2.  In addition, First Derivative and the Grants

selected and retained experienced and competent counsel to represent themselves and the Class.

See Nespole Decl., Ex. 3.

Accordingly, First Derivative and the Grants satisfied the individual requirements of 15

U.S.C. § 78u-4(a)(3)(B), and are therefore entitled to have their application for appointment as

Lead Plaintiffs and selection of counsel, as set forth herein, considered and approved by the

Court.

**2.     First Derivative and the Grants Have the Largest Financial Interest in the Relief ought by the Class**

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii) of the Exchange Act, the court shall appoint as lead plaintiff the class member or members who represent the largest financial interest in the relief sought by the action.  "In light of the PSLRA's silence in prescribing a method for assessing a movant's financial interest, courts have examined several factors such as: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." Bassin v. Decode, 04 Civ. 7050, 2005 U.S. Dist. LEXIS 51, at *8 (S.D.N.Y. Jan. 3, 2005).  See also Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc., 03 Civ. 8264, 2004 U.S. Dist. LEXIS 9571, at *7 (S.D.N.Y. May 27, 2004) (quoting Lax v. First Merchants Acceptance Corp., 97 Civ. 2715, 1997 U.S. Dist. LEXIS 11866, at *5 (N.D. Ill. Aug. 11, 1997)); Sczesny Trust v. KPMG LLP, 223 F.R.D. 319, 323 (S.D.N.Y. 2004); Ferrari v. Impath, 03 Civ. 5667, 2004 U.S. Dist. LEXIS 13898, at *4 (S.D.N.Y. July 15, 2004).

During the Class Period, as evidenced by the accompanying declarations, First Derivative and the Grants suffered a loss of approximately $556,351.14.  See Nespole Decl., Ex. 2.  First Derivative has not received notice of any other applicant that has sustained greater financial losses in connection with the purchase and/or sale of the Company's common stock.  First Derivative and the Grants believe that together they have the most significant financial interest in this case and should be appointed Lead Plaintiffs.

**3.     First Derivative and the Grants Otherwise Satisfy Rule 23**

According to 15 U.S.C. § 78u-4(a)(3)(B) of the Exchange Act, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule

7

23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> [T]he class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative.  Consequently, in deciding a motion to serve as lead plaintiff, the Court shall limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification.  Lax, 1997 U.S. Dist. LEXIS 11866, at *20; Fischler v. Amsouth Bancorporation, 96 Civ. 1567, 1997 U.S. Dist. LEXIS 2875, at *7-8 (M.D. Fla. Feb. 6, 1997); Zaltzman v. Manugistics Group, Inc., 98 Civ. 1881, 1998 U.S. Dist. LEXIS 22867, at *20 (D. Md. Oct. 8, 1998).

First Derivative and the Grants satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiffs.  Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  Typicality exists if claims "arise from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  See In re AMF Bowling Securities Litigation, No. 99 Civ. 3023, 2002 U.S. Dist. LEXIS 4949, *12 (S.D.N.Y. Mar. 26, 2002); In re Sumitomo Copper Litigation, 194 F.R.D. 480, 482 (S.D.N.Y. 2000).  However, the claims of the class representative need not be identical to the claims of the class to satisfy typicality. See In re AMF Bowling Securities Litigation, 2002 U.S. Dist. LEXIS 4949.  Instead, the courts have recognized that:

8

> [T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.

Bishop v. New York City Dep't of Hous. Pres. and Dev., 141 F.R.D. 229, 238 (S.D.N.Y. 1992).

See also In re Sumitomo Copper Litigation, 182 F.R.D. 85, 92 (S.D.N.Y. 1998) (Noting that "[i]t is well settled in this Circuit that factual differences in the amount of damages, date, size or manner of purchase, the type of purchaser, the presence of both purchasers and sellers, and other such concerns will not defeat class action certification when plaintiffs allege that the same unlawful course of conduct affected all members of the proposed class.").

First Derivative and the Grants seek to represent a class of all persons, other than Defendants, who acquired E*TRADE common stock during the Class Period, who have identical, non-competing and non-conflicting interests. First Derivative and the Grants satisfy the typicality requirement because they: (i) acquired E*TRADE common stock during the Class Period; (ii) at a price allegedly artificially inflated as a result of Defendants' violations of the federal securities laws; and (iii) suffered damages thereby. Thus, typicality is satisfied since the claims asserted by First Derivative and the Grants arise from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory. In re Livent, Inc. Noteholders Securities Litigation, 210 F.R.D. 512, 516 (S.D.N.Y. 2002).

Under Rule 23(a)(4), the representative party must also "fairly and adequately protect the interests of the class." The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the named plaintiff and the class members, and (2) the class representative's choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. In re Livent, 210 F.R.D. at 512.

First Derivative and the Grants are adequate representatives of the class.  As evidenced by the injuries suffered by First Derivative and the Grants, their interests are clearly aligned with the members of the proposed class, and there is no evidence of any antagonism between their interests and those of the proposed class.  In addition, First Derivative and the Grants' proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner.  Thus, First Derivative and the Grants satisfy the commonality, typicality, and adequacy requirements of Rule 23.

First Derivative and the Grants satisfy all of the PSLRA's prerequisites and practices of this judicial district for appointment as Lead Plaintiffs and should be appointed as Lead Plaintiffs pursuant to 15 U.S.C. § 78u-4(a)(3)(B), of a class consisting of all persons that purchased E*TRADE common stock during the Class Period.

## III.    THE COURT SHOULD APPROVE FIRST DERIVATIVE AND THE GRANTS' CHOICE OF COUNSEL

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v) of the Exchange Act, the proposed Lead Plaintiffs shall, subject to court approval, select and retain counsel to represent the class they seek to represent.  First Derivative and the Grants have selected and retained Wolf Haldenstein to serve as Lead Counsel for the Class.  Wolf Haldenstein has extensive experience in successfully prosecuting complex securities actions and has frequently appeared in major actions in this and other courts.  See Nespole Decl., Ex. 4.

Because there is nothing to suggest that First Derivative, the Grants or their counsel will not fairly and adequately represent the Class, or that First Derivative or the Grants are subject to unique defenses – which is the only evidence that can rebut the presumption of adequacy under the Act – this Court should appoint First Derivative and the Grants as Lead Plaintiffs and approve their selection of Wolf Haldenstein as Lead Counsel for the Class.

## CONCLUSION

For the foregoing reasons, First Derivative and the Grants respectfully request that the Court: (i) consolidate the above-captioned actions; (ii) appoint First Derivative and the Grants as Lead Plaintiff in the Action; and (ii) approve First Derivative and the Grants' selection of Wolf Haldenstein as Lead Counsel for the Class.

Dated:  December 3, 2007
        New York, New York


                                        Respectfully submitted,

                                        **WOLF HALDENSTEIN ADLER**
                                        **FREEMAN & HERZ LLP**

                                        By: _____/s/_____
                                        Gregory M. Nespole (GN-6820)
                                        Thomas H. Burt (TB-7601)
                                        Laurence J. Hasson (LH-5834)
                                        270 Madison Avenue
                                        New York, New York 10016
                                        Telephone:  (212) 545-4600
                                        Facsimile:  (212) 545-4653


                                        **LAW OFFICES OF MARC S. HENZEL**
                                        Marc S. Henzel
                                        273 Montgomery Ave
                                        Suite 202
                                        Bala Cynwyd, PA 19004
                                        Phone: (610) 660-8000


495019