UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                                )
LARRY FREUDENBERG, Individually and )
on Behalf of All Others Similarly Situated,  )
                                                )   Civil Action No. 07-8538-RWS
                         Plaintiff,            )
                                                )   <u>CLASS ACTION</u>
      -against-                             )
                                                )   <u>ELECTRONICALLY FILED</u>
E*TRADE FINANCIAL CORPORATION, )
MITCHELL H. CAPLAN and ROBERT J. )
SIMMONS,                                )
                                                )
                         Defendants.     )
_____)
(caption continued on next pages)

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF SKANDIA LIFE
INSURANCE COMPANY LTD.'S  MOTION FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION
<u>OF COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS</u>**

742663. 1D.

| | |
|---|---|
| WILLIAM BOSTON, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br> -against-<br><br>E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN and ROBERT J. SIMMONS,<br><br>    Defendants. | Civil Action No. 07-8808-RWS |
| ROBERT D. THULMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br> -against-<br><br>E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN and ROBERT J. SIMMONS,<br><br>    Defendants. | Civil Action No. 07-9651-RWS |
| WENDY M. DAVIDSON, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>-against-<br><br>E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN and ROBERT J. SIMMONS,<br><br>    Defendants. | Civil Action No. 07-10400-UA |

|  |  |
|---|---|
| JOSHUA FERENC, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>-against-<br><br>E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN, AND ROBERT J. SIMMONS,<br><br>       Defendants. | Civil Action No. 07-10540-SHS |

**TABLE OF CONTENTS**

INTRODUCTION…………………………………………………………………………...1

PRELIMINARY STATEMENT……………………………………………………….……1

ARGUMENT…………………………………………………………………………….....2

    I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED………………….2

    II.    KSG SHOULD NOT BE APPOINTED LEAD PLAINTIFF……………….….2

        A.    KSG Is Not An Institutional Investor, Which Is Favored
            By The PSLRA…………………………………………………………2

        B.    KSG Should Not Be Appointed Lead Plaintiff Because It Is
            Atypical, Is Subject To A Unique Defense, And Cannot Rely
            On The Fraud-On-The-Market Theory…………………………………....4

            1.    KSG Is Atypical and Subject to a Unique Defense……………..4

            2.    KSG Cannot Rely on the Fraud-On-The-Market Theory…………6

    III.    SKANDIA SHOULD BE APPOINTED CO-LEAD PLAINTIFF
          WITH OHIO………………………………………………………………………7

    IV.    NEITHER FIRST DERIVATIVES & GRANTS, NOR NEWMAN,
          SHOULD BE APPOINTED LEAD PLAINTIFF……………………………...9

CONCLUSION……………………………………………………………………………....9

## INTRODUCTION

Skandia Life Insurance Company Ltd. ("Skandia") submits this memorandum of law in further support of its Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Its Selection of Counsel, and in opposition to the competing motions discussed below.

## PRELIMINARY STATEMENT

On December 3, 2007, Skandia timely filed its Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Its Selection of Counsel. Other purported class members filed similar motions on that same date: the Kristen-Straxton Group ("KSG"); State Teachers Retirement System of Ohio ("Ohio"); the E*Trade Institutional Investor Group ("EIIG")[1]; First Derivative Traders LP and Robert and Jessica Grant ("First Derivative & Grants"); and Ira Newman ("Newman"). Below is a chart reflecting the remaining major[2] competing movants and their reported claimed losses:

| Movant[*] | # Shares Purchased | Net Shares | Net Funds Expended | Net Loss | FIFO Loss | LIFO Loss |
|---|---|---|---|---|---|---|
| KSG[1] | 12,764,763 | 0 | $133,415,508 | ($133,415,508) | N/A | N/A |
| Ohio[2] | 3,185,000 | 1,827,500 | $29,211,634 | ($22,712,225) | ($22,745,443) | ($22,761,991) |
| Skandia | 700,042 | 320,133 | $10,244,730 | ($8,712,005) | ($9,111,370) | ($8,712,005) |

[*] Movants used slightly different hold prices and also may have rounding variances that cause relatively insignificant differences in loss calculations.

[1] Movant bought and sold Contracts for Difference ("CfD") and it is unclear whether there were actual preclass holdings. Movant also reported claimed net losses rather than FIFO or LIFO losses, but claims in a footnote that "[c]alculation of losses based on FIFO and LIFO accounting result in the same loss figure as the net loss." Schmid Decl., Ex. B at 3 (Dkt. 13-3).

[2] Movant also included a FIFO loss calculation in which pre-class holdings sold above the hold price were not offset, giving a total loss of ($38,713,087). Skandia and EIIG only reported losses by one method in which pre-class holdings sold above the hold price were not offset.

---

[1] Skandia understands that EIIG is withdrawing it motion to be appointed lead plaintiff.

[2] First Derivatives & Grants, with a reported loss of $556,351.97, and Newman, with a reported loss of $487,838.81, have losses so low as to be insignificant for the purposes of determining the most adequate lead plaintiff.

# ARGUMENT

## POINT I

### THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Each of the Related Actions involves class action claims on behalf of class members who purchased publicly traded securities of E*TRADE during the Class Period in reliance on the materially false and misleading statements and omissions at all relevant times. Consolidation is appropriate when, as here, there are actions involving common questions of law or fact. See Fed. R. Civ. P. 42(a); Werner v. Satterlee, Stephen, Burke & Burke, 797 F. Supp. 1196 (S.D.N.Y. 1992) (ruling consolidation appropriate in securities actions when complaints are based on same public statements and reports and there are common questions of law and fact). That test is met here. Therefore, the Related Actions should be consolidated.

## POINT II

### KSG SHOULD NOT BE APPOINTED LEAD PLAINTIFF

The Court should not appoint KSG for two reasons. First, KSG is not an institutional investor, the type of lead plaintiff favored by the PSLRA. Second, KSG's purported losses are a result of its members' dealings in "Contracts for Differences" ("CfDs") – which are illegal in the United States – on over-the-counter exchanges. KSG is thus atypical, subject to a unique defense, and would not be able to rely on the fraud on the market theory.

**A.    KSG Is Not An Institutional Investor, Which Is Favored By The PSLRA**

KSG basically consists of two individuals, Vincent de Cannière and Javed Fiyaz. Mr. Cannière is the Director of both Kristen Management Limited and Straxton Properties Inc., self-described offshore "investment companies organized and existing under the laws of the British Virgin Islands." KSG Opening Mem. at 7 (Dkt. 12). Amazingly, separate Google searches of

2

"Kristen Management Limited" and "Straxton Properties Inc." returned no hits for either. Mr. Fiyaz "is an invidividual investor who resides in London, England." Id. KSG describes Mr. Cannière and Mr. Fiyaz as "sophisticated businessman [sic] who have experience retaining and supervising outside counsel." Id. at 11. Thus, there is no evidence at all that KSG includes an "institutional" investor, despite KSG's overreaching claims that "the Kristen-Straxton Group is the prototypical 'group' contemplated under the PSLRA," id., and that "Kristen and Straxton . . . are institutional investors," id. at 15.

The Congressional objective in enacting the lead plaintiff provisions was to encourage large, organized institutional investors to play a more prominent role in securities class actions. See H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); see also Glauser v. EVCI Ctr. Colleges Holding Corp., 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("'[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.'") (quoting In re Veeco Instruments, Inc., 233 F.R.D. 330, 332-33 (S.D.N.Y. 2005)).

The Court should appoint as lead plaintiffs institutional investors in the strict sense of the word (e.g., pension funds, insurance company funds, or large investment companies with diversified management and ownership), not two as-yet unheard of offshore companies with one director and an individual investor. See, e.g., In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 100 (S.D.N.Y. 2005) (Scheindlin, J.) ("I conclude, therefore, that a group of unrelated investors should not be considered as lead plaintiff when that group would displace the institutional

3

742663.1

investor preferred by the PSLRA."). Therefore, the Court should not appoint KSG as lead plaintiff.

**B.      KSG Should Not Be Appointed Lead Plaintiff Because It Is Atypical, Is Subject To A Unique Defense, And Cannot Rely On The Fraud-On-The-Market Theory**

      **1.     KSG Is Atypical and Subject to a Unique Defense**

KSG "seeks to represent a class of purchasers of E*Trade securities." KSG Opening Mem. at 14. It claims to satisfy Rule 23's typicality requirement because its members "purchased or otherwise acquired E*Trade securities." Id. This, however, does not appear to be the case. As its members' certifications and transaction charts show, they did not purchase E*Trade securities; they dealt in "Contracts for Difference," or CfDs. KSG Schmid Decl. Exs. B; D-F (Dkt. 13-3).

CfDs are over-the-counter derivative products as opposed to actual share ownership.[3] A CfD on a share is a derivative product that gives the holder an economic exposure, which can be long or short, to the change in price of a specific share over the life of the contract. Contracts are normally open-ended, and can be closed out by the CfD holder on demand. The contract does not give the holder either ownership of the referenced shares or any ownership rights, such as voting rights. Nor, since the contract is normally cash-settled, does it usually create any right to take delivery of the shares in place of cash settlement.[4]

---

[3] A CfD "does not give the holder either ownership of the referenced shares or any ownership rights, such as voting rights. Nor, since the contract is normally cash-settled, does it usually create any right to take delivery of the shares in place of cash settlement." See the United Kingdom's Financial Services Authority (FSA) – the British equivalent of the SEC – website and related publications (http://www.fsa.gov.uk/pubs/cp/cp07_20.pdf).

[4] See supra note 3.

CfDs are a fairly recent development in financial markets. Importantly, they are illegal in the United States.[5] The Financial Services Authority – the British equivalent of the United States Securities and Exchange Commission – recently published a consultation and handbook paper focused on creating greater awareness of how undisclosed CfD's might create market failures and decrease market confidence and efficiency.[6]

KSG claims it should be appointed because of its "losses trading in E*Trade." KSG Opening Mem. at 8. However, as explained above, CfDs are not actual units that "trade" in the literal sense, but contracts based on the performance of underlying instruments. CfDs are bought on margins based on underlying shares,[7] whereas most putative class members will have bought the underlying instrument. KSG is therefore atypical and subject to the unique defense that its members did not actually own any underlying E*Trade instruments.

Furthermore, in the United Kingdom (for example) CfDs can be bought over-the-counter and outside of securities regulation, whereas the majority of the class likely bought equity securities listed on a recognized exchange. Because the KSG group's financial interests are atypical of an actual shareholder of E*Trade, KSG may very likely be subject to a unique defense. KSG's filings do not reference the margin or any other contract terms related to the CfD transactions; thus, KSG's losses may simply have been the result of bad investment strategy

---

[5] "In the US, CFD trading is illegal, although investors in Australia and Britain can use CFDs to trade in many US stocks." See The Age magazine online (http://www.theage.com.au/news/business/cfd-traders-gamble-on-big-returns/2006/08/02/1154198206491.html?page=2).

[6] See supra note 3.

[7] A CfD contract is usually made with a broker, where the buyer trades "on margin," which means the buyer does not pay the full purchase price of the share but rather makes a deposit – typically around 10% to 25% – based on the value of the underlying share. (http://www.thecfdcentre.com/faq). The initial CfD payment (or "margin percentage") is effectively a deposit or cash collateral for the trade. If a position moves sufficiently against an investor where it begins to lose money, the investor can be required to tip cash into the account within 24 hours to restore the margin to the required percentage for the particular contract. (http://money.ninemsn.com.au/article.aspx?id=112543).

742663.1

decisions rather than of the alleged fraud.[8]  KSG is thus atypical and subject to a unique defense, and should not be appointed.

### 2. KSG Cannot Rely on the Fraud-On-The Market Theory

As noted above, KSG members dealt in CfDs on an over-the-counter market.  A plaintiff may invoke the rebuttable presumption of reliance under the "fraud-on-the-market" theory only when the securities at issue traded on an impersonal, well-developed, efficient market.  See, e.g., Basic Inc. v. Levinson, 485 U.S. 224, 241-250 (1988).  But courts have held that the over-the-counter market may not, or cannot, meet the Supreme Court test for an efficient market.  See, e.g., Burke v. China Aviation Oil (Singapore) Corp., 421 F. Supp. 2d 649, 653 (S.D.N.Y. 2005) ("The NASDAQ is recognized as maintaining an efficient market, but the Court is unaware of any court holding that the OTCBB [over-the-counter bulletin board] or Pink Sheets meet this same standard."); Epstein v. Am. Reserve Corp., No. 79 C 4767, 1988 WL 40500 (N.D. Ill. 1988) (denying plaintiffs' motion for class certification in part because the court believed that "the over-the-counter market is incapable of meeting the Supreme Court test"); In re Data Access Sys. Sec. Litig., 103 F.R.D. 130, 138 (D.N.J. 1984) ("The trading on the over-the-counter market may not constitute an 'active and substantial' market necessary to apply the fraud-on-the-market theory.").  Thus, KSG may not meet the typicality requirement of Rule 23 because it may not be able to show reliance under the fraud-on-the-market theory.

Moreover, even a loose interpretation of the Securities and Exchange Act of 1934 (the "Act"), which governs "purchase or sale of a security," is likely not sufficient to cover illegal contracts based underlying instruments.  Rule 10b-5 provides that it generally covers the duties

---

[8] "CFDs are not suitable for 'buy and forget' trading or long-term positions.  Each day you maintain the position it costs money (if you are long), so there is a time when CFDs become expensive.  For short-term trading they have advantages, provided you get the markets right." (http://www.contracts-for-difference.com/).

742663.1

owed to "issuers or shareholders" (emphasis added), and KSG's pleadings provide no affirmative proof that it is either. Therefore, KSG should not be appointed lead plaintiff.

## POINT III

## SKANDIA SHOULD BE APPOINTED CO-LEAD PLAINTIFF WITH OHIO

Ohio, a single institutional investor with the largest reported loss of any movant who is typical, not subject to a unique defense, and able to employ the fraud-on-the-market theory, should be appointed lead plaintiff. Skandia should be appointed co-lead plaintiff with Ohio for the following reasons.[9]

First, under 15 U.S.C. § 78u-4(a)(3)(B)(vi), a person may not be a lead plaintiff in "more than 5 securities class actions . . . during any 3-year period" except as the Court may otherwise permit. Courts have, however, ruled that this section is not intended to prohibit institutional plaintiffs, such as Ohio, from serving more than five times in a three year period. See, e.g., In re Pfizer, 233 F.R.D. at 338 n.4 ("This provision [regarding professional plaintiffs] was not intended to target institutional investors, however."). Ohio is, under the PSLRA, a "professional plaintiff," having served as lead or co-lead plaintiff in a securities class action five or more times in the past three years. See Ohio Certification (Dkt. 9-3). The Court may permit Ohio to serve as lead plaintiff because it is an institutional investor. Skandia respectfully suggests that the Court may want to appoint it as co-lead plaintiff because it is not a professional plaintiff (having never served as a lead plaintiff in a PSLRA securities fraud class action). This dual appointment would ensure that at least one of the lead plaintiffs was not a "professional" plaintiff.

---

[9] The Court has the discretion to determine that a co-lead plaintiff and co-lead counsel are necessary to protect the Class even if the Court deems Ohio as the presumptive lead plaintiff. E.g., In re Flight Safety Techs. Inc. Sec. Litig., 231 F.R.D. 124, 131 (D. Conn. 2005) ("the Court exercises its discretion and, acting in the best interests of the purported class members, appoints [a competing movant] as a co-lead plaintiff"); In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (noting that the lead plaintiff decision "must be made on a case-by-case basis, taking account of the unique circumstances of each case"). If the Court is inclined to appoint a co-lead plaintiff, Skandia, as the movant with the second largest net loss that neither faces a unique defense nor is precluded from employing the fraud-on-the-market theory, should be appointed and its choice of counsel approved.

Second, having Ohio, a single, large institutional investor representing United States shareholders and Skandia, a single, large European institutional investor representing foreign investors ensures that both United States and foreign shareholders will be adequately and vigorously represented. Two of the major shareholders of E*Trade are foreign entities.[10] Therefore, appointing Skandia co-lead plaintiff will give foreign investors who suffered tremendous losses specific representation.

Third, Skandia supports the appointment of Ohio as lead plaintiff because it is dedicated to fighting securities fraud and business corruption. See, e.g., Aaron Lucchetti, A New Mortgage 'Cop'; Dann, Ex-Footballer, Tackles Fraud Cases, Targets Wall Street, Wall Street Journal, Oct. 8, 2007, at C1 (attached as Hughes Decl., Ex. A). According to the Wall Street Journal, Ohio's Attorney General, Marc Dann, has been pursuing investor suits on behalf of Ohio's pension funds. Id. Concerning one of the main issues involved in this case – the subprime mortgage debacle – Mr. Dann assigns much of the blame for Ohio's record mortgage-foreclosure rate on Wall Street, and calls the mess "the largest financial scam in American history." Id. "My job is to be the bad cop, and I'm comfortable with this role because I believe a terrible crime has been committed." Id. This dedication certainly will serve well those in Ohio who have had their mortgages foreclosed, as well as others. Skandia respectfully suggests, however, that another large, single institutional investor who is dedicated solely to E*Trade shareholders (whether nor not their mortgages have been affected) will add power and balance to the representation of the Class.

---

[10] Barclays Global Investors UK Holdings Ltd. owned 14,054,347 shares of E*Trade stock (or 3.32%) as of September 30, 2007; Deutsche Bank Aktiengesellschaft owned 10,997,489 shares (or 2.6%) as of that same date. See http://finance.yahoo.com/q/mh?s=ETFC.

## POINT IV

### NEITHER FIRST DERIVATIVES & GRANTS, NOR NEWMAN, SHOULD BE APPOINTED LEAD PLAINTIFF

First Derivatives & Grants claim reported losses of $556,351.97. First Derivatives & Grants Opening Mem. at 7 (Dkt. 22-2). Newman claims losses of $487,838.81. Newman Opening Mem. at 7 (Dkt. 24). Each of these losses is a small fraction of the loss suffered by any of the legitimate lead plaintiff movants. Therefore, neither First Derivatives & Grants nor Newman should be appointed lead plaintiff.

### CONCLUSION

For all of the above reasons, Skandia respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint Skandia as co-lead plaintiff with Ohio in the proposed consolidated actions; and (3) approve Skandia's selection of co-lead counsel.

Respectfully submitted this 20th Day of December, 2007,

/s/ Daniel P. Chiplock
Daniel P. Chiplock (DC – 1137)

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Steven E. Fineman, Esq. (SF – 8481)
Daniel P. Chiplock, Esq. (DC – 1137)
780 Third Avenue, 48th Floor
New York, New York 10017-2024
Tel: 212-355-9500
Fax: 212-355-9592

[Proposed] Liaison Counsel

and

9

MOTLEY RICE LLC
Ann K. Ritter, Esq.
James M. Hughes, Esq.
P.O. Box. 1792 (29465)
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Tel: (843) 216-9000
Fax: (843) 216-9450

[Proposed] Lead Counsel

       and

STURMAN LLC
Deborah Sturman, Esq.
112 Madison Avenue
New York, New York 10016-7416
Tel: 646-932-2040
Fax: 917-546-2544

Counsel for Skandia Life Insurance Company Ltd.

10