UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LARRY FREUDENBERG Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-v-<br><br>E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN, and ROBERT SIMMONS,<br><br>Defendants. | Case No.: 07-cv-8538<br>Judge Robert W. Sweet<br><br>ECF CASE |

(Captions continued on following page)

**STATE TEACHERS RETIREMENT SYSTEM OF OHIO'S MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS LEAD PLAINTIFF MOTION AND IN OPPOSITION
TO ALL OTHER LEAD PLAINTIFF MOTIONS**


ABBEY SPANIER RODD & ABRAMS, LLP

Judith L. Spanier (JS 5065)
Jill S. Abrams (JA 1578)
Nancy Kaboolian (NK 6346)
Orin Kurtz (OK 7334)
212 East 39th Street
New York, New York 10016
jspanier@abbeyspanier.com
jabrams@abbeyspanier.com
nkaboolian@abbeyspanier.com
okurtz@abbeyspanier.com
Tel: (212) 889-3700
Fax: (212) 684-5191

Proposed Lead Counsel for Proposed Lead Plaintiff
State Teachers Retirement System of Ohio and
Special Counsel to the Attorney General of Ohio

| | |
|---|---|
| WILLIAM BOSTON, Individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  -v-<br><br>E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN, and ROBERT SIMMONS,<br>      Defendants. | Case No. 07-cv-8808 (RWS) |
| ROBERT D. THULMAN, Individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  -v-<br><br>E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN, and ROBERT SIMMONS,<br>      Defendants. | Case No. 07-cv-9651 (RWS) |
| WENDY M. DAVIDSON, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  -v-<br><br>E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN and ROBERT J. SIMMONS,<br>      Defendants. | Civil Action No. 07-cv-10400 (UA) |
| JOSHUA FERENC, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  -v-<br><br>E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN, and ROBERT J. SIMMONS,<br>      Defendants. | Civil Action No. 07-cv-10540 (SHS) |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT...................................................................................................................................2

    I.   STRS IS THE MOST ADEQUATE LEAD PLAINTIFF............................................2

        A.   STRS Has the Largest Financial Interest In The Relief Sought..........................2

        B.   STRS Satisfies Rule 23...........................................................................................4

    II.  ALL OTHER LEAD PLAINTIFF MOTIONS SHOULD BE DENIED ......................5

        A.   The Kristen-Straxton Group ..................................................................................5

            1. The Kristen-Straxton Group Has No Loss in the Subject Security .................5

            2. The Kristen-Straxton Group Cannot Satisfy Rule 23's Adequacy and
               Typicality Requirements Because it is Subject to Unique Defenses................6

               a.  Are CFDs Securities Under The U.S. Securities Laws?...........................7

               b.  Potential Loss Causation Issues..................................................................8

               c.  Potential Unavailability of the Fraud on the Market Theory....................8

               d.  CFDs Lack the Ownership Rights Characteristic of Other Securities......9

               e.  Other Potential Unique Defenses ................................................................9

            3. The Kristen-Straxton Group's Lack of Candor Renders It An Inadequate
               Lead Plaintiff.....................................................................................................10

        B.   The Institutional Investor Group is a "Cobbled" Together Group and its
            Motion Should be Denied.......................................................................................10

        C.   Skandia's Motion Should be Denied ...................................................................12

        D.   The First Derivative Group's Motion Should be Denied ..................................12

        E.   Ira Newman is Unable to Support a "Niche Plaintiff" Position and his
            Motion Should be Denied.......................................................................................12

CONCLUSION .............................................................................................................................14

# TABLE OF AUTHORITIES

Cases

*Andrada v. Atherogenics, Inc.*,
 2005 U.S. Dist. LEXIS 6777 (S.D.N.Y. Apr. 19, 2005) ...................................................... 8

*Blue Chip Stamps v. Manor Drug Stores*,
 421 U.S. 723 (1975) ........................................................................................................... 9

*Caiola v. Citibank, N.A.*,
 295 F.3d 312 (2d Cir. 2002) ............................................................................................... 9

*Dura Pharm., Inc. v. Brouda*,
 544 U.S. 336 (2005) ......................................................................................................... 10

*Goldenberger v. PXRE Group, LTD*,
 Nos. 06-cv-3410 (KMK) 06-cv-3440 (GBD), 2007 U.S. Dist. LEXIS 23925
 (S.D.N.Y. Mar. 30, 2007) ................................................................................................. 13

*In re Bally Total Fitness Sec. Litig.*,
 Nos. 04 C 3530, 04 C 3634, 04 C 3713, 04 C 3783, 04 C 3844, 04 C 3864,
 04 C 3936, 04 C 4342, 04 C 4697, 2005 U.S. Dist. LEXIS 6243,
 (N.D. Ill. Mar. 15, 2005) .................................................................................................... 8

*In re Cendant Corp. Litig.*,
 264 F.3d 201 (3d Cir. 2001) ............................................................................................... 6

*In re Donnkenny Inc. Sec. Litig.*,
 171 F.R.D. 156 (S.D.N.Y. 1997) ....................................................................................... 5

*In re Espeed, Inc. Sec. Litig.*,
 05 Civ. 2091, 2005 U.S. Dist. LEXIS 14104 (S.D.N.Y. July 13, 2005) ............................ 2

*In re Global Crossing Sec. & ERISA Litig.*,
 225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................................... 4, 5

*In re Livent Noteholders Sec. Litig.*,
 211 F.R.D. 219 (S.D.N.Y. 2002) ..................................................................................... 10

*In re Microstrategy Inc. Sec. Litig.*,
 110 F. Supp. 2d 427 (E.D. Va. 2000) ................................................................................ 7

*In re NYSE Specialists Sec. Litig.*,
    240 F.R.D. 128 (S.D.N.Y. 2007) ............................................................................12, 13

*In re Pfizer Inc. Sec. Litig.*,
    233 F.R.D. 334 (S.D.N.Y. 2005) ....................................................................................13

*In re Razorfish, Inc. Sec. Litig.*,
    143 F. Supp. 2d 304 (S.D.N.Y. 2001) ...........................................................................13

*In re XM Satellite Radio Holdings Sec. Litig.*,
    237 F.R.D. 13 (D.D.C. 2006) ..........................................................................................5

*Kops v. NVE Corp.*,
    No. 06-574, 2006 U.S. Dist. LEXIS 49713 (D. Minn. Jul. 17, 2006) .............................8

*Lax v. First Merchants Acceptance Corp.*,
    No. 97 Civ. 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 11, 1997) ................2, 7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) ...............................................................................4, 12

*Rozenboom v. Van Der Moolen Holding, N.V.*,
    No. 03 Civ. 8284 (RWS), 2004 U.S. Dist. LEXIS 6382 (S.D.N.Y. Apr. 14, 2004) ........14

*Smith v. Suprema Specialties Inc.*,
    206 F. Supp. 2d 627 (D.N.J. 2002) ..................................................................................5

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
    216 F.R.D. 248 (S.D.N.Y. 2003) ...................................................................................15

Statutes

Private Securities Litigation Reform Act

    15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ..................................................................................8
    15 U.S.C. §78j(b) .............................................................................................................9

Securities Litigation Uniform Standards Act of 1998

    15 U.S.C. §77p ..............................................................................................................15

**PRELIMINARY STATEMENT**

State Teachers Retirement System of Ohio ("STRS") respectfully submits this memorandum in further support of its lead plaintiff motion and in opposition to the competing motions for lead plaintiff filed by the Kristen-Straxton Group, the Institutional Investor Group, Skandia Life Insurance Company, Ltd. ("Skandia"), the First Derivative Group and Ira Newman.

STRS, a public pension fund with extensive prior experience as lead plaintiff, has the largest financial interest in the relief sought of any movant who purchased E*Trade securities and also satisfies the requirements of Rule 23. STRS's losses are far greater than the losses claimed by the Institutional Investor Group, Skandia, the First Derivative Group or Ira Newman. Moreover, while the Kristen-Straxton Group purports to have the largest losses, it did not acquire securities issued by E*TRADE Financial Corp ("E*TRADE"). The Kristen-Straxton Group purchased contracts for difference ("CFDs"), which are foreign derivative securities that are illegal in the United States, rather than shares of E*TRADE.

Accordingly, the Kristen-Straxton Group does not have the largest losses in the subject security and cannot satisfy the requirements of Rule 23. Its motion simply obscures the issues of the size and nature of its losses and raises questions of first impression about whether CFDs are securities covered by the federal securities laws. Submitted herewith is the Declaration of Professor Frank Partnoy ("Partnoy Decl.") that details the history and characteristics of CFDs and explains why trading CFDs raises unique and complex issues with which the class should not be burdened. The likely unique defenses, combined with the misleading nature of its submission, require the denial of the Kristen-Straxton Group's motion.

## ARGUMENT

### I. STRS IS THE MOST ADEQUATE LEAD PLAINTIFF

In selecting the lead plaintiff, the Court must first determine which movant has the "largest financial interest" in the relief sought. Upon completing the first step and designating a presumptive lead plaintiff, the Court then "conducts a second inquiry in which the members of the class have the opportunity to rebut the chosen lead plaintiff's presumptive status." *In re Espeed, Inc. Sec. Litig.*, 05 Civ. 2091(SAS), 2005 U.S. Dist. LEXIS 14104 (S.D.N.Y. July 13, 2005).

As set forth below, STRS has the largest financial interest of any qualified movant and is therefore presumptively the most adequate lead plaintiff. Moreover, there is no question that STRS satisfies the typicality and adequacy requirements of Rule 23. Nothing about STRS's trading or the subject securities, E*TRADE stock, will implicate any unique defenses, thus permitting this case to be litigated on behalf of the class in an efficient manner without unnecessary diversions.

#### A. STRS Has the Largest Financial Interest In The Relief Sought

Measured in the context of the class period April 20, 2006 to November 9, 2007, STRS has, by far, the largest financial interest in the relief sought of any qualified movant, as shown by the following "*Lax* factor" chart:[1]

---

[1] This Circuit applies the four-factor test originally articulated in *Lax v. First Merchants Acceptance Corp.*, No. 97 Civ. 2715, 1997 U.S. Dist. LEXIS 11866 at *17 (N.D. Ill. Aug. 11, 1997), to determine who has the largest financial interest. *See* STRS's Opening Br. at 2-3 (citing cases).

2

| Movant | Shares of Subject Security Purchased | Net Shares Purchased (shares retained) | Net Funds Expended | Approximate Losses Suffered |
|---|---|---|---|---|
| **STRS**[2] (Opening brief) | **3,185,000** | **1,357,500** | **$27,595,858.28** | **$22,745,443.00 (LIFO)** **$22,712,225.23 (FIFO)** |
| **STRS** (Longer Class Period) | **4,360,800** | **2,203,600** | **$48,068,043.28** | **$37,550,913.95 (FIFO)** **$37,517,696.17 (LIFO)** |
| Institutional Investor Group | 848,700 | ** | ** | $13,485,987[3] |
| Skandia | 700,042 | 320,133 | $10,244,730 | $9,111,369.97 (FIFO) $8,712,005.00 (LIFO)[4] |
| First Derivative Group | 206,304 | 80,823 | ** | $556,351.14[5] |
| Ira Newman | ** | ** | ** | $487,838.81[6] |

\*\* No information provided

---

[2] STRS's losses were initially computed based on a December 14, 2006 to November 9, 2007 class period. The second set of numbers for STRS's losses is based on a longer class period of April 20, 2006 through November 9, 2007 as alleged in *Ferenc v. E\*TRADE Financial Corp., et al.*, 07-civ-10540 (SHS). See Supplemental Declaration of Judith L. Spanier sworn to December 20, 2007 submitted herewith, Exh. A.

[3] Institutional Investor Group Memo, at 2. The members of this group (identified at p. 10, *infra*) are Mississippi PERS with claimed losses of $8,931,150 and the AFA entities with claimed losses of $4,554,837. *Id.*, n.3.

[4] Skandia Memo, at 2.

[5] First Derivative Group Memo, at 2.

[6] Ira Newman Memo, at 8.

3

Thus, STRS's losses from trades in shares of the subject securities exceed the losses of any other movant. The Kristen-Straxton Group's trades are excluded from the above chart because it did not purchase securities issued by defendant E*TRADE. *See* pp.6-7, *infra*.

### B. STRS Satisfies Rule 23

STRS's losses are the result of purchasing millions of shares of E*TRADE common stock during the class period at prices that were artificially inflated by defendants' materially false and misleading statements. Because its claims arise from the same course of events as the other members of the putative class, and because it will make the same legal arguments in order to prove defendants' liability, it satisfies the typicality requirements of Rule 23. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004).

STRS's interests in prosecuting this case are aligned with the interests of the class, and it has extensive experience discharging its fiduciary duties as a lead or co-lead plaintiff, having served in such capacity in the *Exxon Mobil, Freddie Mac, Fannie Mae, Scottish Re* and *Global Crossing* securities litigations. *See also* Spanier Supp. Decl., Exh. B (press release dated March 9, 2007 entitled "Ohio Attorney General Marc Dann leads nationwide bipartisan effort to protect public pension funds, public investors."). The Attorney General of the State of Ohio has retained Abbey Spanier to represent STRS and seek lead plaintiff status in this litigation. This is precisely the scenario contemplated by the PSLRA. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (approving settlement negotiated by lead plaintiffs, Ohio PERS and Ohio STRS, both represented by the Ohio Attorney General's Office, and holding that the Ohio pension funds, the court appointed lead plaintiffs, were "substantial and

sophisticated institutional investors with access to independent legal and financial specialists and a huge stake in the litigation").

STRS is exactly the type of institutional investor lead plaintiff envisioned by the PSLRA. "Appointing lead plaintiff on the basis of financial interest, rather than on a 'first come, first serve' basis, was intended to ensure that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation, not lawyers." *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997). Similarly, in *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 17 (D.D.C. 2006), the court observed that "In Congress' view, institutional investors should serve as lead plaintiffs where possible, since they are most likely to have the most at stake in the case and be the most sophisticated and competent litigants.") (citation omitted).

Finally, STRS's entry into a fee agreement with its counsel further evidences its commitment to oversee the prosecution of this litigation on behalf of the class. *Smith v. Suprema Specialties Inc.*, 206 F. Supp. 2d 627, 637 (D.N.J. 2002) ("The Third Circuit has explained that 'one of the best ways for a court to ensure that it will fairly and adequately represent the interests of the class is to inquire whether the movant has demonstrated a willingness and ability to . . . negotiate a reasonable retainer agreement with . . . counsel.'") (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001)).

## II. ALL OTHER LEAD PLAINTIFF MOTIONS SHOULD BE DENIED

### A. The Kristen-Straxton Group

#### 1. The Kristen-Straxton Group Has No Loss in the Subject Security

The Kristen-Straxton Group's submission is facially misleading because it implies that the Kristen-Straxton Group purchased securities that were *issued* by E*TRADE when, in fact, it

did not. Partnoy Decl. at ¶¶ 17, 21-28. Instead, a single footnote in an exhibit to the Kristen-Straxton Group's motion reveals that it did not purchase E*TRADE securities. Rather, it purchased CFDs and reports the "# of shares per CFDs" (Exhibit B to Affidavit of Elizabeth A. Schmid)("Schmid Aff."). No data were presented indicating that the Kristen-Straxton Group purchased any shares of E*TRADE common stock, and no further explanation regarding its trading was forthcoming in its motion papers. This cryptic reference obscures what should be clear from a lead plaintiff's submission: the subject security, the number of shares of such security purchased, the net funds expended and the losses suffered from trading in the subject security. *See Lax,* at *17. The Kristen-Straxton Group has failed to provide this information. For this reason alone, the Kristen-Straxton Group's motion for appointment as lead plaintiff should be denied. *See In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 436 (E.D. Va. 2000) (refusing to appoint lead plaintiff movant who failed to submit trading information necessary to "permit a confident conclusion that its loss was as large as it averred").

### 2. The Kristen-Straxton Group Cannot Satisfy Rule 23's Adequacy and Typicality Requirements Because it is Subject to Unique Defenses

The Kristen-Straxton Group purchased CFDs, highly leveraged, high-risk, foreign wagers, which are illegal in the United States and are not traded on any United States securities exchange. Partnoy Decl. at ¶¶12, 15, 20, 28. A contract for difference does not, in and of itself, give the purchaser any ownership rights in the underlying security. Partnoy Decl. at ¶¶ 17-18. Because of the absence of any federal or state case law regarding contracts for difference, each of the potential unique defenses discussed below would present a case of first impression, thus further affecting the Kristen-Straxton Group's typicality and adequacy.

Even if this Court were able to reach a "confident conclusion" that the Kristen-Straxton Group had the largest financial interest, Partnoy Decl. at ¶¶ 19, 21-28, the Kristen-Straxton

Group cannot satisfy the typicality and adequacy requirements of Rule 23. Its CFD transactions will subject it to a myriad of unique defenses that are likely to become the focus of this action in derogation of the interests of the class. "The PSLRA . . . provides that we ask simply whether [the Kristen-Straxton Group] is likely to be 'subject to' the unique defense…; we do not have to determine whether the defense is likely to succeed." *In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530, 04 C 3634, 04 C 3713, 04 C 3783, 04 C 3844, 04 C 3864, 04 C 3936, 04 C 4342, 04 C 4697, 2005 U.S. Dist. LEXIS 6243, at *19 (N.D. Ill. Mar. 15, 2005); *Kops v. NVE Corp.*, No. 06-574, 2006 U.S. Dist. LEXIS 49713, at *18 (D. Minn. Jul. 17, 2006) ("A proposed class representative is not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation.") (citations omitted).

This Court's denial of lead plaintiff status to options holders is analogous and instructive. As explained by Judge Holwell in *Andrada v. Atherogenics, Inc.*, 05 Civ. 00061(RJH), 2005 U.S. Dist. LEXIS 6777 at *14-15 (S.D.N.Y. Apr. 19, 2005):

> …factual issues specific to [options purchaser] South Ferry in determining the precise value of the options -- e.g., the maturity, the volatility of the price of the *Atherogenics* stock, the level of short term interest rates, and the competitive structure of the market in which the options are traded -- would likely 'threaten to become the focus of the litigation…'

As a CFD purchaser, the Kristen-Straxton Group, like the options purchaser in *Andrada*, is "potentially subject to unique defenses irrelevant to regular stock purchasers in the class, *see* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II), as well as standing challenges." *Id. See also* Partnoy Decl. at ¶ 7.

### a. Are CFDs Securities Under The U.S. Securities Laws?

The first issue raised by the CFD transactions is whether they are "securities" under the U.S. securities laws. Section 10(b) of the Securities Exchange Act of 1934 allows a plaintiff to

7

assert a Section 10(b) fraud claim only "in connection with the purchase or sale of a *security*." 15 U.S.C. §78j(b) (emphasis added). Whether a contract for difference is a security under Section 3(a)(10) of the Securities Act of 1933 or a security based swap agreement under Section 10(b) of the Securities Exchange Act of 1934 is an unresolved question. *See* Partnoy Decl. at ¶ 10. *See Caiola v. Citibank, N.A.*, 295 F.3d 312 (2d Cir. 2002).

In any event, however, the CFDs in question were not "issued" by E*TRADE. Accordingly, the Kristen-Straxton Group may lack standing to bring this case, individually or on behalf of a class. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 740 (1975); Partnoy Decl. at ¶ 17. Appointing Kristen-Straxton as the lead plaintiff under such circumstances leaves not only it, but also the class, vulnerable to attack and potentially mired in collateral litigation.

**b.     Potential Loss Causation Issues**

Because CFDs are essentially "side-bets" (Partnoy Aff., ¶¶ 17, 19, 27), the Kristen-Straxton Group's CFD transactions may have been driven by information different than that available to class members and its gains and/or losses may have been the result of the unique characteristics of the CFDs that the Group actually traded. Partnoy Decl. at ¶ 16. Thus, the Kristen-Straxton Group will not be able to demonstrate that it, like the other members of the class, executed trades in E*TRADE securities over NASDAQ "at prices alleged to have been affected by the purported conduct of Defendants... and suffered damages as a consequence." Partnoy Decl. at ¶ 28. *See generally Dura Pharm., Inc. v. Brouda*, 544 U.S. 336, 346-47 (2005) (holding that securities fraud claims under Section 10(b) are permitted "where, but only where, plaintiffs adequately allege and prove the traditional elements of causation and loss").

**c.     Potential Unavailability of the Fraud on the Market Theory**

8

Whether there is a market for the CFDs purchased by the Kristen-Straxton Group and whether it is an efficient market present additional unique defenses. Partnoy Decl. at ¶ 28. In order for the class to avail itself of the "fraud on the market" theory so vital to a securities class action, there must be an efficient market for the subject securities. In *In re Livent Noteholders Sec. Litig.*, 211 F.R.D. 219, 222 (S.D.N.Y. 2002), Judge Marrero denied class certification to a noteholder finding no market efficiency where, *inter alia*, the notes were not traded on any public exchange and were bought and sold through an informal net of contacts among institutional investors and brokers who would exchange bids and negotiate prices privately. *Id.* at 222. Similar questions regarding the Kristen-Straxton Group CFDs may preclude that group from relying on the fraud on the market theory and thus present another unique defense.

        d.      **CFDs Lack the Ownership Rights Characteristic of Other Securities**

A contract for difference does not, in and of itself, give the purchaser any ownership rights in the underlying security, *e.g.*, dividends or voting rights. Partnoy Decl. at ¶¶ 17-18. In the event of a resolution of this case, the Kristen-Straxton Group, consisting of persons content to trade without such indicia of ownership, likely would have no interest in negotiating any relevant corporate governance reforms. Corporate governance reforms are often a key component of the settlement of securities class actions, particularly those in which an institution such as STRS is appointed lead plaintiff. Appointment of a lead plaintiff without full ownership rights would deprive the class of an important weapon in the arsenal against corporate fraud.

        e.      **Other Potential Unique Defenses**

Apart from the foregoing issues, CFD contracts may have provisions that likely would raise substantial and unique defenses applicable to the Kristen-Straxton Group, including the

presence of arbitration clauses, choice of law provisions, liability or suitability disclaimers or other limitations. Partnoy Decl. at ¶ 26.

### 3. The Kristen-Straxton Group's Lack of Candor Renders It An Inadequate Lead Plaintiff

The Kristen-Straxton Group's apparent lack of candor regarding its transactions also raises troubling questions as to its claimed adequacy as a potential class representative under Rule 23. Rather than explaining, front and center, that its transactions were in CFDs, the Kristen-Straxton Group submitted a motion that concealed and obscured this issue. Thus, for example, the Kristen-Straxton Group's opening brief states that it had losses "trading in E*TRADE securities during the class period," and that it "purchased or otherwise acquired E*TRADE securities" without disclosing the Group had purchased only CFDs. Kristen-Straxton Group Opening Brief at 2, 8. As this Court recently found:

> The Second Circuit has allowed for the consideration of characteristics such as honesty, trustworthiness, and credibility in judging the adequacy of a class representative. [citations omitted] In addressing the initial motions for lead plaintiff in this action, it was acknowledged that "honesty and trustworthiness are relevant factors in assessing a candidate's ability to serve as an adequate fiduciary for a class." *Pirelli*, 229 F.R.D. at 416 (citing *Savino*, 164 F.3d at 87; *Kline*, 702 F.2d at 403).

*In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 144 (S.D.N.Y. 2007).

### B. The Institutional Investor Group is a "Cobbled" Together Group and its Motion Should be Denied

The Institutional Investor Group consists of five entities -- four Swedish firms (collectively, "AFA"), cobbled together with the Mississippi Public Employees' Retirement System ("Mississippi PERS") -- who together have losses far smaller than STRS's losses. The submissions in support of the Institutional Investor Group's motion show no pre-litigation relationship between AFA and Mississippi PERS. Nor do the individual submissions

10

contemplate a joint effort. Mississippi PERS avers that "Mississippi PERS believes that *it* is the class member with the largest losses..." and that it has retained "the law firm of Grant & Eisenhofer, P.A., to represent Mississippi PERS." Declaration of Jay W. Eisenhofer, Exhibit A, at ¶¶3-4. AFA states that it has retained a different law firm, Schiffrin Barroway Topaz & Kessler, LLP, and does not mention any intent to aggregate its claims with Mississippi PERS. Id., Exhibit C at ¶7.

Courts in this District have refused to permit unrelated parties to join together solely for the purpose of creating a "group" to serve as lead plaintiff under the PSLRA. *See In re NYSE Specialists*, 240 F.R.D. at 141 ("that the court should cobble together a lead plaintiff group that has standing to sue on all possible causes of action—has been rejected repeatedly by courts in this Circuit and undermines the purpose of the PSLRA.") (citation omitted); *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001) (denying motion for lead plaintiff by "an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff'"); *Goldenberger v. PXRE Group, LTD*, Nos. 06-cv-3410 (KMK) 06-cv-3440 (GBD), 2007 U.S. Dist. LEXIS 23925, at *10 (S.D.N.Y. Mar. 30, 2007) ("To allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff").

Given that the Institutional Investor Group has demonstrated no pre-litigation relationship, it is not an appropriate lead plaintiff "group" under the PSLRA. *See Goldenberger*, 2007 U.S. Dist. LEXIS 23925, at *12 ("An amalgam of unrelated individuals undoubtedly is different than a joint venture of closely-related parties"). *Rozenboom v. Van Der Moolen Holding, N.V.*, No. 03 Civ. 8284 (RWS), 2004 U.S. Dist. LEXIS 6382 (S.D.N.Y. Apr. 14, 2004),

cited by the Institutional Investor Group, is inapposite. There, two inexperienced individual movants for lead plaintiff joined together by stipulation. The Court appointed both plaintiffs "in order ensure stability in the litigation[.]" *Id.* at *16. *Rozenboom* does not apply here where STRS, the institutional investor with the largest financial stake in this litigation and significant experience in successfully directing securities class actions, has moved for lead plaintiff.

Accordingly, the Institutional Investor Group's motion should be denied.

### C. Skandia's Motion Should be Denied

Skandia cannot demonstrate that it has the largest losses or the greatest financial interest in the subject securities. *See* Chart at p. 4, *supra.*

### D. The First Derivative Group's Motion Should be Denied

Apart from the relatively small size of its losses, the First Derivative Group is another group cobbled together for the purpose of seeking appointment as lead plaintiff. Accordingly, its motion should also be denied. *See* pp. 11-12, *supra.*

### E. Ira Newman is Unable to Support a "Niche Plaintiff" Position and his Motion Should be Denied

Newman is apparently attempting to secure a spot in this litigation as a "niche plaintiff." He asserts that some of his E*TRADE losses were the result of trades through his E*TRADE brokerage account. Newman, whose losses are the smallest of any movant, argues that, if appointed lead plaintiff, he will bring claims against E*TRADE for breach of fiduciary duties "and other obligations" to its brokerage clients. Newman Memo at 9, n.4. If Newman chooses to bring a state court action for breach of fiduciary duty or contract claim on behalf of similarly situated persons, he is free to do so (subject to the limitations of the *Securities Litigation Uniform Standards Act of 1998,* 15 U.S.C. §77p), but that does not entitle him to lead plaintiff status on behalf of the putative class here. Courts in this district routinely have rejected similar

applications for appointment of a "niche plaintiff." *See, e.g. Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) (Conner, J.). Thus, since Newman has the smallest losses of any movant, his motion must fail.

## CONCLUSION

Because it is the movant with both the largest financial interest under the PSLRA and satisfies the Rule 23 requirements, STRS respectfully requests that the Court grant its lead plaintiff motion in its entirety and deny all competing lead plaintiff motions in their entirety.

Dated: December 20, 2007
New York, New York

Respectfully submitted,

**ABBEY SPANIER RODD & ABRAMS, LLP**

By: /s/ Judith L. Spanier
Judith L. Spanier (JS 5065)
Jill S. Abrams (JA 1578)
Nancy Kaboolian (NK 6346)
Orin Kurtz (OK 7334)
212 East 39th Street
New York, New York 10016
jspanier@abbeyspanier.com
jabrams@abbeyspanier.com
nkaboolian@abbeyspanier.com
okurtz@abbeyspanier.com
Tel: (212) 889-3700
Fax: (212) 684-5191

Proposed Lead Counsel for Proposed Lead Plaintiff State Teachers Retirement System of Ohio and Special Counsel to the Attorney General of Ohio