**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LARRY FREUDENBERG, Individually And On Behalf of All Others Similarly Situated, | Civil Action No. 07-cv-8538 (RWS) |
| Plaintiff, | |
| vs. | CLASS ACTION |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS, | |
| Defendants. | |
| WILLIAM BOSTON, Individually And On Behalf Of All Others Similarly Situated, | Civil Action No. 07-cv-8808 (RWS) |
| Plaintiff, | |
| vs. | |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS, | |
| Defendants. | |
| ROBERT D. THURMAN, Individually And On Behalf Of All Others Similarly Situated, | Civil Action No. 07-cv-9651 (RWS) |
| Plaintiff, | |
| vs. | |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS, | |
| Defendants. | |

| | |
|---|---|
| WENDY M. DAVIDSON, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     vs.<br><br>E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS,<br><br>     Defendants. | Civil Action No. 07-cv-10400 (UA) |
| JOSHUA FERENC, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     vs.<br><br>E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN AND ROBERT J. SIMMONS,<br><br>     Defendants. | Civil Action No. 07-cv-10540 (SHS) |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE KRISTEN-STRAXTON GROUP FOR CONSOLIDATION OF ALL RELATED CASES, APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF THE SELECTION OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

I.   PRELIMINARY STATEMENT .................................................................... 1

II.  ARGUMENT .................................................................................................. 3

    A.   The Kristen-Straxton Group Is The Presumptive Lead Plaintiff ............... 2

        1.   The Kristen-Straxton Group Has The Largest
            Financial Interest ................................................................................ 3

        2.   The Kristen-Straxton Group Meets The Requirements
            Of Rule 23 .......................................................................................... 4

            a.   The Kristen-Straxton Group's Claims Are
                Typical Of The Class .................................................................. 6

            b.   The Kristen-Straxton Group Is Adequate To
                Represent The Class .................................................................... 7

    B.   The Presumption In Favor Of The Kristen-Straxton Group
       Cannot Be Rebutted ..................................................................................... 7

        1.   The Kristen-Straxton Group Is Not Subject To
            Unique Defenses ................................................................................ 8

            a.   There Is No Unique Defense Based On A
                Movant's Foreign Residence ..................................................... 9

            b.   There Is No Unique Defense Based On A Movant's
                 Purchases Of CFDs ................................................................... 11

            c.   There Is No Unique Defense Based On A Movant's Sale Of
                The Subject Securities Before The End Of The Class Period .......... 15

    C.   The Other Lead Plaintiff Movants Do Not Meet The
       Requirements of Rule 23 ............................................................................ 19

        1.   STRS May Be Subject To Unique Defenses And
            Not Adequate To Represent The Class ............................................ 19

2.   The Remaining Movants Failed To Meet The
Requirements of Rule 23 ..........................................................................24

D.   THE COURT SHOULD APPROVE THE KRISTEN-STRAXTON
GROUP'S CHOICE OF LEAD COUNSEL ...........................................................24

IV.   CONCLUSION .................................................................................................................25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aronson v. Mckesson HBOC, Inc.*, 79 F. Supp. 2d 1146 (N.D. Cal. 1999) ......................23

*In re Avon Securities Litigation*, No. 95-cv-7051, 1998 U.S. Dist. LEXIS
    18642 (S.D.N.Y. Nov. 30, 1998) .................................................................9

*Bell v. Ascendant Solutions, Inc.,* No. 01-cv-0166, 2002 U.S. Dist. LEXIS
    6850 (N.D. Tex. Apr. 17, 2002) ................................................................10

*Borochoff v. Glaxosmithkline PLC*, No. 07-cv-5574, 2007 U.S. Dist.
    LEXIS 74621 (S.D.N.Y. Oct. 5, 2007) ........................................................11

*In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) .................................................3

*In re Comverse Tech. Securities Litigation,* No. 06-c 2006 U.S. Dist.
    LEXIS 69900 (E.D.N.Y. Sept. 27, 2006) ......................................................3

*In re Converium Holding AG Sec. Litigation*, No. 04-cv-7897,
    2006 U.S. Dist. LEXIS 93413 (S.D.N.Y. Dec. 28, 2006) .............................13

*In re Crayfish Co. Securities Litigation,* No. 00-cv-6766 (DAB), 2002
    U.S. Dist. LEXIS 10134 (S.D.N.Y. June 4, 2002) .........................................5

*In re Cree, Inc, Securities Litigation*, 219 F.R.D. 369 (M.D.N.C. 2003) ..........21

*Crossen v. CV Therapeutics*, No. 03-cv-3709, 2005 U.S. Dist. LEXIS
    41396 (N.D. Cal. August 9, 2005) ..............................................................14

*Deitrich v. Bauer*, 192 F.R.D. 119 (S.D.N.Y 2000) ..........................................9

*Deutschman v. Beneficial Corp.*, 132 F.R.D. 359 (D. Del. 1990) ....................14

*In re Donnkenny Inc., Securities Litigation*, 171 F.R.D. 156
    (S.D.N.Y. 1997) .......................................................................................14

*Dura Pharmaceuticals, Inc., v. Broudo*, 544 U.S. 336 (2005) .........................17

*In re Dynegy, Inc. Securities Litigation*, 226 F.R.D. 263
    (S.D. Tex. 2004)..........................................................................15, 18, 19, 20

*In re Enron Corp. Securities Litigation*, 206 F.R.D. 427
(S.D. Tex. 2002)...................................................................8, 14, 20, 21

*Ezra Charitable Trust v. Rent-Way Securities Litigation*, 136 F. Supp. 2d
435 (W.D. Pa. 2001) ...................................................................23

*In re Fannie Mae Securities Litigation*, 355 F. Supp. 2d 261 (D.D.C.
2005) ...................................................................................8, 23

*In re Flag Telecom Holdings Securities Litigation*, 245 F.R.D. 147
(S.D.N.Y. 2007)...................................................................16

*In re Gaming Lottery Securities Litigation*, 58 F. Supp. 2d 62
(S.D.N.Y. 1999)...................................................................16

*Gary Plastic Packaging Corp. v. Merrill Lynch Pierce Fenner & Smith,
Inc.*, 903 F.2d 176 (2d Cir. 1990) ...................................................................21

*In re Gibson Greeting Securities Litigation*, 159 F.R.D. 499
(S.D. Ohio 1994)...................................................................23

*Gluck v. Cellstar Corp.*, 976 F. Supp. 542 (N.D. Tex. 1997)...................................................................5

*Golden Quality Ice Cream Co. v. Specialty Papers, Inc.*, 87 F.R.D. 53
(E.D. Pa. 1980)...................................................................20

*In re Independent Energy*, 210 F.R.D. 476 (S.D.N.Y. 2002) ...................................................................8

*In re Initial Public Offering Securities Litigation (In re Rediff.com India
Ltd. Sec. Litigation)*, 243 F.R.D. 79 (S.D.N.Y. 2007) ...................................................................8

*International Equity Investment, Inc., v. Opportunity Equity Partners Ltd.*,
475 F. Supp. 2d 456 (S.D.N.Y. 2007)...................................................................10

*Jolly Roger Offshore Fund Ltd. v. BKF Capital Group, Inc.* No. 07-cv-
3923 (RWS), 2007 U.S. Dist. LEXIS 60437 (S.D.N.Y. Aug. 14, 2007)...................................................................5

*Kalodner v. Michael Stores, Inc.*, 172 F.R.D. 200 (N.D. Tex. 1997)...................................................................15

*King v. Livent, Inc.*, 36 F. Supp. 2d 187 (S.D.N.Y. 1999)...................................................................25

*Krim v. PcOrder.com*, 210 F.R.D. 581 (W.D. Tex. 2001)...................................................................21

iv

*Laborers Local 1298 Pension Fund v. Campbell Soup Co.*,
　　No. 00-cv-152, 2000 U.S. Dist. LEXIS 5481 (D.N.J. Apr. 24, 2000)..........................18

*Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474
　　(S.D.N.Y. 1989) ..........................................................................................................8, 9

*Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161 (2d Cir. 2005) ...................................17

*Linn v. Allied Irish Banks, PLC*, No. 02-cv-1738, 2004 U.S. Dist. LEXIS
　　24655 (S.D.N.Y. Dec. 7, 2004).........................................................................................13

*Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006) .....................22

*In re Molson Coors Brewing Co. Securities Litigation*, 233 F.R.D. 147
　　(D. Del. 2005) ...................................................................................................................9

*Montoya v. Mamma.com, Inc.*, No. 05-cv-2313, 2005 U.S. Dist. LEXIS
　　10224 (S.D.N.Y. May 31, 2005).................................................................................17, 18

*Newman v. Eagle Building Technology*, 209 F.R.D. 499 (S.D. Fla. 2002) .................10, 24

*In re Nortel Networks Corp. Securities Litigation*, No. 01-cv-1855,
　　2003 U.S. Dist. LEXIS 15702 (S.D.N.Y. Sept. 8, 2003)..................................................9

*In re Oxford Health Plans, Inc. Securities Litigation*, 199 F.R.D. 119
　　(S.D.N.Y. 2001) ...............................................................................................................14

*In re Parmalat Securities Litigation*, 375 F. Supp. 2d 278
　　(S.D.N.Y. 2005) ...............................................................................................................17

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche
　　& Co., Inc.*, 229 F.R.D. 395 (S.D.N.Y. May 27, 2004) ..............................4, 18, 24, 25

*In re Plastics Additives Antitrust Litigation*, No. 03-cv-2038, U.S. Dist.
　　LEXIS 23989 (E.D. Pa. Nov. 30, 2004) ........................................................................20

*In re Priceline, Inc., Securities Litigation*, 236 F.R.D. 89 (D. Conn. 2006) ...............14, 21

*Robinson v. Metropolitan-North Commuter R.R.*, 267 F.3d 147 (2d Cir.
　　2001) ..................................................................................................................................6

*Rozenboom v. Van Der Moolen Holding*, No. 03-cv-8284,
　　2004 U.S. Dist. LEXIS 6382 (S.D.N.Y. Apr. 14, 2007)...........................................3, 13

v

*In re Sepracor Inc., Securities Litigation*, 233 F.R.D. 52 (D. Mass. 2005)......................13

*Sofran v. LaBranche & Co.*, 220 F.R.D. 398 (S.D.N.Y. 2004) ...........................3, 5, 8, 13

*Sosna v. Iowa*, 419 U.S. 393, 403 (1975) .......................................................................21

*Springfield Township v. Kuss*, No. 93-cv-1629, 1993 U.S. Dist. LEXIS
    14961 (E.D. Pa. 1993)........................................................................................20

*Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100 (S.D.N.Y. 2007)................................3

*In re Sumitomo Copper Litigation*, 194 F.R.D. 480 (S.D.N.Y. 2000)....................9, 16, 17

*Takeda v. Turbodyne Technology, Inc.*, 67 F. Supp. 2d 1129
    (D. Cal. 1999) ......................................................................................................9

*In re: Telegraph-Save Securities Litigation*, No. 98-cv-3145, 2000 U.S.
    Dist. LEXIS 10134 (E.D. Pa. July 19, 2000)....................................................14

*In re Telxon Corp. Sec. Litigation*, 67 F. Supp. 2d 803 (N.D. Ohio 1999)......................24

*Texaco, Inc. v. Borda*, 383 F.2d 607 (3d Cir. 1967) ......................................................20

*Tolan v. Computervision Corp.*, 696 F. Supp.771 (D. Mass. 1988) ................................12

*In re Vicuron Pharmaceuticals, Inc. Sec. Litigation*, 225 F.R.D. 508
    (E.D. Pa. 2004)......................................................................................................3

*In re Vivendi Universal S.A. Securities Litigation*, 242 F.R.D. 76
    (S.D.N.Y. 2007)....................................................................................10, 11, 16

*In re Vivendi Universal S.A. Sec. Litig.*, 381 F. Supp. 2d 158
    (S.D.N.Y. 2003) ..................................................................................................13

*Warnaco Group, Inc. Sec. Litig.*, No. 00-c 2004 U.S. Dist. LEXIS 13126
    (S.D.N.Y. July 13, 2004) ......................................................................................3

*In re Waste Management Securities Litigation*, 128 F. Supp. 2d 401
    (S.D. Tex. 2000)..................................................................................................23

*Weinberg v. Wordwide Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D.
    248 (S.D.N.Y. 2003) ............................................................................................5

*Weiss v. Friedman, Billings, Ramsey Group, Inc.*, No. 05-cv-4617,
    2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. Jan. 25, 2006)............................3, 5, 6, 7, 18

*In re: XM Satellite Radio Holdings Securities Litigation*, 237 F.R.D. 13
    (D.D.C. 2006) ........................................................................................................14, 15

## STATE CASES

*Arales v. Furs By Weiss, Inc.*, No. 81603, 2003 Ohio App. LEXIS 2982
    (8th Dist. Cuyahoga Co., June 26, 2003).............................................................22

*Hamilton v. Sysco Food Services Of Cleveland*, 170 Ohio App. 3d 203,
    866 N.E.2d 559 (8th Dist. Cuyahoga Co. 2006)...............................................22

## DOCKETED CASES

*In re Able Labs. Securities Litigation*, No. 05-2681
    (D. N.J. Mar. 17, 2006) ..........................................................................................9

*Conway Investment Club v. Corinthian Colleges, Inc.*, No. 2-04-cv-05025
    (C.D. Cal. Nov. 1, 2004) .........................................................................................9

*Cox v. Delphi Corp.*, No. 1:05-CV- 2637
    (S.D.N.Y. June 27, 2005)........................................................................................9

*In re Dell, Inc., Sec. Litigation*, No. 06-CA-726-SS
    (W.D. Tex. Apr. 9, 2007) ........................................................................................9

*In re Enron Corp. Securities Litigation & ERISA Litigation*,
    No. MDL 1446, H-01-3624 (S.D. Tex. Mar. 25, 2003) ................................20

*In re General Motors Corp. Sec. Litig.*, No. 05-CV-8088
    (S.D.N.Y. Feb. 6, 2006) ..........................................................................................9

*Micro Investors, LLC v. Inspire Pharms., Inc.*, No.1:05 CV 00118
    (M.D.N.C. Mar. 1, 2006) ........................................................................................9

*Olsen v. New York Cmty. Bancorp, Inc.*, No. 04- CV-4165
    (E.D.N.Y. Aug. 9, 2005)..........................................................................................9

*Kadagian v. Harley- Davidson, Inc.*, No. 05-C-0547
    (E.D. Wis. Feb. 14, 2006) .......................................................................................9

*Massachusetts Laborers' Annuity Fund v. Encysive Pharmaceuticals, Inc.*,
No. H-06-3022 (S.D. Tex. Mar. 20, 2007) ...................................................9

*In re United Health Group Shareholder Derivative Litigation*,
No. 06-1216 (D. Minn. July 7, 2006) .........................................................23

*In re Vivendi Universal S.A. Securities Litigation*, No. 02 Civ. 5571
(S.D.N.Y.) ...................................................................................................11

## FEDERAL STATUTES

Class Action Fairness Act of 2005, PL 109-2, 119 Stat. 4 ...............................22

Class Action Fairness Act of 2005, 28 U.S.C 1715......................................22

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 *et seq.* ....................... *passim*

Securities Exchange Act of 1934, 15 U.S.C. §78c(a)(10) .................................11

Securities Litigation Uniform Standards Reform Act of 1998
15 U.S.C. §§ 78bb *et seq.*......................................................................21, 22

## OTHER AUTHORITY

Conference Report on Securities Litigation Reform, H.R. Rep. No. 104-
369 (1995).......................................................................................................5

Kristen Management Limited ("Kristen"), Straxton Properties Inc. ("Straxton") and Javed Fiyaz (collectively, the "Kristen-Straxton Group"), respectfully submit this memorandum of law in further support of their Motion for Consolidation of All Related Cases, Appointment of Lead Plaintiff And Approval of the Selection Of Lead Counsel and in opposition to the five competing lead plaintiff motions.

## I.    PRELIMINARY STATEMENT

Before the Court are six competing motions for appointment of lead plaintiff and lead counsel in the above-captioned related securities class actions (collectively, the "Action"). The Kristen-Straxton Group have losses *exceeding $133,415,500.00* in connection with their trading of E*Trade Financial Corporation ("E*Trade or the "Company") securities between April 20, 2006 and November 9, 2007, inclusive (the "Class Period"). These losses are, without question, far larger than any other lead plaintiff movant. Indeed, the Kristen-Straxton Group has losses trading in E*Trade securities that are *$87 million more* than, or three times larger than the claimed losses of *all other movants combined,* and are *$111 million more*, or almost *six times larger than the next largest movant*.[1]    Moreover, the members of the Kristen-Straxton Group more than "meet the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Accordingly, based on the plain language of the PSLRA, the Kristen-Straxton Group is the presumptive lead plaintiff. *See* 78u-4(a)(3)(B)(iii).

No doubt, as has become standard operating procedure in Private Securities Litigation Reform Act ("PSLRA") cases, the other movants, whose losses, individually and collectively,

---

[1].  The competing movants are in order of claimed losses: the State Teachers Retirement System of Ohio ("STRS"), which claims losses of approximately $23 million; the Mississippi Public Employees' Retirement System, AFA Livförsäkringsaktiebolag, AFA Sjukförsäkringsaktiebolag, AFA Trygghetsförsäkringsaktiebolag and Kollektivavtalsstiftelsen TSL (collectively, the "Swedish Investor Group"), which claims losses of approximately $13 million; Skandia Life Insurance Company Ltd. ("Skandia"), which claims losses of approximately $9 million; First Derivative Traders LP and Robert & Jessica Grant ("First Derivative Group"), which claims losses of approximately $556,000; and Ira Newman, who claims losses of approximately $487,000.

are dwarfed by those of the Kristen-Straxton Group, will attempt to argue that the Kristen-Straxton Group is somehow not the appropriate lead plaintiff and that one or more of them should be appointed in its stead. To succeed in rebutting the presumption in favor of the lead plaintiff movant with the "largest financial interest" in the relief sought, however, a challenger must offer *"proof,"* not conjecture, surmise or theory, but *"only ... proof"* that the Kristen-Straxton Group will not adequately represent the Class or its members are subject to cognizable "unique defense[s]." *See* 78u-4(a)(3)(B)(iii)(II). As demonstrated below, based on the plain language of the PSLRA, its legislative history, and the jurisprudence for selecting lead plaintiffs and appointing class representatives in this Circuit, the presumption in favor of the Kristen-Straxton Group to serve as lead plaintiff here cannot be rebutted.

Moreover, as demonstrated below, the other lead plaintiff movants, whose claim losses pale in comparison to those of the Kristen-Straxton Group, are either potentially subject to "unique defenses," or have failed to supply sufficient information to permit the Court to assess their typicality or adequacy. By, contrast, the Kristen-Straxton Group is precisely the lead plaintiff that Congress envisioned when it enacted the PSLRA -- a small group with a pre-litigation relationship consisting of sophisticated institutional and individual investors with the largest stake in the outcome of the litigation, and who are experienced, incentivized and capable of vigorously prosecuting a complex securities class action and directing counsel.

The Kristen-Straxton Group's motion for appointment of lead plaintiff and approval of its selection of lead counsel should be granted, and the other movants' lead plaintiff motions should be denied.

## II.    ARGUMENT

### A.    THE KRISTEN-STRAXTON GROUP IS THE PRESUMPTIVE LEAD PLAINTIFF

The movant with the "largest financial interest" that otherwise satisfies the typicality and adequacy requirements of Rule 23 *is entitled to a presumption of lead plaintiff status.  See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).  *See Warnaco Group, Inc. Sec. Litig.*, No. 00-cv-6266 (LMM), 2004 U.S. Dist. LEXIS 13126, at \*3 (S.D.N.Y. July 13, 2004) (citations omitted); *Rozenboom v. Van Der Moolen Holding*, No. 03-cv-8284, 2004 U.S. Dist. LEXIS 6382, at \*8-9 (S.D.N.Y. Apr. 14, 2007).

### 1.    The Kristen-Straxton Group Has The Largest Financial Interest

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the "person or group of persons" with the largest financial interest in the relief sought by the Class. *See Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 401 (S.D.N.Y. 2004).  The determination of which candidate has the largest loss is by far the "*most important* factor in determining who should be the lead plaintiff." *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 104 (S.D.N.Y. 2007) (citing *Weiss v. Friedman, Billings, Ramsey Group, Inc.,* No. 05-cv-4617 (RJH), 2006 U.S. Dist. LEXIS 3028, at \*3 (S.D.N.Y. Jan. 25, 2006)); *see also In re Comverse Tech. Sec. Litig.*, No. 06-cv-1825, 2006 U.S. Dist. LEXIS 69900, at \*4 (E.D.N.Y. Sept. 27, 2006) (citing *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 510-11 (E.D. Pa. 2004))("Most courts consider approximate loss suffered during the class period to be the *most important* factor [in determining the "most adequate plaintiff]").

As this Court has found, once the court "identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements." *Sofran,* 220 F.R.D. at 402 (quoting *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002)).  The district court's belief that "another plaintiff

may be 'more typical' or 'more adequate' is of no consequence. *So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.*" *Id.* (emphasis added).

The following are the claimed losses of the lead plaintiff movants here:

| MOVANT | APPROXIMATE CLAIMED LOSSES (rounded to the nearest dollar) |
|---|---|
| **Kristen-Straxton Group** | **$133,415,508.00** |
| STRS | $22,745,443.00 |
| Swedish Investor Group | $13,485,987.00 |
| Skandia | $10,244,730.00 |
| First Derivative Group | $556,351.00 |
| Mr. Newman | $487,839.00 |

Clearly, the losses suffered by the Kristen-Straxton Group trading in E*Trade securities during the Class Period significantly exceed the losses of all competing movant.[2]  To put the disparity in perspective, the next largest movant, STRS, has losses that equal only 17.05% of those of the Kristen-Straxton Group, and the other movants' losses are even smaller. Therefore, the Kristen-Straxton Group overwhelmingly satisfies the most important prong for selecting the lead plaintiff -- possessing the "largest financial interest" among the competing movants in this litigation.

---

[2]  The Kristen-Straxton Group purchased securities representing a total of 12,764,763 shares of E*Trade common stock during the Class Period and expended a total of $308,526,898.00 on those purchases. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.,* 229 F.R.D. 395, 404 (S.D.N.Y. May 27, 2004) (discussing methods for determining "financial interest" on lead plaintiff motions).

## 2.  The Kristen-Straxton Group Meets The Requirements of Rule 23

In addition to having by far the "largest financial interest" among the lead plaintiff movants here, the members of the Kristen-Straxton Group "otherwise meet the requirements of Rule 23," as that phrase is applied by the courts at the lead plaintiff appointment stage.

First, "only the typicality and adequacy criteria are relevant to the selection of lead plaintiff." *Weiss*, 2006 U.S. Dist. LEXIS 3028, at *16.  Second, the depth of analysis into those requirements at this stage is extremely limited.  As this Court has repeatedly noted, "of the four prerequisites to class certification, '[t]he moving plaintiff must make ***only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met.***'" *Jolly Roger Offshore Fund Ltd. v. BKF Capital Group, Inc.* No. 07-cv-3923 (RWS), 2007 U.S. Dist. LEXIS 60437, at *9 (S.D.N.Y. Aug. 14, 2007) (citing *Weinberg v. Wordwide Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003)); *Sofran*, 220 F.R.D. at 402; *Weiss*, 2006 U.S. Dist. LEXIS 3028, at *16.  "In fact, a 'wide ranging analysis under Rule 23 is not appropriate [for lead plaintiff selection] and should be left for consideration of a motion for class certification.'" *Jolly Roger*, 2007 U.S. Dist. LEXIS 60437, at *9 (quoting *Weinberg* 216 F.R.D. at 252)); *see also Sofran*, 220 F.R.D. at 402; *In re Crayfish Co. Sec. Litig.*, No. 00-cv-6766 (DAB), 2002 U.S. Dist. LEXIS 10134, at *14 (S.D.N.Y. June 4, 2002).  This is because "[e]vidence regarding the requirements of Rule 23 will, of course, be heard in full at the class certification hearing. There is no need to require anything more than a preliminary showing at this stage." *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546, (N.D. Tex. 1997).

Indeed, the legislative history of the PSLRA itself offers insight into the narrow scope of the analysis that Congress envisioned under Rule 23 for the selection of the lead plaintiff:

> Several senators expressed concern during floor consideration of this legislation that preference would be given to large investors, and that large investors might conspire with the defendant company's management....The Conference

> Committee recognizes the potential conflicts that could be caused by the shareholder with the "largest financial stake" serving as lead plaintiff. As a result, this presumption may be rebutted by evidence that the plaintiff would not fairly and adequately represent the interests of the class or is subject to unique defenses.

*See* Conference Report on Securities Litigation Reform, H.R Rep. No. 104-369 (1995), at 61.

Thus, Congress contemplated that the presumption in favor of the movant with the "largest financial interest" would be rebuttable only in extreme situations where it could demonstrate with "***evidence***" that the presumptive lead plaintiff has serious conflicts with the other class members or will not protect their interests. Accordingly, "***only proof*** that the [lead plaintiff movant] 'will not fairly and adequately represent the interests of the class or…is subject to unique defenses that render such plaintiff incapable of adequately representing the class' will rebut the [ ] presumption []." *Weiss*, 2006 U.S. Dist. LEXIS 3028, at *17 (emphasis added) (quoting 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)).   Here, based on this standard of review, the members of the Kristen-Straxton Group meet the requirements of Rules 23(a)(3) and (4).

### a.    The Kristen-Straxton Group's Claims Are Typical Of The Class

"The typicality requirement will be satisfied 'where the claims arise from the same conduct from which the other class members' claims and injuries arise.'" *Weiss*, 2006 U.S. Dist. LEXIS 3028, at *16.   The claims of the Kristen-Straxton Group are typical of the claims of the Class because they arise from the same course of events and are based on the same legal theories as the claims of all other purchasers of E*Trade securities.   *Cf., Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001).   The Kristen-Straxton Group stands in the same position as other potential Class members because its members purchased E*Trade securities during the Class Period at artificially inflated prices set on the NASDAQ, and were injured as a result by defendants' alleged violations of the federal securities laws. The Kristen-Straxton Group will rely on the same facts and invoke the same legal theories to establish

liability and damages as all other Class members. Thus, the Kristen-Straxton Group's claims are "typical" of the claims of the Class.

        **b.**    **The Kristen-Straxton Group Is Adequate To Represent The Class**

"The adequacy requirement will be satisfied where (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous adequacy." *Weiss,* 2006 U.S. Dist. LEXIS 3028, at *16-17. The adequacy of the Kristen-Straxton Group here cannot be questioned. As demonstrated in the Kristen-Straxton Group's certifications and declarations, each of its members: (1) is an experienced and sophisticated investor, familiar with the duties of a lead plaintiff and class representative under the PSLRA and Rule 23, respectively, and is prepared to diligently discharge those duties; (2) has retained qualified counsel with considerable experience in prosecuting federal securities class actions; (3) has experience in the supervision of outside counsel; (4) has no interest that is antagonistic to the other Class members; and (5) has a significant interest in the outcome of this case – *in the tens of millions of dollars* -- to ensure vigorous prosecution of the claims here.[3] Therefore, the Kristen-Straxton Group will adequately represent the Class.

**B.**    **THE PRESUMPTION IN FAVOR OF THE KRISTEN-STRAXTON GROUP CANNOT BE REBUTTED**

Notwithstanding the PSLRA's express mandate that courts appoint the movant with the largest loss as lead plaintiff, it is common for smaller-loss lead plaintiff aspirants to attempt to displace the presumptive lead plaintiff by arguing sundry, unsupported factual and legal theories. The Kristen-Straxton Group expects no better from its competitors here and, as a result, must try to anticipate, based on the kind of failed attacks made in other cases.

---

[3] *See* Declaration of Elizabeth A. Schmid In Support Of The Motion Of The Kristen-Straxton Group For Consolidation Of All Related Cases, Appointment Of Lead Plaintiff And Approval Of Selection Of Lead Counsel dated December 3, 2007 ("First Schmid Decl."), at Ex. B.

Pivotal to this analysis is the fact that, under the PSLRA, the presumption in favor of the movant with the "largest financial interest" may be rebutted *"only upon proof"* by a member of the purported plaintiff class that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class or that it is subject to unique defenses that render it incapable of adequately representing the class." *See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 439 (S.D. Tex. 2002) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I))(emphasis added). Thus, competing movants assailing the adequacy of a presumptive lead plaintiff must do so with *proof, not speculation. See In re Enron Corp.,* 206 F.R.D. at 448 n.18 (alleged "unsupported" or "generic" claims cannot rebut the most adequate plaintiff presumption under the PSLRA); *see also Sofran,* 220 F.R.D. at 402 (rejecting attempts to rebut lead plaintiff presumption where opponent provided "no evidence of any antagonism" or "proof" that the lead plaintiff was atypical or inadequate, holding that "[w]ithout such proof, the citations to other cases provides only speculation as to such a possibility."); *In re Fannie Mae Sec. Litig.,* 355 F. Supp. 2d 261, 263 (D.D.C. 2005) (rejecting, as "speculative and hypothetical," claims regarding potential conflicts between the presumptive lead plaintiff and the class where movants "offer no proof" how such conflicts might affect the presumptive lead plaintiff's "capacity to fairly and adequately represent the class" and, coincidentally, appointing STRS as lead plaintiff).

As demonstrated below, the other movants here will not be able to offer the requisite *"proof"* or *"evidence"* necessary to rebut the presumption in favor of the Kristen-Straxton Group.

### 1.    The Kristen-Straxton Group Is Not Subject To Unique Defenses

A defendant can only defeat typicality by demonstrating that a plaintiff is subject to a "unique defense" that will "significantly shift the focus of the litigation to the detriment of the absent class members." *In re Indep. Energy*, 210 F.R.D. 476, 481 (S.D.N.Y. 2002). "The test

for determining if a representative is subject to unique defenses is whether the defenses will become the focus of the litigation, overshadowing the primary claims and prejudicing other class members." *In re Initial Public Offering Sec. Litig.*(*In re Rediff.com India Ltd. Sec. Litig.*), 243 F.R.D. 79, 85 (S.D.N.Y. 2007) (citing *Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989))  Further, "the rule barring certification of plaintiffs subject to unique defenses is not 'rigidly applied in this Circuit,'" *In re Nortel Networks Corp. Sec. Litig.*, No. 01-cv-1855, 2003 U.S. Dist. LEXIS 15702, at *10 (S.D.N.Y. Sept. 8, 2003) (citation omitted), and "a representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members." *Deitrich v. Bauer,* 192 F.R.D. 119, 125 (S.D.N.Y 2000) (quoting *In re Avon Sec. Litig.*, No. 95-cv-7051, 1998 U.S. Dist. LEXIS 18642, at *18 (S.D.N.Y. Nov. 30, 1998)).  For this reason, the inevitable differences among Plaintiffs and other members of the Class do not affect typicality, because, "when inquiring into the typicality requirement under Rule 23(a)(3), the focus must be on defendants' behavior and not that of the plaintiffs." *In re Sumitomo Copper Litig.*, 194 F.R.D. 480, 482 (S.D.N.Y. 2000).

### a.    There Is No Unique Defense Based On A Movant's Foreign Residence

For instance, the Kristen-Straxton Group anticipates that, because it is composed of three foreign E\*Trade investors, arguments will be made that its members are unsuitable class representatives.  This argument is meritless.  First, foreign investors are frequently appointed lead plaintiffs in PSLRA actions.  *See, e.g., In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005) (appointing European fund as a lead plaintiff, holding that "many courts have approved foreign investors as lead plaintiffs in cases such as this.").[4]  In fact, courts

---

[4]  The following is non-exclusive list of PSLRA class actions where courts appointed foreign investors as lead plaintiff:  *In re Able Labs. Sec. Litig.,* No. 05-2681 (D. N.J. Mar. 17, 2006); *Mirco Investors, LLC v. Inspire Pharms., Inc.,* No.1:05-CV-00118 (M.D.N.C. Mar. 1, 2006); *In re Dell, Inc., Sec. Litig.,* No. 06-

have accentuated the positive aspects of foreign investors as lead plaintiffs. *See Newman v. Eagle Building Tech.*, 209 F.R.D. 499, 505 (S.D. Fla. 2002) ("the fact that [lead plaintiffs] are located in Europe is of little significance.  In light of today's travel and communication methods, the geographical location of the members of the [] group are irrelevant.") (citing *Bell v. Ascendant Solutions, Inc.*, No. 01-cv-0166, 2002 U.S. Dist. LEXIS 6850, at \*16-17 (N.D. Tex. Apr. 17, 2002)) ("finding that the inclusion of foreign plaintiffs in the lead plaintiff group is not a negative but rather is a positive which 'helps to create balance among the demographics of the lead plaintiff group members, and improves diversity of experience.'")).

Further, as Kristen and Straxton are British Virgin Island ("BVI") corporations, and Mr. Fiyaz resides in London, the United Kingdom ("UK"), there is no issue that the ultimate judgment in this class action will receive preclusive effect in the country in which they reside, because it is settled in this district that English courts would do so.[5] *See In re Vivendi Universal S.A. Sec. Litig.*, 242 F.R.D. 76, 102-03 (S.D.N.Y. 2007) (certifying a British investor and finding

---

CA-726-SS (W.D. Tex. Apr. 9, 2007); *Kadagian v. Harley-Davidson, Inc.*, No. 05-C-0547 (E.D. Wis. Feb. 14, 2006); *Mass. Laborers' Annuity Fund v. Encysive Pharm. Inc.*, No. H-06-3022 (S.D. Tex. Mar. 20, 2007); *In re Dreamworks Animation SKG, Inc., Sec. Litig.*, No. CV 05-03966 (C.D. Cal. Nov. 7, 2005); *In re General Motors Corp. Sec. Litig.*, No. 05-CV-8088 (S.D.N.Y. Feb. 6, 2006); *Olsen v. New York Cmty. Bancorp, Inc.*, No. 04-CV-4165 (E.D.N.Y. Aug. 9, 2005); *Cox v. Delphi Corp.*, No. 1:05-CV-2637 (S.D.N.Y. June 27, 2005); *In re Sipex Corp. Sec. Litig.*, No. C 05-003932 (N.D. Cal. May 24, 2005); *Conway Inv. Club v. Corinthian Colleges, Inc.*, No. 2-04-cv-05025 (C.D. Cal. Nov. 1, 2004); *Curtis v. BEA Sys., Inc.*, No. C 04-2275 SI (N.D. Cal. Sept. 24, 2004); *Takeda v. Turbodyne Tech., Inc.*, 67 F. Supp. 2d 1129, 1134-39 (D. Cal. 1999) (appointing foreign investor as lead plaintiff).  Copies of these decisions are attached as Exhibit M to the Declaration of Elizabeth A. Schmid In Further Support of the Motion of the Kristen-Straxton Group For Consolidation of All Related Cases, Appointment of Lead Plaintiff and Approval of the Selection of Lead Counsel And In Opposition To Competing Lead Plaintiff Motions, dated December 20, 2007 (the "Second Schmid Decl."), submitted herewith.

[5]     *See Int'l. Equity Inv., Inc., v. Opportunity Equity Partners Ltd.*, 475 F. Supp. 2d 456, 458 (S.D.N.Y. 2007) ("British Virgin Islands which generally follow[s] English law.").  "The BVI enjoys a large measure of self-government as an internally-governing overseas territory of the U.K. The governor, who is appointed by the U.K. Foreign and Commonwealth Office ..., retains direct responsibility for external affairs, the terms and conditions of public service, *and the administration of justice, including the police and the courts.* He also appoints the (nonpolitical) attorney general, who typically comes from outside the Islands." Second Schmid Decl., Ex. A (emphasis added).

that "English courts, when ultimately presented with the issue, are more likely than not to find

that U.S. courts are competent to adjudicate with finality the claims of absent class members and,

therefore, would recognize a judgment or settlement in this action.").[6]  Thus, courts do not

hesitate to appoint British subjects as lead plaintiffs in PSLRA cases.  *See, e.g., Borochoff v.*

*Glaxosmithkline PLC,* No. 07-cv-5574, 2007 U.S. Dist. LEXIS 74621, at *11 (S.D.N.Y. Oct. 5,

2007) (appointing institutional investor based in the United Kingdom) (quoting *Vivendi,* 242

F.R.D. at 102-03).   There is, thus, no issue relating to the Kristen-Straxton Group's foreign

citizenship.[7]

### b.    There Is No Unique Defense Based On A Movant's Purchase of CFDs

Moreover, the fact that the members of the Kristen-Straxton Group purchased derivative

securities, contracts for difference ("CFDs") to invest in E*Trade is irrelevant to their typicality

or adequacy.  A CFD is a "security" as that term is defined pursuant to the Securities Exchange

Act of 1934.[8]   CFDs are sold to institutional and retail customers by major brokerage firms

throughout the world, *see* Second Schmid Decl., Ex. B (Declaration of Roger Hambury

("Hambury Decl.")), at ¶1, and regulated in the UK by the Financial Services Authority, the

UK's counterpart to the U.S. Securities and Exchange Commission.  *See id.*, Ex. C, at 1.7

---

[6]  STRS's proposed lead counsel here, Abbey, Spanier *et al.*, are co-lead counsel in *Vivendi*, and argued strenuously and successfully to Judge Holwell there was no conflict, antagonism, or unique defense based on the British citizenship of the proposed class representative in that case.  *See In re Vivendi Universal S.A. Sec. Litig.*, No. 02 Civ. 5571 (RJH) (S.D.N.Y.), Docket Nos. 169,170,289,290,291.

[7]  The application of British law to the members of the Kristen-Straxton Group contrasts to that of members of the Swedish Investor Group and Skandia, who are Swedish citizens.  Counsel for the Kristen-Straxton Group has been unable to find any case where finding that a Swedish court will recognize a U.S. class action judgment or give it preclusive effect.  Therefore, while these Swedish movants, based on their small losses, are not realistic lead plaintiff contenders here, even if they were, the Swedish institutions have also failed in their prior submissions to address this potential unique defense.

[8]  *See* 15 U.S.C. §78c(a)(10) (the term "security" includes, *inter alia*, investment contracts, a security future, certificate of interest, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security (including any interest therein or based on the value thereof).

("Current estimates suggest that about 30% of equity trades are in some way driven by CFD transactions.").

CFD purchasers acquire the future price movement of the underlying company's common stock (positive or negative) without taking formal ownership of the underlying shares. To that extent, they are no different than any other publicly available derivative instrument. *See, e.g., Tolan v. Computervision Corp.,* 696 F. Supp.771, 774 (D. Mass. 1988) ("[T]he 1934 Act, as initially drafted and later amended, reflects Congress' intent to grant standing to options traders under section 10b."). Unlike calls and puts, however, which trade in tandem with, but not at the same price as, the underlying publicly traded common stock, the purchase and sale prices of CFDs are identical to the prices quoted for shares of the underlying company's common stock on the public securities exchange. *See* Hambury Decl. ¶¶3-5. In advance of pricing the CFDs, actual matching shares of the underlying common stock are purchased or sold by the broker on the public securities exchange on which the common stock normally trades (*e.g.,* for E*Trade on the NASDAQ in the U.S.). The prices paid or received by the broker for those corresponding shares of common stock are the prices set for the CFDs representing those shares and charged to, or paid by, the customer. *See id.,* ¶4. Because identical matched transactions occur in shares of the actual common stock immediately before the purchase or sale of the CFDs, whatever the market effect the transactions have on the public market price of the underlying securities is also reflected identically in the price of the CFDs. The CFDs are held by the broker while the corresponding CFDs are outstanding, and then sold when the CFD purchaser orders the CFDs sold. CFD include other attributes of the underlying security they represent; for instance, unlike derivative securities, like call or put options, which expire on a fixed date, CFDs have no fixed

expiration date.  CFD holders also receive the benefit of any dividends paid on the underlying shares, and the CFD may include voting rights on the underlying shares.  *See id.*, at ¶5.[9]

In fact, CFDs are most akin to American Depository Receipts ("ADRs"), which are used in the U.S. to invest in non-U.S. companies.  ADRs allow Americans to acquire an interest in foreign equity securities without taking ownership of the underlying foreign shares.  As with a CFD, an ADR purchaser receives a separate security that serves as a proxy for the price movement of the actual underlying matching shares that are held separately on deposit to back the ADR.  And, like CFDs, ADRs may be purchased or sold at any time at the quoted market price for the underlying shares, or converted to the underlying shares.  *See, e.g., In re Vivendi Universal S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 171-2 (S.D.N.Y. 2003) (discussing ADRs and ADSs) (citations omitted); *Id.* at 172 (the terms ADS and ADR are used interchangeably).  Courts frequently appoint purchasers of ADRs as lead plaintiff.  *See, e.g., In re Converium Holding AG Sec. Litig.*, No. 04-cv-7897, 2006 U.S. Dist. LEXIS 93413, at *25-26 (S.D.N.Y. Dec. 28, 2006); *Rozenboom v. Van Der Moolen Holding N.V.*, No. 03-cv-8284, 2004 U.S. Dist. LEXIS 6382, at *20 (S.D.N.Y. Apr. 14, 2004).  For example, in *Linn v. Allied Irish Banks, PLC*, No. 02-cv-1738, 2004 U.S. Dist. LEXIS 24655 (S.D.N.Y. Dec. 7, 2004), the court appointed a purchaser of ADRs as lead plaintiff where the class was defined to include, similar to the Class here, "all those who purchased AIB *securities*" during the class period) (emphasis added).  There is no basis for CFD purchasers to be treated differently.  *See, e.g., Sofran*, 220 F.R.D. at 403

---

[9.]  Here, upon the order for E*Trade CFDs by Mr. de Canniere, City Index, the broker for Straxton's E*Trade CFD purchases and sales, first purchased E*Trade common stock on the NASDAQ in the United States in the amount of shares that Straxton ordered in E*Trade CFD.  *See* Hambury Decl., ¶8.  City Index then charged Straxton the same price it paid for the underlying shares of E*Trade common stock it purchased on the NASDAQ.  *See id.*.  The same procedure was followed when Straxton ordered the sales of the Straxton CFDs, *i.e.*, City Index first sold the matching underlying shares of E*Trade common stock on the NASDAQ in the United States, and then charged Straxton for the difference between the original purchase price of those common shares (*i.e.*, the purchase price of the CFDs) and the sale price City Index received for the sale of the underlying E*Trade common stock on the NASDAQ.  *See id.*

(rejecting argument that institutional investor lacked standing to be lead plaintiff because it was not the beneficial owner of the securities listed on its PSLRA certification).

Since CFDs have far more indicia of equity ownership than call or put options, *see* Hambury Decl. ¶4, and courts routinely certify options traders to represent both derivatives and common stock traders in securities class actions, *see, e.g., In re Sepracor Inc., Sec. Litig.* 233 F.R.D. 52, 56 (D. Mass. 2005) (finding option trader who did not own common stock eligible to represent a class that included purchasers of all securities of the company),[10] there is no basis to find purchasers of CFDs any less typical or adequate to represent a class.  For instance, in *In re Priceline, Inc., Securities Litigation*, 236 F.R.D. 89 (D. Conn. 2006), defendants argued, because [the lead plaintiff] had traded almost exclusively in put options, that the characteristics of this type of security rendered him an unsuitable representative of class members who traded only in common stock.  *See id.*, at 96, 98.  Rejecting this argument, the court found the lead plaintiff's "interests sufficiently aligned with those of the class members," and appointed him as a class representative.  *See id.* at 96.  *See also Crossen v. CV Therapeutics*, No. 03-cv-3709, 2005 U.S. Dist. LEXIS 41396, at **10, 20 (N.D. Cal. August 9, 2005) (court appointed a lead plaintiff that primarily sold call option contracts, finding that "[g]enerally, investors who trade options are entitled to the fraud-on-the-market presumption because the value of options is directly related to the value of common stock.").  Thus, "under the PSLRA, '[t]he fact that plaintiffs might have

---

[10]  *See also In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 445 (S.D. Tex. 2002) ("When plaintiffs have alleged such a common course of conduct, courts have found no bar to class certification even though members of a class may have purchased different types of securities or interests"); *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 371 (D. Del. 1990) (certifying plaintiff who never purchased common stock to represent purchasers of common stock and call options because "[Third Circuit] considers the positions of stock purchasers and option purchasers substantially the same vis-à-vis securities fraud"); *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 123-4 (S.D.N.Y. 2001) (holding that options traders were typical and adequate class representatives); *In re: Tel-Save Sec. Litig.,* No. 98-cv-3145, 2000 U.S. Dist. LEXIS 10134, at *17 (E.D. Pa. July 19, 2000) (finding lead plaintiffs adequate representatives for "[b]oth option and stock holders have an interest in proving that stock prices were artificially inflated by defendants' material misrepresentations and omissions."); *In re Donnkenny Inc., Sec. Litig.* 171 F.R.D. 156, 158 (S.D.N.Y. 1997) (certifying trader in puts and call options as class representative).

different types of securities does not require a separate class or co-lead plaintiffs because lead plaintiffs need not satisfy all elements of standing with respect to the entire lawsuit under the PSLRA.'" *See In re: XM Satellite Radio Holdings Sec. Litig.,* 237 F.R.D. 13, 21 (D.D.C. 2006) (rejecting the argument that options purchasers, as purchasers of "different securities," were atypical of common stock purchasers and finding a sub-class unnecessary).

Furthermore, since the test under the typicality prong of the PSLRA and Rule 23 is whether ***defendants will assert a defense*** based on some issue unique to the lead plaintiff, E*Trade cannot credibly argue that purchases or sales of CFDs forms the basis of any defense to the Kristen-Straxton Group's claims here, because ***E*Trade itself purchases and sells CFDs to its customers and promotes their use as an effective investment tool***, *see* Second Schmid Decl., Ex. D; admits that "***a CFD is researched and traded in exactly the same way as a stock,***" *id.* (emphasis added); and even promotes CFDs as an appropriate investment vehicle for customers' pension plans. *See id.*[11]

### c. There Is No Unique Defense Based On A Movant's Sale Of The Subject Securities Before The End Of The Class Period

The fact that the members of the Kristen-Straxton Group sold out of their E*Trade securities by August 20, 2007, which was prior to the end of the alleged class periods in the current complaints, does not render them inadequate or atypical under the PSLRA.[12]    In fact,

---

[11]    According to E*Trade's website, "E*Trade CFDs . . . give the active trader a clear advantage. They offer transparent and reliable execution, a choice of ways to trade and flexible, competitive commission plans." Second Schmid Decl., Ex. D. E*Trade's website on CFDs also concedes that CFDs trade efficiently and precisely match the movement in the underlying stock: "For example, a Vodafone CFD will follow the movements of the Vodafone stock itself, and will be effected positively or negatively by the same factors as the underlying Vodafone stock, such as market news, economic and political factors." *Id.* Among the advantages of CFDs that E*Trade touts are: avoidance of the UK stamp duty; the ability to trade on over 13 exchanges in the UK, Europe and the U.S.; that E*Trade will quote a price to trade on instantly; and that there is no need to wait for delivery of the stock to trade. *See id.*

[12]    Following the filing of the initial *Freudenberg* action, another action, *Davidson*, was filed and alleged

"[t]his argument is founded on a doubtful assumption that has consistently been rejected by the courts." *See In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 277 (S.D. Tex. 2004) (quoting *Kalodner v. Michael Stores, Inc.*, 172 F.R.D. 200, 208 (N.D. Tex. 1997)) (appointing lead plaintiff that sold all of its shares about a month before the end of the proposed class period, rejecting defendants' argument that it created a conflict with other class members.). Indeed, courts routinely certify class representatives who are "out" of the stock before the end of the alleged class period. *See, e.g., In re Gaming Lottery Sec. Litig.*, 58 F.Supp. 2d 62, 69-71 (S.D.N.Y. 1999) (rejecting defendants' argument that an in-and-out purchaser was an inadequate class representative because he sold as well as purchased at inflated prices).[13]

Furthermore, there is no question that E*Trade made adverse partial disclosures in August 2007 that caused damages to investors in its securities. On August 9, 2007, E*Trade filed its Second Quarter Form 10-Q, which disclosed that "[a] substantial portion of [its] asset portfolio is composed of loans secured by first lien residential mortgages and second lien mortgages (home equity loans and home equity lines of credit)," and that "the level of provision for loan losses in [its] mortgage loan portfolio may increase as a result of trends in the macroeconomic environment." Second Schmid Decl., Ex. E, p.65. Foreshadowing the disaster to come, the 10-Q stated that "[i]nstability in the consumer credit markets and credit trends may require additional increases in our provision for loan losses, which would have an adverse effect

---

a longer class period. As is customary, after the appointment of lead plaintiff, a consolidated amended complaint, asserting all claims of all potential Class members, will be filed and the class period may, based on the further investigation of the lead plaintiff, be lengthened or shortened as the facts dictate.

[13] *See also In re Flag Telecom Holdings Sec. Litig.*, 245 F.R.D. 147, 168 (S.D.N.Y. 2007) (citing *In re Vivendi*, 242 F.R.D. at 86 n.5 (finding an in-and-out purchaser an adequate class representative because it "ensures that plaintiffs' counsel will further attempt to collect evidence and establish that sufficient leakage occurred at least prior to the end of the class period.")); *In re Sumitomo*, 194 F.R.D. 480 (rejecting defendants' arguments regarding conflicts created by inclusion of in-and-out purchasers, noting that "it is well settled in this Circuit that factual differences in the amount of damages, date, size or manner of purchase, the type of purchaser, the presence of both purchasers and sellers, and other such concerns will not defeat class action certification….") (citations omitted).

on our results of operations in future periods." *Id*. Thereafter, in an August 12, 2007 article on *Market Watch* entitled: *How E\*Trade Mortgages Its Past, Future*, *see id.*, Ex. F, the depth and severity of E\*Trade's exposure to the growing sub-prime mortgage crisis began to be revealed: "As the mortgage mess continues to evolve, [] E\*Trade Financial Corporation, is clearly in the thick of it, so much that after reviewing its financial statements, you might think it was a mortgage REIT disguised as an online broker...." *Id*. The article also reported that securities analysts were advising clients that E\*Trade "has a much higher risk relative to its peers," and quoted a representative of an independent credit-ratings organization as stating that "E\*Trade is a broker, not an asset holder and therefore the rapid build-up is a concern. The company has moved out of its expertise and is taking on some risky business in the process." *Id*. Both voiced concerns "that E\*Trade isn't well reserved to cover-mortgage losses." *Id*. Then, on August 16, 2007, an article was published by *Forbes.com*, entitled *E\*Trade's Image Problem*, *see id.*, Ex. G, reporting that E\*Trade, as a mortgage lender, was in trouble:

> On Thursday, E\*Trade Financial shares fell as much as 26.5% before rebounding to a 5% loss. According to a recent E\*Trade Securities and Exchange Commission filing, 70% of the firm's total assets are related to residential real estate loans and mortgage-backed and asset-backed securities....[c]redit worries hang over E\*Trade, as other institutions struggle to escape the credit crisis.

By August 16, 2007, shares of E\*Trade common stock had fallen on the NASDAQ from a Class Period high of $26.08 to $9.92.

After this series of *negative partial disclosures* in August 2007, and the consequent fall in the price of E\*Trade's publicly traded common stock, the members of the Kristen-Straxton Group sold out their E\*Trade securities, having already suffered a loss in excess of $133 million. The law does not require that investors wait until all information is finally disclosed to have a claim for securities fraud, and thereby increase their losses; thus the Kristen-Straxton Group were not required to wait until September 17, 2007 to have a claim common to those who did.

[I]n accordance with the PSLRA, 15 U.S.C § 78u-4 *et seq.*, the test articulated by the Supreme Court in *Dura Pharms., Inc., v. Broudo* 544 U.S. 336, 341-2 (2005), and the Second Circuit in *Lentell v. Merrill Lynch & Co., Inc.* 396 F.3d 161, 174 (2d Cir. 2005), plaintiffs need only allege "that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security," and loss causation does not require full disclosure and can be established by partial disclosure during the class period which causes the price of shares to decline.

*Montoya v. Mamma.com, Inc.,* No. 05-cv-2313, 2005 U.S. Dist. LEXIS 10224, at *6 (S.D.N.Y. May 31, 2005); *see also In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 305-06 (S.D.N.Y. 2005) (rejecting argument that to be compensable loss must necessarily be preceded by corrective disclosure).

In *Montoya*, the court appointed a lead plaintiff that was out of the subject stock before the end of the class period, holding that the plaintiff could "allege that 'the subject of the fraudulent statement or omissions was the cause of the actual loss suffered, [thus satisfying] the *Dura* test, indicating that the *Dura* and *Lentell* loss causation requirements do not require full disclosure…." 2005 U.S. Dist. LEXIS 10224, at *7. Similarly, in *Weiss*, 2006 U.S. Dist. LEXIS 3028, the court, in appointing a lead plaintiff that had sold all of its shares before the end of the class period, *see id.*, at *19-*20, rejected the argument that the lead plaintiff movant would be unable to prove loss causation due to its status as an in and out purchaser, *see id.* at *17, holding that "simply because all of its shares were sold before the end of the Class Period" does not render the movant unable to prove loss causation and "such a defense surely cannot be described as unique." *Id.*, at 18. Thus, courts consistently appoint lead plaintiffs who sell "out" of the subject securities before the end of a class period, rejecting arguments that they are subject to "unique defenses" or "incapable of adequately representing the class." *See also Pirelli*, 229 F.R.D. at 415 (rejecting argument that transactions by in-and-out traders should be "disregarded or discounted"); *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, No. 00-cv-152, 2000 U.S. Dist. LEXIS 5481 at *12 (D.N.J. Apr. 24, 2000) (appointing as lead plaintiff movant who

sold all shares during class period); *In re Dynegy,* 226 F.R.D. at 277 (lead plaintiffs divestiture of all its stock one month before the end of the proposed class period did not render it an atypical plaintiff). Therefore, the Kristen-Straxton Group meets the requirements of Rule 23.

### C.     THE OTHER LEAD PLAINTIFF MOVANTS DO NOT MEET THE REQUIREMENTS OF RULE 23

#### 1.     STRS May Be Subject To Unique Defenses And Not Adequate To Represent The Class

STRS, which has the second largest loss -- one that is $110 million less than the Kristen-Straxton Group -- would face several impediments to serving as the lead plaintiff here even if it possessed the largest financial interest. STRS is represented by the Attorney General of the State of Ohio, the Honorable Marc Dann, ("AG Dann"), who is on a crusade to bring to justice those in the sub-prime mortgage industry who committed misdeeds. AG Dann has characterized the sub-prime crisis as "the largest financial scam in American history." Second Schmid Decl. Ex. H, and has vowed that "[e]veryone who helped create this crisis will be held accountable...My job is to be the bad cop, and I'm comfortable with that role because I believe a terrible crime has been committed." *Id*. Thus, he has made "[i]nvestigating wrongdoing in the real estate market...'the very top of [his] priority list'...moving beyond small-time fraud schemes to investigate lenders, credit raters and other who may have looked the other way rather than acknowledging problem loans." *See id.,* Ex. L. In a May 15, 2007 *Bloomberg.com* story, AG Dann was reported as stating that he intended to pursue "investment banks and credit rating firms ... and bring new suits, perhaps under Ohio's version of [RICO]." *See id.,* Ex. I. Thus, AG Dann is conducting criminal investigations of a wide range of sub-prime lenders, which may necessarily include E*Trade itself, concurrently with his effort in this action. *Id*. Analogizing the situation to "organized crime and drug rings," AG Dann was quoted as stating: "I want to see emails, I want to see documents...I'm guessing somebody at some or all of these places was

predicting the bottom was going to fall out." *Id.* To accomplish this task, AG Dann announced, on November 8, 2007, that "[he was] about to issue a number of Civil Investigative Demand subpoenas to companies involved in the sub-prime industry….[t]hat investigation involves possible violations of the anti-trust laws, civil rights statutes, and consumer sales practices act. In addition, the information we gather may enable us to use our common law authority to investigate and prosecute civil fraud." *See id.,* Ex. J.

Serious risks exist that AG Dann's criminal investigations will create conflicts with this civil action, most obviously with respect to discovery. For instance, defendants will complain that STRS is evading the automatic PSLRA stay, 15 U.S.C. §78u-4(b)(3)(B), by utilizing AG Dann's subpoena powers under Ohio law. They may also argue that the PSLRA, as federal law, pre-empts AG Dann's ability to use the evidence he gathers in his other investigations, or to pursue other criminal and civil actions until the stay is lifted. Furthermore, to the extent defendants seek discovery of AG Dann, he will, no doubt, assert his criminal investigatory privileges to block production of information he obtains. Conversely, defendants will seek to stymie this class action until all criminal proceeding are ended to avoid, *inter alia*, being forced to provide potentially incriminating evidence in this action that AG Dann could use in a criminal prosecution. *See, e.g., In re Enron Corp. Sec. Litig. & ERISA Litig.*, No. MDL 1446, H-01-3624 (S.D. Tex. Mar. 25, 2003) (granting defendant's request for a stay against the civil suits and postponing discovery until resolution of his criminal liability) (Second Schmid Decl., Ex. K)[14] Importantly, irrespective of who prevails in these inevitable disputes, which can only arise by

---

.[14] *See also Golden Quality Ice Cream Co. v. Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa. 1980) ("Intensive discovery at this time in the civil cases will divert valuable resources from the defense of the criminal action."); *Springfield Township v. Kuss*, No. 93-cv-1629, 1993 U.S. Dist. LEXIS 14961, at *5 (E.D. Pa. 1993) (finding defendants ability to prepare his criminal defense could be substantially impaired if the court required him to also comply with civil discovery proceedings.); *In re Plastics Additives Antitrust. Litig.*, No. 03-cv-2038, U.S. Dist. LEXIS 23989, at *15 (E.D. Pa. Nov. 30, 2004) (citing *Texaco, Inc. v. Borda*, 383 F.2d 607 (3d Cir. 1967) (discussing staying civil discovery until termination of related criminal proceedings)).

virtue of AG Dann's dual role as criminal prosecutor and civil action class representative, the inevitable, time-consuming litigation of these issue before this Court will be a substantial distraction from the common questions relevant to all Class members' claims. *See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 455-56 (S.D. Tex. 2002) ("[T]hese unique defenses are likely to more than distract the [movant] from its duties as lead plaintiff.").

Thus, AG Dann may ultimately find himself in an irreconcilable conflict between his "top priority" and the orderly prosecution of this case.  "A class representative is [] inadequate because of characteristics unique to the representative, or the representatives' ability to bring a claim, that would necessarily jeopardize the ability to effectively present and prosecute the claims of the class members." *In re Priceline*, 236 F.R.D. at 96 (citing *Gary Plastic Packaging Corp. v. Merrill Lynch Pierce Fenner & Smith, Inc.* 903 F.2d 176, 180 (2d Cir. 1990)). "Adequate representation requires a finding that the purported class representative and *its attorney* are capable of pursuing the litigation and that *neither* has a conflict of interest with other class members." *In re Cree, Inc, Sec. Litig.*, 219 F.R.D. 369, 372 (M.D.N.C. 2003) (emphasis added) (citing *Sosna v. Iowa*, 419 U.S. 393, 403 (1975)).  In *Krim v. PcOrder.com*, 210 F.R.D. 581 (W.D. Tex. 2001), the court noted that "[i]n undertaking an inquiry into adequacy, the Court considers the conflicts of interest of the class counsel, as well as the class representatives," *id.*, at 589, and that "conflicts of interest may exist for class counsel if they are involved in multiple lawsuits for the named representative *or against the same defendant." Id.*, (emphasis added).

The public position of AG Dann also raises the question of whether state pension funds, like STRS, are even appropriate investors to lead PSLRA cases. By its very title, the PSLRA was intended for *"private"* litigants, not "public" entities controlled by elected state officials, particularly a state's attorney general who possesses broad criminal and civil enforcement

powers enabling him to obtain relief unavailable to private investors. The interest of the states in pursuing home-court remedies is reflected in the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), which was enacted to correct perceived deficiencies in the PSLRA. *See* 15 U.S.C. §§ 78bb *et seq.* SLUSA, which mandates federal jurisdiction for virtually all securities actions brought on behalf of 50 persons or more, expressly exempts states and state pension plans from its application. *See id.,* at §§ 78bb(f)(3)(B), (f)(5)(C). This exemption evidences an expectation by Congress that state pension plans would not utilize the PSLRA as a means to recover for securities fraud.[15]  *See Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 87-88 (2006) ("[T]he tailored exceptions to SLUSA's pre-emptive command demonstrates that Congress did not by any means act "cavalierly" here."). Instead, this exemption enables state pension plans to obtain greater relief than Congress made available to private litigants under the PSLRA. For instance, AG Dann can pursue claims under Ohio common law fraud, which would entitle the Ohio fund to punitive damages, *see Arales v. Furs By Weiss, Inc.* No. 81603, 2003 Ohio App. LEXIS 2982, at *P51 (8th Dist. Cuyahoga Co., June 26, 2003), or for negligent misrepresentation, which would significantly lower STRS's evidentiary burden to succeed on the merits. *See, e.g., Hamilton v. Sysco Food Serv. Of Cleveland,* 170 Ohio App. 3d 203, 866 N.E. 2d 559 (8th Dist. Cuyahoga Co. 2006). As such, an

---

[15]  Further supporting the proposition that Congress did not intend states' attorneys generals to pursue *private* securities class action litigation are the provisions of the Class Action Fairness Act of 2005 ("CAFA"), PL 109-2, 119 Stat 4, 9 (February 18, 2005); codified at 28 U.S.C. 1 note, 1332(d), 1332 note, 1453, 1711–1715, 2071 note, and 2074 note. Under CAFA, in connection with the settlement of all federal class actions (which would necessarily include federal securities class actions under the PSLRA), notice must be given to the United States Attorney General and the attorneys general of all fifty states in advance of presenting any such settlement to a district court for approval. *See id.,* 28 U.S.C. §1715(b) and (d). Since Congress determined a specific role for states' attorneys' generals as watch dogs on behalf of their constituents at the settlement stage of federal class action litigation, it follows that Congress did not also intend the same attorneys' generals to lead the underlying federal class action litigation as they would be required to police themselves or be policed by other state's attorneys generals.

action under the PSLRA limits the amount of relief that AG Dann can obtain for STRS.[16]

To the extent AG Dann's goal of pursuing a national campaign against sub-prime wrongdoers, laudable as it may be, *see* Second Schmid Decl., Ex. H-J, L, conflicts here with his obligation to obtain the largest possible recovery for Ohio's pensioners, his obligation to STRS must take precedence. *See e.g., In re Gibson Greeting Sec. Litig.*, 159 F.R.D. 499, 502 (S.D. Ohio 1994) ("[i]f a class plaintiff is called upon to reconcile directly conflicting interests ....[h]e may be willing to choose between his diverse obligations, .... it is this Court's opinion that he does not qualify as a representative party.").

Finally, the "PSLRA bars a person from serving as a lead plaintiff in more than five securities class actions during any three year period." *In re Waste Mgmt. Sec. Litig,* 128 F. Supp. 2d 401, 424 n.23 (S.D. Tex. 2000) (where STRS counsel here was lead counsel) (citing 15 U.S.C. §78u-4(a)(3)(B)(vi)). The statutory text of the "professional plaintiff" restriction contains no express exception for institutional investors. *See, e.g., Aronson v. Mckesson HBOC, Inc.,* 79 F. Supp. 2d 1146, 1156 (N.D. Cal. 1999) (text contains "no flat exemption"), but the provision has been interpreted to allow a court to waive the prohibition for institutions at its discretion on a case-by-case basis. *See, e.g., In re Fannie Mae*, 355 F. Supp. 2d at 263-24 (rejecting argument that STRS was in violation of the "professional plaintiff" prohibition when it was lead plaintiff in three actions and was seeking to be lead plaintiff in three other cases). If appointed here, however, unlike in *Fannie Mae* where STRS had not yet actually been appointed a lead plaintiff in more than five cases, this would be STRS's sixth appointment as a lead plaintiff in three years. *See* STRS PSLRA Certification, ¶ 5.

---

[16]   It is for this reason, no doubt, that where STRS was not the lead plaintiff, it has "opted out" of class actions to pursue its individual remedies, which it has boasted were anticipated to be greater than the reocery for the classes. *See* State Teachers Retirement System of Ohio, *2007 STRS Ohio News,* http://www.strsoh.org/past_news_e-mails/e-mail77.html (On March 7, 2007, General Dann announced that AOL/Time-Warner agreed to terms to settle a securities fraud opt out case.).

Coupled with AG Dann's other obligations,[17] it is certainly a fair concern that this Action will not receive the attention that Class members deserve. *See, e.g., Ezra Charitable Trust v. Rent-Way Sec. Litig.*, 136 F. Supp. 2d 435 (W.D. Pa. 2001) (rejecting lead plaintiff movant on the basis that it was serving as lead plaintiff in seven securities class actions). In contrast, the members of the Kristen-Straxton Group, who have never previously served as lead plaintiffs, *see* First Schmid Decl., Exs. D-J, can devote their full, undivided attention to this Action.

## 2.    The Remaining Movants Failed To Meet The Requirements of Rule 23

As to the other lead plaintiff movants, like STRS, they all claim losses that are a fraction of those of the Kristen-Stracton Group. *See* p. 1, *supra*. Also, two movants, the Swedish Investor Group and the First Derivative Group, have failed to demonstrate they are appropriate groups under the PSLRA. The Swedish Investor Group, unlike the Kristen-Straxton Group, has provided no evidence of how they were formed; how they will operate as a group and manage the litigation; how they will supervise counsel; or how they will make decisions. Further, unlike the Kristen-Straxton Group, neither of these proposed groups has demonstrated a pre-litigation relationship. As one court has aptly stated, "'the content and structure of the [PSLRA] evince an intent that the group consist of more than a mere assemblage of unrelated persons who share nothing in common other than the twin fortuities that they (1) suffered losses and (2) entered into retainer agreements with the same attorney or attorneys.'" *Newman,* 209 F.R.D. at 503 (quoting *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 813 (N.D. Ohio 1999)) (cited with approval in *Pirelli Armstrong,* 229 F.R.D. at 417 n. 34)). As this Court stated in *Pirelli Armstrong,* "a comparative lack of information, when viewed in contrast with information provided by other movants, may be considered by the court in reaching its final determination as to a lead plaintiff appointment." 229 F.R.D. at 414.

---

[17]  Further research reveals that STRS is also co-lead plaintiff in *In re United Health Group S'holder Derivative Litigation*, No. 06-1216 (D. Minn. July 7, 2006), another large, complex investor action.

Moreover, no movant other than the Kristen-Straxton Group, including STRS, has provided any meaningful information about who made the investment decisions at issue in this Action, or who, precisely, will act day-to-day on behalf of the Class if the institution or group is appointed. Taken together, these omissions render it difficult, if not impossible, for the Court to determine whether any of the other movants are typical or adequate representatives of the Class or suitable lead plaintiffs. *See Pirelli Armstrong,,* 229 F.F.D. at 405 ("the process by which a lead plaintiff is selected 'works better with more information than less.'")(quoting *King v. Livent, Inc.,* 36 F. Supp. 2d 187, 191 (S.D.N.Y. 1999)).

### D.    THE COURT SHOULD APPROVE THE KRISTEN-STRAXTON GROUP'S CHOICE OF COUNSEL

The Kristen-Straxton Group has selected and retained, subject to Court approval, Brower Piven to serve as lead counsel. *See* 15 U.S.C. § 78u-4 (a)(3)(B)(v). As demonstrated by the firm's resume, Brower Piven attorneys have more than 20 years of experience in successfully prosecuting shareholder and securities class action litigation, and have frequently served as lead or co-lead counsel in major securities class actions. *See* First Schmid Decl., Ex. K. Accordingly, if the Kristen-Straxton Group is appointed lead plaintiff, the Court should approve its selection of class counsel.

### III.    CONCLUSION

For all the foregoing reasons, the Kristen-Straxton Group respectfully requests that this Court: (1) consolidate all of the related actions; (2) appoint the Kristen-Straxton Group lead plaintiff in the consolidated action; (3) approve the Kristen-Straxton Group's selection of Brower Piven to serve as lead counsel; and (4) grant such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
         December 20, 2007

25

Respectfully submitted,

**BROWER PIVEN**
   A Professional Corporation

By: /s/ *David A.P. Brower*

David A.P. Brower
Elizabeth A. Schmid
488 Madison Avenue
Eighth Floor
New York, New York 10022
Telephone: (212) 501-9000
Facsimile:  (212) 501-0300

**BROWER PIVEN**
   A Professional Corporation
Charles J. Piven
Marshall N. Perkins
World Trade Center-Baltimore
401 East Pratt Street, Suite 2525
Baltimore, Maryland 21202
Telephone: (410) 332-0030
Facsimile:  (410) 685-1300

*Proposed Lead Counsel for
the Kristen-Straxton Group
and the Class*