# EXHIBIT K



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
ENTERED

MAR 2 5 2003

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| In Re ENRON CORPORATION SECURITIES, DERIVATIVE & "ERISA" LITIGATION, | § § § | MDL 1446 |

| | | |
|---|---|---|
| MARK NEWBY, ET AL., | § § | |
| Plaintiffs | § § | |
| VS. | § § | CIVIL ACTION NO. H-01-3624 AND CONSOLIDATED CASES |
| ENRON CORPORATION, ET AL., | § § | |
| Defendants | § | |

| | | |
|---|---|---|
| PAMELA M. TITTLE, on behalf of herself and a class of persons similarly situated, ET AL., | § § § | |
| Plaintiffs | § § | |
| VS. | § § | CIVIL ACTION NO. H-01-3913 AND CONSOLIDATED CASES |
| ENRON CORP., an Oregon Corporation, ET AL., | § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER RE

## MOTIONS FILED BY ENRON INSIDER DEFENDANT ANDREW S. FASTOW

Pending before the Court are the following motions filed by Enron Insider Defendant Andrew S. Fastow ("Fastow"), Enron's Chief Financial  Officer during the Class Period until he was terminated in October 2001:  (1) motion to dismiss (#670 in *Newby*) pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6) and the PSLRA, 15 U.S.C. § 78u-4(b)(1)&(2);  (2) motion to postpone discovery during pendency of criminal proceedings (instrument #478 in *Newby*, #552 in *Tittle*);  (3) motion for protection from document request of *Tittle* Plaintiffs, subject to motion to postpone

*#1298*

discovery (#476 in *Newby*;  #564 in *Tittle*); and (4) motion for leave of court to file reply in support of his motion for postponement of discovery (#794 in *Newby*; # 565 in *Tittle*).

**FASTOW'S MOTION TO DISMISS *NEWBY* COMPLAINT**

Lead Plaintiff has sued Fastow under §§ 10(b), §20(a), and 20A of the Exchange Act, and 20A of the Securities Exchange Act of 1934 ("Exchange Act" or "the 1934 Act"), 15 U.S.C. §§ 78j(b), 78t(a), and 78t-1, and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5; under §§ 11 and 15 of the Securities Act of 1933 ("the 1933 Act"), 15 U.S.C. §§ 77k and 77o; and under the Texas Securities Act ("TSA"), Tex. Rev. Civ. Stat. Ann., article 581-33 (Vernon's Supp. 2002).

The Court hereby incorporates its summaries of the alleged facts and applicable law in its previous memoranda and orders of December 20, 2002 (#1194), of January 28, 2003 (#1241), and of March 12, 2003 (#1269).

The Court has previously indicted that Lead Plaintiff will have to amend/supplement its complaint to replead claims under the TSA, and that modification should include claims against Fastow. Having reviewed all pleadings relating to Fastow's motion to dismiss, without summarizing the arguments made by the parties the Court directly addresses the pleading sufficiency of the complaint with respect to Fastow.

## A.  Section 10(b) of the Exchange Act

Lead Plaintiff has stated claims against Fastow under § 10(b).  Fastow, before and after the waiver of his conflict of interest as an officer of Enron and a control person of LJM partnerships, participated in establishing, obtaining board approval of, and managing numerous "deceptive devices," the special entities and the transactions among them and Enron used to perpetrate the alleged fraud, in essence charging that Fastow indeed not only had actual knowledge of, but masterminded the scheme.  The complaint also identifies numerous "misstatements" made by Fastow, both in signing financial and registration statements filed with the SEC and in direct statements to the public in conference calls, analyst conferences, investors' conferences.  Lead Plaintiff has also stated a claim against Fastow for a primary violation of § 10(b) through insider trading, i.e., selling Enron securities while in possession of material, nonpublic information known to him by his direct participation in the alleged fraudulent scheme and in violation of his duty to disclose such information to the public.

## B. Control Person Liability Under § 20(a) of the Exchange Act

Lead Plaintiff has stated a claim for controlling person liability under § 20(a).  It is clear from the minutes of the board meetings and committee meetings that he had the power to control what happened at Enron.  Lead Plaintiff has also pleaded that he controlled numerous specified SPEs and transactions involved in them.

**C.  Section 20A of the Exchange Act**

Should Lead Plaintiff fail to prevail on his claim of insider trading as a primary violation of § 10(b), he has stated a claim against Fastow based on § 20A.

**D.  Section 11 of the 1933 Act**

Lead Plaintiff has pleaded § 11 violations against Fastow in identifying a number of allegedly false and misleading registration statements signed by Fastow.

**E.  Section 15 of the 1933 Act**

Lead Plaintiff has alleged facts demonstrating that Fastow had the power to control the actions of other individuals in signing allegedly misleading registration statements for Enron securities.

**FASTOW'S MOTION FOR LEAVE TO FILE REPLY IN SUPPORT OF HIS MOTION FOR POSTPONEMENT OF DISCOVERY**

To ensure that Fastow has a full opportunity to present his arguments, in the interests of justice the Court grants his motion for leave to file a reply and has considered that reply in reviewing the issue of postponing discovery.

**FASTOW'S MOTION TO POSTPONE DISCOVERY**

Since the pending motions related to discovery were filed, Fastow has been indicted on matters central to this civil litigation.[1]  In that criminal proceeding, pending before the Honorable Kenneth Hoyt, H-02-CR-665, commenced on October 1, 2002,

---

[1] The Court accordingly does not address the arguments based on the lack of an indictment.

Fastow has moved to designate the case as complex and has waived his right to a speedy trial. Currently there is no trial setting, although the next status conference is set on May 19, 2003.

Fastow moves for postponement of discovery in the Tittle consolidated ERISA cases, in which he is being sued for violations of RICO and civil conspiracy, to protect his constitutional rights in light of the United States' criminal investigation of him relating to the same events, i.e., his role at Enron and regarding partnerships that dealt with Enron. He argues that if he responds to discovery requests in the civil action, he risks his Fifth Amendment privilege against self-incrimination and his answers might be used to prosecute him. Alternatively, if he invokes his Fifth Amendment privilege, he risks severe prejudice in Tittle that might result in essence in a forfeiture of his due process right to defend himself.[2] He characterizes his dilemma as a "Hobson's choice, in which either alternative will damage a constitutional right." #478 at 2. In such a circumstance as here, where "the civil and criminal proceedings cover the same subject matter, thus creating an irreconcilable conflict between Fastow's Fifth Amendment privilege and his defense of the civil suit," the Tittle [and Newby] Plaintiffs' interest in pursuing their civil damages claim should be balanced against protection of Fastow's rights. See, e.g., Wehling v. Columbia Broadcasting Sys., 608 F.2d 1084, 1087-88 (5th Cir. 1979)(holding that a

---

[2] The same will be true in the Newby consolidated action once the stay under the PSLRA no longer applies.

district court should abate discovery in a civil action when proceeding with discovery would compel a litigant to choose between responding to the request and exercising his Fifth Amendment privilege); *Brumfield v. Shelton*, 727 F. Supp. 282, 284 (E.D. La. 1989); *Kmart Corp. v. Aronds et al.*, Civ. Action No. H-96-1212, sl. op. (S.D. Tex. Dec. 11, 1996)(Ex. 1 to #478). *See also SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir.)(*en banc*)("[T]he strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter."), *cert. denied*, 449 U.S. 993 (1980). Fastow contends that the nexus between the civil allegations and the pending criminal investigation, based on the same underlying transactions, requires postponement of discovery. Civil Plaintiffs' interest in a speedy resolution of their cases and discovery from all defendants during prosecution of their suits is not sufficient to warrant eviscerating Fastow's constitutional rights. Mere inconvenience and delay do not constitute undue burden and substantial prejudice warranting a denial of a stay of discovery. *Volmar Distrib., Inc. v. New York Post Co.*, 152 F.R.D. 36, 40 (S.D.N.Y. 1993); *Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1140 (S.D.N.Y. 1995).[3]

---

[3] Lead Plaintiff distinguishes the facts here from those in cases relied upon by Fastow.
    It notes that neither *Wehling* nor *Kmart* involved complex

OPPOSITION

Opposition to Fastow's motion has been filed by <u>Newby</u> Lead Plaintiff (#599), *Tittle* Plaintiffs (#600), and Defendant Ken L. Harrison (#611 in *Newby*, #213 in *Tittle*).

**A.  Lead Plaintiff**

---

litigations and neither involved substantial public interests calling for expeditious resolution or multiple claimants competing for potentially limited funds.

Furthermore, in *Wehling* the Fifth Circuit was reviewing the district court's dismissal with prejudice after the plaintiff refused to answer specific deposition questions "related to the subject matter of [a] pending grand jury" investigating his conduct and before which he had appeared five times.  608 F.2d at 1086.  At issue was "whether, under the circumstances of this case, plaintiff should have been required to forego a valid cause of action in order to exercise his constitutional right to avoid self-incrimination."  *Id*. at 1087.  The Fifth Circuit concluded, "When plaintiff's silence is constitutionally guaranteed, dismissal is appropriate only where other, less burdensome remedies would be an ineffective means of preventing unfairness to defendant."  *Id*. at 1088. In contrast, in the instant action Fastow is not a plaintiff being forced to forego a valid cause of action if he asserts his Fifth Amendment privilege.

Also inapposite Lead Plaintiff asserts, in *Kmart* the four defendants had already been indicted on multiple counts and the SEC had filed suit for illegal insider trading when the defendants requested a discovery stay.  The court stayed the discovery only because "postponing discovery with regard to those Defendants whose Fifth Amendment privilege against self incrimination have been implicated by the pending criminal indictments" would have "presented] the Court with numerous occasions to determine the scope of the stay."  Sl. Op. at 6.  Moreover many of the "corporate defendants in the civil action were formed and . . . controlled by" one of the indicted defendants, raising the specter that "some of these corporate defendants may not be able to provide an agent who could give the information likely to be demanded by the Plaintiffs without fear of self incrimination."  *Id*. at 5-6.  Lead Plaintiff argues that the court concluded that a complete stay was warranted in light of the potential for judicial waste and unnecessary litigation costs under the circumstances.  Here, Lead Plaintiff notes, Fastow controls none of the corporate defendants.  Instead, the burden on judicial and litigant resources and public interest in expeditious resolution outweigh Fastow's "purported inconvenience here."

Lead Plaintiff insists that an indefinite stay, without limits to its scope and duration, is an extraordinary remedy, one disfavored by the majority of courts that have addressed the issue. *Sterling National Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp.2d 573, 576 (S.D.N.Y. 2001); *IBM v. Brown*, 857 F. Supp. 1384, 1387 (C.D. Cal. 1994)(state that it "is the rule, rather than the exception" that civil and criminal cases proceed together). Lead Plaintiff emphasizes the strong public interest in efficient prosecution of these class actions in view of the catastrophic loss by individuals and institutions in securities investments, retirement funds, pension funds, and confidence in our markets and in the efficient and fair operation of our legal system.[4] Lead

---

[4] Lead Plaintiff notes that "the public interest in the integrity of securities markets militates in favor of the efficient and expeditious prosecution of these civil litigations." *Boesky*, 660 F. Supp. at 1500. The *Newby* private action is an essential weapon in the enforcement of securities laws. *Bateman Eichler, Hill Richards, Inc.* v. Berner, 472 U.S. 299, 310 (1985). The Fifth Circuit has written, "Protection of the efficient operation of the securities markets . . . from fraudulent . . . practices may require prompt civil enforcement which can not await the outcome of a criminal investigation." *First Fin.*, 659 F.2d at 667.

Moreover Lead Plaintiff argues that "Mr. Fastow's predicament is one of his own making." It points to Judge Pollack's response to a similar stay request in *Arden Way Assocs. v. Boesky*, 660 F. Supp. 1494, 1497 (S.D.N.Y. 1987):

It is plainly ludicrous for Mr. Boesky to argue that it is "unfair" to compel him to face the civil lawsuits against him which are the creations of his own misconduct. The plight which he imagines that he is in stems solely from his own activities. Surely it would be anomalous to suspend plaintiffs' rights in these civil litigations because they will deal with Mr. Boesky's misconduct.

*See also Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980).

Plaintiff maintains that delay of discovery against Fastow would cause severe prejudice to Plaintiffs [and absent class members] in these consolidated actions because there is a limited fund to satisfy their numerous claims.[5]  Speedy and efficient discovery is especially important in complex litigation.  *Digital Equip. Corp. v. Currie Enterprises*, 142 F.R.D. 8, 12 (D. Mass. 1991). Moreover, Fastow's evidence is especially important because of the documents destroyed at Enron and Anderson.  Granting Fastow's stay until criminal proceedings are finished would prolong this case possibly for years and make it difficult, if not impossible to meet the scheduled trial date in December 2003, especially in view of the complexity of Enron's business dealings and collapse and of the government's open-ended investigation.  Moreover, granting the motion might encourage other Defendants to file similar requests, multiplying delays in these proceedings.  Fastow's request also raises the specter of multiple adjudications of the merits of this case if the criminal proceedings against him are not completed prior to trial.

---

[5] Lead Plaintiff quotes Judge Pollack's opinion in *Boesky*, 660 F. Supp. at 1497:

> Stalling the case for a defendant who has ample means to protect himself otherwise, or fragmenting Mr. Boesky's participation would be counter-productive and prejudicial to plaintiffs, especially where there are so many claimants to the potentially limited funds for satisfaction of the potential damages in this and related litigation in which Mr. Boesky is involved.

Lead Plaintiff highlights the fact that Fastow has no constitutional right to stay civil proceedings pending the outcome of related criminal proceedings. *United States v. Kordel*, 397 U.S.1, 11 (1970); *SEC v. First Fin. Group of Texas, Inc.*, 659 F.2d 660, 666-67 (5th Cir. 1981); *Hilliard v. Black*, No. 1:00CV80 MMP, 2000 U.S. Dist. LEXIS 20329, at *10 (N.D. Fla. Nov. 9, 2000)("Forcing an individual to risk non-criminal disadvantage by remaining silent for fear of self-incrimination in a parallel criminal proceeding does not rise to the level of an unconstitutional infringement."). Therefore, to obtain a stay, Fastow must demonstrate that any inconvenience to him from having to choose whether to assert his Fifth Amendment privilege here outweighs the prejudice from the inevitable delay to the Plaintiff class of investors in Enron securities. "In the absence of substantial prejudice to the rights of the parties involved, parallel proceedings are unobjectionable under our jurisprudence." *SEC v. Dresser*, 628 F.2d at 1374.

Lead Plaintiff urges that Fastow's "generalized" claims of prejudice if he is forced to assert his Fifth Amendment privilege in the civil actions "ring hollow" because Fastow has already asserted his Fifth Amendment privilege to remain silent at a hearing of the House Energy and Commerce Oversight and Investigations Subcommittee to avoid Congressional investigations. Furthermore, Fastow has shown that he has more than sufficient means to protect himself and avoid prejudice. Fastow's "conjecture" that allowing discovery against him to go forward

would give the criminal prosecution an unfair advantage is
insufficient to warrant a stay because the government is not a
party to these civil actions, and Fastow has offered no evidence
that Lead Plaintiff would share the discovery with the
government.[6]

     Although the Constitution generally does not mandate
that civil proceedings be stayed, pending the outcome of criminal
proceedings against a defendant, a court in its discretion may
stay civil proceedings "when the interests of justice seem[] to
require such action." *Kashi v.* Gratsos, 790 F.2d 1050, 1057 (2d
Cir. 1986); *Kordel*, 397 U.S. at 12 n.27. *See also Kmart*, sl. op.
at 4. The decision to stay should be made "in light of the
particular circumstances and competing interests involved in the
case." *Fed. Savings & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899,
902 (9th Cir. 1989). *Accord Kmart*, sl. op. at 4-6. Factors to
be considered include (1) Lead Plaintiff's [and absent class
members'] interests in proceeding expeditiously and the potential
prejudice that might result from a delay; (2) the extent to which
Fastow's Fifth Amendment privilege is implicated; (3) the burden
of any particular aspect of any proceeding on Fastow; (4) the

---

[6] Lead Plaintiff suggests that a more limited remedy here that
the "draconian remedy of a discovery stay against Mr. Fastow" would
suffice to prevent the prejudice Fastow claims, e.g., a protective
order entered by the Court prohibiting the use of Fastow's
deposition answers, interrogatory responses, and answers to
requests for admission in any criminal proceeding brought against
him by the government, except in connection with perjury charges or
for impeachment. *See United States v. Parcels of Land*, 903 F.2d
36, 44-45 (1st Cir. 1990). Fastow responds that unless he is given
use immunity by the government, this Court may not have the power
to order such protection.

convenience of the Court in the management of its cases and the efficient use of judicial resources; (5) the interest of absent class members and other persons not parties to the Enron litigation; and (6) the interest of the public in the pending civil and criminal litigations, if any. *Kmart*, sl. op at 4-5; *Mollinaro*, 889 F.2d at 902-03; *Arden Way Assocs. v. Boesky*, 660 F. Supp. 1494, 1497 (S.D.N.Y. 1987). Lead Plaintiff insists that the balance of interests here weighs heavily against staying discovery against Fastow. *Kmart*, sl. op. at 4; *Wehling*, 608 F.2d at 1089.

According to Lead Plaintiff, Fastow's evidence is central to allegations in the Consolidated Complaint relating to the creation, funding and function of the alleged bogus "special purpose entities" used to conceal billion of dollars in debt and losses on Enron's financial statements. Fastow participated with the bank defendants and lawyer defendants in creating these entities and partnerships, which were also utilized to defraud Enron's public investors. Lead Plaintiff urges that even if Fastow intends to assert his Fifth Amendment privilege in response to possibly incriminating questions, he can provide information, such as knowledge about the relationships of defendant banks to LJM2, that will not implicate Fastow, but will be crucial to Lead Plaintiff's development of the class action. Since many events involving material facts occurred more than four years ago, if discovery is postponed Fastow's memory and that of any witnesses that Fastow may disclose will continue to fade and documents known solely to Fastow may be relocated or lost.

Also relevant, Lead Plaintiff underlines, in view of the document destruction already accomplished by Anderson and Enron employees to impede investigation, it will take longer to identify knowledgeable non-parties.  That delay increases the danger of further spoliation of evidence.  Plaintiffs' need to proceed expeditiously out weighs Fastow's claims of inconvenience.

Furthermore a stay would hinder Lead Plaintiff's ability to identify other culpable parties through discovery from Fastow before claims against them would become time-barred.  The Supreme Court has held that litigation under § 10(b) and Rule 10b-5 must be filed within a year after a plaintiff discovers facts constituting a securities violation <u>and</u> within three years of that violation. *Lampf, Pleva, Lipkin, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364 (1991).  A number of events giving rise to Lead Plaintiff's securities fraud claims, i.e., acts relating to the formation, operations and disclosures relating to LJM-1 and LJM-2 and other SPEs designed by Fastow, occurred in 1999-early 2000. Viable claims may be lost if Lead Plaintiff cannot identify and locate other wrongdoers because "tolling principles do not apply to [the three-year limitations] period." *Lampf*, 501 U.S. at 363. A stay would increase the likelihood that other offenders may escape liability.

## B.  *Tittle* Plaintiffs

The *Tittle* Plaintiffs, describing Fastow as "at the very heart of the Enron meltdown," also oppose Fastow's motion to stay discovery.  They, too, highlight the fact that Fastow has already

made his "Hobson's choice" and invoked the Fifth Amendment--any further harm would be incremental at most. Moreover, his choice is one that he can and should be required to make because the invocation of the Fifth Amendment can be used against Defendants in civil litigation and, they maintain, since Fastow has already invoked the Fifth Amendment, that adverse inference will be utilized in *Tittle*. *Baxter v. Palmigiano*, 425 U.S. 308, 318-19 (1976)(Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them); *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 674 (5th Cir. 1999)(holding that the "district court . . . abused its discretion in excluding the evidence of [defendant's] invocation of his Fifth Amendment privilege.").

The *Tittle* Plaintiffs further argue that the law is clear that Fastow can be compelled to produce responsive documents in his possession or control regardless of the Fifth Amendment since he was not compelled to create the documents within the meaning of the Constitution. *United States v. Hubell*, 530 U.S. 27, 35-36 (2000)(Fifth Amendment privilege restricted to testimonial communications and protects against being compelled to be a witness against oneself in a criminal proceeding). In their suit the discovery promulgated to date by the *Tittle* plaintiffs

consists of requests for production of documents, which do not trigger Fifth Amendment protection.[7]

If the Court should grant the stay, the *Tittle* Plaintiffs argue, other defendants who potentially face criminal liability and some of whom have already taken the Fifth Amendment, would file copycat motions. The *Tittle* Plaintiffs note that Fastow is the only one of many defendants who have already asserted the Fifth Amendment with respect to the Enron collapse that has requested a stay of discovery.[8] Some have even been deposed. To grant a stay to Fastow would be inequitable. They additionally point out that while an indefinite postponement of discovery would provide a refuge for these defendants, it would be a disaster for Plaintiffs and the public with their strong interest in efficient resolution of this case.

Finally, the Tittle Plaintiffs also maintain that a balancing of the interests here weighs strongly in favor of denying Fastow a stay of discovery. Since Fastow has already invoked the Fifth Amendment and remains subject to the broad subpoena powers of the Grand Jury investigating Enron, any benefit of a stay to Fastow is *de minimis*. Judicial efficiency supports denying the stay to allow Plaintiffs' case to proceed against all the defendants instead of waiting around for final results of

---

[7] The Court observes that this argument also supports imposing a stay on discovery from Fastow.

[8] Nevertheless, the Court notes that no other defendant has filed a motion for stay or for protection, even though Fastow's have been pending for nearly a year.

multiple investigations. Delay will only harm the public interest in prompt and efficient redress from Defendants in the greatest business scandal of our era. Proceeding forthwith with both civil and criminal proceedings will aid public faith in our legal and financial systems.

## C.  Defendant Ken Harrison

Defendant Ken Harrison adds another perspective. He contends that staying discovery as to Fastow while requiring other Defendants to participate in discovery and proceed to trial would prejudice those other Defendants and waste scarce judicial resources. He complains that Fastow has not considered the interests of the other Defendants, which weigh strongly against Fastow's proposal for piecemeal discovery. In determining whether to grant a discovery stay because of parallel criminal proceedings, "the relative weights of the parties' competing interests" must be considered and the rights of all parties "are taken into consideration before the court decides whose rights predominate." *Wehling*, 608 F.2d at 1088. Courts may also consider their own interests in efficient administration and judicial economy. *Trustees of the Plumbers & Pipefitters*, 886 F. Supp. at 1135; *Volmar*, 152 F.R.D. at 39. Harrison argues that when faced with a motion for stay by a central figure in a case, courts either routinely grant the stay as to all defendants, *see e.g., Trustees of the Plumbers & Pipefitters*, 886 F. Supp. at 1141, or deny it as to all defendants, *see e.g., Fidelity Bankers*

*Life Ins. Co. v. Wedco, Inc.*, 586 F. Supp. 1123, 1127 (D. Nev. 1984). Not only has Fastow failed to cite a single multi-defendant case in which the court followed his piecemeal approach; instead in those multi-defendant cases he has cited, the court has granted a stay as to all defendants. Harrison asks the Court to deny Fastow's motion.

**FASTOW'S REPLY**

First, Fastow contends that the *Tittle* Plaintiffs have misrepresented the law. First he disagrees with their argument that because courts have sometimes permitted adverse inferences to be drawn against civil defendants who asserted the Fifth Amendment privilege, that the drawing of that inference "is of no constitutional moment." *Tittle* Plaintiffs have also incorrectly claimed that the Supreme Court and the Fifth Circuit have rejected the central premise of Fastow's argument, i.e., that he should not be forced to choose between (1) responding to discovery requests invoking the Fifth Amendment and (2) facing an adverse inference in *Tittle*. It is that potential that presents Fastow with the dilemma of either losing his due process right to present his defense or his right not to testify if the evidence might be used to incriminate him. Neither *Baxter* nor *Curtis* held that a civil plaintiff may go forward with discovery during a criminal investigation and obtain a series of Fifth Amendment invocations that the plaintiffs may subsequently use to their advantage in the lawsuit. The Fifth Circuit's only review of the issue in *Wehling*

resulted in its holding that a stay of the civil proceedings for as long as three years during a pending criminal investigation was proper.   This Court applied that ruling in granting a stay in *Kmart*.

Fastow next contends that Plaintiffs have not cited any authority for the proposition that his invocation of the Fifth Amendment before the U.S. Congress would permit the court in this lawsuit, from a coordinate branch of government, to draw such an inference.   Instead he insists that the law allows an adverse inference only when a defendant invoked his Fifth Amendment privilege in a *civil proceeding*.   *Curtis*, 173 F.3d at 673-74 (holding that it was permissible to allow an adverse inference when a corporate executive invoked the Fifth Amendment in a deposition in the same proceeding).[9] He emphasizes that until he asserts the Fifth Amendment in this suit, no adverse proceeding is permissible.   He asks for a stay pending conclusion of the criminal investigation to avoid the Hobson's choice between his constitutional right against self incrimination and his right to defend this lawsuit, which an adverse inference would, in effect, eviscerate.

Fastow also contends that the Fifth Amendment privilege extends to the production of documents under the well established "act of production" doctrine because of the inherently testimonial nature of document production.   *Hubell*, 530 U.S. at 37-38; *Ohio v.*

---

[9] This Court agrees.   *See, e.g., In re Worldcom, Inc. Sec. Litig.*, No. 02 CIV. 3288, 2002 WL 31729501, *6, 7 (S.D.N.Y. Dec. 5, 2002).

*Reiner*, 532 U.S. 17 (2001)(Fifth Amendment protection applies to any response that would provide a "link in the chain of evidence" needed to prosecute).

Fastow disagrees with both the *Newby* and *Tittle* Plaintiffs about the results of the balancing test to determine whether this litigation should be stayed. In *Kmart* this Court weighed the interests of a party before indictment against the interests of the civil litigants in continuing their case and concluded that the balance favored staying the civil proceedings until the criminal proceeding was resolved. Similarly in *Wehling* the Fifth Circuit addressed a stay of discovery against an unindicted civil defendant subject to criminal investigation.

Fastow first rejects *Newby* Lead Plaintiff's contention that Fastow can provide evidence that will not implicate himself but which is critical to Lead Plaintiff's case before Fastow's recollection fades and any witnesses or documents known solely to Fastow may be relocated or be lost. Fastow contends that the discovery sought by Lead Plaintiff concerns the transactions not only at the core of this case, but also at the core of the government's criminal investigation, and thus discovery propounded against Fastow is unlikely to lead to relevant information because he will need to assert his Fifth Amendment privilege. That in turn would undermine his ability to defend himself at trial. He points out that an innocent person may assert the privilege against self incrimination where a witness' answers could reasonably furnish a link in the chain of evidence against him.

Second there is no reason why Fastow's memory should fade during the stay. Moreover, in *Trustees of the Plumbers & Pipefitters*, 886 F. Supp. at 1140, the court found that even though plaintiffs may have a legitimate interest in speedy resolutions of matters and avoiding possible loss of evidence during the stay, "[t]hese interests are trumped by defendants' interests in avoiding the quandary of choosing between waiving their Fifth Amendment privilege or effectively forfeiting the civil case." *See also Wehling*, 608 F.2d at 1088 ("[T]he [Supreme] Court has emphasized that a party claiming the Fifth Amendment privilege should suffer no penalty for his silence.").

Third, the Lead Plaintiff errs in arguing that witnesses and documents known only to Fastow may be relocated or be lost. With such complex transactions and so many parties involved, he conclusorily insists it is improbable that there are any witnesses known only to Fastow or that any witnesses or documents are likely to relocate. He calls Lead Plaintiff's supposition "speculation." Fastow also asserts that the only evidence that Fastow controls that is unavailable elsewhere would still not be available if he asserts his Fifth Amendment privilege. Moreover, Fastow claims that documents central to Lead Plaintiff's claims will be in the possession of the relevant business entities, not the individuals. He additionally argues that just because Arthur Andersen shredded documents does not mean others are likely to or to attempt to obstruct justice in other ways. As for the argument that discovery from Fastow will aid in identifying other culpable

parties, Fastow responds that Plaintiffs "have sued virtually
anyone who ever came in contact with Enron during the relevant
time period" and that it is difficult to believe there could be
any additional defendants to sue. Even if such a party existed,
it is unlikely that Fastow would be the only source of its
identity.

Fastow also argues that neither he nor Plaintiffs have
any idea how long the government's criminal investigation will
take. He asserts that because he is not requesting an extension
of the trial date, and because the Court can address the matter
later should a problem arise, there is no reason to wonder how the
stay would impact Plaintiffs' cases. Fastow also argues that
there is no reason to assume that a stay would lead to multiple
adjudications and objects to such speculative harm that cannot
outweigh the immediate and serious harm that Fastow would suffer
if the stay were denied. Fastow maintains that there is no sign
that any other Defendant will change position regarding assertion
of the Fifth Amendment protection in response to discovery
requests. Lead Plaintiff also provides no reason to believe that
the funds available to pay any judgment obtained will be taken by
others because of the delay that would result from a stay. Fastow
argues that there is no reason to assume that the stay requested
would result in any delay, no less one that would undermine public
confidence in the judicial system, as Lead Plaintiff asserts.
Just as important to the public, Fastow contends, is giving
Defendants a fair opportunity to exercise their constitutional due

process rights and not be prejudiced in exercising their Fifth Amendment privilege.

**COURT'S DECISION**

After examining the briefs and the applicable law, the Court finds that a stay is necessary in light of Fastow's indictment and of the clear overlap of issues in the criminal and civil cases, making the potential for self-incrimination more likely. Moreover, the stay should not be long. Although Fastow's trial date has not been set, it is likely that he will be tried this year. Should he be convicted, the right against self-incrimination usually survives only until sentencing. *Mitchell v. United States*, 526 U.S. 314, 325-26 (1999). If he is found not guilty or pleads guilty, the stay will be lifted even earlier. Furthermore, while Plaintiff's and the public's interest in proceeding expeditiously in the civil actions is substantial, much of the information to be gleaned from Fastow can be obtained through other witnesses and through corporate documents produced by such witnesses and by Enron, Arthur Andersen, and Vinson & Elkins, not to mention investigations by Congress and by the Enron bankruptcy examiner, Neal Batson. The Court sees no reason to stay proceedings against any other defendant who has not been indicted.

Accordingly, for the reasons stated above, the Court ORDERS that Fastow's motion to dismiss is DENIED. Lead Plaintiff shall amend/supplement its claims against Fastow based on the TSA. The Court further

ORDERS that Fastow's motion for leave to file  a reply (#794) is GRANTED.  Finally, the Court further

ORDERS that Fastow's motion to postpone discovery from him in *Tittle* and motion for protection are GRANTED.

**SIGNED** at Houston, Texas, this 24ᵗʰ day of March, 2003.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE