## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MASSACHUSETTS LABORERS' ANNUITY FUND, *et al.*, | § § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-3022 |
| | § | |
| ENCYSIVE PHARMACEUTICALS INC., *et al.*, | § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This is a consolidated action brought under the Securities Exchange Act of 1934 by investors who purchased publicly traded securities of Encysive Pharmaceuticals Inc. ("Encysive"). The case is now before the Court on Motions to be Appointed Lead Plaintiff filed by The Graham Group [Doc. # 14] and Oppenheim Pramerica Asset Management S.á.r.l. ("OPAM") [Doc. # 19].[1] Each of these parties seeks appointment as lead plaintiff in this case pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4.

---

[1] Fernando Dow, the Massachusetts Laborers' Pension and Annuity Fund, and the Scott Group have withdrawn their requests to be appointed lead plaintiff, leaving the Graham Group and OPAM as the only parties currently requesting appointment as lead plaintiff.

OPAM responded to the Graham Group's Motion [Doc. # 38], and the Graham Group responded to OPAM's Motion [Doc. # 42]. The Graham Group filed a reply [Doc. # 54], as did OPAM [Doc. # 55]. Following a hearing on January 18, 2007, the parties supplemented their briefing. OPAM filed a supplement to its original Motion [Doc. # 60], to which both Encysive[2] [Doc. # 61] and the Graham Group [Doc. # 62] responded. The Graham Group filed a Reply to Encysive's response [Doc. # 63], OPAM filed a "Supplemental Reply Brief" [Doc. # 64], and the Graham Group filed its own "Supplemental Reply Brief" [Doc. # 73].

Having reviewed the parties' submissions, all matters of record, and the relevant legal authorities, the Court **appoints** OPAM as lead plaintiff in this matter. The Court **appoints** Motley Rice LLC as lead counsel and Zummo & Midkiff, L.L.P. as liaison counsel.

## I.    BACKGROUND

Encysive, a pharmaceutical firm based in Houston, Texas, developed Thelin, a drug intended to treat pulmonary arterial hypertension. Encysive allegedly claimed that Thelin had reached an advanced stage in the review process at the Food and Drug Administration ("FDA"). Plaintiffs allege that expectations for the profitability of this

---

[2]    Encysive, the defendant in this matter, takes no position regarding whether OPAM or the Graham Group should be appointed lead plaintiff. *See* Statement of Defendants Regarding Lead Plaintiff Motions [Doc. # 55].

new drug caused the value of Encysive's shares to increase, allowing the company to complete two successful public offerings.

In March 2006, however, the FDA asked Encysive to provide more information and advised Encysive it might be required to conduct further studies to ensure that Thelin was safe and effective. The FDA announced that it would withhold approval of the drug pending its review of the new data. The price of Encysive's stock fell 49% on the news, dropping from $9.08 to $4.60 per share. When Encysive acknowledged in July that the FDA still had concerns, the shares' value dropped an additional 40%.

Plaintiffs allege that Encysive and its officers made misleading statements regarding Thelin's anticipated commercial value and its prospects for FDA approval, and failed to disclose adverse material facts. Plaintiffs also allege that Encysive's officers engaged in insider trading to capture profits from the company's artificially high valuation. Massachusetts Laborers' Annuity Fund and others filed suit against Encysive in the fall 2006. All of the lawsuits have been consolidated into this case.

## II.   THE PSLRA

The PSLRA requires plaintiffs in a securites fraud case to publish a notice to members of the prospective class, informing them of "the pendency of the action, the claims asserted therein, and the purported class period." 15 U.S.C. § 78u-4(a)(3)(A)(i)(I). Within 60 days of the notice, any prospective class member may file

a motion to serve as lead plaintiff for the class. *Id.* The court is then required to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." *Id.* § 78u-4(a)(3)(B)(i).

The court's selection of a lead plaintiff is guided by a rebuttable presumption that the party that responded to the initial notice, has the largest financial interest in the case, and meets the requirements of Federal Rule of Civil Procedure 23 is the "the most adequate plaintiff." *Id.* § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted with evidence that the prospective lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

The Fifth Circuit has stated that "Congress enacted the 'lead plaintiff' provisions of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B), to direct courts to appoint, as lead plaintiff, the most sophisticated investor available and willing so to serve in a putative securities class action.    Insofar as possible following the procedure prescribed by § 78u-4(a)(3)(B), the lead plaintiff should be an investor capable of understanding and controlling the litigation." *Berger v. Compaq Computer Corp.*, 279 F.3d 313 (5th Cir. 2002).

## III. ANALYSIS

### A.    Initial Presumption

Each candidate filed its Motion within the requisite time period. Therefore, in order to apply the statutory rebuttable presumption that one candidate is more fit to serve as lead plaintiff, the Court looks to the candidates' comparative losses and considers whether the candidates satisfy the typicality and adequacy requirements of Rule 23.

The Graham Group consists of a husband, his wife, and a family testamentary trust for which the husband is the trustee. It claims to be a cohesive group, able to make joint decisions based on their marital relationship. The Graham Group asserts, as does OPAM, that its claims are typical of the claims of members of the proposed Class. It represents that it is "prepared to direct the course of this Action and to fulfill their responsibilities as class representative." *See* Memorandum of Law in Support of the Motion of the Graham Group ("Graham Group Memorandum") [Doc. # 15], at 6. The Graham Group alleges a loss of $384,371.40.

OPAM is a large "fund company that launches and manages investment funds under Luxembourgian law." Memorandum of Law in Support of the Motion of OPAM ("OPAM Memorandum") [Doc. # 23], at 6. Its institutional status weighs in its favor in the Court's analysis, as "Congress has unequivocally expressed its preference for

securities fraud litigation to be directed by large institutional investors."[3]  *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997).  OPAM's fund lost over $1.67 million, approximately four times the Graham Group's losses.

The Court finds that OPAM's claims are typical because they "arise from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory."  *See Longden v. Sunderman*, 123 F.R.D. 547, 556 (N.D. Tex. 1988).  OPAM has established the "adequacy" requirement of Rule 23 by showing that it does not have a conflict with the class,[4] that it is willing and able to take an active role in the litigation and protect the class members' interests, and that it has chosen qualified, experienced counsel.  *See, e.g., Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001).

In its Response, the Graham Group contends that OPAM has not actually incurred any losses because it is a fund manager, not an investor in its own right.  In *In re Molson Coors Brewing Co. Securities Litigation*, 233 F.R.D. 147 (D. Del. 2005),

---

[3]     The Graham Group argues that Congress's preference is for pension funds, not mutual funds, but cites no authority prohibiting mutual funds from serving as lead plaintiff.

[4]     The Graham Group argued that OPAM has a potential conflict of interest based on its fiduciary duties to its own investors.  When the Graham Group initially presented this argument, some of OPAM's investors still owned Encysive shares.  Because that is no longer the case, this argument has become moot.  Additionally, contrary to the Graham Group's suspicions, the Court finds nothing nefarious in OPAM's decision to sell the remaining Encysive shares.

the Delaware district court agreed to attribute a fund's losses to the fund manager where the manager presented evidence through an affidavit that it was an "attorney in fact for the investors in the identified funds, has authority to make decisions and act on their behalf, and is able to recover moneys for them." *Id.* at 152. In this case, OPAM has presented the joint affidavit of Max von Frantzius and Andreas Jockel, OPAM's chief legal counsel and managing director, respectively, attesting that "OPAM controls and manages and is attorney-in-fact for the fund." OPAM Memorandum, Exhibit A, ¶ 2. It is OPAM, not the individuals investing in the various funds managed by OPAM, who makes investment decisions on behalf of those individual investors. The Court agrees with the Delaware Court that this sworn evidence is sufficient to attribute the fund's losses to OPAM for purposes of this securities fraud litigation. Given the magnitude of those losses, OPAM is entitled to the statutory presumption that it is the most appropriate lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### B.    Rebuttal Evidence

The PSLRA allows contenders for the role of lead plaintiff to rebut the statutory presumption by submitting proof that the party benefitting from the presumption is subject to unique defenses not applicable to the overall class or that it "will not fairly and adequately protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). The Graham Group presents several arguments in an attempt to rebut the statutory

presumption in OPAM's favor. For the reasons discussed below, the Court finds none of the arguments persuasive.

The Graham Group challenges OPAM's standing to bring this lawsuit because it is merely a fund manager with an investment advisor, Medical Strategy GmbH ("Medical Strategy"). The evidence does not support the Graham Group's argument. OPAM has submitted sworn testimony from its corporate officers which satisfies the Court that OPAM is authorized to undertake this litigation on behalf of the fund.[5] OPAM has also shown that it makes the investment decisions for its funds and that its investment advisor is simply that – an independent advisor whose suggestions OPAM can accept or reject. Based on the current record, OPAM appears to have standing to pursue this securities fraud litigation.

The Graham Group also asserts that OPAM cannot adequately represent the interests of the class because it is jointly owned by Sal Oppenheim International, S.A. and Pramerica International, a trade name of Prudential. According to the Graham Group, Prudential was an underwriter for Encysive's public offerings at issue in this suit. The Graham Group argues that Prudential will be "an important fact witness" in this case, and alleges that Prudential may have "contributed in some actionable form

---

[5]     A similar affidavit was found to be sufficient in *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 255 (S.D.N.Y. 2003).

to the misinformation in the market concerning Encysive and its prospects." *See* Graham Group Response [Doc. # 42], at 9. The Graham Group, however, fails to present sufficient evidence to support its argument and thereby rebut the presumption in OPAM's favor. In OPAM's supplementary declaration, Von Frantzius and OPAM senior associate Johann Will state that OPAM has "never discussed its purchase of Encysive stock with Prudential" and that Prudential "has not underwritten any stock for Encysive since 2000." *See* Von Frantzius/Will Declaration, Exh. B to OPAM's Reply Memorandum [Doc. # 54], ¶ 5. According to OPAM, Encysive conducted several public offerings after 2000, none of which were underwritten by Prudential. Consequently, Prudential's role in Encysive's public offerings predates by six years the drop in share prices on which this suit is predicated, and is not a barrier to OPAM's appointment as lead plaintiff.

The Graham Group also contends that OPAM's complex corporate structure and foreign ownership preclude its service as lead plaintiff. The argument is unpersuasive. Courts have appointed foreign corporations as lead plaintiff in similar securities litigation. *See, e.g., In re Molson*, 233 F.R.D. at 151-52. OPAM has clearly indicated its willingness, if appointed lead plaintiff, to send its representatives to the United States to carry out its fiduciary duty to the class. As discussed above, large institutional

investors—which routinely have complex corporate structures—are preferred as lead plaintiffs. *See Gluck*, 976 F. Supp. at 548.

The Graham Group also argues that OPAM, as a foreign entity, may not be bound by *res judicata* in this case. Accordingly, it contends, OPAM would have a reduced incentive to represent the class, because it could later pursue a second round of litigation in a European court. OPAM has, however, affirmed that it and its funds will be bound by any judgment or other order in this case. In reaching its decision to appoint OPAM as lead plaintiff, the Court relies on OPAM's assertion in this regard, and OPAM will not be allowed to take a different position in the future.

The Graham Group challenges OPAM's ability to serve as lead plaintiff by questioning OPAM's liability for potential sanctions and costs. As an initial matter, the Court anticipates that all parties and their counsel will prosecute and defend this case in a professional manner and that, as a result, sanctions will not become an issue. Moreover, OPAM has affirmatively committed to pay any sanctions or costs which may be imposed and the Court will, if necessary, hold OPAM to its commitment.

The Graham Group argues also that OPAM made "off-market" trades that will prevent it from relying on the "fraud on the market" argument on the reliance issue.[6]

---

[6]    Contrary to the Graham Group's contention in its "Supplemental Reply Brief," OPAM has presented clear sworn testimony that all shares of Encysive stock were purchased on the NASDAQ stock exchange. *See* Von Frantzius/Will Declaration, ¶ 6.

In support of this argument, the Graham Group points to trades that are not within the high and low NASDAQ prices for the day indicated. OPAM has shown, however, that the dates listed for its trades are the settlement dates, not the transaction dates as assumed by the Graham Group. As a result, the factual basis for the Graham Group's argument has been refuted.

The Graham Group argues that OPAM will also face a unique challenge to its reliance on the "fraud on the market" argument because the fund's annual report included a statement that its investment strategy was to take advantage of market inefficiency. The Graham Group's reliance on this statement, which is taken out of context, is unpersuasive. The statement is within a section of the 2004 Annual Report [Exh. C to Doc. # 64] describing the large institutional investors' focus on companies with a high market capitalization, leaving companies with smaller capitalization "out of the picture." OPAM describes the result of this lack of institutional investors' research as "an inefficient market for these second-line stocks." OPAM then states that Medical Strategy, its investment advisor, can "exploit this market inefficiency" by conducting its own "carefully targeted analysis" of these "as yet unknown companies." Neither OPAM nor Medical Strategy indicate in the 2004 Annual Report that Encysive is considered an "as yet unknown" company that has been "out of the picture." Indeed, the evidence in the record is to the contrary. Moreover, Medical Strategy has, through

its declaration, stated under oath that it "relied on the integrity of the market for Encysive shares in making its investment recommendation to OPAM . . .." *See* Declaration of Medical Strategy (signed by Michael Fischer, its Chief Executive Officer), Exh. A to Supplemental Reply Brief [Doc. # 64], ¶ 6. The comments in the 2004 Annual Report, when read in context and in light of the record as a whole, do not raise a unique defense against OPAM.

The Graham Group contends that OPAM is a "professional plaintiff," and that Congress's intent in crafting the PSLRA was to prevent investors from taking lead roles in multiple securities cases. The PSLRA specifically prohibits any party from being a lead plaintiff in more than five securities class actions during a three-year period. *See* 15 U.S.C. § 78u-4(a)(3)(B)(vi). Although OPAM has *sought* to become a lead plaintiff in five different securities class actions in 2006, the Graham Group concedes that OPAM has been appointed as a lead plaintiff only once.

## III.   **CONCLUSION AND ORDER**

OPAM has demonstrated that its losses were significantly greater than any other investor in the proposed class, and more than three times larger than the Graham Group's losses. It satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure. Consequently, OPAM is presumed to be the better

candidate for lead plaintiff.  The Graham Group has not refuted this presumption in

OPAM's favor.  Accordingly, it is

ORDERED that Oppenheim Pramerica Asset Management S.á.r.l.'s Motion for

Appointment as Lead Plaintiff and Approval of Its Selection of Counsel  [Doc. # 19]

is **GRANTED**.  OPAM is hereby **APPOINTED** lead plaintiff.  The law firm of

Motley Rice LLC is **APPOINTED** lead counsel, and Zummo & Midkiff, L.L.P. is

**APPOINTED** liaison counsel.  It is further

ORDERED that the Graham Group's Motion to be Appointed Lead Plaintiff

[Doc. # 14] is **DENIED**.

The Clerk of Court is directed to change the style of this case to reflect that

"Oppenheim Pramerica Asset Management S.á.r.l., on behalf of itself and others

similarly situated" is the lead plaintiff in this case.

**SIGNED** at Houston, Texas, this **20th** day of **March, 2007**.

Nancy F. Atlas
United States District Judge





**1**

**2**

**3**

**4**  THIS CONSTITUTES NOTICE OF ENTRY

**5**  AS REQUIRED BY FRCP, RULE 77(d).

**6**

**7**

           UNITED STATES DISTRICT COURT

**8**

          CENTRAL DISTRICT OF CALIFORNIA

**9**

| **10** | In re DREAMWORKS ANIMATION SKG, | ) | Master File No. CV 05-03966 |
|---|---|---|---|
| | INC., SECURITIES LITIGATION | ) | MRP (VBKx) |
| **11** | | ) | |
| | This Document Relates To: | ) | (Consolidated Cases) |
| **12** | All Actions | ) | |
| | | ) | **ORDER APPOINTING NEXTRA** |
| **13** | | ) | **INVESTMENT MANAGEMENT S.G.R.** |
| | | ) | **S.p.A. AS LEAD PLAINTIFF AND** |
| **14** | | ) | **APPOINTING LEAD COUNSEL** |
| **15** | | ) | |
| | | ) | |
| **16** | | ) | |
| | | ) | |
| **17** | | ) | |
| | | ) | |

**18**

**19**

**20**      Putative class member Nextra Investment Management S.G.R. S.p.A.

**21** ("Nextra"), on behalf of NIS International Equities Fund, the Nextra

**22** Blue Chips Internazionali Fund, the Nextra Bilanciato Internazionale

**23** Fund, the Nextra Equilibrio Fund, and the Nextra Azioni Internazionali

**24** Fund, has moved, pursuant to Section 27(a)(3) of the Securities Act of

**25** 1933 and Section 21D(a)(3) of the Securities Exchange Act of 1934, for

**26** (1) appointment as Lead Plaintiff for the class of plaintiffs in this

**27** case (the "Class"), (2) the approval of Schiffrin & Barroway, LLP as

**28** Lead Counsel for Lead Plaintiff and the Class, and (3) the approval of

Lim, Ruger & Kim, LLP as Liaison Counsel for Lead Plaintiff and the

1  Class.

2       The Court has read and considered the following documents: (1) the

3  Notice of Motion and Motion to Appoint Nextra as Lead Plaintiff Pursuant

4  to Section 27(a)(3)(B) of the Securities Act of 1933 and Section

5  21D(a)(3)(B) of the Securities Exchange Act of 1934 and to Approve Lead

6  Plaintiff's Choice of Counsel, filed by Nextra on August 9, 2005 (the

7  "Motion"); (2) the Memorandum in Opposition to Nextra Investment

8  Management S.G.R. S.P.A.'s Motion to be Appointed Lead Plaintiff and for

9  Approval of its Choice of Counsel, filed by plaintiffs Edward Forstein,

10 Joe Karim, Pamela Kasza and the Carpenters Pension Fund of Baltimore

11 (collectively, the "Dreamworks Group") on September 12, 2005; (3) the

12 Memorandum of Law in Further Support of Nextra Investment Management

13 S.G.R. S.p.A.'s Motion for Appointment as Lead Plaintiff and for

14 Approval of Lead Counsel and Opposition to all Competing Motions Seeking

15 Appointment of Lead Plaintiff, filed by Nextra on September 12, 2005;

16 (4) the Reply Memorandum of Law in Further Support of Nextra Investment

17 Management S.G.R. S.p.A.'s Motion for Appointment as Lead Plaintiff and

18 Approval of Selection of Lead Counsel, filed by Nextra on September 19,

19 2005; (5) the Reply Memorandum in Further Support of the Dreamworks

20 Group's Joint Stipulation for Appointment as Lead Plaintiff and for

21 Approval of its Choice of Counsel, filed by the Dreamworks Group on

22 September 19, 2005; (6) Nextra Investment Management S.G.R. S.p.A.'s

23 Submission Pursuant to this Court's October 19, 2005 Order, filed by

24 Nextra on November 2, 2005; and (7) all Declarations and Memoranda of

25 Points and Authority relating to the Motion.  In addition, the Court

26 heard oral argument on the Motion on September 26, 2005.

27       Accordingly, **IT IS HEREBY ORDERED** as follows:

28

2

1. Nextra, having the largest financial interest in this litigation and otherwise satisfying the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure, is the most adequate plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and Section 27(a)(3)(B)(iii)(I) of the Securities Act, and no other movant has offered the proof necessary pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) and Section 27(a)(3)(B)(iii)(II) of the Securities Act to rebut the statutory presumption in favor of Nextra. Therefore, Nextra is hereby appointed Lead Plaintiff for the Class in this action and any subsequently consolidated or related actions.

2. Pursuant to 15 U.S.C. § 77z-1(a)(3)(B)(v), 15 U.S.C. § 78u-4(a)(3)(B)(v) and Section 27(a)(3)(B)(v) of the Securities Act, Lead Plaintiff's selection of lead counsel and liaison counsel is hereby approved. The law firm of Schiffrin & Barroway, LLP is appointed as Lead Counsel and the law firm of Lim, Ruger & Kim, LLP is appointed as Liaison Counsel.

3. Lead Counsel shall have the authority to speak for all plaintiffs and Class members in all matters regarding the litigation including, but not limited to, pre-trial proceedings, motion practice, discovery, and trial and settlement, and shall make all work assignments in such a manner as to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort. In connection with the foregoing, Lead Counsel shall have the following responsibilities:

a. to brief and argue motions;

3

1        b. to initiate and conduct discovery, including, without

2 limitation, coordination of discovery with defendants' counsel, the

3 preparation of written interrogatories, requests for admissions, and

4 requests for production of documents;

5        c. to direct and coordinate the examination of witnesses in

6 depositions;

7        d. to act as spokesperson at pretrial conferences;

8        e. to call and chair meetings of plaintiffs' counsel as

9 appropriate or necessary from time to time;

10        f. to initiate and conduct any settlement negotiations with

11 defendants' counsel;

12        g. to provide general coordination of the activities of

13 plaintiffs' counsel and to delegate work responsibilities to selected

14 counsel as may be required in such a manner as to lead to the orderly

15 and efficient prosecution of this litigation and to avoid duplication or

16 unproductive effort;

17        h. to consult with and employ experts;

18        i. to receive and review periodic time reports of all

19 attorneys on behalf of all plaintiffs to determine if the time is being

20 spent appropriately and for the benefit of plaintiffs; and

21        j. to perform such other duties as may be expressly authorized

22 by further order of this Court.

23

24        4. Lead Counsel shall be responsible for coordinating all

25 activities and appearances on behalf of the Class and for disseminating

26 notices and orders of this Court.

27

28        5. No motion, application or request for discovery shall be

1  served or filed, or other pre-trial proceedings initiated, on behalf of

2  Lead Plaintiff, except through Lead Counsel.

3

4       6.   All   notices,   proposed   orders,   pleadings,   motions,

5  discovery, and memoranda requiring a response in less than 30 days shall

6  be served upon Lead Counsel and defense counsel in electronic format and

7  emailed the day of filing with exhibits to follow by overnight mail

8  service, telecopy, or hand delivery.  All other service shall take place

9  by regular mail.

10

11      7. In accordance with the Court's personal procedures, counsel

12  shall submit two (2) courtesy copies of all filings to Chambers.

13

14      8. Defendants' counsel may rely upon all agreements made with

15  Lead   Counsel,   or   other   duly   authorized   representatives   of   Lead

16  Plaintiff.

17

18      9. This Order shall apply to each case subsequently filed in

19  this Court or transferred to this Court, unless a party objecting to the

20  consolidation of such case or to any other provision of this Order files

21  within ten (10) days after the date upon which a copy of this Order is

22  mailed to counsel for such party, an application for relief from this

23  Order or any provision herein and this Court grants such application.

24

25      **IT IS SO ORDERED.**

26      DATED: *November 7, 2005*        *Mariana R. Pfaelzer*

27                                      Honorable Mariana R. Pfaelzer

28                                      United States District Judge

MEMO ENDORSED

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re GENERAL MOTORS CORP. SECURITIES LITIGATION | Master File No. 05-CV-8088 (RMB)<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS |

RMB

~~[PROPOSED]~~ **ORDER APPOINTING LEAD PLAINTIFF AND APPROVING LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL** *

Upon consideration of the motions and supporting papers *and letter briefs* for appointment of Lead

Plaintiff and approval of Lead Plaintiff's selection of Lead Counsel in the above-captioned

action and for good cause shown,

**IT IS HEREBY ORDERED THAT:**

1.   The Motion of Deka Investment GmbH and Deka International S.A., Luxembourg

("Deka") is **GRANTED**;

2.   Deka is hereby **APPOINTED** serve as Lead Plaintiff.

3.   The law firm of Murray, Frank & Sailer LLP is hereby **APPOINTED** to serve as

Lead Counsel.

**SO ORDERED**

DATED:   **2/6**         , 2006
        **2:20 P.M.**

_____
*RMB*
United States District Judge

_____

* No further briefing would be necessary, appropriate or helpful

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TOBY OLSEN, individually and on behalf of
all others similarly situated,

                Plaintiff,

      -against-

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, and MICHAEL P.
PUORRO,

                Defendants.

**MEMORANDUM OF DECISION
AND ORDER**

04-CV-4165 (DRH)(JO)

---

MORDEKAI SHAPIRO, individually and on
behalf of all others similarly situated,

                Plaintiff,

      -against-

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, and MICHAEL P.
PUORRO,

                Defendants.

04-CV-4282 (DRH)(JO)

---

ZACHARY ALAN STARR, on behalf of himself
and all others similarly situated,

                Plaintiff,

      -against-

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, and MICHAEL P.
PUORRO,

                Defendants.

04-CV-4375 (DRH)(JO)

---

JOSEPH R. RUSSO, individually and on
behalf of all others similarly situated,

              Plaintiff,

    -against-                     04-CV-4464 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, and MICHAEL P.
PUORRO,

              Defendants.

---

ELI BOTKNECHT, individually and on
behalf of all others similarly situated,

              Plaintiff,

    -against-                     04-CV-4490 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, JOSEPH L. MANCINO,
MICHAEL MANZULLI, MICHAEL P. PUORRO,
and ROBERT WANN

              Defendants.

---

RAMIN SARRAF, individually and on
behalf of all others similarly situated,

              Plaintiff,

    -against-                     04-CV-4577 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, JOSEPH L. MANCINO,
MICHAEL MANZULLI, MICHAEL P. PUORRO,
and ROBERT WANN,

              Defendants.

---

HARLIN BROWN, on behalf of himself
and all others similarly situated,

                    Plaintiff,

        -against-                       04-CV-4845 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.
JOSEPH R. FICALORA, and MICHAEL P.
PUORRO,

                    Defendants.

PETER BRANDEL, individually and on
behalf of all others similarly situated,

                    Plaintiff,

        -against-                       04-CV-5047 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, JOSEPH L. MANCINO,
MICHAEL MANZULLI, MICHAEL P. PUORRO,
and ROBERT WANN,

                    Defendants.

ROBERT LOWINGER, on behalf of himself and
all others similarly situated,

                    Plaintiff,

        -against-                       04-CV-5065 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, ROBERT WANN,
MICHAEL F. MANZULLI, DONALD M. BLAKE,
ANTHONY E. BURKE, DOMINICK CIAMPA,
ROBERT S. FARRELL, WILLIAM C.
FREDERICK, MAX L. KUPFERBERG,
HOWARD C. MILLER, JAMES J. DONOVAN,
and JOHN A. PILESKI,

                    Defendants.

RICHARD A. STRAUSS, individually and on
behalf of all others similarly situated,

Plaintiff,

-against-                                  04-CV-5101 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, and MICHAEL P. PUORRO,

Defendants.

AL-TAWIL and ESTATE OF FARAH MAHLAB,

Plaintiffs,

-against-                                  04-CV-5128 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, ROBERT WANN,
MICHAEL F. MANZULLI, DONALD M. BLAKE,
ANTHONY E. BURKE, DOMINICK CIAMPA,
ROBERT S. FARRELL, WILLIAM C.
FREDERICK, MAX L. KUPFERBERG,
HOWARD C. MILLER, JAMES J. DONOVAN,
and JOHN A. PILESKI,

Defendants.

**HURLEY, District Judge:**

Presently before the Court are the motions by: (1) Metzler Investment GmbH, for

account of its funds MI-Fonds 208 and MI-Fonds 705 ("Metzler Investment") and Bernard

Drucker (collectively, the "NYCB Group"); (2) Carlos J. Burbano, Anna C. Burbano, Henry E.

Dubuy, Anthony J. Izzo, Hans Kalb, Dong K. Lee, Joseph Tobin, and Anthony Whitehead

(collectively, the "Lee Group"); (3) Dr. Max Schnapp ("Dr. Schnapp"); (4) James T. Stevens and

4

John W. Feil (collectively, the "Stevens Group"); (5) Vera Dalia, PhD, Anthony Curcio, and

Genevieve DeCarlo (collectively, the "Dalia Group"); and (6) Philip A. Stewart, Joyce Stewart,

and International Brotherhood of Electrical Workers Local 98 (the "Stewart Group") for an

Order consolidating the above-referenced actions,[1] appointing lead plaintiff, and approving the

selection of lead counsel. For the reasons stated below, the motion of the NYCB Group is

granted in its entirety and the remaining motions are granted in part and denied in part.

## BACKGROUND

The above-captioned actions were commenced as purported securities class

actions on behalf of investors who purchased or acquired stock of New York Community

Bancorp, Inc. ("NYCB") between June 27, 2003 and May 9, 2004 (the "Class Period"). The

actions seek to recover damages suffered by members of the class as a result of Defendants'

alleged violations of federal securities law. (Compl. ¶ 1.)[2] Specifically, the Complaint alleges

that on the first day of the class period, NYCB announced that it had signed a definitive

agreement with Roslyn Bancorp, Inc. ("Roslyn"), valued at $1.579 billion, whereby Roslyn

would merge into NYCB and Roslyn shareholders would receive 0.75 shares of NYCB stock in

exchange for each share of Roslyn stock. (Id. ¶ 24.) The Complaint further alleges that in

connection with the merger, Defendants failed to disclose and misrepresented material adverse

---

[1] At the time of the filing of the parties' motions, there were eight related cases pending
before the Court. Since that time, three additional related cases have been filed, to wit, *Lowinger
v. New York Community Bancorp, Inc.*, 04 CV 5065, *Strauss v. New York Community Bancorp,
Inc.*, 04 CV 5101, and *Tawil v. New York Community Bancorp, Inc.*, 04 CV 5128. These three
related cases will be considered in the Court's decision.

[2] All citations to Complaint refer to the Complaint filed in *Olsen v. New York
Community Bancorp, Inc.*, 04 CV 4165, the first action filed in this Court.

facts, which were known to Defendants or recklessly disregarded by them, which caused NYCB's stock to be artificially inflated. (*See id.* ¶¶ 25-57.)

Ihe first action, *Olsen v. New York Community Bancorp, Inc.*, 04 CV 4165, was filed on September 24, 2004. That same day, plaintiffs' counsel published notice of the pendency of the action over the *PR News Wire*. The notice advised members of the proposed class of their right to move before this Court to serve as lead plaintiff(s) on or before November 23, 2004. (*See, e.g.*, Decl. of Aaron Brody, dated Nov. 23, 2004, Ex. A.)

Presently pending in the Eastern District of New York are eleven separate related securities fraud class actions. Plaintiffs in six of these actions have filed motions to consolidate and for appointment as lead plaintiff. Defendants take no position with regard to the respective motions.

## DISCUSSION

### 1.　*The Motions to Consolidate are Granted*

Pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), the Court must decide any motion to consolidate prior to deciding a motion for appointment of lead plaintiff in a proposed securities class action. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). Rule 42 of the Federal Rules of Civil Procedure provides that "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; [and] it may order all the actions consolidated." Fed. R. Civ. P. 42(a).

Here, the factual allegations in each of the above-referenced actions are virtually identical and, as a result, the same discovery will be relevant to all of the actions. Several of the

6

actions, however, have alleged slightly different class periods and name different individual defendants. Moreover, some of the actions assert claims by former Roslyn shareholders pursuant to the Securities Act of 1933 (the "Securities Act"), some assert claims by persons who purchased NYCB stock on the open market pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), and some assert claims pursuant to both statutes. None of these minor differences, however, which can be resolved when the appointed lead plaintiff files a consolidated complaint, detracts from the overwhelming factual and legal similarities among the cases. *See, e.g., Dolan v. Axis Capital Holdings Ltd.*, Nos. 04 Civ. 8564, 04 Civ. 8810, 2005 WL 883008, at * 2 (S.D.N.Y. Apr. 13, 2005) (consolidating cases where one case asserted claims against additional defendant and claims "overlapp[ed]"); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 292-93 (E.D.N.Y. 1998) (consolidating cases alleging different class periods and slightly different facts; "the facts and legal issues need not be identical to warrant consolidation"), *opinion adhered to on reconsideration*, 181 F.R.D. 218 (E.D.N.Y. 1998). Moreover, it is apparent that no party will suffer prejudice from consolidation, a fact confirmed by the complete absence of any opposition thereto. Finally, it is equally apparent that consolidation would significantly enhance judicial economy. There is, in short, nothing to be gained by requiring this matter to proceed as eleven separate cases. Accordingly, the actions involve "common issues of law and fact" and are hereby consolidated pursuant to Rule 42(a).

**II.     *Motions for Appointment of Lead Plaintiff***

    **A.     *Procedure under the PSLRA***

        The PSLRA sets forth the procedure governing the appointment of a lead plaintiff in securities class actions. As an initial matter, the plaintiff who files the first action must

publish notice to the class within twenty (20) days of filing the action, informing class members

of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(I).

Here, notice of the first action was published on September 24, 2004.

       Next, the PSLRA provides that within ninety (90) days after publication of notice,

the Court shall consider any motion made by a purported class member and shall appoint as lead

plaintiff the "member or members of the purported plaintiff class that the court determines to be

most capable of adequately representing the interests of class members." *Id.* § 78u-4(a)(3)(B).

There is a rebuttable presumption that the "most adequate plaintiff" is

> the person or group of persons that –
>
>     (aa) has either filed the complaint or made a motion in response to
> [the statutorily mandated] notice . . . ;
> (bb) *in the determination of the court,* has the largest financial
> interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal
> Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I). This presumption "may be rebutted only upon proof by a member of

the purported plaintiff class that the presumptively most adequate plaintiff-(aa) will not fairly

and adequately protect the interests of the class; or (bb) is subject to unique defenses that render

such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

    **B.**    *Application to the Present Cases*

       Plaintiffs in six of the above-referenced cases filed competing motions for

appointment as lead plaintiff. Upon review of the competing motions, the Stevens Group

subsequently withdrew its application. The Dalia and Stewart Groups failed to file any

opposition papers in response to the other applicants' motions and, thus, have presumably

withdrawn their applications as well.[3] Thus, the only three groups under consideration are the NYCB Group, the Lee Group, and Dr. Schnapp.

All three groups have satisfied the first criterion necessary for a finding that it is the most adequate plaintiff in that each has timely filed a motion in response to the notice of the first filed action. *Id.* § 78u-4(a)(3)(B)(iii)(I)(aa). The Court must then determine which group holds the largest financial interest in the relief sought. *Id.* § 78u-4(a)(3)(B)(iii)(I)(bb).

All three groups have submitted affidavits along with their papers in support of their respective claims of financial losses. The NYCB Group purchased or otherwise acquired 106,000 shares of NYCB stock, incurring an estimated loss of $905,647.65. (*See* Decl. of Peter E. Seidman, dated Nov. 23, 2004, Exs. C and D.) The Lee Group purchased 57,116 shares of NYCB stock during the class period and suffered estimated losses of $451,547. (*See* Decl. of Aaron L. Brody, dated Nov. 23, 2004, Exs. B and C.) Finally, Dr. Schnapp acquired 59,432 shares of NYCB through the merger of NYCB and Roslyn and 780 shares through dividend reinvestment for a total estimated loss of $605,520.[4] (*See* Decl. of William Berbarduci, dated Nov. 23, 2004, Ex. B; Dr. Schnapp Reply Mem. at 2 n.3.) Thus, at first glance, the NYCB Group appears to have sustained the largest financial loss. Both Dr. Schnapp and the Lee Group advance several arguments, however, as to why the NYCB Group should be disqualified from

---

[3] The Dalia Group claimed a financial loss of $357,715.40 and the Stewart Group estimated its loss at $450,971.13. As will be discussed *infra*, because the Court finds that the NYCB Group, with an estimated loss of $905,647.65, has the largest financial interest in the relief sought, and satisfies the other requirements under the PSLRA, the Court finds that the NYCB Group is the most adequate plaintiff.

[4] Dr. Schnapp initially asserted a loss of $365,129, but later changed his loss based upon a revised calculation to allegedly reflect the methods used by the other movants. (Dr. Schnapp Mem. in Further Supp. at 1 n.1.)

lead plaintiff contention. The Court will address each one in turn.

### I.    *The Validity of the NYCB Group*

Dr. Schnapp argues that the NYCB Group used an improper calculation in arriving at its estimated loss. Dr. Schnapp's argument, however, is based on his assertion that the NYCB Group is improperly comprised of two movants and that viewing each movant's loss separately, Dr. Schnapp's loss is greater than each individual movant. At this juncture, the Court need not resolve whether the approach used by the NYCB Group in estimating its financial loss is appropriate because as discussed below, the Court finds that the NYCB Group's inclusion of two distinct members is proper. Thus, under either method for calculating loss, the NYCB's loss, taken in the aggregate, is substantially greater than that of Dr. Schnapp.[5]

Dr. Schnapp argues that the NYCB Group is "nothing more than an amalgamation of unaffiliated and unrelated class members thrown together to try to artificially create the movant with the 'largest financial interest.'" (Dr. Schnapp Reply Mem. at 5.) The NYCB Group is comprised of an institutional movant, to wit, Metzler Investment, and an individual movant, to wit, Bernard Drucker.

The PSLRA states that the court "must appoint as lead plaintiff the *member or members* of the purported plaintiff class that the court determines to be most capable of

———————————

[5]    The NYCB Group asserts its financial loss as totaling $905,647.65, based upon the "mean trading price" of its stock during the 90-day period beginning on the date on which the information correcting the misstatement or omission was disseminated to the market. 15 U.S.C. § 78u-4(e)(1). Dr. Schnapp contends that the NYCB Group erroneously performed this calculation based upon 90 *calendar* days, as opposed to 90 *trading* days, the latter of which excludes weekends and legal holidays. Thus, under Dr. Schnapp's method, the NYCB Group's loss, viewed in the aggregate, would actually be higher, at $1,010,580. (*See* Dr. Schnapp's Mem. in Further Supp. at 4.)

adequately representing the interests of class members," 15 U.S.C. § 78u-4(a)(3)(B) (emphasis added), but does not specify whether the members must be related in some fashion in order to qualify as an appropriate lead plaintiff group. As recently articulated by Judge Scheindlin:

> Courts are divided on the issue. Two cases in the Southern District of New York forcefully assert that unrelated investors may not band together for the purpose of achieving lead plaintiff status, reasoning that investors with no prior relationship will not be as effective at controlling class counsel as would a single institutional entity. Other cases, comprising the majority view, hold that unrelated investors may aggregate under certain circumstances. One court even goes so far as to argue that "a greater number of plaintiffs allows them, as a group, to wield more control over counsel." For the most part, in the absence of explicit limits the lead plaintiff decision must be made on a case-by-case basis, taking account of the unique circumstances of each case. Generally, a lead plaintiff group should be held to a reasonable number, so that the group does not become too unwieldy. This logic eschews a hard-and-fast rule, instead adopting a rule of reason along with the general presumption that unrelated groups with more than five members are too large to work effectively.

*In re eSpeed, Inc. Sec. Litig.*, No. 05 Civ 2091, 2005 WL 1653933, at *2 (S.D.N.Y. July 13, 2005) (citations omitted).

Many courts have interpreted the PSLRA to favor institutional investors serving as lead plaintiff. *See id.* ("An institutional investor with substantial losses functioning as lead plaintiff is less likely to cause a flurry of otherwise pointless activity in the form of disputes within the lead plaintiff group.") (citation and internal quotation marks omitted) (collecting cases); *Dolan*, 2005 WL 883008, at *3 (stating that PSLRA was designed to encourage institutional investors which have "significant holdings in issuers [and] whose interest are more strongly aligned with the class of shareholders"). Here, given the PSLRA's preference for institutional investors, and given that the NYCB Group consists of a manageable number of

11