members, the Court finds that the two member NYCB Group is a valid group under the PSLRA. *See In re Star Gas Sec. Litig.*, No. 04 Civ. 1766, 2005 WL 818617, at *5 (D. Conn. Apr. 8, 2005) ("The majority of courts considering the issue have taken an intermediate position, allowing a group of unrelated investors to serve as lead plaintiffs when it would be most beneficial to the class under the circumstances of a given case."); *Pirelli Armstrong Tire Corp. v. LaBranche & Co.*, No. 03 Civ. 8264, 2004 WL 1179311, at *22 (S.D.N.Y. May 27, 2004) (noting that a co-lead plaintiff structure will help to ensure that adequate resources and experience are available to the prospective class in the prosecution of the class action); *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, No. 00 Civ. 152, 2000 WL 486956, at *3 (D. N.J. Apr. 24, 2000) (appointing three separate movants as co-lead plaintiffs and anticipating that each party would bring a unique perspective to the litigation); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 45-46 (S.D.N.Y. 1998) (naming group of three unrelated individual investors as co-lead plaintiff with an institutional investor). Thus, viewing the NYCB Group's loss in the aggregate, it has the largest financial interest.

### 2.  The NYCB Group has Standing to Sue

Dr. Schnapp and the Lee Group contend that Metzler Investment, the institutional member of the NYCB Group, lacks standing to assert violations of the Exchange Act because it is merely an investment manager which did not purchase any NYCB stock for its own account but rather managed the investments of its clients' assets. "Generally, a client's grant of authority to an investment manager to purchase stock on his or her behalf does not also confer authority to commence suit on his or her behalf." *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 255 (S.D.N.Y. 2003) (citing *Smith v. Suprema Specialties*, 206 F. Supp. 2d 627,

634-35 (D. N.J. 2002)). "However, when the investment advisor is also the attorney-in-fact for its clients with unrestricted decision making authority, the investment advisor is considered the 'purchaser' under the federal securities laws with standing to sue in its own name." *Id.; see also In re eSpeed, Inc. Sec. Litig.*, 2005 WL 1653933, at *] ("In order for an investment advisor to attain standing on behalf of investors[,] the transactions in question must have been executed as if by a single person. Moreover, the advisor must be the attorney in fact for his clients, and he must be granted both unrestricted decision-making authority and the specific right to recover on behalf of his clients.") (citations omitted).

Here, Metzler Investment has proffered the signed declaration of Marlies Pauly, an authorized signatory of Metzler Investment, stating that Metzler Investment is a fund management company that controls, manages, and is attorney-in-fact for each of its funds. (Third Decl. of Peter E. Seidman, dated Dec. 15, 2004, Ex. B. ¶ 2.) The declaration further avers that:

> Metzler [Investment] is also contractually authorized to undertake and act on behalf of these funds in any legal action on their behalf, including serving as lead plaintiff in this action. These funds' respective shareholders have each entered into a contract with Metzler [Investment] explicitly authorizing Metzler [Investment] to control all investments and to commence litigation on behalf of the funds. Accordingly, Metzler [Investment] has full and complete authority and discretion to purchase and sell securities for each of these funds, and to institute legal action on their behalf, including serving as lead plaintiff in this action.

(*Id.* ¶ 4.) Metzler Investment also submits a portion of the contracts it entered into with each of the shareholders of the funds, which provides that Metzler Investment "is authorized to purchase assets with the money invested by the shareholders, to sell those assets and to otherwise invest the proceeds; it is further authorized to take all legal actions that arise from the management of

the assets." (*Id.* Ex. D and attachments thereto.) Based on this proffer, the Court finds that

Metzler Investment has demonstrated that it has complete investment authority over its trades

and is agent and attorney-in-fact with full power and authority to act in connection with its

investments. Thus, the Court finds that Metzler Investment does have standing to prosecute its

Exchange Act claims asserted here.

### 3.     *Applying the Requirements of Rule 23*

Having established that the NYCB Group has the greatest financial loss, and is

not otherwise disqualified from serving as lead plaintiff, the next question is whether the NYCB

Group "otherwise meets the requirements of Rule 23(a)." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

Rule 23(a) sets forth four prerequisites to be considered in evaluating the propriety of class

certification, to wit, numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a).

Only the typicality and adequacy criterions are relevant to the selection of lead plaintiff. *See*

*Dolan*, 2005 WL 883008, at *4; *In re eSpeed, Inc. Sec. Litig.*, 2005 WL 1653933, at *5.

Typicality is satisfied where the claims arise from the same course of events and

each class member makes similar legal arguments to prove the defendant's liability. *See, e.g.,*

*Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001). The NYCB

Group easily meets this requirement because the NYCB Group, like the other purported class

members in this action, alleges that it purchased or otherwise acquired NYCB stock during the

class period and was injured by false and misleading representations made by defendants in

violation of both the Exchange Act *and* the Securities Act. Because the NYCB Group consists

of both a movant who acquired his shares of NYCB stock through NYCB's merger with Roslyn

*and* a movant who acquired its shares through the open market, all available legal theories are

14

represented. Although the Stevens Group suggests that the Court appoint two separate lead plaintiffs with separate counsel – one for the claims arising out of the Securities Act and one for the claims arising out of the Exchange Act[6]– the Court declines to do so. This argument is based on the premise that the two movants who make up the NYCB Group do not *individually* possess the greatest financial loss. As discussed previously, however, the Court has already found the NYCB Group to be a valid group which may be viewed in the aggregate. Moreover, as the parties concede, there is no precedent under which the Court is required to appoint separate lead plaintiffs for different claims, *cf. Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) (stating that the PSLRA does not require district to choose lead plaintiff with standing to sue on every available cause of action), and there has been no showing that the NYCB Group, the presumptive lead plaintiff, cannot vigorously pursue both claims. The NYCB Group therefore meets the Rule 23 typicality requirement for purposes of the lead plaintiff inquiry.

The NYCB Group also meets the Rule 23 requirement that the lead plaintiff have the capacity to adequately represent the class. The adequacy requirement is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *See, e.g., In re eSpeed, Inc. Sec. Litig.*, 2005 WL 1653933, at *5 (citing *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (considering adequacy in the lead plaintiff appointment context)). The NYCB Group's counsel, Milberg Weiss Bershad & Schulman LLP, has extensive experience litigating securities class actions and, therefore, has the ability to conduct the litigation effectively.

---

[6] (*See* Stevens and Feil Response at 2-4; Dr. Schnapp Reply at 6-8.)

Moreover, there is no evidence to suggest that the members of the NYCB Group have interests that are antagonistic to each other or to other members of the putative class. Finally, the NYCB Group has already displayed a willingness to vigorously pursue its claims and has enough of an interest in the outcome of the litigation to ensure that it will continue to do so. Thus, the NYCB Group is an adequate class representative.

Thus, because the NYCB Group has satisfied the three prong test of the PSLRA, to wit, the NYCB Group has submitted a timely motion requesting to be named lead plaintiff, it is the entity with the greatest financial interest in the relief sought by the class, and otherwise meets the requirements of Rule 23(a), the NYCB Group is presumptively the most adequate plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). To rebut this presumption, as noted previously, the other movants must offer proof that the NYCB plaintiffs "will not fairly and adequately protect the interests of the class; or [are] subject to unique defenses that render [them] incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II). They have failed to do so. Accordingly, the Court appoints the NYCB Group as lead plaintiff.

## III.    *Motions for Selection of Lead Counsel*

The NYCB Group further moves to designate Milberg Weiss Bershad & Schulman LLP as lead counsel. The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel." 15 U.S.C. § 78u-4(a)(3)(B)(v). Resumes submitted by the firm indicate that it has successfully prosecuted numerous securities fraud class actions and is otherwise well qualified and free of conflicts. Accordingly, the Court appoints Milberg Weiss Bershad & Schulman LLP as lead counsel.

16

## CONCLUSION

For the foregoing reasons, the motion by the NYCB Group is granted in its entirety. The Court appoints the NYCB Group as lead plaintiff and Milberg Weiss Bershad & Schulman LLP as lead counsel. The other applicants' motions are granted to the extent they seek consolidation but are otherwise denied. The NYCB Group shall serve and file a consolidated complaint within thirty (30) days of this Order.

The actions are hereby consolidated under the caption "In re New York Community Bancorp, Inc. Securities Litigation." All relevant documents and submissions shall be maintained as one file under case number 04 CV 4165. The Clerk of the Court is hereby directed to close the other ten actions.

SO ORDERED.

Central Islip, N.Y.
August 9, 2005

/s
Denis R. Hurley,
United States District Judge

*BUCHWALD, S.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONIC~~ ~~
DOC #:
DATE FILED: 6/27/05

JOHNNY COX, on behalf of himself and
all others similarly situated,

           Plaintiff,

           v.

DELPHI CORPORATION (F/K/A DELPHI
AUTOMOTIVE SYSTEMS), J.T.
BATTENBERG, III, ALAN S. DAWES,
PAUL R. FREE, and JOHN SHEEHAN,

           Defendants.

Civil Action No. 1:05-CV-2637 (NRB)

THOMAS MORRISON, on behalf of
himself and all others similarly situated,

           Plaintiff,

           v.

DELPHI CORPORATION, J.T.
BATTENBERG, III, RODNEY O=NEAL,
ALAN S. DAWES, and JOHN G.
BLAHNIK,

           Defendants.

Civil Action No. 1:05-CV-2656 (NRB)

[Captions continued on next page]

**STIPULATION AND [~~PROPOSED~~] ORDER REGARDING APPOINTMENT OF LEAD
PLAINTIFFS AND APPROVAL OF LEAD PLAINTIFFS' SELECTION OF LEAD
COUNSEL.**

ROBERT HILLMAN, on behalf of himself  )
and all others similarly situated,      )
                                        )
              Plaintiff,                )
                                        )
        v.                              )    Civil Action No. 1:05-CV-2732 (NRB)
                                        )
DELPHI CORPORATION, J.T.                )
BATTENBERG, III, ALAN S. DAWES,         )
PAUL R. FREE, and JOHN D. SHEEHAN,      )
                                        )
              Defendants.               )

CORINNE C. OREM, on behalf of herself   )
and all others similarly situated,      )
                                        )
              Plaintiff,                )
                                        )
        v.                              )    Civil Action No. 1:05-CV-2854 (NRB)
                                        )
DELPHI CORPORATION, J.T.                )
BATTENBERG, III, RODNEY O=NEAL,         )
ALAN S. DAWES, and JOHN G.              )
BLAHNIK,                                )
                                        )
              Defendants.               )

VANESSA JONES, individually and on      )
behalf of all others similarly situated, )
                                        )
              Plaintiff,                )
                                        )
        v.                              )    Civil Action No. 1:05-CV-3323 (BSJ)
                                        )
DELPHI CORPORATION, J.T.                )
BATTENBERG, III, RODNEY O=NEAL,         )
ALAN S. DAWES, and JOHN G.              )
BLAHNIK,                                )
                                        )
              Defendants.               )

[Captions continued on next page]

IRA GAINES, on behalf of himself and all    )
others similarly situated,    )
   )
   )
               Plaintiff,    )
   )
   )     Civil Action No. 1:05-CV-3439 (BSJ)
        v.    )
   )
DELPHI CORPORATION, J.T.    )
BATTENBERG, III, ALAN S. DAWES,    )
PAUL R. FREE, and JOHN D. SHEEHAN,    )
   )
               Defendants.    )
   )

POLICEMEN'S ANNUITY & BENEFIT    )
FUND OF CHICAGO, on behalf of itself    )
and all others similarly situated,    )
   )
   )
               Plaintiff,    )
   )     Civil Action No. 1:05-CV-4476 (UA)
        v.    )
   )
   )
DELPHI CORPORATION, JOHN D.    )
SHEEHAN, J.T. BATTENBERG, III,    )
ALAN S. DAWES, and PAUL R. FREE,    )
   )
               Defendants.    )

WHEREAS, on March 7, 2005, the first captioned class action complaint (*Cox v. Delphi Corp. (f/k/a Delphi Automotive Systems, LLC), et al.*, No. 1:05-CV-2637 (NRB)) alleging violations of federal securities laws was filed in the United States District Court for the Southern District of New York;

WHEREAS, twelve related complaints were subsequently filed. Six of those complaints were filed in the United States District Court for the Southern District of New York (*Morrison v. Delphi Corp., et al.*, No. 1:05-CV-2656 (NRB); *Hillman v. Delphi Corp., et al.* No. 1:05-CV-2732 (NRB); *Orem v. Delphi Corp., et al.*, No. 1:05-CV-2854 (NRB); *Jones v. Delphi Corp., et al.*, No. 1:05-CV-3323 (BSJ); *Gaines v. Delphi Corp., et al.*, No. 1:05-CV-3439 (BSJ); and *Policemen's Annuity & Benefit Fund of Chicago v. Delphi Corp., et al.*, No. 1:05-CV-4476 (UA)) and six of those complaints were filed in the United States District Court for the Eastern District of Michigan (*Priest v. Delphi Corp., et al.*, No. 05-CV-70907-DPH-VMM; *City of Delray Beach Police and Firefighters Ret. Sys. v. Delphi Corp., et al.*, No. 05-CV-70945-DPH-VMM; *Karlin v. Delphi Corp., et al.*, No. 05-CV-70952-DPH-VMM; *Bennett v. Delphi Corp. (f/k/a Delphi Automotive Systems), et al.*, No. 05-CV-71137-VAR-MKM; *Raphael v. Delphi Corp., et al.*, No. 05-CV-71238-DPH-VMM; and *Police and Fire Ret. Sys. of the City of Detroit v. Delphi Corp., et al.*, No. 05-CV-60102-JCO-WC.) (All thirteen of the above actions shall be referred to collectively as the "Actions");

WHEREAS, on March 7, 2005, pursuant to Section 21D(a)(3)(A) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(A), notice was published which informed class members of their right to seek appointment as lead plaintiff;

WHEREAS, on May 6, 2005, putative class members Teachers' Retirement System of Oklahoma ("OTRS"), Oklahoma Law Enforcement Retirement System ("OLERS"), Public

Employees' Retirement System of Mississippi ("Mississippi PERS"), and San Diego City

Employees' Retirement System ("SDCERS") (collectively, the "Public Pension Fund Group")

timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment

as lead plaintiff and for approval of Bernstein Litowitz Berger & Grossmann LLP and Nix,

Patterson & Roach, L.L.P. as lead counsel;

WHEREAS, on May 6, 2005, putative class members Nextra Investment Management

S.G.R. S.p.A. on behalf of the NIS US Equities Fund, the Nextra Azioni Beni Di Consumo Fund,

the Nextra Azioni Nord America Fund, the Primavera Trading Azioni Nord America Fund, and

the Nextra Azioni Nord America Dinamico Fund (collectively, "Nextra") and Raiffeisen

Kapitalanlage-Gesellschaft m.b.H. ("Raiffeisen") timely moved this Court, pursuant to Section

21(D)(a)(3) of the Exchange Act, for appointment as lead plaintiff and for approval of Schiffrin

& Barroway, LLP as lead counsel;

WHEREAS, on May 6, 2005, putative class member Stichting Pensioenfonds ABP

("ABP") timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for

appointment as lead plaintiff and for approval of Grant & Eisenhofer, P.A. as lead counsel;

WHEREAS, on May 6, 2005, putative class member Secure Trading Group, Inc. ("STG")

timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment

as lead plaintiff and for approval of Entwistle & Cappucci, LLP as lead counsel;

WHEREAS, on May 6, 2005, putative class members Illinois State Board of Investment

("ISBI") and State Universities Retirement System of Illinois ("SURS") (collectively, the

"Illinois Funds") timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act,

for appointment as lead plaintiff and for approval of Berman DeValerio Pease Tabacco Burt &

Pucillo as lead counsel;[1]

WHEREAS, on May 6, 2005, putative class members International Union of Painters and Allied Trades Industry Pension Fund, National Roofing Industry Pension Fund, and California Ironworkers Field Trust Funds (collectively, the "Institutional Funds") timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment as lead plaintiff and for approval of Lerach Coughlin Stoia Geller Rudman & Robbins, LLP as lead counsel;

WHEREAS, on May 6, 2005, putative class members Metzler GmbH, Activest Investmentgesellschaft mbH, and Amalgamated Bank as Trustee of the Longview Collective Investment, Longview Quantitative FD-Prude and Longview VEBA 500 Funds (collectively, the "Institutional Investor Group") timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment as lead plaintiff and for approval of Milberg Weiss Bershad & Schulman, LLP as lead counsel;

WHEREAS, on May 6, 2005, putative class member Police and Fire Retirement System of the City of Detroit ("Detroit") timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment as lead plaintiff and for approval of Kirby McInerney & Squire, LLP as lead counsel;[2]

WHEREAS, on May 6, 2005, putative class member Government Employees' Retirement System of the Virgin Islands timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment as lead plaintiff and for approval of Barrack Rodos & Bacine as lead counsel;

WHEREAS, on May 6, 2005, putative class member Policemen's Annuity & Benefit

---

[1] Subsequently, on May 17, 2005, SURS withdrew its application for appointment as lead plaintiff.

[2] Subsequently, on May 23, 2005, Detroit withdrew its application for appointment as lead plaintiff.

Fund of Chicago timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment as lead plaintiff and for approval of Much Shelist Freed Denenberg Ament & Rubenstein, P.C. as lead counsel;

WHEREAS, on May 6, 2005, putative class members Louisiana District Attorneys' Retirement System ("LADARS"), Richard Cameron ("Cameron"), Bruce Chernofsky and Samuel & Harriet Chernofsky (the "Chernofsky Family") timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment as lead plaintiff and for approval of Pomerantz Haudek Block Grossman & Gross, LLP as lead counsel;

WHEREAS, pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court is to presume that the "most adequate plaintiff" is the person or group of persons who, "in the determination of the court has the largest financial interest in the relief sought by the class;"

WHEREAS, pursuant to the PSLRA, the lead plaintiff is vested with authority to select and retain lead counsel, subject to Court approval;

WHEREAS, OTRS, Mississippi PERS, ABP and Raiffeisen independently determined that it would be in the best interests of the Class to prosecute the Actions jointly as Lead Plaintiffs, with their respective law firms, Nix, Patterson & Roach, L.L.P., Bernstein Litowitz Berger & Grossmann LLP, Grant & Eisenhofer, P.A., and Schiffrin & Barroway, LLP, serving as Lead Counsel for the Class;

WHEREAS, OTRS, Mississippi PERS, ABP and Raiffeisen, whether taken independently of one another or together, have the largest loss of all other persons who filed motions seeking appointment as lead plaintiff;

WHEREAS, counsel for STG, the Police and Fire Retirement System of the City of Detroit, the Government Employees' Retirement System of the Virgin Islands, the Policemen's Annuity & Benefit Fund of Chicago, LADARS, Cameron and the Chernofsky Family have represented to counsel for OTRS, Mississippi PERS, ABP and Raiffeisen that they either support or do not oppose the appointment of OTRS, Mississippi PERS, ABP and Raiffeisen as Lead Plaintiffs for the Class and their choice of Lead Counsel for the Class; and

WHEREAS, counsel for the ISBI have represented to counsel for OTRS, Mississippi PERS, ABP and Raiffeisen that ISBI does not take any position on this matter.

IT IS HEREBY STIPULATED AND AGREED, by OTRS, Mississippi PERS, ABP and Raiffeisen through their undersigned counsel as follows:

       1.    OTRS, Mississippi PERS, ABP and Raiffeisen shall, subject to the approval of the Court, be appointed Lead Plaintiffs pursuant to Section 21(D)(a)(3) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B) in the Actions and all related actions consolidated herewith; and

       2.    Lead Plaintiffs' selection of the law firms of Nix, Patterson & Roach, L.L.P., Bernstein Litowitz Berger & Grossmann LLP, Grant & Eisenhofer, P.A., and Schiffrin & Barroway, LLP shall, subject to the approval of the Court, be approved as Lead Counsel for the Class pursuant to Section 21(D)(a)(3)(B)(v) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B)(v).

Respectfully submitted,

NIX, PATTERSON & ROACH, L.L.P.

Dated: May 23, 2005          By:  _Bradley Beckworth/JKC_

Bradley E. Beckworth
Jeffrey J. Angelovich
Susan Whatley
205 Linda Drive
Daingerfield, TX 75638
Telephone:   (903) 645-7333
Facsimile:    (903) 645-4415

*Counsel for OTRS and Proposed Lead Counsel*

BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP

Dated: May 23, 2005          By:  _Gerald Silk/JKC_

Douglas M. McKeige
Gerald H. Silk
Jai K. Chandrasekhar
1285 Avenue of the Americas
New York, NY 10019
Telephone:   (212) 554-1400
Facsimile:    (212) 554-1444

*Counsel for Mississippi PERS and*
*Proposed Lead Counsel*

GRANT & EISENHOFER, P.A.

Dated: May 23, 2005          By:  _Jay Eisenhofer/JKC_

Jay W. Eisenhofer
Sidney S. Liebesman
James L. Sabella
45 Rockefeller Center
650 Fifth Avenue
New York, NY 10111
Telephone:   (212) 755-6501
Facsimile:    (212) 755-6503

- and -

Geoffrey C. Jarvis
Sharan Nirmul
1201 North Market Street, Suite 2100
Wilmington, DE 19801
Telephone:    (302) 622-7000
Facsimile:    (302) 622-7100

*Counsel for ABP and Proposed Lead Counsel*

SCHIFFRIN & BARROWAY, LLP

Dated: May 23, 2005          By:    _Stuart Berman /OKC_
                                    Richard S. Schiffrin
                                    Stuart L. Berman
                                    Darren J. Check
                                    Sean M. Handler
                                    Robin Winchester
                                    280 King of Prussia Road
                                    Radnor, PA 19087
                                    Telephone:    (610) 667-7056
                                    Facsimile:    (610) 667-7706

*Counsel for Raiffeisen and*
*Proposed Lead Counsel*

IT IS SO ORDERED:

Dated: _June 27, 2005_          _____
                                The Honorable Naomi Reice Buchwald, U.S.D.J.



United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SIPEX CORPORATION SECURITIES LITIGATION / | No. C 05-00392 WHA |
| AND CONSOLIDATED CASES / | ORDER APPOINTING LEAD PLAINTIFFS GLOBIS CAPITAL PARTNERS LP AND SHAYE HIRSCH |

## INTRODUCTION

Pursuant to the Private Securities Litigation Reform Act of 1995 (PSLRA), Pub. L. No. 104–67, 109 Stat. 737 (codified as additions and amendments to 15 U.S.C. 77–78 and 18 U.S.C. 1964), this order appoints Globis Capital Partners LP and Shaye Hirsch as the lead plaintiffs for two cases previously consolidated as the above-named action. The consolidated actions involve securities fraud. This order sets forth the criteria for selection and approval of lead plaintiff and also sets forth the procedure that will be used for the selection and approval of class counsel.

## FACTS

These consolidated class actions arise from the alleged financial misrepresentation by Sipex Corporation. Sipex designs, manufactures and markets semiconductors that are used by original equipment manufacturers in the computing, consumer electronics, communications and networking infrastructure markets (Jacobson Compl. ¶ 2). During the alleged class period, Sipex reported positive results in its SEC filings (*id.* ¶ 3).[1] In publically disseminated press

---

[1] The alleged class period is April 10, 2003, through and including January 20, 2005.

1  releases, the company attributed the results to increased semiconductor sales and cost savings

2  resulting from restructuring its operations (*ibid*).  On January 20, 2005, after the market closed,

3  Sipex issued a press release announcing that it might need to restate its reported financial

4  statements for fiscal year 2003 and for the first three quarters of fiscal year 2004 due to possible

5  "improper recognition of revenue" and that the company's audit committee and board of

6  directors had commenced an internal investigation of the matter (*id.* ¶ 4).  As a result of the

7  investigation, Sipex stated that it would not be able to file its 2004 annual report with the SEC

8  on time (*ibid.*).  In reaction to this news, the price of Sipex common stock dropped 23% from its

9  previous trading day's closing price (*ibid*).

10      Four class actions were filed.[2]  Plaintiffs named Sipex corporation and its officers,

11  Douglas M. McBurnie, Walid Maghribi, Phillip Kagel and Clyde Ray Wallin as defendants.

12  The complaints alleged that defendants violated Section 10(b) and 20(a) of the Securities

13  Exchange Act of 1934 and Rule 10b-5, promulgated thereunder, by making allegedly false and

14  misleading statements, causing plaintiffs to purchase Sipex securities at artificially inflated

15  prices.

16      Initially, there were several competing movants for the position of lead plaintiff:

17  Walter Bednarszyk and James T. Collier, Roy and Margaret Gentles, the "Young Group" that

18  included six individuals and the "Globis Group" that included Globis Capital Partner LP and

19  Shaye Hirsch.  Before the hearing on the appointment of lead plaintiff, the Court requested each

20  lead plaintiff to complete a questionnaire.  The Court's questionnaire alerted movants that it

21  would evaluate the qualifications of single investors, not groups, as lead plaintiffs.  The Court's

22  questions focused on the qualifications of the lead plaintiff, their experience in managing

23  litigation, potential conflicts and transactions related to the instant securities case.  The Court

24  received back two questionnaires, one from Paul Packer, on behalf of Globis Capital Partners

25

26

27      [2]  Initially the following five related actions were filed:  *Barbara Keller v. Sipex*, C05-00331 WHA, *Coil Partners, LLC v. Sipex*, C05-00392 WHA, *Levy v. Sipex*, C05-00505 WHA and *Alfred H. Jacobson v.*

28  *Sipex*, C05-00712 WHA.  Eventually, all the actions voluntarily dismissed except for *Coil Partners, LLC v. Sipex* and *Alfred H. Jacobson v. Sipex*.  They were consolidated into this action.

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

1   LP, and one from Shaye Hirsch. None of the other movants returned questionnaires.

2   Subsequently, the Gentiles moved for withdrawal of appointment as lead plaintiff.

3           The Court held a hearing on the appointment of lead plaintiff on May 12, 2005. The

4   only candidates present were Mr. Packer, on behalf of Globis, and Mr. Hirsch. The Court

5   questioned both plaintiffs on their qualifications, experience and financial loss.

6           Mr. Packer is the managing member of Globis Capital Partners LP, a hedge fund that

7   deals with small and mid-cap-value companies. He has previous experience as a lead-plaintiff.

8   Before the alleged class period he held 520,570 shares of Sipex stock. During the alleged class

9   period he purchased 1,110,086 shares of stock and sold 1,201,229 shares of stock. Despite

10  being a net seller during the alleged class period, Globis' alleged estimated loss is $725,857, a

11  point discussed below. Mr. Hirsch is an individual investor. During the alleged class period he

12  bought $7,000 shares. He estimates his total loss to be between $20,000 and $25,000. Globis

13  and Mr. Hirsch asked the Court to appoint them as joint lead-plaintiffs. Mr. Packer and Mr.

14  Hirsch are friends and their families have known each other for many years. Each had seen the

15  published notice of the class action and had contacted the law firm of Bernstein Liebhard &

16  Lipshitz LLP. The firm represents Mr. Packer in other matters and Mr. Hirsch had a personal

17  relationship with a partner at the firm.

18          At the hearing, the Court noted that Globis appears to have been a net seller and asked

19  counsel to provide the Court with supplemental briefing as to whether defendants would assert

20  at class certification that Globis is not an appropriate class representative. The defendants and

21  Globis provided the Court with supplemental briefing. Defendants' position is that Globis,

22  being a net seller, profited from the alleged stock price inflation and therefore is not

23  representative of a typical and adequate plaintiff in this class action. Globis' position is that it

24  is an adequate and typical lead plaintiff in this class action if one calculates financial loss using

25  a "first-in/first-out" (FIFO) method of accounting. This issue is addressed in depth below.

26          After the hearing, three of the fives cases were voluntarily dismissed and the Court

27  issued an order consolidating the remaining two actions. The following two actions were

28

3

1    consolidated into the present case: *Coil Partners, LLC v. Sipex*, C05-00392 WHA and *Alfred*

2    *H. Jacobson v. Sipex*, C05-00712 WHA.

3                                    ANALYSIS

4        The PSLRA seeks to place a real investor, not a lawyer, in charge of the litigation on

5    behalf of the class. This statutory responsibility now resides in what the PSLRA calls the "lead

6    plaintiff." This representative acts as a fiduciary for all members of the proposed class and

7    must provide fair and adequate representation and management to obtain the largest recovery

8    for the proposed class consistent with good faith and meritorious advocacy.

9        The PSLRA provides that the Court "shall appoint as lead plaintiff the member or

10   members of the purported plaintiff class that the court determines to be the most capable of

11   adequately representing the interests of the class members in accordance with this

12   subparagraph." 15 U.S.C. § 78u-4(a)(3)(B)(I). The Act creates a rebuttable presumption that

13   the most adequate plaintiff should be the plaintiff who:  (1) has brought the motion for

14   appointment of lead counsel in response to the publication of notice; (2) has the "largest

15   financial interest" in the relief sought by the class; and (3) otherwise satisfies the requirements

16   of FRCP 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc).  The above presumption may be

17   rebutted only upon proof that the presumptive lead plaintiff (1) will not fairly and adequately

18   protect the interests of the class or (2) is subject to "unique defenses" that render such plaintiff

19   incapable of adequately representing the class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)–(bb).

20       The PSLRA does not provide any guidance concerning the method of calculating which

21   plaintiff has the "largest financial interest."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  Courts

22   in this district have equated "largest financial interest" with the amount of potential recovery.

23   *See In Re Critical Path, Inc. Sec Litig.*, 156 F. Supp. 2d 1102, 1107–08 (N.D. Cal 2001); *In Re*

24   *Network Assocs., Inc. Sec. Litig.*, 76 F. Supp.2d 1017, 1030 (N. D. Cal. 1999); *Weisz v. Calpine*

25   *Corp.*, 2002 WL 32818827, *5 (N.D. Cal 2002).  In determining which lead plaintiff has

26   suffered the greatest loss under the PSLRA, the law regulating securities losses must be

27   reviewed in part, a discussion that will presently include the issue of the "first-in/first-out"

28   (FIFO) and "last-in/first-out" (LIFO) methods.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1     Under the purchaser-seller rule, only purchasers who actually buy or sellers who

2   actually sell in reliance on fraud may sue. Those who simply refrain from buying or selling,

3   even if in reliance on fraud, may not sue. *Blue Chip Stamps et al. v. Manor Drug Stores*, 421

4   U.S. 723, 731–755 (1975). The class period begins when the market was first defrauded. It

5   ends on the date when the truth was fully revealed or when the misinformation became too stale

6   to matter. Those defrauded in between can sue. Once the full truth comes out, an investor

7   electing to keep the stock and gamble on the future events cannot sue for future losses.

8   Otherwise, securities manipulators would become guarantors of a floor market price — even

9   after their manipulations had run their course. *See, e.g., SEC v. Shapiro*, 494 F.2d 1301, 1309

10   (2nd Cir. 1979).

11     The rule of loss causation, in the typical case, requires that the purchaser prove that

12   when the truth came out, the stock price dropped and did so by reason of the exposure of the

13   fraud rather than by reason of industry-wide down trends or other negative factors.

14   *Dura Pharmaceuticals, Inc., v. Michael Brudo*, ___ U. S. ___, 125 S. Ct. 1627, 1631 (2005).

15   Put another way, it is not enough to show that at the time of the purchase, the misrepresentation

16   had created a so-called "fraud premium," *i.e.*, that had the truth been known at the time of

17   purchase, the market price would have been lower. Rather than focusing on the time of the

18   *purchase*, we must, for damages purposes, focus on the time of the *sale* and determine the

19   extent to which revelation of fraud depressed the price as of the sale date. To be more precise,

20   the key inquiry is to isolate the extent of misrepresentations (originally inducing the purchase)

21   that became known during the time the shares were held and then to determine the contributory

22   and cumulative effect of those revelations on the price as of the date of sale, the date of sale

23   being the date of an actual sale within the class period or, constructively, the end of the class

24   period for all shares held to the end.

25     Suppose a share is purchased for $100 in reliance on an actionable misrepresentation.

26   The entire truth then suddenly comes out. The share price immediately drops $60. The only

27   reason for the plunge is the revelation. The entire $60 is recoverable.

28

5

<div style="writing-mode: vertical"><strong>United States District Court</strong><br>For the Northern District of California</div>

1     What happens, however, if the defrauded investor sells before the end of the class

2  period? In the case of a purchaser (within the class period) who sells *before any* of the truth is

3  revealed, of course, recovery might be doubtful. This is because the market has absorbed the

4  misinformation and imposed a fraud premium on both the purchase and sale. Often the fraud

5  premium will be the same in each case, thus cancelling the loss. In the case of a purchaser

6  (within the class period) who sells immediately after a partial revelation of the truth with a

7  resultant plunge in the stock price, the critical inquiry, again, is the extent to which the partial

8  revelation has depressed the price as of the date of the sale. Again, the *focus is not on the fraud*

9  *premium on the day of purchase*. The focus must be on the day of sale and on the contribution

10  to the loss due to the partial revelation of fraud.

11     Turning now to a scenario closer to our immediate case, what happens when an investor

12  already owns some shares going into the class period and/or trades actively within the class

13  period? When an investor already owns shares at the outset of the class period and sells them

14  during the class period, the investor actually profits from the fraud by recovering a fraud

15  premium over and above the true value of the shares. When the same investor already holds

16  shares at the outset of the class period but, in addition, buys and sells shares during the class

17  period, the gains received must be used to reduce the losses incurred. Otherwise, the investor

18  would reap a windfall.

19     Over the course of the class period, there are two items needed for this calculus. One

20  may be called the "loss-causation contribution." This is the contribution made to the overall

21  loss by revelation of fraud between the dates of the purchase and sale. This item is relevant to

22  recoverable damages as set forth by the Supreme Court. *See Dura Pharm. Inc.,* 125 S. Ct. at

23  1631–2. The other is the "fraud premium," *i.e.,* the extent to which the price remains inflated

24  due to unrevealed fraud. The second item is relevant to the offsetting of windfall for shares sold

25  during the class period.

26     The LIFO/FIFO issue arises, among other scenarios, when a trader has an inventory of

27  the shares in question going into the class period and trades during the class period, as here.

28  Suppose one share is owned going into the class period, another share is then bought in reliance

<div align="center">6</div>

<div style="writing-mode: vertical">**United States District Court**
For the Northern District of California</div>

1  on the fraud, one share is then sold midway through the class period and, finally, one share is

2  sold at the end of the class period. Recovery is allowable, of course, only for the share

3  purchased during the class period. But which share was sold when? Under FIFO, the

4  previously-held (non-actionable) share would be the first sold share. The fraud-induced

5  (actionable) share would be the last. Under LIFO, it would be the opposite. In doing the math

6  for the recoverable loss and the offsetting windfall, it would be necessary to determine the fraud

7  premium and loss-causation contribution. Depending on which of the two sales is deemed to be

8  actionable, these calculations will vary.[3]

9       The FIFO method would dictate that the actionable purchase was sold later. That loss

10  would be offset by a windfall of any fraud premium received on the first sale. The LIFO

11  method would dictate that the actionable purchase was sold first. There would be no windfall

12  on the later sale since, by definition, any fraud premium will always completely be eliminated

13  by the end of the class period. This, plus the fact that the recoverable loss will often be less

14  during the mid-range of the class period explains why defendants prefer the LIFO method and

15  plaintiffs prefer the FIFO, although this preference can be reversed in particular cases.

16       In the Court's view, LIFO is closer to the economic realities of market investing and the

17  purposes of the securities acts. If a trader buys and sells the same number of shares of the same

18  issue, on the same day, the economic reality of the basic investment decision is a net of one

19  against the other, *i.e.*, no change in position, at least as of the end of the day. Put differently, if

20  a trader buys and sells shares of the same issue over a brief period, the trader is relying on the

21  same basic market analysis and same market information. If a fraudulent misrepresentation has

22  affected the market, it has affected *both* sides of the equation. The LIFO method better tracks

23  the impact of investment decisions and how market fraud impacts them. This is at the core of

24  the securities acts. So, this Court will follow a LIFO convention for investors who both buy and

25  sell within the class period.

26

27

28  [3] This Court expresses no opinion on the scenario in which the stock price goes up during the class period in the presence of fraud but where the stock price would have gone up even in absence of the fraud. *See Dura Pharm., Inc.*, 125 S. Ct. at 1632.

1    This conclusion is in accordance with the weight of authority. *See, e.g., In re McKesson*

2    *HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 996 fn.2 (N. D. Cal. 1999); *In re Network Assoc.*

3    *Inc. Sec. Litig.*, 76 Supp. 2d 1017, 1027 (N.D. Cal. 1999); *Weisz v. Calpine Corp.*, 2002 WL

4    32818827, *7 (N.D. Cal 2002); *In re Clearly Canadian Sec. Litig.*, 1999 U.S. Dist. LEXIS

5    14273, *12–14 (N.D. Cal. 1999); *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 945 (N.D. Ill.

6    2001).

7    At the May 12, 2005 hearing, counsel for Globis relied on an unpublished decision,

8    *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, 2004 U.S. Dist. LEXIS

9    27008 (N.D. Cal. 2004), that cites *Broudo v. Dura Pharmaceuticals Inc.*, 339 F.3d 933, 938

10   (9th Cir. 2003), for the proposition that damages may be proved by simply showing that

11   plaintiffs purchased stock at an inflated price. As discussed, *Broudo* has been subsequently

12   overturned by *Dura Pharmaceuticals, Inc. v. Michael Broudo*, 125 S. Ct. 1627, 1631 (2005). In

13   its supplemental briefing, Globis cited published cases that used FIFO as an accounting

14   methodology for determining financial losses and several unpublished cases. *See e.g. Chill v.*

15   *Green Tree Financial Corp.*, 181 F.R.D. 398, 411 (D. Minn 1998); *Vansguard v. Ariba, Inc.*,

16   C-03-00277 JF, slip op. (N.D. Cal. 2003). These cites, however, are not helpful. While the

17   courts accepted the calculation of damages based on FIFO, they did not arrive at the application

18   of FIFO after a reasoned discussion of the merits. It was merely a background fact.

19   Since Globis, an active trader, was a net *seller* throughout the class period, there is a

20   plausible chance that Globis will have no net recovery. This is not yet certain, however,

21   because the necessary calculations are unknowable at this early stage. Only with the benefit of

22   expert evidence could the necessary items be determined and then netted. For the time being,

23   Globis has a sufficient stake to be appointed as one of two lead plaintiffs. Because the net loss

24   is speculative for Globis at this point and because Globis may eventually be shown to have no

25   net loss, Mr. Hirsch will be made a co-lead plaintiff. This ruling is without prejudice to defense

26   arguments to be made later, on the class certification motion. The same is true for the other

27   Rule 23 issues raised by the defense. (No other competing lead plaintiff is challenging the Rule

28   23 qualifications of the pending candidates).

United States District Court
For the Northern District of California

8

**United States District Court**
For the Northern District of California

### RESPONSIBILITIES OF LEAD PLAINTIFF

1           The lead plaintiffs must take affirmative steps to keep themselves informed at all times
2 of the progress and status of the case, the strengths and weaknesses of the case, the prospects for
3 settlement, and the resources invested in the suit or proposed to be invested. With respect to
4 each major litigation event, such as important motions, settlement discussions, trial, and trial
5 preparation, the lead plaintiffs must actively inform themselves in advance and shall have the
6 authority and responsibility to direct counsel, after, of course, receiving the advice of counsel.
7 The lead plaintiffs must consult with counsel in advance to determine whether major tasks
8 proposed by counsel are likely to add more value to the case than would be incurred in time and
9 expense. The lead plaintiffs shall meet in person with lead trial counsel at least quarterly to
10 review the progress and status of the case, shall attend all major hearings and mediation
11 sessions and shall, at a minimum, attend all sessions of the trial where the jury is present. And,
12 of course, the lead plaintiff must give testimony. No settlement will be approved by the Court
13 without the lead plaintiffs' careful recommendation in favor of it. Reasonable travel, telephone
14 and business expenses incurred as a result of the lead plaintiff duties, if detailed and itemized,
15 may be reimbursed as expenses from any recovery.
16
17           Appended to this order are two forms of certification which Mr. Hirsch and Mr. Packer,
18 on behalf of Globis Partners LLP, individually, must sign, file and serve on or before
19 JUNE 1, 2005, in order to complete the appointment, obligating themselves to carry out the
20 responsibilities as lead counsel and the procedure for selecting and approving class counsel, a
21 procedure to which this order now turns.

22 ### PROCEDURE FOR SELECTING AND APPROVING CLASS COUNSEL

23           Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the
24 court, select and retain counsel to represent the class." 15 U.S.C. 78u-4(a)(3)(B)(v). Selection
25 and approval of class counsel are important responsibilities for the lead plaintiff and the court.
26 The selection and approval require an assessment of the strengths, weaknesses and experience
27 of counsel as well as the financial burden — in terms of fees and costs — on the class.
28

United States District Court
For the Northern District of California

1 | *Wenderhold v. Cylink Corp.*, 191 F.R.D. 600, 602–03 (N.D. Cal. 2000); *Network Assocs.*,

2 | 76 F. Supp. 2d at 1033–34.

3 |       Any important decision made by a fiduciary should be preceded by due diligence. A

4 | lead plaintiff is a fiduciary for the investor class. No decision by the lead plaintiff is more

5 | important than the selection of class counsel. Consequently, the lead plaintiff should precede

6 | his or her choice with due diligence. The extent of such due diligence is a matter of judgment

7 | and reasonableness based on the facts and circumstances.

8 |       The lead plaintiffs should immediately proceed to perform their due diligence and,

9 | through counsel, move for the appointment and approval of their selected counsel no later than

10 | JUNE 17. The motion should be accompanied by declarations from each lead plaintiff

11 | explaining the due diligence undertaken by each with respect to the selection of class counsel.

12 | The declarations should also explain why the counsel selected was favored over other potential

13 | candidates. The declarations should be filed under seal and not served on defendants. The

14 | motion for approval of lead plaintiffs' choice of counsel, however, should be served on defense

15 | counsel. No hearing will be held on the motion unless the Court determines that it would be

16 | beneficial. Once class counsel is approved, the first order of business will be to file a

17 | consolidated complaint. The Court expects this to be done by JULY 14 and any motion to

18 | dismiss to be filed by AUGUST 11.

19 |

20 |     **IT IS SO ORDERED.**

21 |

22 | Dated: May 24, 2005.

23 |                   WILLIAM ALSUP
                  UNITED STATES DISTRICT JUDGE

24 |

25 |

26 |

27 |

28 |

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SIPEX CORPORATION<br>SECURITIES LITIGATION | No. C 05-00392 WHA |
| _____ /<br><br>AND CONSOLIDATED CASES<br>_____ / | **CERTIFICATION OF LEAD<br>PLAINTIFF SHAYE HIRSCH** |

I have read and understand the Court's Order Appointing Lead Plaintiffs Globis Capital Partners LP and Shaye Hirsch, including the duties of lead plaintiff and the procedure for selecting and approving class counsel. I agree and promise to faithfully execute those provisions and to abide by the order. Once class counsel are selected and approved, I will work and cooperate fully with such counsel for the benefit of the investor class.


Dated: _____                    _____
                                         Mr. Shaye Hirsch

                                         Address: _____

                                         _____

United States District Court
For the Northern District of California

1
2
3
4
5
6 IN THE UNITED STATES DISTRICT COURT
7
8 FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10 IN RE SIPEX CORPORATION                No. C 05-00392 WHA
SECURITIES LITIGATION
11 _____/      CERTIFICATION OF LEAD
PLAINTIFF GLOBIS CAPITAL
12 AND CONSOLIDATED CASES                 PARTNERS LP
13 _____/
14          I have read and understand the Court's Order Appointing Lead Plaintiffs Globis Capital
15 Partners LP and Shaye Hirsch, including the duties of lead plaintiff and the procedure for
16 selecting and approving class counsel. I agree and promise to faithfully execute those
17 provisions and to abide by the order. Once class counsel are selected and approved, I will work
18 and cooperate fully with such counsel for the benefit of the investor class.
19
20 Dated:
21                                        _____
22                                        Mr. Paul Packer on behalf of Globis
                                         Partners LP
23                                        Address: _____
24                                        _____
25
26
27
28