

| | |
|---|---|
| 1 | MILBERG WEISS BERSHAD<br>& SCHULMAN LLP |
| 2 | JEFF S. WESTERMAN (94559)<br>355 S. Grand Ave., Suite 4170 |
| 3 | Los Angeles, CA 90071-3172<br>Telephone: (213) 617-1200 |
| 4 | (213) 617-1975 (fax) |
| 5 | MILBERG WEISS BERSHAD<br>& SCHULMAN LLP |
| 6 | STEVEN G. SCHULMAN<br>PETER E. SEIDMAN |
| 7 | One Pennsylvania Plaza<br>New York, NY 10119 |
| 8 | Telephone: (212) 594-5300<br>(212) 868-1229 (fax) |
| 9 | Proposed Lead Counsel |
| 10 | |
| 11 | [Additional Counsel on Signature Page] |

*Psend*

ORIGINAL

FILED
CLERK, U.S. DISTRICT COURT

NOV – 1 2004

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

LODGED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| 15 | CONWAY INVESTMENT CLUB,<br>Individually and On Behalf of All |
| 16 | Others Similarly Situated, |
| 17 | Plaintiff, |
| 18 | vs. |
| 19 | CORINTHIAN COLLEGES, INC.,<br>DAVID MOORE, ANTHONY |
| 20 | DIGIOVANNI and DENNIS BEAL, |
| 20 | Defendant. |

Case No. 2:04-cv-05025 R

[PROPOSED] ORDER
CONSOLIDATING THE ACTIONS,
APPOINTING LEAD PLAINTIFF,
AND APPROVING SELECTION OF
LEAD COUNSEL

Date:        October 4, 2004
Time:        10:00 a.m.
Courtroom:   Honorable Manuel L.
             Real

Date Action Filed: July 8, 2004

(Additional Captions Set Forth Below)

DOCKETED ON CM

NOV – 9 2004

BY _____ / 013

81

| | |
|---|---|
| 1  BARBARA KAUFMAN, On Behalf of<br>   Herself and All Others Similarly<br>2  Situated, | ) Case No. 2:04-cv-05091 |
| 3                       Plaintiff, | ) Judge: Honorable Manuel L. Real<br>) Courtroom: 8<br>) Date Action Filed: July 8, 2004 |
| 4  vs. | ) |
| 5  CORINTHIAN COLLEGES, INC.,<br>   DAVID G. MOORE, DENNIS N.<br>6  BEAL, AND ANTHONY F.<br>   DIGIOVANNI, | ) |
| 7                       Defendant. | ) |
| 8 | ) |
| 9  MICHAEL ORLANDO, Individually<br>10 and On Behalf of All Others Similarly<br>   Situated, | ) Case No. 2:04-cv-05754 |
| 11                      Plaintiff, | ) |
| 12 vs. | ) Judge: Honorable Manuel L. Real<br>) Date Action Filed: July 16, 2004 |
| 13 CORINTHIAN COLLEGES, INC.,<br>14 DAVID MOORE, ANTHONY<br>   DIGIOVANNI and DENNIS BEAL, | ) |
| 15                      Defendant. | ) |
| 16 | ) |
| 17 PAULENA PARTNERS, LLC,<br>   Individually and On Behalf of All<br>18 Others Similarly Situated, | ) Case No. 2:04-cv-06057 R |
| 19                      Plaintiff, | ) Judge: Honorable Dale S. Fischer<br>) Date Action Filed: July 23, 2004 |
| 20 vs. | ) |
| 21 CORINTHIAN COLLEGES, INC.,<br>   DAVID MOORE, ANTHONY<br>22 DIGIOVANNI and DENNIS BEAL, | ) |
| 23                      Defendant. | ) |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

| | | |
|---|---|---|
| 1 | JAMES DOLAN, On Behalf of Himself and All Others Similarly Situated, | Case No. 2:04-cv-06076 |
| 2 | | |
| 3 | Plaintiff, | Judge: Honorable Manuel L. Real Date Action Filed: July 23, 2004 |
| 4 | vs. | |
| 5 | CORINTHIAN COLLEGES, INC., DAVID MOORE, PAUL ST. PIERRE, | |
| 6 | DENNIS BEAL, and ANTHONY DIGIOVANNI, | |
| 7 | | |
| 8 | Defendant. | |
| 9 | KWOK YAU TONG, Individually and On Behalf of All Others Similarly | Case No. 2:04-cv-06993 |
| 10 | Situated, | |
| 11 | Plaintiff, | Judge: Honorable Manuel L. Real Date Action Filed: August 20, 2004 |
| 12 | vs. | |
| 13 | CORINTHIAN COLLEGES, INC., DAVID MOORE, ANTHONY | |
| 14 | DIGIOVANNI and DENNIS BEAL, | |
| 15 | Defendant. | |
| 16 | | |
| 17 | DOUGLAS ROSE, On Behalf of Himself and All Others Similarly | Case No. 2:04-cv-06994 |
| 18 | Situated, | |
| 19 | Plaintiff, | Judge: Honorable Manuel L. Real Date Action Filed: August 20, 2004 |
| 20 | vs. | |
| 21 | CORINTHIAN COLLEGES, INC., DAVID MOORE, PAUL ST. PIERRE, | |
| 22 | DENNIS BEAL and ANTHONY DIGIOVANNI, | |
| 23 | Defendant. | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

SCANNED

| | | |
|---|---|---|
| 1 | IVAN MENESES, Individually and on Behalf of All Others Similarly Situated, ) | Case No. 8:04-cv-923 |
| 2 | | 2104-8573 T |
| 3 | Plaintiff, ) | Judge: Honorable David O. Carter |
| | vs. ) | Date Action Filed: August 4, 2004 |
| 4 | ) | |
| 5 | CORINTHIAN COLLEGES, INC., ANTHONY DIGIOVANNI, DAVID MOORE and DENNIS BEAL, ) | |
| 6 | ) | 04-6994 |
| 7 | Defendant. ) | |

| | | |
|---|---|---|
| 8 | DOUGLAS ROSE, On Behalf of Himself and All Others Similarly ) | Case No. 8:04-cv-926 |
| 9 | Situated, ) | Judge: Honorable David O. Carter |
| | | Date Action Filed: August 5, 2004 |
| 10 | Plaintiff, ) | |
| 11 | vs. ) | |
| 12 | CORINTHIAN COLLEGES, INC., ) DAVID MOORE, PAUL ST. PIERRE, ) | |
| 13 | DENNIS BEAL and ANTHONY ) DIGIOVANNI, ) | |
| 14 | Defendant. ) | |
| 15 | | |

| | | |
|---|---|---|
| 16 | KOK YEOH, On Behalf of Himself and ) All Others Similarly Situated, ) | Case No. 8:04-cv-959 |
| 17 | | 04-8393 |
| 18 | Plaintiff, ) | Judge: Honorable Gary L. Taylor |
| | vs. ) | Date Action Filed: August 9, 2004 |
| 19 | ) | |
| 20 | CORINTHIAN COLLEGES, INC., ) DAVID MOORE, PAUL ST. PIERRE, ) | |
| 21 | DENNIS BEAL and ANTHONY ) DIGIOVANNI, ) | |
| 22 | Defendant. ) | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

| | |
|---|---|
| 1   JAMES STELLATO, On Behalf of <br> Himself and All Others Similarly <br> 2   Situated, <br><br> 3                                  Plaintiff, <br><br> 4        vs. <br><br> 5   CORINTHIAN COLLEGES, INC., <br> DAVID MOORE, PAUL ST. PIERRE, <br> 6   DENNIS BEAL and ANTHONY <br> DIGIOVANNI, <br><br> 7                                  Defendant. <br> 8 | Case No. 8:04-cv-997 <br><br> Of 840/R <br><br> Judge:  Honorable David O. Carter <br> Date Action Filed: August 16, 2004 |

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    Having considered the motion of Metzler Investment GmbH ("Metzler

2    Investment"), and good cause appearing therefore, the Court orders as follows:

3

4        1.    The Motion is GRANTED;

5        2.    The above-captioned actions are consolidated pursuant to Fed. R. Civ. P.

6    42(a);

7

8        3.    Metzler Investment is the "most adequate plaintiff" and accordingly, is

9    appointed Lead Plaintiff pursuant to 15 U.S.C. 78u-4(a)(3)(B)(iii);

10        4.    Milberg Weiss Bershad & Schulman LLP is appointed Lead Counsel,

11

12    pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

13    IT IS SO ORDERED.

14    DATED: **Nov. 1**, 2004

15                      Honorable Manuel L. Real
                            United States District Court Judge

16    Submitted by:
        Dated: September 7, 2004

17    MILBERG WEISS BERSHAD
        & SCHULMAN LLP

18    Jeff S. Westerman

19

20        JEFF S. WESTERMAN

21    355 S. Grand Ave., Suite 4170
        Los Angeles, CA 90071-3172

22    Telephone: (213) 617-1200
        Facsimile: (213) 617-1975

23

24    MILBERG WEISS BERSHAD
        & SCHULMAN LLP

25    Steven G. Schulman
        Peter E. Seidman

26    One Pennsylvania Plaza
        New York, NY 10119

27    Telephone: (212) 594-5300
        Facsimile: (212) 868-1229

28    Proposed Lead Counsel



1   THE BRUALDI LAW FIRM
    Richard B. Brualdi
2   29 Broadway
    Suite 2400
3   New York, New York 10006
    Telephone:   (212) 952-0602
4   Facsimile:   (212) 952-0608

5   Plaintiff's Counsel

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

### DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, a resident of the County of Los Angeles, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is 355 South Grand Avenue, Suite 4170, Los Angeles, California 90071.

2.      That on September 7, 2004, declarant served the [PROPOSED] ORDER CONSOLIDATING THE ACTIONS, APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF LEAD COUNSEL by depositing a true copy thereof in a United States mailbox at Los Angeles, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3.      That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 7TH day of September, 2004, at Los Angeles, California.

_____
CYNTHIA DORSEY

-3-

## CORINTHIAN COLLEGES

### Service List

| | |
|---|---|
| **Counsel for Plaintiffs** | |
| Christopher Kim | Kevin J. Yourman |
| Lisa J. Yang | Jennifer R. Williams |
| LIM RUGER & KIM | Vahn Alexander |
| 1055 West 7th Street, Suite 2800 | WEISS & YOURMAN |
| Los Angeles, CA 90017 | 10940 Wilshire Blvd, 24th Fl. |
| Tel.: (213) 955-9500 | Los Angeles, CA 90024 |
| | Tel.: (310) 208-2800 |
| Eric J. Belfi | Email: service@wyca.com |
| RABIN MURRAY AND FRANK | |
| 275 Madison Avenue, Suite 801 | Timothy J. Burke |
| New York, NY 10016 | STULL STULL & BRODY |
| Tel.: (212) 682-1818 | 10940 Wilshire Boulevard, Suite 2300 |
| | Los Angeles, CA 90024 |
| Marc A. Topaz | Tel.: (310) 209-2468 |
| Richard A. Maniskas | Email: service@ssbla.com |
| SCHIFFRIN & BARROWAY | |
| 3 Bala Plaza East, Suite 400 | *Attorneys for Barbara Kaufman* |
| Bala Cynwyd, PA 19004 | |
| Tel.: (610) 667-7706 | |
| | |
| *Attorneys for Conway Investment Club* | |
| Robert I. Harwood | Peter Arthur Binkow |
| Joshua D. Glatter | GLANCY BINKOW & GOLDBERG |
| WECHSLER HARWOOD | 1801 Avenue of the Stars, Ste 311 |
| 488 Madison Avenue, 8th Floor | Los Angeles, CA 90067 |
| New York, NY 10022 | Tel.: (310) 201-9150 |
| Tel.: (212) 935-7400 | Email: info@glancylaw.com |
| | |
| Lionel Z. Glancy | |
| GLANCY BINKOW & GOLDBERG | |
| 1801 Avenue of the Stars, Suite 311 | |
| Los Angeles, CA 90067 | *Attorneys for Michael Orlando* |
| Tel.: (310) 201-9150 | |
| | |
| *Attorneys for Kwok Yau Tong* | |
| Jonathan M. Stein | Betsy C. Manifold |
| JONATHAN M. STEIN LAW OFFICES | Francis A. Bottini, Jr. |
| 197 S Federal Highway, Suite 200 | Francis M. Gregorek |
| Boca Raton, FL 33432 | Rachele R. Rickert |

DOCS\232239v1

-4-

| | |
|---|---|
| 561-750-3000<br><br>*Attorneys for James Dolan* | WOLF HALDENSTEIN ADLER FREEMAN & HERZ<br>Symphony Twr<br>750 B St, Ste 2770<br>San Diego, CA 92101<br>Tel.: (619) 239-4599<br>Fax: (619) 234-4599<br><br>*Attorneys for Ivan Meneses* |
| William S. Lerach<br>Darren J. Robbins<br>LERACH COUGHLIN STOIA GELLER RUDMAN AND ROBBINS<br>401 B Street, Suite 1700<br>San Diego, CA 92101-4297<br>Tel.: (619) 231-1058<br>Email: denisey@lcsr.com<br><br>*Attorneys for Douglas Rose* | Evan J. Smith<br>Marc L. Ackerman<br>BRODSKY AND SMITH<br>333 East City Avenue, Suite 602<br>Bala Cynwyd, PA 19004<br>Tel.: (610) 667-6200<br><br>*Attorneys for Kok Yeah* |
| Deborah R. Gross<br>BERNARD M. GROSS LAW OFFICES<br>1515 Locust St, 2nd Fl.<br>Philadelphia, PA 19102<br>Tel.: (215) 561-3600<br><br>*Attorneys for James Stellato* | Robert I, Harwood<br>Joshua D, Glatter<br>WECHSLER HARWOOD<br>488 Madison Avenue<br>8th Floor<br>New York, NY 10022<br>Tel.: (212) 935-7400<br><br>*Attorneys for Kwok Yau Tong* |
| *Defendants* | |
| Robert Dell Angelo<br>Munger Tolles & Olson Llp<br>355 South Grand Avenue, 35th Floor<br>Los Angeles, CA 90071<br>Tel: (213) 683-9100<br>(213) 687-3702 (fax) | |

SCANNED

DOCS\223239v1

1
2
3
4
5        IN THE UNITED STATES DISTRICT COURT
6        FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8    RICHARD CURTIS, on behalf of himself and          No. C 04-2275 SI
     all others similarly situated,
9                                                       CLASS ACTION
                    Plaintiffs,
10                                                      ORDER CONSOLIDATING ACTIONS
           v.                                           AND APPOINTING LEAD PLAINTIFF
11                                                      AND LEAD COUNSEL
     BEA SYSTEMS, INC., ALFRED S. CHUANG,
     CHARLES L. ILL, III, and THOMAS M.
12   ASHBURN,
13                  Defendants.
                                              /
14
          On September 24, 2004, the Court heard argument on motions to consolidate various related securities
15
     class actions and competing motions to appoint lead plaintiff and lead counsel. Having considered the papers
16
     filed and the argument of counsel, the Court GRANTS the motion to consolidate these actions, appoints ARCA
17
     S.p.A. lead plaintiff and appoints its counsel, Green & Jigarjian and Schiffrin & Barroway, lead counsel.
18
19                                          BACKGROUND
20
          Plaintiffs Tareq Zuaiter, John E. Kalil, and Roland Pardun ("the Zuaiter Group") and ARCA S.G.R.
21
     S.p.A. ("ARCA") are members of a class bringing a securities class action against defendant BEA Systems,
22
     Inc. ("BEA Systems" or the "Company") under Sections 10(b) and 20(a) of the Securities Exchange Act of
23
     1934 (the "'34 Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the
24
     Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5.
25
          BEA Systems is a provider of application infrastructure software and related services. Compl. ¶ 2.
26
     Specifically, a product called the "BEA WebLogic Enterprise Platform" provides application infrastructure "for
27
     building and deploying distributed, integrated information technology environments, allowing customers to
28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  integrate private client/server networks, the Internet, intranets, extranets, virtual private networks, and

2  mainframe and legacy systems as system components." Id. The Company's executive offices are in San Jose,

3  where its day-to-day operations occur. Id. at ¶ 7(b). Plaintiffs allege that the Company and certain of its

4  officers and directors artificially inflated the Company's stock price during the class period, November 13,

5  2003 through May 13, 2004, by issuing materially false and misleading statements regarding BEA's business

6  and prospects. Id. at ¶ 3.

7       On May 13, 2004, BEA reported disappointing first quarter results and attributed these results to "the

8  difficult selling environment" and "sales execution issues." Id. at ¶ 3. Company shares fell 30% to $8 per

9  share. Id. at ¶ 3. Plaintiffs allege that defendants knew and concealed the real reasons for the first quarter

10 results: (1) the Company was experiencing sales execution problems in its licensing division, which would result

11 in license reserve being down; (2) a reorganization of the Company's sales' personnel disrupted sales during

12 the preceding quarter; (3) the Company's WebLogic 8.1 Platform product was not selling as well as defendants

13 claimed, and was not "revolutionary"; (4) the Company's North American reserves were disrupted by a

14 transfer of medium and small businesses to the General Accounts Team; and (5) the Company was

15 experiencing weakness in its telecom vertical business. Id. at ¶¶ 4(a)-(d); 23(a)-(e).

16      Because of defendants' false statements, the Company's stock price traded at inflated prices, as high

17 as $14 per share. Id. at ¶ 5. The Company's officers and directors sold more than $13 million worth when

18 the stock traded at its allegedly artificially inflated price. Id. Plaintiff and other class members allegedly suffered

19 injury when they purchased the Company's stock at artificially inflated prices. Id. at ¶ 27-28.

20      The first of seven related securities class actions was filed against BEA Systems on June 9, 2004.

21 ARCA Mot. for Appointment as Lead Plaintiff ("ARCA Mot.") at 3:12. Between June 9, 2004 and July 17,

22 2004, six more suits were filed in this District. Id. at 1:15-16. As required by § 21 D(a)(3)(A)(I) of the

23 Exchange Act, a notice was published over Business Wire on June 9, 2004, advising class members of the

24 existence and nature of the litigation. Decl. of Patrice L. Bishop ("Bishop Decl."), Ex. A; Decl. of Darren J.

25 Check ("Check Decl."), Ex. B. The notice set a 60 day window for class members to appear and move for

26 appointment as lead plaintiff, by August 9, 2004. Id. Three motions were filed within the time limit, two of

27

28

2

United States District Court
For the Northern District of California

1    which are now before the Court, one by the Zuaiter Group, and one by ARCA.[1]  In addition, both movants

2    have moved to have all the actions consolidated.

3          The Zuaiter Group is comprised of three individuals who collectively purchased 48,380 shares of BBA

4    systems stock during the Class Period.  Zuaiter Group's Mot. for Appointment as Lead Plaintiff ("Zuaiter

5    Group Mot.") at 5:9-10.  ARCA is a mutual fund manager based in Milan, Italy.  ARCA Mot. at 2:4; Decl.

6    of John W. Pillette ("Pillette Decl."), Ex. A (Decl. of Dr. Attilio Ferrari) ¶ 2.

7          Now before the Court are the two competing motions for appointment of lead plaintiff and approval

8    of counsel, one by the Zuaiter Group, represented by Stull, Stull & Brody, LLP; and one by ARCA,

9    represented by Schiffrin & Barroway, LLP and Green and Jigarjian, LLP.

10

11                                    **LEGAL STANDARD**

12   **A.    Motion to consolidate**

13         Under Rule 42(a) of the Federal Rules of Civil Procedure:

14         When actions involving a common question of law or fact are pending before the court, it  may order
           a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions
15         consolidated; and it may make such orders concerning proceedings therein as may tend to avoid
           unnecessary costs or delay.
16
17   Courts have recognized that securities class actions are particularly suited to consolidation to help expedite

18   pretrial proceedings, reduce case duplication, avoid the involvement of parties and witnesses in multiple

19   proceedings, and minimize the expenditure of time and money by everyone involved.  See In re Equity Funding

20   of Amer. Sec. Litig., 416 F. Supp. 161, 176 (C.D. Cal. 1976) (citation omitted).  A court must rule on a

21   motion to consolidate before it can rule on a motion to appoint a lead plaintiff.  Securities Exchange Act, §

22   21D(a)(3)(B)(ii), 15 U.S.C. § 78u-4(a)(3)(B)(ii).

23

24

25   **B.    Motion to appoint lead plaintiff**

26         It has been long recognized that private securities litigation provides "'a most effective weapon in the

27   _____

28   [1] Cement Masons and Plasterers Retirement Trust, Brian A. Metz and Mustapha Bahij also filed a
     motion for appointment of lead plaintiff and counsel, but withdrew that motion on August 27, 2004.

                                           3

United States District Court
For the Northern District of California

1   enforcement' of the securities laws and [is] 'a necessary supplement to [administrative] action.'" Bateman

2   Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 310, 105 S. Ct. 2622 (1985). Although Congress

3   affirmed that such litigation "is an indispensable tool with which defrauded investors can recover losses," it

4   enacted the Private Securities Litigation Reform Act of 1995 (PSLRA) in response to a widespread perception

5   of abuse in securities class actions. Joint Explanatory Statement of the Committee of Conf., Conference Report

6   on Sec. Litig. Reform, H.R. Conf. Rep. No. 104-39 at 31 (1995). Section 21D of the PSLRA provides

7   well-defined standards and procedures for selecting lead plaintiffs in a securities class action and is "intended

8   to encourage the most capable representatives of the plaintiff class to participate in class action litigation and

9   to exercise supervision and control of the lawyers for the class." H.R. 104-39 at 32. See generally In re

10  Microstrategy Inc. Sec. Litig., 110 F. Supp. 2d 427, 432-436 (E.D. Va. 2000).

11          Under the procedures set out in the PSLRA, all proposed lead plaintiffs must have submitted a sworn

12  certification setting forth certain facts designed to assure the court that the plaintiff (i) has suffered more than

13  a nominal loss, (ii) is not a professional litigant, and (iii) is otherwise interested and able to serve as a class

14  representative. 15 U.S.C. § 78u-4(a)(2)(A). The plaintiff in the first lawsuit to be filed must additionally

15  publish notice of the complaint in a widely circulated business publication within twenty days of filing the

16  complaint. Id. at § 78u-4(a)(3)(A)(I). The notice must include a description of the claim and notify

17  prospective class members that they may move within 60 days of the notice to be named lead plaintiff.

18          Once applications for lead plaintiff status are closed, the district court must determine who among the

19  movants for lead plaintiff status is the "most adequate plaintiff." Id. at § 78u-4(a)(3)(B)(I). The PSLRA directs

20  courts to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court

21  determines to be most capable of adequately representing the interests of class members . . . ." Id. Toward

22  this end, the court must consider three factors: "the court shall adopt a presumption that the most adequate

23  plaintiff . . . is the person or group of persons that - (aa) has either filed the complaint or made a motion in

24  response to a notice . . .; (bb) in the determination of the court, has the largest financial interest in the relief

25  sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil

26  Procedure." Id. at § 78u-4(a)(3)(B)(iii)(I). The presumption of most adequate plaintiff may be rebutted by

27  evidence that the designated plaintiff "will not fairly and adequately protect the interests of the class" or "is

28

4

1  subject to unique defenses that render such plaintiff incapable of adequately representing the class." Id. at §

2  78u-4(a)(3)(B)(iii)(II).

3       In the Ninth Circuit, In re Cavanaugh, 306 F.3d 726, 729-30 (9th Cir. 2002), governs lead plaintiff

4  selection and establishes a three-step process. First, as discussed above, timely and complete notice of the

5  action must be published. Id. at 729. Second, the district court considers the losses suffered by potential lead

6  plaintiffs and selects "the one who 'has the largest financial interest in the relief sought by the class' and

7  'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" Id. at 730, citing 15

8  U.S.C. § 78u-4(a)(3)(B)(iii)(I). Thus the court must determine which plaintiff "has the most to gain from the

9  lawsuit." Cavanaugh, 306 F.3d at 730. Finally, the court focuses on that plaintiff to ensure that the proposed

10  lead plaintiff "satisfies the requirements of [Fed. R. Civ. Pro.] 23 (a), in particular those of 'typicality' and

11  'adequacy.'" Id.

12       A plaintiff who satisfies the first two steps becomes the "presumptively most adequate plaintiff." Id.

13  In step three, other plaintiffs have the opportunity to rebut the presumptive lead plaintiff's showing of typicality

14  and adequacy. Id. at 730, citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

15       Once the court has designated a lead plaintiff, the lead plaintiff "shall, subject to the approval of the

16  court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). A court generally

17  should accept the lead plaintiff's choice of counsel unless it appears necessary to appoint different counsel to

18  "protect the interests of the class." Id. at § 78u-4(a)(3)(B)(iii)(II)(aa). In the Ninth Circuit, Cavanaugh

19  establishes the standard for approval of lead counsel. "[T]he district court does not select class counsel at all,"

20  id. at 732; instead, the district court generally approves the lead plaintiff's selection of counsel.

21

22

23

24  ///

25

26

27

28

5

United States District Court
For the Northern District of California

**DISCUSSION**

**A.    Motion to consolidate**

Both proposed lead plaintiffs have filed motions to consolidate the seven related cases pending in the Northern District of California against BEA Systems, Inc., and both motions are unopposed.  The Court GRANTS the motions to consolidate.

**B.    Competing motions to appoint lead plaintiff and approve lead counsel**

The notice of this action was posted on Business Wire, a widely circulated national business-oriented publication.  See Bishop Decl., Ex. A; Check Decl., Ex. B.  The Zuaiter Group and ARCA have both filed timely motions for appointment as lead plaintiff and submitted acceptable sworn certifications.  See Bishop Decl., Ex. B; Check Decl., Ex. A.  The only task that remains is to determine which movant is the most adequate plaintiff.

**1.    Financial interest in the litigation**

The Court must first determine which movant has "the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  The Zuaiter Group asserts that its financial interest in the litigation is $242,625, distributed as follows: Zuaiter – $138,221; Kalil – $55,804; and Pardun – $48,600.  Zuaiter Group's Mot. at 2:20; Bishop Decl., Exs. B,C.  ARCA asserts that it has the largest financial interest in the case, with losses of $255,042. ARCA's Mot. at 2:1-2; Check Decl., Ex. C.

ARCA claims that the Zuaiter Group's loss figures are inflated because group member John Kalil's sales figures for May 13, 2004, do not match the Bloomberg trading data for that date.  Specifically, Kalil states that he sold 3,800 shares at $9.22 per share and 10,200 shares at $9.10 per share for a loss of $55,804, but ARCA states that BEA Systems stock traded at a low of $10.49 per share that day.  See ARCA Opp'n, Ex. A.  Applying these figures, ARCA calculates the Zuaiter Group's total loss at $223,621.  ARCA's Opp'n at 3:13.  The Zuaiter Group counters that, while BEA stock did close on May 13, 2004 at $10.78, the stock price dropped on after-hours trading and opened at $9.04 on May 14, 2004.  Zuaiter Group's Surreply at 1:8-11; Exs. 1-2.

6

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

1    Regardless of which figures are used to calculate the Zuaiter Group's losses, the Court finds that

2    ARCA has the largest financial interest in the litigation, and is thus entitled to the presumption of most adequate

3    plaintiff, if it meets the requirements of typicality and adequacy.

4

5    **2.    Typicality and adequacy**

6    While the Zuaiter Group does not dispute ARCA's higher loss figures, it argues that ARCA should not

7    serve as lead plaintiff because ARCA is an atypical member of the class. Specifically, the Zuaiter Group alleges

8    that ARCA "engaged in a suspicious pattern of trading which included short selling BEA stock" during the Class

9    Period. Zuaiter Group's Opp'n at 2:21-24. As an alleged short-seller and possible "hedge fund," the Zuaiter

10    Group contends, ARCA intended to drive down the price of stock so that it could buy more at a lower price,

11    and therefore its interests are not aligned with those of other class members.[2]  In addition, the Zuaiter Group

12    questions whether ARCA's clients have authorized ARCA to litigate on their behalf, and points out that there

13    is a pending case before the Ninth Circuit regarding whether an "investment advisor" may be appointed as lead

14    plaintiff. Id. at 3:22-25; see id., Ex. 1 (In re Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund

15    v. Anchor Capital Advisors, No. 04-73146). It contends that ARCA has not provided specific information

16    about its structure, clients, whether it has notified its clients of its motion for appointment as lead plaintiff, or

17    what "sophistication and resources" it has to "effectively manage this litigation." Zuaiter Group Opp'n at 1:7-

18    14.

19    ARCA responds that Zuaiter Group has not shown that ARCA engaged in short selling or established

20    why ARCA "appears" to be a hedge fund or asset manager. ARCA states that it is a mutual fund manager that

21    invested in BEA Systems on behalf of its own mutual funds, not on behalf of individual clients who control those

22    funds or receive investment advice from ARCA, and attaches a declaration from its Managing Director in

23    support of these claims. ARCA Reply at 4:10-14; see Pillette Decl., Ex. A (Decl. of Dr. Attilio Ferrari) ¶ 2,

24

25    [2] The Zuaiter Group bases its claim that ARCA engaged in short-selling by pointing to the fact that
ARCA purchased 254,388 shares of BEA Systems stock for $12.2776 on November 19, 2003; it sold them

26    for a profit of $0.2206 per share, a total of $56,118 one week later; just over three weeks later, it purchased
353,715 more shares for $12.3378 and sold these over the next two months for profits ranging from $1.7957

27    per share to $0.6074 per share, totaling $371,269. It then had 88,430 shares left, and it bought 88,430 more,
of which it sold 36,397 two weeks before the May 13, 2004 announcement. See Zuaiter Group Opp'n at 3:7-

28    16. Without more, the Court is unpersuaded that this reflects short-selling.

United States District Court
For the Northern District of California

1    4. Therefore, ARCA has full authority to bring suit, and Dr. Ferrari will actively monitor the litigation. Id. at

2    ¶ 4-5. ARCA also argues that, as a large investor, it is precisely the kind of prototypical "institutional investor"

3    that Congress intended to serve as lead plaintiff under the PSLRA. ARCA Mot. at 8:12-25.

4            By contrast, ARCA argues, the Zuaiter group does not survive the "rule of reason," under which the

5    proposed group of plaintiffs must "actively represent the class." This Court applies this rule of reason on a

6    case-by-case basis to determine whether an asserted group "has demonstrated the ability to represent the class

7    and direct the litigation without undue influence from counsel." In re Versata, Inc. Sec. Litig., 2001 U.S. Dist.

8    LEXIS 24270, at *21 (N.D. Cal. Aug. 20, 2001). Because the Court lacks any specific information about

9    the three individuals in the Zuaiter Group, ARCA argues that it cannot ensure that this group of plaintiffs has

10    the sophistication and business knowledge to adequately represent the class and direct the litigation without

11    undue influence from counsel. In re Versata, at *18-*22.[3]

12            The Court finds that ARCA meets the typicality and adequacy requirements. To meet the typicality

13    requirement, the claims of a lead plaintiff and class members need not be identical. In re Enron Corp. Sec.

14    Litig., 206 F.R.D. 427, 445 (S.D. Tex. 2002), citing In re Lucent Techs., Inc. Sec. Litig., 194 F.R.D. 137,

15    150 (D.N.J. 2000) ("the typicality requirement is satisfied when the plaintiff's claim arises from the same event

16    or course of conduct that gives rise to the claims of other members and is based on the same legal theory.").

17    In fact, "the test for typicality is not demanding . . . . [T]he critical inquiry is whether the class representative's

18    claims have the same essential characteristics of the putative class." In re Enron, at 445, n.10, citing Stirman

19    v. Exxon Corp., 280 F.3d 554, 562-63 (5th Cir. 2002). As the court explained in Deutschman v. Beneficial

20    Corp., 132 F.R.D. 359, 373 (D. Del., 1990), "the focus of the typicality inquiry is not on plaintiff's behavior,

21    but defendants'." If defendants' course of conduct gave rise to all class members' claims and if "defendants

22    have not taken any action unique to the named plaintiff, then the representative's claim is typical." Id. (citations

23    omitted). Here, the claims of all plaintiffs, including ARCA, are based on whether BEA Systems' alleged

24    misrepresentations injured its stockholders by artificially inflating its stock price. Moreover, the Court is

25

26            [3] The Court does not agree with ARCA that specific information from proposed lead plaintiffs is always
27    required. In Versata, the Court relied on declarations submitted by the putative plaintiffs to establish their
    business sophistication, but did not expressly require them, like the district court in In re Network Associates,
28    Inc. Sec. Litig., 76 F.Supp.2d 1017 (N.D. Cal. 1999).

United States District Court
For the Northern District of California

1    satisfied that ARCA is neither a hedge fund engaged in short selling nor an investment advisor acting without

2    the authorization of its clients.

3          The representative must have sufficient interest in the case's outcome to ensure vigorous advocacy.

4    The Court finds no evidence of any antagonism between the interests of ARCA and the class.  ARCA has

5    certified its willingness to serve as representative plaintiff and has retained counsel experienced in litigation

6    securities class actions.  No challenge has been made to ARCA's selection of counsel.

7          The Court finds that ARCA, as the plaintiff with the largest financial stake in the litigation, also satisfies

8    the typicality and adequacy tests necessary to serve as lead plaintiff in this litigation.

9

10                                          CONCLUSION

11         For the foregoing reasons and for good cause shown, the Court hereby GRANTS the motions to

12   consolidate all related actions.  The Court GRANTS ARCA's motion for appointment as lead plaintiffs along

13   with Schiffrin & Barroway LLP as lead counsel and Green & Jigarjian LLP as liaison counsel.  The motion by

14   the Zuaiter Group is DENIED.

15         Counsel for ARCA is ordered to prepare, circulate for approval as to form and submit to the Court

16   an order of consolidation and an Amended Consolidated Complaint, all to be filed on or before October

17   15, 2004.

18

19   IT IS SO ORDERED.

20

21   Dated: September 24, 2004                              S/Susan Illston

22                                                         _____
                                                          SUSAN ILLSTON
23                                                        United States District Judge

24

25

26

27

28

                                              9

LEXSEE 67 F SUPP 2D 1129

**DAVID TAKEDA, on behalf of himself and all others similarly situated, Plaintiffs, vs. TURBODYNE TECHNOLOGIES, INC., and EDWARD HALIMI, Defendants.**

**CASE NO. CV 99-00697 MMM (BQRx)**

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

*67 F. Supp. 2d 1129; 1999 U.S. Dist. LEXIS 8965; Fed. Sec. L. Rep. (CCH) P90,516*

**May 28, 1999, Decided**
**May 28, 1999, Filed; June 4, 1999, Entered**

**DISPOSITION:** [**1] Plaintiffs' motions to consolidate six related actions and Kadner Group's alternative motion for designation of Kadner-7 as Lead Plaintiffs in this case granted. Zaks Group's motion for appointment as Lead Plaintiffs denied and Kadner-7's selection of co-Lead Counsel approved.

**COUNSEL:** For DAVID TAKEDA, plaintiff: Ira M Press, Daniel Hume, Kirby IcInerney & Squire, New York, NY.

For DAVID TAKEDA, plaintiff: Lionel Z Glancy, Peter Arthur Binkow, Lionel Z Glancy Law Offices, Los Angeles, CA.

**JUDGES:** MARGARET M. MORROW, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** MARGARET M. MORROW

**OPINION**

[*1130] ORDER GRANTING MOTIONS OF ZAKS GROUP AND KADNER GROUP FOR CONSOLIDATION OF RELATED ACTIONS; GRANTING MOTION OF KADNER-7 FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPOINTMENT OF LEAD COUNSEL; AND DENYING MOTION OF ZAKS GROUP FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPOINTMENT OF LEAD COUNSEL

This is a securities fraud action brought pursuant to the Securities Exchange Act of 1934 and the Private Securities Litigation Reform Act of 1995 ("PSLRA" or the "Reform Act"). Two plaintiff groups move separately for the consolidation of this case with related actions, for their respective appointment as Lead Plaintiffs, and for appointment [**2] of their counsel as Lead Counsel.

The six cases allege the same misrepresentations and omissions by Turbodyne and its representatives, and seek to establish definitions of the Class and Class Periods that are either identical to one another or nearly so. All parties that have addressed the issue agree the cases should be consolidated. Consequently, in the interest of judicial economy and to relieve the parties and absent class members of the burdens associated with participating in duplicative litigation, the court concludes that the six related cases should be consolidated.

As respects the moving parties' applications for appointment as Lead Plaintiffs, each has aggregated the claims of hundreds of class plaintiffs in an effort to establish that its group has the greatest stake in this litigation. Evidently recognizing [*1131] that such unwieldy groups are not capable of directing the litigation effectively, each group has alternatively proposed that a smaller subset of persons be collectively denominated Lead Plaintiffs. Thus, in addition to the larger "Zaks Group" and "Kadner Group" -- each comprised of hundreds of persons -- smaller, more manageable subsets are also proposed, dubbed [**3] the "Zaks-9" and the "Kadner-7" respectively.

The Kadner-7 have collectively suffered losses approaching $ 1 million, and five of its members suffered

67 F. Supp. 2d 1129, *1131; 1999 U.S. Dist. LEXIS 8965, **3;
Fed. Sec. L. Rep. (CCH) P90,516

the greatest individual losses of any plaintiffs identified to date. [1] The Reform Act requires designation of the person or group with the largest losses as Lead Plaintiff unless another class member successfully rebuts the presumption that such individual or group is the most adequate class representative. The presumption can be rebutted by evidence that the person or group with the largest losses will not fairly and adequately protect the interests of the class, or that the defendants have unique defenses against such individual or group that make adequate representation of the claim impossible. Neither the Zaks Group nor any other class member has offered convincing rebuttal evidence of this type. Additionally, it is the court's view that the Kadner-7 are typical of the class claimants and will adequately represent their interests. Consequently, the court grants Kadner Group's alternative motion for designation of the Kadner-7 as Lead Plaintiffs in this case.

[1]    Plaintiffs allege that Kadner-7 members sustained the following losses: Ralf Kadner, $ 327,843.85; Gordon Williamson & Associates, $ 286,039 (or $ 495,764); Louis T. Inglehart, $ 160,416; Ronald Shoen, $ 152,159; Gunther Wrieden, $ 148,490; Combined Atlantic Carriers, $ 90,514; and Dennis Jones, $ 71,346.84.

[**4] I. FACTUAL BACKGROUND

The Complaints filed on behalf of investor-plaintiffs by the Law Offices of Lionel Z. Glancy describe the factual basis of the four suits, the Class, and the Class Period in identical terms. In each case, the plaintiff class encompasses public investors who purchased the common stock of Turbodyne between March 1, 1997 and January 22, 1999 (the "Class Period"). [2] The suit brought on behalf of Shmuel Zaks by Weiss & Yourman is based on similar facts and alleges the same Class Period. [3] The suit brought on behalf of G. Giovanni Giammarco by the Law Office of D. Joshua Staub is based on similar facts, although the Class Period is defined as beginning on March 26, 1997, rather than March 1, 1997. [4]

[2]    *Takeda v. Turbodyne, et al., 1999 U.S. Dist. LEXIS 8965*, Case No. CV 99-697 MMM (BQRx), Complaint, P 1; *David Roy Linscott v. Turbodyne Technologies, Inc. and Edward Halimi*, Case No. CV-99-00933 MMM (RZx), Complaint, P 1; *Ann Gentile v. Turbodyne Technologies, Inc. and Edward Halimi*, Case No. CV-99-02194 MMM (AJWx) Complaint, P 1;

*Helmut Siebert v. Turbodyne Technologies, Inc. and Edward Halimi*, Case No. CV-99-01288 MMM (RCx), Complaint, P 1.

[**5]
[3]    See *Shmuel Zaks v. Turbodyne Technologies, Inc., Edward Halimi, Walter F. Ware and Leon E. Nowek*, Case No. CV-99-00743 MMM (RZx), Complaint, P 1.
[4]    See *G. Giovanni Giammarco V. Turbodyne Technologies, Inc., and Edward Halimi*, Case No. CV-99-02751 MMM (Ex), Complaint, P 1.

Turbodyne is a Delaware Corporation with its principal place of business in Woodland Hills, California. Turbodyne and its subsidiaries design, develop, manufacture, and market proprietary products that enhance performance and reduce emissions of internal combustion engines. They also manufacture aluminum cast automotive products, including engine components and aftermarket specialty wheels. [5]

[5]    *Id.*, P 2.

Turbodyne was listed on the Vancouver Stock Exchange until July 19, 1997. It commenced listing on the NASDAQ Small Capital Exchange on March 24, 1997. [6] The suits allege that throughout the time Turbodyne traded on both the Vancouver [**6]   [*1132] Exchange and NASDAQ, it issued a series of public statements that portrayed it as a booming company, which was experiencing and would continue to experience rapidly rising sales and profits on its core products and new product offerings. Plaintiffs contend that these public statements included material omissions and misleading statements regarding the demand for and market acceptance of Turbodyne's products, the strength of its technologies and competitiveness, and the trends in its business. Plaintiffs further allege that these statements drove Turbodyne's stock price up to approximately $ 16 per share. [7]

[6]    *Id.*, P 3.
[7]    *Id.*, P 4.

The asserted public statements represented, *inter alia*, that Turbodyne's "breakthrough" technology was protected by more than 30 granted and pending patents in the United States and internationally, that the United States Environmental Protection Agency had certified certain of Turbodyne's products for special urban bus retrofitting projects, that the United Nations [**7] had

67 F. Supp. 2d 1129, *1132; 1999 U.S. Dist. LEXIS 8965, **7;
Fed. Sec. L. Rep. (CCH) P90,516

endorsed the company's products, and that a United Nations representative had accompanied defendant Halimi to London and Moscow to assist in product sales negotiations. [8]

8   *Id.*, P 5.

The false and misleading nature of defendants' public statements allegedly remained undisclosed throughout the Class Period. On January 22, 1999, the last day of the Class Period, NASDAQ announced that it would join with EASDAQ, and halt trading in Turbodyne stock unit at least February 3, 1999. The EASDAQ Market Authority initiated disciplinary proceedings against Turbodyne for allegedly issuing false and misleading price sensitive information to the investing public. [9]

9   *Id.*, P 6.

Two plaintiffs groups have filed motions seeking to consolidate this case with others pending before the court, requesting appointment as Lead Plaintiffs, and seeking **[**8]** approval of their respective counsel as Lead Counsel. When multiple putative classes assert substantially the same claim under the Reform Act, a court should first consolidate the actions (see *15 U.S.C. § 78u-4(a)(3)(B)(ii)*), and as soon as practicable thereafter, appoint as lead plaintiff, "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" (*15 U.S.C. § 78u-4(a)(3)(B)(i)*). If several persons or entities seek to represent the class, the Reform Act establishes a presumption that the person or entity with "the largest financial interest in the relief sought by the class" is the "most adequate plaintiff" and may be designated Lead Plaintiff. See *15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)*. That plaintiff then may select counsel to represent the class, subject to the court's approval. See *15 U.S.C. § 77z-1(a)(3)(B)(v)*. The expectation is that the person or group with the largest financial stake can best prosecute the claims, and will best be able to select, negotiate with, and monitor class counsel. The Lead Plaintiff presumption may be rebutted, however, and the district court is charged **[**9]** with oversight of the process. See *15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)*.

## II. DISCUSSION

### A. Consolidation Of Pending Actions

The Private Securities Litigation Reform Act of 1995 ("PSLRA"), requires that courts decide motions to consolidate related securities class actions filed against a defendant, such as these actions against Turbodyne, prior to addressing motions for appointment of Lead Plaintiffs brought by competing plaintiff groups. See *15 U.S.C. § 78u-4(a)(3)(B)(ii)*. [10] *Rule 42(a) of* **[*1133]** *the Federal Rules of Civil Procedure* provides:

> "When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as many tend avoid unnecessary cost or delay." See *Fed.R.Civ.P. 42(a)*.

The PSLRA directs that cases should be consolidated where, as here, there is "more than one action on behalf of a class asserting substantially the same claim or claims." See *15 U.S.C. § 78u-4(a)(3)(B)(ii)*. Neither *Rule 42* nor the PSLRA demands that the actions be identical **[**10]** before they may be consolidated. Rather, in deciding whether to consolidate actions under *Rule 42(a)*, a court must balance the savings of time and effort consolidation will produce against any inconvenience, delay, confusion, or prejudice that may result. [11]

> 10   That section provides: "If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination required by clause (i) until after the decision on the motion to consolidate is rendered. As soon as practicable after such decision is rendered, the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions in accordance with this paragraph."
>
> 11   See *Burrus v. Turnbo, 743 F.2d 693, 702 (9th Cir. 1984)*, vacated on other grounds sub nom. *Hijar v. Burrus, 474 U.S. 1016, 88 L. Ed. 2d 548, 106 S. Ct. 562 (1985)*.

The **[**11]** court has reviewed the complaints in the six separate cases on file, all of which involve nearly

67 F. Supp. 2d 1129, *1133; 1999 U.S. Dist. LEXIS 8965, **11;
Fed. Sec. L. Rep. (CCH) P90,516

identical claims. [12] The four complaints filed by plaintiffs Takeda, Linscott, Gentile, and Siebert allege a Class Period of March 1, 1997 to January 22, 1999. This is identical to the class period asserted in *Shmuel Zaks v. Turbodyne, et al.*, and differs only slightly from the March 26, 1997 through January 22, 1999 period alleged in the sixth case, *Giammarco v. Teledyne, et al.* Courts have generally held that differing class periods alone will nor defeat consolidation or create a conflict. [13] Here, all of the claims are based on the same alleged misrepresentations and omissions. Moreover, plaintiffs purchased and sold their Turbodyne shares in the same two markets. There is substantial overlap in the defendants named in the several suits. Turbodyne and Halimi are named in all the suits; the Zaks plaintiffs have added Walter Ware and Leon Nowek. Consolidating these cases for all purposes will be the most efficient solution for the court, and will ease the litigation burden on all parties involved. In fact, both plaintiffs groups have moved for consolidation, and all defendants [**12] have indicated that they favor it as well. Absent class members will best be served by consolidation because they will have just one case to monitor as it proceeds through litigation. Thus, because the court finds that the interests of judicial economy and convenience to all parties strongly favor consolidation, and because the court has not identified any inconvenience, delay, confusion, or prejudice that will result, it consolidates the six actions identified above pursuant to *Federal Rule of Civil Procedure 42.*

    12   The six cases are: *G. Giovanni Giammarco v. Turbodyne Technologies, Inc., and Edward Halimi*, Case No. CV-99-02751 MMM (Ex); *Ann Gentile v. Turbodyne Technologies, Inc. and Edward Halimi*, Case No. CV-99-02194 MMM (AJWx); *David Takeda v. Turbodyne Technologies, Inc. and Edward Halimi, 1999 U.S. Dist. LEXIS 8965*, Case No. CV-99-00697 MMM (BQRx); *David Roy Linscott v. Turbodyne Technologies, Inc. and Edward Halimi*, Case No. CV-99-00933 MMM (RZx); *Helmut Siebert v. Turbodyne Technologies, Inc. and Edward Halimi*, Case No. CV-99-01288 MMM (RCx); *Shmuel Zaks v. Turbodyne Technologies, Inc., Edward Halimi, Walter F. Ware and Leon E. Nowek*, Case No. CV-99-00743 MMM (RZx).

[**13]

    13   See, e.g. *In re Olsten Corp. Securities Litig., 3 F. Supp. 2d 286, 293 (E.D.N.Y. 1998)*

(consolidating securities fraud class action cases even though the class periods were slightly different); *Lax v. First Merchants Acceptance Corp., 1997 U.S. Dist. LEXIS 11866, 1997 WL 461036.* *7 (N.D.Ill. 1997) ("varying class periods . . . can nevertheless be harmonized because all of the complaints are based upon a common set of operative facts.").

**B. Appointment Of Lead Plaintiff**

    On January 22, 1999, the Law Offices of Lionel Z. Glancy filed the first action [*1134] brought against Turbodyne as a result of its alleged misstatements and omissions on behalf of plaintiff David Takeda. The firm caused notice to be published on the Business Wire [14] the same day, within the 20 day period established by the Reform Act. [15] Glancy's notice satisfied the content requirements of the Reform Act by advising of the pendency of the action, the claims asserted therein, the purported class period, and the deadline by which motions to serve as lead plaintiff had to be filed. [16] The Reform Act provides that within "60 days after the date [**14] on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff." *15 U.S.C. § 78u-4(a)(3)(A)(i)(II).* Two motions for designation of lead plaintiff were received within that time period, and are now pending before the court. [17]

    14   Neither plaintiff group nor defendants dispute that Glancy's Business Wire posting satisfied the statutory notice requirement. Courts, indeed, have found that such notice meets the requirements of the Reform Act. See, e.g., *Sherleigh Associates LLC v. Windmere-Durable Holdings, Inc., 1999 WL 137746, *3 (S.D.Fla. March 19, 1999)* (notice posted on the Business Wire was sufficient under the Reform Act); *Christman v. Brauvin Realty Advisors, Inc., 1999 WL 47134, *2 (N.D.Ill. 1999)* (same); *In re Milestone Scientific Securities Litigation, 183 F.R.D. 404, 413, n. 10 (D.N.J. Oct. 22, 1998)* (finding that the Business Wire is a business-oriented wire service within the meaning of the PSLRA because it is "widely-circulated"); *Greebel v. FTP Software, Inc., 939 F. Supp. 57, 62 (D.Mass. 1996)* ("The mere fact that Business Wire arrives at a print publication via an electronic signal, rather than in the manner of a traditional wire service, does not disqualify it as a 'wire service' within the meaning of the statute

67 F. Supp. 2d 1129, *1134; 1999 U.S. Dist. LEXIS 8965, **14;
Fed. Sec. L. Rep. (CCH) P90,516

[for Business Wire is subscribed to by] hundreds of print publications and wire services, encompassing news media in all fifty states" and is thus "widely-circulated").

[**15]

15    The Reform Act's notice requirement provides:

> "Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class -- (I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." *15 U.S.C. § 78u-4(a)(3)(A)(i).*

16    Compare *id.* with Glancy Decl., Ex. "A."

17    The motions of both the Zaks Group and the Kadner Group were filed on March 23, 1999, sixty days after January 22, 1999.

Where a court has pending before it one or more class actions arising under the Securities Exchange Act of 1934, the Reform Act directs that a Lead Plaintiff be selected early in the case, and that the Lead Plaintiff's choice of Lead Counsel then be reviewed. The PSLRA provides [**16] that

> "the court . . . shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter . . . referred to as the "most adequate plaintiff") . . . ." *15 U.S.C. § 78u-4(a)(3)(B)(i).*

In selecting the lead plaintiff,

> "the court shall adopt a presumption that the most adequate plaintiff in any private action . . . is the person or group of persons that -- (aa) has either filed the complaint or made a motion [for designation as lead plaintiff]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of *Rule 23 of the Federal Rules of Civil Procedure.*" *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).*

This presumption may be rebutted

> "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff -- (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing [*1135] the class." *15* [**17] *U.S.C. § 78u-4(a)(3)(B)((iii))(II).*

**1. Financial Stake**

The Zaks plaintiffs and Kadner plaintiffs have each assembled a group of several hundred investors whose aggregated losses total more than $ 4 million. The two groups disagree as to which has collectively suffered the greater loss. The court finds it unnecessary to resolve that dispute, because both groups are too large and unwieldy to act effectively as Lead Plaintiffs in this case. A recent case from the District Court for the District of Columbia, *In re Baan Company Securities Litigation, 186 F.R.D. 214, F. Supp. 2d , 1999 U.S. Dist. LEXIS 5219, 1999 WL 223178 (D.D.C. 1999)*, has carefully analyzed how courts should select a Lead Plaintiff group that will be able effectively to manage a securities case. That *Baan* court described the loss of client control that occurs when a class is comprised of many individual with a modest stake:

> "The mere fact that a proposed lead plaintiff group might have the largest combined financial stake, however, does

67 F. Supp. 2d 1129, *1135; 1999 U.S. Dist. LEXIS 8965, **17;
Fed. Sec. L. Rep. (CCH) P90,516

not guarantee client control. A particular concern arises when lead plaintiff status is sought by a 'group' of persons who were previously unaffiliated, each of whom has [**18] suffered modest losses, and who thus have no demonstrated incentive or ability to work together to control the litigation. The problem is made worse if the members have been recruited by counsel. It ordinarily will be the case that such an assemblage will be unable to manage the litigation and control the lawyers. The net result will be that while the 'group nominally has a large stake in the litigation, the lawyers will dominate decisionmaking." *In re Baan Company Securities Litigation, 186 F.R.D. 214, 1999 U.S. Dist. LEXIS 5219, 1999 WL 223178,* *10 (D.C.D.C. 1999).

Although the Reform Act contemplates that the Lead Plaintiff may be a "*group of persons*" rather than a single individual (see *15 U.S.C. § 78u-4(a)(3)(B)((iii))(II)* (emphasis added)), district courts applying the Reform Act have frequently construed this to mean a *small* group of manageable size that is capable of joint decisionmaking regarding the litigation. See, e.g., *In re Advanced Tissue Sciences Sec. Litig., 184 F.R.D. 346, 1998 WL 961283 (S.D.Cal. 1998)* (winnowing a proposed group of 250 to six, because "the idea of appointing over 250 unrelated individual investors as lead plaintiffs runs afoul of Congress'[] [**19] intent in enacting the PSLRA"); *Chill v. Green Tree Financial Corp., 181 F.R.D. 398, 408-09 (D.Minn. 1998)* (winnowing plaintiff group of almost 300 to six).

As one court has warned, "increasing the number of Lead Plaintiffs [will] detract from the Reform Act's fundamental goal of client control as it [will] inevitably delegate more control and responsibility to the lawyers for the class and make the class representatives more reliant on the lawyers." *Gluck v. Cellstar Corp., 976 F. Supp. 542, 549 (N.D.Tex. 1997).* By emphasizing financial stake, the Reform Act establishes a preference that sophisticated institutional investors direct the course of securities cases. See, e.g., *id. at 548* ("The legislative history of the Reform Act is replete with statements of Congress' desire to put control of such litigation in the hands of large, institutional investors"); *Greebel v. FTP*

*Software, Inc., 939 F. Supp. 57, 63-64 (D.Mass. 1996)* (same); *Ravens v. Iftikar, 174 F.R.D. 651, 661 (N.D.Cal. 1997)* ("The Reform Act affords large, sophisticated institutional investors a preferred position in securities class actions. . . . Congress sought to eliminate figurehead plaintiffs [**20] who exercise no meaningful supervision of litigation").

Neither plaintiff group has identified any large institutional investor that seeks to control the case. There are, however, several private investors who lost in excess of $ 100,000, and who presumably have a significant interest in prosecuting the case. To further the purposes of the Reform Act, it is appropriate for the "court to ensure the transfer of 'primary control' of private securities litigation from lawyers to [*1136] investors,'" thereby "'empower[ing the] investors so that they, not their lawyers, control private securities litigation.'" See *Chill, supra, 181 F.R.D. at 407* (quoting Conference Report at 683, 685). Ralf Kadner (of the Kadner-7) alleges that he has suffered losses of $ 327,843.85, more than any other individual investor. Other Kadner-7 members, Gordon Williamson & Associates, Louis Inglehart, Ronald Schoen, and Gunther Wrieden have each suffered losses between $ 148,000 and $ 286,000. [18]

18   At the May 3, 1999 hearing on this matter, the Kadner Group argued that Gordon Williamson & Associates resembles an institutional investor since its principal, Williamson, invests on behalf of others and is a professional investment advisor. The court permitted supplemental briefing regarding Williamson's qualifications. The Kadner Group has submitted Williamson's curriculum vitae and declaration, which together reveal that he has authored numerous books on topics including investment strategies and financial planning, and that he has degrees in these and other areas -- Williamson holds a J.D., an MBA, and is certified by several financial planning organizations. The Zaks Group argues, however, that some of the losses Williamson claims may have been incurred not by Williamson or his company personally, but on behalf of his investment clients. (See Declaration of Gordon Williamson, P 2.) Since the Congressional preference was for large, institutional investors, the court fails to see how this detracts from Williamson's suitability as a lead plaintiff. Moreover, Williamson indicates that his company

67 F. Supp. 2d 1129, *1136; 1999 U.S. Dist. LEXIS 8965, **20;
Fed. Sec. L. Rep. (CCH) P90,516

"invests on its own account," so presumably some portion of its loss was incurred in a personal rather than a representative capacity. In addition to Williamson & Associates, the Kadner-7 includes several other individuals whose individual losses are the largest of all class claimants presently before the court. Williamson's inclusion in this group of claimants with significant losses will add sophistication to the group's oversight of counsel, and will further the goals of the Reform Act.

[**21]  The Zaks Group has not identified any significant respect in which the Kadner-7 will not fairly and adequately protect the interests of the class. Nor has it identified any unique defenses to which the Kadner-7 members are subject such that they are incapable of providing adequate class representation. *Zuckerman v. Foxmeyer Health Corp., 1997 U.S. Dist. LEXIS 23549, 1997 WL 314422*, *2 (N.D.Tex. 1997) (where no purported class member presents evidence to rebut the statutory presumption, movants may be appointed as lead plaintiffs).

**2. Typicality and Adequacy Under *Rule 23***

"A wide-ranging analysis under *Rule 23* is not appropriate [at the initial stage of the litigation] and should be left for consideration on a motion for class certification." *Fischler v. AmSouth Bancorp., 1997 U.S. Dist. LEXIS 2875, 1997 WL 118429*, *2 (M.D.Fla. 1997); see also *Gluck, supra, 976 F. Supp. at 546* ("Evidence regarding the requirements of *Rule 23* will, of course, be heard in full at the class certification hearing. There is no need to require anything more than a preliminary showing at this stage."). Some inquiry into the facts is nonetheless necessary under *Rule 23* to determine whether there is reason to believe that the presumptively most [**22] adequate plaintiff has interests at odds with the remainder of the class. See *Chill, supra, 181 F.R.D. at 408-09.* This inquiry should "focus[] on the qualities of the class representatives enumerated in *Rule 23(a)(3)* and *23(a)(4),* that is typicality and adequacy." *Gluck, supra, 976 F. Supp. at 546.*

**(a) Typicality**

"The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the [Lead Plaintiffs] have incentives that align with those of absent class members so . . . that the absentees' interests will be fairly represented." *Baby Neal v. Casey, 43 F.3d 48, 57 (3d Cir. 1994)* (citation omitted). "Under [*Rule 23's*] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).* "Typicality entails an inquiry whether the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the [*1137] claims of other class members will perforce be based." *Baby* [**23] *Neal, supra, 43 F.3d at 57-58* (internal quotation marks and citations omitted); *Patrykus v. Gomilla, 121 F.R.D. 357, 362 (N.D.Ill. 1988)* (holding that a "representative's claim is typical if it arises from the same . . . practice or course of conduct that gives rise to the claims of the other class members and . . . is based on the same legal theory") (internal quotation marks and citation omitted).

The only respect in which the Kadner-7 plaintiffs are atypical of other class members appears to be the larger size of their losses. Under the Reform Act, that is a proper basis for their selection as Lead Plaintiffs, not a basis for disqualification.

The claims of the Kadner-7 are based on their purchase of Turbodyne stock during the Class Period, allegedly in reliance on the misrepresentations of defendants. The typicality requirement is thus satisfied because their claims arise "from the same event[s] or course of that gives rise to the claims of other class members" and are "based on the same legal theory." See *Baby Neal, supra, 43 F.3d at 58.* The slightly different class period alleged in the *Giammarco* Complaint does not preclude a finding of typicality. "When the [**24] complaints are all based upon a common course of conduct, namely the alleged misrepresentations and omissions of [defendant corporation] and its officers and/or directors, the varying class periods may be harmonized." *Milestone Scientific Securities Litigation, supra, 183 F.R.D. at 416.* Nor does it matter that the Kadner-7 group includes German investors, such as Ralf Kadner, or others who purchased Turbodyne stock on the EASDAQ rather than the NASDAQ exchange. A brief review of the roughly 1500 certificates filed by both the Kadner Group and the Zaks Group reveals that hundreds of German investors are included in each group. Thus, the geographical diversity of the Kadner Group is representative of the class as a whole. See *First*

67 F. Supp. 2d 1129, *1137; 1999 U.S. Dist. LEXIS 8965, **24;
Fed. Sec. L. Rep. (CCH) P90,516

*Merchants Acceptance Corp., 1997 U.S. Dist. LEXIS 11866, 1997 WL 461036,* *6-7 (small differences in types of investments does not render plaintiff atypical or inadequate). In short, the Kadner-7's losses are of the same kind as other class members, albeit greater in amount, which should ensure that plaintiffs fulfill their role as vigilant monitors of the litigation.

**(b) Adequacy Of Class Representation**

*Rule 23(a)* requires that the person representing the class be able [**25] "fairly and adequately to protect the interests" of all members in the class. *Fed.R.Civ.P. 23(a)(4)*. Whether the class representative will adequately represent the class depends on the circumstances of each case. *McGowan v. Faulkner Concrete Pipe Co., 659 F.2d 554, 559 (5th Cir. 1981)*. The Ninth Circuit has held that representation is "adequate" when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absence class members, and it is unlikely that the action is collusive. *In re Northern Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig., 693 F.2d 847, 855 (9th Cir. 1982)*. In addition, the class representative must have a sufficient interest in the outcome of the case to ensure vigorous advocacy. See *Riordan v. Smith Barney, 113 F.R.D. 60, 64 (N.D.Ill. 1986)*.

Each member of the Kadner-7 group has a sufficient interest in the outcome of this case to ensure that the action will be vigorously prosecuted. Ralf Kadner, for example, alleges losses of $ 327,843.85. Other Kadner-7 members assert losses of $ 148,000 to $ 286,000. "Adequacy, for purposes of the lead plaintiff determination, is contingent upon [**26] both the existence of common interests between the proposed lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff[s] to vigorously prosecute the action." *In re Milestone, supra, 183 F.R.D. at 416*. Although the geographical diversity of the Kadner-7 may present some logistical difficulties, the court is confident that these can be overcome, given the stakes involved and the availability of telephone and video conferencing, fax machines, and e-mail.

**[*1138] C. Defendants' Statement of Objections**

The PSLRA specifically provides that "the court shall consider any motion *made by a purported class member*" in determining the adequacy of a proposed lead plaintiff. See *15 U.S.C. § 78u-4(a)(3)(B)(i)* (emphasis added). See also *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)* ("the presumption described in [*15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)*] may be rebutted only upon proof *by a member of the purported plaintiff class . . . .*" (emphasis added). Thus, defendants lack standing to object to the adequacy or typicality of the proposed lead plaintiffs at this preliminary stage of the litigation. See *Gluck, supra, 976 F. Supp. at 550* ("The statute is clear [**27] that only potential plaintiffs may be heard regarding appointment of a Lead Plaintiff. . . . It is clear that Defendants have no standing to oppose the appointment of Lead Plaintiff at this stage of the litigation"); see also *Zuckerman, supra, 1997 WL 314422* at *2; *Greebel, supra, 939 F. Supp. at 60-61; Fischler, supra, 1997 WL 118429, *2 (M.D.Fla. 1997)* ("The plain language of the Act dictates only members of the plaintiff class may offer evidence to rebut the presumption in favor of the most adequate plaintiff"). Nevertheless, the court may *sua sponte* raise and address certain of the concerns addressed in defendants' statement.

Defendants suggest that a Lead Plaintiff group comprising both American and German investors may present serious logistical difficulties, and may include class members whose interests are divergent from those of a majority of the class. Although these issues are more properly addressed at the class certification stage, the court certain preliminary views in the hope that they will assist the parties when it comes time to brief the issue fully in the context of a class certification motion.

Defendants cite cases in which courts have refused to [**28] certify classes comprised both of Americans and foreign nationals. In those cases, however, there were additional bases for denying certification. See, e.g., *Ansari v. New York University, 179 F.R.D. 112, 116 (S.D.N.Y. 1998)* (ruling that a potential plaintiff class of thirty-five members did not satisfy the numerosity requirement, and noting that "if the foreign court would refuse to recognize the preclusive effect of such an action, this fact, *although not dispositive,* counsels against a finding that the class action is superior to other forms of litigation" (emphasis added)); *CL-Alexanders Laing & Cruickshank v. Goldfeld, 127 F.R.D. 454 (S.D.N.Y. 1989)* (securities fraud case could not be brought as a class action because there were only twenty-five class members, plaintiff's position as underwriter for private stock placement made its claim atypical, and a request that the court use its equitable powers to certify the class under an "opt-in" arrangement

67 F. Supp. 2d 1129, *1138; 1999 U.S. Dist. LEXIS 8965, **28;
Fed. Sec. L. Rep. (CCH) P90,516

to solve res judicata problems under British law suggested that joinder was more appropriate than class certification). [19]

> [19]    Defendants also cite *Bersch v. Drexel Firestone, Inc., 519 F.2d 974 (2d Cir.)*, cert. denied, *423 U.S. 1018 (1975)*, in which the Second Circuit held that a class of foreign investors, including British citizens, could not be certified because, *inter alia*, a judgment in favor of defendants would not bar future actions by absent class members against defendants in the United Kingdom and other countries. See *519 F.2d at 996-97* ("the contained uncontradicted affidavits that England, the Federal Republic of Germany, Switzerland, Italy, and France would not recognize a United States judgment in favor of the defendant as a bar to an action by their own citizens") The *Besch* court noted, however, that "an American court need not abstain from entering judgment simply because of a possibility that a foreign court may not recognize or enforce a judgment rendered in the United States." *Id. at 996.* Here, the court presently lacks sufficient information to judge the propriety of certifying a class including German investors. It is confident, however, that the issue will be adequately briefed at a later point in the litigation. See *In re Activision Securities Litigation, 621 F. Supp. 415, 432 (N.D.Cal. 1985)* (noting that the *Bersch* court "specifically differentiated its case from one where a court was confronted with a mere possibility that a foreign court would not recognize and enforce a judgment" and reserving the issue pending further developments).

[**29]  [*1139] It is evident there is no *per se* rule against the certification of a class whose members are both foreign and American investors. Nor is there a prohibition against having a mix of foreign and American investors serve as class representatives. See, e.g., *In re Gaming Lottery Securities Litigation, 58 F. Supp. 2d 62, 1999 U.S. Dist. LEXIS 1878, 1999 WL 102755, *1 (S.D.N.Y. 1999)* (certifying a class composed of both American and Canadian investors, and rejecting defendants' claim that Canadian investors were inadequate class representatives on the basis that it was "without merit"); *Jordan v. Global Natural Resources, 102 F.R.D. 45, 52 (S.D.Ohio 1984)* (conditionally certifying a class where defendants sought to exclude

foreign purchasers of stock but failed to adduce evidence that foreign jurisdiction would not give res judicata effect to judgment); *In re U.S. Financial Securities Litigation, 69 F.R.D. 24, 50 (S.D. Cal. 1975)* (certifying class and rejecting defendant's contention that "no action could be certified as a class action when any member of the class is a foreigner, simply because a judgment might not be recognized in the foreigner's own country"). Concerns respecting the res judicata impact [**30] of any judgment in favor of defendants, which have been the focus of decisional discussion of the difficulties inherent in certifying transnational classes, are not an issue with respect to the selection of Lead Plaintiffs, since those persons will clearly be bound by the judgment of the court.

**D. Selection Of Lead Class Counsel**

The PSLRA provides that once the court has designated a lead plaintiff, that plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." *15 U.S.C. § 78u-4(a)(3)(B)(v)*. A court may disturb the Lead Plaintiff's choice of counsel only if it appears necessary to "protect the interests of the class." *15 U.S.C. § 78u-(a)(3)(B)(iii)(II)(aa)*. The Kadner-7 has been proffered as an alternative group by counsel in this case, and the court has, by this order, selected the Kadner-7 as the Lead Plaintiff.

The court has reviewed the resumes of the Law Offices of Lionel Z. Glancy, Kirby McInerney & Squire, and Finkelstein & Krinsk, which the Kadner plaintiffs indicate they will retain as co-Lead Counsel in the event they are appointed Lead Plaintiffs. The court is satisfied that these firms are capable of serving competently [**31] as lead counsel in the case. They are experienced in litigating securities class actions on behalf of individual investors. Moreover, the geographical diversity of the three co-Lead Counsel should add to, rather than detract from, the efficient handling of this case. Additionally, the court must approve any award of attorneys' fees and will scrutinize the matter carefully to ensure that services were not unnecessarily duplicated. [20]

> [20    The Reform Act expressly limits attorneys' fees to "a reasonable percentage of the amount of damages and prejudgment interest actually paid to the class." See *15 U.S.C. § 78u-4(a)(6)*.

**III. CONCLUSION**

67 F. Supp. 2d 1129, *1139; 1999 U.S. Dist. LEXIS 8965, **31;
Fed. Sec. L. Rep. (CCH) P90,516

The court grants the motions to consolidate the six related actions, grants the Kadner plaintiffs' motion that the Kadner-7 be appointed Lead Plaintiffs, denies the Zaks Group's motion for appointment as Lead Plaintiffs, and approves the Kadner-7's selection of co-Lead Counsel.

DATED: May 28, 1999

MARGARET M. MORROW

UNITED STATES DISTRICT JUDGE [**32]