**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LARRY FREUDENBERG Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-v-<br><br>E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN, and ROBERT SIMMONS,<br><br>Defendants. | Case No.: 07-cv-8538<br>Judge Robert W. Sweet<br><br>ECF CASE |

(Captions continued on following page)

**OHIO STATE TEACHERS RETIREMENT SYSTEM'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS LEAD PLAINTIFF MOTION AND IN OPPOSITION TO THE COMPETING LEAD PLAINTIFF MOTIONS**

ABBEY SPANIER RODD & ABRAMS, LLP

Judith L. Spanier (JS 5065)
Jill S. Abrams (JA 1578)
Nancy Kaboolian (NK 6346)
Orin Kurtz (OK 7334)
212 East 39th Street
New York, New York 10016
**jspanier@abbeyspanier.com**
**jabrams@abbeyspanier.com**
**nkaboolian@abbeyspanier.com**
**okurtz@abbeyspanier.com**
Tel: (212) 889-3700
Fax: (212) 684-5191

**Proposed Lead Counsel for Proposed Lead Plaintiff State Teachers Retirement System of Ohio and Special Counsel to the Attorney General of Ohio**

| | |
|---|---|
| WILLIAM BOSTON, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-v-<br><br>E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN, and ROBERT SIMMONS,<br><br>Defendants. | Case No. 07-cv-8808 (RWS) |
| ROBERT D. THULMAN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-v-<br><br>E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN, and ROBERT SIMMONS,<br><br>Defendants. | Case No. 07-cv-9651 (RWS) |
| WENDY M. DAVIDSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-v-<br><br>E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN and ROBERT J. SIMMONS,<br><br>Defendants. | Civil Action No. 07-cv-10400 (UA) |
| JOSHUA FERENC, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-v-<br><br>E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN, and ROBERT J. SIMMONS,<br><br>Defendants. | Civil Action No. 07-cv-10540 (SHS) |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..... 1

A. KSG IS SUBJECT TO UNIQUE DEFENSES ..... 2

1. KSG Did Not Purchase Any Securities Issued By E*TRADE ..... 2

2. Unlike CFDs, Options and ADRs Are Legally Traded in the U.S. ..... 4

3. That E*TRADE's U.K. Subsidiary Sold CFDs Will Not Estop The Assertion of Unique Defenses Arising From KSG's CFD Purchases ..... 5

4. The Class Should Not Be Burdened With Litigation of Unique Defenses ..... 6

B. STRS IS THE MOST ADEQUATE LEAD PLAINTIFF ..... 7

CONCLUSION ..... 10

## PRELIMINARY STATEMENT

Ohio State Teachers Retirement System ("STRS") submits this reply memorandum of law in further support of its lead plaintiff motion and in opposition to the remaining two competing lead plaintiff motions filed by the Kristen-Straxton Group ("KSG") and Skandia Life Insurance Company Ltd. ("Skandia"), respectively.[1]

With respect to KSG, this Court need take notice of one indisputable, dispositive fact to deny KSG's motion: KSG never purchased a single share of E*TRADE common stock at any point during the class period. Though KSG continues to argue that it has the "largest financial interest" of any movant, the truth remains that KSG's purchases of contracts for difference ("CFDs") are not the same as purchases of common stock. CFDs are not even legal in the United States and, in any event, are not securities actually issued by E*TRADE. The proposed class consists of investors in securities issued by E*TRADE and KSG is no such investor. As it is thus incapable of proving its typicality and adequacy to serve as lead plaintiff, KSG's motion must be denied.[2]

---

1 All movants consent to consolidation. Two of the movants, the Institutional Investor Group and the First Derivative Group, withdrew their motions for lead plaintiff. Like Skandia, the First Derivative Group expressly supports STRS's motion while opposing KSG's motion. *See* First Derivative Group Notice of Withdrawal at 1.

2 In an effort to distract the Court from its deficiencies (and its inability to identify any countering weakness in STRS's application), KSG baselessly takes aim at STRS's statutory legal advisor, the Ohio Attorney General. KSG speculates that STRS might, in the future, be tainted by investigations or actions the Ohio Attorney General might take in separate, unrelated cases involving fraud in Ohio. There is no merit to this contention. Indeed, as KSG must and does concede, STRS has a fiduciary obligation to its beneficiaries, Ohio's teachers, to obtain the largest possible recovery. KSG Opp. at 23. Thus, STRS's interests are properly aligned with all members of the class, irrespective of any separate legal action the Ohio Attorney General may or may not bring. Moreover, the Ohio Attorney General has supported STRS and other Ohio funds as lead plaintiffs in many other securities fraud cases for years. Thus, KSG's "crusade" arguments necessarily are meritless.

Skandia opposes KSG's motion and concedes that STRS is the movant with the largest reported losses that satisfies both the requirements of the PSLRA and Rule 23. Skandia Opp. at 7. While Skandia wishes to be appointed as a "second" lead plaintiff purportedly in order to "add power and balance to the representation of the class" (Skandia Opp. at 8), Skandia's concessions of STRS's adequacy and typicality render Skandia's own motion superfluous. Hence, Skandia's motion should also be denied and STRS should be appointed sole Lead Plaintiff.

## A. KSG IS SUBJECT TO UNIQUE DEFENSES

### 1. KSG Did Not Purchase Any Securities Issued By E*TRADE

That KSG never purchased or sold E*TRADE *securities* and that its CFD purchases and sales raise unique defenses with which the class should not be burdened is confirmed by KSG's opposition papers. Roger Hambury, a director of City Index Limited ("City Index"), the broker that wrote the specific CFDs that at least one KSG member purchased, attests that Straxton purchased CFDs, and not shares of E*TRADE common stock. *See* Hambury Dec. ¶2 (annexed as Exhibit B to the Second Schmid Dec.). Thus, the record before this Court demonstrates that no KSG member purchased common stock or any other *security issued* by E*TRADE.[3] Because no KSG member purchased E*TRADE securities, KSG's argument that it is "in the same position" as the putative class members (KSG Opp. at 6) must fail.

CFDs are not the same as shares of stock. Though KSG submits the Hambury Declaration to support its contention that CFDs confer the same rights as shares of stock,

---

3 While City Index, Straxton's broker, apparently did purchase E*TRADE securities, it is neither part of KSG nor has it moved for lead plaintiff status. Hambury Dec. ¶¶8-9.

that declaration confirms the inescapable fact that KSG did not purchase any stock or other securities actually issued by E*TRADE. KSG's argument that CFDs are akin to stock is likewise incorrect as KSG's own submission demonstrates. The November 2007 Consultation Paper issued by The Financial Services Authority (the "FSA"), the U.K. equivalent to the Securities Exchange Commission, defines a CFD as a contract that "*does not give the holder either ownership of the [underlying] shares or any ownership rights, such as voting rights*." Second Schmid Dec., Exh. C ("Disclosure of Contracts for Difference: Consultation and draft Handbook text") at §2.2 (emphasis added). The FSA further provides that a CFD "*does not usually create any right to take delivery of the shares* in place of cash settlement." *Id.* (emphasis added). KSG's opposite conclusions (Hambury Dec., ¶5) -- that CFDs come with the "option to convert to direct ownership" and "possess other attributes of share ownership including voting rights" -- should be discredited by the Court.[4]

It should not be lost on the Court that the word "security" is notably missing from Hambury's explanation of CFDs, wherein it describes the "investment instruments" that Straxton purchased (and, at some subsequent and undisclosed time, "transferred" to Kristen). Hambury Dec. ¶2.[5] Hambury's omission is hardly surprising given the FSA's

---

4 If Hambury's statements are applicable only to the "certain" CFDs that City Index wrote for one of KSG's members, then that CFD purchaser (Straxton) is, at best, atypical of other CFD purchasers. In any event, the Hambury Declaration highlights KSG's failure to comply with the PSLRA requirement to set forth all transactions during the class period. It provides no specific information about the actual terms of the CFDs written for Straxton or the terms of "certain" CFDs transferred by Straxton to Kristen. Hambury Dec. ¶2.

5 Neither the number of CFDs transferred to Kristen, nor the terms and timing of such transfers, are addressed by Hambury. KSG and Hambury are also silent about CFDs traded by Javed Fiyaz, KSG's third member. KSG obscures whether each of its member and the CFDs it traded are typical of its other members and their CFD purchases.

conclusion that "*CFDs are not in effect a substitute for the [underlying common] shares on a systematic basis.*" Second Schmid Dec., Exh. C at §1.24 (emphasis added). *See also* Exh. C at §2.15 ("The Companies Act 1985 defined the disclosure obligation as extending to interests of 'any kind whatsoever in [the] shares'....However while the statutory definition of interest was wide, *it was never interpreted to extend to arrangements whereby a person held an interest in a share that was purely economic* (i.e. *without the entitlement to exercise any right conferred by the holding of such a share*).") (emphasis added).

**2. Unlike CFDs, Options and ADRs Are Legally Traded in the U.S.**

KSG completely ignores the fact that CFDs are illegal in the U.S., Partnoy Dec. at ¶¶6, 15, and, in an effort to bolster its motion, attempts to liken CFDs to options and ADRs. The analogy fails because, unlike CFDs, both options and ADRs are legally traded on U.S. exchanges and are "securities" within the statutory definition. As the options and ADR cases cited by KSG show, the status of ADRs and options as U.S. securities is unquestioned. KSG Opp. at 13-15.[6] KSG cites no cases that even mention CFDs. That is because, as STRS's research revealed, we are aware of no such state or federal cases.

Unlike CFDs, both ADRs and options carry the right of share ownership. ADRs are simply receipts for shares of foreign-based corporations held by a U.S. bank. *In re Parmalat Sec. Litig.*, 375 F.Supp.2d 278, 304 (S.D.N.Y. 2005); *Pinker v. Roche Holdings*

---

6 Whether an options purchaser is adequate or typical as a lead plaintiff or class representative is determined on a case by case basis depending on the specific nature of the options traded by the plaintiff. *See, e.g., Andrada v. Atherogenics, Inc.*, 05 Civ. 00061 (RJH), 2005 U.S. Dist. LEXIS 6777 at *14-15 (S.D.N.Y. Apr. 19, 2005) and cases cited therein.

*Ltd.*, 292 F.3d 361, 367 (3d Cir. 2002). Options are the "right to buy stock, typically common stock, at a specified time and price." Jeffrey D. Bauman, Alan R. Palmiter, and Frank Partnoy, *Corporations Law and Policy: Materials and Problems* (6th ed. 2007), at 221. *See* Spanier Second Supp. Dec., Exh. A ("Unlike options, [CFDs] can only be settled in cash"). By contrast, CFDs confer no such attributes of ownership.

Moreover, unlike CFDs, the trading volume and pricing of which are unreported and unknowable (Second Schmid Dec., Exh. C at 1.7, 1.8, 1.12-1.13 and 1.17), ADR trading volume and pricing information are reported in the same manner as such information is reported for shares of common stock. Similarly, options trading information can be accessed instantly via the Options Clearing Corporation website. *See* Spanier Second Supp. Dec., Exh. B (screen shots of Options Clearing Corp. website reflecting, by way of example, daily volume and pricing of E*TRADE options).

**3. That E*TRADE's U.K. Subsidiary Sold CFDs Will Not Estop The Assertion of Unique Defenses Arising From KSG's CFD Purchases**

KSG also argues that since E*TRADE provides a CFD trading platform to its non-U.S. customer accounts, defendants would be estopped from asserting a unique defense based on KSG's purchases or sales of CFDs. KSG Opp. at 15. As the disclaimer language on E*TRADE's U.K. website makes clear, the CFDs are made available for sale through E*TRADE's U.K. entity and are legal in the U.K. Nevertheless, CFDs are illegal in the U.S. *See* Partnoy Dec. at ¶¶6, 15; Second Schmid Dec., Exh. D ("Disclaimer: ....E*TRADE and its affiliates do not intend the information provided on this site to be distributed to, or used by, any person … in any jurisdiction … where such distribution or use would be contrary to law or regulation").

That E*TRADE's U.K. subsidiary provides a trading platform for CFDs in the U.K. has no bearing on whether the unique defenses identified by STRS are likely to be asserted by E*TRADE and the individual defendants in this litigation. Those unique defenses -- whether CFDs *are securities under the U.S. securities laws*, potential loss causation issues, the unavailability of the fraud-on-the market theory, the potential presence in the specific CFDs of arbitration clauses, choice of law provisions, liability or suitability disclaimers or other limitations -- can all be raised by E*TRADE. As a result of its CFD trades, KSG has subjected itself to unique defenses. The defendants would not be estopped from asserting such defenses merely because E*TRADE provides a CFD trading platform in the U.K. (where CFDs are actually legal). At a minimum, the class should not be burdened with the litigation of these unique defenses or KSG's possible responses to them.

**4. The Class Should Not Be Burdened With Litigation of Unique Defenses**

If KSG is named as the lead plaintiff, the Court will be faced with a series of threshold questions that existing case law simply does not address. Regardless of what the answers to those questions may turn out to be, the class should not be saddled with the substantial distractions accompanying the litigation of those novel issues. Apart from the unique defenses already discussed in STRS's Opposition Brief (at 6-10), KSG's opposition papers raise yet additional novel issues unique to KSG.

If KSG is appointed lead plaintiff, presumably the class will include all other CFD purchasers. The addition of CFD purchasers likely will raise numerosity and manageability issues due to the lack of transparency in CFD trading and the anonymity of CFD traders. Second Schmid Dec., Exh. C at §1.7. As the FSA explained, "Despite the

growth in the [CFD] market [in the U.K.], CFDs mostly remain outside the [U.K.] regulatory framework governing disclosure." *Id.* at §1.8.[7] Given these aspects of CFD trading, how will CFD numerosity be established? Additionally, the absence of disclosure of the economic interests inherent in CFDs and the fact that "financial markets make almost no disclosure of CFD trading activity..." may result in inefficient pricing information. *Id.* at §1.12. How will CFD damages be proven on a class-wide basis if there is a lack of efficient pricing and an absence of trading information? The absence of this information will provide new arrows in defendants' quiver to attack market efficiency and loss causation. Each of the foregoing issues is unique to CFDs and further supports the denial of KSG's lead plaintiff motion.

## B. STRS IS THE MOST ADEQUATE LEAD PLAINTIFF

As set forth in STRS's opening papers and as other movants have since conceded, STRS is the movant with the largest losses and is the most adequate lead plaintiff. KSG's sole attack on STRS is directed to its adequacy and, in reality, has nothing to do with STRS or its adequacy as lead plaintiff. Rather, it is focused on the potential future acts of the Ohio Attorney General, STRS's legal advisor under O.R.C. §§109.12 and 3307.13. KSG wishes this Court to believe the Ohio Attorney General may prejudice these proceedings via exertion of its subpoena or investigatory powers in separate, presumably unrelated matters.[8] KSG's supporting "evidence" for this charge consists of

7 Because there is no way to determine the number of CFDs traded or the identity of the traders, the FSA's "data" on the number of CFD trades and the underlying interests to which the CFDs may relate are based on survey information only. *See* Second Schmid Dec., Exh. C at §1.7.

8 KSG presents no evidence that the Ohio Attorney General is investigating E*TRADE separate and apart from its support of STRS's motion in this case. Indeed, the

press releases and other news clippings quoting the Ohio Attorney General regarding its investigations involving corporate fraud and abuses. One would hope that support by a state attorney general dedicated to fighting securities fraud and business corruption would be viewed as a positive by the party seeking fiduciary status on behalf of thousands of investors who lost billions of dollars due to such alleged acts of fraud. In fact, the other competing movant in this case, Skandia, does view that as a positive. But assuming such motives could be ill-construed, the fact remains that STRS is the proposed lead plaintiff and has a fiduciary duty to its beneficiaries to obtain the best possible recovery for the class. These facts align STRS's interests with those of class members here irrespective of any action the Ohio Attorney General may or may not take. For this reason alone, KSG's argument fails and should be rejected.

In any event, even if the Ohio Attorney General were to issue a subpoena or open an inquiry related to E*TRADE or any of the defendants, it is important to note that neither the subpoena nor the inquiry could be used to interfere with the prosecution of this litigation on behalf of the class. Under Ohio law, any information the Ohio Attorney General uncovers pursuant to subpoena in the context of an ongoing investigation is deemed confidential and may not be used for any other purpose during the course of an investigation. *See, e.g.*, O.R.C. §1345. Similarly, the Ohio Attorney General's office could not use its subpoena power as a means of evading the PSLRA stay of discovery. Again, any information that would be uncovered could not be used in this (or any other) civil litigation until the investigation was concluded and the information became publicly available to all by virtue of an ensuing prosecution. *Id.*

---

only outstanding investigation noted in E*TRADE's SEC filings is the informal inquiry commenced by the SEC itself. November 9, 2007 Form 10-Q at 66-68.

For much the same reason, KSG cannot disqualify STRS based on the argument that defendants might seek to stay this litigation pending the resolution of a "criminal prosecution" by the Ohio Attorney General, or might seek to stay the criminal prosecution based on a PSLRA preemption challenge. First of all, there is no evidence of any such pending or threatened criminal prosecution by the Ohio Attorney General. *See* Second Schmid Decl., Exh. J (referencing Attorney General Dann's intention to issue "a number of Civil Investigative Demand subpoenas" and possibly to "investigate and prosecute civil fraud"). But even if there were, KSG has cited no legal authority to support its arguments regarding the prospects or complications of a stay. All KSG has proven with its arguments is that STRS is a large state pension fund with millions of dollars in losses, backed by a state attorney general's office and outside counsel that stand ready and willing to provide the legal support that STRS and this class need to recoup the losses suffered in this case. Surely such facts weigh distinctly in favor of granting STRS's motion.

## CONCLUSION

For all of the foregoing reasons and for the reasons set forth in its previous submissions, it is respectfully requested that STRS's lead plaintiff motion be granted and that all competing motions be denied.

Dated: New York, New York
January 7, 2008

Respectfully submitted,

**ABBEY SPANIER RODD & ABRAMS, LLP**

By: ______________________
Judith L. Spanier (JS 5065)
Jill S. Abrams (JA 1578)
Nancy Kaboolian (NK 6346)
Orin Kurtz (OK 7334)
212 East 39th Street
New York, New York 10016
**jspanier@abbeyspanier.com**
**jabrams@abbeyspanier.com**
**nkaboolian@abbeyspanier.com**
**okurtz@abbeyspanier.com**
Tel: (212) 889-3700
Fax: (212) 684-5191

**Proposed Lead Counsel for Proposed Lead Plaintiff State Teachers Retirement System of Ohio and Special Counsel to the Attorney General of Ohio**