**BROWER PIVEN**

DAVID A.P. BROWER
Brower@browerpiven.com

A PROFESSIONAL CORPORATION
488 MADISON AVENUE
EIGHTH FLOOR
NEW YORK, NEW YORK 10022
www.browerpiven.com
Telephone (212) 501-9000
Facsimile  (212) 501-0300

July 7, 2008

**BY HAND**

Honorable Robert W. Sweet
United States District Judge
Courtroom 18C
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St., Room 1920
New York, NY 10007

Re:   *Larry Freudenberg v. E*Trade Financial Corporation et al.,* 1:07-cv-08538-RWS
      *William Boston v. E*Trade Financial Corporation et al.,* 1:07-cv-08808-RWS
      *Robert D. Thurman v. E*Trade Financial Corporation et al.,* 1:07-cv-09651-RWS
      *Wendy M. Davidson v. E*Trade Financial Corporation et al.,* 1:07-cv-10400-RWS

Dear Judge Sweet:

This letter is respectfully submitted in connection with the pending motions in the above entitled-matters (the "Action") for appointment of lead plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See* Dkt. Nos. 7, 8, 11, 12, 16, 17, 28, 31, 37, 41, 43, 46.[1] We represent the Kristen-Straxton Group ("KSG"), the lead plaintiff movant with more than $133,000,000 in losses, the largest among the competing movants. We write to bring to the Court's attention the recent decision of the Honorable Lewis A. Kaplan in *CSX Corp. v. The Children's Investment Fund Management (UK) LLP,* No. 08 Civ. 2764 (LAK), 2008 U.S. Dist. LEXIS 46039 (S.D.N.Y. June 11, 2008) (annexed hereto as Exhibit A), which KSG submits resolves, in KSG's favor, the only disputed issue regarding the appointment of KSG as lead plaintiff.

The next largest competing movant, the State Teachers Retirement System of Ohio ("STRS"), with approximately $23,000,000 in claimed losses, or one-fifth the size of KSG's, has raised only one argument against the appointment of KSG as lead plaintiff -- that its members' purchased

---

[1] Unless otherwise indicated, all references to "Dkt." are to the Docket in *Larry Freudenberg v. E*Trade Financial Corporation et al.,* 1:07-cv-08538-RWS (S.D.N.Y.).

**BROWER PIVEN**
A PROFESSIONAL CORPORATION

Hon. Robert W. Sweet
July 7, 2008
Page 2

E*Trade Contracts for Difference ("CFDs").[2] A CFD is a derivative instrument that is purchased or sold at the same market price as the underlying exchange-traded common stock and gives the CFD purchaser the right to receive the difference between the purchase price and the sale price of the underlying exchange-traded security if it increases in value or the obligation to pay the difference between the purchase price and the sale price of the underlying exchange-traded security if it declines in value. Here, as the prior declarations submitted by KSG in support of its lead plaintiff motion demonstrate, KSG's E*Trade CFDs were priced, at the point of purchase and sale, at exactly the same price as the underlying E*Trade common stock was priced on the National Association of Securities Dealers Automated Quotation System ("NASDAQ"), see Dkt. 38 Ex. B, ¶¶ 4-5, 7; Dkt. 47 Ex. A, ¶¶ 25-26, and the brokerage firms, in advance of pricing those E*Trade CFDs, purchased or sold matching shares of E*Trade common stock on the NASDAQ and charged KSG the same price paid or received for the underlying E*Trade common stock on the NASDAQ. See Dkt. 38 Ex. B, ¶¶ 8-9.

In *CSX*, Judge Kaplan determined that ownership of a Total Return Swap Agreement ("TRS"), which functions the same as a CFD, see *CSX*, 2008 LEXIS 46039, at **9-19, constitutes "beneficial ownership" of the underlying exchange-traded security for the purposes of reporting under Section 13 of the Securities Exchange Act of 1934 (the "Exchange Act"), and that the failure to disclose holdings in TRSs in an SEC Schedule 13D violated, *inter alia*, Sections 13(d) and 20(a) of the Exchange Act, and the SEC rules promulgated thereunder. See *CSX*, 2008 U.S. Dist. LEXIS 46039, at **57-58, 61-65, 107-109, 115-119. In reaching these determinations, Judge Kaplan makes clear that a derivative that "in practical economic terms. . . places the long party in substantially the same economic position that it would occupy if it owned the referenced stock or security," *id.*, at 12-13, constitutes beneficial ownership under the federal securities laws and is subject to both the protections and prohibitions of those laws. See *Id.*, at 108-109.

Thus, the purchaser of CFDs occupies the same position as the long party in *CSX* with respect to purchases of TRSs:

> A long party to a TRS referencing equity in a public company gains economic exposure to the equity. In other words, it is exposed to essentially the same potential benefits and detriments as would be the case if it held the referenced security, and it gains that exposure without the need for the capital to fund or maintain such a purchase directly. This may permit such investors to operate with

---

[2] The third competing movant, Skandia Life Insurance Company, Ltd. ("Skandia"), has claimed losses of only $9 million, and has previously acknowledged it does not have the largest financial interest among the competing movants. *See* Dkt. No. 41, at 2. Further, as the previous briefing indicated, Skandia suffers from other disabilities rendering it ineligible to be lead plaintiff. *See* Dkt. No. 37, at 24-25. Finally, as KSG has demonstrated, any argument that Skandia offered regarding KSG's purchases of E*Trade CFDs rings hollow given that Skandia, a Swedish company -- as well as STRS's foreign investment managers -- also trade CFDs. *See* Dkt No. 46, at 8 n. 21.

**BROWER PIVEN**
A PROFESSIONAL CORPORATION

Hon. Robert W. Sweet
July 7, 2008
Page 3

> greater leverage or lower cost than might be the case as if they bought the security directly. But those are by no means the only reasons motivating long parties to engage in TRSs. There can be tax advantages.

*Id.*, at 17-18 (footnote omitted). *See also infra*, pp. 4-5 & n. 4.

Judge Kaplan also found that purchases by the counterparty of a matching number of the underlying security on the open-market was "inevitable." *Id.*, at 69-70. That is, in fact, precisely what occurred here with respect to KSG's E*Trade CFDs. *See* Dkt. No. 38 Ex. B, ¶¶ 8-9. *CSX* makes clear that where the derivative security is matched by a purchase of the underlying security by the counterparty (in this case the purchase of matching shares of E*Trade common stock on the NASDAQ by the brokers who provided KSG with the E*Trade CFDs), the CFD holder is considered the beneficial owner of the underlying exchange-traded common stock for the purpose of the federal securities laws.

In addition, STRS's entire opposition to appointment of KSG as lead plaintiff was based on, or derived from, the Declaration of Professor Frank Partnoy. *See* Dkt. Nos. 31, 33. In reaching the decision in *CSX*, Judge Kaplan thoroughly discredited the same Mr. Partnoy who, coincidentally, was the defendants' expert in *CSX*. *See CSX*, 2008 U.S. Dist. LEXIS 46039, at **86-87. As Judge Kaplan found with respect to STRS's Mr. Partnoy:

> The focus on [defendant's] legal rights under its swap contracts, while those rights are relevant, exalts form over substance. The securities markets operate in the real world, not in a law school contracts classroom. Any determination of beneficial ownership that fails to take account of the practical realities of the world would be open to the gravest abuse.
>
> \* \* \*
>
> Moreover, the Court is inclined to view the Cassandra-like predictions of dire consequences of holding that [the derivative purchaser] has beneficial ownership under Rule 213d-3(a) have been exaggerated. [n.192]
>
>> 192. A major proponent of the hypothesis that dire consequences will ensue from determination of beneficial ownership in this case is defendants' expert Frank Partnoy. ***Having considered Partnoy's position* and [plaintiff's expert] Mari Subrahmanyam's response, *the Court believes that Partnoy's views are exaggerated and declines to accept them. In addition, Partnoy's views in this respect are unpersuasive because his failure to engage with specific circumstances of this case renders this generalizations suspect.***

**BROWER PIVEN**
A PROFESSIONAL CORPORATION

Hon. Robert W. Sweet
July 7, 2008
Page 4

> Yet there is no reason to believe that the sky has fallen, or is likely to fall, in London.

*Id.*, at 86-87 & n. 192 (other footnotes omitted).

In this Action, KSG also challenged Mr. Partnoy's Cassandra-like biased views of derivatives; his generalized, legally unsupported comments about CFDs in general; and his factually false, hypothetical scenarios regarding KSG's purchases of E*Trade CFDs in particular. *See* Dkt. No. 47, Ex. A, ¶¶ 9, 32-48; Dkt No. 46; Dkt. No. 47, Ex. E, ¶¶ 4-10; Dkt. No. 47 Ex. F, ¶¶ 4-10. Now that Mr. Partnoy and his approach (which was starkly similar to his approach in this Action), have been found entirely unreliable and appropriately discarded by Judge Kaplan in *CSX*, Mr. Partnoy's "unpersuasive," fatally flawed, highly speculative arguments in his declaration in this Action should also be ignored. Accordingly, STRS's only pretext to challenge the appointment of KSG as lead plaintiff in this Action is now untenable.[3]

Furthermore, neither Judge Kaplan's finding that an investment instrument virtually identical to CFDs confers "beneficial ownership" of the underlying shares, nor His Honor's disqualification of Mr. Partnoy as a credible expert, is unnecessary to demonstrate that KSG's claims are typical of the claims of all other E*Trade securities purchasers. At oral argument here, counsel for STRS alleged the existence of a "battle of experts" as to whether purchasers of E*Trade CFDs are protected by the federal securities laws. However, there can be no disagreement between KSG's expert, Professor Thomas Lee Hazen, and Mr. Partnoy that purchasers of E*Trade CFDs are entitled to precisely the same protections under Section 10(b) of the Exchange Act as purchasers of the common stock. Professor Hazen testified that CFDs are "securities" covered by the Exchange Act's protections, *see* Dkt. No. 47, Ex. A, ¶¶ 8, 19-23, and STRS's Mr. Partnoy testified that CFDs are either "securities or security-based swap agreements." *See* Dkt. No. 33, ¶ 10. Irrespective of Professor Partnoy's feigned uncertainty on this issue, he neglected to mention that "securities" and "security-based swap agreements" are both expressly protected by the antifraud provisions of Section 10(b) of the Exchange Act. *See* 15 U.S.C. § 78 j(b).

---

[3] In response to Mr. Partnoy, CSX's expert, Professor Marti G. Subrahmanyam, whose conclusions Judge Kaplan adopted, made numerous findings that contradict Mr. Partnoy's opinions offered in his reports in *CSX* as well as his declaration in this case. For instance, Professor Subrahmanyam explained that purchasers of CFDs are the "beneficial" owners of the shares of the underlying exchange-traded common stock purchased by the brokerage firm to match the CFDs provided because the CFD purchaser can, as a practical matter, close the CFD transaction and obtain delivery of those underlying matching shares from the brokerage firm; and the brokers who provide CFDs will follow the voting instructions of the CFD purchasers with respect to voting the matching underlying exchange-traded common stock. Because those reports are voluminous, KSG has not provided them herewith. However, if the Court would like to review Mr. Partnoy's and Professor Subrahmanyam's reports in *CSX*, KSG will submit them upon request.

**BROWER PIVEN**
A PROFESSIONAL CORPORATION

Hon. Robert W. Sweet
July 7, 2008
Page 5

Moreover, in *CSX*, both Mr. Partnoy and CSX's expert, Professor Subrahmanyam, expressly opined that the TRSs at issue in *CSX* were "economically identical" to CFDs, and neither argued that the TRSs in *CSX* were not regulated by the federal securities laws.[4] Therefore, rather than a "battle of experts," as STRS's counsel attempted to portray, STRS's own "expert" has demonstrated that KSG's claims in this Action are typical of purchasers of E*Trade common stock under the federal securities laws.

Thus, STRS no longer has even the appearance of "proof" to challenge the presumption in favor of appointment of KSG as lead plaintiff under 15 U.S.C. §78u-4(a)(3)(ii)(II). Stripped of its only argument, which was based entirely on its now discredited "expert," KSG is, effectively, unchallenged for lead plaintiff. Therefore, KSG, which has the largest financial interest in the relief sought by the Class and otherwise meets the requirements of Fed. R. Civ. P. 23, *see* Dkt. Nos. 11-13, 37, 38, 46, 47, should be appointed the lead plaintiff and permitted to proceed with the prosecution of this Action.

Respectfully yours,

David A.P. Brower

cc:   Abbey, Spanier, Rodd & Abrams LLP (via hand & ECF)
      All Other Counsel of Record (via ECF)

---

[4] Indeed, in his report in *CSX*, Mr. Partnoy, in a complete reversal from his position in this case, argues that the Securities and Exchange Commission ("SEC") will prosecute holders of CFDs for violations of the federal securities laws, giving as an "example, the SEC has alleged that parties who purchase CFDs based on inside information violate Section 10(b) [of the Exchange Act] and Rule 10b-5. See, e.g., SEC v. Sonji Anticevic, et al, 05-Civ. 6991 (KMW) (S.D.N.Y.) (noting that 'for the purposes of this Fourth Amended Complaint, purchases of CFD Contracts are referred to as purchases of common stock')." *CSX Corp. v. The Children's Investment Fund Management (UK) LLP,* No. 08 Civ. 2764 (LAK) (S.D.N.Y.), Rebuttal Expert Report of Frank Partnoy, dated May 14, 2008, ¶103 & n. 136. Ironically, it was KSG that first cited the foregoing SEC proceeding, in its papers here, to demonstrate the very point that the SEC considers CFDs to be securities under its regulatory purview and equivalent for the purposes of the federal securities laws to a company's common stock. *See* Dkt. No. 46 at 3-4; Dkt. No. 47, Ex. B ¶ 85.