UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
LARRY FREUDENBERG, Individually and
On Behalf of All Others Similarly Situated,          :
:
Plaintiff,                    :   Civil Action No.
:
- against -                    :   07 Civ. 8538 (JPO) (MHD)
:
:
E*TRADE FINANCIAL CORPORATION,          :
MITCHELL H. CAPLAN, ROBERT J.          :
SIMMONS and DENNIS E. WEBB,          :
:
Defendants.                   :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
FOR: (1) PRELIMINARY APPROVAL OF SETTLEMENT; (2) CERTIFICATION OF
THE CLASS FOR PURPOSES OF SETTLEMENT; (3) APPROVAL OF NOTICE TO
THE CLASS; AND (4) SCHEDULING OF A FINAL APPROVAL HEARING**

**BROWER PIVEN**
  **A PROFESSIONAL CORPORATION**
David A.P. Brower
Brian C. Kerr
488 Madison Avenue, 8th Floor
New York, NY 10022
T: (212) 501-9000
F: (212) 501-0300

*Lead Counsel for Plaintiffs*

**LEVI & KORSINSKY, LLP**
Eduard Korsinsky
Shannon L. Hopkins
30 Broad Street, 15th Floor
New York, NY 10004
T: (212) 363-7500
F: (212) 363-7171

*Co-Lead Counsel for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES   ...................................................................ii-iv

I. PRELIMINARY STATEMENT.......................................................   2

II. FACTUAL BACKGROUND .........................................................   3

    A.    Background of the Litigation...............................................   3

    B.    The Settlement Results From Extensive Negotiations and Mediation..............   5

III. ARGUMENT.....................................................................   6

    A.    The Proposed Settlement Warrants Preliminary Approval....................   6

        1.    The Proposed Settlement is the Result of Well Grounded, Good Faith, Arm's Length Negotiations...........................................   8

        2.    The Proposed Settlement Falls Within the Range of Reasonableness and Merits Issuance of Notice and a Hearing on Final Approval.............................................   9

        3.    The Settlement Has No Obvious Deficiencies.........................   10

    B.    Class Certification For Settlement Purposes is Appropriate..................   11

        1.    The Settlement Class Satisfies the Requirements of Rule 23(a)................................................................   12

            a.    Settlement Class Members Are Too Numerous to be Joined...........   12

            b.    There Are Common Questions of Law and Fact...................   13

            c.    Plaintiffs' Claims Are Typical of Those of Settlement Class Members...................................................   14

            d.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class.........................................   16

        2.    Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3)................   17

            a.    Common Legal and Factual Questions Predominate...................   17

            b.    A Class Action is Superior to Other Methods of Adjudication.........   19

IV. THE FORM AND MANNER OF THE NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED...........................................   20

V. CONCLUSION.................................................................   23

## TABLE OF AUTHORITIES

### CASES

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)..........................................12, 17, 18, 20

*In re Beef Industrial Antitrust Litigation*, 607 F.2d 167 (5th Cir. 1979)......................................12

*In re Blech Sec. Litig.*, 187 F.R.D. 97 (S.D.N.Y. 1999)........................................................18, 19

*Central States Se. & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229 (2d Cir. 2007)................................................................13

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ....................................................7

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995)..............................13

*In re Currency Conversion Fee Antitrust Litigation*, MDL Nos. 1409, M 21-95, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ........................................................................................6

*In re Delphi Corp. Sec., Derivative & "ERISA" Litigation*, 248 F.R.D. 483 (E.D. Mich. 2008)....................................................................................................................................8

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006)........................................................12

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir. 1992) ................................17

*In re Globalstar Sec. Litig.*, No. 01 Civ. 1745 (PKC), 2004 WL 2754674 (S.D.N.Y. Dec. 1, 2004) ......................................................................................................................14

*Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (HB), 2003 WL 21672085 (S.D.N.Y. July 16, 2003)....................................................................................................17

*In re Initial Public Offering Sec. Litig.*, 226 F.R.D. 186 (S.D.N.Y. 2005) ..................................8

*In re Initial Public Offering Sec. Litig.*, 243 F.R.D. 79 (S.D.N.Y. 2007) ........................8, 14, 19

*Katz v. Image Innovations Holdings, Inc.*, 2010 WL 2926196 (S.D.N.Y. July 21, 2010)..........16

*Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168 (S.D.N.Y. 2008)..............................................14

*Leung v. Home Boy Restaurant Inc.*, No. 07 Civ. 8779 (RJS) (DFE), 2009 WL 398861 (S.D.N.Y. Feb. 18, 2009) ....................................................................................................9

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ............................................................................................................... *passim*

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 4526593 (S.D.N.Y. Dec. 20, 2007) ........................................................10

*In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132 (S.D.N.Y. 2008) ........................16, 21

*Moore v. Paine Webber, Inc.*, 306 F.3d 1247 (2d Cir. 2002) ........................................................19

*In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y. 1997) ....................7, 8

*In re N.Y. Community Bancorp, Inc. Sec. Litigation*, 448 F. Supp. 2d 466 (E.D.N.Y. 2006) ..............................................................................................................................10

*Nolte v. Capital One Finance Corp.*, 390 F.3d 311 (4th Cir. 2004) ...........................................11

*In re Oxford Health Plans, Inc., Sec. Litig.*, 191 F.R.D. 369 (S.D.N.Y. 2000) ....................15, 17

*In re Polaroid ERISA Litigation*, 240 F.R.D. 65 (S.D.N.Y. 2006) .............................................17

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995) ................. *passim*

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ................................................................14, 16

*Robinson v. Metropolitan-N. Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001) ........................14

*Teachers Retirement System Of La. v. ACLN Ltd.*, No. 01 Civ. 11814, 2004 WL 2997957 (S.D.N.Y. Dec. 17, 2004) ...........................................................................16

*Torres v. Gristede's Operating Corp.*, No. 04-cv-3316 (PAC), 2010 WL 2572937 (S.D.N.Y. June 1, 2010) ..........................................................................................7

*In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76 (S.D.N.Y. 2007) ................................15

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ..............................7, 9, 23

*In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515, 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ........................................................................................................24

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ................................................................12

*In re WorldCom, Inc. Sec. Litigation*, 219 F.R.D. 267 (S.D.N.Y. 2003) ....................................17

**DOCKETED CASES**

*Freudenberg v. ETRADE Financial Corp.*, Civil Action No. 07 Civ. 8538...................................4

*Boston v. ETRADE Financial Corp.*, Civil Action No. 07 Civ. 8808 .............................................4

*Davidson v. ETRADE Financial Corp.*, Civil Action No. 07 Civ. 10400 .....................................5

*Ferenc v. ETRADE Financial Corp.*, Civil Action No. 07 Civ. 10540 .........................................5

**STATUTES**

Fed. R. Civ. P. 23 ................................................................................................................... *passim*

**TREATISES**

MANUAL FOR COMPLEX LITIGATION (4th ed.) § 13.14…...............................................................8

Lead Plaintiffs Kristen Management Limited, Straxton Properties, Inc., and Javed Fiyaz ("Kristen-Straxton Group"), plaintiff Ira Newman and additional plaintiffs Peter Farah and Andrea Frascaroli (collectively, "Plaintiffs")[1] respectfully submit this memorandum of law in support of their unopposed motion pursuant to FED. R. CIV. P. 23(e) for authorization to provide notice of the proposed settlement with Defendants E*TRADE Financial Corporation ("E*TRADE" or "Company"), Mitchell H. Caplan, Robert J. Simmons, and Dennis E. Webb (collectively, "Defendants"), and to schedule a hearing for consideration of approval of the proposed Settlement.[2] Specifically, through this motion, Plaintiffs respectfully request that the Court:

(i)     preliminarily approve the Settlement;

(ii)    certify the proposed Settlement Class;

(iii)   approve the form and manner of giving notice of the Settlement to the Settlement Class; and

(iv)    schedule a hearing for final approval of the Settlement, the Plan of Allocation that will govern how Settlement Class Members' claims are calculated and the Net Settlement Fund is distributed, and Plaintiffs' Counsel's motion for an award of attorneys' fees and litigation expenses ("Settlement Hearing").

---

[1] By Order dated July 16, 2008, Judge Sweet appointed the Kristen-Straxton Group as "Lead Plaintiff," and Plaintiff Ira Newman as "Co-Lead Plaintiff." The Order also provided that Brower Piven, A Professional Corporation was appointed "Lead Counsel," and Levi & Korsinsky, LLP was appointed "Co-Lead Counsel" (collectively, "Plaintiffs' Counsel").

[2] Capitalized terms not defined herein are as stated in the Stipulation of Settlement, dated May 17, 2012 ("Stipulation"), attached to the accompanying Declaration of Brian C. Kerr as Exhibit 1.

1

# I.     PRELIMINARY STATEMENT

Plaintiffs and Defendants have reached an agreement to settle this securities class action on the terms set forth in the Stipulation. The proposed Settlement will provide a substantial monetary benefit to the Settlement Class of $79 million in cash. The Settlement, if approved, will resolve all claims asserted against the Defendants in this Action.

The Settlement is the culmination of more than four years of litigation, and was reached at a time when the Settling Parties understood the strengths and weaknesses of their respective positions. Specifically, Plaintiffs' Counsel conducted an extensive investigation into the claims, filed a detailed consolidated complaint, opposed Defendants' motion to dismiss, undertook significant fact discovery (including the filing of several motions to compel, and the review and analysis of more than 12 million pages from Defendants alone).

The Settling Parties engaged in extensive arm's length settlement negotiations and participated in mediation under the supervision of the Honorable Layn R. Phillips (Ret.), an experienced and highly regarded mediator. The mediation ultimately resulted in this Settlement. Plaintiffs and Plaintiffs' Counsel – based upon their evaluation of the facts and applicable law and their recognition of the substantial risk and expense of continued litigation – submit that the proposed Settlement is in the best interests of the Settlement Class and will provide an immediate meaningful recovery for the Settlement Class.

Prior to the Settlement Hearing, Plaintiffs will submit detailed papers supporting the proposed Settlement and will ask the Court to determine whether the Settlement is fair, reasonable, and adequate. At this time, however, Plaintiffs request only that the Court grant preliminary approval of the Settlement so that notice may be provided to the Settlement Class. Specifically, Plaintiffs request that the Court enter the proposed Order Granting Preliminary

Approval of Settlement, Granting Conditional Class Certification, and Providing for Notice ("Preliminary Approval Order"), submitted herewith (and as Exhibit A to the Stipulation), which, among other things, will:

    (i)      preliminarily approve the Settlement and certify the Settlement Class;

    (ii)     approve the form and content of the Notice, Proof of Claim form and Summary Notice, attached as Exhibits A-1, A-2, and A-3 to the Stipulation, respectively; and

    (iii)    Schedule the Settlement Hearing and set a schedule and procedures for settlement-related events, including: disseminating the notices; requesting exclusion; objecting to the Settlement; and submitting papers in support of final approval of the Settlement.

In short, given the immediate and substantial total benefit of $79 million, the risks in establishing Defendants' liability and proving damages, and the potential limitations on the financial ability of the Defendants to satisfy a judgment, Plaintiffs respectfully submit that the Settlement is not only fair, reasonable, and adequate, but represents an outstanding recovery, as described below and as will be demonstrated in connection with seeking final approval of the Settlement.

## II.    FACTUAL BACKGROUND

### A.    Background of the Litigation

On October 2, 2007, Plaintiff Larry Freudenberg filed a complaint in the United States District Court for the Southern District of New York, captioned *Freudenberg v. E\*TRADE Financial Corp.*, Civil Action No. 07 Civ. 8538 ("*Freudenberg* Action"). By Court Order dated July 16, 2008, the *Freudenberg* Action was consolidated with four other actions: *Boston v.*

*E\*TRADE Financial Corp.*, Civil Action No. 07 Civ. 8808; *Thulman v. E\*TRADE Financial Corp.*, Civil Action No. 07 Civ. 9651; *Davidson v. E\*TRADE Financial Corp.*, Civil Action No. 07 Civ. 10400; and *Ferenc v. E\*TRADE Financial Corp.*, Civil Action No. 07 Civ. 10540.

By the same Order, the Kristen-Straxton Group was appointed as lead plaintiff and Ira Newman was appointed as co-lead plaintiff. The Order also provided that Brower Piven, A Professional Corporation was appointed Lead Counsel, and Levi & Korsinsky LLP was appointed Co-Lead Counsel.

On January 16, 2009, Plaintiffs filed their Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint") asserting violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 arising out of Defendants' alleged false and misleading statements concerning, among other things, the Company's mortgage business. Defendants filed their motion to dismiss the Complaint on April 2, 2009. The Court (Judge Robert Sweet) denied Defendants' motion on May 11, 2010.

Plaintiffs, through Plaintiffs' Counsel, conducted an in-depth investigation of the claims and underlying events relating to the Action. This investigation included, among other things, a review and analysis of: (i) more than 12 million of pages of documents produced by Defendants during discovery; (ii) more than 4 million pages of documents produced by third-parties, including E\*TRADE's auditors (Deloitte & Touche, LLP), McKinsey & Company, Inc. (which consulted E\*TRADE in connection with evaluating, analyzing, and assessing E\*TRADE's mortgage business), Citadel LLC (which led a $2.5 billion cash infusion into E\*TRADE in late 2007), and numerous counterparts with which E\*TRADE transacted during the relevant time period, including PNC Bank, Countrywide Financial, Macquarie, First Tennessee Bank, Quicken Loans, Ally Bank, and JP Morgan Securities LLC; (iii) publicly available information

4

concerning the Defendants, including newspaper articles and online publications; (iv) regulatory filings made by the Defendants with the SEC; and (v) securities analyst reports. Plaintiffs also consulted with experts concerning the amount of damages suffered by E*TRADE investors, and issues concerning loss causation.

**B.     The Settlement Results From Extensive Negotiations and Mediation**

The Settlement is the result of arm's length discussions and negotiations that extended more than four months and included multiple face-to-face mediation sessions. Following preliminary settlement discussions in August 2011, Plaintiffs and Defendants commenced mediation. The parties exchanged detailed mediation statements setting forth their respective positions on liability and damages. Plaintiffs' Counsel and counsel for the Defendants participated in a mediation with Judge Phillips in New York City on October 5, 2011. After that all-day session, the parties remained far apart in their respective positions. Although a settlement was not reached at this mediation session, both sides remained in communication and met without Judge Phillips on November 7, 2011 and had a number of telephone calls over the course of several months concerning possible settlement. A settlement was still not reached.

On December 17, 2011, the parties again participated in a mediation session with Judge Phillips. During the course of this mediation, the parties reached an agreement-in-principle to settle for $79 million in cash. Following the execution of a memorandum of understanding, Plaintiffs' Counsel and counsel for the Defendants negotiated the specific terms of the Settlement, as set forth in the May 17, 2012 Stipulation and related exhibits.

## III.    ARGUMENT

### A.    The Proposed Settlement Warrants Preliminary Approval

Rule 23(e) requires judicial approval for any compromise of claims brought on a class basis. Approval of a proposed settlement is within the Court's discretion, to be exercised in accordance with public policy that strongly favors pretrial settlement of complex class action lawsuits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy."); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

The Court "must determine whether the terms of the proposed settlement warrant preliminary approval [by] mak[ing] 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, MDL Nos. 1409, M 21-95, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006); *see also Wal-Mart*, 396 F.3d at 116; *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *see also Torres v. Gristede's Operating Corp.*, No. 04-cv-3316 (PAC), 2010 WL 2572937, *2 (S.D.N.Y. June 1, 2010) ("[p]reliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties" [and] "[t]o grant preliminary approval, the court need only find that there is 'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness.'").

"Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a 'fairness hearing.' First, the court reviews the proposed terms of settlement and makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005); *see also* MANUAL FOR COMPLEX LITIGATION (4th ed. ) § 13.14. During this first step, a court must consider whether the settlement warrants preliminary approval, such that notice of the settlement should be sent to the proposed class and a fairness hearing held. In the second step, after notice of the proposed settlement has been provided to the class and a hearing has been held to consider the fairness and adequacy of the proposed settlement, the Court considers whether the settlement warrants "final approval." *Id.*[3]

> As explained by Judge Sweet:
>
> In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice. Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted. Once preliminary approval is bestowed, the second step of the process ensues. . . .

*NASDAQ*, 176 F.R.D. at 102; *see also In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

In essence, the Court should determine whether the settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard."

---

[3] A final approval determination is based on an analysis of nine factors established in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of the attendant risks of litigation. *Id.*

*NASDAQ*, 176 F.R.D. at 102; *Prudential*, 163 F.R.D. at 209 ("The Court's function now is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.").

### 1.   The Proposed Settlement is the Result of Well Grounded, Good Faith, Arm's Length Negotiations

A presumption of fairness applies to a proposed class settlement when the settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation. *Wal-Mart*, 396 F.3d at 116; *see also Leung v. Home Boy Rest. Inc.*, No. 07 Civ. 8779 (RJS) (DFE), 2009 WL 398861, *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties").

In this case, the Settlement is the product of such rigorous negotiations. The Settling Parties took part in back-and-forth negotiations, and two separate full-day mediations before Judge Phillips, a mediator with extensive experience who has assisted in numerous other complex class action mediations, including other mortgage-backed securities actions. *See, e.g.*, *In re Wells Fargo Mortg-Backed Certificates Litig.*, No. 09-CV-1376-LHK (PSG) (N.D. Cal. Nov. 14, 2011); *see also In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (speaking of Judge Phillips, "the Court and the parties have had the added benefit of the insight and considerable talents of a former federal judge who is one of the most prominent and highly skilled mediators of complex actions, who acted as Special Master in the settlement negotiations.").

Plaintiffs' Counsel's independent investigation into the facts and merits of the claims and defenses further supports a finding that the process leading to the proposed Settlement was

thorough and well-informed. Plaintiffs' Counsel did an extensive review of publicly available information concerning the Defendants and the claims asserted, including newspaper articles, online publications, SEC filings, and analyst reports. Plaintiffs' Counsel also undertook a wide-ranging investigation that included interviews of individuals who worked at E*TRADE during the relevant time period. Plaintiffs' Counsel thoroughly researched Plaintiffs' legal claims, filed a consolidated complaint, opposed a motion to dismiss, undertook significant fact discovery (including the review and analysis of millions of pages of documents and depositions), and consulted with damages experts. Thus, Plaintiffs' Counsel and Plaintiffs had a clear and well-developed understanding of the strengths and weaknesses of their case before entering into negotiations and agreeing to the proposed Settlement.

2.   **The Proposed Settlement Falls Within the Range of Reasonableness and Merits Issuance of Notice and a Hearing on Final Approval**

Although Plaintiffs and Plaintiffs' Counsel believe that the claims asserted in the Action are meritorious and that the Settlement Class would ultimately prevail at trial, continued litigation against Defendants posed significant risks that made any recovery for the Settlement Class uncertain. The fairness and adequacy of the Settlement is underscored by consideration of the obstacles that the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the Action. *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 4526593, *10 (S.D.N.Y. Dec. 20, 2007).

Here, Plaintiffs' Counsel and Plaintiffs appreciated the unique and significant risks inherent in the Action. At the time of the initial filing, there was little established precedent for mortgage-backed securities litigation, and much of the limited authority was adverse to plaintiffs. *See, e.g., In re N.Y. Cmty. Bancorp, Inc. Sec. Litig.*, 448 F. Supp. 2d 466, 479 (E.D.N.Y. 2006)

9

(rejecting allegations of securities fraud where the defendant company made cautionary disclosures regarding its mortgage-backed securities); *Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 317 (4th Cir. 2004) (rejecting allegations the defendant company committed securities fraud by failing to disclose the size of its subprime lending portfolio).

If the Action had continued, Plaintiffs faced substantial challenges in establishing that Defendants made untrue statements and omissions in violation of the Securities Exchange Act of 1934. Even assuming that Plaintiffs had prevailed on the liability issues at trial, Defendants would still have the opportunity to persuade a jury that any losses were attributable to causes other than Defendants' misstatements or omissions. In fact, Defendants argued repeatedly in their motion to dismiss that Plaintiffs' losses were caused by a "massive, market-wide economic" downturn rather than fraud. *See* Defs.' Memorandum of Law in Support of the Motion to Dismiss at 29; *see also id.* at 3, 30. There is no doubt that both sides would have had to present complex and nuanced information to a jury that would include a "battle of the experts" on the complex issues surrounding damages calculations and securities disclosure requirements.

When considering the Settlement, Plaintiffs' Counsel weighed the certainty of an immediate cash recovery for the Settlement Class against the significant legal challenges Plaintiffs faced.[4] Under these circumstances, the proposed $79 million Settlement is fair, reasonable, and adequate.

### 3.    The Settlement Has No Obvious Deficiencies

There are no "grounds to doubt [the Settlement's] fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or

---

[4] According to E*TRADE's most recent Form 10Q for the period ended March 31, 2012 ("March 31, 2012 10Q"), E*TRADE continues to deal with the effects of the recent credit crisis and recession: net operating interest income

10

excessive compensation for attorneys." *Prudential*, 163 F.R.D. at 209. Plaintiffs, like all other Settlement Class Members, will receive their pro rata distribution from the Net Settlement Fund in accordance with a Plan of Allocation that will be presented to the Court for approval. The matter of attorneys' fees and payment of expenses is wholly separate from the Settlement and subject to the Court's oversight and approval.

Accordingly, nothing in the course of this Action, the settlement negotiations, or the Settlement itself raises fairness concerns. Plaintiffs therefore request that the Court preliminarily approve the Settlement and set a hearing date for consideration of final approval of the Settlement.

**B.      Class Certification For Settlement Purposes is Appropriate**

The parties have stipulated to certification of a Settlement Class, which is described in the Notice. The proposed Settlement Class is defined as follows:

> All Persons (other than those Persons who timely and validly request exclusion from the Settlement Class) who purchased or otherwise acquired E*TRADE securities between April 19, 2006 and November 9, 2007, inclusive. Excluded from the Settlement Class are Defendants, members of the Individual Defendants' immediate families, the directors, officers, subsidiaries, and affiliates of E*TRADE, any firm, trust, corporation, or other entity in which any Defendant has a controlling interest, and the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded person or entity.

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009). Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by

---

declined $24.8 million (i.e., 8%), total non-interest income declined $22.5 million (i.e., 10%), and total net revenues declined $47.3 million (i.e., 9%), compared to the same period in 2011. *See* March 31, 2012 10Q at 7.

11

relatively small claimants." *Prudential*, 163 F.R.D. at 205. "[S]ettlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under the scrutiny of the trial judge." *Id.* (quoting *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 174 (5th Cir. 1979)).

A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). Nevertheless, the manageability concerns of Rule 23(b)(3) are not at issue in a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether .trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested."). Here, the proposed Settlement Class meets all the requirements of Rule 23, there is no abuse of the class action device, and the settlement is fair, reasonable, and subject to the Court's approval.

As explained below, certification is appropriate because the proposed Settlement Class meets all the requirements of Rule 23(a) and Rule 23(b)(3).

### 1.    The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a).

### a.    Settlement Class Members Are Too Numerous to Be Joined

Certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." FED. R. CIV. P. 23(a). "Impracticable does not mean

impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), but "only that the difficulty

or inconvenience of joining all members of the class make use of the class action appropriate,"

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504

F.3d 229, 244-45 (2d Cir. 2007). Numerosity is presumed when a class consists of 40 members

or more. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

    Here, the numerosity requirement of Rule 23(a)(1) is satisfied because the number of

Settlement Class Members is likely to be in the thousands. For example, throughout the Class

Period, E*TRADE common stock was actively traded on the NYSE under the ticker symbol

"ET" until listing was switched to NASDAQ on December 27, 2006 (at market open) to trade

under the symbol "ETFC." As of November 5, 2007, there were approximately 423,750,000

shares E*TRADE common stock outstanding. Thus, the members of the Settlement Class are

sufficiently numerous that joinder of all members would be impracticable. *See, e.g.*, *Consol. Rail

Corp.*, 47 F.3d at 483; *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 175 (S.D.N.Y. 2008)

(class of shareholders numbering in hundreds or thousands satisfied the numerosity requirement).

**b.**    **There Are Common Questions of Law and Fact**

    Rule 23(a)(2) requires the existence of at least one question of law or fact common to the

class. *See Cent. States*, 504 F.3d at 245; *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147,

155 (2d Cir. 2001). Federal securities cases easily meet the commonality requirement, which is

satisfied where "putative class members have been injured by similar material misrepresentations

and omissions." *Initial Pub. Offering*, 243 F.R.D. at 85; *see In re Globalstar Sec. Litig.*, No. 01

Civ. 1745 (PKC), 2004 WL 2754674, at *4 (S.D.N.Y. Dec. 1, 2004) ("Common questions of law

and fact in this action include whether certain statements were false and misleading, whether

those statements violated the federal securities laws, whether those statements were knowingly

and recklessly issued, and ensuing causation issues."); *In re Oxford Health Plans, Inc., Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Where the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met.").

Here, the claims alleged presented many questions of law and fact that are common to all members of the Settlement Class, including: (i) whether the federal securities laws were violated by Defendants' acts and omissions as alleged in the Complaint; (ii) whether statements made by Defendants to the investing public during the relevant period misrepresented material facts about E*TRADE's mortgage business; (iii) whether Defendants made those statements with scienter; (iv) whether the market price of E*TRADE's securities during the relevant period was artificially inflated due to the material misrepresentations and failures to disclose material facts alleged in the Complaint; and (v) the extent to which the members of the Settlement Class have sustained damages and the proper measure of damages. Because these questions of law and fact are common to all Members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met.

**c.    Plaintiffs' Claims Are Typical of Those of Settlement Class Members**

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class. FED. R. CIV. P. 23(a)(3). Typicality is established where "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 85 (S.D.N.Y. 2007); *see also Oxford Health Plans*, 191 F.R.D. at 375. "Typical" does not mean "identical." *See Marsh*, 2009 WL 5178546, at *10. The focus of the typicality inquiry is not the

14

plaintiff's behavior, but rather the defendants' actions. *See Teachers Ret. Sys. Of La. v. ACLN Ltd.*, No. 01 Civ. 11814, 2004 WL 2997957, at \*4 (S.D.N.Y. Dec. 17, 2004). The critical question is whether the proposed class representatives and the class can point to the same "common course of conduct" by defendants to support a claim for relief. Accordingly, "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *Marsh*, 2009 WL 5178546, at \*10; *see also Robidoux*, 987 F.2d at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

Here, like each Member of the Settlement Class, Plaintiffs purchased E\*TRADE securities and were similarly affected by Defendants' allegedly wrongful conduct in violation of the federal securities laws. Thus, Plaintiffs' claims arise from the same course of conduct that gives rise to the claims of every other Settlement Class Member who purchased E\*TRADE securities, and they will focus on the same alleged misrepresentations and omissions, and assert the same legal theories, in proving Defendants' liability. *See Katz v. Image Innovations Holdings, Inc.*, 2010 WL 2926196, at \*4 (S.D.N.Y. July 21, 2010). As such, Plaintiffs satisfy the typicality requirement. *See In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 134-35 (S.D.N.Y. 2008).

15

d. **Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class**

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The Court must measure the adequacy of representation by two standards: whether (1) the claims of the Plaintiffs conflict with those of the class; and (2) Plaintiffs' Counsel are qualified, experienced and able to conduct the litigation. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Marsh*, 2009 WL 5178546, at *10; *Oxford*, 191 F.R.D. at 376.

Plaintiffs and the Settlement Class share the common objective of maximizing their recovery, and no conflict exists between Plaintiffs and Settlement Class Members. *See Drexel*, 960 F.2d at 291; *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members"). Plaintiffs' interests are directly aligned with the interests of the Settlement Class who collectively purchased E*TRADE securities and were affected by the same material untrue statements and omissions. *See Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (HB), 2003 WL 21672085, at *3 (S.D.N.Y. July 16, 2003) (finding proposed class representative adequate where the complaint alleged "a common course of conduct and a unitary legal theory for the entire class period – that is, Defendants issued prospectuses and registration statements that contained false statements"); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y. 2003) (explaining that "named plaintiffs' interests are directly aligned with those of the absent class members: they are purchasers of WorldCom equity and debt securities who suffered significant losses as a result of the investments").

Plaintiffs have also demonstrated their commitment to monitor and supervise the prosecution of this action on behalf of the interests of the Settlement Class. Plaintiffs have retained experienced counsel, received regular status updates, and participated in strategic decisions and actively participated in discovery (including responding to Defendants' document requests and interrogatories).

Moreover, there is no doubt that Plaintiffs' Counsel is qualified and capable of prosecuting this Action. Brower Piven and Levi & Korsinsky have been prosecuting securities class actions for years and have proven track records of success in complex securities class actions such as this. *See* Kerr Decl., Exhibits 2 and 3. Therefore, Rule 23(a)(4) is satisfied.

### 2.   Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Rule 23(b)(3) is "designed to secure judgments binding all class members save those who affirmatively elected to be excluded," where a class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 614-15. Certification of the Settlement Class serves these purposes.

### a.   Common Legal and Factual Questions Predominate

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to

individualized proof." *Marsh*, 2009 WL 5178546, at *11 (quoting *Moore v. Paine Webber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)). Common issues will predominate where each class member is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct, and the only individualized questions concern the amount of damages. *See Marsh*, 2009 WL 5178546, at *11; *Initial Pub. Offering*, 243 F.R.D. at 92; *In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999) ("In determining whether common questions of fact predominate, a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class."). As the Supreme Court has noted, predominance is a test "readily met" in cases alleging securities fraud. *Amchem*, 521 U.S. at 625.

Here, the same alleged course of conduct by the Defendants forms the basis of all Settlement Class Members' claims. There are numerous common issues relating to the Defendants' liability that predominate over any individualized issues:

a. whether the federal securities laws were violated by Defendants' acts;

b. whether statements made by Defendants to the investing public misrepresented material facts or omitted to disclose material information that, under the circumstances, would render the statements made not false and misleading about the business, operations, and financial condition of E*TRADE;

c. whether Defendants acted knowingly or recklessly in making materially false and misleading statements or omitting to disclose material information that, under the circumstances, would render the statements made not false and misleading;

d. whether Defendants engaged in schemes, artifices to defraud, and/or manipulative conduct;

e. whether the market prices of E*TRADE securities were artificially inflated or distorted because of Defendants' conduct; and

f. whether members of the Settlement Class have sustained damages and the proper measure of damages.

The predominance requirement of Rule 23(b)(3) is, therefore, satisfied.

**b.      Common Legal and Factual Questions Predominate**

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* FED. R. CIV. P. 23(b)(3).

Considering these factors, this consolidated class action is clearly "superior to other available methods for fairly and efficiently adjudicating" the federal securities law claims of the large number of investors who purchased or otherwise acquired E*TRADE securities during the relevant time period. Indeed, courts have concluded that the class action device in securities cases is usually the superior method of redressing injuries to a large number of individual plaintiffs:

> In general, securities suits such as this easily satisfy the superiority requirement of Rule 23. Most violations of the federal securities laws, such as those alleged in the Complaint, inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursing individual litigation to seek recovery is often not feasible. Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would neither be "fair" nor an adjudication of their claims. Moreover, although a large number of individuals may have been injured, no one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf.

*Blech*, 187 F.R.D. at 107; *see also Marsh*, 2009 WL 5178546, at *12 (recognizing that the "class action is uniquely suited to resolving securities claims" because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually

19

controlling the prosecution or defense of separate actions"); *Monster*, 251 F.R.D. at 139 ("as a general rule, securities fraud cases 'easily satisfy the superiority requirement [as] [m]ost violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursing individual litigation to seek recovery is often not feasible'").

Here, the scope and complexity of Plaintiffs' claims against the Defendants, together with the high cost of individualized litigation, make it unlikely that, absent class certification, the vast majority of the Settlement Class Members would be able to obtain relief. Finally, any potential difficulties of managing the class action in further litigation and at trial need not be considered here. As the Supreme Court explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." 521 U.S. at 620. Accordingly, the requirements of Rule 23(b)(3) are satisfied.

## IV.  THE FORM AND MANNER OF THE NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

Federal Rule of Civil Procedure 23(e)(1) requires that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal" (i.e., the proposed Settlement). Here, the Settling Parties negotiated the form of the Notice to be disseminated to all persons who fall within the definition of the Settlement Class and whose names and addresses can be identified with reasonable effort from or through Defendants' records. In addition, the Claims Administrator[5] will send the Notice to entities that commonly hold securities in "street name" as nominees for the benefit of their customers who are the beneficial purchasers of the

20

securities. The Settling Parties further propose to supplement the mailed Notice with a Summary Notice transmitted three separate times over PR Newswire or a similar national business oriented newswire. The Notice and Summary Notice are attached to the Stipulation as Exhibits A-1 and A-3.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." FED. R. CIV. P. 23(h)(1). Here, the Notice satisfies the requirements of Rule 23(h)(1), as it notifies Settlement Class Members that Plaintiffs' Counsel will apply to the Court for attorneys' fees of no more than 33 1/3% of the Settlement Fund and expenses of no more than $750,000, plus interest on those amounts. *See* Stipulation at Ex. A-1.

Furthermore, in securities class actions, the PSLRA requires the notice of settlement to include: (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis;" (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement from each settling party concerning the issue or issues on which the parties disagree;" (3) "a statement indicating which parties or counsel intend to make . . . an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought;" (4) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class

---

[5] The proposed Claims Administrator is Garden City Group, Inc., which has more than 25 years of experience in class action administration and has handled some of the largest securities settlements in history, including the *WorldCom* and *Tyco* shareholder settlements. *See generally* www.gcginc.com

who will be reasonably available to answer questions from class members;" and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement."

The proposed Notice describes the Settlement and sets forth the aggregate amount of the Settlement Fund ($79,000,000) and the estimated average recovery; states the Settling Parties' disagreement over liability and damages; sets out the amount of attorneys' fees and expenses that Plaintiffs' Counsel intend to seek in connection with final settlement approval; and describes the Plan of Allocation. In addition, the Notice explains the nature, history, and status of the Action; sets forth the definition of the Settlement Class, states the Settlement Class's claims and issues, discusses the rights of persons who fall within the definition of the Settlement Class, and summarizes the reasons the Settling Parties are proposing the Settlement.

Further, for those Settlement Class Members who wish to participate in the Settlement, the Notice and the Proof of Claim provide instructions on the process for completing and submitting the Proof of Claim. The Notice also provides the name and mailing address for the Claims Administrator, Plaintiffs' Counsel, and counsel for Defendants. The Summary Notice also informs Settlement Class Members that copies of the Notice and Proof of Claim may be obtained by writing the Claims Administrator, or by accessing the documents on the website of the Claims Administrator. Finally, the Notice sets forth the date, time, and place of the Settlement Hearing, along with the procedures for objecting to or seeking exclusion from the Settlement.

Accordingly, the Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114. The manner of providing notice, which includes individual notice by mail to all Settlement Class Members who can be reasonably

identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515, 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008).

## V.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order that will: (i) preliminarily approve the Settlement; (ii) certify the Settlement Class for settlement purposes only; (iii) approve the form and manner of giving notice of the Settlement to the Settlement Class; and (iv) schedule a date and time for the Settlement Hearing to consider approval of the Settlement and related matters following an opportunity for Settlement Class Members to be heard.

Dated: May 17, 2012

BROWER PIVEN
  A PROFESSIONAL CORPORATION


_____
David A.P. Brower
Brian C. Kerr
488 Madison Avenue, 8th Floor
New York, NY 10022
T: (212) 501-9000
F: (212) 501-0300

*Lead Counsel for Plaintiffs*

LEVI & KORSINSKY, LLP
Eduard Korsinsky
Shannon L. Hopkins
30 Broad Street, 15th Floor
New York, NY 10004
T: (212) 363-7500
F: (212) 363-7171

*Co-Lead Counsel for Plaintiffs*

23

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2012, I served true and correct copies of the foregoing Plaintiffs' Memorandum of Law in Support of Unopposed Motion for: (1) Preliminary Approval of Settlement; (2) Certification of the Class for Purposes of Settlement; (3) Approval of Notice to the Class; and (4) Scheduling of a Final Approval Hearing on Defendants' counsel by causing copies to be sent by the ECF system and by electronic mail to:

Dennis Glazer
Amelia T.R. Starr
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017

_____
Brian C. Kerr