UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LARRY FREUDENBERG, Individually and
On Behalf of All Others Similarly Situated,

                     Plaintiff,

       - against -

E*TRADE FINANCIAL CORPORATION,
MITCHELL H. CAPLAN, ROBERT J.
SIMMONS and DENNIS E. WEBB,

                 Defendants.

Civil Action No.

07 Civ. 8538 (JPO) (MHD)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF BRIAN C. KERR IN SUPPORT OF MOTION FOR: (1)
PRELIMINARY APPROVAL OF SETTLEMENT; (2) CERTIFICATION OF THE
CLASS FOR PURPOSES OF SETTLEMENT; (3) APPROVAL OF NOTICE TO THE
CLASS; AND (4) SCHEDULING OF A FINAL APPROVAL HEARING**

       I, Brian C. Kerr, hereby declare as follows:

       1.     I am over 18 years of age and am competent to testify to the matters and facts hereinafter set forth.  I am a Director at Brower Piven, A Professional Corporation ("Brower Piven"), Lead Counsel for Plaintiffs.

       2.     I submit this declaration in support of the Unopposed Motion for: (1) Preliminary Approval of Settlement; (2) Certification of the Class for Purposes of Settlement; (3) Approval of Notice to the Class; and (4) Scheduling of a Final Approval Hearing.

       3.     Attached hereto as Exhibit 1 is a true and correct copy of the Stipulation of Settlement, dated May 17, 2012.

       4.     Attached hereto as Exhibit 2 is a true and correct copy of the firm resume of Brower Piven.

5.     Attached hereto as Exhibit 3 is a true and correct copy of the firm resume of Levi & Korsinsky, LLP, Co-Lead Counsel for Plaintiffs.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 17th day of May, 2012 at New York, New York.

Brian C. Kerr

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2012, I served true and correct copies of the foregoing Declaration of Brian C. Kerr in Support of Unopposed Motion for: (1) Preliminary Approval of Settlement; (2) Certification of the Class for Purposes of Settlement; (3) Approval of Notice to the Class; and (4) Scheduling of a Final Approval Hearing on Defendants' counsel by causing copies to be sent by the ECF system and by electronic mail to:

Dennis Glazer
Amelia T.R. Starr
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017

_____
Brian C. Kerr

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LARRY FREUDENBERG, Individually and
On Behalf of All Others Similarly Situated,

              Plaintiff,

       - against -

E*TRADE FINANCIAL CORPORATION,
MITCHELL H. CAPLAN, ROBERT J.
SIMMONS and DENNIS E. WEBB,

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No.

07 Civ. 8538 (JPO) (MHD)

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement, dated as of May 17, 2012 ("Stipulation"), is made and entered into pursuant to Rule 23 of the Federal Rules of Civil Procedure by and among the following Settling Parties to the above-captioned action ("Action"): (i) Lead Plaintiffs Kristen Management Limited, Straxton Properties, Inc., and Javed Fiyaz ("Kristen-Straxton Group"), Co-Lead Plaintiff Ira Newman, and additional plaintiffs Peter Farah and Andrea Frascaroli (collectively, "Plaintiffs"), on behalf of themselves and each of the Settlement Class Members (as defined below), by and through their counsel of record in the Action; and (ii) Defendants E*TRADE Financial Corporation ("E*TRADE" or the "Company"), Mitchell H. Caplan, Robert J. Simmons, and Dennis E. Webb, by and through their counsel. The Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below) against the Released Persons (as defined below), subject to the approval of the Court and upon the terms and conditions set forth in this Stipulation.

## I.    THE LITIGATION

On October 2, 2007, Plaintiff Larry Freudenberg filed a complaint in the United States District Court for the Southern District of New York, captioned *Freudenberg v. E*TRADE Financial Corp., et al.*, Civil Action No. 07 Civ. 8538 ("*Freudenberg* Action"). By Court Order dated July 16, 2008, the *Freudenberg* Action was consolidated with four other actions: *Boston v. E*TRADE Financial Corp., et al.*, Civil Action No. 07 Civ. 8808; *Thulman v. E*TRADE Financial Corp., et al.*, Civil Action No. 07 Civ. 9651, *Davidson v. E*TRADE Financial Corp., et al.*, Civil Action No. 07 Civ. 10400; and *Ferenc v. E*TRADE Financial Corp., et al.*, Civil Action No. 07 Civ. 10540. By the same Order, the Kristen-Straxton Group was appointed as lead plaintiff and Ira Newman was appointed as co-lead plaintiff. The Order also provided that Brower Piven, A Professional Corporation was appointed lead counsel, and Levi & Korsinsky LLP was appointed co-lead counsel.

On January 16, 2009, Plaintiffs filed their Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint") asserting violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 arising out of Defendants' alleged false and misleading statements concerning, among other things, the Company's mortgage business. Defendants filed their motion to dismiss the Complaint on April 2, 2009; the Court denied Defendants' motion on May 11, 2010.

On September 26, 2011, the parties participated in a mediation session with the Honorable Layn R. Phillips (Ret.), but did not reach a resolution. The parties met without Judge Phillips on November 7, 2011 and had a number of telephone calls over the course of several months concerning possible settlement. On December 17, 2011, the parties again participated in a mediation session with Judge Phillips. During the course of this mediation, the parties reached

2

an agreement-in-principle to resolve this Action. Subsequently, the Settling Parties continued negotiations and conducted additional discovery, resulting in the terms and conditions set forth in this Stipulation.

## II.   CLAIMS OF PLAINTIFFS AND BENEFITS OF SETTLEMENT

Plaintiffs believe that the claims asserted in the Action have merit and that the evidence developed to date supports the claims. However, Plaintiffs and their counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against Defendants through trial and through appeals. Plaintiffs and their counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Action, as well as the difficulties and delays inherent in such litigation. Plaintiffs and their counsel also are mindful of the inherent problems of proof, and possible defenses to the securities law violations asserted in the Action. Plaintiffs and their counsel believe that the Settlement (as defined below) set forth in the Stipulation confers substantial benefits upon the Settlement Class. Based on their evaluation, Plaintiffs and their counsel have determined that the Settlement set forth in the Stipulation is in the best interests of Plaintiffs and the Settlement Class.

## III.   DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants have denied and continue to deny each and all of the claims alleged in the Action. Defendants deny that they have committed or intended to commit any wrongdoing or violations of law arising out of any of the conduct, statements, acts, or omissions alleged in the Action, and maintain that their conduct was at all times proper and in compliance with applicable provisions of law. Defendants further deny that they made any material misstatements or omissions in E*TRADE's public filings, press releases, or other public statements, that Plaintiffs or the Settlement Class have suffered any damages, that the prices of E*TRADE securities were

3

artificially inflated by reasons of alleged misrepresentations, non-disclosures or otherwise, and that Plaintiffs or the Settlement Class were harmed by any conduct alleged in the Action or that could have been alleged therein. Each of the Individual Defendants further asserts that, at all relevant times, they acted in good faith and in a manner they reasonably believed to be in the best interests of the Company and its shareholders.

Defendants, however, recognize the uncertainty and the risk inherent in any litigation, especially complex securities litigation, and the difficulties and substantial burdens, expense, and length of time that may be necessary to defend this proceeding through the conclusion of discovery, summary judgment motions, trial, post-trial motions, and appeals. Defendants have therefore determined to settle the Action on the terms and conditions set forth in this Stipulation and to put the Released Claims to rest finally and forever, without in any way acknowledging any wrongdoing, fault, liability, or damages to Plaintiffs and the Settlement Class.

## IV.   TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiffs (on behalf of themselves and the Settlement Class Members) and Defendants, by and through their respective counsel or attorneys of record, that, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Action and the Released Claims, and all matters encompassed within the scope of the releases set forth or referenced in this Stipulation, shall be finally, fully, and forever compromised, settled, and released, and the Action shall be dismissed with prejudice as to all Released Persons upon and subject to the terms and conditions of the Stipulation, as follows:

1.      **Definitions**

As used in the Stipulation the following terms have the meanings specified below:

1.1     "Action" means the case captioned *Freudenberg v. E*TRADE Financial Corp., et al.*, Civil Action No. 07 Civ. 8538 (JPO) (MHD) and all constituent actions consolidated therewith.

1.2     "Authorized Claimant" means any Settlement Class Member whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.3     "Claims Administrator" means the firm of The Garden City Group, Inc.

1.4     "Co-Lead Counsel" means Levi & Korsinsky LLP.

1.5     "Co-Lead Plaintiff" means Ira Newman.

1.6     "Complaint" means the Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws in *Freudenberg v. E*TRADE Financial Corp., et al.*, Civil Action No. 07 Civ. 8538, Docket No. 68, which is the operative complaint in the Action.

1.7     "Defendants" means E*TRADE Financial Corporation, Mitchell H. Caplan, Robert J. Simmons, and Dennis E. Webb.

1.8     "Effective Date," or the date upon which this Settlement becomes "effective," means three (3) business days after the date by which all of the events and conditions specified in ¶ 7.1 have been met and have occurred.

1.9     "E*TRADE" or the "Company" means E*TRADE Financial Corporation.

1.10    "Escrow Agent" means Lead Counsel.

1.11    "Final" means when the last of the following with respect to the Judgment shall occur: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) without any such motion having been filed or, if such a motion is

filed, an order denying such motion; (ii) the expiration of the time for the filing or noticing of any appeal from the Judgment without appeal having been noticed or taken; and (iii) if an appeal is taken, immediately after (a) the date of final dismissal of any appeal from the Judgment or the final dismissal of any proceeding on certiorari to review the Judgment, or (b) the date of final affirmance on appeal of the Judgment, the expiration of time for any further judicial review whether by appeal, reconsideration or a petition for a writ of certiorari and, if certiorari is granted, the date of final affirmance of the Judgment following review pursuant to the grant. For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this Settlement, but shall not include any appeal which concerns only the issue of attorneys' fees and/or expenses, the Plan of Allocation of the Settlement Fund, or the procedures for determining Authorized Claimants' recognized claims; any proceeding or appeal pertaining solely to one or more of these excluded issues shall not in any way delay or affect the time set forth above for the Judgment to become Final, or otherwise preclude the Judgment from becoming Final.

1.12   "Individual Defendants" means Mitchell H. Caplan, Robert J. Simmons, and Dennis E. Webb.

1.13   "Judgment" means the Final Judgment and Order of Dismissal with Prejudice to be rendered by the Court, substantially in the form attached hereto as Exhibit B.

1.14   "Lead Counsel" means Brower Piven, A Professional Corporation.

1.15   "Lead Plaintiff" means Kristen Management Limited, Straxton Properties, Inc., and Javed Fiyaz, also referred to as the Kristen-Straxton Group.

1.16   "Net Settlement Fund" means the Settlement Fund less (i) any Court-awarded attorneys' fees, costs, and expenses; (ii) any Court-approved award to Plaintiffs; (iii) notice and

6

administration costs; (iv) Taxes and Tax Expenses; and (v) other Court-approved deductions that occur before distribution of the proceeds of the Settlement to the Settlement Class.

1.17    "Person" means an individual, corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their spouses, heirs, predecessors, successors, representatives, or assignees.

1.18    "Plaintiffs" means Kristen Management Limited, Straxton Properties, Inc., Javed Fiyaz, Ira Newman, Peter Farah, and Andrea Frascaroli.

1.19    "Plaintiffs' Counsel" means Lead Counsel and Co-Lead Counsel.

1.20    "Plan of Allocation" means a plan or formula of allocation of the Settlement Fund whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of expenses of notice and administration of the Settlement, Taxes and Tax Expenses, and such attorneys' fees, costs, expenses, and interest, as well as Plaintiffs' expenses, if any, as may be awarded by the Court. Any Plan of Allocation is not part of the Stipulation and neither Defendants nor their Related Parties shall have any responsibility or liability with respect thereto.

1.21    "Related Parties" means each Defendant's past or present directors, officers, employees, partners, insurers, co-insurers, reinsurers, controlling shareholders, attorneys, accountants or auditors, personal or legal representatives, predecessors, successors, parents, subsidiaries, divisions, joint ventures, agents, assigns, spouses, heirs, executors, estates, administrators, related or affiliated entities, any entity in which a Defendant has a controlling interest, any members of any Individual Defendant's immediate family, or any trust of which any

7

Individual Defendant is the settlor or which is for the benefit of any Individual Defendant's family.

1.22   "Released Claims" means any and all claims, debts, demands, rights, liabilities, and causes of action of every nature and description whatsoever (including, but not limited to, any claims for damages, restitution, rescission, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or unliquidated, at law or in equity, matured or unmatured, including, without limitation, claims arising under Sections 10(b) or 20(a) of the Securities Exchange Act of 1934 and claims for control person liability, whether class or individual in nature, including both known claims and Unknown Claims (as defined in ¶ 1.33), whether or not concealed or hidden that (i) have been asserted in this Action or in the Complaint by the Plaintiffs against any of the Released Persons (as defined below), or (ii) could have been asserted in the Action or any other forum by the Plaintiffs or any Settlement Class Member (or any person who inherited or otherwise acquired E*TRADE securities from a Settlement Class Member) against any of the Released Persons that arise out of, or are based upon or related in any way to: (a) such Settlement Class Member's purchase, acquisition, disposition, sale or retention of, or other transaction in, E*TRADE securities during the Settlement Class Period, or (b) the allegations, transactions, facts, matters or occurrences, representations or omissions involved in the Action, or set forth or referred to in the Complaint, including without limitation, claims that arise out of or relate to any disclosures, Securities and Exchange Commission filings, press releases, registration statements, offering memoranda, or other public statements by or on behalf of E*TRADE during the Settlement Class Period. "Released Claims" do not include the

claims being prosecuted in a derivative capacity on behalf of E*TRADE in *Rubery, et al. v. Caplan, et al.*, Civil Action No. 07 Civ 8612, or any claims to enforce the terms of the Settlement or the Stipulation.

1.23   "Released Persons" means each and all of the Defendants and their Related Parties.

1.24   "Settlement" means the settlement between Plaintiffs, on behalf of themselves and the Settlement Class Members, and the Defendants on the terms set forth in the Stipulation.

1.25   "Settlement Amount" means Seventy-Nine Million Dollars (US$79,000,000) in cash.

1.26   "Settlement Class" means all Persons (other than those Persons who timely and validly request exclusion from the Settlement Class) who purchased or otherwise acquired E*TRADE securities between April 19, 2006 and November 9, 2007, inclusive. Excluded from the Settlement Class are Defendants, members of the Individual Defendants' immediate families, the directors, officers, subsidiaries, and affiliates of E*TRADE, any firm, trust, corporation, or other entity in which any Defendant has a controlling interest, and the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded person or entity.

1.27   "Settlement Class Member" or "Member of the Settlement Class" mean a Person who falls within the definition of the Settlement Class as set forth in ¶ 1.26 above.

1.28   "Settlement Class Period" means the period between April 19, 2006 and November 9, 2007, inclusive.

1.29   "Settlement Fund" means the Settlement Amount plus all interest and accretions thereto, and which may be reduced by payments or deductions as provided herein or by Court order.

1.30    "Settling Parties" means, collectively, the Defendants and the Plaintiffs on behalf of themselves and the Settlement Class.

1.31    "Tax Expenses" means any tax-related expenses and costs incurred in connection with the operation and implementation of ¶ 2.7, including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in ¶ 2.7.

1.32    "Taxes" means any taxes, including any estimated taxes, interest, or penalties, arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Defendants or their Related Parties or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes

1.33    "Unknown Claims" means any claims that Plaintiffs or any Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Persons that, if known by him, her, or it, would or might have affected his, her, or its settlement with and release of the Released Persons, or would or might have affected his, her, or its decisions with respect to this Settlement. Plaintiffs and Settlement Class Members may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Plaintiffs upon the Effective Date shall expressly, fully, finally, and forever settle and release and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or

10

not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Plaintiffs acknowledge, and the Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the inclusion of Unknown Claims in the definition of Released Claims was separately bargained for and a key element of the Settlement of which this release is a material and essential part. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Plaintiffs shall expressly waive and relinquish, and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived and relinquished, the provisions, rights, and benefits of California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs shall expressly waive and relinquish, and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived and relinquished, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542.

**2.    The Settlement**

**The Settlement Fund**

2.1      In full settlement of the Released Claims, E*TRADE and its insurance carriers shall pay or cause to be paid the Settlement Amount (US $79,000,000 in cash), as directed by the

Escrow Agent, no later than thirty (30) days after (i) preliminary approval of the Settlement provided for in the Stipulation by the Court and (ii) Defendants' receipt of all required payment information from Lead Counsel, including adequate wire instructions and a completed Form W-9. If the entire Settlement Amount is not timely transferred to an account or accounts established by the Escrow Agent, Plaintiffs may terminate the Settlement if (i) Lead Counsel has notified Defendants' counsel in writing of Lead Counsel's intention to terminate the Settlement, and (ii) the entire Settlement Amount is not transferred to the account or accounts established by the Escrow Agent within ten (10) days after Lead Counsel has provided such written notice.

**The Escrow Agent**

2.2    The Escrow Agent shall invest the Settlement Amount deposited in accounts at JPMorgan Chase Bank, N.A. and JPMorgan Chase & Co. (each to be entitled the "E*TRADE Securities Litigation Settlement Fund" under its own U.S. tax identification number) in short term United States agency or Treasury securities or other instruments backed by the full faith and credit of the United States Government or an agency thereof, or fully insured by the United States Government or an Agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund and the Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent.

2.3    The Escrow Agent shall not disburse the Settlement Fund except as provided in the Stipulation or by an order of the Court.

2.4     Subject to further order(s) and/or directions as may be made by the Court, or as provided in the Stipulation, the Escrow Agent is authorized to execute such transactions that are consistent with the terms of the Stipulation.

2.5     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed or returned pursuant to the Stipulation and/or further order(s) of the Court.

2.6     Without further order of the Court, the Settlement Fund may be used by Plaintiffs' Counsel to pay reasonable costs and expenses actually incurred in connection with providing notice to the Settlement Class, locating Settlement Class Members, soliciting claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proof of Claim and Release forms, and paying escrow fees and costs, if any. If the Effective Date does not occur, the Settlement Fund will be returned to Defendants and their insurance carriers, less the costs or expenses incurred in connection with providing notice to the Settlement Class and administering the Settlement. In no event shall the Released Persons have any responsibility for or liability for the administration of the Settlement Fund.

**Taxes**

2.7     (a)     The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 2.7, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall

be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)     For the purpose of § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)). Such returns (as well as the election described in ¶ 2.7(a) hereof) shall be consistent with this ¶ 2.7 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶ 2.7(c) hereof.

(c)     All Taxes and Tax Expenses shall be paid out of the Settlement Fund; in all events the Released Persons and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Persons and their counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)); neither the Defendants nor their Related Parties nor their counsel are

14

responsible nor shall they have any liability for any Taxes or Tax Expenses. The parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶ 2.7.

**Termination of Settlement**

2.8     In the event that the Stipulation is not approved or the Stipulation is terminated, canceled, or fails to become effective for any reason, the Settlement Fund (including accrued interest) less expenses paid, incurred or due and owing in connection with notice and administration of the Settlement, shall be refunded pursuant to written instructions from E*TRADE to the Escrow Agent in accordance with ¶ 7.4 herein.

**3.     Preliminary Approval Order and Settlement Hearing**

3.1     Promptly after execution of the Stipulation, the Settling Parties shall submit the Stipulation together with its Exhibits to the Court, and Plaintiffs' Counsel shall apply for entry of an order on the earliest available date ("Preliminary Approval Order"), substantially in the form of Exhibit A attached hereto, requesting, among other things, the preliminary approval of the Settlement set forth in the Stipulation, and approval for the mailing of a settlement notice ("Notice") and publication of a summary notice, substantially in the forms of Exhibits A-1 and A-3 attached hereto.

3.2     Plaintiffs' Counsel shall request that after notice is given, the Court hold a hearing ("Settlement Hearing") to consider and determine whether to approve the Settlement pursuant to the terms of this Stipulation as fair, reasonable, and adequate, and whether the Judgment, substantially in the form of Exhibit B attached hereto, should be entered approving the Settlement as set forth herein and dismissing the Action with prejudice. At or after the Settlement

Hearing, Plaintiffs' Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

**4.      Releases**

4.1      The satisfaction of the obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action and any and all Released Claims.

4.2      Upon the Effective Date, Plaintiffs and each and every Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever waived, released, relinquished, discharged, and dismissed each and every one of the Released Claims against each and every one of the Released Persons, whether or not such Settlement Class Member executes and delivers the Proof of Claim and Release, and whether or not such Settlement Class Member shares in the Settlement Fund.

4.3      The Proof of Claim and Release to be executed by Settlement Class Members shall release all Released Claims against the Released Persons and shall be substantially in the form contained in Exhibit A-2 attached hereto.

4.4      Upon the Effective Date, each and every Settlement Class Member and anyone claiming through or on behalf of any of them, will be forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting the Released Claims against any of the Released Persons.

4.5      Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Plaintiffs, each and all of the Settlement Class Members, and Plaintiffs' Counsel

from all claims (including Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of the Action or the Released Claims.

**5.    Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

5.1    The Claims Administrator, subject to such supervision and direction of Plaintiffs' Counsel and the Court as may be necessary or as circumstances may require, shall administer and calculate the claims submitted by Settlement Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

5.2    The Settlement Fund shall be applied as follows:

(a)    to pay all the fees, costs, and expenses reasonably and actually incurred in connection with providing notice, locating Settlement Class Members, soliciting Settlement Class claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proof of Claim and Release forms, and paying escrow fees and costs, if any;

(b)    to pay the Taxes and Tax Expenses;

(c)    after the Judgment is Final, to pay Plaintiffs' Counsel's attorneys' fees and expenses ("Fee and Expense Award"), if and to the extent allowed by the Court; and

(d)    after the Effective Date, to distribute the balance of the Settlement Fund (i.e., "Net Settlement Fund") to Authorized Claimants as allowed by the Plan of Allocation in the form approved by the Court.

5.3    After the Effective Date, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following.

5.4     Within one hundred and twenty (120) days after the mailing of the Notice or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the form of Exhibit A-2 attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and Release. All Proofs of Claim must be submitted by the date specified in the Notice, unless such period is extended by order of the Court.

5.5     Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a valid Proof of Claim and Release within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to the Settlement, but will in all other respects be subject to and bound by the provisions of the Stipulation, the releases contained herein, and the Judgment. Notwithstanding the foregoing, Plaintiffs' Counsel shall have the discretion to accept late-submitted claims for processing by the Claims Administrator so long as the distribution of the Settlement Fund is not materially delayed thereby.

5.6     The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the Court. If there is any balance remaining in the Net Settlement Fund after six (6) months from the initial date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), Plaintiffs' Counsel shall, if feasible, reallocate such balance among Authorized Claimants in an equitable and economic fashion. Thereafter, any balance that still remains in the Net Settlement Fund shall be, subject to the payment of any additional,

previously unreimbursed fees, costs, and expenses related to the administration of the Settlement, donated to an appropriate non-profit organization (as determined by Lead Counsel).

5.7     The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to, the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes, or any losses incurred in connection therewith. No Person shall have any claim of any kind against the Defendants or their Related Parties with respect to the matters set forth in ¶¶ 5.1 through and including 5.9 hereof; and the Settlement Class Members, Plaintiffs, and Plaintiffs' Counsel release the Released Persons from any and all liability and claims arising from or with respect to the investment or distribution of the Settlement Fund.

5.8     No Person shall have any claim against the Plaintiffs, Plaintiffs' Counsel or the Claims Administrator, or any other Person designated by Plaintiffs' Counsel, based on determinations and/or distributions made substantially in accordance with the Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

5.9     It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a necessary part of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in the Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect the finality of the Court's Judgment approving the Stipulation and the Settlement set forth therein, or any other orders entered pursuant to the Stipulation.

6.      **Plaintiffs' Counsel's Attorneys' Fees and Expenses**

6.1     Plaintiffs' Counsel may submit an application or applications ("Fee and Expense Application") for an award of attorneys' fees not to exceed one-third (33.33%) of the Settlement Amount, plus expenses incurred in connection with prosecuting the Action, plus any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court. Defendants will not object to such application. Plaintiffs' Counsel reserve the right to make additional applications for fees and expenses incurred in connection with the preservation of the Settlement Fund and/or the administration of the Settlement.

6.2     The attorneys' fees and expenses, if and to the extent allowed by the Court, shall be available for distribution to Plaintiffs' Counsel immediately after entry of an order by the Court awarding such fees and expenses.

6.3     In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified, or the Stipulation is canceled or terminated for any other reason, and in the event that the Fee and Expense Award has been paid to any extent, then Plaintiffs' Counsel shall within five (5) business days from receiving notice from Defendants' counsel or from a court of appropriate jurisdiction, refund (less the deductions provided in ¶¶ 2.6 and 2.7) to the Settlement Fund such fees and expenses previously paid to them from the Settlement Fund, plus interest thereon at the same rate as earned on the Settlement Amount in an amount consistent with such reversal or modification. Plaintiffs' Counsel receiving fees and expenses, as a condition of receiving such fees and expenses, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders

are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

6.4    The procedure for and the allowance or disallowance by the Court of any applications by any Plaintiffs' Counsel for attorneys' fees and expenses, to be paid out of the Settlement Fund, are not part of the Settlement set forth in the Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in the Stipulation, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement of the Action set forth therein.

6.5    The Released Persons shall have no responsibility for any payment of attorneys' fees and expenses to Plaintiffs' Counsel over and above payment out of the Settlement Fund.

6.6    The Released Persons shall have no responsibility for the allocation among Plaintiffs' Counsel, and/or any other Person who may assert any claim thereto, of any Fee and Expense Award that the Court may make in the Action, and the Released Persons take no position with respect to such matters.

**7.    Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

7.1    The Effective Date of the Settlement shall be the date when all of the following shall have occurred and is conditioned on the occurrence of all of the following events:

(a)    the Court has entered the Preliminary Approval Order, as described in ¶ 3.1 hereof;

(b)     E*TRADE and its insurance carriers paid or caused to be paid the Settlement Amount to the Settlement Fund, as required by ¶ 2.1 hereof;

(c)     no option to terminate the Stipulation has been exercised or, if exercised, has been retracted;

(d)     the Court has entered the Judgment, or a judgment substantially in the form of Exhibit B attached hereto; and

(e)     the Judgment has become Final, as defined in ¶ 1.11 hereof.

7.2     Upon the occurrence of all of the events referenced in ¶ 7.1 hereof, any and all remaining interest or right of the Defendants or the Defendants' insurers in or to the Settlement Fund, if any, shall be absolutely and forever extinguished. If it becomes clear that any of the conditions specified in ¶ 7.1 hereof cannot or will not be met, then the Stipulation shall be canceled and terminated subject to ¶ 7.5 hereof unless Plaintiffs' Counsel and counsel for E*TRADE mutually agree in writing to otherwise proceed with the Settlement.

7.3     E*TRADE shall have the option to terminate the Settlement in the event that Settlement Class Members who purchased in the aggregate more than a certain number of shares of E*TRADE common stock during the Settlement Class Period choose to exclude themselves from the Settlement Class, as set forth in a separate agreement ("Supplemental Agreement") executed between Plaintiffs' Counsel and Defendants' counsel. The Supplemental Agreement will not be filed with the Court unless requested by the Court or unless a dispute among the Settling Parties concerning its interpretation or application arises and in that event, the parties shall request that the Supplemental Agreement be filed and maintained by the Court under seal.

7.4     Unless otherwise ordered by the Court, in the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, within ten (10) business

days after written notification of such event is made by counsel for E*TRADE or Lead Counsel to the other party, the Settlement Fund, less expenses that have either been disbursed pursuant to ¶¶ 2.6 and 2.7 hereof, or are determined to be chargeable to the Settlement Fund, shall be refunded by Plaintiffs' Counsel directly to the entity or entities that provided the funds, based on their *pro rata* contribution to the Settlement Fund, as indicated in writing to Lead Counsel by E*TRADE's counsel. The Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, in a similar *pro rata* manner, pursuant to written instructions from E*TRADE's counsel.

7.5    In the event that the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms: (i) the Settling Parties shall be restored to their respective positions in the Action as of December 17, 2011. In such event, the terms and provisions of the Stipulation, with the exception of ¶¶ 1.1-1.33, 2.6-2.8, 6.3-6.5, 7.4-7.6, 8.3, and 8.4 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, expenses, and interest awarded by the Court to Plaintiffs' Counsel shall constitute grounds for cancellation or termination of the Stipulation.

7.6    Notwithstanding any provision herein to the contrary, if the Effective Date does not occur, or if the Stipulation is terminated pursuant to its terms, neither Plaintiffs nor any of their counsel shall have any obligation to repay any amounts actually and properly disbursed

23

pursuant to ¶¶ 2.6 or 2.7. In addition, any expenses already incurred pursuant to ¶¶ 2.6 or 2.7 hereof at the time of such termination or cancellation but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶¶ 2.8 and 7.4 hereof.

**8.     Miscellaneous Provisions**

8.1     Plaintiffs have asserted that the Action should be certified as a class action pursuant to the Federal Rules of Civil Procedure. For settlement purposes only, and for no other purpose than as set forth in and to effectuate this Stipulation, Defendants will not object to such certification on the terms set forth in this Stipulation. The Settling Parties further agree that if the Court does not enter the Preliminary Approval Order substantially in the form of Exhibit A attached hereto, then no class will be deemed to have been certified by or as a result of this Stipulation, and the Action will for all purposes with respect to the Settling Parties revert to its status as of the day immediately before the Stipulation was fully executed. In such event, (i) Defendants will not be deemed to have consented to the certification of any class, (ii) the Stipulation concerning class definition or class certification shall not be used as evidence or argument in support of class definition or class certification, and (iii) Defendants will retain all rights to oppose class certification.

8.2     The Settling Parties (i) acknowledge that it is their intent to consummate this agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

8.3     The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Action. The Settlement compromises claims that

are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Final Judgment will contain a finding that, during the course of the Action, the parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11. The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party reasonably determines to be appropriate, any contention made by any of the Settling Parties in any public forum that the Action was brought or defended in bad faith or without a reasonable basis.

8.4    Whether or not the Settlement is approved by the Court, and whether or not the Settlement is consummated, the fact and terms of this Stipulation, including its Exhibits, all negotiations, discussions, drafts, and proceedings in connection with the Settlement, and any act performed or document signed in connection with the Settlement, shall not, in this or any other court, administrative agency, arbitration forum, or other tribunal, constitute an admission of, or evidence of, or be deemed to create any inference of (i) any acts of wrongdoing or lack of wrongdoing; (ii) any liability on the part of any of the Defendants or the Released Persons to Plaintiffs, the Settlement Class, or anyone else; (iii) any deficiency of any claim or defense that has been or could have been asserted in this Action; (iv) any damages, or lack of damages, suffered by Plaintiffs, the Settlement Class, or anyone else; or (v) that the Settlement Fund (or any other amount) represents the amount that could or would have been recovered from Defendants in the Action if the Action was not settled.

8.5    The fact and terms of this Stipulation, including Exhibits, all negotiations, discussions, drafts, and proceedings in connection with the Settlement, and any act performed or

document signed in connection with the Settlement, shall not be offered by the Settling Parties or received in evidence or used for any other purpose in this or any other proceeding in any court, administrative agency, arbitration forum, or other tribunal, except as necessary to enforce the terms of the Settlement. Defendants and any Released Persons may file the Stipulation, the Preliminary Approval Order, the Notice, and/or the Judgment in any other action or proceeding that may be brought against them in any forum in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release and discharge, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim. Plaintiffs understand, acknowledge, and agree that Defendants have denied and continue to deny all claims of wrongdoing, liability, and damages alleged in the Action.

8.6     All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Stipulation.

8.7     All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

8.8     The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

8.9     The Stipulation and the Exhibits attached hereto and the Supplemental Agreement constitute the entire agreement among the parties hereto and no representations, warranties or inducements have been made to any party concerning the Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. Each party shall bear its own costs, except as otherwise provided herein.

8.10    Plaintiffs' Counsel are expressly authorized by Plaintiffs to take all appropriate action required or permitted to be taken on behalf of Settlement Class Members pursuant to the Stipulation to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of Settlement Class Members that they deem appropriate.

8.11    Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

8.12    The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

8.13    The Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court.

8.14    The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

8.15    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

8.16    This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of New York, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York without giving effect to that State's choice-of-law principles.

8.17    This Stipulation supersedes the Memorandum of Understanding dated December 17, 2011.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys.

_____
David A.P. Brower
Brian C. Kerr
**BROWER PIVEN**
 **A Professional Corporation**
488 Madison Avenue, Eighth Floor
New York, NY 10022
Telephone: (212) 501-9000
Facsimile: (212) 501-0300

*Attorneys for Lead Plaintiff and Lead Counsel
for the Settlement Class*

_____
Eduard Korsinsky
Shannon L. Hopkins
**LEVI & KORSINSKY, LLP**
30 Broad Street, 15th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

*Attorneys for Co-Lead Plaintiff and Co-Lead
Counsel for the Settlement Class*

_____
Dennis E. Glazer
Amelia T.R. Starr
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

*Attorneys for E*TRADE Financial Corporation*

_____
Neil A. Steiner
**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3822
Facsimile: (212) 698-3599

*Attorneys for Defendant Mitchell H. Caplan*

28

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys.

David A.P. Brower
Brian C. Kerr
**BROWER PIVEN**
 **A Professional Corporation**
488 Madison Avenue, Eighth Floor
New York, NY 10022
Telephone: (212) 501-9000
Facsimile: (212) 501-0300

*Attorneys for Lead Plaintiff and Lead Counsel
for the Settlement Class*

Eduard Korsinsky
Shannon L. Hopkins
**LEVI & KORSINSKY, LLP**
30 Broad Street, 15th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

*Attorneys for Co-Lead Plaintiff and Co-Lead
Counsel for the Settlement Class*

Dennis E. Glazer
Amelia T.R. Starr
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

*Attorneys for E*TRADE Financial Corporation*

Neil A. Steiner
**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3822
Facsimile: (212) 698-3599

*Attorneys for Defendant Mitchell H. Caplan*

28

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys.

David A.P. Brower
Brian C. Kerr
**BROWER PIVEN**
  **A Professional Corporation**
488 Madison Avenue, Eighth Floor
New York, NY 10022
Telephone: (212) 501-9000
Facsimile: (212) 501-0300

*Attorneys for Lead Plaintiff and Lead Counsel
for the Settlement Class*

Eduard Korsinsky
Shannon L. Hopkins
**LEVI & KORSINSKY, LLP**
30 Broad Street, 15th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

*Attorneys for Co-Lead Plaintiff and Co-Lead
Counsel for the Settlement Class*

Dennis E. Glazer
Amelia T.R. Starr
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

*Attorneys for E\*TRADE Financial Corporation*

Neil A. Steiner
**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3822
Facsimile: (212) 698-3599

*Attorneys for Defendant Mitchell H. Caplan*

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys.

David A.P. Brower
Brian C. Kerr
**BROWER PIVEN**
  **A Professional Corporation**
488 Madison Avenue, Eighth Floor
New York, NY 10022
Telephone: (212) 501-9000
Facsimile: (212) 501-0300

*Attorneys for Lead Plaintiff and Lead Counsel*
*for the Settlement Class*

Eduard Korsinsky
Shannon L. Hopkins
**LEVI & KORSINSKY, LLP**
30 Broad Street, 15th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

*Attorneys for Co-Lead Plaintiff and Co-Lead*
*Counsel for the Settlement Class*

Dennis E. Glazer
Amelia T.R. Starr
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

*Attorneys for E\*TRADE Financial Corporation*

Neil A. Steiner
**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3822
Facsimile: (212) 698-3599

*Attorneys for Defendant Mitchell H. Caplan*

28

_Jean-Marie L. Atamian_

**MAYER BROWN LLP**
1675 Broadway
New York, NY 10019
Telephone: (212) 506-2678
Facsimile: (212) 849-5678

*Attorneys for Defendant Robert J. Simmons*


Jennifer H. Rearden
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4057
Facsimile: (212) 251-5284

*Attorneys for Defendant Dennis E. Webb*

Jean-Marie L. Atamian
**MAYER BROWN LLP**
1675 Broadway
New York, NY 10019
Telephone: (212) 506-2678
Facsimile: (212) 849-5678

*Attorneys for Defendant Robert J. Simmons*

Jennifer H. Rearden
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4057
Facsimile: (212) 251-5284

*Attorneys for Defendant Dennis E. Webb*

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                           :

LARRY FREUDENBERG, Individually and    :
On Behalf of All Others Similarly Situated,    :

                                       :   Civil Action No.
            Plaintiff,             :

                                       :   07 Civ. 8538 (JPO) (MHD)
        - against -            :

E*TRADE FINANCIAL CORPORATION,    :
MITCHELL H. CAPLAN, ROBERT J.    :
SIMMONS and DENNIS E. WEBB,    :

                                       :
           Defendants.           :

                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT, GRANTING CONDITIONAL CLASS CERTIFICATION, AND PROVIDING FOR NOTICE

This consolidated putative class action comes before the Court on Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, Conditional Class Certification, and Approval of Notice ("Motion") and on the Stipulation of Settlement dated May 17, 2012 ("Stipulation") entered into by Plaintiffs and Defendants in the above-entitled action ("Action"). The Court has reviewed the Motion and the Stipulation, and attached exhibits, which set forth the terms and conditions for a proposed settlement of and for dismissal of the Action with prejudice, upon the terms and conditions of the Stipulation, and finds that the Motion is due to be granted.

All defined terms used in this Order shall have the same meanings as set forth in the Stipulation.

**NOW, THEREFORE**, the Court hereby **ORDERS**:

1.      The Court does hereby preliminarily approve the Stipulation and the Settlement set forth therein, including the releases contained therein, as being fair, reasonable, and adequate

as to the Settlement Class Members, subject to further consideration at the Settlement Hearing described below. Therefore, the motion for preliminary approval of the proposed Settlement is GRANTED.

2.      For purposes of settlement only, pursuant to Fed. R. Civ. P. 23(a) and (b)(3), the Court hereby certifies a Settlement Class consisting of all Persons (other than those Persons who timely and validly request exclusion from the Settlement Class in accordance with the requirements set forth herein) who purchased or otherwise acquired E*TRADE securities between April 19, 2006 and November 9, 2007, inclusive. Excluded from the Settlement Class are Defendants, members of the Individual Defendants' immediate families, the directors, officers, subsidiaries, and affiliates of E*TRADE, any firm, trust, corporation, or other entity in which any Defendant has a controlling interest, and the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded person or entity. Solely for the purposes of effectuating the Settlement, the Court finds and concludes that the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure have been satisfied, as follows:

      (a)      the members of the Settlement Class are so numerous that joinder of all members is impracticable;

      (b)      there are questions of law and fact common to the Settlement Class;

      (c)      the claims and defenses of the representative parties are typical of the Settlement Class;

      (d)      the representative parties will fairly and adequately protect the interests of the Settlement Class; and

      (e)      the Action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) in that there are questions of law and fact common to the members of the

2

Settlement Class that predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

3.      For purposes of settlement only, the Court finds that Plaintiffs, Kristen Management Limited, Straxton Properties, Inc., Javed Fiyaz, Ira Newman, Peter Farah and Andrea Frascaroli, possess claims that are typical of the claims of Settlement Class Members and that they have and will adequately represent the interest of Settlement Class Members, and the Court appoints them as the representatives of the Settlement Class and appoints Lead Counsel, Brower Piven, A Professional Corporation, and Co-Lead Counsel, Levi & Korsinsky, LLP, as counsel for the Settlement Class ("Plaintiffs' Counsel").

4.      If for any reason the Effective Date of the Settlement, as defined in ¶1.8 of the Stipulation, does not occur, the Stipulation, including any amendment(s) thereof, and this Order certifying the Settlement Class solely for purposes of the Settlement shall, without the need for further action by the Court or any of the Settling Parties, be null and void, of no further force or effect, and without prejudice to any party, and may not be introduced as evidence or referred to in any actions or proceedings by any person or entity.  Each party shall be restored to his, her or its respective position as it existed as of December 17, 2011. In such circumstances, each of the Settling Parties shall retain its currently existing rights to seek or to object to the certification of this litigation as a class action under Fed. R. Civ. P. 23, or any state or federal rule, statute, law, or provision, and to contest and appeal any grant or denial of certification in this litigation or in any other litigation on any other grounds.

5.     A hearing ("Settlement Hearing") shall be held before this Court on _____ at ___ a.m. for the following purposes:

(a)     to determine whether the Court should grant final certification to the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3);

(b)     to determine whether the proposed Settlement of the Action on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate to the Settlement Class and should be approved by the Court;

(c)     to determine whether a Judgment as provided in ¶1.13 of the Stipulation should be entered;

(d)     to determine whether the proposed Plan of Allocation for the proceeds of the Settlement is fair and reasonable, and should be approved by the Court;

(e)     to determine whether any applications by Plaintiffs' Counsel for attorneys' fees and/or reimbursement of expenses should be approved; and

(f)     to rule upon such other matters as the Court may deem appropriate.

6.     The Court approves, as to form and content, the Notice of Proposed Settlement of Class Action ("Notice"), the Proof of Claim Form and Release ("Proof of Claim"), and the Summary Notice (as defined below) for publication, annexed as Exhibits A-1 to A-3 hereto, respectively, and finds that the mailing and distribution of the Notice and publishing of the Summary Notice substantially in the manner and form set forth in ¶¶7-8 of this Order meet the requirements of Fed. R. Civ. P. 23, the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(7), as amended, including the Private Securities Litigation Reform Act of 1995, and due process,

and is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons entitled to notice.

7.     This civil action was commenced after February 18, 2005. The Court directs E*TRADE to notify the appropriate Federal and State officials under the Class Action Fairness Act of 2005, 28 U.S.C. §1715. Counsel for Defendants shall, at or before the Settlement Hearing, file with the Court proof of compliance with the Class Action Fairness Act of 2005, 28 U.S.C. §1715.

8.     The firm of The Garden City Group, Inc. ("Claims Administrator") is hereby appointed, under the supervision of Plaintiffs' Lead Counsel, to administer the notice procedure as well as the processing of claims as more fully set forth below:

(a)     E*TRADE shall cooperate, to the extent necessary, in making its transfer records and shareholder information available to the Claims Administrator for the purpose of identifying and giving notice to the Settlement Class;

(b)     No later than fifteen (15) business days after entry of this Order, Plaintiffs' Lead Counsel shall cause a copy of the Notice, substantially in the form annexed as Exhibit A-1, to be mailed by first class mail to all potential Settlement Class Members who can be identified with reasonable effort;

(c)     Plaintiffs' Lead Counsel shall cause the summary notice, in substantially the form annexed as Exhibit A-3 ("Summary Notice"), to be published three (3) separate times, with no less than four (4) business days between each publication, over the *PR Newswire*, or a similar national business-oriented newswire, with such publication completed no later than twenty-eight (28) calendar days after the mailing of the Notice; and

(d)     No later than seven (7) calendar days before the Settlement Hearing, Plaintiffs' Lead Counsel shall cause proof, by affidavit or declaration, of such mailing and publishing to be filed with the Court.

9.    Nominees who purchased the securities of E*TRADE for the beneficial ownership of Settlement Class Members during the Class Period shall send the Notice to all beneficial owners of such E*TRADE securities within seven (7) calendar days after receipt thereof, or send a list of the names and addresses of such beneficial owners to the Claims Administrator within seven (7) calendar days of receipt thereof, in which event the Claims Administrator shall promptly mail the Notice to such beneficial owners. The Claims Administrator shall, if requested, reimburse banks, brokerage houses or other nominees solely for their reasonable out-of pocket expenses incurred in providing notice to beneficial owners who are potential Settlement Class Members out of the Settlement Fund, which expenses would not have been incurred except for the sending of such Notice, subject to further order of this Court with respect to any dispute concerning such compensation.

10.    In order to be entitled to participate in the Net Settlement Fund, in the event the Settlement is effected in accordance with the terms and conditions set forth in the Stipulation, each Settlement Class Member shall take the following actions and be subject to the following conditions:

(a)     A properly executed Proof of Claim, substantially in the form attached hereto as Exhibit A-2, must be submitted to the Claims Administrator, at the Post Office Box indicated in the Notice, postmarked or delivered no later than one hundred twenty (120) calendar days after the initial mailing of the Notice.  Such deadline may be further extended by Court Order.

Each Proof of Claim shall be deemed to have been submitted when postmarked (if properly addressed and mailed by first class mail, postage prepaid) provided such Proof of Claim is actually received prior to the motion for an order of the Court approving distribution of the Net Settlement Fund. Any Proof of Claim submitted in any other manner shall be deemed to have been submitted when it was actually received at the address designated in the Notice. Any Settlement Class Member who does not submit a Proof of Claim within the time provided for shall be barred from sharing in the distribution of the proceeds of the Net Settlement Fund, unless otherwise ordered by the Court. Notwithstanding the foregoing, Plaintiffs' Lead Counsel shall have discretion to accept late-submitted claims for processing by the Claims Administrator so long as the distribution of the Net Settlement Fund is not materially delayed thereby.

(b)     The Proof of Claim submitted by each Settlement Class Member must satisfy the following conditions: (i) it must be properly completed, signed and submitted in a timely manner in accordance with the provisions of the preceding subparagraph; (ii) it must be accompanied by adequate supporting documentation as are specified in the Proof of Claim and as are reasonably available to the Authorized Claimant for the transactions reported therein, in the form of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional information found in a broker confirmation slip, or such

7

other documentation as is deemed adequate by Plaintiffs' Lead Counsel; (iii) if the person executing the Proof of Claim is acting in a representative capacity, a certification of his current authority to act on behalf of the Settlement Class Member must be included in the Proof of Claim; and (iv) the Proof of Claim must be complete and contain no material deletions or modifications of any of the printed matter contained therein and must be signed under penalty of perjury.

(c)     As part of the Proof of Claim, each Settlement Class Member shall submit to the jurisdiction of the Court with respect to the claim submitted, and shall (subject to effectuation of the Settlement) release all Released Claims as provided in the Stipulation.

11.     All Settlement Class Members shall be bound by all determinations and judgments in this Action, concerning the Settlement, including but not limited to the releases provided for in the Stipulation, whether favorable or unfavorable, except those who are found by the Court to have previously timely and validly requested exclusion from the Settlement Class. The persons and entities who request exclusion from the Settlement Class will be excluded from the Settlement Class and shall have no rights under the Stipulation, shall not be entitled to submit any Proof of Claim forms, shall not share in the distribution of the Net Settlement Fund as described in the Stipulation and in the Notice, and shall not be bound by the Stipulation or the Judgment entered as to Defendants in the Action.

12.     To request exclusion from the Settlement Class, a putative Settlement Class Member must send a letter, postmarked or delivered, no later than ninety (90) calendar days after entry of this Order to the Claims Administrator. For a request for exclusion to be valid, the

putative Settlement Class Member's request for exclusion must include the Settlement Class Member's name, current address, and day-time and evening telephone numbers; the dates of all such Settlement Class Member's purchases and/or sales of E*TRADE securities during the Class Period; the number of shares purchased and/or sold on each such date; the prices paid and/or received for all such shares on each such date; and a clear and unambiguous statement that such putative Settlement Class Member wishes to be excluded from the Settlement Class. No further opportunity to request exclusion will be given in this Action. A Settlement Class Member's failure to comply with the foregoing requirements for requesting exclusion from the Settlement Class will result in such request being invalid and ineffective.

13.     Pending final determination of whether the Stipulation should be approved, Plaintiffs' Counsel, Plaintiffs, and Settlement Class Members are barred and enjoined from commencing or prosecuting any action asserting any Released Claims against any Released Persons.

14.     Any Settlement Class Member may enter an appearance in the Action, individually or, at their own expense, through counsel of their own choice, in which case such counsel must file with the Clerk of the Court and deliver to Lead Counsel and counsel for E*TRADE a notice of such appearance no later than ninety (90) calendar days after entry of this Order. If they do not enter an appearance, they will be represented by Plaintiffs' Counsel.

15.     All papers in support of the Settlement, the Plan of Allocation, Plaintiffs' Counsel's application for an award of attorneys' fees and Plaintiffs' Counsel's applicatuion for reimbursement of expenses shall be filed no later than sixty (60) calendar days after entry of this Order.

16.     Any Settlement Class Member may appear and show cause, if he, she, or it has any, why the proposed Settlement should not be approved as fair, reasonable, and adequate, why the Plan of Allocation should not be approved as fair and equitable, why Plaintiffs' Counsel's application for an award of attorneys' fees and/or why Plaintiffs' Counsel's application for reimbursement of expenses should not be granted; provided, however, that no Person shall be heard or entitled to contest such matters, unless that Person has delivered by hand or sent by first class mail written objections and copies of all papers and briefs any such Person wishes to submit in support of any such objection delivered or post-marked no later than ninety (90) calendar days after entry of this Order to each of the following:

CLERK OF THE COURT
SOUTHERN DISTRICT OF NEW YORK
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

BROWER PIVEN
A PROFESSIONAL CORPORATION
David A.P. Brower
488 Madison Avenue
New York, NY 10022

*Plaintiffs' Lead Counsel*

DAVIS POLK & WARDWELL LLP
Amelia T.R. Starr
450 Lexington Avenue
New York, NY 10017

*Attorneys for E\*TRADE Financial Corporation and the Individual Defendants*

Any Person who does not make his, her, or its objection in the manner provided in the Notice shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness or adequacy of the proposed Settlement as set forth in the Stipulation, unless otherwise ordered by the Court.  Any papers, in response to any such objections and/or in

10

further support of the above-noted motions shall be filed no later than seven (7) calendar days before the Settlement Hearing.

17.     All funds held by the Escrow Agent shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

18.     All reasonable costs and expenses incurred in identifying and notifying Settlement Class Members, as well as administering the Settlement Fund, shall be paid as set forth in the Stipulation. In the event the Settlement is not approved by the Court, or otherwise fails to become effective, neither the Plaintiffs nor Plaintiffs' Counsel shall have any obligation to repay any amounts reasonably incurred or disbursed pursuant to ¶¶2.4, 2.6, or 2.7 of the Stipulation for costs and expenses of providing notice and administration of the Settlement.

19.     This Order, the Settlement, and any of their terms, and all negotiations, discussions and proceedings in connection with this Order and the Settlement, shall not constitute evidence, or an admission by any of the Defendants or the other Released Persons, that any acts of wrongdoing have been committed and shall not be deemed to create any inference that there is any liability on the part of any of the Defendants or any other Released Persons. This Order, the Settlement, and any of their terms, and all negotiations, discussions and proceedings in connection with this Order and the Settlement, shall not be offered or received in evidence or used for any other purpose in this or any other proceeding in any court, administrative agency, arbitration tribunal, or other forum of any kind or character in the United States or any other country except as necessary to enforce the terms of this Order and/or the Settlement.

20.     The Court reserves the right to adjourn the date of the Settlement Hearing without further notice to Settlement Class Members, and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement. The Court may approve the Settlement, with such modifications as may be agreed to by the Plaintiffs and Defendants, if appropriate, without further notice to the Settlement Class.


Dated: _____, 2012


_____
HONORABLE J. PAUL OETKEN
UNITED STATES DISTRICT JUDGE

# EXHIBIT A-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                               :

LARRY FREUDENBERG, Individually and   :
On Behalf of All Others Similarly Situated,   :
                               :   Civil Action No.
            Plaintiff,            :
                               :   07 Civ. 8538 (JPO) (MHD)
     - against -          :
                               :

E*TRADE FINANCIAL CORPORATION,   :
MITCHELL H. CAPLAN, ROBERT J.   :
SIMMONS and DENNIS E. WEBB,   :
                               :

       Defendants.       :
                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION

**To:**     **All persons and entities who purchased or otherwise acquired the securities of E*TRADE Financial Corporation between April 19, 2006 and November 9, 2007, both dates inclusive.**

### PLEASE READ THIS NOTICE CAREFULLY.

### YOUR RIGHTS WILL BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.

PLEASE NOTE THAT IF YOU ARE A CLASS MEMBER, YOU MAY BE ENTITLED TO SHARE IN THE PROCEEDS OF THE SETTLEMENT DESCRIBED IN THIS NOTICE. TO CLAIM YOUR SHARE, YOU MUST TIMELY **SUBMIT A VALID PROOF OF CLAIM POSTMARKED NO LATER THAN [CLAIM DEADLINE]**, IN CONNECTION WITH THIS SETTLEMENT. A PROOF OF CLAIM ACCOMPANIES THIS NOTICE. IF YOU NEED AN ADDITIONAL PROOF OF CLAIM YOU MAY REQUEST ONE FROM THE CLAIMS ADMINISTRATOR, AS EXPLAINED BELOW.

### I. SUMMARY OF THIS NOTICE

      This Notice has been sent to you pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of New York ("Court"). The purpose of this Notice is to inform you of the proposed settlement of a class action lawsuit ("Action"), as set forth in the Stipulation of Settlement ("Stipulation" or "Settlement"), and of the hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement. This Notice is not intended to be, and should not be understood as, an expression of any opinion by the Court concerning the merits of the Action. This Notice describes the rights you may have in connection with the Settlement and what steps you may take in relation to the Settlement.

      The proposed Settlement creates a fund in the amount of $79,000,000 in cash before deductions of attorneys' fees, costs, and expenses. Plaintiffs Kristen Management Limited, Straxton Properties, Inc., Javed Fiyaz, Ira Newman, Peter Farah, and Andrea Frascaroli ("Plaintiffs") and defendants E*TRADE Financial Corporation ("E*TRADE"), Mitchell H. Caplan, Robert J. Simmons, and Dennis E. Webb ("Individual Defendants" and together with E*TRADE, "Defendants") disagree on the potential liability of Defendants and they do not agree on the average amount of damages per share, if any, that would be recoverable if Plaintiffs were to have prevailed at trial

on each claim alleged. Plaintiffs and Plaintiffs' Counsel (as defined below) believe that the proposed Settlement is an excellent recovery and is in the best interests of the Settlement Class (as defined below) in light of the risks associated with continuing to litigate and proceeding to trial. The Settlement Class, as certified by the Court for the purposes of settlement on [**ORDER DATE**] consists of all Persons (as defined on page 2) (other than those Persons who timely and validly request exclusion from the Settlement Class) who purchased or otherwise acquired the securities of E*TRADE between April 19, 2006 and November 9, 2007 ("Settlement Class Period"), both dates inclusive, excluding Defendants, members of the immediate families of any of the Individual Defendants, the directors, officers, subsidiaries, and affiliates of E*TRADE, any firm, trust, corporation, or other entity in which any Defendant has a controlling interest, and the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded person ("Settlement Class").

If the Settlement is approved by the Court, Court-appointed Lead Counsel for Plaintiffs, Brower Piven, A Professional Corporation, 488 Madison Avenue, 8th Floor, New York, NY 10022 and Court-appointed Co-Lead Counsel for Plaintiffs, Levi & Korsinsky, LLP, 30 Broad Street, 15th Floor, New York, NY 10004 ("Plaintiffs' Counsel") will apply to the Court for an award of attorneys' fees not to exceed 33.33% of the Settlement Fund (as defined below) and reimbursement of out-of-pocket expenses as compensation for successfully prosecuting the Action. You may contact the claims administrator, the firm The Garden City Group, Inc. ("Claims Administrator"), or a representative of Plaintiffs' Counsel for further information about the Settlement; see below under "Further Information" for the contact information.

**Statement of Plaintiffs' Recovery** – The proposed Settlement with Defendants creates a fund in the amount of $79,000,000 in cash, which will include interest that accrues prior to distribution ("Settlement Fund"). Based on Plaintiffs' Counsel's estimate of the number of shares of stock that may have been damaged by the alleged fraud, and assuming that all those shares participate in the Settlement, Plaintiffs estimate that the average recovery would be approximately $0.145 per share. Your recovery from this fund, however, will depend on a number of variables, including the number of shares of E*TRADE securities you purchased during the Settlement Class Period, the timing of your purchases and any sales, the total number and amount of claims actually filed, and the estimate of recoverable losses based on the analysis of Plaintiffs' damages consultant. You are advised to review the Plan of Allocation set forth on pages 6 to 10 below in the Notice, which provides the actual formulas that will be applied to claims submitted by each eligible individual, corporation, partnership, limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative, heir, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their predecessors, successors, representatives, or assignees ("Person") who falls within the definition of the Settlement Class ("Settlement Class Member"). This estimate above is also before deduction of any Court-awarded expenses, such as attorneys' fees and out-of-pocket expenses, and the cost of sending this Notice and administering the distribution of the settlement proceeds.

**Statement of Potential Outcome of Case** – Plaintiffs and Defendants disagree on the potential liability of Defendants and they do not agree on the average amount of damages per share, if any, that would be recoverable if Plaintiffs were to have prevailed at trial on each claim alleged. Defendants deny that they are liable in any respect or that Plaintiffs suffered any injury. The issues on which the parties disagree include: (1) whether any Defendant engaged in any conduct subject to challenge under the federal securities laws; (2) the amounts by which E*TRADE securities were allegedly artificially inflated (if at all) during the Settlement Class Period (as defined below); (3) the effect of various market forces influencing the trading price of E*TRADE securities at various times during the Settlement Class Period; (4) the extent to which the various matters that Plaintiffs alleged were materially false or misleading influenced (if at all) the trading price of E*TRADE securities during the Settlement Class Period; (5) the extent to which the various allegedly adverse material facts that Plaintiffs alleged were omitted influenced (if at all) the trading price of E*TRADE securities during the Settlement Class Period; (6) whether the statements made or facts allegedly omitted were material, false, misleading, or otherwise actionable under the securities laws; and (7) whether, even if liability could be proven, total damages would be greater than $0.

**Statement of Attorneys' Fees and Costs Sought** – Plaintiffs' Counsel have committed a substantial amount of time prosecuting claims against Defendants on behalf of Plaintiffs and the Settlement Class. In addition, they have not been reimbursed for out-of-pocket expenses. If the Settlement is approved by the Court, Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees not to exceed 33.33% of the Settlement Fund and reimbursement of out-of-pocket expenses not to exceed $750,000, to be paid from the Settlement Fund. If the

amounts described above are requested and approved by the Court, the average cost will be approximately $0.08 per share. In addition, Plaintiffs' Counsel may apply to the Court, from time to time, for their fees and expenses, including hourly time billing incurred solely for administration of the Settlement.

**Reasons for Settlement** – Plaintiffs believe that the proposed Settlement with Defendants is an excellent recovery and is in the best interests of the Settlement Class. Because of the risks associated with continuing to litigate and proceeding to trial, there was a danger that the Settlement Class would not have prevailed on their claims against Defendants, in which case the Settlement Class would receive nothing from Defendants. The amount of damages recoverable by Settlement Class Members was and is challenged by Defendants. Recoverable damages in this case are limited to losses caused by conduct actionable under applicable law and, had the Action gone to trial, Defendants would have asserted that all or most of the losses of Settlement Class Members were caused by non-actionable conduct or market, industry, or general economic factors. Defendants would also assert, among other things, that their conduct complied with all applicable legal standards and that they did not act with the required state of mind to be liable for any violations of the federal securities laws.

**Further Information** – You may contact a representative of Plaintiffs' Counsel for further information about the Settlement by calling the following toll-free number: 1-800-903-8296. You also may email Plaintiffs' Counsel at the following email address: eClaim@gcginc.com. Any written inquiries about the Action should be addressed to Plaintiffs' Counsel at:

E*TRADE Securities Class Action
Claims Administrator
c/o The Garden City Group, Inc.
PO Box 9888
Dublin, OH 43017-5788

## II. NOTICE OF HEARING ON PROPOSED SETTLEMENT

A settlement hearing will be held on [DATE], at [TIME], before the Honorable J. Paul Oetken, United States District Judge, at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007 ("Settlement Hearing"). The purpose of the Settlement Hearing will be: (1) to determine whether the Court should grant final certification to the Settlement Class pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure; (2) to determine whether the Settlement consisting of $79,000,000 in cash should be approved as fair, reasonable, and adequate to the Settlement Class and the proposed Judgment (as defined on page 11) entered; (3) to determine whether the proposed Plan of Allocation for the proceeds of the settlement is fair and reasonable, and should be approved by the Court; (4) to determine whether any applications for attorneys' fees or expenses to Plaintiffs' Counsel should be approved; and (5) to rule upon such other matters as the Court may deem appropriate. The Court may adjourn or continue the Settlement Hearing without further notice to the Settlement Class.

## III. THE LITIGATION

Currently pending before the United States District Court for the Southern District of New York is a consolidated action purportedly on behalf of all persons who purchased the securities of E*TRADE during the Settlement Class Period and who were damaged thereby. The defendants named in the Action are E*TRADE and the Individual Defendants: Mitchell H. Caplan (former CEO), Robert J. Simmons (former CFO), and Dennis E. Webb (head of capital markets division).

On October 2, 2007, plaintiff Larry Freudenberg filed a complaint in the United States District Court for the Southern District of New York captioned *Freudenberg v. E*TRADE Financial Corp.*, et al., Civil Action No. 07 Civ. 8538 ("Freudenberg Action"). By Court Order dated July 16, 2008, the Freudenberg Action was consolidated with four other actions: *Boston v. E*TRADE Financial Corp.*, et al., Civil Action No. 07 Civ. 8808; *Thulman v. E*TRADE Financial Corp.*, et al., Civil Action No. 07 Civ. 9651; *Davidson v. E*TRADE Financial Corp.*, et al., Civil Action No. 07 Civ. 10400; and *Ferenc v. E*TRADE Financial Corp.*, et al., Civil Action No. 07 Civ. 10540. By the same Order, Kristen Management Limited, Straxton Properties, Inc., and Javed Fiyaz was appointed as lead plaintiff and Ira Newman was appointed as co-lead plaintiff. The Order also provided that Brower Piven, A

Professional Corporation was appointed lead counsel ("Lead Counsel"), and Levi & Korsinsky LLP was appointed co-lead counsel ("Co-Lead Counsel").

On January 16, 2009, Plaintiffs filed their Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint") asserting violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 arising out of Defendants' alleged false and misleading statements concerning, among other things, the Company's mortgage business. Defendants filed their motion to dismiss the Complaint on April 2, 2009; the Court denied Defendants' motion on May 11, 2010.

During the course of litigation, Plaintiffs conducted extensive discovery. Defendants produced to Plaintiffs for their review more than 12 million pages of documents. In addition, Plaintiffs issued subpoenas to over 27 third-parties, and received and reviewed more than 4 million pages of documents in response to these subpoenas. Plaintiffs also conducted depositions of defendants Caplan and Webb.

On September 26, 2011, the parties participated in a mediation session with the Honorable Layn R. Phillips (Ret.), but did not reach a resolution. The parties met without Judge Phillips on November 7, 2011 and had a number of telephone calls over the course of several months concerning possible settlement. On December 17, 2011, the parties again participated in a mediation session with Judge Phillips. During the course of this mediation, the parties reached an agreement-in-principle to settle the Action. Subsequently, the counsel for Plaintiffs and Defendants continued negotiations, resulting in the terms and conditions set forth in the Stipulation.

## IV. CLAIMS OF THE SETTLEMENT CLASS AND BENEFITS OF SETTLEMENT

Plaintiffs believe that the claims asserted in the Action against Defendants have merit and that the evidence developed to date supports those claims. However, Plaintiffs and their counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against Defendants through trial and through appeals. Plaintiffs and their counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Action, as well as the difficulties and delays inherent in such litigation. Plaintiffs and their counsel also are mindful of the inherent problems of proof under and possible defenses to the securities law violations asserted in the Action. Plaintiffs and their counsel believe that the settlement set forth in the Stipulation confers substantial benefits upon the Settlement Class. Based on their evaluation, Plaintiffs and their counsel have determined that the settlement set forth in the Stipulation is in the best interests of Plaintiffs and the Settlement Class.

## V. DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants have denied and continue to deny each and all of the claims alleged in the Action. Defendants deny that they have committed or intended to commit any wrongdoing or violations of law arising out of any of the conduct, statements, acts, or omissions alleged in the Action, and maintain that their conduct was at all times proper and in compliance with applicable provisions of law. Defendants further deny that they made any material misstatements or omissions in E*TRADE's public filings, press releases, or other public statements, that Plaintiffs or the Settlement Class have suffered any damages, that the prices of E*TRADE securities were artificially inflated by reasons of alleged misrepresentations, non-disclosures or otherwise, and that Plaintiffs or the Settlement Class were harmed by any conduct alleged in the Action or that could have been alleged therein. Each of the Individual Defendants further asserts that, at all relevant times, they acted in good faith and in a manner they reasonably believed to be in the best interests of E*TRADE and its shareholders. Defendants, however, recognize the uncertainty and the risk inherent in any litigation, especially complex securities litigation, and the difficulties and substantial burdens, expense, and length of time that may be necessary to defend the Action through the conclusion of discovery, summary judgment motions, trial, post-trial motions, and appeals. Defendants have therefore determined to settle the Action on the terms and conditions set forth in the Stipulation and to put the Released Claims (as defined on page 11) to rest finally and forever, without in any way acknowledging any wrongdoing, fault, liability, or damages to Plaintiffs and the Settlement Class.

## VI. TERMS OF THE PROPOSED SETTLEMENT

E*TRADE has paid, or caused to be paid, cash in the amount of $79,000,000 into an escrow account, which will earn interest for the benefit of the Settlement Class, pursuant to the terms of the Stipulation, until distributed to eligible claiming Settlement Class Members. In exchange for such payment, the Released Claims (as defined on page 11) will be released, discharged, and dismissed with prejudice as against each of the Released Persons (as defined on page 11). A portion of the Settlement Fund will be used for certain administrative expenses, including the costs of printing and mailing this Notice, the cost of publishing newspaper notices, payment of any taxes assessed against the Settlement Fund and costs associated with the processing of claims submitted. In addition, as explained herein, a portion of the Settlement Fund may be awarded by the Court to award Plaintiffs' Counsel attorneys' fees and expenses. The Settlement Fund less (i) any Court-awarded attorneys' fees, costs, and expenses; (ii) notice and administration costs; (iii) taxes and tax expenses; and (iv) other Court-approved deductions that occur before distribution of the proceeds of the settlement to the Settlement Class ("Net Settlement Fund"), will be distributed to any Settlement Class Member whose claim for recovery has been allowed pursuant to the terms of the Stipulation ("Authorized Claimant") according to the Plan of Allocation described below.

## VII. REQUESTING EXCLUSION FROM THE SETTLEMENT CLASS

If you do not wish to be included in the Settlement Class and you do not wish to participate in the proposed settlement described in this Notice you may request to be excluded. To do so, you must send a letter, postmarked no later than **[OPT OUT DEADLINE]**. In this letter, you must set forth: (a) your name, current address, and day-time and evening telephone numbers; (b) the dates of all your purchases and/or sales of E*TRADE securities during the Settlement Class Period; (c) the number of shares purchased and/or sold on each such date; (d) the prices paid and/or received for all such shares on each such date; and (e) a clear and unambiguous statement that you wish to be excluded from the Settlement Class. The request for exclusion should be addressed as follows:

E*TRADE Securities Class Action
Claims Administrator
c/o The Garden City Group, Inc.
Attn: Exclusions Department
PO Box 9888
Dublin, OH 43017-5788

NO REQUEST FOR EXCLUSION WILL BE CONSIDERED VALID UNLESS ALL OF THE INFORMATION DESCRIBED ABOVE IS INCLUDED IN ANY SUCH REQUEST. NO FURTHER OPPORTUNITY TO REQUEST EXCLUSION WILL BE GIVEN IN THIS ACTION.

If you validly request exclusion from the Settlement Class: (a) you will be excluded from the Settlement Class; (b) you shall have no rights under the Stipulation; (c) you shall not be entitled to submit any Proof of Claim forms; (d) you will not share in the proceeds of the Settlement described herein; (e) you will not be bound by any judgment entered in the Action; and (f) you will not be precluded, by reason of your decision to request exclusion from the Settlement Class, from otherwise prosecuting an individual claim, if timely, against the Defendants based on the matters complained of in the Action.

## VIII. THE RIGHTS OF SETTLEMENT CLASS MEMBERS

If you are a Settlement Class Member, you have the following options:

1.  You may file a Proof of Claim. If you submit a Proof of Claim, you will share in the proceeds of the proposed Settlement if your claim is valid and if the proposed settlement is finally approved by the Court. In addition, you will be bound by the Judgment and release described below.

2.  If you have not timely and validly requested exclusion from the Settlement Class (see Section XIV below), you may object to the Settlement. However, if your objection is rejected, you will be bound by the Settlement and the Judgment just as if you had not objected.

3. You may do nothing at all. If you choose this option, you will not share in the proceeds of the Settlement, but you will be bound by any judgment entered by the Court in connection with the Settlement, and you shall be deemed to have, and by operation of the Judgment shall have, fully released all of the Released Claims against the Released Persons.

4. If you are a Settlement Class Member, you may, but are not required to, enter an appearance through counsel of your own choosing at your own expense. If you do not do so, you will be represented by Plaintiffs' Counsel, who are:

David A.P. Brower
Brian C. Kerr
**BROWER PIVEN**
**A PROFESSIONAL CORPORATION**
488 Madison Avenue, 8th Floor
New York, NY 10022

*Plaintiffs' Lead Counsel*

Eduard Korsinsky
Shannon L. Hopkins
**LEVI & KORSINSKY, LLP**
30 Broad Street, 15th Floor
New York, NY 10004

*Plaintiffs' Co-Lead Counsel*

You will not be charged personally for the services of Plaintiffs' Counsel.

## IX. PLAN OF ALLOCATION

The Net Settlement Fund will be distributed to Settlement Class Members who submit valid and timely Proofs of Claim in connection with this Settlement, and have an allowable loss under the Plan of Allocation described below. You will be eligible to participate in the distribution only to the extent you had a net loss on your overall transactions in E*TRADE securities during the Settlement Class Period. If you had a net gain from your overall transactions in E*TRADE securities during the Settlement Class Period, the value of the Recognized Claim will be zero. If you suffered a net loss on your overall transactions in E*TRADE securities during the Settlement Class Period, but that loss was less than the Recognized Claim calculated below, then the Recognized Claim shall be limited to the amount of the actual loss. For purposes of determining whether you had a net gain or suffered a net loss from your overall transactions in E*TRADE securities that will receive payment under this Plan of Allocation during the Settlement Class Period, the Claims Administrator shall: (i) for each E*TRADE security, total the amount paid for those securities purchased during the Settlement Class Period by the claimant ("Total Purchase Amount"); (ii) for each E*TRADE security, match any sales of those securities purchased during the Settlement Class Period first against the Settlement Class Member's opening position in such security (the proceeds of those sales will not be considered for purposes of calculating gains or losses); (iii) for each E*TRADE security, total the amount received for sales of the remaining E*TRADE securities sold during the Settlement Class Period ("Sales Proceeds"); and (iv) ascribe a $3.55 per common share holding value for the number of shares of E*TRADE securities purchased during the Settlement Class Period and still held at the end of the Settlement Class Period ("Holding Value"). The Holding Value is based upon the closing price of E*TRADE securities on November 12, 2007 – the first full trading day after the end of the Settlement Class Period. The difference between (i) the Total Purchase Amount and the (ii) sum of the Sales Proceeds and Holding Value, will be deemed your net gain or net loss on your overall transactions in E*TRADE securities during the Settlement Class Period.

In the event that a Settlement Class Member made more than one purchase or sale of a particular E*TRADE security, all purchases and sales shall be matched on a First-In-First-Out ("FIFO") basis. Settlement Class Period sales will be matched first against any particular E*TRADE security held at the beginning of the Class Period and then against purchases during the Settlement Class Period in chronological order. For all purposes, the

transaction date and not the settlement date shall be used as the date for determining eligibility to file a claim. Gifts and transfers of securities are not eligible purchases. The covering purchase of a "short" sale is not an eligible purchase. No distributions will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00.

For purposes of determining the amount an Authorized Claimant may recover under the Plan of Allocation, Plaintiffs' Counsel have consulted with their damages expert. The Court may modify the Plan of Allocation without further notice to the Settlement Class. The Court has also reserved jurisdiction to allow, disallow, or adjust the claim of any Settlement Class Member on equitable grounds.

Payment pursuant to the Plan of Allocation set forth below shall be conclusive against all Authorized Claimants. No Person shall have any claim against the Defendants or the Plaintiffs on behalf of themselves and the Settlement Class (collectively the "Settling Parties"), Plaintiffs' Counsel, or the Claims Administrator or other Person designated by Plaintiffs' Lead Counsel based on distributions made substantially in accordance with the Stipulation and the settlement contained therein, the Plan of Allocation, or further orders of the Court. All Settlement Class Members who have failed to complete and file a valid and timely Proof of Claim in this Settlement shall be barred from participating in distributions from the Net Settlement Fund (unless otherwise ordered by the Court), but otherwise shall be bound by all of the terms of the Stipulation, including the terms of the Judgment entered and the releases given.

Subject to the foregoing, under the Plan of Allocation, each Authorized Claimant shall be paid the percentage of the Net Settlement Fund that each Authorized Claimant's Recognized Loss bears to the total of the Recognized Loss of all Authorized Claimants ("pro rata share").

**Calculation of Recognized Loss for E*TRADE Common Stock Purchases:**

(i)     For each share of E*TRADE common stock purchased or otherwise acquired between April 19, 2006 and July 25, 2007, inclusive, and held at the close of business on February 7, 2008, the recognized loss per share is $3.42.

(ii)    For each share of E*TRADE common stock purchased or otherwise acquired between April 19, 2006 and July 25, 2007, inclusive, and sold between November 12, 2007 and February 7, 2008, inclusive, the recognized loss per share is $3.42.

(iii)   For each share of E*TRADE common stock purchased or otherwise acquired between April 19, 2006 and July 25, 2007, inclusive, and sold between July 26, 2007 and August 10, 2007, inclusive, the recognized loss per share is the *lesser* of:

   (a)   $0.17; *or*
   (b)   the price paid less the price received.

(iv)    For each share of E*TRADE common stock purchased or otherwise acquired between April 19, 2006 and July 25, 2007, inclusive, and sold between August 13, 2007 and October 17, 2007, the recognized loss per share is $0.52.

(v)     For each share of E*TRADE common stock purchased or otherwise acquired between April 19, 2006 and July 25, 2007, inclusive, and sold between October 18, 2007 and November 9, 2007, inclusive, the recognized loss per share is $0.97.

(vi)    For each share of E*TRADE common stock purchased or otherwise acquired between April 19, 2006 and July 25, 2007, inclusive, and sold on or before July 25, 2007, the recognized loss is $0.

(vii)   For each share of E*TRADE common stock purchased or otherwise acquired between July 26, 2007 and August 10, 2007, and held at the close of business on February 7, 2008, the recognized loss per share is $3.25.

(viii)    For each share of E*TRADE common stock purchased or otherwise acquired between July 26, 2007 and August 10, 2007, inclusive, and sold between November 12, 2007 and February 7, 2008, inclusive, the recognized loss per share is $3.25.

(ix)    For each share of E*TRADE common stock purchased or otherwise acquired between July 26, 2007 and August 10, 2007, inclusive, and sold between August 13, 2007 and October 17, 2007, inclusive, the recognized loss per share is the *lesser* of:

    (a)    $0.35; *or*
    (b)    the price paid less the price received.

(x)    For each share of E*TRADE common stock purchased or otherwise acquired between July 26, 2007 and August 10, 2007, inclusive, and sold between October 18, 2007 and November 9, 2007, inclusive, the recognized loss per share is $0.80.

(xi)    For each share of E*TRADE common stock purchased or otherwise acquired between July 26, 2007 and August 10, 2007, inclusive, and sold on or before August 10, 2007, the recognized loss is $0.

(xii)    For each share of E*TRADE common stock purchased or otherwise acquired between August 13, 2007 and October 17, 2007, inclusive, and held at the close of business on February 7, 2008, the recognized loss per share is $2.90.

(xiii)    For each share of E*TRADE common stock purchased or otherwise acquired between August 13, 2007 and October 17, 2007, inclusive, and sold between November 12, 2007 and February 7, 2008, inclusive, the recognized loss per share is $2.90.

(xiv)    For each share of E*TRADE common stock purchased or otherwise acquired between August 13, 2007 and October 17, 2007, inclusive, and sold between October 18, 2007 and November 9, 2007, inclusive, the recognized loss per share is the *lesser* of:

    (a)    $0.45; *or*
    (b)    the price paid less the price received.

(xv)    For each share of E*TRADE common stock purchased or otherwise acquired between August 13, 2007 and October 17, 2007, inclusive, and sold on or before October 17, 2007, the recognized loss is $0.

(xvi)    For each share of E*TRADE common stock purchased or otherwise acquired between October 18, 2007 and November 9, 2007, inclusive, and held at the close of business on February 7, 2008, the recognized loss per share is $2.45.

(xvii)    For each share of E*TRADE common stock purchased or otherwise acquired between October 18, 2007 and November 9, 2007, inclusive, and sold between November 12, 2007 and February 7, 2008, inclusive, the recognized loss per share is the *lesser* of:

    (a)    $2.45;
    (b)    the price paid less $3.55;
    (c)    the price paid less the price received; *or*
    (d)    the price paid less the price in Table A on the date of sale.

(xviii)    For each share of E*TRADE common stock purchased or otherwise acquired between October 18, 2007 and November 9, 2007, inclusive, and sold on or before November 9, 2007, the recognized loss is $0.

**TABLE A**

| DATE | PRICE | DATE | PRICE | DATE | PRICE | DATE | PRICE |
|------|-------|------|-------|------|-------|------|-------|
| 11/12/07 | 3.55 | 12/04/07 | 4.71 | 12/26/07 | 4.29 | 01/17/08 | 3.90 |
| 11/13/07 | 4.28 | 12/05/07 | 4.66 | 12/27/07 | 4.27 | 01/18/08 | 3.88 |
| 11/14/07 | 4.70 | 12/06/07 | 4.63 | 12/28/07 | 4.25 | 01/22/08 | 3.86 |
| 11/15/07 | 4.89 | 12/07/07 | 4.60 | 12/31/07 | 4.23 | 01/23/08 | 3.85 |
| 11/16/07 | 5.00 | 12/10/07 | 4.59 | 01/02/08 | 4.21 | 01/24/08 | 3.85 |
| 11/19/07 | 4.95 | 12/11/07 | 4.56 | 01/03/08 | 4.18 | 01/25/08 | 3.84 |
| 11/20/07 | 4.79 | 12/12/07 | 4.54 | 01/04/08 | 4.16 | 01/28/08 | 3.85 |
| 11/21/07 | 4.72 | 12/13/07 | 4.51 | 01/07/08 | 4.12 | 01/29/08 | 3.85 |
| 11/23/07 | 4.79 | 12/14/07 | 4.49 | 01/08/08 | 4.07 | 01/30/08 | 3.86 |
| 11/26/07 | 4.77 | 12/17/07 | 4.46 | 01/09/08 | 4.03 | 01/31/08 | 3.88 |
| 11/27/07 | 4.78 | 12/18/07 | 4.43 | 01/10/08 | 4.01 | 02/01/08 | 3.90 |
| 11/28/07 | 4.82 | 12/19/07 | 4.40 | 01/11/08 | 3.98 | 02/04/08 | 3.92 |
| 11/29/07 | 4.82 | 12/20/07 | 4.36 | 01/14/08 | 3.97 | 02/05/08 | 3.93 |
| 11/30/07 | 4.81 | 12/21/07 | 4.33 | 01/15/08 | 3.94 | 02/06/08 | 3.94 |
| 12/03/07 | 4.76 | 12/24/07 | 4.31 | 01/16/08 | 3.92 | 02/07/08 | 3.95 |

**Calculation of Recognized Loss for E*TRADE Call Option Purchases:**

(i)    The Recognized Claim for each call option contract on E*TRADE common stock purchased or otherwise acquired during the Class Period and sold during the Class Period shall be twenty-five percent (25%) of the lesser of (1) the per share recognized loss as referenced above for all shares covered by the call option contract on the date the call option was purchased, less the per share recognized for all shares covered by the call option contract on the date the call option was sold, or (2) the difference between: (a) the amount paid per call option contract and: (b) the sale price received per option contract received when said call options were sold (if the option expired worthless while still owned by the Authorized Claimant, the sales price shall be deemed to be Zero ($0.00).

(ii)    The Recognized Claim for each call option contract on E*TRADE common stock purchased or otherwise acquired during the Class Period and held on November 12, 2007 will be twenty-five percent (25%) of the lesser of (1) the per share recognized loss for all shares covered by the call option contract on the date the call option was purchased, (2) the difference between: (a) the amount paid per call option contract and: (b) the sale price received per option contract received when said call options were sold (if the option expired worthless while still owned by the Authorized Claimant, the sales price shall be deemed to be Zero ($0.00).

(iii)    Shares of E*TRADE common stock acquired during the Class Period through the exercise of a call option shall be treated as a purchase on the date of exercise for the exercise price plus the cost of the call option, and any Recognized Claim arising from such transaction shall be computed as provided for other purchases of E*TRADE common stock as set forth herein.

(iv)    No Recognized Claim shall be calculated based upon the sale or writing of any call option that was subsequently repurchased.

**Calculation of Recognized Loss for E\*TRADE Put Option Sales:**

(i)     The Recognized Claim for each put option contract on E\*TRADE common stock sold or written during the Class Period and repurchased during the Class Period shall be fifty percent (50%) of the lesser of (1) the per share recognized loss for all shares covered by the put option contract on the date the put option was sold, less the per share recognized loss for all shares covered by the put option contract on the date the put option was repurchased, or (2) the difference between: (a) the amount received per put option contract and: (b) the repurchase price paid per contract when said put options were repurchased (if the option expired worthless, the repurchase price shall be deemed to be Zero ($0.00)).

(ii)    The Recognized Claim for each put option contract on E\*TRADE common stock sold during the Class Period and extant on November 12, 2007 will be fifty percent (50%) of the lesser of (1) the per share recognized loss for all shares covered by the put option contract on the date the put option was sold, (2) the difference between: (a) the amount received per put option contract and (b) the repurchase price paid per option contract when said put options were repurchased (if the option expired worthless, the repurchase price shall be deemed to be Zero ($0.00).

(iii)   For E\*TRADE put options that were sold or written during the Class Period, that were "put" to the Authorized Claimant (i.e., exercised) at any time, the Authorized Claimant's Recognized Claim shall be calculated as a purchase of E\*TRADE common stock as if the sale of the put option were instead a purchase of E\*TRADE common stock on the date of the sale or writing of the put option, and the "purchase price paid" shall be the strike price of the put option less the proceeds received from the sale of the put option.

(iv)    No Recognized Claim shall be calculated based upon the sale of any put option that was previously purchased.

The total recovery payable to Authorized Claimants from transactions in call or put options shall not exceed five percent (5%) of the amount to be distributed to Settlement Class Members.

* * *

For all purposes, the transaction date, and not the settlement date, shall be used as the date for determining inflation per share, eligibility to file a claim, and the calculation of Recognized Losses. All purchases and sales of E\*TRADE securities shall be accounted for and matched using the FIFO method of accounting.

## X. PARTICIPATION IN THE SETTLEMENT

TO PARTICIPATE IN THE DISTRIBUTION OF THE NET SETTLEMENT FUND, YOU MUST TIMELY COMPLETE AND RETURN A VALID PROOF OF CLAIM IN CONNECTION WITH THIS SETTLEMENT.

**A Proof of Claim is being sent with this Notice. If you are a Settlement Class Member and need an additional Proof of Claim, copies may be obtained by telephoning the Claims Administrator at 1-800-903-8296 or by downloading the form on the internet at www.gcginc.com.**

The Proof of Claim, with all supporting documents (DO NOT SEND ORIGINALS), must be postmarked no later than **[CLAIM DEADLINE]**, and delivered to the Claims Administrator at the address below. DO NOT SEND a Proof of Claim to counsel for the Settling Parties or the Court.

E\*TRADE Securities Class Action
Claims Administrator
c/o The Garden City Group, Inc.
PO Box 9888
Dublin, OH 43017-5888

Unless the Court orders otherwise, if you do not timely submit a valid Proof of Claim, you will be barred from receiving any payment from the Net Settlement Fund, but will in all other respects be bound by the provisions of the Stipulation and the Judgment. The Court may disallow or adjust the claim of any Settlement Class Member. Each claimant will be deemed to have submitted to the jurisdiction of the United States District Court for the Southern District of New York with respect to his, her, or its Proof of Claim.

## XI. DISMISSAL AND RELEASES

If the proposed settlement is approved, the Court will enter a Final Judgment and Order of Dismissal ("Judgment"). The Judgment will dismiss the Released Claims with prejudice as to the Released Persons, as such terms are defined below. The Judgment will provide that all Settlement Class Members shall be deemed to have released and forever discharged all Released Claims against all Released Persons and that the Released Persons shall be deemed to have released and discharged Plaintiffs, Plaintiffs' Counsel, and Settlement Class Members from all claims (including Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Action or the Released Claims.

"Released Claims" means any and all claims, debts, demands, rights, liabilities, and causes of action of every nature and description whatsoever (including, but not limited to, any claims for damages, restitution, rescission, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or unliquidated, at law or in equity, matured or unmatured, including, without limitation, claims arising under Sections 10(b) or 20(a) of the Securities Exchange Act of 1934 and claims for control person liability, whether class or individual in nature, including both known claims and Unknown Claims (as defined below), whether or not concealed or hidden that (i) have been asserted in this Action or in the Complaint by the Plaintiffs against any of the Released Persons (as defined below), or (ii) could have been asserted in the Action or any other forum by the Plaintiffs or any Settlement Class Member (or any person who inherited or otherwise acquired E*TRADE securities from a Settlement Class Member) against any of the Released Persons that arise out of, or are based upon or related in any way to: (a) such Settlement Class Member's purchase, acquisition, disposition, sale or retention of, or other transaction in, E*TRADE securities during the Settlement Class Period, or (b) the allegations, transactions, facts, matters or occurrences, representations or omissions involved in the Action, or set forth or referred to in the Complaint, including without limitation, claims that arise out of or relate to any disclosures, Securities and Exchange Commission filings, press releases, registration statements, offering memoranda, or other public statements by or on behalf of E*TRADE during the Settlement Class Period. "Released Claims" do not include the claims being prosecuted in a derivative capacity on behalf of E*TRADE in *Rubery, et al. v. Caplan, et al.*, Civil Action No. 07 Civ 8612, or any claims to enforce the terms of the Settlement or the Stipulation.

"Released Persons" means each Defendant's past or present directors, officers, employees, partners, insurers, co-insurers, reinsurers, controlling shareholders, attorneys, accountants or auditors, personal or legal representatives, predecessors, successors, parents, subsidiaries, divisions, joint ventures, agents, assigns, spouses, heirs, executors, estates, administrators, related or affiliated entities, any entity in which a Defendant has a controlling interest, any members of any Individual Defendant's immediate family, or any trust of which any Individual Defendant is the settlor or which is for the benefit of any Individual Defendant's family.

"Unknown Claims" means any claims that Plaintiffs or any Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Persons that, if known by him, her, or it, would or might have affected his, her, or its settlement with and release of the Released Persons, or would or might have affected his, her, or its decisions with respect to this settlement. Plaintiffs and Settlement Class Members may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Plaintiffs upon the Effective Date shall expressly, fully, finally, and forever settle and release and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or

11

without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Plaintiffs acknowledge, and the Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the inclusion of Unknown Claims in the definition of Released Claims was separately bargained for and a key element of the settlement of which this release is a material and essential part. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Plaintiffs shall expressly waive and relinquish, and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived and relinquished, the provisions, rights, and benefits of California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs shall expressly waive and relinquish, and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived and relinquished, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542.

### XII. APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

At the Settlement Hearing, Plaintiffs' Counsel will request that the Court award attorneys' fees in an amount not to exceed 33.33% of the Settlement Fund, plus their costs and expenses in an amount not to exceed $750,000, which were incurred and not previously reimbursed in connection with prosecuting the claims in the Action, plus interest. Plaintiffs' Counsel's fee application will be filed with the Court on [**FILING DATE**]. All such sums as may be approved by the Court will be paid from the Settlement Fund. Settlement Class Members are not personally liable for any such fees, costs, or expenses.

Plaintiffs' Counsel have committed a substantial amount of time prosecuting claims on behalf of Plaintiffs and the Settlement Class. In addition, they have not been reimbursed for any of their costs and expenses. The amounts requested by Plaintiffs' Counsel will compensate counsel for their efforts in achieving the Settlement for the benefit of the Settlement Class, and for their risk in undertaking this representation on a wholly contingent basis. The amount to be requested is well within the range of fees awarded to plaintiffs' counsel under similar circumstances in other litigations of this type. Plaintiffs' Counsel may thereafter from time to time apply to the Court, without further notice to the Settlement Class, for an additional award of attorneys' fees and costs incurred in connection with administering the Settlement. All such awards shall be subject to the approval of the Court.

### XIII. CONDITIONS FOR SETTLEMENT

The Settlement is conditioned upon the occurrence of certain events described in the Stipulation. Those events include, among other things: (1) entry of the Judgment by the Court, as provided for in the Stipulation and (2) expiration of the time to appeal from or alter or amend the Judgment. If, for any reason, any one of the conditions described in the Stipulation is not met or the Stipulation otherwise does not become effective or, under certain specified conditions, the Stipulation is terminated and, thereby, becomes null and void, the parties to the Stipulation will be restored to their respective positions as of the date the Stipulation was executed.

### XIV. THE RIGHT TO OBJECT AND BE HEARD AT THE HEARING

Any Settlement Class Member who has not excluded himself, herself, or itself from the Settlement Class can object to the Settlement, or any part of it, and/or the application by Plaintiffs' Counsel for attorneys' fees and expenses. To object, any such Person must submit a written objection and copies of any papers and briefs so they are received on or before [**OBJECTION DEADLINE**], by each of the following:

| | | |
|---|---|---|
| Clerk of the Court | Brower Piven | Davis Polk & Wardwell LLP |
| Southern District of New York | A Professional Corporation | Amelia T.R. Starr |
| Daniel Patrick Moynihan U.S. | David A.P. Brower | 450 Lexington Avenue |
| Courthouse | 488 Madison Avenue | New York, NY 10017 |
| 500 Pearl Street | New York, NY 10022 | |
| New York, NY 10007 | | *Attorneys for Defendant E\*TRADE* |
| | *Plaintiffs' Lead Counsel* | *Financial Corporation and the* |
| | | *Individual Defendants* |

Any written objection must demonstrate the objecting Person's membership in the Settlement Class, including the dates of all such Settlement Class Member's purchases and/or sales of E*TRADE securities during the Settlement Class Period, the number of shares purchased and/or sold on each such date, and the prices paid and/or received for all such shares on each such date. Only Settlement Class Members who have submitted written objections in this manner will be entitled to be heard at the Settlement Hearing, unless the Court orders otherwise. Persons who intend to object to the Settlement and desire to present evidence at the Settlement Hearing must include in their written objections the identity of any witnesses they may call to testify and any exhibits they intend to introduce into evidence at the Settlement Hearing.

If you wish to attend the Settlement Hearing in person and speak to the Court, you must ask the Court for permission. To do so, you must submit a written statement noting your intention to appear at the Settlement Hearing to the persons noted above so that it is received on or before [**OBJECTION DATE**].

## XV. SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES

If you purchased E*TRADE securities (NYSE: ETFC) between April 19, 2006 and November 9, 2007, both dates inclusive, for the beneficial interest of a person or entity other than yourself, THE COURT HAS DIRECTED THAT WITHIN SEVEN (7) DAYS OF YOUR RECEIPT OF THIS NOTICE, you either (a) provide to the Claims Administrator identified below the name and last known address of each person or entity for whom or which you purchased E*TRADE securities during such time period or (b) request additional copies of this Notice, which will be provided to you free of charge, and within seven days mail the Notice directly to the beneficial owners of that E*TRADE securities. If you select option (a) above, the Claims Administrator will cause copies of this Notice to be forwarded to the beneficial owners of securities referred to herein. If you choose to follow alternative procedure (b), the Court has directed that, upon such mailing, you send a statement to the Claims Administrator confirming that the mailing was made as directed. All communications concerning the foregoing should be addressed to the Claims Administrator:

E*TRADE Securities Class Action
Claims Administrator
c/o The Garden City Group, Inc.
PO Box 9888
Dublin, OH 43017-5788
1-800-903-8296

You are entitled to reimbursement for your reasonable and necessary expenses actually incurred in complying with the foregoing, including reimbursement of reasonable postage expenses and the reasonable costs of obtaining the names and addresses of beneficial owners. Those reasonable expenses and costs will be paid upon request and submission of appropriate supporting documentation. All requests for reimbursement should be sent to the Claims Administrator.

## XVI. EXAMINATION OF PAPERS

This Notice is a summary and does not describe all of the details of the Stipulation. For full details of the matters discussed in this Notice, you may review the Stipulation filed with the Court, which may be inspected

during business hours, at the office of the Clerk of the Court, Southern District of New York, Daniel Patrick Moynihan U.S. Courthouse, 500 Pearl Street, New York, NY 10007 or at www.gcginc.com.

If you have any questions about the Settlement, you may contact a representative of Plaintiffs' Counsel by calling the following toll-free number: 1-800-903-8296. You also may email Plaintiffs' Counsel at the following email address: eClaim@gcginc.com. Any written inquiries about the Action should be addressed to Plaintiffs' Counsel at:

E*TRADE Securities Class Action
Claims Administrator
c/o The Garden City Group, Inc.
PO Box 9888
Dublin, OH 43017-5788

***PLEASE DO NOT CONTACT THE COURT OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE.***

Dated: _____, 2012         BY THE ORDER OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

# EXHIBIT A-2

<table>
<tr><td>

**Must be<br>Postmarked<br>No Later Than<br>_____, 2012**

</td><td>

E*TRADE Securities Class Action<br>Claims Administrator<br>c/o The Garden City Group, Inc.<br>P.O. Box 9888<br>Dublin, OH 43017-5788<br>1-800-903-8296

</td><td>



</td></tr>
</table>

Claim Number:

Control Number:

## <u>PROOF OF CLAIM AND RELEASE</u>

*All persons and entities who purchased or otherwise acquired the securities of E\*TRADE Financial Corporation between April 19, 2006 and November 9, 2007, both dates inclusive.*

<u>TABLE OF CONTENTS</u>                                                                    PAGE #

PART I - CLAIMANT IDENTIFICATION ................................................................................2

PART II - GENERAL INSTRUCTIONS ...............................................................................3

PART III - SCHEDULE OF TRANSACTIONS IN E\*TRADE COMMON STOCK ......................................4

PART IV - SCHEDULE OF TRANSACTIONS IN E\*TRADE CALL OPTIONS ..............................................5

PART V - SCHEDULE OF TRANSACTIONS IN E\*TRADE PUT OPTIONS............................................6

PART VI - SCHEDULE OF TRANSACTIONS IN OTHER E\*TRADE SECURITIES ..............................7

PART VII - SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS......................8

PART VIII - RELEASE ................................................................................8

PART IX - CERTIFICATION................................................................................9

**Important** - *This form should be completed IN CAPITAL LETTERS using BLACK or DARK BLUE ballpoint/fountain pen. Characters and marks used should be similar in the style to the following:*

A B C D E F G H I J K L M N O P Q R S T U V W X Y Z 1 2 3 4 5 6 7 0

2



## PART I - CLAIMANT IDENTIFICATION

**LAST NAME (CLAIMANT)**                        **FIRST NAME (CLAIMANT)**

**Last Name (Beneficial Owner if Different From Claimant)**       **First Name (Beneficial Owner)**

**Last Four Digits of the Beneficial Owner's Employer Identification Number or Social Security Number[1]**

**Last Name (Co-Beneficial Owner)**              **First Name (Co-Beneficial Owner)**

**Company/Other Entity (If Claimant Is Not an Individual)**       **Contact Person (If Claimant is Not an Individual)**

**Trustee/Nominee/Other**

**Account Number (If Claimant Is Not an Individual)**      **Trust/Other Date (If Applicable)**

**Address Line 1**

**Address Line 2 (If Applicable)**

**City**                               **State**           **Zip Code**

**Foreign Province**                   **Foreign Country**  **Foreign Zip Code**

**Telephone Number (Day)**             **Telephone Number (Night)**

**Email Address**   (Email address is not required, but if you provide it you authorize the Claims Administrator to use it in providing you with information relevant to this claim.)

---

**IDENTITY OF CLAIMANT (check only one box):**

☐ **Individual**      ☐ **Joint Owners**      ☐ **Estate**      ☐ **Corporation**      ☐ **Trust**      ☐ **Partnership**

☐ **Private Pension Fund**      ☐ **Legal Representative**

☐ **IRA, Keogh, or other type of individual retirement plan** (indicate type of plan, mailing address, and name of current custodian)

☐ **Other** (specify, describe on separate sheet)

---

**NOTICE REGARDING ELECTRONIC FILES:**  Certain claimants with large numbers of transactions may request to, or may be requested to, submit information regarding their transactions in electronic files. To obtain the mandatory electronic filing requirements and file layout, you may visit the website at www.gcginc.com or you may e-mail the Claims Administrator at eClaim@gcginc.com. Any file not in accordance with the required electronic filing format will be subject to rejection.  No electronic files will be considered to have been properly submitted unless the Claims Administrator issues an email after processing your file with your claim numbers and respective account information.  Do not assume that your file has been received or processed until you receive this email.  If you do not receive such an email within 10 days of your submission, you should contact the electronic filing department at eClaim@gcginc.com to inquire about your file and confirm it was received and acceptable.

---

[1]The last four digits of the taxpayer identification number (TIN), consisting of a valid Social Security Number (SSN) for individuals or Employer Identification Number (EIN) for business entities, trusts, estates, etc., and telephone number of the beneficial owner(s) may be used in verifying this claim.



3

## PART II - GENERAL INSTRUCTIONS

### QUESTIONS? CALL 1-800-903-8296

1. In order to receive any payments to which you may be entitled as a member of the Settlement Class in the consolidated action entitled, E*TRADE Securities Class Action (the "Litigation"), you must complete and, on page 9 hereof, sign this Proof of Claim and Release (the "Proof of Claim and Release"). If you fail to submit a properly addressed Proof of Claim and Release (as set forth in Paragraph 3 below), your claim may be rejected, and you may be precluded from any recovery from the Settlement Fund created in connection with the proposed settlement of the Litigation.

2. Submission of this Proof of Claim and Release, however, does not assure that you will share in the proceeds of the Settlement in the Litigation.

3. YOU MUST MAIL YOUR COMPLETED AND SIGNED PROOF OF CLAIM AND RELEASE TO THE CLAIMS ADMINISTRATOR, AND BE POSTMARKED ON OR BEFORE _____, 2012, ADDRESSED AS FOLLOWS:

E*TRADE Securities Class Action
Claims Administrator
c/o The Garden City Group, Inc.
P.O. Box 9888
Dublin, Ohio 43017-5788

4. If you are a member of the Settlement Class and you do not timely request exclusion in connection with the proposed settlement, you will be bound by the terms of any judgment entered in the Litigation, WHETHER OR NOT YOU SUBMIT A PROOF OF CLAIM AND RELEASE.

5. If you are NOT a member of the Settlement Class (as defined in the enclosed Notice), DO NOT submit a Proof of Claim and Release.

### CLAIM FORM

1. If you purchased or otherwise acquired E*TRADE Securities and held them in your name, you are the beneficial purchaser as well as the purchaser of record. If, however, you purchased or otherwise acquired these securities and the certificate(s) were registered in the name of a third party, such as a nominee or brokerage firm, you are the beneficial purchaser and the third party is the record purchaser.

2. Use Part I of this form entitled "Claimant Identification" to identify each beneficial purchaser of the Securities which forms the basis of this claim. THIS CLAIM MUST BE SUBMITTED BY THE ACTUAL BENEFICIAL PURCHASER OR PURCHASERS OR THE LEGAL REPRESENTATIVE OF SUCH PURCHASER OR PURCHASERS, OF THE SHARES UPON WHICH THIS CLAIM IS BASED.

3. All joint purchasers must sign this claim form. Executors, administrators, guardians, conservators, and trustees must complete and sign this form on behalf of Persons represented by them and documentation establishing their authority must accompany this claim and their titles and capacities must be stated. The Social Security (or taxpayer identification) number and telephone number of the beneficial owner may be used in verifying the claim. Failure to provide the foregoing information could delay verification of your claim or result in rejection of your claim.

4. A claimant whose Shares were held in a custodian account under a Uniform Gift to Minors Act ("UGMA"), may file in his or her own name if he or she is now of age. In this event, the former custodian does not have to sign the Proof of Claim. Custodians under the UGMA should identify themselves as beneficial purchasers, not nominees (e.g., John Smith, Custodian for Jack Smith UGMA). In this instance, use the minor's Social Security Number.

5. Corporate officers or partners filing for a claimant corporation or partnership should fill in the name of the entity as the beneficial purchasers, and sign their names and titles where indicated on the signature page.

6. Use Part III, Sections A, B, C, D and E of this form entitled "Schedule of Transactions in E*TRADE Common Stock" to supply all required details of your transaction(s) in the Common Stock shares. On the schedules, provide all of the requested information with respect to (i) the number of Common Stock Shares you held after the close of trading on April 18, 2006; (ii) all of your purchases and all of your sales of the Common Stock Shares which took place during the Settlement Class Period, regardless of whether such transactions resulted in a profit or loss; (iii) the number of shares of Common Stock shares purchased or otherwise acquired between November 10, 2007 and February 7, 2008; and (iv) the number of shares you owned after the close of trading on February 7, 2008. Failure to report all such transactions may result in the rejection of your claim.

7. Use Part IV, Sections A, B and C of this form entitled "Schedule of Transactions in Call Options" to supply all required details of your transaction(s) in the Call Options contracts. On the schedules, provide all of the requested information with respect to (i) the number of Call Option contracts you held at the close of trading on April 18, 2006; and (ii) all of your purchases and all of your sales of the Call Option contracts which took place during the Settlement Class Period, regardless of whether such transactions resulted in a profit or loss.

8. Use Part V, Sections A, B and C of this form entitled "Schedule of Transactions in Put Options" to supply all required details of your transaction(s) in the Put Options contracts. On the schedules, provide all of the requested information with respect to (i) the number of Put Option contracts you held at the close of trading on April 18, 2006; and (ii) all of your purchases and all of your sales of the Put Option contracts which took place during the Settlement Class Period, regardless of whether such transactions resulted in a profit or loss.

9. Use Part VI, Sections A, B, C, D, and E of this form entitled "Schedule of Transactions in other E*TRADE Securities" to supply all required details of your transaction(s) in securities **other than** common stock and options. If you purchased or otherwise acquired more than one type of security other than common stock, call options, or put options, photocopy Part VI for each additional type of other security you claim. To complete Part VI, you must provide all of the requested information with respect to (i) the type of security for which you are claiming; (ii) the number of other securities you held after the close of trading on April 18, 2006; (iii) all of your purchases and all of your sales of the other securities which took place during the Settlement Class Period, regardless of whether such transactions resulted in a profit or loss; and (iv) the number of other securities owned at the close of trading on November 9, 2007. Failure to report all such transactions may result in the rejection of your claim. You may be required to provide substantive additional documentation to validate your claim. You will be contacted if such information is required.

10. List each transaction in the Settlement Class Period separately and in chronological order, by trade date, beginning with the earliest. You must accurately provide the month, day, and year of each transaction you list.

11. Brokerage commissions and transfer taxes paid by you in connection with your purchase and sale of the Securities should be excluded in computing the "total purchase price" and the "total sales price."

12. Brokers' confirmations or other documentation of your transactions in E*Trade Securities should be attached to your claim. Failure to provide this documentation could delay verification of your claim or result in rejection of your claim.

# PART III - SCHEDULE OF TRANSACTIONS IN E*TRADE COMMON STOCK

4

**A.** **BEGINNING HOLDINGS:** Number of shares of E*Trade common stock held at the close of trading on **April 18, 2006.**
If none, write "zero" or "0".

[ Shares ]

**B.** **PURCHASES/ACQUISITIONS:** Purchases/acquisitions of E*Trade common stock (between **April 19, 2006,** and **November 9, 2007,** inclusive).
(Must be documented.)

| Trade Date List Chronologically (Month/Day/Year) | Number of Shares Purchased or Otherwise Acquired | Price Per Share | Total Purchase Price (Excluding taxes, fees, other commissions) | Complete only if purchase was result of option exercise or assignment. Enter "E" if Exercised or "A" if Assigned |
|---|---|---|---|---|
| / | | | | |
| / | | | | |
| / | | | | |
| / | | | | |
| / | | | | |

**C.** **PURCHASES/ACQUISITIONS:** Number of shares of E*Trade common stock purchased or otherwise acquired between **November 10, 2007** and **February 7, 2008.** (If none, write "zero" or "0").

[ Shares ]

**D.** **SALES:** Sales of E*Trade common stock (between **April 19, 2006,** and **February 7, 2008,** inclusive). (Must be documented.)

| Trade Date List Chronologically (Month/Day/Year) | Number of Shares Sold | Price Per Share | Total Sale Price (Excluding taxes, fees, other commissions) | Complete only if sale was result of option exercise or assignment. Enter "E" if Exercised or "A" if Assigned |
|---|---|---|---|---|
| / | | | | |
| / | | | | |
| / | | | | |
| / | | | | |
| / | | | | |

**E.** **ENDING HOLDINGS:** Number of shares of E*Trade common stock held at the close of trading on **February 7, 2008.**
If none, write "zero" or "0". (Must be documented.)

[ Shares ]

IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU **MUST** PHOTOCOPY THIS PAGE AND CHECK THIS BOX ☐ IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL **NOT** BE REVIEWED

# PART IV - SCHEDULE OF TRANSACTIONS IN CALL OPTIONS

5

**A.   BEGINNING HOLDINGS:** At the close of trading on **April 18, 2006** I owned the following call option contracts:

| Number of Contracts | Expiration Month and Year & Strike Price of Options (i.e. 05/07 $40) | Purchase Price Per Contract | Amount Paid (excluding commissions, taxes, and fees) | Insert an "E" if Exercised or an "X" if Expired | Exercise Date (Month/Day/Year) |
|---|---|---|---|---|---|
| | | | | | |

**B.   PURCHASES/ACQUISITIONS:** I made the following purchases/acquisitions of call option contracts between **April 19, 2006 and November 9, 2007,** inclusive (Must be documented):

| Number of Contracts | Expiration Month and Year & Strike Price of Options (i.e. 05/07 $40) | Purchase Price Per Contract | Amount Paid (excluding commissions, taxes, and fees) | Insert an "E" if Exercised or an "X" if Expired | Exercise Date (Month/Day/Year) |
|---|---|---|---|---|---|
| | | | | | |

Date of Purchase (List Chronologically) (Month/Day/Year)

**C.   SALES:** I made the following sales, regardless of when they occured, of the above call option contracts which call option contracts were purchased or otherwise acquired between **April 19, 2006 and November 9, 2007,** inclusive (Must be documented):

| Number of Contracts | Expiration Month and Year & Strike Price of Options (i.e. 05/07 $40) | Sale Price Per Contract | Amount Received (excluding commissions, taxes, and fees) |
|---|---|---|---|
| | | | |

Date of Sale (List Chronologically) (Month/Day/Year)

IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU **MUST** PHOTOCOPY THIS PAGE AND CHECK THIS BOX      IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL **NOT** BE REVIEWED



## PART V - SCHEDULE OF TRANSACTIONS IN PUT OPTIONS

6

**A.   BEGINNING HOLDINGS:** At the close of trading on **April 18, 2006**, I was obligated on the following put option contracts:

| Number of Contracts | Expiration Month and Year & Strike Price of Options (i.e. 05/07 $40) | Sale Price Per Contract | Amount Received (excluding commissions, taxes, and fees) | Insert an "A" if Assigned or an "X" if Expired | Assign Date (Month/Day/Year) |
|---|---|---|---|---|---|

**B.   SALES (WRITING) OF PUT OPTIONS:** I wrote (sold) put option contracts between **April 19, 2006 and November 9, 2007**, inclusive, as follows (Must be documented):

| Date of Writing (Sale) (List Chronologically) (Month/Day/Year) | Number of Contracts | Expiration Month and Year & Strike Price of Options (i.e. 05/07 $40) | Sale Price Per Contract | Amount Received (excluding commissions, taxes, and fees) | Insert an "A" if Assigned or an "X" if Expired | Assign Date (Month/Day/Year) |
|---|---|---|---|---|---|---|

**C.   COVERING TRANSACTIONS (REPURCHASES):** I made the following repurchases, regardless of when they occurred, of the above put option contracts that I wrote (sold) on or before **November 9, 2007**, inclusive (Must be documented):

| Date of Repurchase (List Chronologically) (Month/Day/Year) | Number of Contracts | Expiration Month and Year & Strike Price of Options (i.e. 05/07 $40) | Price Paid Per Contract | Aggregate Cost (excluding commissions, taxes, and fees) |
|---|---|---|---|---|

IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU **MUST** PHOTOCOPY THIS PAGE AND CHECK THIS BOX ☐   IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL **NOT** BE REVIEWED



## PART VI - SCHEDULE OF TRANSACTIONS IN <u>OTHER</u> E*TRADE SECURITIES

7

**A.   TYPE OF SECURITY:**
If you purchased or otherwise acquired more than one type of security <u>other than common stock, call options, or put options</u>, photocopy this page for each additional type of other security.

**B.   BEGINNING HOLDINGS:**  Number of other E*Trade securities held at the close of trading on **April 18, 2006.** If none, write "zero" or "0".

**C.   PURCHASES/ACQUISITIONS:** Purchases/acquisitions of other E*Trade securities (between **April 19, 2006, and November 9, 2007, inclusive**). (Must be documented)

| Trade Date<br>List Chronologically<br>(Month/Day/Year) | Number of Securities<br>Purchased or Otherwise<br>Acquired | Price Per Security | Total Purchase Price<br>(Excluding taxes, fees,<br>other commissions) |
|---|---|---|---|
| / / | | | |
| / / | | | |
| / / | | | |

**D.   SALES:**  Sales of other E*Trade securities (between **April 19, 2006, and November 9, 2007, inclusive**). (Must be documented.)

| Trade Date<br>List Chronologically<br>(Month/Day/Year) | Number of Securities<br>Sold | Price Per Security | Total Sale Price<br>(Excluding taxes, fees,<br>other commissions) |
|---|---|---|---|
| / / | | | |
| / / | | | |
| / / | | | |

**E.   ENDING HOLDINGS:**  Number of other E*Trade securities held at the close of trading on **November 9, 2007.** If none, write "zero" or "0". (Must be documented.)

`\`  **YOU MAY BE REQUIRED TO PROVIDE SUBSTANTIVE ADDITIONAL DOCUMENTATION TO VALIDATE YOUR CLAIM. YOU WILL BE CONTACTED IF SUCH INFORMATION IS REQUIRED.**

IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU **MUST** PHOTOCOPY THIS PAGE AND CHECK THIS BOX ☐   IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL **NOT** BE REVIEWED



8

## PART VII - SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS

By submitting this Proof of Claim Form and Release, I/we, and every Settlement Class member I/we represent, submit to the jurisdiction of the United States District Court for the Southern District of New York for purposes of this Action and the Settlement of the Action, as reflected in the Stipulation of Settlement (the "Settlement"). I/We further agree to be bound by the orders of the Court, agree that this Proof of Claim Form, my/our status or the status of the Settlement Class member I/we represent as a Claimant and the allowable amount of this claim will be subject to review and further inquiry, and that I/we will furnish such additional documentation with respect to this Proof of Claim as may be required.

## PART VIII - RELEASE

By signing this Proof of Claim Form and Release, and in consideration of the establishment of the Settlement Fund, as of the Effective Date thereof, the undersigned claimant ("Claimant"), hereby releases, relinquishes, and discharges any and all claims, debts, demands, rights, liabilities, and causes of action of every nature and description whatsoever (including, but not limited to, any claims for damages, restitution, rescission, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or unliquidated, at law or in equity, matured or unmatured, including, without limitation, claims arising under Sections 10(b) or 20(a) of the Securities Exchange Act of 1934 and claims for control person liability, whether class or individual in nature, including both known claims and Unknown Claims (as defined below), whether or not concealed or hidden that (i) have been asserted in this Action or in the Complaint by the Plaintiffs against any of the Released Persons (as defined below), or (ii) could have been asserted in the Action or any other forum by the Plaintiffs or any Settlement Class Member (or any person who inherited or otherwise acquired E*TRADE securities from a Settlement Class Member) against any of the Released Persons that arise out of, or are based upon or related in any way to: (a) such Settlement Class Member's purchase, acquisition, disposition, sale or retention of, or other transaction in, E*TRADE securities during the Settlement Class Period, or (b) the allegations, transactions, facts, matters or occurrences, representations or omissions involved in the Action, or set forth or referred to in the Complaint, including without limitation, claims that arise out of or relate to any disclosures, Securities and Exchange Commission filings, press releases, registration statements, offering memoranda, or other public statements by or on behalf of E*TRADE during the Settlement Class Period. "Released Claims" do not include the claims being prosecuted in a derivative capacity on behalf of E*TRADE in Rubery, et al. v. Caplan, et al., Civil Action No. 07 Civ 8612, or any claims to enforce the terms of the Settlement or the Stipulation.

"Unknown Claims" shall mean any claims that Plaintiffs or any Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Persons that, if known by him, her, or it, would or might have affected his, her, or its settlement with and release of the Released Persons, or would or might have affected his, her, or its decisions with respect to this Settlement. Plaintiffs and Settlement Class Members may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Plaintiffs upon the Effective Date shall expressly, fully, finally, and forever settle and release and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Plaintiffs acknowledge, and the Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the inclusion of Unknown Claims in the definition of Released Claims was separately bargained for and a key element of the Settlement of which this release is a material and essential part. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Plaintiffs shall expressly waive and relinquish, and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived and relinquished, the provisions, rights, and benefits of California Civil Code § 1542, which provides:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs shall expressly waive and relinquish, and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived and relinquished, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542.

9

## PART IX - CERTIFICATION

Under penalty of perjury, I (we) hereby certify and represent that I (we) have included information about all of my (our) transactions in E*Trade securities that occurred during the Settlement Class Period as well as the number of shares of E*Trade securities held by me (us) at the close of trading on February 7, 2008.  By executing this certification, I (we) acknowledge and agree to be bound by the Release set forth above.

Executed this _____ day of _____ in _____ .
                      (Month) (Year)                        (City, State, Country)

_____          _____
Signature of Claimant                                                Date

_____
Print your name here

_____          _____
Signature of joint claimant, if any                                  Date

_____
Print your name here

*If the Claimant is other than an individual, or is not the person completing this form, the following also must be provided:*

_____          _____
Signature of person signing on behalf of claimant            Date

_____
Print your name here

_____
Capacity of person signing on behalf of claimant, if other than
an individual, e.g., executor, president, custodian, etc.

## REMINDER CHECKLIST

1.   Please sign the Proof of Claim and Release.

2.   If this claim is made on behalf of joint claimants, then both must sign.

3.   Please remember to attach supporting documents. (Supporting documents include trade confirmations, official monthly, quarterly or annual brokerage statements or contracts that were entered into between you and the provider).

4.   DO NOT SEND ORIGINALS OF ANY SUPPORTING DOCUMENTS.

5.   If you aggregated accounts, be sure to include supporting documents for all accounts.

6.   Keep a copy of your Claim Form and all documentation submitted for your records.

7.   The Claims Administrator will acknowledge receipt of your Claim Form by regular or electronic mail, within 60 days. Your claim is not deemed filed until you receive an acknowledgment postcard or e-mail. If you do not receive an acknowledgment postcard or e-mail within 60 days, please call the Claims Administrator toll free at **1 (800) 903-8296.**

8.   If you move, you must send us your new address. Otherwise, any funds allocated to your claim are subject to forfeiture.

9.   **Do not use highlighter on the Claim Form or supporting documentation.**

THIS PROOF OF CLAIM MUST BE POSTMARKED NO LATER THAN
_____, 2012 AND MUST BE MAILED TO:

E*TRADE Securities Class Action
Claims Administrator
c/o The Garden City Group, Inc.
P.O. Box 9888
Dublin, OH 43017-5788

# EXHIBIT A-3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| LARRY FREUDENBERG, Individually and On Behalf of All Others Similarly Situated, | : |
| Plaintiff, | : |
| - against - | : |
| E*TRADE FINANCIAL CORPORATION, MITCHELL H. CAPLAN, ROBERT J. SIMMONS and DENNIS E. WEBB, | : |
| Defendants. | : |

Civil Action No.

07 Civ. 8538 (JPO) (MHD)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SUMMARY NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION

**To:   All persons and entities who purchased or otherwise acquired the securities of E\*TRADE Financial Corporation between April 19, 2006 and November 9, 2007, both dates inclusive.**

This Summary Notice is given pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of New York ("Court"), dated _____. The purpose of this Summary Notice is to inform you of the proposed settlement of the above-entitled class action ("Action") against defendants E\*TRADE Financial Corporation ("E\*TRADE"), Mitchell H. Caplan, Robert J. Simmons, and Dennis E. Webb (collectively, "Defendants").

A Settlement Hearing will be held before the Honorable J. Paul Oetken, United States District Judge, at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007, at _____ on _____ in order: (1) to determine whether the Court should grant certification to the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3); (2) to determine whether the Settlement consisting of $79,000,000 in cash should be approved as fair, reasonable, and adequate to the Settlement Class and the proposed Judgment entered; (3) to determine whether the proposed Plan of Allocation for the proceeds of the Settlement is fair and reasonable, and should be approved by the Court; (4) to determine whether the applications by Plaintiffs' Counsel for an award of attorneys' fees and expenses equal to up to one-third of the Settlement Amount should be approved; and (5) to rule upon such other matters as the Court may deem appropriate.

If you purchased or otherwise acquired E\*TRADE securities between April 19, 2006 and November 9, 2007 (both dates inclusive), and are not otherwise excluded from the Settlement

Class, you are a Settlement Class Member. Settlement Class Members will be bound by the final judgment of the Court. If you are a Settlement Class Member, in order to share in the distribution of the Net Settlement Fund, you must submit a Proof of Claim postmarked no later than [**CLAIM DEADLINE**], establishing that you are entitled to recovery. A Proof of Claim is being sent with this Notice. If you are a Settlement Class Member and need an additional Proof of Claim, copies may be obtained by telephoning the Claims Administrator at 1-800-903-8296 or by downloading the form on the internet at www.gcginc.com.

      If you do not wish to be included in the Settlement Class and you do not wish to participate in the proposed Settlement, you may request to be excluded, in the manner set forth in the full Notice of Proposed Settlement of Class Action ("Notice"), no later than [**OPT OUT DEADLINE**]. If you are a Settlement Class Member and do not timely and validly request exclusion from the Settlement Class, and you wish to object to the Settlement, the Plan of Allocation, and/or Plaintiffs' Counsel's application for an award of attorneys' fees and/or reimbursement of expenses, you may submit a written objection. You also may, but are not required to, appear at the Settlement Hearing. You must file and serve your written objection, in the manner specifically set forth in the Notice, no later than [**OBJECTION DEADLINE**]. The procedures that MUST be followed for Settlement Class Members to request exclusion from the Settlement Class or to object to the Settlement, the Plan of Allocation and/or application for attorneys' fees and/or reimbursement of expenses are set forth in full in the Notice. You are urged to obtain a copy of the Notice, which includes, among other things, a description of: (1) the litigation in the Action prior to the Settlement; (2) the terms of the proposed Settlement; (3) the benefits of the Settlement to the Settlement Class; (4) the Plan of Allocation for the proceeds of the Settlement; (5) the rights of Settlement Class Members; (6) the release of claims against Defendants and their Related Parties; (7) the application for an award of attorneys' fees and expenses; and (8) additional details concerning the Settlement Hearing, excluding oneself from the Settlement Class and/or objecting to the Settlement, the Plan of Allocation, and/or the application for attorneys' fees and/or reimbursement of expenses.

**PLEASE DO NOT CONTACT THE COURT OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE.**

**For additional information, you may contact the Claims Administrator at the following address:**

E*TRADE Securities Class Action
Claims Administrator
c/o The Garden City Group, Inc.
PO Box 9888
Dublin, OH 43017-5788
1-800-903-8296

This is only a summary notice. The full notice may be accessed at: www.gcginc.com.

Dated: _____, 2012

                            J. Paul Oetken
                            UNITED STATES DISTRICT JUDGE

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LARRY FREUDENBERG, Individually and   :
On Behalf of All Others Similarly Situated,   :
                                 : Civil Action No.
        Plaintiff,   :
                                 : 07 Civ. 8538 (JPO) (MHD)
   - against -   :

E*TRADE FINANCIAL CORPORATION,   :
MITCHELL H. CAPLAN, ROBERT J.   :
SIMMONS and DENNIS E. WEBB,   :
  :
      Defendants.   :
  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## [PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL

      This matter came before the Court for hearing pursuant to this Court's Order Granting

Preliminary Approval of Settlement, Granting Conditional Class Certification, and Providing for

Notice dated _____, 2012 ("Preliminary Approval Order"), on the application of the

Settling Parties for approval of the settlement ("Settlement") set forth in the Stipulation of

Settlement dated as of May 17, 2012 ("Stipulation"), and, following a hearing on _____,

2012 before this Court to consider the applications of the Settling Parties. The Court having

considered all papers filed and proceedings held herein, and having received declarations

attesting to the mailing of the Notice and the publication of the Summary Notice in accordance

with the Preliminary Approval Order, and good cause appearing therefore,

      **IT IS HEREBY ADJUDGED, DECREED AND ORDERED:**

      1.    This Final Judgment incorporates by reference the definitions in the Stipulation,

and all terms used herein shall have the same meanings as set forth in the Stipulation unless set

forth differently herein. The terms of the Stipulation are fully incorporated in this Final Judgment as if set forth fully herein.

2.    The Court has jurisdiction over the subject matter of this Action and all parties to the Action, including all Settlement Class Members.

3.    This Court finds that due and adequate notice was given of the Settlement, the Plan of Allocation of the Settlement proceeds, and Plaintiffs' Counsel's application for an award of attorneys' fees and/or reimbursement of expenses, as directed by this Court's Preliminary Approval Order, and that the forms and methods for providing such notice to Settlement Class Members:

(a)    constituted the best notice practicable under the circumstances, including individual notice to all Settlement Class Members who could be identified through reasonable effort;

(b)    was reasonably calculated, under the circumstances, to apprise Settlement Class Members of: (i) the proposed Settlement of this class action and the right to exclude themselves from the Settlement Class; (ii) their right to object to any aspect of the proposed Settlement, including the terms of the Stipulation and the Plan of Allocation; (iii) their right to appear at the Settlement Hearing, either on their own or through counsel hired at their own expense, if they are not excluded from the Settlement Class; and (iv) the binding effect of the proceedings, rulings, orders and judgments in this Action, whether favorable or unfavorable, on all persons who are not excluded from the Settlement Class;

(c)    was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice; and

2

(d)    fully satisfied all the applicable requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and all other applicable laws.

4.    Pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, the Court hereby grants final certification of the Settlement Class consisting of all Persons (other than those Persons who timely and validly request exclusion from the Settlement Class) who purchased or otherwise acquired E*TRADE securities between April 19, 2006 and November 9, 2007, inclusive. Excluded from the Settlement Class are Defendants, members of the Individual Defendants' immediate families, the directors, officers, subsidiaries, and affiliates of E*TRADE, any firm, trust, corporation, or other entity in which any Defendant has a controlling interest, and the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded person or entity.

5.    The Settlement Class excludes those Persons who timely and validly filed requests for exclusion from the Settlement Class pursuant to the Notice sent to Settlement Class Members as provided in this Court's Preliminary Approval Order. A list of such Persons who filed timely, completed and valid requests for exclusion from the Settlement Class is attached hereto as Exhibit 1. Persons who filed timely, completed and valid requests for exclusion from the Settlement Class are not bound by this Final Judgment or the terms of the Stipulation, and may pursue their own individual remedies against Defendants and the Released Persons. Such Persons are not entitled to any rights or benefits provided to Settlement Class Members by the terms of the Stipulation.

6.    With respect to the Settlement Class, the Court finds that:

(a)    the Settlement Class Members satisfy all of the requirements of Rule 23(a) of the Federal Rules of Civil Procedure because:

       i.      the members of the Settlement Class are so numerous that joinder of all members is impracticable;

       ii.     there are questions of law and fact common to the Settlement Class;

       iii.    the claims and defenses of the representative parties are typical of the Settlement Class; and

       iv.    the representative parties will fairly and adequately protect the interests of the Settlement Class.

      (b)     In addition, the Court finds that the Action satisfies the requirement of Federal Rule of Civil Procedure 23(b)(3) in that there are questions of law and fact common to the Settlement Class Members that predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy; and

      (c)     The Court finds that Plaintiffs, Kristen Management Limited, Straxton Properties, Inc., Javed Fiyaz, Ira Newman, Peter Farah and Andrea Frascaroli, possess claims that are typical of the claims of Settlement Class Members and that they have and will adequately represent the interest of Settlement Class Members and appoints them as the representatives of the Settlement Class, and appoints Lead Counsel, Brower Piven, A Professional Corporation, and Co-Lead Counsel, Levi & Korsinsky, LLP, as counsel for the Settlement Class ("Plaintiffs' Counsel").

      7.     Pursuant to Fed. R. Civ. P. 23(e), this Court hereby approves the Settlement set forth in the Stipulation and finds that said Settlement, and all transactions preparatory and incident thereto, is, in all respects, fair, reasonable, and adequate to, and is in the best interests of,

Plaintiffs and all Settlement Class Members based on, among other things: the Settlement resulted from arm's-length negotiations between the Settling Parties and/or their counsel; the amount of the recovery for Settlement Class Members being within the range of reasonableness given the strengths and weaknesses of the claims and defenses thereto and the risks of non-recovery and/or recovery of a lesser amount than is represented through the Settlement by continued litigation through all pretrial, trial and appellate procedures; the recommendation of the Settling Parties, in particular experienced Plaintiffs' Counsel, and the absence of objections from any Settlement Class Member to the Settlement. [All objections to the proposed Settlement, if any, are overruled in their entirety.] Accordingly, the Settlement embodied in the Stipulation is hereby approved in all respects and shall be consummated in accordance with its terms and conditions. The Settling Parties are hereby directed to perform the terms of the Stipulation, and the Clerk of the Court is directed to enter and docket this Class Judgment in this Action.

8.      This Court hereby approves the Plan of Allocation as set forth in the Notice as fair and equitable, and overrules all objections to the Plan of Allocation, if any, in their entirety. The Court directs Plaintiffs' Lead Counsel to proceed with the processing of Proofs of Claim and the administration of the Settlement pursuant to the terms of the Plan of Allocation and, upon completion of the claims processing procedure, to present to this Court a proposed final distribution order for the distribution of the Net Settlement Fund to eligible Settlement Class Members, as provided in the Stipulation and Plan of Allocation.

9.      This Court hereby awards Plaintiffs' Counsel attorneys' fees equal to _____% percent of the Settlement Fund (including interest accrued thereon), and reimbursement of their out-of-pocket expenses in the amount of $_____, with interest to accrue thereon at the same rate and for the same periods as has accrued by the Settlement Fund from the

date of this Final Judgment to the date of actual payment of said attorneys' fees and expenses to Plaintiffs' Counsel as provided in the Stipulation.  The Court finds the amount of attorneys' fees awarded herein are fair and reasonable based on: (a) the work performed and costs incurred by Plaintiffs' Counsel; (b) the complexity of the case; (c) the risks undertaken by Plaintiffs' Counsel and the contingent nature of their employment; (d) the quality of the work performed by Plaintiffs' Counsel in this Action and their standing and experience in prosecuting similar class action securities litigation; (e) awards to successful plaintiffs' counsel in other, similar litigation; (f) the benefits achieved for Settlement Class Members through the Settlement; and (g) the absence of [any/a significant number of] objection[s] from [any] Settlement Class Members to either the application for an award of attorneys' fees or reimbursement of expenses to Plaintiffs' Counsel. The Court also finds that the requested reimbursement of expenses is proper as the expenses incurred by Plaintiffs' Counsel, including the costs of experts, were reasonable and necessary in the prosecution of this Action on behalf of Settlement Class Members. The attorneys' fees awarded and expenses reimbursed above shall be paid to Plaintiffs' Counsel as provided in the Stipulation.

10.     Plaintiffs' Counsel may apply, from time to time, for any fees and/or expenses incurred by them solely in connection with the administration of the Settlement and distribution of the Net Settlement Fund to Settlement Class Members.

11.     All payments of attorneys' fees and reimbursement of expenses to Plaintiffs' Counsel in the Action shall be made from the Settlement Fund, and the Released Persons shall have no liability or responsibility for the payment of any of Plaintiffs' or Plaintiffs' Counsel's attorneys' fees or expenses except as expressly provided in the Stipulation with respect to the cost of Notice and administration of the Settlement.

12.     Pursuant to Federal Rule of Civil Procedure 23(c)(3), all Settlement Class Members who have not filed timely, completed and valid requests for exclusion from the Settlement Class are thus Settlement Class Members who are bound by this Final Judgment and by the terms of the Stipulation.

13.     The Released Persons are hereby released and forever discharged from any and all of the Released Claims. All Settlement Class Members are hereby forever barred and enjoined from asserting, instituting or prosecuting, directly or indirectly, any Released Claim in any court or other forum against any of the Released Persons. All Settlement Class Members are bound by paragraph 4.4 of the Stipulation and are hereby forever barred and enjoined from taking any action in violation of that provision.

14.     The Court hereby dismisses with prejudice the Action and all Released Claims against each and all Released Persons and without costs to any of the Settling Parties as against the others.

15.     Neither the Stipulation nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Defendants; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Defendants in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal; or (c) is admissible in any proceeding except an action to enforce or interpret the terms of the Stipulation, the settlement contained therein, and any other documents executed in connection with the performance of the agreements embodied therein. Defendants and/or the other Released Persons may file the Stipulation and/or this Final

Judgment and Order in any action that may be brought against them in order to support a defense or counterclaim based on the principles of res judicata, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

16.   The Court finds that during the course of the Action, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

17.   Without affecting the finality of this Final Judgment in any way, this Court hereby reserves and retains continuing jurisdiction over: (a) implementation and enforcement of any award or distribution from the Settlement Fund or Net Settlement Fund; (b) disposition of the Settlement Fund or Net Settlement Fund; (c) determining applications for payment of attorneys' fees and/or expenses incurred by Plaintiffs' Counsel in connection with administration and distribution of the Net Settlement Fund; (d) payment of taxes by the Settlement Fund; (e) all parties hereto for the purpose of construing, enforcing, and administering the Stipulation; and (f) any other matters related to finalizing the Settlement and distribution of the proceeds of the Settlement.

18.   Neither appellate review nor modification of the Plan of Allocation set forth in the Notice, nor any action in regard to the motion by Plaintiffs' Counsel for attorneys' fees and/or reimbursement of expenses and the award of costs and expenses to Plaintiffs, shall affect the finality of any other portion of this Final Judgment, nor delay the Effective Date of the Stipulation, and each shall be considered separate for the purposes of appellate review of this Final Judgment.

19.    In the event that the Settlement does not become Final in accordance with the terms of the Stipulation or the Effective Date does not occur, or in the event that the Settlement Fund, or any portion thereof, is returned to the Defendants, then this Final Judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulation and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulation.

20.    This Final Judgment and Order is a final judgment in the Action as to all claims asserted. This Court finds, for purposes of Rule 54(b) of the Federal Rules of Civil Procedure, that there is no just reason for delay and expressly directs entry of judgment as set forth herein.

Dated: _____, 2012

_____
HONORABLE  J. PAUL OETKEN
UNITED STATES DISTRICT JUDGE

# Exhibit 2

# BROWER PIVEN
## A PROFESSIONAL CORPORATION

| 1925 OLD VALLEY ROAD | 488 MADISON AVENUE, 8TH FLOOR |
|---|---|
| STEVENSON, MARYLAND 21153 | NEW YORK, NEW YORK 10022 |
| TELEPHONE: (410) 332-0030 | TELEPHONE: (212) 501-9000 |
| FACSIMILE: (410) 685-1300 | FACSIMILE: (212) 501-0300 |

With offices in New York City and Stevenson, Maryland, Brower Piven focuses its practice in the areas of complex class action and other representative litigation. The firm's practice areas, while diverse, enable Brower Piven clients to call upon experience and resources available at few firms of its size. Brower Piven clients range from institutional and large private investors, to small and large businesses, to small individual investors and retail consumers. Regardless of the size of the matter, Brower Piven provides every client with the professional service, care, and quality that Brower Piven believes every client deserves.

Attorneys at Brower Piven, some with over 25 years of experience, are nationally recognized in the class action arena. The firm's attorneys have vast experience advising and representing plaintiffs in class actions under the federal securities laws; federal and state consumer protection laws; federal and state antitrust laws; state shareholder and corporate governance laws; federal and state environmental laws; and federal RICO laws. Brower Piven attorneys have served their clients in literally hundreds of federal and state actions in almost every state in the nation.

Some current matters in which Brower Piven has a leadership role demonstrate the scope of the firm's expertise. Brower Piven is co-lead counsel in the *In re Merck Securities, Derivative, & "ERISA" Litigation* pending in the United States District Court for the District of New Jersey, considered by many the largest federal securities fraud action in terms of damages in history, and lead counsel in pending shareholder litigation challenging the proposed $38 billion take-over of Equity Office Properties Trust, one of the largest going private transactions in business history.

Brower Piven is also currently plaintiffs' court-appointed lead or co-lead counsel in the following federal securities class actions:

- *In re Arotech Corp. Securities Litigation* (E.D. N.Y.).
- *Klugmann v. American Capital Ltd., et al.*, (D. Md.);
- *Gomez v. Bidz.com, Inc., et al.* (C.D. Calif.);
- *Landmen Partners, Inc. v. The Blackstone Group L.P., et al.* (S.D. N.Y.);
- *In re Crocs, Inc. Securities Litigation* (D. Colo.);
- *Freudenberg v. E*Trade Financial Corporation, et al.* (S.D. N.Y.);
- *Gosselin v. First Trust Advisors L.P., et al.* (N.D. Ill.);
- *Kaplan v. Gaming Partners International, Inc.* (D. Nev.);
- *In re HomeBanc Corp. Sec. Litig.* (N.D. Ga.);
- *The Pennsylvania Avenue Funds v. INYX, Inc., et al.* (S.D. N.Y.)
- *Minneapolis Firefighters' Relief Association v. MEMC Electronic Materials, Inc., et al.* (E.D. Mo.);

- *In Re: Municipal Mortgage & Equity, LLC Securities and Derivative Litigation* (D. Md.);
- *In re Opteum, Inc. Sec. Litig.* (S.D. Fla.);
- *Gooden v. Smart OnLine, Inc., et al.* (M.D. N.C.); and
- *In re: Spectranetics Corporation Securities Litigation*, (D. Colo.);
- *Wagner v. Barrick Gold Corporation, et al.* (S.D. N.Y);
- *In re Interlink Electronics, Inc. Securities Litigation* (C.D. Calif.).

Brower Piven is or has been co-lead and/or liaison counsel representing shareholders in merger-related class actions, including but not limited to, the following: *In re Allied Capital Corp. S'holder Litig.* (Cir. Ct., Montgomery Co., No. 324584-V); *In re Atheros Commc'ns S'holder Litig.* (Sup. Ct. Cal., Santa Clara Co., No. 1-11-CV-191146); *Ballard v. Orchid Cellmark, Inc.* (Sup. Ct. N.J. Ch. Div., No. C-32-11); *Berger v. Gulland, et al.* (Cir. Ct., Balto. City, No. 24-C-02-006336); *Blaz v. Pan Pacific Retail Props., Inc., et al.* (Cir. Ct., Balto. Co., No. 03-C-06-008085); *In re Bronco Drilling S'holder Litig.* (Del. Ch. Ct., C.A. No. 6398-VCP); *In re Fairchild Corp. S'holders Litigation* (Del. Ch., C.A. No. 871-N); *Galdi v. Optelecom-NFK, Inc., et al.* (Cir. Ct., Montgomery Co., No. 341448V); *Hofmeister, Jr. v. The Sparks State Bank* (Cir. Ct., Balto. Co., No. 108/278/95CV3523); *In re Inspire Pharm. S'holder Litig.* (Del. Ch. Ct., No. 6378-VCP); *In re Laureate Educ. S'holder Litig.* (Cir. Ct., Balto. City, No. 24-C-07-000664); *In re Nationwide Health Props., Inc. S'holder Litig.* (Cir. Ct., Balto. Co., No. 24-C-11-001476); *Ostensoe v. Hughes Communications, Inc., et al.* (Cir. Ct., Montgomery Co., No. 344267-V); *In re PHH Corp. Transaction Litig.* (Cir. Ct., Balto. Co., No. 03-C-07-002982); *In re Reckson Assocs. Realty Corp. S'holders Litig.* (Cir. Ct., Balt. City, No. 24-C-06-00006323); *In re Savvis S'holders Litig.* (Del. Ch. Ct., C.A. No. 6438-VCN); *Schwartz v. Pasternak (In re Hudson Holding Corp. S'holder Litig.)* (N.J. Sup. Ct. Ch. Div., No. C-6-11); and *In re XTO Energy S'holder Class Action Litig.* (352nd Judicial District of Tarrant County, Texas, No. 352-242403-09). Brower Piven is also plaintiffs' court-appointed co-lead or liaison counsel in shareholder derivative actions on behalf of shareholders of Bear Stearns & Co., Inc., Citigroup, Inc., and Merrill Lynch & Co., Inc. Brower Piven is or has been plaintiffs' counsel in the consumer class actions including the following: *H&R Block, Inc. "Express IRA" Mktg. Litig.* (W.D. Mo., No. 4:06-md-01786), *Huff v. Liberty League Int'l, LLC* (C.D. Cal., No. ED CV08-01010-JST-SS) (Lead Counsel); *Freedman v. Comcast Corp.* (Cir. Ct., Balto. City, No. 24-C-07-006743) (Lead Counsel); and *Segal v. Fifth Third Bancorp* (S.D. Ohio, No. 1:07 CV 348) (Lead Counsel).

The firm's experience is extremely broad and includes counseling and representing both public and non-public corporations and their executives, real estate developers, and large private investors in complex commercial litigation and on corporate governance matters, as well as representing both plaintiffs and defendants in class and non-class action litigation. The firm's experience on both sides of the bar makes it uniquely qualified to provide its clients with a perspective not available from firms that solely represent plaintiffs or defendants. The success of the strategies pursued by the attorneys at Brower Piven in representing their clients over the years has been demonstrated by clients and classes represented by attorneys at Brower Piven recovering over $1 billion in past and pending recoveries. The following is a sampling of the cases and results achieved by attorneys at Brower Piven where they have served as lead or co-lead attorneys for plaintiffs:

*Steiner v. Southmark Corporation*, No. 3-89-1387-D (N.D. Tex.), federal securities fraud class action against defunct real estate partnership marketer and its outside accountants resulting in a recovery of over $75 million in cash for investors.

*In re Petro-Lewis Securities Litigation*, No. 84-C-326 (D. Colo.), a federal securities fraud class action on behalf of limited partners and shareholders where plaintiffs recovered over $100 million in cash and benefits including the restructuring of dozens of oil and gas limited partnerships.

*In re StarLink Products Liability Litigation,* MDL No. 1403, No. 01 C 4928 (N.D. Ill.), representing all American corn farmers in nationwide litigation against manufacturer of unapproved pesticide which allegedly infected the U.S. corn supply and recovering over $125 million in cash for the class members.

*Romig v. Jefferson-Pilot Life Insurance Company*, 95 CVS 9703 (Supr. Ct. N.C.), deceptive insurance sales practices action brought on behalf of a class of Jefferson Pilot life insurance purchasers, resulting in a recovery for policyholders valued at over $55 million.

*In re MicroStrategy Securities Litigation*, No. 00-473-A (E.D. Va.), a federal securities fraud class action, where over $125 million was recovered for investors, the Court commented that: "Clearly, the conduct of all counsel in this case and the result they have achieved for all of the parties confirms that they deserve the national recognition that they enjoy.

*In re Arakis Energy Corporation Securities Litigation*, No. 95-CV-3431 (ARR) (E.D. N.Y.), federal securities class action against Canadian company resulting in a recovery of over $24 million for investors.

*In re Spectrum Information Technologies Securities Litigation,* CV-93-2295 (FB) (E.D. N.Y.), securities fraud action against bankrupt issuer where over $10 million in cash was recovered (including all insurance coverage available) for investors following successful trial and appeal against directors' and officers' insurance carrier who attempted to disclaim coverage.

*In re Bristol-Myers Squibb Securities Litigation*, 92-CIV-4007 (JES) (S.D. N.Y.), federal securities class action resulting in recovery of over $19 million in cash for investors.

*Steiner v. Ideal Basic Industries, Inc.*, No. 86-M-456 (D. Colo.), federal securities class action against the former *Fortune 500* cement manufacturer resulting in an over $17.5 million recovery in cash for investors.

*In re Broadwing Securities Litigation*, No. C-1-02-795 (S.D. Ohio), federal securities class action against major public utility/broadband company resulting in a recovery of over $35 million in cash for investors.

*Berger v. Compaq Computer Corporation*, No. 00-20875 (S.D. Tex.), a federal securities class action where, after a successful appeal of a question of first impression in the federal appellate courts relating to the selection of lead plaintiffs and class certification in the Fifth Circuit under

the Private Securities Litigation Reform Act of 1995, over $29 million was recovered for investors.

*In re Bausch & Lomb Securities Litigation*, No. 01-CV-6190 (CJS) (W.D. N.Y.), federal securities class action resulting in a recovery of over $12.5 million for investors.

*Slone v. Fifth Third Bancorp, et al.*, No.1:03-CV-211 (S.D. Ohio), securities fraud action against one of the largest mid-west bank holding companies, resulting in a recovery of $17 million for investors.

*Poziak v. Imperial Chemical Industries, PLC, et al.*, No. 1:03 cv 2457 (NRB) (S.D. N.Y.), securities fraud action against one of the United Kingdom's largest public corporations, resulting in a recovery of approximately 90% of recoverable damages in cash for investors.

*J.E. Pierce Apothecary, Inc. v. Harvard-Pilgrim Health Care, Inc., et al,* No. 98-12635-WGY (D. Mass.), unfair and deceptive trade practices action on behalf of independent Massachusetts pharmacies against Harvard Pilgrim HMO and CVS Pharmacies, Inc. resulting, after bench trial, in excess of 100% of estimated recoverable damages for the class, including trebling.

The foregoing sampling of results is the product of the depth and breadth of the professional experience of attorneys at Brower Piven. The firm's attorneys include:

## DAVID A.P. BROWER

Mr. Brower has over 25 years of complex litigation experience. Mr. Brower has successfully represented plaintiffs in class action securities, consumer protection, environmental, antitrust and RICO actions, and representative shareholder derivative and take-over litigation. Mr. Brower, a member of the Bar of the State of New York, is also admitted to practice before the United States Supreme Court, the United States Courts of Appeals for the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth and Eleventh Circuits, and innumerable federal and state trial courts. Mr. Brower has participated in the prosecution as lead or co-lead counsel in successful federal securities law class actions against, among others: Imperial Chemical Industries, Fifth Third Bancorp, Southmark Corp., Ideal Basic Industries, Bristol-Myers Squibb, Tower Semiconductor, Gibson Greetings, Arakis Energy Corp., Scoreboard, Coastal Healthcare, Everest & Jennings International, B.T. Office Products, Profit Recovery, Enstar Corp., Jenifer Convertibles, Warner Communications, Sambo's Restaurants, Sunrise Savings & Loan, Phillip Morris Companies, Bausch & Lomb, Nanophase Technologies, Ramada Inns, Michael Stores, Inc., Consumers Power Co., Broadwing/Cincinnati Bell, Compaq Computer Corp., and Computer Associates. Mr. Brower has also participated in the prosecution as lead or co-lead counsel in merger litigation on behalf of, among others, public shareholders of Sheller Globe Corp., Petro-Lewis Corp., Floating Point Systems, Holnam Corp., Wometco Enterprises, Inc., Great Bay Casinos Corp., Home Shopping Networks, MCA, Holly Sugar Co., and ARM Financial Group; and shareholder derivative actions on behalf of shareholders of Banner Industries, Marsh & McLennan Companies, and Merrill Lynch, Pierce, Fenner & Smith.

Since 2004, Mr. Brower has been one of the lead attorneys with day-to-day responsibility for the prosecution of the securities fraud claims in *In re Merck & Co, Securities, Derivative & ERISA Litigation*, MDL No. 1658, No. 2:05-CV-02367 (D. N.J.), an action where the damages to class member are estimated to be among the largest in the history of federal securities class litigation. Additionally, while at his former firm, Mr. Brower was one of the attorneys with primary responsibility for class certification issues, including successfully arguing the class certification motion before the trial court, in *In re Initial Public Offering Securities Litigation*, 21 MC 92 (S.D. N.Y.), among the largest securities litigations ever prosecuted, encompassing approximately 309 consolidated class action cases alleging market manipulation claims in connection with the initial public offering of securities by over 55 defendant underwriters. Mr. Brower also served as liaison counsel in *In re Sotheby's Holding, Inc. Securities Litigation*, No. 00 Civ. 1041 (S.D. N.Y.), which resulted in a recovery of over $75 million for Sotheby's investors.

Mr. Brower has also served as lead or co-lead counsel in consumer fraud actions against Aventis CropScience, Compaq Computer Corporation, Jefferson-Pilot Life Insurance Company, Sprint PCS Wireless, Metropolitan Life Insurance, Harvard Pilgrim Healthcare, and CVS Corporation. In the antitrust field, Mr. Brower acted as lead counsel in litigation against Monsanto Company, E. I. du Pont de Nemours & Co. and Pioneer Hybrid International, Inc. (No. 4:05-CV-01108-ERW (E.D. Mo.), on behalf of genetically modified seed purchasers, and participated in the *In re Initial Public Offering Antitrust Litigation*, No. 01 CIV 2014 (WHP) (S.D. N.Y.).

In the area of environmental law, Mr. Brower has served as one of the lead attorneys in pollution actions on behalf of Oklahoma landowners against chicken producers, including Tyson Foods, Inc.; and as counsel for Missouri landowners in pork producer nuisance actions against Contigroup Companies, Inc. (formerly Continental Grain) and Premium Standard Farms, which recently resulted in verdicts in favor of neighboring farmers.

Before joining Brower Piven, Mr. Brower also represented a nationwide class of hospitals in RICO litigation against Tenet Healthcare Corporation based on claims that its conduct caused class member hospitals to receive reduced "Outlier" reimbursements from Medicare.

Mr. Brower has also represented: directors and officers of public companies in securities class actions, including the directors of Heritage Hospitals; represented a former multi-state hospital developer; advised boards of directors of public companies regarding their fiduciary responsibilities; provided opinions as special counsel under Delaware law to public companies, including MGM/UA; represented insurance and reinsurance companies in coverage litigation, including matters involving Johns Manville, PepsiCo and Hilton Hotels; represented commodities dealers and brokers in connection with Commodities Futures Trading Commission reparations actions; represented foreign corporations in United States litigation, including one of Japan's largest electronics, international hotel and resort companies in litigation against its American counsel and financial advisors; represented a Brazilian trust holding claims for one of Brazil's largest telecommunications companies; and defended a large, Florida-based, national mortgage brokerage company, Foundation Funding, in class action litigation brought under the Truth In Lending Act.

Mr. Brower, is a graduate of Columbia College of Columbia University (A.B. 1979), and the Georgetown University Law Center (J.D. 1982), and he attended King's College, University of London (1980), where he studied comparative, international, and EC transactional law.  Mr. Brower regularly lectures before professional organizations and at CLE-accredited conferences on the class action procedures and securities laws and shareholder and investor rights, including the American Law Institute/American Bar Association Advanced Course of Study Program, the Practicing Law Institute, and the New York State Bar Association.  Mr. Brower regularly writes on class action procedures and new issues in class action jurisprudence.  Mr. Brower is a long-time member of the New York State Bar Association Subcommittee on Class Actions, has participated as a member of the Executive Committee of the National Association of Securities and Consumer Law Attorneys, and actively participated in legislative initiatives relating to the Private Securities Litigation Reform Act of 1995 and the Class Action Fairness Act of 2005.

## CHARLES J. PIVEN

Mr. Piven is a seasoned litigator who has led his own practice since 1990.  During his more than 30 years in practice, Mr. Piven has represented individuals, partnerships, trusts, pension plans and corporations in many types of cases.  Mr. Piven's experience includes litigation in the areas of complex securities, shareholder, consumer protection, personal injury and property damage class actions, merger and acquisition class actions, bankruptcy, first amendment, copyright, employment, wrongful death, and legal, medical, accounting and broker malpractice.

Class and representative actions in which Mr. Piven has served as lead, co-lead, liaison or local counsel include, among others, Baltimore Bancorp securities litigation, USFG securities litigation, Yorkridge Calvert Savings & Loan securities litigation, Maryland National Bank securities litigation, Reckson Associates Realty Company derivative litigation, Read-Rite Corporation securities litigation, Mid-Atlantic Realty shareholder merger litigation, Pan Pacific Realty shareholder merger litigation, Allied Irish Banks derivative litigation, Sprint Spectrum Cellular Telecommunications Company consumer litigation, IWIF Wiretap consumer litigation, Land Rover Group Ltd. consumer litigation, Cellular One consumer litigation, H&R Block Refund Anticipation Loan consumer litigation, Prison Telephone consumer litigation, and BlueCross/Blue Shield consumer litigation.

Mr. Piven has taken an active role in the prosecution of litigation relating to allegations that mutual fund investors have been victimized by directed brokerage arrangements, excessive fees, excessive commissions and deceptive sales practices or other actionable conduct.  Some of the mutual fund families and brokerage firms involved in these cases that Mr. Piven has been responsible for originating include: Lord Abbott, AIM/Invesco, BlackRock, Davis, Eaton Vance, Dreyfus, Evergreen, Federated, Alliance, Franklin, Hartford, MFS, PIMCO, Scudder, Columbia, Goldman Sachs, Merrill Lynch, Morgan Stanley, Salomon Smith Barney, Edward Jones, UBS, Wells Fargo and American Express.  Investors in mutual fund cases initiated or led by Mr. Piven's clients have achieved a settlement with brokerage firm Edward Jones for approximately $125,000,000, with American Express for approximately $100,000,000, and with Merrill Lynch for approximately $26,000,000.

Mr. Piven also directly represents the lead plaintiff(s) and/or proposed class representative(s) in approximately 25% of the 309 cases encompassed by the Initial Public Offering Securities Litigation pending in the Southern District of New York, and Mr. Piven and the firm have taken an active role in the discovery in this litigation.

Mr. Piven also has experience in the field of ERISA class actions on behalf of former and current company employees. ERISA cases in which Mr. Piven is or has been counsel for named plaintiffs include: Aquila ERISA litigation (W.D. Mo.); General Motors ERISA litigation (E.D. Mich.); ConAgra Foods ERISA litigation (D. Nebr.); the Coca-Cola Enterprises ERISA litigation (N.D. Ga.); Fannie Mae ERISA litigation (D. D.C.); Delphi ERISA litigation (E.D. Mich.); Ford Motor Company ERISA litigation (E.D. Mich.) and the Pfizer ERISA litigation (S.D. N.Y.).

Mr. Piven is a 1975 graduate of Washington University and a 1978 graduate of the University of Miami School Of Law. During law school, Mr. Piven was a student law clerk for the late Honorable United States District Judge C. Clyde Adkins of the Southern District of Florida. Mr. Piven was admitted to the bars of the States of Florida (currently inactive) and Maryland in 1978. Mr. Piven is a member in good standing of the Court of Appeals of Maryland, the United States Court of Federal Claims, the United States Tax Court, the United States District Court for the Districts of Maryland and Colorado, the United States Courts of Appeals for the First and Fourth Circuits, and the United States Supreme Court.

## BRIAN C. KERR

Mr. Kerr maintains a wide-ranging complex commercial litigation practice representing individuals and institutions in securities fraud, merger and acquisition class actions, consumer fraud, antitrust, commercial disputes, and other complex litigation. Mr. Kerr brings the skills of a courtroom advocate to each of his matters having tried cases before judges and juries.

Mr. Kerr was one of the principal trial counsel for plaintiffs in the securities fraud class action against Vivendi Universal (*In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (S.D.N.Y.)), where in January 2010 the jury returned a verdict that at the time had an estimated value of up to $9 billion. Mr. Kerr has also represented: institutional investors in a securities fraud class action against Tyco International, Dennis Kozlowski, PricewaterhouseCoopers, and others (*In re Tyco Int'l. Ltd. Sec. Litig.*, MDL Docket No. 02-1335-PB (D.N.H.)), which resulted in combined settlements of $3.2 billion; lead plaintiffs in a securities class action against Rite Aid, former CEO Martin Grass, and KPMG (*In re Rite Aid Corp. Sec. Litig.*, MDL Docket No. 1360 (E.D. Pa.)), where total settlements were $323 million, including the then-second largest securities fraud settlement ever against a Big Four auditing firm; class plaintiffs in a securities class action against General Instrument (*In re General Instrument Sec. Litig.*, 92 C 1129 (N.D. Ill.)), which resulted in $48 million settlement; a book publisher in a multi-million dollar defamation/breach of contract case against News Corporation (settled on confidential terms); a UK film producer in an antitrust case involving the alleged manipulation of the market for Warhol art; a US hedge fund in a shareholder derivative action arising from the collapse of Bear Stearns; and the Australis Media Group in a multi-million dollar complex commercial dispute in NY State Supreme Court against News Corp., Sony, Universal, and Paramount arising from an

alleged international conspiracy to put Australis out of business (also settled on confidential terms).

Mr. Kerr has also been actively involved in pro bono efforts, including the representation of indigent prisoners in civil rights cases before the US Court of Appeals for the Second Circuit, and working extensively with Trial Lawyers Care to provide free legal assistance to the families of victims of the September 11 attacks.

In 1993, Mr. Kerr graduated *summa cum laude* with a BA in Economics from the University of Albany, where he received the Gordon Karp Prize for Excellence in Economics, was founder of the Presidential Honors Society, a member of Phi Beta Kappa, and valedictorian. In 1996, Mr. Kerr graduated from Hofstra Law School, where he was a member of the Hofstra Law Review and a Dean's Scholar. Mr. Kerr, admitted to the Connecticut Bar in 1996 and the New York Bar in 1997, is a member in good standing of the United States District Court for the Southern and Eastern Districts of New York, as well as the United States Court of Appeals for the Second and Third Circuits.

## ANDREW WILMAR

Mr. Wilmar is a graduate of Harvard Law School. While at Harvard, Mr. Wilmar was an Executive Editor for the Harvard Civil-Rights-Civil-Liberties Law Review. He was also a finalist in the Ames Moot Court Competition, and was named Best Oralist during the semi-final round. Mr. Wilmar also graduated *magna cum laude* from Yale University. After law school, Mr. Wilmar clerked for the Hon. Robert L. Carter of the Southern District of New York. Since then, Mr. Wilmar has worked for some of the leading plaintiffs' class-action firms in the country. Mr. Wilmar was a key member of the litigation team in the *Vivendi* securities class action, where he helped plaintiffs obtain a jury verdict that at the time had an estimated value of up to $9 billion.

## YELENA TREPETIN

Ms. Trepetin is a graduate of Tulane University Law School. While at Tulane, Ms. Trepetin was the Senior Managing Editor of the Tulane Journal of International and Comparative Law. She also served as a student attorney for the Domestic Violence Clinic. In the fall of 2005, Ms. Trepetin attended Duke University School of Law where she was a visiting Staff Editor of the Duke Journal of Comparative and International Law. Ms. Trepetin graduated magna cum laude from Brandeis University. Ms. Trepetin also studied for a year at the London School of Economics and Political Science. Ms. Trepetin's legal work experience includes clerking at the Maryland Office of the Public Defender for Baltimore County and interning for the Honorable J. Norris Byrnes and the Honorable Lawrence R. Daniels in the Circuit Courts of Baltimore County. Ms. Trepetin is admitted to practice in the State of Maryland, and she is a member of the Baltimore County Bar Association and the Bar Association of the District of Columbia.

## DANIEL I. WOLF

Mr. Wolf is a graduate of Columbia Law School, where he was twice designated a Harlan Fiske Stone Scholar. While at Columbia, Mr. Wolf served on the staff of the Columbia Business Law Review and as a Teaching Assistant for contracts. In 2008 and 2009, respectively, Mr. Wolf co-authored two articles with the Adolf A. Berle Professor of Law at Columbia Law School, John C. Coffee, entitled "Class Certification: Developments Over the Last Five Years," which were published by the American Bar Association and the Bureau of National Affairs. Mr. Wolf's experience includes serving as a legal intern for the Honorable Joseph F. Bianco of the United States District Court for the Eastern District of New York, the Honorable John G. Koeltl of the United States District Court for the Southern District of New York, and the United States Attorney's Office in the Eastern District of New York. Mr. Wolf received his A.B. in 2005 from Columbia College of Columbia University in New York.

## SAIRA F. HUSSAIN

Saira F. Hussain graduated *cum laude* from Fordham University School of Law in 2011 and *magna cum laude* from New York University in 2008. While in law school, Ms. Hussain was a member of the Fordham Urban Law Journal and the Mediation Competition Editor for the Fordham Dispute Resolution Society. She also interned for the Honorable Denny Chin while he served as a District Court Judge in the Southern District of New York before his appointment to the United States Court of Appeals for the Second Circuit, the Honorable Kiyo A. Matsumoto of the Eastern District of New York, and the Kings County District Attorney's Office. Ms. Hussain was also a Dean's Fellow at the Fordham Corporate Law Center where she assisted with various programs including the Comparative Corporate Governance Series and the Business Law Practitioners Series. While at New York University, Ms. Hussain was an intern with Lehman Brothers. Ms. Hussain is admitted to the New Jersey Bar and her admission to the New York Bar is currently pending.

# Exhibit 3



### www.zlk.com

**New York**
30 Broad Street
Floor 24
New York, NY 10004
212-363-7500

**Washington, DC**
1101 30th Street, NW
Suite 115
Washington, DC 20007
202-524-4290

Levi & Korsinsky LLP is a national law firm whose partners have more than 60 years of combined experience litigating complex securities class actions, derivative actions and consumer actions throughout the country. Our offices are located in New York City, only steps away from the New York Stock Exchange, as well as in Washington D.C. The Firm skillfully represents the interests of aggrieved shareholders giving them a voice within the corporate arena. Our legal team has a successful track record of protecting shareholder rights and setting ground-breaking precedent by litigating high stakes cases that require resources, time and tenacity.

Our attorneys bring a vast breadth of knowledge and skill to the table and, as a result, are frequently appointed lead counsel in complex, high-stakes litigation involving shareholder fiduciary rights in various jurisdictions. Levi & Korsinsky has the ability to allocate substantial firepower to litigating a case in terms of skilled attorneys, support staff, financial experts and a cutting edge proprietary e-discovery system customized to the discovery needs of any given litigation no matter the size. Levi & Korsinsky does not shy away from uphill battles -- we zealously litigate each case with integrity and professionalism.

### JUDICIAL PLAUDITS

The courts have recognized Levi & Korsinsky's exceptional talents and professionalism. For example, Vice Chancellor Travis J. Laster of the Delaware Chancery Court has commended our firm's meticulous work ethic, and declared that our "standing and ability. . . is unquestioned." Judge Ronald Styn of the Superior Court of San Diego County has described our firm as **one of "the best and most qualified securities law firms in the country."**

In *Forgo v. Health Grades, Inc.*, C.A. No. 5716-VCS (Del. Ch.), then-Vice Chancellor Strine praised Levi & Korsinsky for our preparation and the extraordinary high quality of our work:

"I want to applaud the lawyers today for being so well prepared. And I particularly want to applaud the plaintiffs for being not only well prepared

1



but exceedingly measured and logical in their argument... they've made some, frankly, very potent arguments . . . ."

Vice Chancellor Sam Glasscock similarly praised the work and ability of our firm in partially granting our Motion for Preliminary Injunction in the matter of *Dias v. Purches, et al.*, C.A. No. 7199-VCG (Del. Ch. 2012), stating that he "appreciated very much the quality of the argument, the obvious preparation that went into it, and the ability of counsel . . . ."

Levi & Korsinsky has also received the praise of Vice Chancellor John W. Noble in *In re Orchid Cellmark Inc. Consolidated Shareholder Litigation,* C.A. No. 6373-VCN (Del. Ch. 2011) who stated that Levi & Korsinsky's work was "extremely well done under . . . awful time constraints."  Similarly, Judge Clark in *Rapasodi v. RomeBancorp.*, C.A. No. 2010-002994 (Oneida County, New York Supreme Court 2010) stated that he was "impressed" with our "professionalism . . . diligence, and . . . hard work on a complicated matter . . . ."  And in *Goltz v. Westover (Otix Global, Inc.)*, C.A. No. 100419786 (Utah State District Court 2011), Judge Stone described Levi & Korsinsky's briefing as "excellent."

### *A RECORD OF SUCCESS*

Levi & Korsinsky has an enviable record of achievement in obtaining injunctive relief for shareholders. For example, in *Steinhardt v. Occam Networks, Inc.*, C.A. No 5878-VCL (Del. Ch. 2010), Levi & Korsinsky represented investor Michael Steinhardt and others in challenging the merger between Occam Networks, Inc. and Calix Inc. and **the Court granted a preliminary injunction against the merger due to material misrepresentations and omissions in the proxy statement** by which the shareholders were solicited to vote for the merger.

Levi & Korsinsky achieved similarly successful results in *In re Craftmade International, Inc. Shareholders Litigation*, C.A. No. 6950-VCL (Del. Ch. 2011).  In that case, Levi & Korsinsky served as co-lead counsel and **obtained an injunction requiring numerous corrective disclosures and a "*Fort Howard*" release** announcing that the Craftmade Board of Directors was free to conduct discussions with any other potential bidders for the company.  And in *Dias v. Purches, et al.*, C.A. No. 7199-VCG (Del. Ch. 2012), Vice Chancellor Glasscock partially granted our Motion for Preliminary Injunction and ordered the defendants to correct a material misrepresentation in the proxy statement relating to the acquisition of Parlux Fragrances, Inc. by Perfumania Holding, Inc.



Similarly, as co-lead counsel in *Forgo v. Health Grades, Inc.*, C.A. No. 5716-VCS (Del. Ch.), attorneys at Levi & Korsinsky successfully demonstrated to the Court that defendants had likely breached their fiduciary duties to the Health Grades' shareholders by failing to maximize value as required under *Revlon*. **As a result of our efforts, defendants agreed to take numerous steps to seek a superior offer for the company,** including making key modifications to the merger agreement, creating an independent committee to evaluate potential offers, extending the tender offer period and issuing another "*Fort Howard*" press release affirmatively stating that the company would participate in good faith discussions with any party making a bona fide acquisition proposal. The Firm also has a strong track record of achieving multi-million dollar recoveries. Levi & Korsinsky was counsel for one of the lead plaintiffs in *Freudenberg v. E\*Trade Financial Corp., et al.,* 07 CV 8538 (S.D.N.Y.), in which the Plaintiffs' counsel achieved **a landmark $79 million common fund settlement for the benefit of E\*Trade's shareholders.** Levi & Korsinsky was also counsel for one of the lead plaintiffs in *In re Talecris Biotherapeutics Holdings Shareholder Litigation*, C.A. No. 5614-VCL (Del. Ch.), in which plaintiffs' counsel achieved a settlement that **increased the merger consideration to Talecris shareholders by an additional 500,000 shares** of Grifols Class B stock and also provided shareholders with appraisal rights. In *In re Allion Healthcare, Inc., S'holder Litig.*, Index No. 041990/2009 (N.Y. Sup.), Levi & Korsinsky served as co-lead counsel and successfully defeated the defendants' motion to dismiss, which ultimately resulted in a **$4 million common fund settlement for the benefit of Allion's shareholders**. Similarly, Levi & Korsinsky was counsel for the lead plaintiff in *In re i2 Technologies, Inc. Shareholder Litigation*, C.A. No. 4003-CC (Del. Ch.) which challenged the fairness of certain asset sales made by the company and which resulted in a **$4 million recovery**.

A founding partner of the Firm was co-lead counsel in the landmark case *In re NCS Healthcare, Inc. Sec. Litig.*, CA 19786 (Del. Ch.), one of the most sweeping and historically significant cases from the Delaware courts involving mergers and acquisitions law that created a more than **$100 million cash benefit for shareholders** and changed the landscape of how bidders and targets companies design and implement lockup mechanisms to protect a deal. Another Levi & Korsinsky partner also played a leading role in *Freeland v. Iridium World Communications*, *Ltd.*, Case No. CR 99-1002 (D.D.C.), in which a **$43.1 million settlement was achieved for the shareholders**, and in which the Honorable Nanette K. Laughrey said "[a]ll of the attorneys in this case have done an outstanding job, and I really appreciate the quality of work we had in our chambers as a result of this case."

Levi & Korsinsky has also successfully used derivative and class action mechanisms to hold corporate executives and board members accountable for various abuses and to help preserve corporate assets through long-lasting corporate

3



LeviKorsinsky LLP
Attorneys at Law

governance changes to ensure that prior misconduct does not recur.  An area of particular focus is that of excessive executive compensation, where Levi & Korsinsky has successfully recaptured assets for the benefit of victim companies and implemented corporate governance changes to ensure that executive compensation is consistent with company performance and governing laws.

For example, Levi & Korsinsky was co-lead counsel in *In re Activision, Inc. Shareholder Derivative Litigation*, No. 06-cv-04771-MRP (JTLX) (C.D. Cal.), which challenged executive compensation relating to the dating of options. As a result of the action, **more than $24 million of excessive compensation and expenses were recovered** and substantial corporate governance changes were implemented to ensure future compliance. Levi & Korsinsky was also co-lead counsel in *In re Corinthian Colleges, Inc., Shareholder Derivative Litigation*, SACV-06-0777-AHS (C.D. Cal.) in which **we achieved a $2 million benefit for the company** resulting in the re-pricing of executive stock options in addition to securing extensive corporate governance changes. In *Pfeiffer v. Alpert, et al., (Beazer Homes Derivative Litigation)*, C.A. No. 10-cv-1063-PD (D. Del.), Levi & Korsinsky challenged certain aspects of each these three company's executive compensation structure and was successful in forcing the company to change its compensation practices.  In *Woodford v. M.D.C. Holdings*, C.A. No. 1:11-cv-00879-MSG (Del. Ch.) and *In re Cincinnati Bell, Inc. Derivative Litigation*, Case No. A110530 (Ham. Cty. Ohio), Levi & Korsinsky successfully challenged the M.D.C. Holdings and Cincinnati Bell Board of Directors' decision to grant excessive compensation packages to their top executives by forcing these companies to implement corporate governance initiatives to prevent future abuses of corporate power. In *Bader v. Goldman Sachs Group, Inc., et al.*, No. 10-4364-cv, 2011 WL 6318037 (2d Cir. Dec. 19, 2011), Levi & Korsinsky persuaded the Second Circuit Court of Appeals to reverse the District Court's dismissal of derivative claims seeking to recover excessive compensation granted to officers and directors of Goldman Sachs.

Levi & Korsinsky has also made a substantial impact on the law pertaining to the rights of shareholders and the obligations of corporate fiduciaries. For example, in *Pfeiffer v. Toll, et al., (Toll Brothers Derivative Litigation)*, C.A. No. 4140-VCL (Del. Ch.), where Levi & Korsinsky is counsel to the lead plaintiff, we **prevailed in a decision on a motion to dismiss in a case seeking disgorgement of profits company insiders reaped through a pattern of insider-trading.** And as Executive Committee counsel in *In re CNX Gas Corp. S'holders Litig.*, 4 A.3d 397 (Del. Ch. 2010), Levi & Korsinsky **obtained a landmark ruling from the Court which set forth a unified standard for assessing the rights on shareholders in the context of freeze-out transactions**.

Courts have acknowledged our track record of success in achieving real benefits for shareholders and, as a result, **courts have repeatedly selected Levi & Korsinsky**



as lead counsel to lead the fight on behalf of shareholders. For example, Levi & Korsinsky was selected from a crowded field as co-lead counsel for *In re E-Trade Shareholder Litigation*, No. 07-cv-8538(S.D.N.Y. 2007), a landmark securities fraud class action that arose out of the mortgage crisis, which has crippled the economy since at least 2008.  The involved parties have agreed to resolve the Action, and the terms of the settlement will be presented to the Court in the coming months.   We have also been selected by the court as sole lead counsel for shareholder classes in such cases as *Fuller v. Pfenniger, Jr., et. al. (Continucare)*, C.A. No. 20537CA04 (Cir. Ct. Fla. 2011), in *In re Integral Systems Inc.*, C.A. No. 13-C-11-086902 (Cir. Ct. MD. 2011) and in *Hirsch v. Rayden, et. al.* (*Tween Brands*), C.A. No. 4845 (Del. Ch. 2009), in which Levi & Korsinsky successfully forced defendants to disclose material facts concerning these proposed mergers that were previously concealed from shareholders, and as co-lead counsel in  *Mozenter v. Nalco Holding Co*, et al. No. 2011 MR 001043 (Cir. Ct. Ill. 2011).

In addition to their successes in the courtroom, our attorneys also find the time to give back to the local and global community. Members of the Firm have served on the boards and participated in various organizations such as Mental Health Advocacy Services, a New Way of Life, Reentry Project, and the Rotary Club of Wall Street.  Our attorneys have done pro bono criminal defense work for indigent defendants in federal court under the Criminal Justice Act, assisted small businesses in the aftermath of September 11, 2001, provided services to battered women in family court, and assisted people living with AIDS with wills.  Our attorneys have also partnered with the United Nations Association's Young Professionals to raise funds for the victims of the earthquake in Haiti and Big Brothers Big Sisters to mentor a child.



## OUR ATTORNEYS

**MEMBERS**

**Joseph E. Levi** is a Member in the firm, where he is an integral part of the firm's class action litigation practice.  Mr. Levi has been lead or co-lead in dozens of cases involving the enforcement of shareholder rights in the context of mergers & acquisitions and securities fraud. In addition to his involvement in class action litigation, Mr. Levi has represented numerous patent holders in enforcing their patent rights in areas including computer hardware, software, communications and information processing, and has been instrumental in obtaining substantial awards and settlements.

*Education*: Brooklyn Law School, J.D. (1995), *magna cum laude*; Polytechnic University, B.S. (1984), s*umma cum laude*, MS (1986).

*Admissions*:  New York; New Jersey (1996); United States Patent and Trademark Office (1997); United States District Court, Southern District of New York (1997); United States District Court, Eastern District of New York (1997).

**Eduard Korsinsky** is a Member in the firm, and has represented clients in class action lawsuits since 1997.  Cases which Mr. Korsinsky has litigated include: *In re NCS Healthcare, Inc. Securities Litigation*, CA 19786, Court of Chancery of the State of Delaware, County of New Castle (case settled for approximately $100 million); *Paraschos, et al. v. YBM Magnex* International*, Inc.*, et al., No. 98-CV-6444, U.S. District Court, Eastern District of Pennsylvania (United States and Canadian cases settled for $85 million Canadian); *In re Quintiles Transnational Corp., et. al.*, 02 CVS 5348, State of North Carolina, County of Durham; *Key Equity Investors, Inc., et. al. v. Lexent Inc., et al.*, CA 20177, Court of Chancery of the State of Delaware County of New Castle*; In re Livent, Inc. Securities Litigation*, 98-CIV-5686 (RWS), U.S. District Court, Southern District of New York.;  *In re Shopping.com, Inc. Securities Litigation*, No. C-98-3255-ER (BQRx), U.S. District Court, Central District of California ($4.5 million settlement); *In re Advanced Health Corporation Securities Litigation*, 98-CV-4647 (BDP), U.S. District Court, Southern District of New York (settlement of $2,954,790 plus attorneys' expenses*);  In re Schein Pharmaceutical, Inc. Securities Litigation*, Master Docket No. 98-4311 (JCL), U.S. District Court, District of New Jersey ($8 million settlement*);  In re CyberCare Inc. Securities Litigation*, Case No. 00-8404-CIV-RYSKAMP/VITUNAC, U.S. District Court, Southern District of Florida (settled for $3.1 million in cash plus 4,000,000 shares in CyberCare stock); *In re ThermoRetec Securities Litigation*, No. 17601-NC, Court of Chancery of the State of Delaware, New Castle County (settled for $750,000 plus expenses);  *Adler, et. al. v. Ribozyme, et al.*, No. 99-B-2235, U.S. District Court, District of Colorado (settled for $3 million); *Lacoff v. Buena Vista Publ., Inc.*, No. 606005/98, Supreme Court of the State of New York, New York County, 2000 N.Y. Misc.



LEXIS 25, January 28, 2000 (co-lead counsel with former New York State Attorney General G. Oliver Koppel) (settled for non-cash consideration valued at several million dollars); *Pavel v. E-Stamp Corp.*, CV 798624, Superior Court of the State of California, County of Santa Clara (settled for non-cash consideration valued at approximately $2.2 million); *Chiarenza v. Curtis International Ltd.*, 01 Civ. 5381 (MGC), U.S. District Court, Southern District of New York (settled for approximately $615,000).

*Education*: New York University School of Law, LL.M, Master of Law(s) Taxation (1997); Brooklyn Law School, J.D. (1995); Brooklyn College, B.S. (1992) *summa cum laude*, Accounting.

*Admissions*:   New York; New Jersey (1996); United States District Court, Southern District of New York (1998); United States District Court, Eastern District of New York (1998); United States District Court of New Jersey (2012).

*Publications:*

- Ed Korsinsky & Allen Schwartz, *Delaware Court Dismisses Compensation Case Against Goldman Sachs*, ABA Section of Securities Litigation News & Developments (Nov. 7, 2011),

- Ed Korsinsky & Allen Schwartz, *SDNY Questions SEC Settlement Practices in Citigroup Settlement*, ABA Section of Securities Litigation News & Developments (Nov. 7, 2011),

- Ed Korsinsky & Allen Schwartz, *New York Court Dismisses Shareholder Suit Against Goldman Sachs*, ABA Section of Securities Litigation News & Developments (Oct. 31, 2011)

Mr. Korsinsky serves as an editor of the American Bar Association's Securities Litigation Section's newsletter.

**Donald J. Enright** is a Member of the firm, in which he leads the Washington, D.C. office. During his 15 years as a litigator and trial lawyer, Mr. Enright has handled matters in the fields of securities, commodities, consumer fraud and commercial litigation, with a particular focus on shareholder M&A and securities fraud class action litigation. He has been named as one of Washington,'s "Best Lawyers" by *Washingtonian* magazine, and has developed a track record of achieving victories in federal trials and appeals, including *Nathenson v. Zonagen, Inc.*, *267 F. 3d 400, 413* (5th Cir. 2001); *SEC v. Butler*, 2005 U.S. Dist. LEXIS 7194 (W.D. Pa. April 18, 2005); and *Belizan v. Hershon*, 434 F. 3d 579 (D.C. Cir. 2006).



Indeed, Mr. Enright has played a lead role in numerous securities and shareholder class actions from inception to conclusion. His leadership has produced multi-million dollar recoveries in shareholder class actions involving such companies as Allied Irish Banks PLC, Iridium World Communications, Ltd., En Pointe Technologies, Inc., PriceSmart, Inc., Polk Audio, Inc., Meade Instruments Corp., Xicor, Inc., Streamlogic Corp., Interbank Funding Corp., Riggs National Corp., UTStarcom, Inc., and Manugistics Group, Inc.

Mr. Enright also has a successful track record of obtaining injunctive relief in connection with shareholder M&A litigation, having won preliminary injunctions in the cases of *In re: Portec Rail Products, Inc. Shareholder Litigation*, G.D. 10-3547 (Ct. Com. Pleas Pa. 2010), *In re Craftmade International, Inc. Shareholders Litigation*, C.A. No. 6950-VCL (Del. Ch. 2011) , and *In re Parlux Fragrances Shareholder Litigation*, C.A. No. 7199-VCG (Del. Ch. 2012). He also served as co-lead counsel in *Berger v. Life Sciences Research, Inc.*, No. SOM-C-12006-09 (NJ Sup. Ct 2009), a merger case that produced a significant increase in the transaction price from $7.50 to $8.50 per share, representing additional consideration for shareholders of approximately $11.5 million.

The courts have recognized and praised the quality of Mr. Enright's work. In *In re Interbank Funding Corp. Sec. Litig.* (D.D.C. 02-1490), Judge Bates of the United States District Court for the District of Columbia observed that Mr. Enright had "skillfully, efficiently, and zealously represented the class, and . . . worked relentlessly throughout the course of the case." Similarly, in *Freeland v. Iridium World Communications, LTD*, (D.D.C. 99-1002), Judge Nanette Laughrey stated that Mr. Enright had done "an outstanding job" in connection with the recovery of $43.1 million for the shareholder class.

*Education*: George Washington University School of Law J.D. (1996) where he was a Member Editor of *The George Washington University Journal of International Law and Economics* from 1994 to 1996, and clerked for the House Judiciary Committee in 1994. Drew University B.A. (1993) *cum laude* Political Science and Economics.

*Admissions*: District of Columbia (1999); Maryland (1996); New Jersey (1996); District of Maryland (1997); District of New Jersey (1997); United States District Court for the District of Columbia (1999); United States Court of Appeals for the District of Columbia (2004); Second Circuit (2005); Third Circuit (2006); Fourth Circuit (1999); Fifth Circuit (1999).

*Publications:* His published securities litigation-related articles include:


LeviKorsinsky LLP
Attorneys at Law

- "SEC Enforcement Actions and Investigations in Private and Public Offerings," *Securities: Public and Private Offerings*, Second Edition, West Publishing 2007.

- "Dura Pharmaceuticals: Loss Causation Redefined or Merely Clarified?" J. Tax'n & Reg. Fin. Inst. September/October 2007, Page 5.

**Nicholas I. Porritt** is a Member of the firm and prosecutes shareholder class actions, derivative actions, and mergers and acquisitions litigation. Mr. Porritt has extensive experience representing plaintiffs and defendants in a wide variety of complex commercial litigation, including civil fraud, breach of contract and professional malpractice as well as defending SEC investigations and enforcement actions. Some of Mr. Porritt's cases include *Cozzarelli v. Inspire Pharmaceuticals, Inc.*, 549 F.3d 618 (4th Cir. 2008); *Teachers' Retirement System of Louisiana v. Hunter*, 477 F.3d 162 (4th Cir. 2007); *In re PEC Solutions, Inc. Securities Litigation*, 418 F.3d 379 (4th Cir. 2005); *Ferre v. McGrath*, 2007 WL 1180650 (S.D.N.Y. Feb. 16, 2007); and *Shiring v. Tier Technologies, Inc.*, 244 F.R.D. 307 (E.D. Va. 2007).

Before joining Levi & Korsinsky, Mr. Porritt practiced as a partner at Akin Gump Strauss Hauer & Feld LLP and prior to that was a partner at Wilson Sonsini Goodrich & Rosati PC.

*Education:* University of Chicago Law School, J.D., (1996) where he graduated with honors. University of Chicago Law School, LL.M., (1993). Victoria University of Wellington, LL.B. (Hons.) (1990), where he graduated with First Class Honors and was the recipient of a Senior Scholarship.

*Admissions:* District of Columbia (1998); New York State (1997); United States District Court for the Southern District of New York; United States District Court for the District of Columbia; United States District Court for the District of Maryland; United States Supreme Court; United States Courts of Appeal for the Fourth Circuit, Fifth Circuit, and Eleventh Circuit; District of Columbia Circuit; Solicitor of the Senior Courts of England & Wales.

**Shannon L. Hopkins** is a Member in the firm and prosecutes a wide-range of complex class action matters in securities fraud, merger and acquisition, consumer fraud and other complex class actions litigation. Prior to joining Levi & Korsinsky LLP, Ms. Hopkins was associated with Entwistle & Cappucci, LLP and Milberg, LLP, where she represented individuals and large institutional clients in the prosecution of complex class action litigation matters.



Ms. Hopkins has played a lead role in numerous shareholder securities fraud and merger and acquisition matters and has been involved in recovering multi-million dollar settlements on behalf of shareholders, including: *In re CMS Energy Sec. Litig.*, Civil No. 02 CV 72004 (GCS) (E.D. Mich. Sept. 6, 2007) ($200 million recovery); *In re Sears, Roebuck and Co. Sec. Litig.*, No. 02-cv-07527 (N.D. Ill. Jan. 8, 2007) ($200 million recovery); *In re El Paso Electric Co. Sec. Litig.*, No. Civil Action No. 3:03-cv-00004-DB (W.D. Tex. Sept. 15, 2005) ($10 million recovery); *In re Novastar Fin. Sec. Litig.*, 4:04-cv-00330-ODS (W.D. Missouri Apr. 14, 2009) ($7.25 million recovery).

The quality of Ms. Hopkins work as been noted by courts.  For example, in *In re Health Grades, Inc. Shareholder Litigation*, C.A. No. 5716-VCS, in which Ms. Hopkins was significantly involved with the briefing of the preliminary injunction motion, Vice Chancellor Strine "applaud[ed]" co-lead counsel for their preparation and the extraordinary high-quality of the briefing.

In addition to her legal practice, Ms. Hopkins is a Certified Public Accountant (1998 Massachusetts).  Prior to becoming an attorney, Ms. Hopkins was associated with PricewaterhouseCoopers LLP as a senior auditor where she led audit engagements for large publicly held companies in a variety of industries.

*Education*:  Suffolk University Law School, (2003), *magna cum laude*, where she served on the Journal for High Technology and as Vice Magister of the Phi Delta Phi International Honors Fraternity.  Bryant University, B.S.B.A. (1995) *cum laude*, Accounting and Finance where she was elected to the Beta Gamma Sigma Honor Society.

*Admissions*:  Massachusetts (2003); United States District Court for the District of Massachusetts (2004); New York (2004); United States District Court for the Southern District of New York and Eastern District of New York (2004); United States Court of Appeals for the First Circuit (2008) and Third Circuit (2010).

*Publications*:  Ms. Hopkins has published the following articles concerning cutting edge technology issues:

- *The* Cybercrime *Convention Does Not Provide Substantive Lawmaking Guidance*,http://cyber.law.harvard.edu/netdialgue/discussion/?p=23 (2005);
- *Cybercrime Convention: A Positive Beginning to a Long Road Ahead*, 2 J. High Tech. L. 101 (2003).



**OF COUNSEL**

**Michael H. Rosner** is Of Counsel with the firm.  Prior to joining Levi & Korsinsky, Mr. Rosner was associated with Sullivan & Cromwell LLP and Entwistle & Cappucci LLP, where he prosecuted and defended complex commercial litigation matters and shareholder class and derivative actions.

Mr. Rosner currently focuses his practice on representing shareholders of public companies in class action and derivative litigation seeking recovery for corporate wrongdoing, particularly with respect to mergers and acquisitions and executive compensation.  Recent successes on behalf of shareholders include the obtaining of a preliminary injunction against the merger of Occam Networks, Inc. and Calix, Inc. due to material misrepresentations and omissions in the proxy statement by which the shareholders were solicited to vote for the merger.  *See Steinhardt v. Howard-Anderson, et al.*, No. 5878-VCL (Del. Ct. Ch. Jan. 24, 2011).  Mr. Rosner continues to lead the litigation effort on behalf of former Occam shareholders to recover money damages for alleged breaches of fiduciary by Occam's Board of Directors in connection with the merger.

Another of Mr. Rosner's recent victories for shareholders was in litigation challenging the acquisition of Health Grades, Inc. by affiliates of Vestar Capital Partners, L.P.  In that case, Mr. Rosner and his co-counsel successfully demonstrated to the Delaware Court of Chancery that the defendants had likely breached their fiduciary duties to Health Grades' shareholders by failing to maximize value as required by *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173 (Del. 1986).  *See Weigard v. Hicks, et al.*, No. 5732-VCS (Del. Ct. Ch. Sept. 3, 2010) ("*Health Grades*").

Using the Court's favorable ruling, Mr. Rosner and co-counsel in *Health Grades* were successful in reaching a settlement in which defendants agreed to, among other things, modify the merger agreement (including by reducing the termination fee, imposing a "majority of the minority" requirement, and reducing the period of notice to the buyer before Health Grades could enter into a superior proposal), as well as to create and empower an independent committee, extend the tender offer so as to allow other potential bidders an opportunity to make a competing bid, and issue a "*Fort Howard*" press release affirmatively stating that the company "will provide information to, and engage and participate in good faith discussions and negotiations with, any third party" making a *bona fide* written acquisition proposal.  Vice Chancellor Strine "applaud[ed]" Mr. Rosner and co-counsel for their preparation and the extraordinary high-quality of the briefing.

Mr. Rosner has also had success at the appellate level, persuading the Second Circuit Court of Appeals to reverse the District Court's dismissal of derivative claims seeking to

11



recover excessive compensation granted to officers and directors of Goldman Sachs. *See Bader v. Goldman Sachs Group, Inc., et al.*, No. 10-4364-cv, 2011 WL 6318037 (2d Cir. Dec. 19, 2011).

*Education*: Fordham University School of Law, J.D. (2000), *magna cum laude*, where he served on the Fordham Law Review and was President of the Chess Club; State University of New York at Albany, B.A. (1997), *summa cum laude*, where he was elected to Phi Beta Kappa.

*Admissions*: New York (2001); United States District Courts for the Southern District of New York (2001) and Eastern District of New York (2001); United States Court of Appeals for the Second Circuit (2005).

*Publications*:  Co-authored *Seeking Subprime Solutions:  Fed Action, Legislation and Litigation Address the Subprime Mess*, Global Securitization Guide (May 2008) and *Legislative and Regulatory Developments in U.S. Securitizations*, Global Securitization Guide (May 2007).  Assisted in the preparation of *Pay, Performance and Proxies:  The Latest in Executive Compensation*, Fund Management Legal & Regulatory Report (March 2007).

**ASSOCIATES**

**Douglas E. Julie** is an Associate with the firm.  Prior to joining Levi & Korsinsky, Mr. Julie was associated with Kelley Drye & Warren LLP, where he prosecuted and defended complex commercial litigation matters.

*Education:* New York University School of Law, J.D. (2004) where he served of the editorial board of the Annual Survey of American Law; Cornell University, B.S. (2001) Industrial and Labor Relations where he interned in the Office of Senator Edward M. Kennedy

*Admissions*: New York, (2005); United States District Courts for the Southern District of New York (2005) and Eastern District of New York (2005).

**Eric M. Andersen** is an Associate with the firm.   Mr. Andersen's current practice includes a nationwide practice filing class actions challenging mergers and acquisitions, derivative actions on behalf of corporations, appraisal of shares and actions seeking confidential corporate records.

Mr. Andersen is counsel in a class action pending before the Delaware Court of Chancery brought on behalf of the shareholders of CNX Gax ("CXG") who have alleged that they suffered financial injury in connection with the "going private" acquisition of CXG by its controlling parent company owner, CONSOL energy, Inc. ("CONSOL").  After expedited proceedings, on May 26, 2010, the Court ruled that plaintiffs had made a



sufficient showing that the action should move forward to trial. In so doing, the Court issued an important opinion clarifying and defining the rights of shareholders in the context of a "going private" tender offer by a controlling shareholder. *In re CNX Gas Corp. S'holders Litig.*, 4 A.3d 397 (Del. Ch. 2010). The lawsuit is ongoing.

Prior to joining Levi & Korsinsky LLP, Mr. Andersen was a civil litigator in Wilmington, Delaware where he gained extensive litigation experience in the Delaware Court of Chancery. In addition to his legal practice, he is a Certified Public Accountant, 1998, Maryland.

*Education*: Widener University School of Law J.D. (2003), *magna cum laude* where he was a member of the editorial board of the Delaware Journal of Corporate Law. Oglethorpe University B.B.A. (1997), *cum laude*, Computer Science and Accounting where he defended his thesis on accounting for derivatives

*Admissions*: Delaware United States District Court (2003); District of Delaware (2004).

**Robert H. Lefkowitz** is an Associate at the firm.

*Education*: Benjamin N. Cardozo School of Law, J.D. (2005) *magna cum laude* where he served as a Notes Editor on the Cardozo Law Review; Binghamton University, B.S. (2001) *summa cum laude*, Finance.

*Admissions*: New York (2006).

*Publications: The Filing of a Bankruptcy Petition in Violation of 11 U.S.C. § 109(g): Does it Invoke the Automatic Stay*, 26 Cardozo L. Rev. 297.

**Elizabeth K. Tripodi** is an Associate in the firm's Washington, D.C. office. Ms. Tripodi focuses her current practice on shareholder litigation, with an emphasis on corporate mergers and acquisitions and derivative actions. She represents shareholders of companies whose shares are being acquired through mergers, acquisitions, tender offers, and other change-in-control transactions. Ms. Tripodi also represents shareholder clients derivatively when they seek to hold the company's officers and directors accountable for corporate malfeasance.

Ms. Tripodi was recently a key part of the litigation team that won a preliminary injunction in Delaware Chancery Court in the matter of *In re Craftmade International, Inc. Shareholders Litigation*, C.A. No. 6950-VCL (Del. Ch. 2011). In that case, Ms. Tripodi and Levi & Korsinsky were successful in obtaining substantial supplemental disclosures of previously concealed facts concerning a proposed merger transaction, and further convinced the Court to order the defendants to make a "*Fort Howard*" release to cure a likely breach of the defendants' fiduciary duty of care.



Prior to joining Levi & Korsinsky LLP, Ms. Tripodi was associated with Finkelstein Thompson LLP, where she was a member of the litigation team that served as lead counsel in, and was responsible for, the successful prosecution of numerous class actions, including: *Rudolph v. UTStarcom* (stock option backdating litigation obtaining a $9.5 million settlement); *Grecian v. Meade Instruments* (stock option backdating litigation obtaining a $3.5 million settlement); *In re Portec Rail Products, Inc. S'holder Litig.* (successfully obtained a preliminary injunction of the tender offer and merger between Portec and L.B. Foster Company).

*Education:* American University Washington College of Law (2006) *cum laude* where she served as Editor in Chief of the Business Law Brief, was a member of the National Environmental Moot Court team and interned for Environmental Enforcement Section at the Department of Justice; Davidson College B.A. (2000) Art History.

*Admissions:* Virginia (2006); District of Columbia (2007); United States District Court for the Eastern District of Virginia (2006); United States District Court for the District of Columbia (2009).

**W. Scott Holleman** is an Associate at Levi & Korsinsky, where he represents shareholders and investors in a variety of class action litigation in state and federal courts throughout the country. Mr. Holleman focuses his practice on litigation arising out of mergers and acquisitions (M&A), securities fraud, investment management, corporate governance, and consumer litigation. Prior to joining Levi & Korsinsky, Mr. Holleman was an associate at a boutique complex litigation firm and represented individuals, companies, and classes in antitrust, commercial, ERISA, insurance, securities, and tax disputes.

*Education*: St. John's University School of Law, J.D. (2007), where he served as the Editor-in-Chief of the *New York Litigator*, the journal of the Commercial and Federal Litigation Section of the New York State Bar Association; University of North Carolina, B.A. (2003) Political Science

*Admissions*: New York (2008); United States District Court, Eastern District of New York (2008); Southern District of New York (2008); Northern District of New York (2011); Eastern District of Michigan (2010).

Mr. Holleman is also an active member in the New York State Bar Association, the New York County Lawyers Association, and U.S. Sailing.

**Allen Schwartz** is an Associate at Levi & Korsinsky. Prior to joining the firm, Mr. Schwartz was an associate at O'Melveny & Myers LLP where he practiced in the litigation department, focusing on class, and other aggregate, actions.   Mr. Schwartz focuses his current practice on shareholder class action and derivative litigation.



*Education*: New York University School of Law, J.D. (2008); Loyola University Chicago, B.A. (2004) History

*Admissions*:  New York (2009); United States District Court for the Southern District of New York (2009); Second Circuit Court of Appeals (2011); United States District Court for District of Colorado (2011); United States District Court for Eastern District of Michigan (2011).

*Publications:*

- Allen Schwartz, *SDNY Rejects SEC-Citigroup Settlement*, ABA Securities Litigation Newsletter, Winter 2012 Vol. 22, No. 2 at 31-34.

- Allen Schwartz, *SDNY Rejects SEC-Citigroup Settlement*, ABA Section of Securities Litigation News & Developments, (Jan. 5, 2012).

- Ed Korsinsky & Allen Schwartz, *Delaware Court Dismisses Compensation Case Against Goldman Sachs*, ABA Securities Litigation Newsletter, Fall 2011 Vol. 22, No. 1 at 32-33.

- Ed Korsinsky & Allen Schwartz, *SDNY Questions SEC Settlement Practices in Citigroup Settlement*, ABA Securities Litigation Newsletter, Fall 2011 Vol. 22, No. 1 at 34.

- Ed Korsinsky & Allen Schwartz, *New York Court Dismisses Shareholder Suit Against Goldman Sachs*, ABA Section of Securities Litigation News & Developments (Oct. 31, 2011).

- Tancred V. Schiavoni, Gary Svirsky & Allen Schwartz, *Victory for Insurers in Skinner Engine May Change Landscape for Asbestos Bankruptcies*, Bloomberg Law Reports: Bankruptcy Law, at 1 (June 29, 2009).

Mr. Schwartz is a member of the New York State Bar Association, and the New York City Bar Association.  Mr. Schwartz was an editor at the NYU Journal of Law and Liberty from 2006 to 2008.

**Thomas M. Gottschlich** is an Associate at Levi & Korsinsky.  Prior to joining the firm, Mr. Gottschlich was an associate with Finkelstein Thompson LLP where he prosecuted shareholder, consumer and antitrust class actions.

During law school, Mr. Gottschlich interned at the Department of Justice's Federal Tort Claims Act Section, interned for the Honorable Ricardo M. Urbina at the U.S. District Court for the District of Columbia, and interned for the Honorable Mary Katherine



Huffman at the Montgomery County, Ohio Court of Common Pleas.

*Education:* American University Washington College of Law, J.D. (2009); American University, B. A. (2005) International Studies, Spanish minor

*Admissions:* New York (2009); District of Columbia (2011).

**Danielle Rowland Lindahl** is an Associate at Levi & Korsinsky. Prior to joining the firm, Ms. Rowland Lindahl was an associate at Baker & McKenzie LLP, as part of the Corporate & Securities practice area, and a law clerk at Lawrence & Fisher PLLC, where she focused on consumer protection litigation.

*Education*: Benjamin N. Cardozo School of Law, J.D. (2010); Princeton University, A.B. (2005)

*Admissions*: The State of New York (2011); District of Columbia (2012).

Ms. Rowland Lindahl is a member of the American Bar Association, the New York State Bar Association, the New York City Bar Association, and the New York County Lawyers Association.

**Daniel H. Adler** is an Associate at Levi & Korsinsky. Prior to joining the firm, Mr. Adler was an active participant at Seton Hall University's Center for Social Justice, providing legal services to individuals needing representation in a wide variety of family law matters. He also clerked for the Somerset County Prosecutor's Office in Somerville, NJ where he represented the state in certain criminal matters.

*Education:* Seton Hall University School of Law, J.D. (2010); Brandeis University, B.A. (2007) Politics.

*Admissions:* New Jersey (2010); New York (2011); United States District Court - District of New Jersey (2010); United States District Courts for the Southern District of New York and Eastern District of New York (2012); United States Court of Appeals for the Third Circuit (2012).

Mr. Adler is a member of the American Bar Association, the New York State Bar Association, the New York City Bar Association, and the New York County Lawyers' Association.