UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
LARRY FREUDENBERG, Individually and                       :
On Behalf of All Others Similarly Situated,               :
                                                          :   Civil Action No.
            Plaintiff,                                    :
                                                          :   07 Civ. 8538 (JPO) (MHD)
        - against -                                       :
                                                          :
E*TRADE FINANCIAL CORPORATION,                            :
MITCHELL H. CAPLAN, ROBERT J.                             :
SIMMONS and DENNIS E. WEBB,                               :
                                                          :
            Defendants.                                   :
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' COUNSEL'S
MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES**

**BROWER PIVEN**
  **A PROFESSIONAL CORPORATION**
David A.P. Brower
Brian C. Kerr
488 Madison Avenue, 8th Floor
New York, NY 10022
T: (212) 501-9000
F: (212) 501-0300

*Lead Counsel for Plaintiffs*

**LEVI & KORSINSKY, LLP**
Eduard Korsinsky
Shannon L. Hopkins
30 Broad Street, 15th Floor
New York, NY 10004
T: (212) 363-7500
F: (212) 363-7171

*Co-Lead Counsel for Plaintiffs*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………ii

I.      PRELIMINARY STATEMENT………………………………………………...1

II.     FACTUAL BACKGROUND………………………………………………...2

III.    ARGUMENT………………………………………………………………3

        A.      Plaintiffs' Counsel Are Entitled To An Award of Attorneys' Fees…..…………3

                1.      The Legal Standards Governing Awards of Attorneys' Fees……………..3

                2.      Plaintiffs' Counsel Should Be Awarded A Percentage of the Common
                        Fund………………………………………………………......................5

                3.      The Percentage Fee Requested is Reasonable and Should be
                        Granted………………………………………………..…………...7

                        a.      The Time and Labor to Produce an Excellent Settlement…………..7

                        b.      The Complexity, Magnitude, and Risks of Litigation ………………9

                        c.      Quality of Representation…………………………………………14

                        d.      The Requested Fee Award in Relation to the Settlement …………..15

                        e.      Public Policy Considerations Fully Support the Requested Fee……17

                4.      Plaintiffs' Counsel's Fee Request is Reasonable Under
                        a Lodestar/Multiplier Analysis and Should Be Granted………………...18

        B.      Plaintiffs' Counsel Should be Reimbursed for Expenses Reasonably Incurred
                in Connection with this Action…………………………………………………21

IV.     CONCLUSION………………………………………………………………24

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03  MDL  1529,
    2006 U.S. Dist. LEXIS 84621 (S.D.N.Y. Nov. 17, 2006)……………………..14, 15

*Alli v. Boston Mkt. Corp.,* No. 3:10-cv-00004-JCH,
    2012 U.S. Dist. LEXIS 54695 (S.D.N.Y. Apr. 17, 2012)………………………..16

*Alpine Pharmacy v. Chas. Pfizer & Co., Inc.*, 481 F.2d 1045 (2d Cir. 1973)…………...17

*In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469 (S.D.N.Y. 2010)……………………...12

*In re American Bank Note Holographics*, 127 F. Supp. 418 (S.D.N.Y. 2001)……..4, 5, 11

*Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996)....................................13

*Antonopulos v. N. Am. Thoroughbreds, Inc.*, No. 87-0979G (CM),
    1991 U.S. Dist. LEXIS 12579 (S.D. Cal. May 6, 1991)……………………16, 17

*Anwar v. Fairfield Greenwich Ltd.,* No. 09-CV-118 (VM),
    2012 U.S. Dist. LEXIS 78929 (S.D.N.Y. June 1, 2012)......................................16

*In re APAC Teleservs., Inc. Sec. Litig.,* No. 97 Civ. 9145,
    1999 U.S. Dist. LEXIS 17908 (S.D.N.Y. Nov. 12, 1999)....................................15

*In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW,
    1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991).....................................13

*In re AT&T Corp., Sec. Litig.*, 455 F.3d 160 (3d Cir. 2006)...............................................6

*Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990)..................................................12

*Bateman Eichler, Hill Richards, Inc., v. Berner*, 472 U.S. 299 (1985)........................4, 17

*Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.,* 480 F. Supp. 1195
    (S.D.N.Y. 1979)...................................................................................................16

*Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd sub nom.,*
    *Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1995).............................................13

ii

*In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 U.S. Dist. LEXIS 51087
(S.D.N.Y. July 16, 2007)......................................................................................21

*Blum v. Stenson*, 465 U.S. 886 (1984)........................................................................5, 19

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)..............................................................3

*Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991)................................6

*In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752 (S.D. Ohio 2007)................20

*Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885)..........................................3, 4

*In re China Sunergy Sec. Litig*, No. 07 Civ. 7895 (DAB),
2011 U.S. Dist. LEXIS 53007 (S.D.N.Y. May 13, 2011)...............................15, 22

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)....................................7, 12

*Clark v. Ecolab Inc.*, No. 07 Civ. 8623, 2010 U.S. Dist. LEXIS 47036
(S.D.N.Y. May 11, 2010)....................................................................................16

*In re Comverse Tech., Inc.*, No. 06-CV-1825 (NGG)(RER),
2010 U.S. Dist. LEXIS 63342 (E.D.N.Y. June 24, 2010)........................15, 20

*In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484 (E.D Pa. 2003)..........................16

*In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993)..........................15

*Dubin v. E.F. Hutton Group, Inc.*, 878 F. Supp. 616 (S.D.N.Y. 1995)....................15

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005)..............................................4

*Eltman v. Grandma Lee's, Inc.*, No. 82 Civ. 1912,
1986 U.S. Dist. LEXIS 24902 (E.D.N.Y. May 28, 1986)...................................17

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM),
2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007)..................................20

*In re Flag Telecom*, No. 02-CV-3400, 2010 U.S. Dist. LEXIS 119702
(S.D.N.Y. Nov. 8, 2010)................................................................*passim*

*Fogarazzo v. Lehman Bros., Inc.*, No. 03 Civ. 5194 (SAS),
2011 U.S. Dist. LEXIS 17747 (S.D.N.Y. Feb. 23, 2011)..........................5, 9, 15

iii

*In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423 (E.D. Pa. 2001)...........................16

*In re Giant Interactive Group, Inc.*, 279 F.R.D. 151 (S.D.N.Y. 2011)………………..4, 15

*In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS)(SMG),
        2007 U.S. Dist. LEXIS 68964 (S.D.N.Y. Sept. 18, 2007)....................................23

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436
        (S.D.N.Y. 2004)……....................................................................................23

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)..............................*passim*

*Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994)....................................................6

*Guippone v. BH S&B Holdings, LLC*, Case No. 09 Civ. 01029 (CM),
        2011 U.S. Dist. LEXIS 126026 (S.D.N.Y. Oct. 28, 2011)…………..…………16

*Hall v. AT&T Mobility LLC*, No. 07-5325, 2010 U.S. Dist. LEXIS 109355
        (D.N.J. Oct. 13, 2010)………………………………………………………...17

*Harman v. Lyphomed, Inc.*, 945 F.2d 969 (7th Cir. 1991)..................................6

*Helmick v. Columbia Gas Transmission*, No. 2:07-cv-00743,
        2010 U.S. Dist. LEXIS 65808 (S.D. W. Va. July 1, 2010)…………..…………17

*Hens v. ClientLogic Operating Corp.*, No. 05-CV-3815,
        2010 U.S. Dist. LEXIS 139126 (W.D.N.Y. Dec. 21, 2010)................................16

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)......................................................19

*In re Heritage Bond Litig*, 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627
        (C.D. Cal. June 10, 2005)...……………………………………………………16

*In re Independent Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180
        (S.D.N.Y. 2003)............................................................................................22

*In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009)…………15

*In re Interpublic Secs.*, No. 6527, 2004 U.S. Dist. LEXIS 21429
        (S.D.N.Y. Oct. 26, 2004)...........................................................................21

*JI Case Co. v. Borak*, 377 U.S. 426 (1964)........................................................4

*Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 U.S. Dist. LEXIS 105775
        (S.D.N.Y. Sept. 16, 2011)...........................................................................16

iv

*In re KeySpan Corp. Sec. Litig.*, No. CV 2001-5852 (ARR) (MDG),
   2005 U.S. Dist. LEXIS 29068 (S.D.N.Y. Aug. 25, 2005)..............................15, 22

*Khait v. Whirlpool Corp.*, No. 06-6381, 2010 U.S. Dist. LEXIS 4067
   (E.D.N.Y. Jan. 20, 2010)........................................................................................16

*Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987)………………………………………13

*In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532
   (S.D.N.Y. June 2, 2004)..........................................................................................21

*In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS),
   2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002)....................................13

*Luciano v. Olsten Corp.*, 109 F.3d 111 (2d Cir. 1997)....................................................19

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002)….........6, 15, 17

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM),
   2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009)…………..………....14

*In re Marsh ERISA Litig.*, 265 F.R.D. 128 (S.D.N.Y. 2010)..............................................14

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007).........................7

*In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904,
   1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998)………………………..16

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)..............................16

*Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV00409,
   2011 U.S. Dist. LEXIS 7066 (D. Conn. Jan. 25 2011).........................................15

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156
   (S.D.N.Y. 2007)………………………………………………………………*passim*

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 02 MDL 1484,
   2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. Feb. 1, 2007)…………..……...…*passim*

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970)……………………………………..3

*Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235 (S.D.N.Y. 1993).........................22

*Missouri v. Jenkins*, 491 U.S. 274 (1989)........................................................................19

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC),
    2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009)…………………………16

*Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869 (2010)...............................................12

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D.465
    (S.D.N.Y. Nov. 9, 1998).......................................................................................20

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983)….19

*Payson v. Capital One Home Loans, LLC*, No. 07-CV-2282-DWB,
    2009 U.S. Dist. LEXIS 25418 (D. Kan. Mar. 26, 2009)…………………………17

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999)…………………………………6

*Prasker v. Asia Five Eight LLC*, 08 Civ. 5811 (MGC),
    2010 U.S. Dist. LEXIS 1445 (S.D.N.Y. Jan. 6, 2010).........................................16

*In re Priceline.com, Inc. Sec. Litig.*, No. 00 Civ. 1884 (AVC),
    2007 U.S. Dist. LEXIS 52538 (D. Conn. July 20, 2007)......................................18

*In re Ravisent Techs., Inc. Sec. Litig.*, No. 00-CV-1014,
    2005 U.S. Dist. LEXIS 6680 (E.D. Pa. Apr. 18, 2005)........................................16

*Rawlings v. Prudential-Bache Props. Inc.*, 9 F.3d 513 (6th Cir. 1993)…………………...6

*In re Ready-Mixed Concrete Antitrust Litig.*, No. 1:05-CV-00979-SEB-TAB,
    2010 U.S. Dist. LEXIS 85003 (S.D. Ind. Aug. 17, 2010)…...………………….17

*Reyes v. Altamarea Group,* No. 10-CV-6451 (RLE),
    2011 U.S. Dist. LEXIS 115984 (S.D.N.Y. Aug. 16, 2011)..................................16

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587 (PKL) (RLE),
    2003 U.S. Dist. LEXIS 8239 (S.D.N.Y. May 15, 2003)……………...………15

*Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997)…………………………13

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997)……………………………..21

*Savoie v. Merchs. Bank*, 166 F.3d 456 (2d Cir. 1999).....................................................4, 5

*In re Schering-Plough Corp.,* No. 08-1432,
    2012 U.S. Dist. LEXIS 75213 (D.N.J. May 31, 2012)…………………………..17

*Sewell v. Bovis Lend Lease LMB, Inc.,* No. 09 Civ. 6548 (RLE),
  2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012)......................................16

*Spann v. AOL Time Warner, Inc.,* No. 02 Civ. 8238 (DLC),
  2005 U.S. Dist. LEXIS 10848 (S.D.N.Y. June 7, 2005)......................................16

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939)...........................................3

*Stefaniak v. HSBC Bank USA, N.A.*, No. 1:05-CV-720 S,
  2008 U.S. Dist. LEXIS 53872 (W.D.N.Y. June 28, 2008)..................................16

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................15

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999)......................21

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993)..............................6

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008)....................4, 6, 21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)...........................4

*Temp. Servs. v. Am. Int'l Group, Inc.,* Civ. A. No. 3:08-CV-00271-JFA,
  2012 U.S. Dist. LEXIS 86474 (D.S.C. June 22, 2012).............................17

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire
  Litig.*, 56 F.3d 295 (1st Cir. 1995)...........................................................6

*Trustees v. Greenhough*, 105 U.S. 527, 536 (1882)............................................4

*Union Assets Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012)..................6

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160
  (S.D.N.Y. 1989)...........................................................14, 18, 19, 20

*Van Gemert* v. *Boeing Co.,* 516 F. Supp. 412 (S.D.N.Y. 1981)...............................16

*In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CH),
  2007 U.S. Dist. LEXIS 85554 (S.D.N.Y. Nov. 7, 2007)..........................4, 20

*In re Vitamins Antitrust Litig.*, No. 99-197 (TFH), 2001 U.S. Dist. LEXIS 25067
  (D.D.C. July 19, 2001)...........................................................17

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)..................................6

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005)..................5, 20

*In re Warner Commc'n Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985)...………...11, 14

*Waters v. Cooks Pest Control, Inc.,* No. 2:07-CV-00394-LSC,
    2012 U.S. Dist. LEXIS 99129 (N.D. Ala. July 17, 2012)……………....…16, 17

*In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005)…………………6

## DOCKETED CASES

*In re Apple Computer Sec. Litig.,* Master File No. C-84-20148(a)-JW
    (N.D. Cal. Mar. 30, 1992)………………………….………………….…13

*Cornwell v. Credit Suisse Grp.*, No. 08 Civ. 03758 (VM), slip op.
    (S.D.N.Y. July 18, 2011)………………………………………………… 20, 21

*In re Interpool, Inc. Sec. Litig.,* No. 3:04-cv-00321-SRC (D.N.J. Sept. 9, 2006)……….16

*In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL)
    (N.D. Cal. Nov. 27, 2007)……………………………………………………13

*Lewis v. Musham*, [1981 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶97,946
    (S.D.N.Y. 1981) …………………………………………………………16

*In re Olicom Sec. Litig.,* Master File No. 3:94-CV-0511-D (N.D. Tex. Aug. 30,1996)…15

*In re Public Serv. Co. of New Mexico,* [1992 Transfer Binder] Fed. Sec.
    L. Rep. (CCH) ¶96,988 (S.D. Cal. 1992)...........……………………………16

*Valente v. Pepsico, Inc.,* [1979 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,921
    (D. Del. 1979) ………………………………………………………..16

## FEDERAL STATUTES

15 U.S.C. §78u-4(a)(6)...............................................................................1, 6

15 U.S.C. §77z-1(a)(6)………………………………………………...21

Fed. R. Civ. P. 23…………………………………………………………*passim*

## MISCELLANEOUS

H.R. Conf. Rep. No. 104-369, 1995 WL 709276 (1995)……………….......................5

viii

Stuart J. Logan, et al., *Attorney Fee Awards in Common Fund Class Actions*, 24
      Class Action Reports 167 (2003).....................................................................21

Third Circuit Task Force on Selection of Class Counsel, 74 Temp. L. Rev. 689
      (Winter 2001)..........................................................................................................11

Securities Class Action Filings - 2011 Year in Review, at 18 (Cornerstone Research 2012),
      available at:
          www.cornerstone.com/securities_class_action_filings_2011_year_in_review..........10, 11

Pursuant to the Court's June 12, 2012 Order Granting Preliminary Approval of Settlement, Granting Conditional Class Certification, and Providing for Notice ("Preliminary Approval Order"), Plaintiffs' Counsel respectfully submit this memorandum of law in support of their motion for an award of attorneys' fees and reimbursement of expenses pursuant to FED. R. CIV. P. 23(h) and 54(d)(2) and 15 U.S.C. §78u-4(a)(6).[1]

## I.    PRELIMINARY STATEMENT

Plaintiffs' Counsel seek an award of attorneys' fees of one-third (33.33%) of the Settlement Fund, or approximately $26,333,333, and $554,950.23 in reimbursement of costs and expenses Plaintiffs' Counsel incurred in litigating this case on behalf of the Settlement Class. Plaintiffs' Counsel has achieved an outstanding result for the Settlement Class of $79,000,000 in cash plus interest earned thereon. Indeed, the Settlement here equates to a recovery that is between three and seven times higher than the median recovery of individual class member's recoverable damages in similar securities class actions. *See* Declaration of Professor Geoffrey P. Miller, ¶29 ("Miller Declaration") annexed as Exhibit B to the Joint Declaration of David A.P. Brower and Eduard Korsinsky In Support of Plaintiffs' Motions for Final Certification of Settlement Class, Final Approval of Class Notice, Final Approval of the Proposed Settlement, Final Approval of the Proposed Plan of Allocation, and Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Declaration").

The prosecution of this Action was undertaken by Plaintiffs' Counsel on an entirely contingent basis. As more fully described below, Plaintiffs' Counsel has incurred over

---

[1] Unless otherwise indicated, capitalized terms shall have the same meaning as set forth in the Stipulation of Settlement dated May 17, 2012 ("Stipulation") attached as Exhibit 1 to the Declaration of Brian C. Kerr dated May 17, 2012 in support of Plaintiffs' Motion for: (1) Preliminary Approval of Settlement; (2) Certification of the Class for Purposes of Settlement; (3) Approval of Notice to the Class; and (4) Scheduling of a Final Approval Hearing. Dkt. No. 126. Plaintiffs are also filing contemporaneously a motion and accompanying papers seeking final approval of the parties' proposed Settlement.

$16,000,000 in time and $550,000 in out-of-pocket expenses that would not be compensated or reimbursed unless Plaintiffs' Counsel achieved a recovery for the benefit of the Settlement Class.

Courts in this District and elsewhere frequently grant percentage-of-the-recovery fee awards where a common fund has been recovered for a class equal to, and, indeed, above the percentage of the Settlement Fund that Plaintiffs' Counsel seeks here. *See infra* at §A.3.d. As demonstrated below, and in the accompanying Joint and Miller Declarations, the requested one-third fee award is eminently fair and reasonable, particularly in view of the substantial risks attendant to this litigation and the excellent result achieved.

The requested fee is also fair and reasonable under either a lodestar/multiplier analysis or a "lodestar crosscheck." *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000), and further discussed below. Plaintiffs' Counsel has expended over 39,000 hours prosecuting this Action on behalf of the Settlement Class, for an aggregate lodestar of $16,435,905.00. Accordingly, the requested fee represents a 1.6 multiplier of Plaintiffs' Counsel's lodestar, which is far lower than multipliers routinely awarded in such cases.

In accordance with the Court's June 12, 2012 Preliminary Approval Order, to date, over 232,000 Notices were mailed to potential Settlement Class Members beginning on July 3, 2012, the Summary Publication Notice was disseminated three separate times over *PRNewswire* (on July 9, 16, and 23, 2012), and the Notice and related documents are posted on the website of the Claims Administrator (www.gcginc.com). *See* Declaration of Jose C. Fraga ("Fraga Decl.") at ¶¶2-5, 7-9, annexed as Exhibit A to the Joint Declaration. Both notices described the proposed Settlement, the maximum attorneys' fees Plaintiffs' Counsel would seek (up to 33.33%), and Settlement Class Members' right to object to that request. No objections have been received thus

far relating to the requested attorneys' fees.[2] In addition, the Notice advised that Plaintiffs' Counsel would seek reimbursement of expenses not to exceed $750,000. Plaintiffs' Counsel seek reimbursement of expenses of $554,950.23 – well below that ceiling.

In sum, the proposed Settlement here, which was achieved solely through the efforts of Plaintiffs' Counsel in the face of a vigorous defense, represents an outstanding result in an exceedingly difficult case. Consequently, Plaintiffs' Counsel's motion for an award of attorneys' fees and reimbursement of expenses should be granted.

## II.   FACTUAL BACKGROUND

For a full discussion of the procedural history and summary of the Action, as well as the proposed Settlement, the Court is respectfully referred to the accompanying Joint Declaration. This memorandum will, instead, focus on the legal and factual matters relevant to attorneys' fees awards in class actions where a common fund has been recovered for a plaintiff class.

## III.   ARGUMENT

### A.   Plaintiffs' Counsel Are Entitled To An Award Of Attorneys' Fees

#### 1.   The Legal Standards Governing Awards of Attorneys' Fees

It is well-settled that attorneys who represent a class and achieve a benefit for the members of that class are entitled to be compensated for their services. The Supreme Court has recognized that "a lawyer who recovers a common fund for the benefit of persons other than . . . his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 164 (1939); *Central R.R. & Banking Co. v. Pettus*,

---

[2] The deadline to requests for exclusion and objections is September 10, 2012. Accordingly, Plaintiffs' Counsel will report to the Court one week before the Settlement Hearing scheduled for October 11, 2012 to address requests for exclusion and any objections.

113 U.S. 116, 126 (1885); *Trustees v. Greenhough*, 105 U.S. 527, 536 (1882).

In addition to providing just compensation, awards of attorneys' fees from a common fund "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons" and, as a result, help to discourage future alleged misconduct of a similar nature.[3] Indeed, the Supreme Court has repeatedly emphasized that private securities actions, such as this one, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the US Securities and Exchange Commission ("SEC"). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) ("The securities statutes seek to maintain public confidence in the marketplace" and "[t]hey do so by deterring fraud, in part, through the availability of private securities fraud actions.").[4]

As in most other Circuits, the "common fund" doctrine has been approved by the Second Circuit and courts in this District. *E.g., Goldberger*, 209 F.2d at 47 (finding that the common fund doctrine "prevents unjust enrichment of those benefitting [sic] from a lawsuit without contributing to its cost"); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999); *In re*

---

[3] *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008); *see also In re Veeco Instruments Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85554, at *8 (S.D.N.Y. Nov. 7, 2007) (same); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (an award of appropriate attorneys' fees should "provid[e] lawyers with sufficient incentive to bring common fund cases that serve the public interest" and "attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so" (citations omitted)). In the long run, fees that fully reward excellent results encourage the successful prosecution of meritorious cases.

[4] *Accord Bateman Eichler, Hill Richards, Inc., v. Berner*, 472 U.S. 299, 310 (1985) (securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action'") (quoting *JI Case Co. v. Borak*, 377 U.S. 426, 432 (1964)). Indeed, as Congress recognized in passing the PSLRA in 1995: "Private securities litigation is an indispensable tool with which defrauded investors can recover their losses without having to rely on government action. Such private lawsuits promote public and global confidence in our capital markets and help to deter wrongdoing and to guarantee that corporate officers, auditors, directors, lawyers and others properly perform their jobs. This legislation seeks to return the securities litigation system to that high standard."

4

*American Bank Note Holographics*, 127 F. Supp. 418, 430 (S.D.N.Y. 2001) (holding that "the costs of litigation should be spread among the fund's beneficiaries"); *see also* Fed. R. Civ. P. 23(h) (providing that "the court may award reasonable attorneys' fees and nontaxable costs authorized by law").

        **2.**    **Plaintiffs' Counsel Should Be Awarded A Percentage of the Common Fund**

Plaintiffs' Counsel respectfully submit that this Court should award a fee based on a percentage of the common fund obtained for the Settlement Class. While Plaintiffs' Counsel's requested fee is also reasonable when analyzed or cross-checked under the lodestar/multiplier methodology (*see* §A.4 *infra*), the Supreme Court has indicated that attorneys' fees in common fund cases should be generally based on a percentage of the fund. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("under the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed to the class").[5] Indeed, the Second Circuit has expressly approved the "percentage-of-the-fund" method for awards of fees in common fund cases, recognizing that "the lodestar method proved vexing" and has resulted in "an inevitable waste of

---

*See* H.R. Conf. Rep. No. 104-369, at 31, 1995 WL 709276, at 730 (1995).

[5] *See also Savoie*, 166 F.3d at 460 ("percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (stating that the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation" and noting that the "trend in this Circuit is toward the percentage method." (citation omitted)); *Fogarazzo v. Lehman Bros., Inc.*, No. 03 Civ. 5194 (SAS), 2011 U.S. Dist. LEXIS 17747, at *6 (S.D.N.Y. Feb. 23, 2011) ("The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation."); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953, at *43 (S.D.N.Y. Dec. 23, 2009) ("the percentage method continues to be the trend of district courts in this Circuit and has been expressly adopted in the vast majority of circuits").

5

judicial resources." *Goldberger*, 209 F.3d at 48-49.[6]

The text of the Private Securities Litigation Reform Act of 1995 ("PSLRA") itself supports awarding attorneys' fees in securities cases using the percentage method, as it provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6) (emphasis added); 15 U.S.C. §77z-1(a)(6) (emphasis added). Several courts have concluded that, in using this language, Congress expressed a preference for the percentage method when awarding attorneys' fees in securities class actions. *See, e.g.*, *Telik*, 576 F. Supp. 2d at 586; *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) (PSLRA expressly contemplates that "the percentage method will be used to calculate attorneys' fees in securities fraud class actions"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (by using this language, Congress "indicated a preference for the use of the percentage method" rather than the lodestar method).

Given the Supreme Court's indication that the percentage method is proper in this type of case, the Second Circuit's explicit approval of the percentage method, the trend among the District Courts in this Circuit, and the language of the PSLRA, we respectfully submit that the Court should award Plaintiffs' Counsel attorneys' fees based on a percentage of the Settlement Amount.

---

[6] All Courts of Appeal to consider the matter have approved of the percentage method with two Circuits (the Eleventh and D.C. Circuits) requiring its use in common fund cases. *See In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305-07 (1st Cir. 1995); *In re AT&T Corp., Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *Union Assets Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012); *Rawlings v. Prudential-Bache Props. Inc.*, 9 F.3d 513, 515-17 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993).

### 3.     The Percentage Fee Requested is Reasonable and Should be Granted

In this case, Plaintiffs' Counsel seeks one-third of the Settlement Fund in attorneys' fees.

In *Goldberger*, the Second Circuit set forth the following factors for courts to consider in this

Circuit to consider when analyzing fee applications in a common fund case:

(1)      the time and labor expended by counsel;

(2)      the magnitude and complexities of the litigation;

(3)      the risk of the litigation;

(4)      the quality of representation;

(5)      the requested fee in relation to the settlement; and

(6)      public policy considerations.

209 F.3d at 50; *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).

Moreover, the "key consideration required by the PSLRA 'is the result actually achieved

for class members, a basic consideration in any case in which fees are sought on the basis of a

benefit achieved for class members.'" *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423,

438 (2d Cir. 2007) (quoting Advisory Comm. Notes to FED. R. CIV. P. 23, 2003 Amendments);

*see also* Miller Decl. at ¶23. Here, the requested fee is in line with awards typically granted in

securities class actions in this Circuit, and is particularly reasonable in light of Plaintiffs'

Counsel's clear satisfaction of the *Goldberger* factors, including the excellent results achieved.

### a.     The Time and Labor to Produce an Excellent Settlement

The recovery obtained for the Settlement Class would not have been possible without the

efforts of Plaintiffs' Counsel, who devoted more than four years and over 39,000 hours of time to

prosecuting this Action on a purely contingent basis.

As detailed in the Joint Declaration, Plaintiffs' Counsel has expended a tremendous

7

amount of effort and resources in investigating, filing, prosecuting, and resolving this Action.

*See* Joint Declaration, *passim*. These efforts included, among other things:

- identified potential claims available to purchasers of E*TRADE securities (Joint Decl. ¶12);

- conducted a substantial factual investigation, including contacts with and interviews of dozens of prospective witnesses with relevant knowledge concerning the claims asserted and a comprehensive review of publicly available information regarding E*TRADE and the events and circumstances at issue in the Action (Joint Decl. ¶¶24-26);

- reviewed tens of thousands of pages public filings, articles, analyst reports, and other documents concerning E*TRADE (Joint Decl. ¶25);

- retained and consulted extensively with experts and consultants, including experts and consultants in the fields of derivative securities, economics, finance, and accounting (Joint Decl. ¶¶4, 5, 26, 146-148, 166);

- drafted a voluminous, detailed consolidated amended complaint (Joint Decl. ¶¶36-41);

- researched and prepared a comprehensive brief in opposition that defeated Defendants' motion to dismiss (Joint Decl. ¶¶42-45);

- negotiated and/or litigated innumerable procedural and discovery disputes with Defendants and third-parties (Joint Decl. ¶¶62, 64, 65, 66, 70, 72-75, 77-78, 80, 83-89, 90, 97, 98, 101, 102, 104, 105-108, 111-115, 117-122, 125, 128-134, 136-140, 142);

- reviewed and analyzed approximately 16 million pages of internal E*TRADE and third-party documents (Joint Decl. ¶¶4, 166, 215);

- deposed the two key Individual Defendants (Joint Decl. ¶¶192-197);

- successfully negotiated the proposed Settlement over several months, under the auspices of Judge Layn Phillips (U.S.D.J. Ret.), from limited, wasting insurance proceeds, including multiple telephonic and in-person mediation sessions – and which culminated in the negotiation, drafting and execution (on May 17, 2012) of the Stipulation and related documents (Joint Decl. ¶¶143-166);

- worked closely with Plaintiffs' market and damages consultant to develop a proposed plan for allocating the Settlement Amount to the Settlement

Class (Joint Decl. ¶¶207-214);

• responded to inquiries from investors and other interested parties relating to the Settlement (Joint Decl. ¶¶172, 244); and

• prepared the papers seeking final approval of the proposed Settlement (Joint Decl. ¶2).

The significant amount of time and effort devoted to this Action by Plaintiffs' Counsel confirm that the fee request here is reasonable.[7]

Furthermore, notwithstanding the expenditure of a very large amount of time, Professor Miller has reviewed the hours and allocation of work between and among the attorneys at Plaintiffs' Counsel's firms and has opined that, for a huge financial company securities litigation of this type the time expended by Plaintiffs' Counsel was reasonable, supporting the proposition that Plaintiffs' Counsel expended their time usefully, efficiently, and with a focus on avoiding unnecessary or duplicative efforts. *See* Miller Decl. ¶¶59-64. Accordingly, the time and labor expended by counsel amply supports the requested fee.

### b.    The Complexity, Magnitude, and Risks of Litigation

The "magnitude and complexities" and the "risk of the litigation" are factors to be considered by the Court in determining the appropriateness of the requested fee. *Goldberger*, 209 F.3d at 50. There can be no dispute as to the magnitude of this Action. This litigation was complex, vigorously defended, and fraught with difficult legal and factual issues. *See* Joint Decl. ¶¶187-191, 198-206. In particular, the subject matter involved highly complex and esoteric financial instruments and economic relationships.[8] Moreover, one effect of the PSLRA has been

---

[7] The Joint Declaration also includes as exhibits the separate fee and expense declarations submitted by Plaintiffs' Counsel, which contain details concerning the amount of time expended and expenses incurred by each firm in prosecuting the Action.

[8] Courts have long recognized that securities class actions are notoriously complex and difficult to prove.

9

to make it harder for investors to bring and successfully recover in securities class actions. For example, a study of securities class actions filed after the passage of the PSLRA between 1996 through 2011, found that 32% of the cases that reached the point of a motion to dismiss were dismissed in defendants' favor.[9] Thus, just undertaking representation of a class in this type of case entails very substantial risks not faced in other types of litigation.

Here, Plaintiffs' Counsel faced and overcame not only this very real risk but additional risks specific to claims based on mortgage-backed securities and reached a substantial Settlement for the benefit of the Settlement Class. Plaintiffs encountered, and would have certainly continued to encounter, significant risks in proving falsity, scienter, loss causation, and other necessary elements to establish violations of the securities laws. In their motion to dismiss, Defendants vigorously asserted that Plaintiffs could not establish the existence of a false or materially misleading statement, scienter, or loss causation. Defendants further argued that the price declines for E*TRADE's securities were caused by economic events that began in 2007 and ultimately caused the worldwide collapse in credit markets. Moreover, Plaintiffs would have to defeat Defendants' claim that the allegations amounted to nothing more than "fraud by hindsight." While Plaintiffs and Plaintiffs' Counsel believe they had meritorious responses to these arguments, a jury might have been swayed by Defendants' arguments and find in their favor. *See* Joint Decl. ¶¶42, 185-206.

The complexity and risks of litigation are discussed at length in the Joint Declaration and Plaintiffs' accompanying memorandum in support of approval of the proposed Settlement.

---

*See, e.g.*, *Fogarazzo*, 2011 U.S. Dist. LEXIS 17747, at *10 ("securities actions are highly complex"); *Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *43 (courts have long recognized that securities class litigation is "notably difficult and notoriously uncertain") (citation omitted).

[9] *See* Securities Class Action Filings - 2011 Year in Review, at 18 (Cornerstone Research 2012), available

Suffice it to say, the obstacles to Plaintiffs' success on the merits and recovery on a judgment larger than the amount offered by the Settlement are legion. As the Second Circuit recognized in *Grinnell,* "despite the most vigorous and competent of efforts, success is never guaranteed." 495 F.2d at 471. A trial could turn on close questions of law and fact and also would involve a high degree of risk. The costs and duration of pretrial motion practice, discovery, trial preparation, and trial would likely be very substantial, and appeals could follow regardless of the outcome at trial. In sum, this litigation was complex and contained substantial risk – which is "'perhaps the foremost factor to be considered in determining' the award of appropriate attorneys' fees." *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 173 (S.D.N.Y. 2007) ("*ML Tech.*") (citing cases); *accord In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 02 MDL 1484, 2007 U.S. Dist. LEXIS 9450, at *54 (S.D.N.Y. Feb. 1, 2007) ("*ML Funds*").

Moreover, counsel's efforts were undertaken from the outset on a wholly contingent basis. "The courts of this Circuit, including this district, have expressly recognized that the contingent nature of counsel's fee, with the built-in risk of litigation, is a highly relevant factor in determining the fee to be awarded." *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663, *81 (S.D.N.Y. Nov. 26, 2002); *accord American Bank Note Holographics*, 127 F. Supp. at 430.[10] Despite the very real possibility that Plaintiffs might

---

at: www.cornerstone.com/securities_class_action_filings_2011_year_in_review.

[10] *See also Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *79 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Warner Commun's. Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("Numerous cases have recognized that the attorneys' contingent fee risk is an important factor in determining the fee award.") (citations omitted); Third Circuit Task Force on Selection of Class Counsel, 74 TEMP. L. REV. 689, 691–92 (Winter 2001) ("It is plaintiffs' counsel who work to obtain whatever recovery any member of the class who has not opted out of the litigation will receive. The fact that there will be no payment if there is no settlement or trial victory means that there is greater risk for plaintiffs' counsel in these class action cases than in cases in which an

not prevail and that counsel would receive nothing for their efforts, Plaintiffs' Counsel devoted

enormous amounts of their time and resources to press the Settlement Class members' claims. As

the Second Circuit has long recognized:

> No one expects a lawyer to give his services at bargain rates in a civil matter on
> behalf of a client who is not impecunious. No one expects a lawyer whose
> compensation is contingent upon his success to charge, when successful, as little
> as he would charge a client who in advance had agreed to pay for his services,
> regardless of success. Nor, particularly in complicated cases producing large
> recoveries, is it just to make a fee depend solely on the reasonable amount of time
> expended.

*Grinnell*, 495 F.2d at 470 (citation omitted).

Courts have recognized that the risk of non-payment in similarly complex cases is very

real and is heightened when, as here, Plaintiffs' Counsel press to achieve the very best result

possible. Indeed, there are numerous class actions in which counsel expended thousands of hours

and yet received no remuneration whatsoever despite their diligence and expertise. Even

judgments initially affirmed on appeal by an appellate panel are no assurance of a recovery. *See,*

*e.g.*, *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (after 11 years of litigation, and

following a jury verdict for plaintiffs and an affirmance by a First Circuit panel, plaintiffs' claims

were dismissed by an en banc decision and plaintiffs recovered nothing).

Similarly, even the most promising cases can be eviscerated by a sudden change in the

law after years of litigation. *See, e.g.*, *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469 (S.D.N.Y.

2010) (after completion of extensive foreign discovery, 95% of plaintiff class's damages were

eliminated by the Supreme Court's reversal of 40 years of unbroken circuit court precedent in

*Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869 (2010)). Other significant cases have been

---

hourly rate or flat fee is guaranteed. The quid pro quo for the risk, and for the delay in receiving any
compensation in the best of circumstances, is some kind of risk premium if the case is successful.")
(footnote omitted).

lost after the investment of tens of thousands of hours of attorney time and millions of dollars on expert and other litigation costs at summary judgment or after trial.[11]

Unlike counsel for the Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Plaintiffs' Counsel have not been compensated for any of their time (over 39,000 hours) with a lodestar value of over $16 million, or compensated for any of their more than $550,000 in litigation expenses incurred over the almost five years since the Action was commenced. Moreover, Plaintiffs' Counsel would not have been compensated for their time or expenses at all had they been unsuccessful in this Action. Because the fee to be awarded in this matter is entirely contingent, the only certainties from the outset were that there would be no fee without a successful result, and that a successful result, if any, could be achieved only after lengthy and difficult effort.

Taking into account the significant complexity of the issues, the magnitude and risks of the Action, and the contingent nature of the representation, the requested fee is reasonable and justified. *Accord ML Tech*, 246 F.R.D. at 172-73 ("Securities class litigation 'is notably difficult and notoriously uncertain.' . . . The Court agrees here that 'this Case is complex with difficult liability issues.'") (citations omitted); *ML Funds*, 2007 U.S. Dist. LEXIS 9450, at *47-*48 (same). Thus, the magnitude, complexity, and risks of this litigation all support approval of the request for attorneys' fees.

---

[11] *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversal of jury verdict of $81 million against accounting firm after a 19-day trial); *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994) (directed verdict after plaintiffs' presentation of its case to the jury), *aff'd sub nom. Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1995); *Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation); *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions); *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (defense verdict after four weeks of trial).

### c.      Quality of Representation

Another *Goldberger* factor is the quality of the representation. *See In re Warner*, 618 F.

Supp. at 748 ("[T]he quality of plaintiffs' counsels' work can be measured by a number of

factors, including the benefit obtained for the class . . ."). Here, the high quality of the

representation by Plaintiffs' Counsel is clearly evidenced by the recovery obtained for the

Settlement Class, which reflects a recovery of individual Settlement Class Members'

compensable damages many times larger than recoveries in similar securities class actions. *See*

*supra* at §A.3.d; *see also* Miller Decl. ¶¶24-29.

The standing, reputation, and prior experience of plaintiffs' counsel are also relevant in

determining fair compensation. *In re Union Carbide Corp. Consumer Products Bus. Sec. Litig.*,

724 F. Supp. 160, 165 (S.D.N.Y. 1989). The résumés of Plaintiffs' Counsel's firms attached as

part of Exhibits D and E to the Joint Declaration clearly demonstrate that those firms include

highly experienced practitioners in areas of complex class action and securities litigation, some

with more than 30 years of experience in the area.

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the

services rendered. *See, e.g.*, *Warner*, 618 F. Supp. at 749.[12] Plaintiffs' Counsel were faced with

formidable opposition in this litigation as E*TRADE was represented by Davis Polk &

Wardwell, one of the country's premier law firms with each of the individual defendants also

represented by major law firms – all of whom spared no effort or expense in the defense of their

clients. That Plaintiffs' Counsel was able to obtain the very substantial recovery here when faced

---

[12] *See also In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement"); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, No. 03 MDL 1529, 2006 U.S. Dist. LEXIS 84621, at *15 (S.D.N.Y. Nov. 17, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the

with such formidable opposing counsel is additional confirmation of the quality of the representation, and likewise supports the reasonableness of Plaintiffs' Counsel's fee request. *See ML Tech*, 246 F.R.D. at 174 ("The quality of opposing counsel is also important in evaluating the quality of Class Counsels' [sic] work.") (quoting *In re KeySpan Corp. Sec. Litig.*, CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist. LEXIS 29068, at *35 (S.D.N.Y. Aug. 25, 2005)).

### d.    The Requested Fee Award in Relation to the Settlement

"When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *In re Comverse Tech., Inc.*, No. 06-CV-1825 (NGG) (RER), 2010 U.S. Dist. LEXIS 63342, at *10 (E.D.N.Y. June 24, 2010) (citation omitted).

"Traditionally, courts in this Circuit and elsewhere have awarded fees in the 20%-50% range in class actions." *Warner*, 618 F. Supp. at 749 (citations omitted). The one-third percentage of the recovery fee award that Plaintiffs' Counsel requests here is consistent with attorneys' fees awarded to successful plaintiffs' counsel in other federal securities class actions in this Circuit,[13] and in other circuits.[14] *See* Miller Decl. ¶22 and Exs. B & C thereto. Moreover,

---

country' also evidences the high quality of lead counsel's work") (citation omitted).

[13] The following is a non-comprehensive list of *reported* cases in this Circuit where courts awarded attorneys' fees of one-third (33.33%) or more of the common fund recovered to plaintiffs' counsel plus expenses in federal securities law class actions. *See, e.g.*, *In re Giant Interactive Group, Inc.*, 279 F.R.D. at 166; *In re China Sunergy Sec. Litig*, No. 07 Civ. 7895, 2011 U.S. Dist. LEXIS 53007, at *18 (S.D.N.Y. May 13, 2011); *Fogarazzo*, 2011 U.S. Dist. LEXIS 17747, at *1; *Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV00409, 2011 U.S. Dist. LEXIS 7066, at *14 (D. Conn. Jan. 25, 2011); *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009); *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 94 Civ. 5587 (PKL) (RLE), 2003 U.S. Dist. LEXIS 8239, at *6 (S.D.N.Y. May 15, 2003); *Strougo*, 258 F. Supp. 2d at 262; *Maley*, 186 F. Supp. at 367-68; *In re APAC Teleservices, Inc. Sec. Litig.*, No. 97 Civ. 9145, 1999 U.S. Dist. LEXIS 17908 (S.D.N.Y. Nov. 12, 1999); *Dubin v. E.F. Hutton Group, Inc.*, 878 F. Supp. 616 (S.D.N.Y. 1995); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993).

[14] The following is a non-comprehensive list of *reported* cases in other Circuits where courts awarded attorneys' fees of one-third (33.33%) or more of the common fund recovered to plaintiffs' counsel plus expenses in federal securities law class actions. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454,

attorney fee awards of one-third or more of a common fund recovered is also consistent with attorney fee awards to successful plaintiffs' counsel in other types of class actions in this Circuit,[15] and in other circuits.[16] *See id.*

---

463 (9th Cir. 2000); *In re Interpool, Inc. Sec. Litig.,* No. 3:04-cv-00321-SRC (D.N.J. Sept. 9, 2006); *In re Ravisent Techs., Inc. Sec. Litig.*, Civ. A. No. 00-CV-1014, 2005 U.S. Dist. LEXIS 6680, at *35, 51 (E.D. Pa. Apr. 18, 2005); *In re Heritage Bond Litig*, 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627, at *61 (C.D. Cal. June 10, 2005); *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 497-98 (E.D Pa. 2003); *In re Gen. Instru. Sec. Litig.*, 209 F. Supp. 2d 423, 431-34 (E.D. Pa. 2001); *In re Olicom Sec. Litig*., Master File No. 3:94-CV-0511-D (N.D. Tex. Aug. 30, 1996) (awarding 33-1/3% of total recovery, plus expenses); *In re Pub. Serv. Co.,* No. 91-0536M, 1992 U.S. Dist. LEXIS 16326 (S.D. Cal. July 28, 1992); *In re Public Serv. Co. of New Mexico,* [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,988 (S.D. Cal. 1992); *Antonopulos v. N. Am. Thoroughbreds, Inc*., No. 87-0979G (CM), 1991 U.S. Dist. LEXIS 12579, at *8-*9 (S.D. Cal. May 6, 1991) (awarding one-third fee plus expenses in securities class action); *Malanka* v. *De Castro*, [1990-1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶95,657 (D. Mass. 1990); *Valente* v. *Pepsico, Inc.*, [1979 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,921 (D. Del. 1979) (fee and expense award equal to 38.8% of total recovery).

[15] The following is a non-comprehensive list of *reported* cases in this Circuit where courts awarded attorneys' fees of one-third (33.33%) or more of the common fund recovered to plaintiffs' counsel plus expenses in non-securities class actions. *See, e.g., Anwar v. Fairfield Greenwich Ltd.,* No. 09-CV-118 (VM), 2012 U.S. Dist. LEXIS 78929, at *11 (S.D.N.Y. June 1, 2012); *Alli v. Boston Mkt. Corp.,* No. 3:10-cv-00004-JCH, 2012 U.S. Dist. LEXIS 54695, at *9 (S.D.N.Y. Apr. 17, 2012; *Sewell v. Bovis Lend Lease LMB, Inc.,* 09 Civ. 6548 (RLE), 2012 U.S. Dist. LEXIS 53556, at *38 (S.D.N.Y. Apr. 16, 2012); *Guippone v. BH S&B Holdings, LLC*, Case No. 09 Civ. 01029 (CM), 2011 U.S. Dist. LEXIS 126026, at *38 (S.D.N.Y. Oct. 28, 2011); *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 U.S. Dist. LEXIS 105775, at *37 (S.D.N.Y. Sept. 16, 2011); *Reyes v. Altamarea Group,* No. 10-CV-6451 (RLE), 2011 U.S. Dist. LEXIS 115984, at *19 (S.D.N.Y. Aug. 16, 2011); *Hens v. ClientLogic Operating Corp.*, No. 05-CV-3815, 2010 U.S. Dist. LEXIS 139126, at *6 (W.D.N.Y. Dec. 21, 2010); *Clark v. Ecolab Inc.*, No. 07 Civ. 8623, 2010 U.S. Dist. LEXIS 47036, at*27 (S.D.N.Y. May 11, 2010); *Khait v. Whirlpool Corp*., No. 06-6381, 2010 U.S. Dist. LEXIS 4067, at *22 (E.D.N.Y. Jan. 20, 2010); *Prasker v. Asia Five Eight LLC*, 08 Civ. 5811 (MGC), 2010 U.S. Dist. LEXIS 1445, at *3, 16 (S.D.N.Y. Jan. 6, 2010); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC), 2009 U.S. Dist. LEXIS 27899, at *16 (S.D.N.Y. Mar. 31, 2009); *Stefaniak v. HSBC Bank USA, N.A*., No. 1:05-CV-720 S, 2008 U.S. Dist. LEXIS 53872 (W.D.N.Y. June 28, 2008); *Spann v. AOL Time Warner, Inc*., No. 02 Civ. 8238 (DLC), 2005 U.S. Dist. LEXIS 10848, at *24 (S.D.N.Y. June 7, 2005); *In re Med. X-Ray Film Antitrust Litig*., No. CV-93-5904, 1998 U.S. Dist. LEXIS 14888, at *20 (E.D.N.Y. Aug. 7, 1998); *Green* v. *Emersons, Ltd.,* [1987 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶93, 263 (S.D.N.Y. 1987); *Lewis* v. *Musham,* [1981 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶97,946 (S.D.N.Y. 1981); *Van Gemert* v. *Boeing Co.,* 516 F. Supp. 412 (S.D.N.Y. 1981); *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.,* 480 F. Supp. 1195 (S.D.N.Y. 1979).

[16] The following is a non-comprehensive list of *reported* cases in other Circuits where courts awarded attorneys' fees of one-third (33.33%) or more of the common fund recovered to plaintiffs' counsel plus expenses in non-securities class actions. *See, e.g., Waters v. Cooks Pest Control, Inc.,*No. 2:07-CV-00394 LSC, 2012 U.S. Dist. LEXIS 99129, at *43 (N.D. Ala. July 17, 2012)*; Temp. Servs. v. Am. Int'l Group, Inc.,* Civ. A. No. 3:08-CV-00271-JFA, 2012 U.S. Dist. LEXIS 86474, at *19, *36 (D.S.C. June 22, 2012);

16

     **e.**     **Public Policy Considerations Fully Support the Requested Fee**

The Second Circuit has also held that "public policy considerations" should be afforded

weight when determining the fee awarded to plaintiffs' counsel in class actions. *Goldberger*, 209

F.3d at 50 (citation and internal quotations omitted); *see also Flag Telecom*, 2010 U.S. Dist.

LEXIS 119702, at *83 ("[p]ublic policy concerns favor the award of reasonable attorneys' fees

in class action securities litigation); *ML Funds*, 2007 U.S. Dist. LEXIS 9450, at *69 (same).

Private lawsuits, such as this, serve to further the objective of the federal securities laws to

protect investors and consumers against fraud and other deceptive practices. *Eltman v. Grandma*

*Lee's, Inc*., No. 82 Civ. 1912, 1986 U.S. Dist. LEXIS 24902, at *25 (E.D.N.Y. May 28, 1986);

*see also Bateman Eichler*, 472 U.S. at 310 (holding that lawsuits brought by investors provide

"'a most effective weapon in the enforcement' of the securities laws and are 'a necessary

supplement to [SEC] action'") (citations omitted); *Maley*, 186 F. Supp. 2d at 373 ("In

considering an award of attorney's fees, the public policy of vigorously enforcing the federal

securities laws must be considered.").

The Second Circuit has taken into account the social and economic value of class actions

and the need to encourage counsel to undertake such litigation. *See, e.g., Alpine Pharmacy v.*

*Chas. Pfizer & Co., Inc.*, 481 F.2d 1045, 1050 (2d Cir. 1973). As a practical matter, class actions

can be maintained only if competent counsel can be obtained to prosecute them. This will occur

if courts award reasonable and adequate compensation for their services where successful results

---

*In re Schering-Plough Corp.,* No. 08-1432, 2012 U.S. Dist. LEXIS 75213, at *17-*22 (D.N.J. May 31, 2012; *Hall v. AT&T Mobility LLC*, No. 07-5325, 2010 U.S. Dist. LEXIS 109355, at *71-*72 (D.N.J. Oct. 13, 2010); *In re Ready-Mixed Concrete Antitrust Litig*., No. 1:05-CV-00979-SEB-TAB, 2010 U.S. Dist. LEXIS 85003, at 814 (S.D. Ind. Aug. 17, 2010); *Helmick v. Columbia Gas Transmission*, No. 2:07-cv-00743, 2010 U.S. Dist. LEXIS 65808, at *15 (S.D. W. Va. July 1, 2010); *Payson v. Capital One Home Loans, LLC*, No. 07-CV-2282-DWB, 2009 U.S. Dist. LEXIS 25418 (D. Kan. Mar. 26, 2009); *In re Vitamins Antitrust Litig*., No. 99-197 (TFH), 2001 U.S. Dist. LEXIS 25067, at *68 (D.D.C. July 19,

are achieved. As former Chief Judge Brieant stated in *Union Carbide*, 724 F. Supp. at 169:

> [a] large segment of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken.

Here, the Settlement was achieved despite the absence of any filed charges or claims (much less convictions or civil recoveries) by the Department of Justice, the SEC, or any other governmental agency for violations of any federal or state securities laws against any of the Defendants arising out of the events at issue in this Action. Thus, Plaintiffs' Counsel's willingness to assume the risks of this litigation resulted in the *only* recovery for the Settlement Class from the Defendants. *See In re Priceline.com, Inc. Sec. Litig.*, No. 00 Civ. 1884 (AVC), 2007 U.S. Dist. LEXIS 52538, at *17 (D. Conn. July 20, 2007) ("the award of the percentage requested here will encourage enforcement of the securities laws and support attorneys' decisions to take these types of cases on a contingent fee basis").

Indeed, for most Settlement Class Members, this class action was the only hope of obtaining compensation for the losses they suffered as a result of the allegations here, so a class action was the most efficient manner in which to prosecute the claims of Settlement Class Members. Thus, public policy favors granting Plaintiffs' Counsel's request for fees.

### 4. Plaintiffs' Counsel's Fee Request is Reasonable Under a Lodestar/Multiplier Analysis and Should Be Granted

Even where courts use the percentage-of-the-recovery methodology to award attorneys' fees, the Second Circuit has encouraged the practice of using the lodestar/multiplier approach to perform a "cross-check" on the reasonableness of the percentage awarded. *Goldberger*, 209 F.3d at 50; *ML Tech*, 246 F.R.D. at 175-76. Here, under the lodestar/multiplier approach, the

---

2001); *Antonopulos*, 1991 U.S. Dist. LEXIS 12579 , at *8-*9.

requested attorneys' fees are fair and reasonable.

The lodestar is calculated by multiplying the number of hours expended on the entire litigation by a particular attorney by his or her current hourly rate. The hourly billing rate to be applied is the hourly rate that is normally charged in the community where the counsel practices – i.e., the "market rate." *See Blum*, 465 U.S. at 895; *Hensley v. Eckerhart*, 461 U.S. 424, 447 (1983) (Brennan, J., concurring in part, dissenting in part) ("market standards should prevail"); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("[t]he 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'") (citing *Blum*, 465 U.S. at 896 n.11). In addition, the Supreme Court and other courts have held that the use of *current* rates is proper since such rates more adequately compensate for inflation and loss of use of funds. *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).[17] Here, the rates used by Plaintiffs' Counsel are commensurate with market rates that courts in this District and around the country have repeatedly found to be reasonable given the nature of such work and the risks associated with prosecuting class actions on a contingent basis. *See generally* Miller Decl. at ¶¶41-58.

The total lodestar for services here, through August 10, 2012, was $16,435,905.00. This represents 39,976.82 hours spent by attorneys and paralegals. *See* Joint Decl. ¶¶218, 227. The detailed breakdown of all such hours demonstrates that the work was distributed efficiently among partners, associates, and paraprofessionals. *See* Joint Decl. at Exs. D and E. Moreover, the amount of participation by senior personnel in this litigation was justified "because the large

---

[17] Courts in this Circuit have long approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment that is inherent in class actions, inflationary losses, and the loss of access to legal and monetary capital that could otherwise have been employed had class counsel been paid on a current basis during the pendency of the litigation. *See N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1153 (2d Cir. 1983); *Union Carbide*,

majority of the hours worked were spent on complicated tasks, such as the drafting of pleadings and motions, and conducting extensive settlement negotiations." *ML Tech.*, 246 F.R.D. at 176 (finding that "[t]here is no indication that counsel failed to delegate work, where appropriate, to more junior personnel"); *ML Funds*, 2007 U.S. Dist. LEXIS 9450, at *73-74 (same).[18]

Typically, under the lodestar method of fee computation, a multiplier is applied to the lodestar in order to compensate for the results achieved, the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other *Grinnell/Goldberger* factors. *See Goldberger*, 209 F.3d at 47 (holding that the reasonableness of the multiplier is assessed by considering the same factors as those analyzed in order to arrive at a suitable percentage attorneys' fee); *In re Global Crossing*, 225 F.R.D. 436, 467-68 (S.D.N.Y. 2004).[19]

"Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, Master File No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *56 n.7 (S.D.N.Y. 2007); *accord Wal-Mart Stores, Inc.*, 396 F.3d at 123 (finding as reasonable a lodestar multiplier of 3.5) (citing *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. Nov. 9, 1998) (holding that "multipliers

---

724 F. Supp. at 163; *Veeco*, 2007 U.S. Dist. LEXIS 85554, at *28-*29.

[18] "Nevertheless, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.

[19] *See also Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *76 ("Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."); *Comverse*, 2010 U.S. Dist. LEXIS 63342, at *14 ("Where . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar."); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 761 (S.D. Ohio 2007) ("the Court rewards [] lead counsel that takes on more risk, demonstrates superior quality, or achieves a greater settlement with a larger lodestar multiplier").

of between 3 and 4.5 have become common")).[20] Plaintiffs' Counsel's requested fee of one-third of the Settlement Fund represents a modest multiplier of only 1.6 times Plaintiffs' Counsel's aggregate lodestar. As demonstrated above, this is well within, if not well below, the range of multipliers deemed not only reasonable, but common, by the courts in the Second Circuit.

As the analysis of the *Goldberger/Grinnell* factors above demonstrates (*see* §A.3 *supra*), Plaintiffs' Counsel submit that they have produced, through the quality of their representation and their experience, an excellent result for the Settlement Class in a case fraught with significant litigation risks on a fully contingent basis against experienced and well-financed opponents. Accordingly, Plaintiffs' Counsel is entitled to a substantial multiplier of their lodestar. Given the requested attorneys' fee reflects a modest 1.6 muliplier of their lodestar, the requested one-third fee request is both fair and reasonable.

### B.   Plaintiffs' Counsel Should be Reimbursed for Expenses Reasonably Incurred in Connection with this Action

Plaintiffs' Counsel also requests reimbursement of their litigation expenses that were reasonably and necessarily incurred in the prosecution of this Action. *See* Joint Decl. ¶242. "It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advance to a class." *Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *86.

---

[20] *See also Cornwell v. Credit Suisse Grp.*, No. 08 Civ. 03758 (VM), slip op. at 4 (S.D.N.Y. July 18, 2011) (awarding fee representing a multiplier of 4.7); *Telik*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multipliers of over 4 are routinely awarded by courts, including this Court."); *In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 U.S. Dist. LEXIS 51087, at *10 (S.D.N.Y. July 16, 2007) (awarding fee representing 2.99 multiplier and finding that the multiplier "falls well within the parameters set in this district and elsewhere"); *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, at *50 (S.D.N.Y. June 2, 2004) (finding that "the average multiplier approved in common fund class actions was 4.35") (citing Stuart J. Logan, et al., *Attorney Fee Awards in Common Fund Class Actions*, 24 CLASS ACTION REPORTS 167 (2003)); *In re Interpublic Secs.*, CIV 6527, 2004 U.S. Dist. LEXIS 21429, at *34 (S.D.N.Y. Oct. 26, 2004) (approving fee award representing multiplier of 3.96); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to 4.65 multiplier and holding that such was "well within the range awarded by courts in this Circuit and courts throughout the country"); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) (finding multipliers of 3 to 4.5 to be common);

Indeed, in this District, "[c]ourts routinely grant the expense requests of class counsel." *In re Gilat Satellite Networks, Ltd*., No. CV-02-1510 (CPS)(SMG), 2007 U.S. Dist. LEXIS 68964, at *60 (S.D.N.Y. Sept. 18, 2007) (quotations omitted).

Moreover, "[g]ranting requests for expenses is consonant with the public policy underlying fee awards in common fund cases." *Key-Span Corp. Sec. Litig*., 2005 U.S. Dist. LEXIS 29068, at *59. "Since counsel in a class action will necessarily incur substantial costs and expenses over the course of many years and will presumably have paid the expenses by the time a fee request is considered by the Court, providing for reimbursements of costs and expenses is a component of affording adequate compensation to counsel in order to encourage attorneys to pursue common fund cases." *Id*.; *see also In re China Sunergy Sec. Litig*., 2011 U.S. Dist. LEXIS 53007, at *17 (in a class action, attorneys may be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'" (citation omitted)); *ML Tech*, 246 F.R.D. at 178 ("Counsel is entitled to reimbursement from the common fund for reasonable litigation expenses") (citing cases); *ML Funds*, 2007 U.S. Dist. LEXIS 9450, at *78-*79 (accord); *In re Independent Energy Holdings PLC Sec. Litig*., 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients.") (internal quotation marks omitted); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients") (citation omitted).

As detailed in the Joint Declaration, Plaintiffs' Counsel incurred a total of $554,950.23 in

---

*Roberts v. Texaco, Inc*., 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (5.5 multiplier).

litigation expenses on behalf of the Settlement Class from the inception of the Action through August 10, 2012. Joint Decl. ¶240; *see also* individual declarations submitted on behalf of each Plaintiffs' Counsel's firm attached to the Joint Declaration as Exhibits D and E.

Reimbursement of these expenses is fair and reasonable. The expenses for which Plaintiffs' Counsel seek reimbursement are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour.[21] These expenses include, among others, the costs of experts and consultants, online legal and factual research, developing and maintaining the electronic discovery platform that counsel used to search, review, and analyze the 16 million pages of documents produced from the Defendants and others during the course of the Action, court fees, travel expenses, copying costs, facsimile charges, court reporting services, postage and delivery expenses, and Judge Phillips's mediation fees. Joint Decl. ¶¶238-242. The foregoing expense items are billed separately, and such charges are not duplicated in the respective firms' billing rates.

The Notice advised that Plaintiffs' Counsel would be seeking reimbursement of litigation expenses in an amount not to exceed $750,000, to be paid from the Settlement Amount. Although the actual request is almost one-third less than projected in the Notices, to date, no objections have been received regarding the maximum expense figure set forth therein.

In sum, Plaintiffs' Counsel respectfully submit that the expenses sought here ($554,950.23) were all reasonably and necessarily incurred, are of the type customarily reimbursed in securities cases, and should be approved.

---

[21] *See, e.g.*, *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys [and] [f]or this reason, they are properly chargeable to the Settlement fund." (citation omitted)).

## IV.     CONCLUSION

The recovery of $79 million under the proposed Settlement represents an excellent result achieved in a risky case in the face of determined adverse parties. Accordingly, for all of the reasons set forth herein and in the Joint Declaration, Plaintiffs' Counsel respectfully submit that the requested fee is fair and reasonable and request that the Court award attorneys' fees equal to one-third of the Settlement Fund, and their litigation expenses in the amount of $554,950.23, together with interest thereon at the same rate as earned on the Settlement Fund until paid.

Dated: August 10, 2012

**BROWER PIVEN**
  **A PROFESSIONAL CORPORATION**

*/s/ David A.P. Brower*
David A.P. Brower
Brian C. Kerr
488 Madison Avenue, 8th Floor
New York, NY 10022
T: (212) 501-9000
F: (212) 501-0300

***Lead Counsel for Plaintiffs***

**LEVI & KORSINSKY, LLP**
Eduard Korsinsky
Shannon L. Hopkins
30 Broad Street, 15th Floor
New York, NY 10004
T: (212) 363-7500
F: (212) 363-7171

***Co-Lead Counsel for Plaintiffs***

24

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2012, I served true and correct copies of the foregoing Memorandum of Law in Support of Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses on Defendants' counsel by causing copies to be sent by the ECF system and by electronic mail to:

Dennis Glazer
Amelia T.R. Starr
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017

*David A.P. Brower*
David A.P. Brower

25