UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LARRY FREUDENBERG, Individually and On Behalf
of All Others Similarly Situated

      Plaintiff,

    -against-

E*TRADE FINANCIAL CORPORATION,
MITCHELL H. CAPLAN, ROBERT J. SIMMONS
and DENNIS E. WEBB

      Defendants

Civil Action No.

07 Civ. 8538 (JPO) (MHD)

**OBJECTION OF LEON I. BEHAR
TO MOTIONS FOR FINAL APPROVAL
OF THE PROPOSED SETTLEMENT AND ATTORNEY'S FEES AND
REQUEST TO ATTEND SETTLEMENT HEARING AND ADDRESS THE COURT**

**LEON I. BEHAR, P.C.**
Leon I. Behar
Daniel Kuznicki
347 Fifth Avenue, Suite 1506
New York, New York 10016
T: 212-242-0500
F: 212-242-0518

*Counsel for Leon I. Behar*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| **I.** | Introduction……………………………………………………………………….…………3 | |
| **II.** | Objector Leon I. Behar is a Class Member………………………………………….…….7 | |
| **III.** | Objector's Request to Attend Settlement Hearing and Address the Court…………....…7 | |
| **IV.** | Proposed Distribution is Inconsistent with the Settlement; The Motions for the Proposed Settlement and Attorney's Fees Should be Denied ………………………………………7 | |
| **V.** | The Settlement Violates Fed. R. Civ. Proc. 23(g)(4); The Settlement Serves the Interests of Class Counsel and Not the Class……………………………………...…9 | |
| **VI.** | Conclusion ……………………………………………………………………….………...13 | |

## I. INTRODUCTION

This Objection on behalf of Leon I. Behar, a class member, is intended as a vehement protest to Class Counsel's patently self-serving Motions for Approval of the Proposed Settlement and Request for Attorney's Fees.

Class action settlements, unlike typical settlements, require court approval for the protection of those class members whose rights may not have been given due regard by the negotiating parties. Pursuant to Fed. R. Civ. Proc. 23, the appointed class counsel and class representatives must fairly and adequately represent the interests of the class. As guardian of absent class members, the Court cannot approve the settlement without independently evaluating the evidence and finding that the settlement is fair, reasonable and adequate to all concerned. Fed. R. Civ. P. 23(e).

However, as is evident from an analysis of the relevant materials, and in particular Counsel's Memoranda and Declarations in support of its motions, Class Counsel are primarily interested in securing a substantial and immediate recovery for themselves at the expense of any significant recovery for the Class.

During the Class Period, April 19, 2006 to November 9, 2007, Defendant E*Trade made numerous materially false and misleading statements and at least four curative disclosures. *See* Declaration of John C. Hammerslough, Doc. #138-3, ¶25, "Hammerslough Decl." annexed as Exhibit C to the Joint Declaration of David A.P. Brower and Eduard Korsinsky in Support of Plaintiffs' Motions, Doc. #138.

According to Hammerslough, Plaintiffs' Expert on market impact, materiality, and damages, the relevant curative disclosures and the estimated damages that resulted from the curative disclosures were as follows:

3

1. On July 25, 2007 the Company announced quarterly results. It also revealed that mortgages had been procured by E*TRADE from National City. The full extent of problems at National City was probably unknown at the time. The stock declined from $20.46 to $19.05, or $1.41. The iShares declined approximately 2.8 percent. Therefore the adjusted decline from this disclosure is estimated to be approximately $0.84 per share. Based on my experience and judgment, I believe that allocating 20 percent of that decline to curative information in the July 25 disclosure is appropriate. Thus, I estimate **damages related to this disclosure to be approximately $0.17 per share**. (Hammerslough Decl. ¶26)

2. On August 13, 2007, the market reacted to external comment critical of E*TRADE from The Wall Street Journal (published on Saturday August 11, 2007) and Citigroup (published on Sunday August 12, 2007). The stock declined from $17.01 to $16.09, or $0.92 per share. The iShares were down 1.3 percent. The adjusted decline from this disclosure is therefore $0.70 per share. Moreover, because the information was based on analysts and journalist analysis in external sources, which are generally considered less reliable than company disclosures in press releases or public filings. Further, an allocation between (a) new, timely revealed information contained in the August 11 and 12 disclosures and information corrective of prior misstatements, and (b) factual and opinion information in the August 11 and 12 disclosures as only factual information can be curative. Based on my experience and judgment, I estimate that of the 5.4 percent decline in response to the August 11 and 12 disclosures, approximately 50 percent of that decline can be attributed to curative information in those disclosures. Thus, I estimate **damages related to these disclosures to be approximately $0.35 per share**. (Hammerslough Decl. ¶27)

3. On October 18, 2007, the market reacted to E*TRADE's after-market announcement on October 17 of the Company's third quarter results. They were unexpectedly bad and most of the negative surprise came from write downs of mortgages. The E*TRADE's stock price declined from $12.47 to $11.47, or $1.00 per share. The iShares were down 0.8 percent. Therefore, the adjusted decline is $.90 per share. Once again, it is reasonable to assume that some of the decline was due to random market action and that a portion of the decline was due to recent, timely disclosed new events such as downgrades by rating agencies. Further, much of the information disclosed on October 17 confirmed the loan loss provisions and securities impairments that E*TRADE had previously forecast on September 17, which resulted in an increase in E*TRADE's share price. Based on my experience and judgment, I believe that approximately 25 percent of the decline on October 18 was attributable to curative information in the October 17 disclosure. Thus I estimate **damages related to this disclosure to be approximately $0.22 per share**. (Hammerslough Decl. ¶28)

4. On November 12, 2007 (which was the first trading day after E*TRADE's after-market disclosure on November 9), the market price of E*TRADE shares reacted

4

to the Company's disclosures regarding the impact of recent downgrades of its asset backed securities. The stock price declined from $8.59 to $3.55, or $5.04 per share. iShares were down 1.7 percent so the adjusted decline is $4.89 per share. The disclosure on November 9 was, in part, the result of well-publicized, worsening industry- wide problems that had occurred during E*TRADE's third fiscal quarter, which required E*TRADE to take additional, unforeseen write-downs for that period and to withdraw its guidance. Therefore, a portion of the November 12 decline was attributable to outside forces that occurred during the third quarter and could not be actionable. Further, the November 9 disclosure addressed items that had only arisen after the close of the third quarter - items about which E*TRADE had made no previous statements - and therefore could not be deemed corrective of any prior misstatement. Moreover, a significant amount of the information in the November 9 disclosures that related to issues which are the subject of allegations in Plaintiffs' Complaint had already been addressed or warned of in E*TRADE's September 17 and October 17 disclosures, and merely provided additional detail regarding subjects, trends and risk about which the market was already aware. Based on my experience and judgment, I estimate that approximately 75 percent of the decline on November 12 was attributable to previously disclosed risks and post-second quarter further deterioration of the condition of E*TRADE's portfolio, which would not be actionable, and approximately 25 percent to new corrective information regarding the Company's mortgage backed securities impacting its then current and prospective financial condition and investment quality which would be recoverable. Therefore, I estimate **damages related to this disclosure to be approximately $1.22 per share**. (Hammerslough Decl. ¶29)

The damages caused by Defendants are approximated to be $1.96 per share ($0.17 + $0.35 + $0.22 + $1.22).

According to Class Counsel, the proposed settlement, which would create a fund in the amount of $79,000,000.00, would provide the Settlement Class with an average recovery of approximately $0.145 per share. (Section I of the Notice of Proposed Settlement of Class Action, hereinafter the "Settlement Proposal".)  After deducting costs, expenses and the requested Attorney's Fees, the average recovery for the Settlement Class will be approximately $.096 per share.

Despite the fact that there were four discreet curative disclosures, each of which resulted in damages significantly greater than the expected average recovery of approximately $0.145 per

5

share, Class Counsel has negotiated with Defendants for a settlement which will repay approximately 85% of the $0.17 per share loss which resulted from the July 25, 2007 disclosure alone, while seemingly ignoring the remaining loss of $1.82 per share which resulted from the three other curative disclosures. **At a net of $.096 per share, the class members will recover less than 5% of the total approximated damages caused by Defendants.**

The proposed settlement is egregious. Defendants engaged in deplorable conduct which perpetrated a substantial injury on the Class. Yet, the only true, would be, beneficiaries of the proposed settlement are Defendants and Class Counsel.

For every $100,000.00 in damages sustained by the class, the settlement will provide a recovery of less than $7,400.00. After deducting the proposed attorney's fees, the figure will be reduced to a recovery of less than $5,000.00 for every $100,000.00 in damages sustained by the class. After suffering the greed of Defendants, the Class should not be forced to contend with the greed of Class Counsel.

The proposed Attorney's Fee of approximately $26,333,333.33 is chutzpa. The fee that class counsel is seeking is ludicrous in light of the paltry relief the class is contemplated to receive. Consideration of fee petitions submitted by counsel representing a plaintiff class requires the utmost judicial scrutiny and discretion. It is at this stage that counsel for the class is transformed from the champion of the class to a competing claimant against the fund intended to recompense the wrong suffered by the class. REPORT OF THE THIRD CIRCUIT TASK FORCE, Court Awarded Attorney Fees, 108 F.R.D. 237, 251 (Oct. 8, 1985) (hereinafter "Task Force Report").

## II. OBJECTOR LEON I. BEHAR IS A CLASS MEMBER

Leon I. Behar is a member of the Settlement Class (the "Class Member"). Annexed hereto as "Exhibit A", is a true and accurate list delineating the Class Member's relevant purchases and sales of E*Trade securities. Pursuant to section XIV of the Notice of Proposed Settlement of Class Action relative to this matter, Exhibit A includes the dates of the Class Members purchases and sales of E*Trade securities during the Settlement Class Period, the number of shares purchased and/or sold on each such date, and the prices paid and/or received for all such shares on each such date, including the relevant trading loss.

## III. OBJECTOR'S REQUEST TO ATTEND SETTLEMENT HEARING AND ADDRESS THE COURT

PLEASE TAKE NOTICE that class member Leon I. Behar (hereinafter "Objector"), by and through their undersigned counsel, intend to appear and be heard at the fairness hearing and hereby request permission from the Court to attend the settlement hearing and address the court.

## IV. THE PROPOSED DISTRIBUTION IS INCONSISTENT WITH THE SETTLEMENT; THE MOTIONS FOR THE PROPOSED SETTLEMENT AND ATTORNEY'S FEES SHOULD BE DENIED

According to Class Counsel,

"Based on the analysis of Plaintiffs' damages consultant, if approved, the $79 million recovery represents an estimated recovery of 14.1 percent of the amount of individual Settlement Class Members' most likely recoverable damages at trial assuming complete success on all issues of liability and damages and a 100% claims rate." Joint Declaration of Brower and Korsinsky in Support of Plaintiff's Motions, ¶160, hereinafter the "Joint Decl. in Support".

Class Counsel relies extensively on the Declaration of John C. Hammerslough. Mr.

Hammerslough has been qualified as an expert relating to issues involving market impact, materiality, and/or damages, and has been involved in hundreds of matters similar to the one at hand. In fact, the Plan of Allocation was developed with assistance from Mr. Hammerslough. Joint Decl. in Support, ¶10.

According to Class Counsel and Hammerslough, after adjusting aggregate compensable damages by an expected claims rate of 80.4%, the expected recovery provided by the settlement will be approximately 17.6% of Settlement Class Members' compensable damages. However, for some troubling but unidentified reason, the numbers do not add up.

According to Class Counsel and Hammerslough, the total compensable damages caused by Defendants are approximately $1.96 per share. Hammerslough Decl. ¶30. **If the Settlement were actually 17.6% of the Class Members' compensable damages, then the approximate average recovery per share should be $.345 ($1.96/.176). Yet, in the Settlement Proposal, Class Counsel states that the $79,000,000.00 settlement will provide an average recovery of approximately $0.145 per share**.

Stated another way, owners of approximately 229,300,000 shares, 80.4% of the estimated damaged shares, will file claims. Hammerslough Decl. ¶30. If the proposed settlement provides an average of approximately $.145 per share, then the total amount distributed pursuant to the proposed settlement will be $33,248,500.00 (229,300,000 x $.145). For some reason the proposal would fail to distribute over $45,000,000.00 of the settlement fund, more than 60%!!! This paltry distribution is before we even consider the devastating impact of attorney's fees on the net distribution.

When we factor in the proposed attorney's fees of 33.33% the net distribution is expected to be $.096 per share on average. At an average recovery of $.096 per share, **the expected**

**settlement distribution will be approximately $22,012,800.00 and the class members will recover less than 5% of the total approximated damages caused by Defendants.** Accordingly, **the Settlement Class would receive less than 28% of the $79,000,000.00**.

Even more alarming, the proposed Attorney's Fee requested by Class Counsel is approximately $26,333,333.33. Joint Decl. in Support, ¶11. Accordingly, **Class Counsel is requesting a fee of approximately 120% of the expected settlement distribution.**

Whatever reason is ultimately proffered for these alarming (mis)calculations, Class Counsel's proposed settlement emerges highly suspect and demands exacting scrutiny prior to obtaining approval.

### V. THE SETTLEMENT VIOLATES FED. R. CIV. PROC. 23(G)(4); THE SETTLEMENT SERVES THE INTERESTS OF CLASS COUNSEL AND NOT THE CLASS

Pursuant to Fed. R. Civ. Proc. Rule 23(G)(4), "Class counsel must fairly and adequately represent the interests of the class." Upon reviewing the relevant materials that bear on this matter, it is clear that the proposed settlement will only benefit the Class Counsel and Defendants.

Plaintiffs have been damaged by Defendants in an amount that exceeds five hundred million dollars. Objector has personally lost over $600,000.00 in E*Trade securities during the Class Period. Regardless of the exact figure which would comprise the actual compensable damages, Class Counsel is claiming that the Class is obtaining a "substantial recovery" even though, on average, the class members will receive less than 5% of the total approximated damages caused by Defendants.

9

Considering the magnitude of the damages and nominal recovery, the only rational choice for the Class would be to reject the proposed settlement. The Class stands to recover over twenty times (20x) more money if it fully litigates this matter. (Even relying on Class Counsel's highly distorted figures, which allege that the settlement provides a recovery of approximately 14.1% of Plaintiffs' compensable damages, the Class stands to recover over 600% more money by rejecting the proposed settlement.)

Class Counsel claims that the proposed settlement is an achievement. In light of the "substantial and immediate financial benefit" of the Settlement, they elected to accept the proposed settlement. There are numerous references to the "substantial and immediate recovery" throughout Plaintiff's Counsels papers in support of its Motions. Class Counsel argue that:

> In addition to the factual and legal obstacles to success on the merits was the certainty that further litigation would require the expenditure of enormous amounts of time and expense to complete merits and expert discovery, litigate pretrial motions, try the case and succeed on the ultimate appellate proceedings that would have followed the trial no matter what the verdict might have been. Weighed against these risks was the achievement of a $79 million cash settlement that assures damaged Settlement Class Members will receive a significant recovery in the immediate future without the risks of non-recovery posed by continued litigation. Joint Decl. in Support, ¶7.

What Class Counsel means to say is as follows, "we are currently eligible for an attorney's fee award of $26,333,333.33. Although we have only obtained a settlement that provides a minimal fraction of Plaintiffs' compensable damages, we no longer wish to litigate this matter and have it drag on for years. The anticipated work load and time frame, in light of the possible upside for us, fails to pique our interest. Plaintiffs may be giving up 95% of their compensable damages, but we aren't losing anything. In fact, we stand to make millions!!!"

To further support their charade, Class Counsel highlights Defendants' arguments as contained in Defendants' depositions. According to Class Counsel, "[t]he results of those depositions demonstrate the difficulty Plaintiffs potentially faced in demonstrating Defendants'

10

scienter here."

Class Counsel conducted the depositions of Defendants, two key E*Trade officers, on January 30, 2012, nearly six weeks after the Parties reached an agreement on the amount of the proposed Settlement and negotiated the terms of a memorandum of understanding. Joint Decl. in Support, ¶¶ 159 & 162. In light of the prospect of a substantial and immediate attorney's fee conditioned upon consummating the proposed settlement, Class Counsel had an obvious conflict of interest when conducting the depositions. The setup was simple. Highlight and emphasize Defendants defensive position and thereby expedite the settlement and Class Counsel's payout.

Even Class Counsel's characterizations of the depositions are disingenuous. For illustration purposes only, and unfortunately not limitation, Class Counsel highlights that Defendant Caplan "testified that he did not provide any instruction in deciding what specific loans to purchase, and that he spoke infrequently with [Defendant] Webb about the specific entities that were selling E*TRADE the loans". Joint Decl. in Support, ¶192. Did Class Counsel expect Defendant Caplan to specifically select the loans E*Trade purchased? Does any officer of any financial entity select specific loans?

The entire description of the depositions, contained in paragraphs 192 to 197 in the Joint Declaration, is incredulous. Class Counsel attempts to demonstrate that Defendants lacked the requisite scienter by suggesting that their actions were not intended to hurt E*Trade. What is glaringly overlooked is how Defendants obviously intended to deceive their shareholders.

In summarizing its assessment of the potential risks Plaintiffs face in establishing damages, Class Counsel provided strongest argument for rejecting the proposed settlement. According to Class Counsel, "Plaintiffs believe it is likely Defendants would have argued that all of the drops in E*TRADE's share prices, **except the November drop**, were no more than normal

11

fluctuations in price". Joint Decl. in Support, ¶200. Of the four curative statements that resulted in significant price drops which form the basis for damages in this action, the November 12, 2007 drop (the "November Drop") was by far the most significant. The November Drop was the result of the curative disclosure that occurred on November 9, 2007. (Hammerslough Decl. ¶29) According to Class Counsel's expert, the compensable damages related to that disclosure are approximately $1.22 per share, 1.5 times greater than the three other compensable price drops combined (July 25, 2007 , $0.17 + August 13, 2007 , $0.35 + October 18, 2007, $0.22 = **$.72 compared to $1.22**). Hammerslough Decl. ¶¶26-30.

     Despite the acknowledgment that Defendants cannot explain away the $1.22 per share damages that resulted from the November curative disclosure, Class Counsel is seeking approval of a proposed settlement that will compensate Plaintiffs less than 12% of the compensable damages that resulted from the November Drop.

## VI. CONCLUSION

For the foregoing reasons, Objector respectfully requests that the Court deny the motions for approval of the proposed settlement and proposed attorney's fees. If the Court does approve the settlement, the fee request should be reduced to a nominal amount to reflect the minimal and nominal benefit conferred by Class Counsel.

Objector hereby reserves the right to amend and refine its objections as more information is made available.

We declare under penalty of perjury that the foregoing is true and correct to the best of our knowledge and information and belief

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/S/) within this efiled document.

Respectfully submitted,

New York, New York
September 10, 2012

**LEON I. BEHAR, P.C.**

By: /s/ Daniel Kuznicki
Daniel Kuznicki
Leon I. Behar

*Counsel for Leon I. Behar*

13