Chris Andrews

23610 Hazen Road

Southfield MI 48033-2507

Phone 1-248-635-3810

Email caaloa at gmail.com

September 05, 2012


United States District Court

Southern District of New York

Clerk of the Court

500 Pearl Street

New York, New York 10007


RE: Larry Freudenberg, Plaintiff

Against

E*Trade Financial Corporation,

Mitchell H. Caplan, Robert J. Simmons,

And Dennis E. Webb  Defendants

Civil action 07-Civ. 8538 (JPO) (MHD)

Objection To Proposed Settlement and

Intent To Appear at Hearing

Oct. 11, 2012 Time 3:00 p.m.

Judge J. Paul Oetken's Courtroom



1

**Table of Contents**

Introduction.................................................................. 6

Points of concern and failures which give this class member cause to pause.........10

Summary of case involving the defendants..........................................10

Errors In Pleadings, Missing Count, Error in Prayer For Relief Causing Low

Settlement Amount ..............................................................13

Slam Dunk Fraud and Insider Trading Evidence .........................................22

What about the Auditor?............................................................ 27

Expert's fake maximum damages recoverable by the class at trial claim detailed. 28

Insurance policies in this settlement, who, what, when, where why and how......... 32

$559 Million "Trojan Horse" Settlement.............................................37

E*Trade's "Trojan Horse" Token Contribution...................................... 41

More Questions ...................................................................34

The Glaring Omission In Counsels' Joint Declaration.....................................48

Unclaimed funds...................................................................56

Time Billing Issues ...............................................................56

Expense's Gone Wild ..............................................................60

Case Law and Rule 23.............................................................70

The Court Has A Fiduciary Duty to The Unrepresented Members of The Class....72

Public Policy Reasons Mean That The Court Should Not Infer Settlement Approval

From A Low Number Of Objectors....................................................74

Deny motion to certify or suggested attorney fee.........................................76

**Objector Fee Award Request Under New York State's Law**............................77

**OBJECTOR ADDED VALUE TO THE SETTLEMENT**.......................….... 83

**CONCLUSION**.................................................................…...........82

## Table of Authorities

### Cases

Lobatz, 222 F.3d at 1147....................................................................... 7

Dura Pharmaceutical, Inc. v Broudo 544 U.S. 336 (2005).................................. 36

*Bluetooth Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)...................................64,71

Hill v Western Electric Co., 672 F. 2d 381, 388 (4th Cir) cert denied), 459 U.S. 981, 103
S. Ct. 318, 74 L.Ed 2d 294 (1982................................................................67

Haywood v Barnes, 109 F.R.D. 568, 579 (EDNC (1986)....................................67

Mercury Interactive Corp., 618 F. 3rd 988, 994-95 (9th Cir. 2010) ......................68,69

Washington Pub. Power Supply Systems Lit. 19 F. 3d 1291, 1302 (9th Cir 1994)).
.....68,69

Mercury Interactive Corp., 618 F. 3rd 988, 994-95 (9th Cir. 2010) .......................68,69

Relafen Antitrust Litigation, 360 F. Supp.2d 166, 192-94 (D.Mass. 2005), ..............69

Amchem Prods., Inc v Windsor, 521 U.S. 591, 617, 623 (1997) (Rule 239e).............69

Reynolds v. Beneficial Nat't Bank, 288 F. 3d 277, 279-80 (7th Cir. 2002)..............69

General Motors Corp, Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55F. 3d 768, 785 (3d
Cir. 1995)...................................................................................69,73

Grunin v International House of Pancakes, 513 f. 2d 114, 123 (8th Cir.1975))............69

True v American Honda co. 749 F. Supp. 2nd 1052, 1080 (C.D.Cal. 2010)...........70,71

Hanlon v. Chrysler Corp., 150F. 3d 1011, 1021 (9ᵗʰ Cir. 1998);............................71

Torrisi v Tucson Elec. Co. 8 F. 3d 1370, 1376 (9ᵗʰ Cir 1993)................................71

Grovev Principal Mut. Life Ins. Co., 200 F.R.D. 434, 447 (S.D. Iowa 2001)........ 72,73

Duhaine v. John Hancock Mut. Life Ins. Co., 2 F.Supp.2d 175 (D.Mass. 1998...............76

Fleming v. Barnwell Nursing Home and Health Facilities, Inc., 15 N.Y.3d 375 (2010),....76

*Bowling v. Pfizer*, 922 F. Supp. 1261, 1285 (S.D. Ohio 1996.............................. 80

*White v. Auerbach*, 500 F.2d 822, 828 (2d Cir.1974)................................................80

*MetLifeDemutua/ization Litigation*, 689 F.Supp.2d 297 (E.D.N.Y., 2010),...................80

*Park v. ThomsonCorp.*, 633 F.Supp.2d 8, 11 (S.D.N.Y.2009)...................................80

*Howes v.Atkins*, 668 F. Supp. 1021, 1027 (E.D.Ky.1987)..................................... 80

*City of Detroit v. Grinnell Corp.*, 495 F.2d at 463.........................................67


Statutes, Rules and Misc.

23, 4 paragraph 2.................................................................... 4

Fed. R. Civ. Proc. 23(a) (4).........................................................9, 75

"The Art of War" by Sun Tzu.......................................................... 5

Rule 23....................................................................................8

Rule 11 ...............................................................................38

Rule 23(a)(4) and 23(g) .............................................................77

$ 20A, of the Exchange Act .......................................................13-19

21(d) of the Exchange Act...........................................................18

Rule 10b-5, Rule ...................................................................18

Rule 14e-3..........................................................................18

Exchange Act Section 14(e)......................................................... 18

10Q filed on 08/03/12.................................................................. 30-33

CAFA Requirements.................................................................... 63

Newberg on Class actions $ 11:42 (4th ed 2009)). Accord American Law Institute,

Principles of the Law of Aggregate Litig. $3.05 © (2010) (Ali Principles")............70

Rule 23e.3 ...................................................................................72

Thedore Eisenberg & Empericial Issues, 57 VAND .L. Rev. 1529, 1532 (2004)........73

Report of the Third Circuit Task Force, Court Awarded attorney Fees, 108 F.R. D. 237,

266 (1985....72

The 2003 Committee Note to Rule 23(h).....................................................80

Actual objection is 87 pages with an additional 70 pages consisting of 7 attachments
which includes; two pages confirming class membership, a forty three page NERA
Economic Consulting report, a eleven page CAFA Notice Requirements for Class Action
Settlements, a five page snapshot of E*Trade's Form 10-K dated 2-23-12, a four page
stipulation re: Lehman Debt/Equity litigation, two page financial key highlights of
E*Trade via Yahoo as of 8-31-12 and a three page article from The Daily
Report/National Law Journal, dated 08-12-12, titled "Judge Slashes Fees in Bluetooth
Case."

Total pages in this submission 157

1. Objector Chris Andrews was a purchaser of E*Trade common stock during the class
period, see attached proof. I therefore have standing to object to the settlement. At this
time I intend to appear at the fairness hearing on October 11, 2012. I request the right to
speak to the court and cross examine any witnesses who speak or testify in support of

settlement approval. I also request the right to perform discovery (if needed) on certain issues that are described below in this objection per rule 23, 4 paragraph 2.

I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto. The attorneys and class representatives have breached their duty under Fed. R. Civ. Proc. 23(a) (4) in bringing a class action and negotiating a class action settlement that benefits the attorneys at the expense of the class, the class should not be certified.

### Introduction

I am not an attorney but have performed legal consulting work for law firms for the past five years and I bill just like, but for substantially less than them per hour. This is my fourth objection filed in a class action suit during this time frame. I am not a professional objector but I am a serial truth seeker/confirmer and do not like to be defrauded or see anyone else defrauded. I sent Mr. Kerr who is one of the attorneys in this case an e-mail asking him to send to this objector via e-mail and next day air, counsels' official response to any objections received by them in this case, which they can file with the court days before the fairness hearing. I am also sending him an e-mail the day this objection is mailed to notify me by e-mail and phone immediately if the hearing is rescheduled. A proposed settlement should never, ever include putting the law firms' fee in front of the class' best interests as this objector believes occurred in this case based on the evidence. But it's worth the risk since the chances of being caught are slim. As Sun Tzu wrote 2500 years ago in "The Art of War" "All warfare is based on deception." This case and proposed settlement is an example of that truth and needs to be corrected and defeated.

Because the class itself typically lacks the motivation, knowledge, skill, desire and resources to protect its own interests, the judge has to do it all for them since class counsel and defense counsel can easily construct a settlement and decide to put their own selfish interests ahead of the class, exactly like what happened in this case and how front running is defined by the Securities and Exchange Commission. A district court must act as a "fiduciary for the class," "with a jealous regard" for the rights and interests of absent class members. This can be a difficult for one person to accomplish especially against an army of lawyers who can construct a settlement in such a way as to lead the court down a predetermined path to a predetermined result that they all want the court to buy into.Sometimes the court will not realize this is or has ever occurred. The main goal in this case is the humongous undeserved fee in return for the release and elimination of a multi-billion liability that has been intentionally and unethically understated for settlement purposes.

This objector believes that this is a collusive, self dealing fund settlement arrangement with possible conflicts of interest's between plaintiffs, named plaintiffs and defense counsel which is contrary to the class's best interests and is not apparent on its face. Counsels' on both sides have attempted to falsely trick the class and the court so they can both force through this rigged settlement. This cheats the class members out of their fair damage recovery while awarding our counsels' with an Inca's treasure for releasing defendants from a multi-billion liability. Fortunately I will be able to show a way out of this "Trojan Horse" settlement counsels' have constructed. The requirements of Rule 23(a)(4) and 23(g) have not been met in this case so counsel's are inadequate which will become evident by the end of this objection based on what they have not done and what

they have attempted to do. The Rules of Professional Conduct may have gone out the window here.

It is fortunate for this class that this objector has the attributes described two paragraphs above so this objector will play devil's advocate for the court and attempt to make the court's job easier by bringing to the court's attention valuable and useful information along with observations and insights that would not otherwise be considered. The judge in this case is like King Solomon and I will be like the aide who whispered into the king's ear before he made the famous baby decision. In this case I will actually try and get counsels' $17/26.5 million outrageous fee and expense demand cut in two and the savings put back into the common constructive fund for distribution to the entire class based on the points, observations, facts, statements, evidence and arguments in this objection. I will provide a clearer understanding of this entire proposed settlement and why it should not be approved as is. The lawyers cannot pass go and cannot pocket a huge fee for an insulting joke of a settlement. Defense counsel will also not be allowed to walk away from a multi-billion exposure for two cents on the dollar in this slam dunk case that plaintiffs counsels' have been sitting on for three years now resulting in this puny "pocket change" proposed settlement. I am alleging that my objection will always meet the requirements of Article III standing under a "constructive common fund theory." See Lobatz, 222 F.3d at 1147

Contrary to counsels' claim and it's paid so called "experts" that the proposed settlement is an "excellent recovery", " significant recovery" and "outstanding settlement" , it is in fact an "extremely low quality," "lousy," and "pitifully low, curb high settlement" that

they have put lipstick on. It's still an ugly farm animal of a settlement when all is said and done. The only beneficiaries of this litigation are the class attorneys, who have breached their fiduciary duty by putting their interests ahead of those of their putative class members. Counsels' have hijacked this case for their own benefit by selling out the class for the gargantuan fee first and nominal class damages second in violation of Rule 23. Based on all the evidence I have reviewed in the 386 pages of this settlement submission, reviewing the original 26 page complaint, the 195 page amended complaint, counsels 125 page submission objecting to defense counsels' motion to dismiss, Judge Sweet's 90 page opinion, a large number of documents on the docket, participating in three objections in the past five years, reviewing twenty class action settlements, objections filed, court decisions approving and not approving settlements, appeals filed and ruled on, reading through a few fairness hearing transcripts, (one ran 500 plus full pages) reviewing papers and studies published by those who do this research for a living, (two of those documents are included in this objection) along with my extensive knowledge of how this system is supposed to work, this settlement is:

NOT fair to the class members,

NOT reasonable in relation to the merits of the class claims, and

NOT adequate to redress the huge injuries suffered, period.

These lawyers should be hanging their heads in collective shame at such lousy lawyering by attempting to gouge the class on the fee (33% in this day and age and for this result) and recouping such a small amount compared to the actual damages suffered by the class. I will prove my position in the following pages and hope the court agrees with all or most of it. Grab a cup of your favorite drink and sit back for an interesting read of how I see

this case as an outsider who knows how the game is played looking in, not by those who may be in their own self entitlement, over inflated ego and false bravado bubble looking out. I have left space after the questions that need answers for the court to write notes in all parties should be bring this document to the fairness hearing, there's a lot of missing material information here to go over.

It is up to counsels' to prove the settlement should be approved as fair, reasonable and adequate as described above, not for me to disprove it; there is a huge gigantic difference. But I will prove it anyway, because I can.

**Points of concern and failure which give this class member cause to pause.**

This proposed self serving settlement suffers from multiple material concerns and failures and needs to be rejected, revised and/or have the fees and expenses reduced to bring it more in line for what it really is. It's a quid pro quo, a collusive, self dealing settlement for a gold mine size attorney fee in return for limiting defendants out of pocket damages to "subway change" for them. All the attorneys on both sides win in this self dealing from the bottom of the deck deal, and the class has to be sacrificed, like the Inca's used to do to some of their captives at the altar. Counsels' are not entitled to a Santa Claus windfall in an outrageous fee trade for a release of defendants' huge multi-billion dollar exposure to be wiped clean forever. Counsels' on both sides have the knowledge, means, motive and opportunity to construct such a settlement and have done so in this case.

### Summary of case involving the defendants

Here is the summary of the case as this objector sees it in a one and a half page nut shell which counsels' have already shown they can prove based on their evidence when the amended complaint was filed in 1-09, almost three and one half years ago. It seems a lot

easier to read then the hundreds of pages repeatedly pled in different motions and the joint declaration. Here goes.

Defendants intentionally failed to publicly disclose and take timely write downs as required by SEC rules and regulations. They purchased questionable loans, took more excessive risks then their internal models called for and also intentionally failed to reserve enough to cover losses and disclose them when they were required to. Defendants knew issues were banging on the door for many months until it was way past the point a reasonable person would say, "Houston, we have a problem". In the amended complaint it is stated that defendant Webb held off for months from disclosing to the marketplace and taking the write downs and impairments everyone high up at E*trade knew should taken and disclosed which was known in whole, in parts and mentioned by their over one dozen confidential witnesses to class counsels.' They tried to hold the stock price up as long as possible to benefit themselves.

The defendants tried to put as much time between their stock sales and disclosure of the bad news as possible. The defendants had an ethical, moral and legal obligation to disclose the truth when they became aware of it. They were desperate to figure out a way out of the greedy mess they got themselves into so they delayed disclosing the truth. What we also have here is a deleayed disclosure draud.  The entire issue was the result of defendants bringing in as much revenue as possible, (even if it was poor quality) and even though it was contrary to what they were saying verbally and in writing to the market place. Heck they even refused to give back bad loans to keep a lucrative relationship going that put huge amounts of revenue on the books and therefore tens of

millions in their pockets in compensation and who can blame them, right? E*trade only reviewed 1% of purchased loans, turning a blind eye so they can't be blamed later. They intentionally generated revenues which eventually doubled under the trio's rule which was the reason for purchasing this huge volume of loans with quality of the loans a distant last place which in turn triggered enormous sums of undeserved compensation. FICO scores were not the 740 average claimed in writing and verbally to the marketplace on purchased loans but rather 620 right above a sub prime loan. There were not enough employees to properly vet the new purchased mortgages and the defendants chose not to test their portfolio's values based on what was occurring throughout the market. The information counsels' gleaned for correspondence between the Securities and Exchange Commission (SEC) and E*Trade confirms everything in the amended complaint. The rest of the market knew that 30, 60, 90+ days late notices on mortgages and with foreclosures growing in mass throughout the country on a real time daily basis and home values were dropping all over as a result when the foreclosure notices started arriving in the mailboxes. Everyone's mortgage portfolios values were being affected negatively, except for E*trade's, or so they falsely claimed until if all came crashing down over a three and a half month period..

Now let's take a look at numerous flaws in the settlement. There are more unexplained holes and questions in this settlement than on a golf course which have not been explained to the class and court in counsels' 386 pages of settlement briefs and motions. I object to the plan of allocation.

The plan of allocation is unfair as to the calculation of Recognized Loss for E*trade common stock and option class members when they purchased and sold their holdings.

Why should purchase and/or sales taxes, commissions and other transactions costs be excluded for reimbursement?

If defendants had been honest and "done the right thing" at the time they were supposed to this class member and numerous other class members would NOT have purchased the shares in question and not have incurred any of the above costs. Now counsel rules these fees are not reimbursable for this disclosure fraud?  Transactions cost should be included which will help class members reduce their actual damages.  Reduce counsels' lodestar by half and add in transaction and commissions so all are reimbursable. Like that counsel?

Why should the total recovery payable to authorized claimants from transactions in call or put options not expect to receive more than 5% of the amount distributed to all authorized claimants?

How was this number arrived at? Is this same "expert" who came up with the laughable $559 million maximum class damages recoverable at trial the class could recover?


**Errors In Pleadings, Missing Count, Error in Prayer For Relief causing low settlement recovery**

Counsels' made errors in one of the two count's (50% of the complaint), negligently forgot to add a related count and also made errors in their prayer for relief. By screwing this up counsel lost leverage in negotiations and proposed settlement costing the class a lot in recoverable damages in this settlement that are left on the table and even more damages in front of a jury. Defense counsel must have been laughing at how second rate these guys were and how cheap this case was to going to be to settle. If you can't get the

13

original complaint right and then the amended complaint right you are not going to get a
fair settlement for the class because defendants' counsel will take advantage and bully
our counsels' into submission and into a puny settlement like what occurred in this case.
We know who wore the pants in this settlement. But first defense counsel dragged it out
to make great money then pled poverty as to E*trade itself and in a wink and nod to class
counsels' settled for two cents on the dollar. Our counsel sits there looking dumb and
doing nothing. Great job defense counsel! This proposed settlement is no where near a
fair settlement to the class. It's done only because of the huge fee when all is said and
done.

Counsel pleads in its amended complaint a violation of Section 20A but they did not do it
properly so it may be moot leading defense counsel to think our counsels' are in way over
their heads so the settlement will come cheap for them. First, some legal requirements to
plead that count properly;

First, to state a cause of action under $ 20A, a plaintiff must first allege an independent,
predicate violation of the Exchange Act of 1934, or rules and regulations therewith. This
violation must involve trading while in possession of material, nonpublic information.
Second, the plaintiff must establish statutory standing through a "contemporaneous" sale
or purchase of a security. The security must be of the "same class" as that sold or
purchased by the inside trader. Further, the plaintiff's transaction must be on "the
opposite side of the market from the inside of the trader." Being an incident of fraud, the
complaint must also be pled with particularity pursuant to Rule 9(b). Further, the $20A

plaintiff must file his or her complaint within five years "after the date of the last transaction that is the subject of the violation." Finally, upon receiving a favorable verdict, damages are limited to profits gained or losses avoided, and are otherwise offset by recovery under other provisions of the Exchange Act.

Here is counsels' count:

COUNT II

**(For Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

383. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

384. The Individual Defendants acted as controlling persons of E*TRADE within the meaning of Section 20(a) of the Exchange Act and are liable thereunder. As senior officers and/or directors of E*TRADE, high-level executives of the Company, "hands on" supervisors, decision-makers and participants in E*TRADE's operations, and owners of E*TRADE stock, the Individual Defendants had the power and authority to influence and control and did influence and control E*TRADE to engage in the wrongful conduct complained of herein.

385. As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of

the Company's securities during the Class Period.

Here is how it should have been done by to make it correct but theirs is damaged and moot so it doesn't matter now, costing the class lots of money in the settlement.

## Count II Rewritten

### Violations Of Section 20(a) Of The Exchange Act Against The Insider Defendants

Plaintiffs repeat and reallege each and every allegation contained above as if set forth fully herein, except for those allegations disclaiming any attempt to allege fraud, and further allege as follows.

This claim is asserted against the Insider Defendants on behalf of Plaintiffs and other members of the class who purchased or otherwise acquired E*trade stock and calls options and/or who sold put options during the Class Period and were damaged thereby. The Insider Defendants were and acted as controlling persons of E*trade within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions with the Company, participation in and awareness of the Company's operation, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, the Insider Defendants had the power to influence and control and did influence and control directly and indirectly, the decision making of the Company, including the content and dissemination of the various statements, which Plaintiffs contend are false and misleading. Each of the Insider Defendants was provided with or had unlimited real time access to copies of the Company's reports, press releases public filings and other statements alleged by Plaintiffs to the misleading prior to and/or shortly after these statements were issued and had the

ability to prevent the issuance of the false statements and material omission or cause such misleading statements as omissions to be corrected.

Plaintiffs repeat and reallege each of the allegations set forth above as if fully set forth herein.

As set forth above, the Insider Defendants and E*trade itself each violated Section 10(b) and Rule 1ob-5 by their acts and omissions as alleged in this Complaint. Due to their controlling positions over E*trade the Insider Defendants are each liable pursuant to Section 20(a) of the Exchange Act having culpably participated in the fraud. As a direct and proximate result of the Insider Defendants' wrongful actions, Plaintiffs and other members of the Class suffered damages in connection with their purchases or acquisitions of the Company's common stock and call options an/or of put options.


Much better and could have shown the opponents you are capable and will put up a fight since the first impression of counsel is how well the complaint is pleaded and in this case the amended complaint. Did defense counsel played you guys like Johnny played the fiddle in the show down in "The Devil Went Down to Georgia." They figured like this objector that first impressions can make all the difference between success and failure and how a situation will unfold. In this case the pitifully low settlement amount is the result. But fortunately defendant E*trade is not bankrupt or even close to it and the solution to this deal lies with them as we will soon see because they will make up for our counsels' bumbling negligent and intentional harmful actions to the class in this case, if they want a settlement.

Here is a count they did not add on to the amended complaint providing defense counsel huge clues that our counsels' are incompetent and defense counsel should be able to settle for a lot less then the case is really worth when they so choose. Counsels' did not plead the following count and should have. Showing "Contemporaneous" sales is a requirement to make this count valid.

**Missing count added in**

**Violation Of Section 20A Of The Exchange Act Against Defendant Caplan and Simmons**

This count is brought pursuant to Section 20A of the Exchange Act against Defendants Caplan and Simmons on behalf of all members of the Class damaged by Defendants Caplan and Simmons insider trading.

As detailed herein, Defendants Caplan and Simmons were in possession of material, non-public information concerning E*trade to obtain huge sums in insider trading profits during the class period.

Defendants Caplan and Simmons  sales of E*trade securities was made contemporaneously with Plaintiffs and Class members' purchases of Etrade common stock during the Class Period.

04-23-07 defendant Simmons sold 25,000 shares at an average price of $21.65 (which were given to him at $3.80 for a total profit of $446,000.) On 5-4-07 Plaintiff Farah bought 5000 shares at $22.65, overpaying for his purchase by $1.00 a share multiplied by 5000 shares equals a $5000 fraud and loss.

On 5-25-07 Defendant Caplan sold 14,902 shares at $22.64. On 5-31-07 Plaintiff

Straxton   purchased 100,000 shares @ $23.98 overpaying for their purchase by $1.34 a

share multiplied by 100,000 shares equals $134,000.00 fraud and loss.

All members of the Class who purchased shares of Etrade common stock

contemporaneously with sales by Defendants' Caplan and Simmons have suffered

damages because: (1) in reliance on the integrity of the market, they paid artificially

inflated prices as a result of the violations of Section 10b and 20(a) of the Exchange Act

as alleged herein: and (2) they would not have purchased the securities at the prices they

paid, or at all, if they had been made aware that the market prices had been artificially

inflated and kept artificially inflated by defendants intentional delayed disclosure of the

truth of it's mortgage portfolio and by false and misleading disclosure statements alleged

herein. Plaintiffs and other members of the Class suffered damages in connection with

their purchases or acquisitions of the Company's stock and call options and/or sale of put

options.

Well counsel since you have proven to the class and defendants you are sloppy and

incompetent, defendants used that knowledge against you and the class in the settlement

process so the class gets a puny settlement as a result.  You have thereby added to the

losses of the class. Plaintiffs counsels' demand $16 million and demand another $10

million bonus for a total of $26 million for this? Are they high on meth? Counsel needs to

kick in $10 million of their lodestar based on this hideous work  as a penalty to the class,

oops, liquidated damages to the class.

Also under Section 21(d) of the Exchange Act:

Private plaintiffs can also pursue actions against a violator under an implied right of

action under Rule 10b-5, Rule 14e-3, or Exchange Act Section 14(e). The limitations on recovery imposed by Section 20A with respect to actions by "contemporaneous traders" (e.g., setoff for any monies disgorged pursuant to an SEC action) would not be applicable to these implied private actions. Did counsels' plead 14(e)? That's what I thought, no.

Counsels' are unfit and do not deserve the lodestar and multiple they are demanding. Obviously when you have up to 232,000 class members adding on their own purchases to show contemporaneous trade share purchases that the class overpaid for, it's a lot of money both these two specific defendants are on the hook for. Unfortunately counsel screwed up this part of the complaint and the class pays for it with a miniscule settlement. If I were the judge I would give counsels' 10% of the settlement to start with and that amount will erode as we go further on through this objection.

Counsel also screwed up on the prayer for relief, nothing like being sloppy and negligent with other people's rights, claims and damages, an amateurish first year law student error. Defense counsel has to have had a good laugh in this case, all the way to the bank. Defense counsel is the party that deserves a bonus in this case, not our counsels.'Here is what counsels' wrote in their "Prayer For Relief"

**WHEREFORE, Plaintiffs pray for relief and judgment, as follows:**

A. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure

B. Awarding compensatory damages in favor of Plaintiffs and the other Class

members against all Defendants, jointly and severally, for all damages sustained as a

result of Defendants' wrongdoing, in an amount to be proven at trial, including interest

thereon;

C. Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in

this action, including counsel fees and expert fees; and

D. Such other and further relief as the Court deems just and proper.


Below is how it should have been done to make it better and more professional and thus

increasing bargaining power during settlement discussions. Negotiations should have

started at a higher rate then the miniscule $79 million final figure that was eventually

settled for in this "subway token" settlement. Why not have added a R.I.C.O. wire fraud

and mail fraud counts to the complaint be used as leverage, counsels'?


**Prayer For Relief: Rewritten**

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, pray for

judgment as follows;

(a) Declaring this action to be a class action pursuant to Fed. R. Cir. P. 23(a) and (b)(3):

(b) Awarding Plaintiffs and other members of the Class damages in an amount which

may be proven at trial, together with interest thereon:

(c) Awarding Plaintiffs and the members of the Class pre-judgment and post-judgment

interest, as well as their reasonable attorneys' and expert witness' fees and other costs;

(d) Ordering defendant Caplan and Simmons to disgorge the profits of their insider

sales of E*trade common stock during the Class Period;

(e)   Awarding Plaintiffs and the members of the Class recession and/or recissory damages; and

(f)   Such other relief as this Court deems appropriate.

Which one seems better and more professional, factually and procedurally correct? By doing this sloppily our counsels' are assisting, telegraphing and sending a message to defendants and their counsel that they will put in the minimum and wait foe a settlement they know will arrive you day. In their prayer for relief the class is ultimately entitled to fewer damages from defendants. By not pleading it properly the first time is an error, by not pleading it a second time it's another error and shows incompetence which the defendants used against the class resulting in this pitiful settlement. Maybe counsel should file a third amended complaint to fix it all? What a joke of a pleading and proposed settlement. Counsels are inadequate, should be dismissed, sanctions doled out, their lodestar cut in two at a minimum and/or the case not approved for settlement since it does satisfy Rule 23 and due process. Is counsel this bad or is there collusion going on here between plaintiffs and defendants' counsel with the low settlement amount the end result? Either way the class got screwed on the settlement amount. Counsels'are guilty as charged.

### Slam Dunk Evidence and Insider Trading Evidence Abounds

The overwhelming, slam dunk material evidence can all be found in the amended complaint and in counsels' actual possession. Below is actual evidence out of the amended complaint actually proving the allegations of fraud, delayed disclosure fraud and insider trading violations. With all the evidence the question is why settle class damages  for two cents on the dollar, literally? Their colossal fee.

"In early December 2006 defendant Caplan told Etrade employees "confidentially" at a quarterly internal meeting on the 16th floor of the company's Arlington Virginia offices that the company was "experiencing losses and expecting more losses in 2007". The meeting was attended by defendants Caplan, Simmons,  and Webb, along with the COO Lilien and other company employees  ) including CW-14 and CW-16) in the lunch area known as the "garage."  Defendant Caplan was asked about Etrades profitability and responded that he "shouldn't be telling you this, and this was strictly confidential" but he " expected  profits to be down and expected profits to be down through next year." (CW-14 and CW-16)

Defendant Caplan's was telling the opposite to the class members and market place over the following nine months. His false proclamations to the market place raised questions and were not being believed by some analysts and reporters who were starting to write stories that questioned how Etrade could not be exposed to mortgages gone bad in their portfolios yet the defendants continued to deny any issues causing purchasers like me to buy the stock on August 17, 2007. Had this same information been disclosed sooner to the public from say December 2006 forward, as defendants became aware of it and had they bothered to properly test their holdings on a real time current asset value basis, the stock would have dropped dramatically (58%) like it finally did in November 9, 2007 when the entire truth was fully disclosed like what should have been hinted at to the marketplace at the least by defendants months earlier.

Defendants did a great job putting off disclosing the material market moving truth and news for as long as they did while selling their own stock for a higher price and putting enough distance between their stock sales and the eventual plunge so insider trading was not evident unless you can connect all the dots like counsel attempted to properly do in their amended complaint and failed. This objector is forced to do it for them at this lates stage of the game. .

It's the only thing defendants did right in this whole $6 billion class damage debacle. Some in the class sold but many did not until they were underwater on their investments because a majority chose to ignore the analysts, market experts and financial writers that ultimately proved 100% accurate and instead believed the defendants lies. One named plaintiff lost 90% of her investment because she chose to believe the crap the defendants were spewing and not the non believers who were raising questions. Using my actual reality based evidence,  counsel has settled for just 2% of the  maximum recoverable damages at trial, far from "excellent recovery." I say 2% is a poor third world settlement wouldn't you?  Who would settle a claim for only 2% in a case like this with all the evidence they have?  You would have to be a moron or paid off.

Now we move ahead to mid-August 2007 and the insider trading issues as to how they relate to the defendants liability. Counsels' amended complaint says:

99. By approximately mid-August 2007, at an internal "town hall" meeting for E*TRADE employees led by defendant Caplan, defendant Caplan acknowledged that E*TRADE was overexposed in the sub prime market, and was waiting for a "white knight" to rescue the Company. When asked what he meant by "white knight," defendant

Caplan explained that the Company was looking for an investor to "get them out of the mortgage mess." (CW11, CW13) (That defendants intentionally got themselves into.)

Since this again is material non public information twice now (12-06 and O8-07) that has now been disclosed to E*trade employees (but not the market or class) any employee knowing this information, including the defendants, are now prohibited from selling or shorting their own stock. This same information should have been disclosed to the market immediately but was fraudulently not divulged. The now victimized class members who purchased securities after 12-06 and continuing through Nov 2007 got stuck with huge losses while certain employees had the opportunity to sell their shares and avoid a loss, or limit their losses if they so chose and we do know that some of named defendants did sell their securities in mass starting in December 2006 don't we? Others insiders sold after that in mass also. Even if some defendants had a selling plan in effect at the time, they had a legal obligation to suspend it themselves especially when withholding the information from the marketplace was done intentionally. Did counsel attempt to find out who in that meeting sold or shorted Etrade stock during the class period besides the named defendants? That's what I thought, no. Where is a list of names counsel for me to compare to the sales and names listed in the SEC filings? There is a list of other high level insiders who sold in the SEC filings during the entire class period, right? They are right there for all to see on Yahoo under SEC filings. Why did so many high and low level insiders sell on one specific day counsel? Did they also have that material non-public information and act on it? That same opportunity to obtain that material, non public insider information was not give to the class members in December 2006 forward

to act on and who invested in hundreds of millions of shares that were purchased during the class period especially from December 2006 forward at artificially inflated prices. Plaintiff Caplan at the minimum is liable for any avoided losses those many employees who may have sold their shares and/or shorted their own stock by trading on that information in violation of federal laws while they were all in possession of that valuable information. Well counsel any explanation for another screw-up?  What is this three or four major error's so far?

Has E*trade filed a suit to claw back those illegal profits and if not why not counsel? Did counsel ever ask, suggest or demand that E*trade do this to show they also are holding the defendants accountable for their destructive actions against class members since E*trade fired all of them in the "Great E*Trade Massacre?" Didn't think so, everyone is in CYA mode with counsels' on both sides writing the script. So E*trade does nothing and neither does counsel, bit of a quid pro quo going on here all for the same reason. Since our counsel was negligent, we (the class) lose that opportunity to hold the individuals accountable by recouping those sales profits from the defendants and to increase leverage in negotiations to try and force all the defendants including Etrade to ante up more then the atom size settlement contributions in relation to the maximum class damages.  Is this now a fatally flawed settlement costing the class potentially hundreds of million in damages left on the table by negligent counsel? The defendants get off scot-free and counsel wants $17/$26 million for this? What? Where is the punch line? Wake me up from this malpractice dream I see.  How can any court in this country or world for

that matter say this is a settlement worthy of approval and extinguishing class member's rights?

## What about the Auditor?

What if any investigation was performed to ascertain the culpability of claims against the auditor in this matter?

What audit firm issued the audit opinion and is there a possible colorable claim?

What did the auditors know and when did they know it?

I have not seen any evidence of the auditor having its work reviewed by counsel. The evidence in the amended complaint shows the auditors should have seen the problems as soon as the insider defendants did in December 2006 and every week thereafter on a real time basis based on what was going on in the real estate market, this objector did. Did they turn a blind eye to what was going?

I see nothing in writing in counsels' papers that indicates any thing was done to vet their possible blind eye involvement in this case.  Well counsel?

### Expert's fake, maximum damages recoverable by the class at trial claim detailed

Pivotal to the success of this rigged settlement is the intentionally rigged understatement of damages to the class. In December 2006 forward to July 2007 the stock was around $22 a share. On July 22, 2007 ETrade disclosed a bit of bad news indicating to the market that maybe their "super duper high FICO mortgage portfolio (my translation of defendants false statements) may not all be valid because some of their loans were purchased from a questionable partner who was known for being involved in low quality loans.  That small bit of the truth spooked the market and thus began the stock price slide

over the next three and a half months with analyst reports and media articles now starting

to rightfully question how everything could be right within E*trade mortgage business.

They discounted the defendants gravity defying, only firm on Wall Street that had no

exposure to bad mortgage loans proclamations. Defendants should and could have but

chose not to disclosed much more information at that time, like the all the information

they disclosed on 11-12-07 they knew existed already based on all the evidence in this

case. If the defendants had chosen to disclose all the information at one time on July 22,

2007 instead of dripping it out slowly that stock drop of 58% that occurred on November

12, 2007 would have occurred on July 22, 2007 when the price was at $22 a share.

Defendants knew this information was accumulating starting in December 2006 forward.

Take $22 a share multiplied by a 58% drop and you have a one day damage wipeout to

the class of $12.76 a share. 310 million damaged shares (according to the damage expert)

multiplied by $12.76 and you have $3.9 billion in maximum class damages attributable to

this fraud under Dura, not the $559 million in maximum recoverable damages at trial

puffery that counsels' expert claims it is. A market cap loss of almost $4 billion. Who in

their right mind would have purchased or held on to this stock from 12-06 forward had

they been aware of the information defendants were in possession of, disclosed to

employees only and finally disclosed in full in November 2007? No one. The stock was

artificially being kept up unrealistically high because of the lack of full disclosure by this

specific company and its actions, not "market forces." This was a company specific lack

of proper disclosure issue. But wait, this is not the maximum damages recoverable at trial

it's even higher than $4 billion.

The price drop drip over the next three and a half months that defendant knew was coming down many months earlier like a tsunami wave started back in December 2006 was now becoming visible but defendants delayed reporting the honest truth. From July 25, 2007 to November 12-2007 the stock dropped from $22 to $3.55 an $18.00 a share price drop (a 82% plunge.) This was due to E*Trade's own company issues and the cloud hanging over this one firm because the market suspected something was amiss making more class members nervous causing them to sell more stock then was being purchased due to the occasional hard to believe denials from the defendants. This false mirage created by defendants could no longer be hidden in full, similar to holes in a dam starting to opening up. Take that $18 a share multiplied by the 355 million damaged shares (the expert says are eligible for reimbursement not the total 450 million shares outstanding) equals a loss of $6.3 billion dollars under Dura, the true maximum possible damage and liability exposure at trial that defendants would be on the hook for. The "expert" would have the class and court falsely believe that out of the $18 a share price drop, only $1.85 of it was due to the allegations in the second amended complaint! What? 310 million shares multiplied by that fabricated $1.85 "expert" damage estimate is the $559 million maximum damage exposure that the class can recover at trial according to the "expert." Is the expert high on crack?  The invalid $559 million figure was chosen so the 14% figure makes the settlement look "excellent" and "significant" and that is why this settlement should be approved, clever. What a joke. So the "expert" and counsels' would have the court believe that only $559 million of the $6.0 billion had anything to do with this fraud and delayed disclosure fraud and all the evidence in the amended complaint? Come on man! Somebody call a cop! An absolutely epic deliberate misleading opinion if

there ever was one. But wait, there is more. On 11-12-07 the stock suffered it worst one day drop as a result of the news finally being released in full with a 58% one day swan dive. The "expert" does not even admit that on that date when the stock dropped $5.00 a share (multiplied by 310 million shares equals a $1.5 billion market cap class damage loss) was a result of the bad E*trade specific news being disclosed to the market. Rather the expert claims that "market forces" "random market action" "already disclosed news" were to blame so only $1.22 out of the $5.00 drop to class damages (document 138-3) is real class damages! What a con. The maximum class damages are a fraction (10) of what they actually are.  I could find a seventh grader that could come up with a more realistic damage estimate.

This objector can't get over this attempted purchased con figure and has been stunned, truly stunned at the stuipidness of the claim. If the "expert" had lost the entire $400,000 in his nest egg and was a class member he would not be making this opinion. What is so laughable about the "expert's" opinion is that he is only attributing $1.82 of the $18.00 stock price drop (90%) over the last three and a half month period to "market forces" "random market action" and "already disclosed news" not the admitted and intentionally delayed disclosure fraud itself! I am speechless. The "expert" and counsels' must think the readers of their papers all have two digit IQ's to believe this. Count me out of that group. This is the most truly awful, intentionally flawed, misleading, utterly twisted attempted pseudo logic,  babble explanation line of bull crap I have ever read in my life. Counsel paid $45,000 for a 16 page piece of junk to help defraud the class and get this

settlement approved. Did the defendants pay half for of the "expert's" fee too? Good
question needs an answer.

The class in no way should be on the hook for this $45,000 invoice by this so called
"expert." Counsel and the expert should eat this invoice live at the hearing! Great job of
intentionally understating class damages for a $26 million payday counsels', almost. Isn't
there something in the rules about doing something like this in the Rules of Professional
Conduct? Hmmm.


Now for the coup de grace:

The "expert" is falsely claiming that these step down stock price drops and resulting
damage losses and one final plunge over a three and a half month period from July 27,
2007 to 11-13-07 were all due in large part to the market and external factors so only
$559 million in damages ($1.85 ) of the $18.00 a share price drop is applicable under
Dura. So 90% of the $16.15 share price damage drop is "market forces" "random market
action" "already disclosed news?" Someone is smoking something. This is exactly the
same failed argument that the defendants claimed in their funny warped sense of twisted,
logic argument motion to dismiss in front of Judge Sweet! (Sounds like the "expert" used
to work for the defendants.) Judge Sweet ruled against that same false claim by the
defendants that market forces were to blame and now that ruling three YEARS later also
slaps down that very same claim that the expert makes today on behalf of the class and
our counsels!! 'Great job Judge Sweet! Who is conning who here counsel? I should send
this objection to the U.S Attorney Office, NY AG's Office and the NY Bar asking for a
fraud investigations. Maybe I will, I will consider it.

The true maximum class damages at trial is the $18.00 a share price drop multiplied by 310 million shares is $6.0 billion, give or take a few hundred million not the bogus $559 million figure. This step down drop was the result of the truth coming out in drips not like a sudden dam break. This is proof the "expert" damage estimate is intentionally undervalued by at least a few billion, which make the 14% moot. The "experts" 16 page paper is worth zero and the class should not have to pay his $45,000 badly drawn up biased submission. Logically speaking and using common sense who's estimate looks closer to the truth and more rational based on all the proof counsels' have in their possession, this objector's or theirs? Obviously the answer is clear.  Game, set, match.

### Insurance policies in this settlement.

Counsel mentioned in their papers of a wasting insurance asset that is being utilized in this settlement. We, the class and court need some material, important questions answered. The court is also required counsels', to be appraised of all the material facts in this proposed settlement such as:

Since the class period spans more than a calendar year there may be multiple insurance policies in play here, for example:

What kind of policies are they? Are they D&O, E&O, a combination etc.?

Who is covered by these policies?

How many policies are there?

How many layers are there in each policy?

What layer did not want to settle as you claim and why?

What are the dates of coverage?

How much was the amount of coverage to start with?

32

How much was left when the proposed settlement was reached?

Did counsel vet all the possible policies or assume something they should not have?

Where is a declaration from the mediator attesting to his involvement and his finding in this poorly put together proposed settlement? Was he not paid enough to justify even a declaration?

Why are there all these unanswered questions and missing and vague information in counsels' settlement papers not disclosing to the class this material and important information before the hearing for the entire class to review and maybe object to?

It's a bit late at the fairness hearing for the entire truth to be coming out when the entire class has not seen this information and can't comment on it, counsels'.

What was the carrier's position and was it a package deal or no deal to settle with both Etrade and the individual defendants?

For example why not settle with Etrade only and pursue the individual defendants for damages since they are the primary bad actors that caused these billions of dollars of damages debacle to begin with? Questions, questions and more simple questions not addressed in counsels' 386 pages of settlement and $16/$26 million fee papers. This doesn't look good counsel and I see the $16 million fee melting away like "Frosty the Snow Man" in fifty degree weather.

Is counsel hoping no one will ask basic questions like this? What is to be scared of, the truth?  Maybe there would have been more objectors had these issues been disclosed, maybe even better objections then this one.

Of the $69 million (out of the $79 million total) that the carrier(s) is kicking in what percentage is being applied towards the defendant Etrade and what percentage is applied towards the individual defendants and is the percentage higher among some of the defendants?

Are the carriers all chipping equally or is it on a percentage basis?

How much is left over after the settlement was agreed to? (left on the table)

If the carrier was going to settle with most of the cash on behalf of defendant Caplan say $65 million, maybe the settlement amount is not so good because the other individual defendants are bad actors guys in this fraud and delayed disclosure and omission fraud case and maybe they should have settled for a lot more on their behalf's. Maybe the balance of $4 million on behalf of the remaining named defendants is not enough, so the settlement amount should maybe be much greater for them than it woefully is. If the carriers put in $69 million because that is all they can legally put in maybe the damages are much greater so the defendants should kick in an equal amount to make a much fairer settlement. How about issuing some stock or warrants to fund the settlement? Not the criminal kind, but that would be a bonus!

### More questions

When was defendant Etrade given a copy of this false $559 million estimate?

Was the real estimated amount in the multi-billion range ever given to defendants to respond to?

Are there are the dated copies when this was drawn up and submitted to defense counsel?

The expert states in his biased paper that he was initially retained in 2007 yet his date on the paper is signed on August 9 2012.

34

There are no other papers this "expert" prepared before then?

Where are they and are they available for inspection?

Maybe counsel would have gotten the insurance carriers and E*trades attention a lot sooner say one, two or three years ago with a lot higher realistic damage settlement not the crumbs now offered in relation to the total class damages of billions that I arrive at using a simple real world observation. No, that would make to much sense. See how smart they all are when working together now that there is $26 million big ones on the table and a multi billion liability is being wiped clean for just 2%? Here is an analogy of what counsels', the "experts" and defense counsels' have done to the class in this case.

Our counsels' are like the poachers who get themselves hired as the zookeeper's that lets his co-conspirators in after dark to hunt and gut the caged animals and than claims the poachers slipped something into their drinks that knocked them out for twelve hours. They then retire to a tropical island with the cash from their friends. Counsels' realize the time value of money. They "wants ours now" money mentality is not fair to the class's recovery in relation to the damages incurred

Why didn't counsel use a mediator to come up with an unbiased fee percentage instead of trying to purchase the answer they wanted to get the lottery size fee approved through trickery on the class and court which puts the most cash in their pocket at the expense of the class?

That's because any legitimate mediator would laugh these guys right out of his office, especially if he could read this objection first that shows the multiple failures, dropped

balls, holes in it and "Grand Canyon" wide issues unresolved that this objector has pointed out. This proposed settlement is like the Three Stooges skit of "Who's on Second" fame, really.

Where are some of the bad actors today who caused this debacle you ask?

Mr. Caplan just led the buyout by a private group and now is the CEO of Jefferson National.

Mr. Simmons is the CEO and EVP of Campus Pipeline Inc.

Does this sound like they are both broke and can't afford a dime? It appears counsels' have screwed up once again, number seven now?

Why weren't the COO and GC named in the suit and what steps did counsel take to access their culpability in this fraud along with investigating whether there was also evidence of insider trading amongst them? Maybe you could have gotten one of them to flip?

Incredibly as it seems there appear to be no declarations from any of the named plaintiffs that they approve of this proposed settlement or even motion to approve this deal, why? Where are the declarations from the named plaintiffs as representatives of the class that they are satisfied and agree with counsels' motion to approve this weak $79 million settlement, and letting the named defendants off the hook without paying a dime? Are they aware that defendant E8Trade Financial Corp. had over $2.0 billion in cash and equivalents when they proposed this contribution of $10 million? Something is not right here.

Have any of the plaintiffs refused to approve of this settlement?

Are the plaintiffs still around?

Have they quit?

Gone to live in a commune?

Counsels' should give each of them a copy of this objection for their evaluation.

What is to hide in this "excellent", "significant" and "outstanding" settlement?

Have the named plaintiffs reviewed the billings on a regular basis?

What direction did plaintiffs provide to the counsels when prosecuting this case?

Did the plaintiffs lookout for the classes' best interests throughout this litigation?

Apparently named plaintiffs did not protect the interests of the class based on this

pitifully low settlement and unanswered questions above.


Why wasn't a deposition of defendant Simmons taken?

This might have shed more light on this case, maybe some big surprises might have been

discovered which may have allowed for a bigger recovery then the paltry sum we have

now. But counsel screwed up once again and the class pays for it with this atom size

settlement. What is with counsels' not doing their job adequately, reasonably and fairly

and wanting to be paid a diamond mine worth of fees for nothing?

Will any person or entity receive any "kicker" based on the outcome of this settlement?


Did any counsel agree to any fee limit with any named plaintiff?


**"$559 Million Trojan Horse Settlement."**

This is a false "$559 Million Trojan Horse settlement."  Counsel has a "slam dunk" case here which includes "smoking gun" admissions and acknowledgements confirmed and drawn out of Etrade by the SEC inquiries and investigation that allowed counsel to file the amended complaint and very easily survived a weak and feeble attempt at a motion to dismiss. Yet our counsels' seem to be the prey and not the predator, they appear to have caved in intentionally in this collusive settlement. This is no where near the best they can do for the class, for themselves yes, class no. It seems like our counsel threw this case in the end like a boxer takes a dive in the ring. No Mas," "No Mas" ("No More, "No More") so said Roberto Duran in his famous quitter fight. There is no other explanation I can come up with for counsel quitting on this case when they are within sight of a high several hundred million settlement based on the class damages. Counsel should have filed a motion for summary judgment years ago with everything they had, most perplexing and disturbing. I don't want to read in rebuttal papers counsels' any whining excuses or hear the whining at the hearing that we could have, should have, would have, what if, maybe issues came up etc. Counsels did not get the job done when they should have when all is said and done, period. This king's ransom dangling in front of them is like Pavlov's Dog dinner bell sounding, it has infected counsels' vision and judgment at the end of this case and caused them to veer off course. This case should not be settled yet, it's too soon for the class but not the lawyers. It's a huge windfall with the class damages intentionally revised downwards, covered up and a distant memory. This objector did not just float in on a raft out of the Pacific Ocean yesterday after being stranded on some deserted island for the past decade. I know how things work and this settlement isn't working; it's

collusive, self dealing and possibly fraudulent along with being easy to see when deconstructed like this, a sophomore in high could see this.

By the way counsels' how much did you get the named defendants to kick into this settlement to buy off their huge multi-billion dollar exposure since they directly caused the damages to the class?

Did the named defendants pay

$5 million each?

$1 million each?

$500,000 each?

$100,000 each?

$10,000 each?

 $1 each ?

Did counsels' even get a plug nickel from them to buy off their huge exposure?

That's what I thought, nothing. They walk away scot free with all the proof, evidence, information and confirmation from the SEC in counsels' possession which is spelled out in counsel's amended complaint, why?

What steps were taken by counsels' to access the ability to pay of the three insider defendants?

Why didn't counsels' use one of those several private investigators they spent $50,000+ of the class's money on  to design and administer a net worth statement or asset test to give to the defendants as a requirement to settle this case?

The document and test would have required each of the insider defendants to list all of their assets and liabilities on a net worth statement before agreeing to settle. No net worth statement, no settlement, plain and simple.

What are the total net assets of the insider defendants counsel? Do you know? Doesn't seem like anything was done to vet their ability to contribute to this settlement THEY caused! I have read nothing about it in all these papers.

How much are the defendants worth, millions, tens of millions? We know that they cashed out $32 million in 2006 and 2007 according to counsels' records and public filings so after taxes they had $16 million in cash to contribute. (That is the same as counsels' lodestar, ironic and just coincidence?) Why not have the insider defendants pay counsels' fee? E*trade will agree to carve them out of the settlement and counsels' can sue them. Sounds fair to me! The class damages are up to $6.0 billion not $559 million.

There are cases out there counsel where even though the carrier pays the settlement, named insider defendants still were forced by plaintiffs counsel to contribute individually or no settlement. Did you know that? Not in this case, why? Counsels' were too meek and now scared of losing any of their fee to act in the best interests of all the class members, all 232,000 of us. Counsels' are acting like the "Cowardly Lion in the Wizard of Oz" diving out that window because they are scared of losing that fee.

Fraud does pay in this case and our counsel agrees with this by intentionally letting the named defendants off the hook scot-free. Outrageous and no way, no how should this proposed "tip cup" settlement be approved as is without a lot more information being provided to the court and/or objector to review and additional cash kicked in by the

defendants. I am tired of seeing the guilty and lawyers walk away happy and rich after a successful fraud. They can violate state and federal laws and the class sheep as usual get to eat crumbs for damages and the lawyers on both sides (except the carriers)  laughing all the way to the bank.

### E*Trade's "Trojan Horse" Token Contributition

Defendant Etrade kicked in only $10 million yet they have (Hold on to your drink ) $1.378 billion in cash and equivalents available as of 06/30/12, according to their 10Q filed on 08/03/12. (A snapshot is available on the bottom of the page)  Counsel, does cash and equivalents of $1.3 billion sound broke to you compared to $10 million? Notice the 2011 column. In December 2011, before the settlement was agreed to defendants had $2.099 billion in cash and equivalents available, on 06-30-12 they had $1.3 billion and in the attached Yahoo sheets after the quarter just ended they are back up to $2.2 billion in cash.  Does this sound like they can't afford more then $10 million when this case was settled? NO.  Does E*trade have any stock sitting in the vault they can sell? Why not issues a small amount of stock at a discount to the current price (say 30%) and use that in the settlement? Did counsel suggest this idea to E*Trade? Is it in writing?

Wait don't tell me the settlement is based on the $559 milllion damage estimate, right? Not any more it's not. It's $6.0 so get ready to demand a lot more from defendants. Counsel could have used me when negotiating this deal and that is now what I am doing on behalf of counsel and the class's benefit.

The graph below is from the 10Q described above.

---

49,155. 47,940. 1,215. %
$        8$      5$       33

*ble of Contents*

Total other income (expense) primarily consisted of corporate interest expense on interest-bearing corporate debt for the three and six months ended June 30, 2012. Corporate interest expense increased 1% to $45.3 million and 3% to $90.4 million for the three and six months ended June 30, 2012, respectively, compared to the same periods in 2011. In addition to the stated interest on corporate debt, the corporate interest expense line item included the benefit of discontinued fair value hedges on corporate debt, which decreased $0.8 million and $2.2 million, respectively, for the three and six months ended June 30, 2012 compared to the same periods in 2011. Offsetting interest expense for the three and six months ended June 30, 2011 was a $3.1 million gain on early extinguishment of debt related to the call of the 7 ³/₈ % Notes due September 2013 in the second quarter of 2011.

## BALANCE SHEET OVERVIEW

The following table sets forth the significant components of the consolidated balance sheet (dollars in millions):

| | June 30, 2012 | December 31, 2011 | Variance 2012 vs. 2011 | |
| --- | --- | --- | --- | --- |
| | | | Amount | % |
| Assets: | | | | |
| Cash and equivalents | $1,378.5 | $2,099.8 | $ (721.3 ) | (3) 4% |
| Segregated cash | 761.5 | 1,275.6 | (514.1 ) | (4) 0% |
| Securities[1] | 24,646.5 | 21,785.4 | 2,861.1 | 13% |
| Margin receivables | 5,804.3 | 4,826.3 | 978.0 | 20% |
| Loans receivable, net | 11,225.8 | 12,332.8 | (1,107.0 ) | (9% ) |
| Investment in FHLB stock | 131.5 | 140.2 | (8.7 ) | (6% ) |
| Other[2] | 5,207.7 | 5,480.4 | (272.7 ) | (5% ) |
| Total assets | $ 49,155.8 | $ 47,940.5 | $ 1,215.3 | 3% |
| Liabilities and shareholders' equity: | | | | |
| Deposits | $ 27,911.1 | $ 26,460.0 | $ 1,451.1 | 5% |
| Wholesale borrowings[3] | 7,459.0 | 7,752.4 | (293.4 ) | (4% ) |

| | | | | |
|---|---|---|---|---|
| Customer payables | 5,128.7 | 5,590.9 | (462.2) | (8%) |
| Corporate debt | 1,501.3 | 1,493.5 | 7.8 | 1% |
| Other liabilities | 2,076.1 | 1,715.7 | 360.4 | 21% |
| Total liabilities | 44,076.2 | 43,012.5 | 1,063.7 | 2% |
| Shareholders' equity | 5,079.6 | 4,928.0 | 151.6 | 3% |
| Total liabilities and shareholders' equity | $ 49,155.8 | $ 47,940.5 | $ 1,215.3 | 3% |

(1)   Includes balance sheet line items trading, available-for-sale and held-to-maturity securities.

(2)   Includes balance sheet line items property and equipment, net, goodwill, other intangibles, net and other assets.

(3)   Includes balance sheet line items securities sold under agreements to repurchase and FHLB advances and other borrowings.

### *Segregated Cash*

Segregated cash decreased by $0.5 billion during the six months ended June 30, 2012. The level of cash required to be segregated under federal or other regulations, or segregated cash, is driven largely by customer cash and securities lending balances we hold as a liability in excess of the amount of margin receivables and securities borrowed balances we hold as an asset. The excess represents customer cash that we are required by our regulators to segregate for the exclusive benefit of our brokerage customers.

Attached at the end of the objection is a five page snapshot of the 10-K Annual report dated 2-23-12, again before the settlement was agreed to. Page two under corporate cash shows $484 million, so E*trade Financial Corp also has $894,000,000.00 in short term investments like T-Bills, sweep accounts, CD's etc that both counsels are trying to hide from the class and court, what a fraud! Defendants have the actual cash to pay more of the actual true class damages but our counsels just want their fee and to heck with the class and intentionally let's undercount the damages to get rid of the case and class members. They have the wherewithal to kick in a lot more money, the proof is right here in writing in three separate documents using defendant E*Trade's public SEC filings which our counsel intentionally or negligently missed and failed to mention.  More like conveniently "forgot" about all that cash. How is that possible?  Eyes wide shut counsel.

43

You guys should be sanctioned. This objector asks the court on it's own motion to impose sanctions under Rule 11.

Here is a snippet out of the same E*Trade 10-K report dated 2-23-12

**Legal Settlements for the Auction Rate Securities and Freudenberg Matters**

We reached a settlement with the Colorado Division of Securities and the NASAA whereby E*TRADE Securities LLC offered to purchase auction rate securities from eligible investors who purchased those securities through E*TRADE Securities LLC. We recorded a reserve of $48 million in connection with this settlement. We also entered into a memorandum of understanding to settle the Freudenberg Action, which resulted in the recording of a net reserve of $10.8 million as of December 31, 2011.

**So an E*Trade subsidiary has $48 million in cash to settle with The State of Colorado's fine citizens for the ARS losses but E*Trade Financial Corp. can only afford $11 million for this litigation that covers all fifty states with losses to the class in the billions? Did E*Trade Financial Corp transfer this money over to E*Trade Securities LLC? Was this paid by some carrier too? Please counsels' do explain, inquiring minds want to know.**

What was the reason for such a low ball, curb height settlement amount?

Seems counsels' are using the fake $559 million damage estimate again as an excuse as to why this is a great settlement for the class.

How was this $10 million arrived at when defendant E*Trade has $1.378 billion in cash and equivalents? Is it because everything is in E*trade's time locked bank vault until this case settles?  Nice try counsel. There are $1.3 billion (now $2.3 billion) reasons why E*Trade can kick in more money if they so choose but counsels' never were able to

convince them. The evidence is all right here in this objection. Contrary to the misleading

joint declaration the defendants are not in trouble and the class should be entitled to

substantially more money form defendant E*trade or no deal, period. Defendants want

out cheap and our counsels are too happy to approve for a $16/$26 million payoff fee and

a ten times to low class damage estimate.  The damages are $6 billion not $559 million.


What percentage of that lowly $10 million is allocated between E*trade the company and

the primary bad actors?  E'Trade is responsible for their employees actions and in this

case the couple of billion of dollars caused by them that is provable under Dura.

Simple questions that should have and could have been answered for the entire class to

review and consider but nothing is done. These guys are like the lawyers that advertise

only at 2:00 am in the morning. You get what you pay for and counsel is not entitled to

$16 million for this result.

See how little information is available to the class to inspect but yet 386 pages was

devoted to their fee and attempting to falsely show this as an "excellent recovery" for the

class. (for them) Counsels' want to settle this case now because their fee is big enough

and NOT because the damages to the class are adequate enough, period.


This case is a "slam dunk" for the plaintiffs counsel right after the amended complaint

was filed in January 2009, the only thing still missing were the handcuffs. Was our

counsel:

Out negotiated?

Scared off?

Lazy?

Out of money? or

did counsels' bite at the $69 million regardless of what the offer was from defendant

E*trade and the insider defendants knowing they would get at least their lodestar based

on past experience upon settlement approval? Great question, needs further inquiry.

Is it the fee on the table that has caused their eye to stray from their responsibilities to the

class? These guys sat back and did nothing. This is not fair, reasonable and adequate

settlement; a first year law student can see that. No reasonable paying client would agree

to pay counsel $16 million let alone $26 million for $79 million result for a net $53

million rigged settlement rushed through at the end. This is a hideous awful result of a

proposed settlement when the damages are multi-billion and one of the defendants has a

few billion in cash/equivalents. I can contact a couple of well qualified firms to see if

they would be interested in reviewing  this proposed settlement and objection and see if

they can assist counsel to the finish line that is in sight. Counsels' have left a king's

ransom on the table for no valid legal reason other then their own greed with a small

insulting token amount left for the class. Defendant Etrade knows it's just "panhandler

change" for them when their maximum liability at trial is billions, not the intentionally

fake, back engineered $559 million one "expert" claims it is. It's a fake settlement, just

like the "Statute of Liberty" play in football. (Can be seen on You Tube)


As far as the other "expert" opining on why 33% of the settlement should be pocketed by

counsel is fair, I say it's not fair. In fact it's usury for any case this size and in particular

for this case and here is why. Page 31 of the attached NERA report shows that the

average fees in a settlement this size is 27% over the past 16 years based on most likely

thousands of settlements and it does not include all this biased misleading damage

calculations. It is not, not worth 33% of $79 million that counsels' expert has been paid to

pluck out of the air and falsely attempt to justify.  Over the past 16 years the average

attorney fee for all cases is 20%, also on page 31, with the graph on page 32.  This

settlement average figure would not, would not, include this case based on the number of

large number of golf course holes, unanswered questions, unresolved, unaddressed issues

to the class before the hearing and need to be answered before any approval can even be

contemplated. The class should not have to pay counsel for these intentionally flawed and

biased opinions and should have counsel eat those back engineered result fees. Good try

counsel. Now it seems counsels' don't have any "experts" to rely on so the fake class

damage estimate and inflated 33% fee grab are out the window. The new damage

estimate is close to $6 billon under Dura. The expert's opinions are down for the count,

no longer valid and have no bearing in this proposed settlement.  I need a drink after

writing the last few pages, my head hurts refuting the crap they write.


The defendants don't want to go to trial on this case with all the evidence counsels' have.

It is now being intentionally downplayed now that there is big mula sitting on the table

and who cares about the class, they are dumb sheep all of them for believing what the

defendants had to say or not had to say about the company's health under GAAP and

SEC rules they intentionally ignored and violated.

Is this counsel's first rodeo or are they just playing dumb by falsely claiming to the class

and court "we couldn't get any more money" excuse so they can scoop up their

undeserved reward and run out of town? I am not buying it. The $17/$26 million eye candy pay day has caused this settlement, not the fair recoverable damages to the class. Is counsel just that bad or clever, either of which makes them and this settlement inadequate under Rule 23. Either way counsels' have proven not to be capable to represent the class by selling us the equivalent of an "excellent", "outstanding" and "significant" canoe that is leaking along with a broken paddle for our dangerous trip down the rapids filled river. They should be dismissed and forfeit their undeserved attempted sunken galleon full of treasure fee grab at the expense of the class.

Attention counsel for the defendants. You better come to the hearing with the authority to kick in more cash to get this settlement approved if the court agrees with my observations or no deal on that day. See counsel how easy it is to have a backbone when you have something tangible AND intangible to stand for besides money? Counsel in this case has not played to win, they played not to lose by being bribed with the huge fee and the settlement amount reflects that.

Had counsel done their jobs maybe the class would have an extra $10 million or more from the individual defendants. Counsel also should have also been able to obtain substantially more than the $10 million miniscule, token contribution from Etrade's ten figure bank account. This was done with a wink and nod by counsel on both sides using the fake damage estimate as their sole proof. The court should reject this settlement. Counsel has a several hundred million pre-trial settlement collectable case here based on all the proof they have laid out in the amended complaint and everyone on both sides

knows it and for some reason our counsel has thrown in the towel. Counsel the damages are $6.0 billion so the class needs a lot more cash, get busy. Counsel appears to be playing the "Boo Hoo E*trade doesn't have any more money to give" game according to the joint declaration. Counsels' also try and plead poverty for defendants while leaving out their bank account size. Our counsels' have turned into a cheerleader for the defendants! This is a trap they set for the court and class and no one should bite on the hook, line and sinker.

The total hours of 39,000 hours at $16.4 million is unjustified greed based on the results for the class but they want a 1.6 multiple bringing the total fee request to 26.3 million for a bonus of almost $10 million or $650 an hour! After all the loose ends and possible fraud here fluttering around the past forty eight pages? We still have some more to go.

### The Glaring SEC Omission in Counsels' Declaration

In the joint deceleration of Mr. Brower and Mr Korsinsky Document 138 paragraph 23, state the following: " Moreover, Plaintiffs' Counsel achieved this outstanding Settlement through their own skill, effort and initiative. Plaintiffs' Counsel received no outside or government assistance. Plaintiffs' Counsel developed the facts necessary to successfully survive Defendants' motion to dismiss and prevail on several motions to compel to obtain valuable discovery used to prosecute Plaintiffs' case......." Both Mr. Brower and Korsinsky also stated "We declare under penalty of perjury that the foregoing is true and correct to the best of our knowledge and belief."

What? Hold on, wait, stop right there. This is a half truth. Telling half the truth is a well know method of deception. This is exactly what the defendants did in this case. Plaintiffs' Counsel has conveniently forgotten that they gained extremely useful and valuable knowledge and information obtained because of the inquiries and correspondence made and initiated by taxpayer funded United States Securities and Exchange Commission. It was through their inquiry/investigation, efforts and through correspondence that this information was uncovered that enabled counsels to file that powerful "Superman" amended complaint, making the case a "slam dunk" and impervious to a motion to dismiss being successful. **They quoted extensively from this information word for word, page by page and it was a road map for the defendants to use to file the amended complaint and obtain this flawed settlement.** Judge Sweet realized the importance of the information gleaned from the correspondence and referenced between defendants and the agency and must have been laughing out loud at defendant's epic failed attempt at a motion to dismiss. Earth to counsel, you are NOT that good to have come up with that information on you own in the past, present or in the future.

Here is what counsel has intentionally downplayed and omitted in their settlement papers. Below are the dates of contact involving the SEC digging for the truth and Etrade's responses in the back and forth correspondence quoted in the amended complaint, which were obtained from E'trades internal records.

9-17-07

10-12-07

10-17-07

10-17-07

11-09-07

11-16-07

12-13-07

2-8-08

Below is the information and page numbers taken right out of the amended complaint that references the SEC's involvement. The SEC's involvement also forced Etrade and the named defendants to admit and confirm for counsels' many of the problems the defendants were dealing with and not disclosing to the market that eventually came out and may have come out much later then they eventually did if not for the SEC's involvement. This objector also believes it helped force a settlement, as corrupted, cheap and unworthy as it is at the moment. Counsel is piggybacking off the SEC's work and wants $16 million and a $10 million bonus for it. Counsel should take $10 million out of their inflated lodestar and sent that to the SEC as a big thank you.

Page number(s) followed by paragraph(s) for the court to review:

Page 14 paragraph 30

Page 73 paragraph 167 D

Page 96 paragraph 206 d

Page 106 paragraphs 217-218

Page 120 paragraph 240 (this was at least a fifty page document from Etrade to the SEC. (How many more fifty page documents are there written by Etrade or the SEC?)

Pages 134-135 paragraph 261 start

Page 142 Paragraph 277

Page 147

Page 149 paragraph 294

Page 151-153 paragraphs 300-306

Page 156 paragraph 311

Were there telephone logs or document logs with comments written also that were reviewed?

How many pages of information involving contact with the SEC and E*trade did counsels' obtain and when?

You can not underestimate the importance of this information. Take out the information involving the SEC and all you have is the original complaint, the witness's statements and claims without any outside confirmation. The SEC in this case is counsels' "Deep Throat" and without a "Deep Throat" there would have been no conformation, so no Watergate. Mark Felt would have agreed with me. The SEC did much of the heavy lifting for counsels' and received it for FREE, (at taxpayer expense I might add) and counsel wants to make it appear to the court they did all the work without any assistance from anyone to falsely justify the fee and multiple. Counsels', the SEC is made up and run by lawyers who worked on this case at no cost to you. You got the information for free, get it? What an omission by misrepresentation, typical of some lawyers. What is the famous quote of all time that comes from a lawyer? "It depends on what the *meaning* of the words 'is' is." Counsel is intentionally ignoring and misleading the court concerning the valuable assistance of the SEC now that's it's fee time, and they also want a $10 million bonus to boot! They didn't ignore the information in their amended complaint did they? The American Indian had a phrase for people like this, "Two Faced." Seems like they are

doing the same thing that the defendants did to the damaged class members, ignored the problem and hope no one notices while running away rich, ironic indeed.  Well someone does notice counsel and you are not getting away with it.


Take a look at the information in that amended complaint and ask yourself was this really useless,  unimportant, garbage information and not needed to be mentioned in the amended complaint and joint declaration or is it very valuable information that helped counsels' settle this case? To this objector, any reasonable observer or anyone who is deaf, dumb and blind would agree that's it's very valuable information that counsel wants to cover up now that it's dessert time and counsel would not have been able to come up with it on their own. Seems counsels' don't like to give credit where credit is due. Counsels' knew there was correspondence because E*trade disclosed the SEC inquiry and later the formal investigation publicly. There had to be paperwork between the two, they just subpoenaed the info from E*trade lawyer's, nothing hard about that. The SEC might also have a thing or two to say about their valuable assistance being disregarded with no value. Here is a quote by a famous person that applies in this case.
"Everyone has their price, the trick is finding out what it is." Pablo  Escobar.  The price here is $16 million so it seems he learned how lawyers operate even in his profession. Get the symbolism counsel? You would not have made this kind street level settlement proposal to him if he had substantial losses in this case and you should not be making it to this class. Got it?

This SEC smoking gun involvement, information and confirmation enabled the amended complaint to be filed and made the case a "slam dunk" for counsel. Yet counsel sat by and watched as the defendants spend down the insurance for the better part of three years until defendants chose to settle on their terms, not the plaintiffs terms, an incredible screw up that shows counsel does not have what it takes to close this deal on better terms than defendant proposed. Then our counsels' in concert, in lockstep with defense counsels,' concocts a stupid looking $559 class damage estimate and wants the class and court to believe E*trade's can't contribute more than $10 million. Great collusion and cheerleading going on here between counsels' on both sides (wink, wink!) Guess counsels' will have to get more cash from E*Trade's war chest and it's pretty big one. Why should the class suffer, again because of our counsels' dirty tricks and deals?  The court should not fall into Etrrade's ploy that they don't have any more money than $10 million to contribute. I proved that back on page 26 and the attachments prove it also. No more money, no deal, start really negotiating. That counsels', is an example of taking charge and backing up what you should have said years ago, along with the missing net worth statements from the defendants and being the prey and not the predator.

What has counsel attempted to do to verify that defendant E*trade can't contribute any more cash to this settlement? Is it a can't or a won't contribute? Hint counsel, read the SEC filings or look at a summary on Yahoo. Oh that's right they did look, they know E*trade can afford more but chose to not upset the diamond mine attorney fee offer. Counsels' claim in the joint declaration to have extensively reviewed and quoted from the SEC filings yet they missed all of E+Trades cash/equivalents? No they turned a blind eye to it. Counsels' are caught with their hands in the till. In Saudi Arabia do you know what

the penalty for theft multiple times is counsel? Our counsels' want the class and court to

believe that they are being jerked around by the defendants like a ventriloquist's puppet,

but that is not the case. (I wish it was) This is all a collusive, self dealing fraud on the

class and court which is even worse. Even counsels' have confirmed that E'trade is not

broke and is making money. In their joint declaration counsels' state that "E*trade net

income for the second quarter of 2012 was $40 million with total revenues of $452

million." Does this sound like evidence that they can not afford more the $10 million?

Yes they are down a bit from last quarter's results but so is the entire industry.  In one of

the attached documents referenced above corporate cash alone is S484 million some of

which can be tapped to increase the settlement. The real estate market has settled down so

the losses in their eleven figure portfolio are not dropping but slowly rising.

Another example, sell some brokerage accounts at $3,700 a piece like they did in the

past.  E'Trade has 2.9 million accounts and maybe many that are just sitting their not

making any money for them in trading commissions. That is the hidden value in E*trade

along with their mortgage holdings.  Class damages are far higher then $559 million.

Counsels'on both sides the class damages are $6.0 not $559 million sharpen your pencils.


It's hard to tell which side our counsels'are on with all their cheerleading on behalf of the

defendants going on.  This objector thinks they have switched sides and are now aiding

and abetting the enemy solely for their ginormous undeserved fee.

It seems like a lot of information is missing to approve this proposed flawed settlement.

Counsel should be docked for attempting to cheat the class with its false bravado and

false success claims in their false joint declaration along with the fake back engineered

damage and fee percentage opinions of their bought and paid for so called "experts." It's all an illusion that counsels' on both sides have created and oh, pay no attention to the man behind the curtain. At this point everything counsel says and claims has to be questioned since they obviously can't be trusted to disclose material facts that should have been disclosed in their hundreds of pages of wasted settlement briefs and motions. Just counting up the paper they wasted listing all the counsels' lawyers, schooling, work history etc, the questions this objector has raised so far could have and should have been disclosed and answered for the class members to review and comment on. Not looking out for the class's best interests, again.

One last thing about counsels' joint declaration. Notice from page 44 paragraph 185 through to page 55 paragraph 206 how counsels' slant their opinions as if the class should be happy they got anything because the whole case is fraught with danger. Yeah, for the defendants! Counsels' fee which they knew they would get some great amount eventually back in 2007 has caused them to roll over and play dead like a magician's dog.


Defendants are blaming others but the buck stopped at the top, it's like blaming a dead guy. In this case the officers are directly responsible for the false success and the resulting failures and results of the firm. They claimed false credit and were unjustly rewarded and now should be held accountable and accept responsibility for the losses and give back what they did not honestly earn.

**Unclaimed funds:**

What happens to any funds that remain in the common fund after distribution?

Are they sent to defendant E*trade or it's carrier(s)?

Are they donated to certain charities that class members don't get any input on?

What are the names of the charities?

Has counsel even thought about this?

The class has a right to input since this is the class's money. Seems counsel is busy counting up the loot and not taking care of business as usual. Why isn't any of this spelled out in the 386 pages of settlement briefs? This settlement is one big epic failure due to material information being kept above top secret or just nothing was ever done properly. This case is the poster child of how not to run a class action suit, but be paid a For Knox size attorney fee for being patsies. But everyone has their price.

### Time Billing Issues

There are no tranches of time for the work that was allegedly performed through the class period say like every six to nine months.

What if counsel piled on the hours towards the end when it is most likely to occur? Counsels on both sides have created an intentionally malfunctioning ATM machine spitting out thousands of dollars in attorney fees per second. I say reject the proposed settlement or have E*trade kick in more cash to buy peace or risk an attention diverting war and no buyout of the company while this is still going on. (oops we shouldn't be talking about market rumors should we now that the CEO has been fired recently at a cost of $13 million in cash!) Defendants and our counsels' have the most to lose right now, not the class. Below is a breakdown of the work (or non-work as the case may be) showing how many documents were filed by year in this case according to the court

docket. Pitiful how much time counsels' wasted waiting for the defendants to settle and did nothing and now the class suffers in the proposed settlement.

Complaint filed 10-9-07

2007 10 documents filed

2008 39 documents

2009 13 documents which includes the amended complaint filed on 1-16-09

2010 13 documents filed

2011 22 documents filed

2012 3 to point of deal.

Total documents 100, total time allegedly consumed by plaintiffs counsel 39,000 hours. For this little work? What? $16 million in lodestar? That are 100 documents at $160,000 per document which includes a bunch of unimportant motions. 39,000 hours divided by 100 documents equals 3900 hours per document. Wow. I know of one class action case that lasted ten months from filing to settlement that had more than 100 documents and it was a $2.5 million settlement.

39,000 hours of billable hours? Divide that into 24 hours in a day and you have 1625 days of continuous work twenty four hours a day, for this result?  I don't buy it, period. It's more like they meant to hit the 2 button but hit the 3 button instead by accident. Maybe they just threw a dart at a number on the wall and that's their fee.  Sounds like counsels' have been drinking whiskey out the bottle and counting on their $16 million jackpot tomorrow,,but that is not to be. (A partial refrain from a famous Kid Rock ditty.) How much did counsels' bill the class for the settlement conference, a million?

This does not look like $16 million worth of work to me and a $10 million bonus on top

of that or is this objector expecting too much for $26 million?

It would be very easy for counsel to run off a computer report showing tranches

especially for the time periods relating to work up to the amended complaint being filed,

etc. Counsel can use the joint declaration as a guide. Even if they screw with the numbers

it might be worth a look.


Based on what is in the amended complaint and what was dug up, and confirmed by the

confidential witnesses and the SEC, how many of these documents were reviewed and

examined AFTER the second amended complaint was filed when it was a slam dunk after

that? Maybe a substantial amount of work was billed to the class was not needed so

therefore the class should not have to pay for valueless work. That is where the

usefulness of the tranches comes into play. Counsel also forgets the extensive

information they assembled to block the motion to dismiss. (Document 80 1-5 plus a

declaration.) That was another 125 pages of evidence backing up everything they claimed

and half of it from the SEC and Department of Treasury website! Slam dunk case, the

only one's more so was Enron and WorldCom and Tyco. Counsel has them in a corner

with no way out and let's them walk by and leave cheap, why?  The fee.


Are the named defendants laughing at the class and it's counsels' as they look at their

own seven or eight figure net asset statements at home while their insurance paid lawyers

run down the insurance benefits that are paying for their lawyers to defend them? Yes.

Is there anything allocated to the named plaintiffs in this settlement?

Where is the retention agreement between named plaintiffs and counsels'?

Have the named plaintiffs or any party involved in this case been promised anything off the record?

Maybe counsels' thinks class members and The Court won't or do not have the time to read all their many pages of wasted paper attempting to justify their loan shark type fee. Don't know but I made the time and you got caught. From reading the joint declaration you would think the two named defendants who had their depositions taken were nuns in a monastery and the amended complaint does not exist. That is because the class fund has a fee they want to pilfer. If defense counsel had made this motion to settle and there was only $4 million on the table for counsels' fees much of this throw the towel in woe is me, can't get any more money, defendants have none to give etc would not even be brought up. The opposite position would be taken and counsels' would be highlighting the amended complaint in the settlement papers All they have to do is convince one person all is well and fair and walk away rich. I wouldn't hire these untrustworthy guys to defend me in a traffic case after seeing what they are attempting to do here.

This case does not appear to have been handled efficiently and without duplication by the counsels'. There does not appear to have been a committee appointed to monitor and assign time, assignments and track expenses. This seems incredible and this objector

thinks the class was billed at an artificially inflated rate, even higher on a percentage basis than Etrade's stock was artificially inflated during the class period!

### Expense's Gone Wild

I don't believe contrary to counsels' assertions that "all the expenses were reasonably and necessarily incurred and were essential in obtaining the result that was achieved for the class based on what I have reviewed in the settlement papers and other similar papers filed in other cases." How about "reasonably charged" being included counsels'? These two words mean a lot, but are missing. Expenses need to be audited and reviewed by a special master under 54(D)(2)(D) or substantially reduce the fee and expenses to what is reasonable based on what has been brought to light in this objection and the settlement amount. . Below are the reasons behind my conclusions:

A five page boiler plate explanation summary to justify a $554,000.00 invoice, what? What paying customer in their right mind would pay an invoice like this without a lot more information? No one and the class should not either. No evidence has been submitted that anyone reviewed any of these expenses at all or even on a monthly or quarterly basis over the past four years. What a gig these guys have going on here, it's unbelievable! Let's go through some of the invoice items where I believe issues need to be looked into to make sure the classes best interests are being looked out for since we are the ones paying for this bill. I suspect bill padding is going on here, they are testing you judge. This appears to be a great case to take a stand on and send a message to future

firm's to not include the court in this kind of joke settlement con in the future.  (That is the aide speaking.)

Copy costs of $99,229 for both firms equals out to 999,229 copies or just shy of 1,000,000 sheets measuring 8.5" by 11" inches at the Kinkos MARKET rate of .10 a copy. What? Counsels actually produced one million copies? Forgive me for being skeptical but a sophomore in high school would realize something is wrong with this in this day and age of electronic file transfers. In addition it appears that the lawyers did not use any lower priced support staff to make, assemble, bind, batch and file the copies once they were made. For example if one of the lawyers made their own copies, assembled, binded, batched and filed the copies that would also pad the bill substantially because we the class are paying an hourly rate of $443 an hour for these lawyers to make and assemble the copies! Take 1,000,000 copies with one copy per second being produced a second or sixty per minute made equals 16,666 minutes divided by 60 minutes per hour equals 277 hours of continuous time just to make the copies. No one is feeding paper into the machine this whole time, unjamming the paper in the copier, adding toner, cleaning the glass, stapling copies together? Come on man! Most copiers hold 1000 sheets of paper so every 16.6 minutes the machine stops and someone (a $443 per hour attorney) is reloading paper? Come on man!

How much time did it take to assemble these copies, distribute them, file them away etc? Who pays these inflated fees in the metro New York area or any where else? No one and the class should have to pay for some lawyer's new 2012 Porsche Boxster paid for by a padded copying and labor charge invoice.

What does 1,000,000 copies look like you ask?  Take a ream of paper (500 sheets per package) that you put into a copier when the paper runs out and when you are about to make a copy and there is no paper left. 1,000,000 copies divided by that 500 sheet package would equal 2000 five hundred page packages! Now take Office Depot® Brand Copy Paper, 8 1/2" x 11", 20 Lb, 104 (Euro)/92 (U.S.) Brightness, 500 Sheets Per Ream, Case Of 10 Reams (5000 sheets) that costs $42.00.  An Office Depot case/box of paper containing 5000 sheets of paper divided into 1,000,000 copies means counsels' made 200 cases/boxes of copies at 5000 copies a box.  Go to an Office Depot etc. and look at just ten boxes together (50,000 sheets/copies) to give you an idea of how stupid a claim this is that counsel wants us to believe in after all this objector has written and proven above? I say prove it or no reimbursement.

Did counsels' actually make a million copies or is the class being charged a loan shark rate? If they charged the class says $2.00 a copy that would equal out to counsels' making 50,000 copies. That copy number seems high, how about $3.00 a copy which equals out to 33,000 copies made. It still seems high based in this day and age of computers and sending files electronically with a click of a mouse without having to be printed off. Say $4.00 a copy would mean counsels' made 24,807 copies, still seems high.  I thought counsel was supposed to only be reimbursed and billing at market rates in their local areas? This is an outer space rate that only applies in another world! You get my point. It's laughable on its face and no paying customer would pay this charge without more evidence. When I saw that $99,000 number, I almost spit up my water on to the keyboard!

Any amount over .10 a copy should be deducted from the expense request and also deducted from the attorney fee on a percentage fee reduction basis as a liquidated damages for being greedy and hoping the judge will simply robo rubber stamp the settlement because he is new in his position. They are testing you judge, just like I would too, if I had their questionable business ethics and morals.

## Counsel, how many copies did you make? Inquiring class members want and have a right to know, right?

Private investigators costs for three different firms total $55,544.00. Yet nothing was done to access the defendants' ability to pay even a penny for their fraud and delayed disclosure fraud game on the market? What work was performed and what was the hourly billing rate that these firms charged counsel for, before any mark up? What is the net asset value of the three insider defendants?

Computer document review $154,178.00. Wait, stop right there. What? This expense invoice in this case should be called "Expenses Gone Wild." Who pays these outrageous, gigantic, no basis in reality in the real business world rates with no proof? No one and the class should not either. What are the billing rates per minute, per hour and are they marked up by counsel to the class? Counsel writes in their fee submission that "The bills, receipts and other records reflect the firms' expenses and are available for inspection at the courts request." This objector strongly requests that the court take them up on their offer and have a special master review them, or one of your law clerks or even me, I

would be glad to verify the truth in this case. I hope I am wrong but I don't think so based on everything counsel has written, and not written in their settlement submissions.

Outside litigation support for the Levi and Korsinsky firm $52,911. What? Again no explanation as to why they needed help or could not get assistance from lead counsel or it was even necessary. How many hours and at what rate are we the class paying for? Does it include say hiring summer interns and billing the class say at $300 an hour? Typical game of cat and mouse with the numbers just like the defendants did.

Computer research time $28,370.00 with one firm charging three times more than the other one. I have Pacer charges at .10 a copy. What are the rates being charged per page, per minute? What is the rate they charge for their services vs. what the class is being charge before any markup?

Long distance telephone/telecopier $4555.00. What the heck is this? I have never seen this kind of trash expense item any where, any place, at any time; in any case I have reviewed. Who charges for long distance today when the rates are three cents a minute? $4555.00 divided by .03 a minute equals 15,000 minutes of talk time the class has to pay for? Is this just a clever disguise for someone's cell phone bill over the class period? I would not be surprised if counsel has hidden there electric, heating bill and toilet paper purchases in some of these larger items. Any mistress credit card bills in there counsels' or is that in the inflated lodestar?

Travel, meals, hotels: $15,000.

Were there any first class tickets purchased for any flights?

What was the highest amount paid for a hotel room for a night?

What was the amount of the highest dollar meal paid for?

Finally, have all the experts and mediators been paid what has been claimed?

"Experts" for $50,000, uh? Their purchased and tortured attempts at misleading the class and court in this fixed, bid rigging, self dealing, quid pro quo settlement should not be paid by the class, no way, no how.  That is all I have to say.

Is anyone or any entity going to receive a "kicker" once this case settles?

In the declaration by counsels' the average hourly billing rate is $443 an hour about $32 per hour or 9% higher then two more highly qualified firms in a recently settled Lehman case action case that this objector was involved in that settled for $516 million. The cases are similar I believe.

 Both firms in that case were ranked in the top four nationally of all settled cases in 2010. Where did our counsels' rank?

Here is a snippet from one of the settlement brief's in the Lehman brief's.

"Plaintiffs' Counsel have not been compensated for any of their time (over 91,000 hours) with a lodestar value of over $37.8 million, or reimbursed for any of the more than $1.6 million in litigation expenses incurred over the nearly four years that have passed since the Action was commenced." Located (Case 1:09-md-02017-lak document 806 filed 03/08/12 page 36 of 43)

37.8 million divided by (91,000 hours equals $411 per hour). The difference between both sets of firms as to how the case was investigated, handled, including expenses and the results is the difference between night and day. That $32 an hour difference (+9% higher) then our counsels are charging should be a lower, a lot lower.

39,000 hours multiplied by just $32 a hour equals an overcharge of $1,248,000.00 the class is paying for. The court should reduce the fee by that $1,248,000 figure.

What a great business, no clients to answer to or monitor expenses and fees. What were the named plaintiffs doing during all of this? They are supposed to be running the show not the other way around. The class is being ripped off.

The invoice submitted to Mr. Kerr by the administrator GCG, Inc. document 138-6 for $249,994 has potential issues in it as well.  This objector believes the class is being over billed by GCG Inc. Some examples are below: This needs to be flagged and reviewed.

Where is page 1 of that document? Why is it missing? I, the class and court have a right to see it. Attach it in your rebuttal papers or bring it to the hearing counsel. No in camera request either for any responses; this is not a national security case.

Has this $249,994.00 invoice already been paid as of the day counsels' filed their settlement papers on 8-10-12 and if not why not? Is it only going to be paid if the court approves the outrageous amount that counsels' won't pay first in case some of it gets thrown out by the court if it's challenged and axed away?

Dissemination of CAFA Notice.

It cost the class $5,404.00 for GCG to mail 50 of the same exact set of documents or in CD format via first class mail with a return receipt attached to the U.S. Attorney General and 50 Attorneys Generals around the country, addresses that are already in a data base used by GCG on a weekly basis? What?  I am wordless, I am without word. FedEx overnight is not a requirement if planned properly by GCG Inc. It's a bit high by say $4,500.00 isn't it? The attached paper provides an explanation of CAFA requirements and is explained in detail. Since we are on that subject counsels':

Where is an example of the notice being mailed per requirements and included in the settlement papers for the class and court to review?

Did counsels' on all sides meet all the CAFA requirements?

When was it mailed?

Is it posted to the website?

Project Management: 160 hours of work for $23,425 equals $146 per hour, for what? Is there a more detailed invoice available for the class to inspect? What idiot would pay a bill like this without further explanation and a breakdown?

Systems support: $1,096 for 7.6 hours equals $144 an hour? What is this?  Need more info.

Quality assurance: $5963 for 40.5 hours equals $147 an hour? What does this mean? Making sure there are no typos while the 232,000 notices are run off after they have been

spell checked? Maybe it's to make sure the printing machine does not jam?

PO box rental/renewal $1,100? LOL

How long a term is this for? Is it daily, monthly, quarterly, semi annual or annually?

$1,100 is compared to the United States Post Office rates below for their largest box.

What size is the box?  The information below comes off the USPS website. No one

overcharges more then government agencies, except for lawyers and the defense

business.

Post Office Box Service Fees (Effective January 14, 2011) Box Sizes and Fees
Per Semi-Annual (6-month) Period

| Fee Group | Box Size 1 (3" x 5.5") | Box Size 2 (5" x 5.5") | Box Size 3 (11" x 5.5") | Box Size 4 (11" x 11") | Box Size 5 (22.5" x 12") |
|---|---|---|---|---|---|
| 31 | $58.00 | $88.00 | $156.00 | $319.00 | $513.00 |

Copy charges $65. How much per copy?

Broker fees $5,000.00. What is this? So once the class is done dealing with these guys the

class is broke er?

Has counsel added on to any charges in the expenses listed in any court papers in any

way shape or form like a mark up or surcharge?

The following case relates to this very case as far as fees and expenses are concerned.

The entire three page attachment "Judge slashes Bluetooth Fees…. is at the end of the

brief. Here is a summary.

U.S. District Judge Dale Fischer in Los Angeles on July 31 2012 was forced to redo the attorney fee award in the famous Bluetooth decision. The Ninth Circuit, in rejecting the deal, (it was appealed by an objector) cited potentially excessive fees and numerous "red flags" including a "clear sailing" provision, under which the defendants agreed not to object to the fees,

The judge wrote in his second ruling that:

"No reasonable paying client, and certainly not a sophisticated client paying out of its own pocket, would pay the amount of fees billed for some of the tasks performed in this case,"

This proposed settlement has so many more red flags, flashing police, fire and EMS lights going off than the one above. There is something really wrong about how this case was handled, negotiated and settled along with the questionable expenses and fee hour rate pleaded in counsels' fee papers. Something is lurking close by, this objector feels it.

You can't make any of this stuff up! Everything this objector has written about comes from counsels' own filings and verifiable public documents. Hard to believe all this stuff is true and counsels want to be compensated on a percentage basis like they just discovered a very cheap way to turn fresh or salt water into gasoline for .10 a gallon.

A full and complete audit is needed on all these expenses, this is nothing but naked money grab, robbery of the class at the highest magnitude, a 9 on the Richter theft scale. Right after it posts to the docket I may post this to Scribd and send out a news release to 450 locations with copies going to the committees that over see the judicial profession in Washington, maybe Senator Bunning might be interested in this along with the media. I

think the comments Yahoo readers post under an article about this objection would be
fun to read.

## Case Law and Rule 23

Below is some legal stuff to make the objection complete as it touches on many of the

issues above. This objector  wanted to keep the flow of the objection neat and clean and

not interrupt it by including the stuff below along the way even though it's important.

This objector could have added another 30 pages of this legal case stuff like counsels' did

in their briefs but that would have been to much and I believe my concerns have been

spelled out very clearly as they relate to Rule 23, due process and the Grinnell factors that

the court should or may consider when reviewing this proposed settlement. I don't

believe this settlement meets the levels required for approval for all the reasons described

above.  I will just provide some other highlights so bear with me I am almost finished.

It is essential prerequisite to the right to maintain a class action under Rule 23 that the

court be certain the representatives will fairly and adequately protect the interests of the

class, Hill v Western Electric Co., 672 F. 2d 381, 388 (4th Cir) cert denied), 459 U.S. 981,

103 S. Ct. 318, 74 L.Ed 2d 294 (1982) Adequacy of representations by a plaintiff is

ultimately a question of fact with respect to which the PLAINTIFF must bear the burden

of proof. Adequacy of representation is not dictated by the number of plaintiffs named in

the complaint, but the quality of the representation the named plaintiff or plaintiffs

provide which in this case amounts to malpractice.

In Haywood v Barnes, 109 F.R.D. 568, 579 (EDNC (1986) the following elements

demonstrated their adequacy as class representatives. Based on this objector's review of

the settling and fee papers, plaintiffs appear to have not signed off on the settlement by

providing a declaration. The conclusion this objector draws is that that counsels 'do not

and may not have permission to approval the motion to approve this settlement. I leave

counsels' to prove otherwise. Here are the findings and my answers as they pertain to this

case without knowing named plaintiffs' positions.)

They shared a common interest with the putative class members. Appears so.

Each named plaintiff had a personal financial stake in the suit.    Appears so.

The named plaintiffs regularly consulted with their counsel.     Doesn't look like it.

The named plaintiffs responded to discovery demands.      Don't know.

The named plaintiffs appeared for deposition.      Don't know.

All of the named plaintiffs indicated familiarity with the practices challenged.  Unknown.

There was no showing the named plaintiffs were unwilling to pursue the action or that

they would disregard their obligation or duties as class representatives.    Don't know.

The premise of a class action is that litigation by representative parties adjudicates the

rights of the class members, so due process requires that named plaintiffs possess

undivided loyalties to absent class members. –From Rule 23e.3 a few paragraphs down

the page.

Based on my findings and the proposed settlement amount and lack of named plaintiffs signing off on the settlement, it appears that they were not involved in representing the class's best interests. Maybe counsels' should send them a copy of this objection.

**The Court Has A Fiduciary Duty to The Unrepresented Members OF The Class.**

A district court must act as a "fiduciary for the class," "with a jealous regard" for the rights and interests of absent class members. In Mercury Interactive Corp., 618 F. 3rd 988, 994-95 (9th Cir. 2010) (quoting In re Washington Pub. Power Supply Systems Lit. 19 F. 3d 1291, 1302 (9th Cir 1994)). " Both the United States Supreme Court and the Court of Appeals have repeatedly emphasized the important duties and responsibilities that devolve upon a district court pursuant to Rule 23(e) prior to final adjudication ands settlement of a class action suit." In re Relafen Antitrust Litigation, 360 F. Supp.2d 166, 192-94 (D.Mass. 2005), citing inter alia Amchem Prods., Inc v Windsor, 521 U.S. 591, 617, 623 (1997) (Rule 239e) protects unnamed class members from unjust or unfair settlements' agreed to by "fainthearted" or self-interested class "representatives"'): Reynolds v. Beneficial Nat't Bank, 288 F. 3d 277, 279-80 (7th Cir. 2002) (district judges /are/ to exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions" prior to settlement).

"The court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." In re General Motors Corp, Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55F. 3d 768, 785 (3d Cir. 1995) (quoting Grunin v International House of Pancakes, 513 f. 2d 114, 123 (8th Cir.1975)). A trial court has a continuing duty in a class

action case to scrutinize the class attorney to see that he or she is adequately protecting the interests of the class."

The district court must ensure that the representative plaintiff fulfils his fiduciary toward the absent class members"). There should be no presumption in favor of settlement approval: "/t/he proponents of a settlement bear the burden of proving its fairness." True v American Honda co. 749 F. Supp. 2nd 1052, 1080 (C.D.Cal. 2010) ( citing 4 newberg on Class actions $ 11:42 (4th ed 2009)). Accord American Law Institute, Principles of the Law of Aggregate Litig. $3.05 © (2010) (Ali Principles").

Concerns warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement>" Hanlon v. Chrysler Corp., 150F. 3d 1011, 1021 (9th Cir. 1998); In Bluetooth Handset Prods. Liability Litig., 654 F. 3d 935, 947 (9th Cir. 2011

While Rule 23(e) adequacy of representation inquiry is designed to foreclose class certification in the face of actual fraud, overreaching or collusion, the rule 239e) reasonableness inquiry is designed precisely to capture the instances of unfairness not apparent on the face of the negotiations." Bluetooth, 654 F. 3d at 948 (quoting Staton v Boeing Co., 327 F. 3d 938 , 960 (9th Cir 2003)).

In the Ninth Circuit, the fairness of the attorneys' fees in a common fund settlement is measured against a 25% benchmark, Torrisi v Tucson Elec. Co. 8 F. 3d 1370, 1376 (9th Cir 1993). It appears likely based on the settlement amount on this case that the settling parties colluded and decided to construct a settlement that sets aside an overlarge share of

fees to counsels in exchange for releasing the defendants form a huge mind boggling amount of liability. "If the fees are unreasonably high , the likehood is that the defendant obtained an economically beneficial concession with regard to the merit provisions, in the form of lower monetary payments to the class members or less injunctive relief for the class than could otherwise have obtained."

'Even where as here, there is no explicit collusion against the class, /e/ven if the plaintiffs attorney does not consciously or explicitly bargain for a higher fee at the expense of the beneficiaries, it is very likely that the situation has indirect or subliminal effects on the negotiations." Report of the Third Circuit Task Force, Court Awarded attorney Fees, 108 F.R. D. 237, 266 (1985)

## Public Policy Reasons Mean That The Court Should Not Infer Settlement Approval From A Low Number Of Objectors

Any given class settlement no matter how much it betrays and cheats the interests of the class and unjustly makes millionaires of class counsel in this case at the expense of the class; will produce only a small percentage of objectors. Sometimes just one good objection can speak clearly for all the unnamed class members who don't have the knowledge, skill, time, patience or know how to spot an unfair settlement and deconstruct it to show the court how flawed if really is under it's face. My objection is written on behalf of all unnamed class members who can't do what I can do which is put together an objection that can actually make a difference. The predominating response will always be apathy, because objectors- unless they can use pro bono counsel, or do it themselves- must expend significant resources on an endeavor that may not benefit themselves

directly. Another common response from non-lawyers will be avoidance whenever possible of anything related to lawyers and courtrooms. Class counsel may argue that this understandable tendency to ignore notices or free ride on the work of other objectors is best understood as acquiescence in or evidence of support for the settlement. This is wrong. Silence is simply not consent. Grovev Principal Mut. Life Ins. Co., 200 F.R.D. 434, 447 (S.D. Iowa 2001) citing In re Gen Motors Pick-Up Litig., 55 F. 3d at 789.). "Silence may be a function of ignorance about the settlement terms or may reflect an insufficient of time to object.

When class members have little at stake, the rate of response will be predictably low as in this settlement. As such, the response from class members cannot be seen as something akin to an election or public opinion poll. See In re Gen. Motors PickUp Litig,. 55 F. 3d at 813 (finding that "class reaction factor" does not weigh in favor of approval, even when low numbers of objectors in large class, when "those who did object did so quite vociferously') Thedore Eisenberg & Emperricial Issues, 57 VAND .L. Rev. 1529, 1532 (2004). Hope this objection makes a difference in this proposed settlement.

A district court is required to consider four factors in making that determination: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. Id. at 932. Objector's response:

(1) Merits of the case, "slam dunk" (2) Defendants financial condition, excellent, the attachments provide proof. (3) Complexity and expense of further litigation. All the important work is done; file a motion for summary judgment on the merits and/or for

$6.0 billion (4) amount of opposition to the settlement. The issues that this objector brought up were written for and apply to all 232,000 class members who would all agree with the positions taken in this objection if they could see this objection before the submission deadline.

### Deny motion to certify and suggested attorney fee

For the foregoing reasons, I ask that this Court deny the motion to approve the settlement, and rule that the class cannot be certified pursuant to Rule 23(a)(4) and If the Court does approve the settlement, the fee request should be reduced under lodestar to reflect that the class  has been cheated and the settlement amount is largely illusory compared to the total maximum damages defendants faced at trial. Counsel was negligent in prosecuting and settling this case based on all the unanswered question listed in this objection This flawed settlement is nowhere near what is fair, reasonable and adequate to the class.

Finally, this entire entire objection is about the lack of information, the low settlement fee which all ties directly into the, attorney fee. First counsel's actions or inactions in this case should not be rewarded with $26 million "attaboy" but sometimes stuff happens and this settlement could get approved as is with no changes. Counsels' did not earn their fee, it was given to them by the defense when they decided to settle along with counsels' designing artificially manufactured misleading  evidence to justify this settlement. Below are three suggestions for their fee:

1. Less then the 20% of the $79 million class fund.  This 20% number is the average settlement amount of all settled cases in the NERA attachment and this case is far below the average, in fact it's below sea level.

2. No more than 11% of the $79 million or $8.6 million based on the poor quality of work, representation and leaving a huge king's ransom on the table when negotiating damages as a result of their ineptitude in litigating this case and for their failed attempted at a back engineered settlement. The counsels' should be penalized and it should come out of their inflated lodestar to compensate the class for their losses.

3.  $0 fees. If the court finds that there is a conflict of interest in this case because the settlement occurred in a common fund class action suit, federal equitable principles govern. The end result is this conflict could support an automatic forfeiture of all fees to counsels' which raises the fund by $26 million for distribution to the class members.

The class and court both now realize that this proposed settlement should not be approved as is based on the fact that the requirements of Rule 23(a)(4) and 23(g) have not been met in this case, counsel's have proven to be inadequate as was shown throughout this objection. E*trade certainly has a Fort Knox pile of money they are sitting on and certainly can kick more if they really want to buy peace based on the true class damages and settle this fairly, not through legal trickery on the class and court.

### Objector Fee Award Request Under New York State's Law

This objector is now applying for an objector award which applies if the approval is granted to this proposed settlement. There are two options. The first option is for the

court to award the objector based on my actual billing rate assuming the settlement is approved and if the court still felt that the objection assisted in clarifying and resolving issues that may not have been addressed otherwise.

153.40 hours multiplied by $180 an hour is $27,612 plus $57.00 in next day air charges, $64.11 in copy charges (at the .10 market rate) and $46.20 in Pacer charges.(also at .10 a page) Total costs $167.31 Total amount including costs, $27,779.31 incurred in pursuing this objection. You can do a Loadstar multiple if you would like to. Below are the dates and hours allocated to this objection, I also have the start and stop times I am bringing with me to the hearing for inspection if needed. I bill to the minute, no rounding up occurs. Read columns top to bottom then left to right then second column repeated etc followed by third column (date first, followed by hours then minutes for worked performed on that day pursuing this objection)

| | | |
|---|---|---|
| 8-11-12 4 hrs 24 min, | 8-20-12 6 hrs 3 min | 8-29-12 6 hrs 23 min |
| 8-12-12 2 hr 20 min | 8-21-12 6 hrs 6 min | 8-30-12 8 hrs 48 min |
| 8-13-12 2 hr 59 min | 8-22-12 4 hrs 25 min | 8-31-12 8 hours 30 min |
| 8-14 -12 4 hrs 40 min | 8-23-12 9 hrs 10 min | 9-1-12 2 hrs 12 min |
| 8-15-12 6 hours even | 8-24-12 1 hr 35 min | 9-2-12 6 hrs 30 min |
| 8-16-12 5 hrs 11 min | 8-25-12 4 hrs 59 min | 9-3-12 8hrs 32 min |
| 8-17-12 6 hrs 36 min | 8-26-12 7 hrs 40 min | 9-4-12 9 hrs 10 min |
| 8-18-12 5 hrs 35 min | 8-27-12 6 hrs 31 min | 9-5-12 7 hrs 5 min |
| 8-19-12 2 hrs 44 min | 8-28-12 8 hrs 18 min | Total: 153 hrs and 40 min |

The second option if the settlement reaches approval is an award based on the New York objector law. This objector is requesting a 5%-10% recovery award of any saving from

any reduction of counsels' $26 million fee request demand and the same percentage that the court strikes out of the $554,000 inflated expense request and GCG's $249,994 invoice. These saving will go back into and increase the common fund for the benefit of the class. At the moment the fund is $53 million net after deducting the $26.5 million counsels' have demanded and backed up with hundreds of pages of documents and over $50,000 worth of so called "experts" cheerleading opinions. This objector's recovery fee award can come out of the improved common fund but most preferably out of the attorneys' fee. If it comes out of the attorney fee award this objector requests that it be paid within five calendar days of counsels' receiving their award or a $500 a day liquidated damage fee applies for each day late.

Below is information on New York's one year old objector fee award law.

Posted on September 28, 2011 03:09 by Jeffery A. Holmstrand DRI Today c

Proposed class action settlements often bring out two types of objectors representing individual class members who would be affected by the settlement. The first argues the settlement terms are themselves unreasonable and seek modification of those terms. Where those objections result in a higher overall recovery for the class, they seek attorneys' fees or awards from the increased value of the settlement fund. See e.g., Duhaine v. John Hancock Mut. Life Ins. Co., 2 F.Supp.2d 175 (D.Mass. 1998) (allocating a portion of the fee award to counsel or others since we are in the State of New York. for successful objectors who improved the settlement fund). The second type of objector does not necessarily challenge the overall settlement amount per se, but rather object to the size of the award of counsel fees. In that instance, they argue the amount of requested fees are excessive relative to the

value of the settlement to the class members and seek a reduction of the award or an increase in the size of the fund. Last year, in Fleming v. Barnwell Nursing Home and Health Facilities, Inc., 15 N.Y.3d 375 (2010), a majority of New York's Court of Appeals held that counsel for a successful objector to the size of a fee request by class counsel was not entitled to recover attorneys fees from the increased value of the settlement fund. The majority reached this decision based on a New York rule which it read to limit fee awards to "representatives of the class" and that such did not include counsel for individual class members even if their objections increased the award to the class. Driven in part of the Fleming decision and the disincentive it created for class members to retain counsel to object to fee requests (since the cost of a successful objection would still be borne solely by the objector or her counsel even though the entire class benefited from the objection), the New York legislature passed a new version of the rule which would permit a court to award fees to "representatives of the class and/or to any other person that the court finds has acted to benefit the class." N.Y. Senate Bill 4577. On September 12, that bill was sent to Governor Cuomo for consideration and on September 23, Governor Cuomo signed the bill.

STATEOFNEWYORK

---

4577--A

Cal. No. 441

2011-2012 Regular Sessions

INSENATE

April 12, 2011

---

Introduced by Sens. BONACIC, PARKER -- (at request of the Office of

Court Administration) -- read twice and ordered printed, and when

printed to be committed to the Committee on Judiciary -- reported

favorably from said committee, ordered to first and second report,

ordered to a third reading, amended and ordered reprinted, retaining

its place in the order of third reading

AN ACT to amend the civil practice law and rules, in relation to the

award of attorneys' fees in class actions

THE PEOPLE OF THE STATE OF NEW YORK, REPRESENTED IN SENATE AND

ASSEM-

BLY, DO ENACT AS FOLLOWS:

1 Section 1. Rule 909 of the civil practice law and rules, as added by

2 chapter 207 of the laws of 1975, is amended to read as follows:

3 Rule 909. Attorneys' fees. If a judgment in an action maintained as a

4 class action is rendered in favor of the class, the court in its

5 discretion may award attorneys' fees to the representatives of the class

6 AND/OR TO ANY OTHER PERSON THAT THE COURT FINDS HAS ACTED TO

BENEFIT THE

7 CLASS based on the reasonable value of legal services rendered and if

8 justice requires, allow recovery of the amount awarded from the opponent

9 of the class.

10 S 2. This act shall take effect immediately and apply to all actions

11 commenced on or after the date on which it shall have become a law and

12 all actions pending on the date on which it shall have become a law.

EXPLANATION--Matter in ITALICS (underscored) is new; matter in brackets [ ] is old law

to be omitted.

LBD09315-03-1

Based on N.Y's law the court can award this objector, an award for decreasing the attorney fee from $26 million on down which increases the fund from it's $53 million net amount on up.

I am in a unique position. I do legal consulting work for attorneys and bill just like them but for substantially less. Like in the Tyco case five years ago I charge and was paid at the rate of $180 an hour, the same fee I charge even today, because the economy demands it. (Mr. Kerr can vouch for what Milberg Weiss paid me which is the same rate I charge today.) I recently worked on one case where hopefully the four survivors each received $3-$4 million in a case this objector assisted and confirmed everything plaintiffs needed to know. The settlement amount is under protective order. A few months ago this objector filed the sole legitimate objection in the Lehman D&O suit and counsel reimbursed me for my time ($180 an hour) after I withdrew my objection in that case, after the judge initially agreed with my various views on certain material issues and then blocked the approval until more information was forthcoming. (Copy of stipulation attached.) Judge Kaplan eventually approved the settlement six weeks later and cut the attorney fee down to 10.99% from the 16% request of the D&O settlement fund which provided an additional $4.5 million into the common fund for distribution to the class members. (A total savings to the class of $26 million for both settlements (UW included) combined.) The settlement order was entered less than two months ago in this very building and can be viewed in the court's electronic and paper file systems.

**OBJECTOR ADDED VALUE TO THE SETTLEMENT.**

While these observations apply to lawyers they can also apply to this objector based on the above law and fact I do legal work and bill like them but for substantially less.


Objectors may qualify for fees because of their contribution to the common fund available to the class. As occurred in *Bowling v. Pfizer,* 922 F. Supp. 1261, 1285 (S.D. Ohio 1996), by reducing attorney fees, objectors often increase funds available for the common settlement fund. The 2003 Committee Note to Rule 23(h) expressly recognizes the benefits that objectors may provide to the class.

"[O]objector has a valuable and important role to perform in preventing collusive or otherwise unfavorable settlements, and ... they are entitled to an allowance as compensation for attorneys' fees and expenses where a proper showing has been made that the settlement was improved as a result of their efforts." *White v. Auerbach,* 500 F.2d 822, 828 (2d Cir.1974). "Ordinarily, the trial judge has broad discretion in deciding whether, and in what amount, attorneys' fees should be awarded, since he is in the best position to determine whether the participation of objectors assisted the court and enhanced the recovery." *!d.*
An award of attorneys' fees for an objector does not require that an economic benefit to the class occur, or that the objection influence the court's decision. *In re MetLifeDemutua/ization Litigation,* 689 F.Supp.2d 297 (E.D.N.Y., 2010), citing *Parkv. ThomsonCorp.,* 633 F.Supp.2d 8, 11 (S.D.N.Y.2009). "[S]ome courts have ... rewarded objectors 'counsel for advancing nonfrivolous arguments and transforming the settlement hearing into a truly adversarial proceeding." *!d.* (internal quotation marks omitted); accord, *Howes v.Atkins,* 668 F. Supp. 1021, 1027 (E.D.Ky.1987) {"Objectors' counsel ably performed the role of devil's advocate in this litigation and is deserving of a fee award for this service, even though the settlement was not improved.").

**CONCLUSION:**

WHEREFORE, this objector respectfully requests that this Court:

Award to the objector, as is common and ordinary in class action settlements, an objector award of 5%-10%+ of any reduction to the $26.5 million in fees and expense reductions counsel is now demanding in their submissions which will improve and increase the common fund and benefit the class from it's now proposed $52 million net to the class. I performed the following tasks on behalf of the class to increase the size of the common fund for the class's benefit:

- Read through, reviewed and took notes of the original 26 page complaint.

- Read through reviewed and took notes of the 189 page amended complaint.

- Read through, reviewed and took notes of the 125 page opposition to dismiss brief.

- Read through, reviewed and took notes of the 89 page opinion of Judge Sweet.

- Reviewed and took notes of the 12 page notice and 9 page claim form.

- Read through, reviewed and took notes of all 386 pages of settlement and fee briefs filed by Counsel on 08-10-07

- Discovered, reviewed and took notes of the 43 page NERA attached report that rebuts counsels' experts attempting to gouge the class damage estimate and fee percentage.

- Read through, reviewed and considered whether a 40 page pocket guide for judges involving class actions would be useful in this case. Not needed.

- Cross referenced a lot of information ( e*trades 10Q's for example) and used Google to uncover information I used in the objection and a bunch of the attachments

- Spoke to a lawyer and accountant seeking to use and confirm other information that was used in this objection.

- Discovered, read through, reviewed and took notes on the attached 11 page

document titled CAFA Notice Requirements for Class Actions Settlements

- Read through, reviewed and took notes of some other select documents on the Court docket.

- Assembled the seven separate attachments totaling seventy pages.

- Wrote the attached 87 page objection.

The ultimate question to be resolved is this:

Is the end result reasonable to all parties and if not what if anything needs to or can be changed to make it satisfactory unless it is too flawed to ever be fixed.

I incorporate by references any other objections filed in this case that are not inconsistent with my own.

Thank you for your time, attention and patience in reviewing this objection. This objector hopes it has made positive impact for the court and class.

I certify that the above information is true and accurate to the best of my knowledge.

Dated September 07, 2012

Respectfully Submitted,

Chris Andrews, Pro Se

23610 Hazen Road

Southfield, Michigan 48033

email caaloa at gmail.com

Telephone 1-248-635-3810

I hereby certify that on this day I mailed the foregoing to the Clerk of the Court, and

served true and correct copies upon class counsel and defendants' counsel via USPS Next

Day Air at the addresses below per the instructions in the settlement notice to:

Clerk of the Court, Southern District of New York, Daniel Patrick Moynihan U.S.

Courthouse, 500 Pearl Street, New York New York 10007-1316

Brower Piven P.C. Attention: Mr. David Brower, 488 Madison Avenue, Eighth Floor,

New York, New York 10022

Davis Polk & Wardell LLP, Attention: Ms. Amelia Starr, 450 Lexington Avenue, New

York, New York 10017

Dated this 7th day of September, 2012

Chris Andrews

**TD AMERITRADE**
Apex
800-669-3900
TD AMERITRADE
DIVISION OF TD AMERITRADE INC
PO BOX 2209
OMAHA, NE 68103-2209

Statement Reporting Period:
08/01/07 - 08/31/07

**Statement for Account #** 

CHRIS ANDREWS
23610 HAZEN DRIVE
SOUTHFIELD, MI 48034-2507

**Announcements:**
CONDITIONAL ORDERS:
TRADE MORE EFFICIENTLY AND MANAGE
RISK. CONDITIONAL ORDERS CAN HELP.
DISCOVER YOUR ORDER CHOICES.
LOG ON. SELECT THE TRADE MENU.

**Statement for Account # 884-141726**
08/01/07 - 08/31/07

## Income Summary Detail

| Description | Current | Year to Date |
|---|---|---|
| Interest Income Credit Balance | $ 0.01 | $ 0.01 |
| Margin Interest Charged | 0.00 | (0.11) |
| MMDA Interest | 0.09 | 0.10 |

## Account Activity

| Trade Date | Settle Date | Account Type | Transaction | Description | Symbol/ Cusip | Quantity | Price | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| Opening balance | | | | | | | | | $ 0.00 |
| 08/20/07 | 08/20/07 | Margin | Journal | REDEMPTION TD BANK USA, NA MMDA FDIC INSR | | | 0.00 | 1,000.00 | |
| 08/17/07 | 08/22/07 | Margin | Buy | E*TRADE FINANCIAL CORP COM | ETFC | 300 | 14.25 | (4,284.95) | (4,284.95) |
| 08/17/07 | 08/22/07 | Margin | Sell | E*TRADE FINANCIAL CORP COM | ETFC | 300- | 14.561 | 4,358.28 | 73.33 |
| 08/20/07 | 08/23/07 | Margin | | | | | 14.20 | (4,444.05) | (1,038.62) |