Summary of E TRADE FINANCIAL CORP - Yahoo! Finance                                                                    Page 4 of 5

Case 1:07-cv-08538-JPO-MHD   Document 142-2   Filed 09/10/12   Page 1 of 12

|  | | | | | |
|---|---:|---:|---:|---:|---|
| Net impairment | | (14.9) | (37.7) | 22.8 | (60)% |
| Other revenues | | 39.3 | 46.3 | (7.0) | (15)% |
| Total non-interest income | | 816.6 | 851.6 | (35.0) | (4)% |
| Total net revenue | $ | 2,036.6 | $ 2,077.9 | $ (41.3) | (2)% |

**Net Operating Interest Income**

Net operating interest income decreased 1% to $1.2 billion for the year ended December 31, 2011 compared to 2010. Net operating interest income is earned primarily through investing customer cash and deposits in interest-earning assets, which include: margin receivables, real estate loans, available-for-sale securities and held-to-maturity securities.

The following table presents enterprise average balance sheet data and enterprise income and expense data for our operations, as well as the related net interest spread, yields and rates and has been prepared on the basis required by the SEC's Industry Guide 3, "Statistical Disclosure by Bank Holding Companies" (dollars in millions):

Table of Contents

| | Year Ended December 31, | | | | |
|---|---|---|---|---|---|---|---|
| | \multicolumn{3}{c}{2011} | \multicolumn{3}{c}{2010} | |
| | Average Balance | Operating Interest Inc./Exp. | Average Yield/ Cost | Average Balance | Operating Interest Inc./Exp. | Average Yield/ Cost | Average Balance |
| Enterprise interest-earning assets: | | | | | | | |
| Loans(1) | $ 14,689.8 | $ 692.1 | 4.71 % | $ 18,302.2 | $ 879.0 | 4.80 % | $ 23,11? |
| Margin receivables | 5,374.8 | 221.7 | 4.13 % | 4,532.5 | 200.3 | 4.42 % | 3,10? |
| Available-for-sale securities | 15,326.5 | 422.5 | 2.76 % | 13,275.9 | 387.5 | 2.92 % | 11,59? |
| Held-to-maturity securities | 4,177.1 | 136.9 | 3.28 % | 1,085.8 | 35.9 | 3.31 % | |
| Cash and equivalents | 1,618.9 | 3.2 | 0.20 % | 2,414.3 | 5.4 | 0.22 % | 4,21? |
| Segregated cash and investments | 915.6 | 0.9 | 0.10 % | 857.1 | 1.9 | 0.22 % | 1,78? |
| Securities borrowed and other | 620.9 | 48.8 | 7.85 % | 662.9 | 29.4 | 4.43 % | 69( |
| Total enterprise interest-earning assets | 42,723.6 | 1,526.1 | 3.57 % | 41,130.7 | 1,539.4 | 3.74 % | 44,50? |
| Non-operating interest-earning and non-interest earning assets(2) | 4,339.5 | | | 4,395.1 | | | 3,87? |
| Total assets | $ 47,063.1 | | | $ 45,525.8 | | | $ 48,37? |
| Enterprise interest-bearing liabilities: | | | | | | | |
| Retail deposits: | | | | | | | |
| Sweep deposits | $ 17,513.1 | 13.4 | 0.08 % | $ 14,014.4 | 10.1 | 0.07 % | $ 11,02? |
| Complete savings deposits | 6,174.4 | 16.1 | 0.26 % | 7,577.0 | 28.6 | 0.38 % | 11,53? |
| Other money market and savings deposits | 1,071.5 | 2.5 | 0.23 % | 1,114.6 | 2.8 | 0.25 % | 1,24? |
| Checking deposits | 783.2 | 0.8 | 0.10 % | 761.9 | 0.9 | 0.11 % | 79? |
| Certificates of deposit | 270.7 | 7.3 | 2.70 % | 795.3 | 14.5 | 1.82 % | 1,75( |
| Brokered certificates of deposit | 48.8 | 2.7 | 5.58 % | 115.3 | 5.9 | 5.14 % | 19? |
| Customer payables | 5,456.3 | 8.6 | 0.16 % | 4,713.2 | 7.0 | 0.15 % | 4,66? |
| Securities sold under agreements to repurchase | 5,417.2 | 153.1 | 2.83 % | 6,154.3 | 129.6 | 2.11 % | 6,72? |
| Federal Home Loan Bank ("FHLB") advances and other borrowings | 2,741.1 | 106.2 | 3.87 % | 2,754.3 | 119.3 | 4.33 % | 3,39? |
| Securities loaned and other | 634.8 | 1.5 | 0.23 % | 622.4 | 1.6 | 0.26 % | 51? |
| Total enterprise interest-bearing liabilities | 40,111.1 | 312.2 | 0.78 % | 38,622.7 | 320.3 | 0.83 % | 41,84( |
| Non-operating interest-bearing and non-interest bearing liabilities (3) | 2,285.9 | | | 2,876.4 | | | 3,558. |
| Total liabilities | 42,397.0 | | | 41,499.1 | | | 45,39? |
| Total shareholders' equity | 4,666.1 | | | 4,026.7 | | | 2,97? |
| Total liabilities and shareholders' equity | $ 47,063.1 | | | $ 45,525.8 | | | $ 48,37? |
| Excess of enterprise interest-earning assets over enterprise interest-bearing liabilities/Enterprise net interest income/Spread | $ 2,612.5 | $ 1,213.9 | 2.79 % | $ 2,508.0 | $ 1,219.1 | 2.91 % | $ 2,66? |

Reconciliation from enterprise net interest income to net operating interest income (dollars in millions):

| | Year Ended December 31, | | |
|---|---|---|---|
| | 2011 | 2010 | 2009 |
| Enterprise net interest income | $ 1,213.9 | $ 1,219.1 | $ 1,247.2 |
| Taxable equivalent interest adjustment | (1.2) | (1.2) | (2.1) |
| Customer cash held by third parties and other(4) | 7.3 | 8.4 | 15.5 |
| Net operating interest income | $ 1,220.0 | $ 1,226.3 | $ 1,260.6 |

(1) Nonaccrual loans are included in the respective average loan balances. Income on such nonaccrual loans is recognized on a cash basis.

(2) Non-operating interest-earning and non-interest earning assets consist of property and equipment, net, goodwill, other intangibles, net and other assets that do not generate operating interest income. Some of these assets generate corporate interest income.

(3) Non-operating interest-bearing and non-interest bearing liabilities consist of corporate debt and other liabilities that do not generate operating interest expense. Some of these liabilities generate corporate interest expense.

(4) Includes interest earned on average customer assets of $3.7 billion, $3.1 billion and $2.9 billion for the years ended December 31, 2011, 2010 and 2009, respectively, held by parties outside the

Summary of E TRADE FINANCIAL CORP - Yahoo! Finance

Case 1:07-cv-08538-JPO-MHD Document 142-2 Filed 09/10/12 Page 2 of 12

Page 5 of 5

Company, including third party money market funds and sweep deposit accounts at unaffiliated financial institutions.

**Table of Contents**

| | Year Ended December 31, | | |
|---|---|---|---|
| | 2011 | 2010 | 2009 |
| Enterprise net interest: | | | |
| Spread | 2.79 % | 2.91 % | 2.72 % |
| Margin (net yield on interest-earning assets) | 2.84 % | 2.96 % | 2.80 % |
| Ratio of enterprise interest-earning assets to enterprise interest-bearing liabilities | 106.51 % | 106.49 % | 106.36 % |
| Return on average: | | | |
| Total assets | 0.33 % | (0.06)% | (2.68)% |
| Total shareholders' equity | 3.36 % | (0.71)% | (43.61)% |
| Average equity to average total assets | 9.91 % | 8.84 % | 6.15 % |

The fluctuation in enterprise interest-earning assets is driven primarily by changes in enterprise interest-earning liabilities, specifically customer cash and deposits. Average enterprise interest-earning assets increased 4% to $42.7 billion for the year ended December 31, 2011 compared to 2010. This was primarily a result of the increases in average margin receivables and average available-for-sale and held-to-maturity securities, offset by decreases in average loans and average cash and equivalents.

Average enterprise interest-bearing liabilities increased 4% to $40.1 billion for the year ended December 31, 2011 compared to 2010. The increase in average enterprise interest-bearing liabilities was primarily due to increases in average sweep deposits and average customer payables, offset by a decrease in average securities sold under agreements to repurchase.

Enterprise net interest spread decreased by 12 basis points to 2.79% for the year ended December 31, 2011 compared to 2010, reflecting yields on average enterprise interest-earning assets and the current interest rate environment. We expect enterprise net interest spread to continue to compress and, given the continued challenges of the current interest rate environment, our enterprise net interest spread could average less than 2.50% for the year ending December 31, 2012.

**Commissions**

Commissions revenue increased 1% to $436.2 million for the year ended . . .

Add ETFC to Portfolio    Set Alert    Email to a Friend

Get SEC Filings for Another Symbol: [    ] GO Symbol Lookup

Quotes & Info for ETFC - All Recent SEC Filings

Sign Up for a Free Trial to the NEW EDGAR Online Pro
Detailed SEC, Financial, Ownership and Offering Data on over 12,000 U.S. Public Companies.
Actionable and easy-to-use with searching, alerting, downloading and more.
Request a Trial □□□□□ Sign Up Now

Copyright © 2012 Yahoo! Inc. All rights reserved. Privacy Policy - About Our Ads - Terms of Service - Copyright/IP Policy - Send Feedback - Yahoo! - ABC News Network
SEC Filing data and information provided by EDGAR Online, Inc. (1-800-416-6651). All information provided "as is" for informational purposes only, not intended for trading purposes or advice. Neither Yahoo! nor any of independent providers is liable for any informational errors, incompleteness, or delays, or for any actions taken in reliance on information contained herein. By accessing the Yahoo! site, you agree not to redistribute the information found therein.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re LEHMAN BROTHERS SECURITIES AND ERISA LITIGATION<br><br>**This Document Applies To:**<br><br>*In re Lehman Brothers Equity/Debt Securities Litigation*, 08-CV-5523-LAK | Case No. 09-MD-2017 (LAK)<br><br>**ECF CASE** |

## STIPULATION WITHDRAWING OBJECTION

WHEREAS, as set forth in Lead Plaintiffs' papers supporting the D&O Settlement, Lead Plaintiffs obtained a $90 million settlement after nearly four years of litigation and extensive negotiations; the available liability insurance for Lehman's Officers and Directors was wasting due to defense costs and competing claims; and Lead Counsel retained the Honorable John S. Martin (Ret.) to perform an evaluation of the liquid net worth of the Officer Defendants to assure that securing $90 million now was the best option for maximizing the recovery for the D&O Settlement Class;

WHEREAS, Lead Plaintiffs and Lead Counsel believe that the D&O Settlement is a favorable outcome for the D&O Settlement Class and have recommended its approval to the Court;

WHEREAS, Chris Andrews ("Andrews"), a D&O Settlement Class Member by virtue of his purchase of shares of Lehman common stock during the Class Period, filed an objection to the D&O Settlement and the application for an award of attorney's fees and reimbursement of expenses in connection with the D&O Settlement in the above-captioned matter, a copy of which is docketed with the Court as Docket No. 353 (the "Andrews' Objection");

WHEREAS, as reflected in the Andrews' Objection, Andrews objected to, among other things, the $50 minimum distribution per Authorized Claimant, as well as the process by which the Honorable John S. Martin (Ret.) evaluated the combined liquid net worth of the Officer Defendants;

WHEREAS, Andrews hereby acknowledges that the objections that he had set forth in his Objection (other than the $50 minimum distribution and the procedure for the liquid net worth evaluation), were appropriately and fully addressed in Lead Plaintiffs' settlement submission of April 5, 2012, Docket Nos. 378-379;

WHEREAS, the Court held a final hearing on April 12, 2012, during which the Court asked Lead Counsel about the $50 minimum distribution and the liquid net worth evaluation;

WHEREAS, the Court further instructed Lead Counsel to submit a revised proposed order stating that the Court, in connection with Lead Plaintiff's later Motion to Distribute the Net Settlement Fund following the claims administration process, may reduce the $50 threshold for minimum distribution;

WHEREAS, the Court further requested that Lead Plaintiffs, on or before April 26, 2012, submit additional information related to the liability insurance for Lehman's officers and

2

directors and the liquid net worth evaluation, to assist the Court in making a final determination on the fairness and adequacy of the D&O Settlement;

WHEREAS, Andrews has advised Co-Lead Counsel that he has spent 139 hours working on this matter and that he is typically paid $180 per hour for his time;

WHEREAS, this Stipulation is contingent upon the D&O Settlement being approved by the Court and the Court awarding any attorney's fees to Lead Counsel; and

WHEREAS, the consideration to be paid by virtue of this Stipulation shall be paid entirely out of any Court-awarded attorney's fees and shall not, in any way, diminish the amount due to the D&O Settlement Class in the event that the D&O Settlement shall be approved by the Court;

NOW THEREFORE, the parties to this Stipulation hereby agree as follows:

1. In recognition of the time expended by Andrews, which he believes provided good and valuable benefits to the D&O Settlement Class by assisting the Court in its evaluation of the D&O Settlement and in order to avoid any appeals, Plaintiffs' Counsel hereby agrees, subject to Court approval, to pay $25,000.00 to Andrews out of any award of attorney's fees granted by the Court in the event that the D&O Settlement is approved by the Court;

2. Said amount, upon approval of the Court, shall be paid out of the attorney fees that are ultimately awarded to Plaintiffs' Counsel by the Court and shall be paid to Mr. Andrews within five (5) calendar days after Plaintiffs' Counsel receives its award of attorney's fees and expenses in connection with the above-captioned matter; and

3.      Andrews hereby withdraws his Objection with prejudice and shall not appeal any issues with respect to the D&O Settlement or the Underwriter Settlement.

AGREED AND ACCEPTED AS OF 4/18/12:

*/s/ Chris Andrews*

CHRIS ANDREWS
23610 Hazen Street
Southfield, MI 48033-2507

BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP

*/s/ David R. Stickney / DK*

DAVID R. STICKNEY
MAX W. BERGER
STEVEN B. SINGER
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Tel: (212) 554-1400
Fax: (212) 554-1444
-and-
DAVID R. STICKNEY
BRETT M. MIDDLETON
JON F. WORM
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel: (858) 793-0070
Fax: (858) 793-0323


KESSLER TOPAZ MELTZER & CHECK, LLP

*/s/ David Kessler*

DAVID KESSLER
JOHN A. KEHOE
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056

*Co-Lead Counsel for Plaintiffs*

4

Case 1:07-cv-08538-JPO-MHD   Document 142-2   Filed 09/10/12   Page 7 of 12

ETFC Key Statistics | E*TRADE Financial Corporation Stock - Yahoo! Finance    Page 1 of 2

New User? Register    Sign In    Help                Make Y! My Homepage                                                  Mail    My Y!    Yahoo!

Search                                                                                              Search Web

| HOME | INVESTING | NEWS | PERSONAL FINANCE | MY PORTFOLIOS | EXCLUSIVES |

Get Quotes    Finance Search                              Fri, Aug 31, 2012, 4:12pm EDT - US Markets are closed

Dow ↑0.69%   Nasdaq ↑0.60%

**ETFC**

E*TRADE Financial Corporation (ETFC) - NasdaqGS                              Add to Portfolio    Like  64

**8.57** ↑0.07(0.82%)  4:00PM EDT | After Hours: 8.57 ↓0.00 (0.01%) 4:12PM EDT - Nasdaq Real Time Price

## Key Statistics

Get Key Statistics for: [        ]  GO

Data provided by Capital IQ, except where noted.

| Valuation Measures | |
|---|---|
| Market Cap (intraday)[5]: | 2.45B |
| Enterprise Value (Aug 31, 2012)[3]: | 9.51B |
| Trailing P/E (ttm, intraday): | 15.07 |
| Forward P/E (fye Dec 31, 2013)[1]: | 14.81 |
| PEG Ratio (5 yr expected)[1]: | 1.13 |
| Price/Sales (ttm): | 1.76 |
| Price/Book (mrq): | 0.48 |
| Enterprise Value/Revenue (ttm)[3]: | 6.88 |
| Enterprise Value/EBITDA (ttm)[6]: | N/A |

| Financial Highlights | |
|---|---|
| **Fiscal Year** | |
| Fiscal Year Ends: | Dec 30 |
| Most Recent Quarter (mrq): | Jun 30, 2012 |
| **Profitability** | |
| Profit Margin (ttm): | 12.03% |
| Operating Margin (ttm): | 11.06% |
| **Management Effectiveness** | |
| Return on Assets (ttm): | 0.35% |
| Return on Equity (ttm): | 3.37% |
| **Income Statement** | |
| Revenue (ttm): | 1.38B |
| Revenue Per Share (ttm): | 4.85 |
| Qtrly Revenue Growth (yoy): | -8.10% |
| Gross Profit (ttm): | 1.42B |
| EBITDA (ttm)[6]: | N/A |
| Net Income Avl to Common (ttm): | 166.45M |
| Diluted EPS (ttm): | 0.57 |
| Qtrly Earnings Growth (yoy): | -16.10% |
| **Balance Sheet** | |
| → Total Cash (mrq): | → 2.26B |
| Total Cash Per Share (mrq): | 7.92 |
| Total Debt (mrq): | 9.35B |
| Total Debt/Equity (mrq): | 184.05 |
| Current Ratio (mrq): | 1.60 |
| Book Value Per Share (mrq): | 17.78 |
| **Cash Flow Statement** | |

| Trading Information | |
|---|---|
| **Stock Price History** | |
| Beta: | 2.35 |
| 52-Week Change[3]: | -25.44% |
| S&P500 52-Week Change[3]: | 19.21% |
| 52-Week High (Sep 7, 2011)[3]: | 11.89 |
| 52-Week Low (Jul 25, 2012)[3]: | 7.08 |
| 50-Day Moving Average[3]: | 8.05 |
| 200-Day Moving Average[3]: | 9.05 |
| **Share Statistics** | |
| Avg Vol (3 month)[3]: | 5,686,270 |
| Avg Vol (10 day)[3]: | 3,638,540 |
| Shares Outstanding[5]: | 285.64M |
| Float: | 230.07M |
| % Held by Insiders[1]: | 0.30% |
| % Held by Institutions[1]: | 84.60% |
| Shares Short (as of Aug 15, 2012)[3]: | 11.57M |
| Short Ratio (as of Aug 15, 2012)[3]: | 1.80 |
| Short % of Float (as of Aug 15, 2012)[3]: | 4.50% |
| Shares Short (prior month)[3]: | 11.19M |
| **Dividends & Splits** | |
| Forward Annual Dividend Rate[4]: | N/A |
| Forward Annual Dividend Yield[4]: | N/A |
| Trailing Annual Dividend Yield[3]: | N/A |

ETFC Key Statistics | E*TRADE Financial Corporation Stock - Yahoo! Finance

Case 1:07-cv-08538-JPO-MHD   Document 142-2   Filed 09/10/12   Page 8 of 12

Page 2 of 2

| | | | |
|---|---|---|---|
| Operating Cash Flow (ttm): | 947.38M | Trailing Annual Dividend Yield[3]: | N/A |
| Levered Free Cash Flow (ttm): | N/A | 5 Year Average Dividend Yield[4]: | N/A |
| | View Financials | Payout Ratio[4]: | N/A |
| | Income Statement - Balance Sheet - Cash Flow | Dividend Date[3]: | N/A |
| | | Ex-Dividend Date[4]: | N/A |
| | | Last Split Factor (new per old)[2]: | 1:10 |
| | | Last Split Date[3]: | Jun 2, 2010 |

See Key Statistics Help for definitions of terms used.

**Abbreviation Guide: K = Thousands; M = Millions; B = Billions**
mrq = Most Recent Quarter (as of Jun 30, 2012)
ttm = Trailing Twelve Months (as of Jun 30, 2012)
yoy = Year Over Year (as of Jun 30, 2012)
lfy = Last Fiscal Year (as of Dec 31, 2011)
fye = Fiscal Year Ending

[1] Data provided by Thomson Reuters

[2] Data provided by EDGAR Online

[3] Data derived from multiple sources or calculated by Yahoo! Finance

[4] Data provided by Morningstar, Inc.

[5] Shares outstanding is taken from the most recently filed quarterly or annual report and Market Cap is calculated using shares outstanding.

[6] EBITDA is calculated by Capital IQ using methodology that may differ from that used by a company in its reporting

Currency in USD.

Copyright © 2012 Yahoo! Inc. All rights reserved Privacy Policy - About Our Ads - Terms of Service - Copyright/IP Policy - Send Feedback - Yahoo! - ABC News Network

Quotes are real-time for NASDAQ, NYSE, and NYSE MKT. See also delay times for other exchanges All information provided "as is" for informational purposes only, not intended for trading purposes or advice. Neither Yahoo! nor any of independent providers is liable for any informational errors, incompleteness, or delays, or for any actions taken in reliance on information contained herein. By accessing the Yahoo! site, you agree not to redistribute the information found therein Real-Time continuous streaming quotes are available through our premium service. You may turn streaming quotes on or off

Fundamental company data provided by Capital IQ. Historical chart data and daily updates provided by Commodity Systems, Inc. (CSI). International historical chart data, daily updates, fund summary, fund performance, dividend data and Morningstar Index data provided by Morningstar, Inc. US Financials data provided by Edgar Online and all other Financials provided by Capital IQ. International historical chart data, daily updates, fundAnalyst estimates data provided by Thomson Financial Network. All data povided by Thomson Financial Network is based solely upon research information provided by third party analysts Yahoo! has not reviewed, and in no way endorses the validity of such data. Yahoo! and ThomsonFN shall not be liable for any actions taken in reliance thereon.

News



# Judge slashes fees in Bluetooth case

**Federal judge in California cites high plaintiff fees in consumer class action that 'no reasonable client would pay'**

By Amanda Bronstad ContactAll Articles

The National Law Journal

August 9, 2012

A federal judge has slashed by more than half the plaintiffs fees in a closely watched consumer class action involving Bluetooth headsets, concluding that "no reasonable paying client" would pay such an amount.

U.S. District Judge Dale Fischer in Los Angeles on July 31 approved a settlement in the litigation, resolving claims that the headsets should have carried warnings about hearing loss. But she lowered the plaintiffs fees and costs to nearly $283,000 from the $800,000 figure she originally approved.

The U.S. Court of Appeals for the Ninth Circuit, reviewing an appeal of the original settlement brought by objector counsel Ted Frank, founder of the Center for Class Action Fairness in Washington, rejected the deal, concluding that Fischer had not adequately tested whether the fees were excessive. The settlement awards $100,000 in cy pres, or charitable, contributions, but no money for the class.

On remand, Fischer admitted she had "stopped too soon" during her first evaluation of the billing records.

"No reasonable paying client, and certainly not a sophisticated client paying out of its own pocket, would pay the amount of fees billed for some of the tasks performed in this case," she wrote.

The multidistrict litigation combined 26 prospective class actions alleging that the technology company defendants had failed to publicize the risk of hearing loss associated with prolonged use of Bluetooth headsets. In addition to the cy pres award, the settlement provided injunctive relief in the form of warning labels on headset packaging.

The Ninth Circuit, in rejecting the deal, cited potentially excessive fees and numerous "red flags" including a "clear sailing" provision, under which the defendants agreed not to object to the fees, and a reversion agreement, under which the fees not awarded would revert to the defendants rather than to a cy pres fund or the class.

Following the Ninth Circuit's decision, Motorola Inc. and the other defendants reviewed billing records for the seven plaintiffs firms from April 1, 2006 through July 31, 2009. They estimated that the justified payment was closer to $1.3 million — far in excess of the $800,000 requested. Plaintiffs attorneys had submitted an estimate of $1.6 million. But the defense also cited concerns about some of the bills.

Mark Cramer, a partner in the Los Angeles office of Kirkland & Ellis who represents Motorola and Plantronics Inc., another defendant, did not return a call for comment.

Fischer spent most of her ruling addressing the plaintiffs billing records.

She concluded that the actual "lodestar" amount — calculated by multiplying the number of hours reasonably spent on the case by a reasonable hourly rate — came to about $930,000, even with numerous deductions taken into account.

But the fees, she deduced, weren't reasonable in light of what plaintiffs attorneys actually achieved.

She took particular aim at Pearson, Simon, Warshaw & Penny and Wasserman Comden Casselman & Esensten, whose billing submissions indicated that no "lower level attorneys" had assisted the partners on the case.

"Had the Court known that neither firm had the proper staffing available, it likely would not have found them to be appropriate as class counsel," she wrote. "Certainly no reasonable paying client would find this to be justification for billing a partner rate for paralegal or secretarial work."

Daniel Warshaw, name partner at Sherman Oaks, Calif.-based Pearson Simon, did not return a call for comment. Robert Esensten, name partner at Wasserman Comden in Tarzana, Calif., attributed the partner billings to growth in its class action department at the time.

Addressing the defense's deductions, Fischer agreed that the bills warranted a further cut of $206,000 for reasons including vague or mistaken time entries, multiple attendance at events, unnecessary travel time, overstaffing and billing for summer associate time. "No reasonable paying client will pay for 'training' summer associates," she wrote.

As for one firm, Wyly-Rommel in Texarkana, Texas, defense counsel had recommended that its fee request be cut by 30 percent across the board — about $62,000 — mostly due to vague descriptions of the tasks performed. Fischer concluded that such a reduction was "generous."

"I'm never going to question a judge, but obviously there was some dissatisfaction," said James Wyly, founding partner of Wyly-Rommel. "We lost a lot of time and money, but we're going to move on."

The judge also criticized the fees charged by Wasserman Comden and Los Angeles-based Kirtland & Packard for preparing some of the earlier complaints in the case. Billings from Wasserman Comden and Garcia, Artigliere & Schadrack of Long Beach, Calif., for "court hearings/case administration" also were "excessive" compared to the other firms, she wrote.

Esensten said: "The criticisms of the court relating to our firm do not take into consideration the fact that there are multiple firms, this was nationwide class, and there's got to be, and there are in all these cases, some duplication of work in that there are documents that have to be reviewed by the various firms."

Kirtland & Packard partner Michael Kelly and Stephen Garcia, senior partner in Garcia Artigliere, did not return calls for comment.

Fischer slashed $175,000 related to the settlement conference, plus $50,000 for work associated with approving the settlement.

"While some success was obtained in this case, it was minimal and did not match the level of time and effort that Plaintiffs' counsel put into the case," she wrote. "The actual results certainly fell far short of the original goals of the case both for monetary and injunctive relief." She noted that class members received no money and the cy pres award was "minimal."

"The success actually obtained," she added, "could (and should) have been achieved at far lower cost."

To account for the settlement's failings, she cut the fees to $233,000 — about 25 percent of her revised lodestar calculation — and $50,000 in costs.

A call to Scott Henry, a shareholder at Chicago's Segal McCambridge Singer & Mahoney, another plaintiffs firm on the case, was not returned.

on the case, was not returned.

Despite the criticisms, Fischer approved the settlement, finding no evidence of collusion.

"Because the suit could not be dismissed and might well have survived both class certification and summary judgment, yet had relatively little likelihood of achieving anything more than injunctive relief, the Court concludes the settlement was fair, adequate, and reasonable," Fischer wrote. "There is no evidence (or even any serious argument) that the class had any realistic possibility of achieving a better result than that obtained by Plaintiffs' counsel."

*Amanda Bronstad writes for The National Law Journal, a Daily Report affiliate.*

