UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                        :
LARRY FREUDENBERG, Individually and                     :
On Behalf of All Others Similarly Situated,             :
                                                        :   Civil Action No.
            Plaintiff,                                  :
                                                        :   07 Civ. 8538 (JPO) (MHD)
          - against -                                   :
                                                        :
E*TRADE FINANCIAL CORPORATION,                          :
MITCHELL H. CAPLAN, ROBERT J.                           :
SIMMONS and DENNIS E. WEBB,                             :
                                                        :
            Defendants.                                 :
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO OBJECTIONS AND IN FURTHER
SUPPORT OF (1) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
NOTICE AND FINAL CERTIFICATION OF THE CLASS FOR PURPOSES OF
SETTLEMENT, (2) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE
PROPOSED SETTLEMENT AND THE PROPOSED PLAN OF ALLOCATION, AND (3)
PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES**

**BROWER PIVEN**
 **A Professional Corporation**
David A.P. Brower
Brian C. Kerr
488 Madison Avenue, 8th Floor
New York, NY 10022
T: (212) 501-9000
F: (212) 501-0300

*Lead Counsel for Plaintiffs*

**LEVI & KORSINSKY, LLP**
Eduard Korsinsky
Shannon L. Hopkins
30 Broad Street, 15th Floor
New York, NY 10004
T: (212) 363-7500
F: (212) 363-7171

*Co-Lead Counsel for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................ 1

ARGUMENT ………........................................................................................... 7

    I.    THE REACTION OF THE SETTLEMENT CLASS SUPPORTS THE
    SETTLEMENT, PLAN OF ALLOCATION, AND REQUESTED FEES AND
    EXPENSES ........................................................................................... 7

    II.    MESSRS. LILES AND ANDREWS HAVE NO STANDING TO OBJECT ....... 10

    III.    PLAINTIFFS' RESPONSE TO THE OBJECTIONS ........................................... 13

        A.    The Liles Objection ........................................................................ 14

        B.    The Behar Objection ...................................................................... 18

        C.    The Andrews Objection .................................................................. 20

                1. Mr. Andrews' Additional Points ........................................ 24

                a. The Plan of Allocation ................................................. 24

                b. The Absence of Collusion ........................................... 25

                c. "Errors in Pleadings, Missing Count, Error in Prayer for
                   Relief Causing Low Settlement Recovery" .............................. 26

                d. "Slam Dunk Fraud and Insider Trading Evidence Abounds" .... 27

                e. "What About the Auditor?" ........................................... 27

                f. "Expert's Fake, Maximum Damages Recoverable by the
                   Class at Trial Claim Detailed" ................................................. 28

                g. "More Questions" ....................................................... 29

                h. "$559 Million Trojan Horse Settlement" .................................. 30

                i. "E*TRADE's 'Trojan Horse' Token Contribution" .................. 31

                j. "The Glaring SEC Omission in Counsels' Declaration" ........... 32

                k. "Unclaimed Funds" ..................................................... 33

1. The Fee and Expense Application  ................................................. 33

IV.    THE *PRO SE* OBJECTORS CANNOT BE COMPENSATED  ...................................... 37

CONCLUSION ….......................................................................................................... 40

## TABLE OF AUTHORITIES

*In re Am. Int'l Grp., Inc. Sec. Litig.*, 452 F. App'x 75 (2d Cir. 2012) ......................... 3, 17

*In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 Civ. 9141 (DAB),
    2010 U.S. Dist. LEXIS 129196 (S.D.N.Y. Dec. 2, 2010)…………………………..18

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................... 35

*In re AOL Time Warner ERISA Litig.*, No. 02 Cv. 8853 (SWK),
    2008 U.S. Dist. LEXIS 28785 (S.D.N.Y. Apr. 9, 2008)................................... 4, 30

*In re AOL Time Warner ERISA Litig.*, No. 02 Cv. 8853 (SWK),
    2007 U.S. Dist. LEXIS 99769 (S.D.N.Y. Nov. 28, 2007) .................................. 30

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500,
    2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. April 6, 2006) ......................8, 12, 13, 30

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164
    (S.D.N.Y. 2000) ......................................................................................32

*In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. 2002)…………………10

*Banyai v. Mazur,* No. 00 Civ. 9806 (SHS), 2007 U.S. Dist. LEXIS 22342
    (S.D.N.Y. Mar. 27, 2007) ....................................................................... 9

*BD et al., v. DeBuono*, 193 F.R.D. 117 (S.D.N.Y. 2000) .................................. 39

*Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993)................................. 9

*In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JRS), 2007 U.S. Dist. LEXIS 51087
    (S.D.N.Y. July 16, 2007) ......................................................................17

*Blatt v. Dean Witter Reynolds Intercapital, Inc.*, 732 F.2d 304 (2d Cir. 1984) .............. 36

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .............. 34, 35

*Bowling v. Pfizer, Inc.*, 143 F.R.D. 141 (S.D. Oh. 1992) ..................................24

*Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799 (3d Cir. 1974)................................ 10

*Burka v. United States HHS*, 142 F.3d 1286 (D.C. Cir. 1998) ..........................................39

*Butt v. Megabus Northeast LLC*, No. 11-cv-3993 (JPO), 2012 U.S. Dist. LEXIS 137683
    (S.D.N.Y. Sept. 25, 2012)..................................................................5, 7, 8, 23, 32

*Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59 (2d Cir. 1990) .......... 38

*In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB),
2011 U.S. Dist. LEXIS 53007 (S.D.N.Y. May 13, 2011) .....................................6

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)................................ passim

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197
(D. Me. 2003)........................................................................................... 14

*In re Comverse Tech., Inc. Sec Litig.*, No. 06-1825, 2007 U.S. Dist. LEXIS 14878
(E.D.N.Y. Mar. 2, 2007) ...........................................................................12

*County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295 (2d Cir. 1990) ................. 9

*Curtiss-Wright Corp. v. Helfand*, 687 F.2d 171 (7th Cir. 1982) ............................... 24, 25

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)...............................................9, 32

*Duhaime v. John Hancock Mutual Life Ins. Co.*, 177 F.R.D. 54 (D. Mass. 1997) ......23, 24

*Duncan v. Poythress*, 777 F.2d 1508 (11th Cir. 1985) ................................................... 38

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) ............................................... passim

*EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 (7th Cir. 1985) ............................... 9

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240,
2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ....................................19

*In re Excess Value Ins. Coverage Litig.*, No. MDL-1339,
2004 U.S. Dist. LEXIS 14822 (S.D.N.Y. July 30, 2004) .................................... 36

*In re First Cap. Holdings Corp. Fin. Prods. Sec. Litig.*, 33 F.2d 29 (9th Cir. 1994)……11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED),
2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 8, 2010)...............................17, 36

*Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975) ................................................. 9, 10

*Freudenberg v. E*TRADE Fin. Corp.*, 712 F. Supp. 2d 171 (S.D.N.Y. 2010) ...............26

*Frisch v. Comm'r*, 87 T.C. 838 (1986) ....................................................................... 38

*Garst v. Franklin Life Life Ins. Co.*, No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666
(N.D. Ala. June 28, 1999) ........................................................................... 24

iv

*In re Giant Interactive Grp., Inc.* Sec. Litig., 279 F.R.D. 151
    (S.D.N.Y. Nov. 2, 2011) ....................................................................24

*Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084 (9th Cir. 2011)………………………..11

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436
    (S.D.N.Y. 2004)............................................................... 19, 26, 31, 32

*Glover v. Crestwood Lake Section 1 Holding Corp.*, No. 89 Civ 5386 (MJL),
    1991 U.S. Dist. LEXIS 4995 (S.D.N.Y. Apr. 10, 1991) ...................................... 23

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) .................................... 33

*Grant v. Bethlehem Steel Corp.*, 823 F.2d 20 (2d Cir. 1987)  ............................................ 9

*Greater Penn. Carpenters Pension Fund v. Whitehall Jewelers, Inc.*, No. 04-cv-1107
    (N.D. Ill. July 24, 2006) ....................................................................18

*Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990) ..................................................... 9

*Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998) .................................... 39

*In re Holocaust Victim Assets Litig.*, 311 F. Supp. 2d 363 (E.D.N.Y. 2004) .................. 14

*In re Impax Labs., Inc. Sec. Litig.*, No. 04-04802, 2008 U.S. Dist. LEXIS 104485
    (N.D. Cal. Apr. 17, 2008) ................................................................... 12

*In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180
    (S.D.N.Y. 2003) ............................................................................18

*In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) ................ 24

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ...................................................... 9

*Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20 (2d Cir. 1983) ........................... 38

*Kay v. Ehrler*, 499 U.S. 432 (1991)  ............................................... 6, 37, 38, 40

*Knisley v. Network Assocs.*, 312 F.3d 1123 (9th Cir. 2002) ............................................11

*Kops v. NVE Corp.*, No. 06-574, 2006 U.S. Dist. LEXIS 49713
    (D. Minn. July 17, 2006) ...................................................................12

*LaBounty v. Rivera*, No. 95-CV-2617, 2000 U.S. Dist. LEXIS 1881
    (S.D.N.Y. Feb. 22, 2000) ................................................................... 37

*Lamie v. United States Tr.*, 540 U.S. 526 (2004) ............................................................ 16

*Lasky v. International Union*, 638 F.2d 954 (6th Cir. 1981) ........................................... 10

*Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir 1999)...................................................10

*In re Lehman Brothers Sec. and ERISA Litig.*, No. 09-md-02017 (S.D.N.Y) .................21

*Lehocky v. Tidel Tech., Inc.*, 220 F.R.D. 491 (S.D. Tex. 2004)…………………………12

*Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161 (2d Cir. 2005)…………………..10, 11

*Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985)…………………………………………35, 36

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............   7, 9, 19

*Manners v. American Gen. Life Ins. Co.*, No. 3-98-0266
    1999 U.S. Dist. LEXIS 22880 (M.D. Tenn. Aug. 11, 1999) ................................24

*Marisol A. v. Giuliani*, 185 F.R.D. 152 (S.D.N.Y. 1999) ....................................................9

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM),
    2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) ................................. 17

*McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806
    (E.D. Wis. 2009) ..............................................................................................40

*Menton v. Experian Corp.*, No. 02 Civ. 4687(NRB), 2003 U.S. Dist. LEXIS 3325
    (S.D.N.Y. 2003)..............................................................................................38

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) ..................... 18

*Meridian Horizon Fund, L.P. v. KPMG (Cayman)*, Nos. 11-3311-cv,
    2012 U.S. App. LEXIS 14013 (2d Cir. July 10, 2012)  ....................................... 28

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2008) .......................................................................10

*In re Metro. Life Ins. Co. Sales Practices Litig.*, MDL No. 1091,
    1999 U.S. Dist. LEXIS 22688 (W.D. Pa. Dec. 28, 1999)................................23, 24

*Michels v. Phoenix Home Life Mut. Ins. Co.*, Index No. 5318-95,
    1997 N.Y. Misc. LEXIS 171 (N.Y. Sup. Ct. Jan. 3, 1997).................................. 24

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268 (2d Cir. 2011) ................. 27

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465
(S.D.N.Y. 1998) .......................................................................................8, 9, 32

*New York v. Reebok Int'l Ltd.*, 96 F.3d 44 (2d Cir. 1996) ...................................11

*In re Nutella Mktg. & Sales Practices Litig.*, No. 11-1086(FLW)(DEA( (D.N.J.)..........21

*In re OCA, Inc. Sec. and Derivative Litig.*, No. 05-2165,
2009 U.S. Dist. LEXIS 19210 (E.D. La. Mar. 2, 2009)...........................................8

*Ogilvy Group Swed., AB v. Tiger Telematics, Inc.*, No. 05-CV-8488,
2006 U.S. Dist. LEXIS 54581 (S.D.N.Y. July 20, 2006) ......................................37

*O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266 (E.D. Pa. 2003)...........................14

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (C.D. Cal. 2007).................11, 12

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997).................24, 32

*Parker v. Anderson*, 667 F.2d 1204 (5th Cir. 1982) ........................................ 10

*Perlmutter v. Intuitive Surgical, Inc.*, No. 10-03451, 2011 U.S. Dist. LEXIS 16813
(N.D. Cal. Feb. 15, 2011)........................................................................12

*Phemister v. Harcourt Brace Jonanovich, Inc.,* No. 77CV39,
1984 U.S. Dist. LEXIS 23595 (N.D. Ill. Sept. 14, 1984) ...................................... 9

*Phillips v. Tobin*, 548 F.2d 408 (2d Cir. 1976) ............................................ 38

*In re Philips/Magnavox TV Litig.*, No. 09-3072 (CCC),
2012 U.S. Dist. LEXIS 67287 (D.N.J. May 14, 2012) .........................................23

*Pietrangelo v. United States Army*, 568 F.3d 341 (2d Cir. 2009)....................................39

*Pridgen v. Andresen,* 113 F.3d 391 (2d Cir. 1997).......................................... 38

*In re Prudential Insur. Co. of Am. Sales Pracs. Litig.*, 962 F. Supp. 450 (D.N.J. 1997),
*aff'd*, 148 F.3d 283 (3d Cir. 1998)……………………………………………9, 23

*Purcell v. Keane*, 54 F.R.D. 455 (E.D. Pa. 1972) .......................................... 10

*Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983)............................................9

*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) ............................................ 16

*In re Royal Ahold N.V. Secs. & ERISA Litig.*, 1:03-MD-01539 (D. Md.) ........................36

*Russello v. United States*, 464 U.S. 16, 23 (1983) ........................................................ 16

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180 (10th Cir. 2002) ................... 10

*SEC v. Price Waterhouse*, 41 F.3d 805 (2d Cir. 1994) ................................................... 39

*Sewell v. Bovis Lend Lease LMB, Inc.*, No. 09 Civ. 6548,
     2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012).........................................9

*Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) .................. 14

*Silverman v. Motorola, Inc.*, No. 07 C 4507, 2012 U.S. Dist. LEXIS 63477
     (N.D. Ill. May 7, 2012) ........................................................................... 3, 4, 18

*Silverman v. Motorola, Inc.*, No. 07 C 4507, slip op. (N.D. Ill. May 7, 2012)............. 3, 21

*Snell v. Allianz Life Ins. Co.*, No. 97-2784 (RLE), 2000 U.S. Dist. LEXIS 13611
     (D. Minn. Sept. 8, 2000) ....................................................................................... 14

*Stoetzner v. United States Steel Corp.*, 897 F.2d 115 (3d Cir. 1990) ................................9

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ................................................ 9

*In re Sumitomo Copper Litig.*, 189 F.R.D. 274 (S.D.N.Y. 1999) ...................................... 9

*In re Take–Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247 (S.D.N.Y. 2008) ............. 8, 9

*TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456 (2d Cir. 1987)...............................26

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008)....................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)...........................…....22

*In re Texaco Inc. S'holder Deriv. Litig.*, 123 F. Supp. 2d 169
     (S.D.N.Y. 2000) ..................................................................................................... 28

*Thomas v. Albright*, 139 F.3d 227 (D.C. Cir. 1998) .................................................. 39, 40

*In re Tyco Int'l Ltd.*, 535 F. Supp. 2d 249 (D.N.H. 2007) .................................................10

*In re Tyco Int'l Ltd. Sec. Litig.*, MDL No. 02-1335-PB (D.N.H.)…………………….......25

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099
     (S.D.N.Y. 1989) .....................................................................................................11

*United States DOJ v. Hudson*, 626 F.3d 36 (2d Cir. 2010) ..............................................38

*Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005) .......................14, 23

*Velez v. Novartis Pharms. Corp.*, No. 04 Civ. 09194 (CM),
    2010 U.S. Dist. LEXIS 125945, (S.D.N.Y. Nov. 30, 2010) ................................36

*In re WorldCom, Inc. Sec. Litig.*, No. 02 CV 3288, 2004 U.S. Dist. LEXIS 22992
    (S.D.N.Y. Nov. 12, 2004) ................................................................................. 21, 22

*Wright v. Ernst & Young, LLP*, 152 F.3d 169 (2d Cir. 1998)…………………………....28

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008)) ........................................ 7, 10, 23

## FEDERAL STATUTES AND RULES

15 U.S.C. §78t-1(b) ........................................................................................... 26

15 U.S.C. §78u-4 ...........................................................................................  passim

28 U.S.C. §1332(d) ........................................................................................... 2

28 U.S.C. §1453 ............................................................................................... 2

28 U.S.C. §1654 ............................................................................................... 38

28 U.S.C. §§1711-15 ....................................................................................... 2

Fed. R. Civ. P. 12(b)(6) .................................................................................... 27

## MISCELLANEOUS

Fitzpatrick, Brian T., "The End of Objector Blackmail?," 62 Vand. L. Rev. 1623
    (Nov. 2009)........................................................................................... 14

Brunet, Edward, "Class Action Objectors: Extortionist Free Riders or Fairness Guarantors,"
    2003 U. Chi. Legal F. 403 ................................................................... 14

NERA Economic Consulting, "Recent Trends in Securities Class Action Litigation:
    2012 Mid-Year Review"……………………………………………………29

2A C.J.S. Agency §24 (2010) ........................................................................ 38

Black's Law Dictionary 1341 (9th ed. 2009) ........................................... 38

104 H. Rpt. 369 (1995) ..................................................................................16, 17

104 S. Rpt. 98 (1995)......................................................................................17

Plaintiffs[1] respectfully submit this memorandum in response to the four objections and in further support of the following motions: (1) Plaintiffs' Motion for Final Approval of Class Notice and Final Certification of the Class for Purposes of Settlement (Dkt No. 132); (2) Plaintiffs' Motion for Final Approval of the Proposed Settlement and the Proposed Plan of Allocation (Dkt No. 136); and (3) Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (Dkt No. 134).[2]

## INTRODUCTION

The reaction of the Settlement Class to the Settlement has been overwhelmingly positive. Of the over 276,000 notices that were mailed to potential Settlement Class Members, only six putative Settlement Class Members (including one investor who does not fall within the class definition) have sought to exclude themselves from the Settlement Class (*i.e.*, 0.002%).[3] In contrast, over 12,300 claim forms have been submitted to date, with several weeks remaining until the October 31, 2012 deadline, and it is anticipated that many additional claims will be submitted. As discussed below, such a *de minimis* number of opt-outs supports approval of the Settlement, Plan of Allocation, and request for attorneys' fee and expenses.

There are also only four objections (*i.e.*, 0.001% of potential Settlement Class Members). The four objectors are Paul Liles, Leon Behar, Chris Andrews, and Eldon Ventris. Of the four objections, one relates to the Notice of Proposed Settlement of Class Action ("Notice"), two touch on the Plan of Allocation, one relates to the Settlement itself, and all four comment on the attorneys' fee request.[4] These objections apparently represent only 50,331 shares of E*TRADE common stock, out of the approximately 3.2 billion shares of E*TRADE stock that traded during

---

[1] Defined terms are the same as in the Stipulation of Settlement ("Stipulation"), dated May 17, 2012.

[2] The opening briefs in support of these motions are referred to herein, respectively, as "Notice Memorandum," "Settlement Memorandum," and "Fee and Expense Application."

[3] The six exclusions include one potential Settlement Class Member who stated that they wished to be excluded from the Settlement because they did not purchase any applicable E*TRADE securities during the Settlement Class Period. *See* Supplemental Declaration of Jose Fraga ("Supp. Fraga Decl."), dated Oct. 4, 2012, attached to the accompanying Supplemental Brower Declaration, dated Oct. 4, 2012 ("Supp. Brower Decl."), as Ex. A, ¶16(C).

[4] For the Court's convenience, copies of the objections have been compiled and included in the Notice of Timely Filed Objections, with the supporting Declaration of Brian C. Kerr, filed on Sept. 21, 2012. The Objections are referred to herein as follows: Paul Liles' Objection ("Liles Obj."); Leon Behar's Objection ("Behar Obj."); Chris Andrews' Objection ("Andrews' Obj."); Eldon Ventris' Objection ("Ventris Obj.").

1

the Class Period (0.001%), and 0.009% of the 544 million shares eligible to file individual claims in the Settlement.[5] Not only does this extraordinarily small number of objections militate in favor of approval of Plaintiffs' Motions, but it is important to note that, despite widespread institutional holdings of E*TRADE securities during the Class Period (more than 80%),[6] no objections were submitted by any institutional investor, including the States of Ohio and Mississippi, whose pension plans sought appointment as lead plaintiff at the outset of this case. Dkt. Nos. 7, 20. Nor have any objections been filed by any of the numerous federal or state governmental entities that received notice of the Settlement required under the Class Action Fairness Act of 2005, 28 U.S.C. §§1332(d), 1453, & 1711–15 ("CAFA"), including the US Securities and Exchange Commission ("SEC"). Together, these facts strongly support approval of the Settlement, Plan of Allocation and requested attorneys' fees and expenses. Moreover, as demonstrated below, the "substance" of the objections are without factual or legal merit.

As an initial matter, two of the objectors (Messrs. Liles and Andrews) have no legal standing to object. Mr. Liles purchased 23 E*TRADE shares in April 2006, another 8 shares in May 2006, and sold all of his 31 shares in June 2006. Because Mr. Liles sold all of his shares before the first alleged corrective disclosure in July 2007, Mr. Liles, as a matter of law, has no claim under the federal securities laws and cannot recover under the Plan of Allocation; therefore, he has no economic interest in the Settlement or attorneys' fee requests and, thus, no legal standing to object. *Infra* §II.[7] For the same reason, Mr. Andrews, who purchased and sold all of his E*TRADE shares in between two corrective disclosures, has no standing to object, but with the added disabling fact that he made a ***profit*** from his brief (one-day) E*TRADE investment and, thus, suffered no legally compensable loss. *See id*. The Court should, therefore, as a matter of law, summarily reject both Messrs. Liles' and Andrews' objections.

---

[5] *See* Supplemental Declaration of John C. Hammerslough, dated Sept. 23, 2012 ("Hammerslough Supp. Decl."), attached as Ex. M to the Supplemental Brower Declaration.

[6] Declaration of John C. Hammerslough, dated Aug. 9, 2012, Dkt. No. 238-3, ¶36 ("Hammerslough Decl.").

[7] Mr. Liles' transactions from May and June 2006, which show his lack of standing, were not included with his initial objection, which only showed purchase information for April 2006. *See* Supp. Brower Decl. ¶10. His sales information was only provided after Plaintiffs' Counsel requested that documentation. *See* Supp. Brower Decl. Ex. A (Plaintiffs' Counsel's Sept. 21, 2012 letter to Mr. Liles); *id*. at Ex. H (Mr. Liles' response, which shows his purchase of an additional 8 shares of E*TRADE stock and his sale of all 31 E*TRADE shares in June 2006).

Objector Liles (assuming the Court considers his objection) contends that Plaintiffs have violated the requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA") by failing to include in the Notice Plaintiffs' estimate of the average amount of per share damages that would be recoverable if Plaintiffs prevailed on each claim. Liles Obj. at 3-4. Mr. Liles is simply wrong. *Infra* §III.A. As explained below, his argument is based on an incorrect reading of the PSLRA that is not supported by the language of the statute, its legislative history, or the case law (including a recent decision by the Second Circuit, *In re Am. Int'l Grp., Inc. Sec. Litig.*, 452 F. App'x 75, 77 (2d Cir. 2012) ("*AIG*")). Rather, where, as here, the settling parties disagree about per share damages, even assuming liability has been established, the PSLRA only requires that the settlement notice contain a statement of the issues about which the parties disagree – not the per share damages dollar estimate that Mr. Liles suggests is required. 15 U.S.C. §78u-4(a)(7)(B)(ii). Thus, it is not surprising Mr. Liles cites no authority for his flawed argument, particularly given he recently raised this same objection in another case and it was roundly rejected. *See Silverman v. Motorola, Inc.*, 07 C 4507, slip op. (N.D. Ill. May 7, 2012) (overruling Mr. Liles' objection that the notice was deficient under the PSLRA because it did not set forth the average amount of damages that would have been recoverable if the plaintiff prevailed in the litigation).[8]

Mr. Liles' "objection" to the attorneys' fee request is simply derivative of his meritless complaint about the Notice, contending only that "[i]n light of both class counsel's failure to follow the notice requirements of the PSLRA with regard to the Notice to absent class members; and the size of the settlement fund, I maintain that the proposed attorney's fee of 33.33% of the $79,000,000 fund is both unreasonable and excessive." Liles Obj. ¶10. In the same *Motorola* case where Mr. Liles unsuccessfully made the same notice-related objection, he included a virtually identical vague, "catch-all" objection to the attorneys' fee request. As did the *Motorola* court, this Court should reject Mr. Liles' fee objection as it is based only on his erroneous view of the PSLRA's notice requirements, and he has otherwise failed to sufficiently explain his fee objection. *See Silverman v. Motorola, Inc.*, 07 C 4507, 2012 U.S. Dist. LEXIS 63477, *6 n.1 (N.D. Ill. May 7, 2012) (in rejecting his objection to the notice and fee request, holding that "Mr. Liles did not,

---

[8] Supp. Brower Decl. Ex. A (attaching a copy of the *Motorola* slip opinion).

however, sufficiently explain the basis for his objection to the request for attorney's fees, stating only that '[i]n light of both class counsel's failure to follow the notice requirements of the PSLRA with regard to The Notice to absent class members; and, the size of the settlement fund, I maintain that the proposed $55 million in attorney's fee is both unreasonable and excessive.'").

Objector Behar claims that under the Plan of Allocation, the "expected settlement distribution will be approximately $22,012,800" and that the Plan "would fail to distribute over $45,000,000 of the Settlement Fund, more than 60%." Behar Obj. at 8-9. However, as explained below and in the accompanying Hammerslough Supp. Decl., Mr. Behar's objection is based on a serious misunderstanding of the Plan of Allocation, coupled with an apparent failure to read the. Dkt. No. 126. In short, under the Plan of Allocation, the entire Net Settlement Fund (*i.e.*, $79 million, plus interest, less fees, expenses, and taxes) will be distributed *pro rata* to claiming Settlement Class Members who file valid and properly completed Proofs of Claims, resulting in Settlement Class Members receiving almost ***2.5 times more*** than Mr. Behar's calculation. *See* Notice §IX; *see also* Stipulation, ¶¶5.2, 5.6, 5.7 (providing that Defendants have no interest in the Net Settlement Fund and explaining how it is to be distributed).

Mr. Behar's objection that Plaintiffs' Counsel's fee request would represent "a fee of approximately 120% of the expected settlement distribution," Behar Obj. at 9, is merely derivative of his erroneous mathematical calculation of the amount of the Settlement Fund that will be distributed to Settlement Class Members. Since Mr. Behar's calculation of the amount to be distributed to claiming Settlement Class Members is incorrect, so too is his 120% figure. Thus, Mr. Behar's objections are factually (and mathematically) wrong and should be overruled. *Infra* §III.B.

Objector Andrews (his lack of standing aside) has submitted a rambling 86-page "scatter-gun" objection to virtually every aspect of the Settlement and the Fee and Expense Application, accusing counsel for Plaintiffs and Defendants, and others, of various sorts of fiduciary and ethical breaches, conspiracies, and other improprieties. Mr. Andrews' "rank speculation," however, is simply an attempt to "conjure allegations of villainy from thin air." *In re AOL Time Warner ERISA Litig.*, 02 Civ. 8853 (SWK), 2008 U.S. Dist. LEXIS 28785, *16-17 (S.D.N.Y. Apr. 9, 2008). Mr. Andrews' "stream of consciousness" objection simply ignores and mischaracterizes the record

here, ignores the facts and the law, and resorts to unsupported (and unsupportable) *ad hominem* attacks on the integrity of numerous well-respected professionals in their fields in his effort to invent his baseless accusations, all of which, while too numerous to summarize, when stripped of their vitriol, are easily rebutted. *Infra* §III.C.

Finally, the fourth objector, Mr. Ventris – who has not raised any objection to the Settlement or the Plan of Allocation – argues that attorneys' fees should be based on one-third of the value of the Net Settlement Fund ***after*** the deduction of Plaintiffs' Counsel's litigation expenses. Ventris Obj. at 1. As explained in the Supplemental Brower Declaration, Plaintiffs' Counsel had numerous discussions with counsel for Mr. Ventris and, while not conceding that Mr. Ventris' proposed payment structure is necessarily the correct method in all cases, to avoid potentially protracted litigation over an issue that could delay payment of the Settlement proceeds to the Settlement Class Members, and in light of the structure of this Court's recent attorneys' fee and expense award in *Butt v. Megabus Northeast LLC*, 11-cv-3993 (JPO), 2012 U.S. Dist. LEXIS 137683, *13 (S.D.N.Y. Sept. 25, 2012), Plaintiffs' Counsel have agreed to modify their requested attorneys' fees and expenses, which is now not one-third of the Settlement Amount, plus reimbursement of expenses, but reimbursement of expenses and then one-third of the remaining Settlement Amount, *i.e.*, one-third of $78,445,049.77 ($79 million less the requested expenses of $554,950.23), or $26,148,349.92. Based on this modification of Plaintiffs' Counsel's Fee and Expense Application, counsel for Mr. Ventris has advised Plaintiffs' Counsel that his client has no further objection to the requested attorneys' fees or expenses. *See* Supp. Brower Decl. ¶63.[9]

Finally, Messrs. Liles, Behar, and Andrews have all requested fees or payments for asserting their objections. First, no fees are recoverable by an objector simply by interposing an objection. The objection must be meritorious and result in a tangible benefit to the Settlement Class. Second, as none of their objections have any merit whatsoever, they clearly cannot recover fees for offering frivolous objections that, by their very nature, can provide the Settlement Class with no tangible benefit. Third, and most importantly, each of these objectors is appearing *pro se*,

---

[9] No consideration has been provided or promised to Mr. Ventris or his counsel in connection with Plaintiffs' Counsel's agreement with Mr. Ventris to modify the structure of the Fee and Expense Application to resolve his objection.

*i.e.*, making objections on their own behalf as purported Settlement Class Members. As a matter of law, where an objector in a class action is a class member and offers the objection on his own behalf, even where that objector is an attorney by profession (like Messrs. Liles and Behar), the objector cannot recover compensation or attorneys' fees for making that objection even if it is successful. *See, e.g., Kay v. Ehrler*, 499 U.S. 432, 438 (1991); *see also infra* §IX. Accordingly, irrespective of the merits (or lack thereof) of Messrs. Liles', Behar's, and Andrews' objections, they cannot receive any compensation here for making their objections.

In sum, after years of litigation, overcoming numerous serious obstacles to recovery, and extensive negotiations, Plaintiffs have obtained a $79 million Settlement Fund for the Settlement Class. The amount recovered represents a significant percentage of the likely maximum recoverable damages (approximately 14.1-17.6%, Hammerslough Decl. ¶¶5, 6). This is far in excess of the average percentage recovery in securities class action lawsuits. *E.g.*, *In re China Sunergy Sec. Litig.*, 07 Civ. 7895 (DAB), 2011 U.S. Dist. LEXIS 53007, *15 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses). Likewise, the Plan of Allocation, which was prepared in consultation with an expert in economics, Hammerslough Supp. Decl. ¶¶43-44, provides a fair and reasonable method for equitably apportioning the net proceeds, and should be approved. And now that the time has passed for Settlement Class Members to object or request exclusion, the paucity of objections and the lack of merit to those received further support the final approval of the Settlement and the Plan of Allocation.

With respect to the Fee and Expense Application, as set forth in the opening papers, Plaintiffs' Counsel worked hard to obtain a $79 million recovery for the Settlement Class. The recovery is particularly remarkable given the absence of any civil or criminal claims asserted by state or federal governmental entities, such as the SEC, arising out of the events at issue in this Action. The Settlement was only achieved after Plaintiffs' Counsel devoted nearly four-and-a-half years and over 39,000 hours pursuing the Action on a purely contingent fee basis. For their extensive efforts on behalf of the Settlement Class, Plaintiffs' Counsel have respectfully requested reimbursement of litigation expenses of $554,950.23, and an award of attorneys' fees equal to one-

third of the Settlement Fund after expenses. Not only is that percentage reasonable and consistent with awards in this District in similar cases, but, as a cross-check, it represents a modest lodestar/multiplier of approximately 1.59 (after adjusting for the Ventris objection), which is on the low end of multipliers awarded by courts in complex securities actions.

Accordingly, for the reasons set forth below and in Plaintiffs' prior submissions, the objections should be rejected and the proposed Plan of Allocation and Settlement should be approved and the Fee and Expense Application should be granted in full.

## ARGUMENT

## I.    THE REACTION OF THE SETTLEMENT CLASS SUPPORTS THE SETTLEMENT, PLAN OF ALLOCATION, AND REQUESTED FEES AND EXPENSES

The reaction of the class to the settlement must be considered when evaluating a class action settlement. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). "'The fact that the vast majority of class members neither objected nor opted out is a strong indication' of [the settlement's] fairness." *Megabus*, 2012 U.S. Dist. LEXIS 137683, *13 ("This favorable response recommends final approval.") (quoting *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008)); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) ("overwhelmingly positive response by the Class [evidenced by small number of objections and opt-outs] attests to the approval of the Class with respect to the Settlement and the fee and expense application").

Here, Plaintiffs published notice on *PR Newswire* three separate times in July 2012, posted the Notice on the Claims Administrator's website (www.gcginc.com), and the Claims Administrator mailed over 276,000 copies of the Notice Packet to potential Settlement Class Members. *See* Fraga Supp. Decl. ¶2; Decl. of Jose Fraga, dated Aug. 9, 2012 (Dkt. No. 138-1) ("Fraga Decl."), ¶7.

The deadline to object to the Settlement, Plan of Allocation, and/or the Fee and Expense Application was September 10, 2012. To date, six requests for exclusion have been received, Supp. Fraga Decl. ¶16, and four objections have been received (including two from persons without justiciable standing, *infra* §II). Even assuming all six requests for exclusion were valid (which they

7

are not), they represent 0.002% of the number of potential Settlement Class Members. Further, assuming that all four objectors had standing (which they do not), they represent 0.001% of all potential Settlement Class Members. Thus, when compared to the number of potential Settlement Class Members who received the Notice in the comprehensive notice program, the number of objections and requests for exclusion is indisputably *de minimis*.

The absence of any objection from institutions, encouraged by Congress to participate in securities litigation in the PSLRA, also strongly supports approval because they often have the largest financial interest in the outcome. During the Class Period, more than 80% of E*TRADE's stock was held by large and sophisticated institutions (Hammerslough Decl. ¶36), none of which have filed an objection to the Settlement, the Plan of Allocation, or the Fee and Expense Application.[10] Indeed, it is particularly telling that neither the States of Ohio nor Mississippi, both of whom sought to be appointed lead plaintiff at the outset of this case and have very large losses in E*TRADE stock purchased during the Class Period, *see* Dkt. Nos. 8, 21, and are very active as participants in securities class actions, have opted-out or objected to any aspect of the Settlement, Plan of Allocation, or the Fee and Expense Application.

The response from non-institutional investors has also been overwhelmingly positive given the size of the Settlement Class. The small number of requests for exclusion weighs in favor of approval of the Settlement. *Megabus*, 2012 U.S. Dist. LEXIS 137683, *12-13. The six requests for exclusion represent a miniscule fraction of the nearly 275,000 Notice Packets mailed to the Settlement Class (approximately 0.002%). This underscores the very positive reaction by Settlement Class Members to the Settlement and further supports approval. *E.g.*, *AOL*, 2006 U.S. Dist. LEXIS 17588, *36 (opt-outs amounting to less than 0.2% of the putative class members weighed in favor of settlement); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y.

---

[10] *E.g.*, *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, MDL 1500, 2006 U.S. Dist. LEXIS 17588, *35 (S.D.N.Y. Apr. 6, 2006) (fact that "not a single institutional Class Member objected to the Settlement" supported its approval); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 479 (S.D.N.Y. 1998) (the reaction of the class supported approval of the settlements where "none of the thousands of institutional Class members, who have the largest financial stake, have objected"); *In re OCA, Inc. Sec. and Derivative Litig.*, 05-2165, 2009 U.S. Dist. LEXIS 19210, *52 (E.D. La. Mar. 2, 2009) (where a number of class members were "sophisticated financial institutions such as state and municipal pension funds," the fact that these investors "voiced no objections further attests to the general support for the settlement").

8

1999) (fact that fewer than 1% of class members requested exclusion "strongly favor[ed] approval of the proposed settlement").[11]

Furthermore, "[i]n litigation involving a large class, it would be 'extremely unusual' not to encounter objections." *NASDAQ*, 187 F.R.D. at 478. "A settlement can, of course, be fair notwithstanding a large number of objectors," *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 462 (2d Cir. 1987), and courts in this Circuit have approved settlements with far more objectors than the four here, *id.* (affirming approval of a settlement where 54%-58% of the shares of class members objected); *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1325 (2d Cir. 1990) (affirming approval of a settlement where the court assumed that "a majority" of class members objected); *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987) (affirming approval of settlement where as many as 48% of class may have objected).[12] Indeed,

---

[11] *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-87 (2d Cir. 2001) (where 18 class members filed written objections from a class of approximately 27,800 members, the district court "properly concluded that this small number of objections weighed in favor of the settlement"); *In re Prudential Insur. Co. of Am. Sales Pracs. Litig.*, 962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283, 318 (3d Cir. 1998); *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1313-14 n.15 (3d Cir. 1993) (small proportion of objectors constituted tacit consent to settlement and weighs in favor of approval) (citations omitted); *Sewell v. Bovis Lend Lease LMB, Inc.*, 09 Civ. 6548, 2012 U.S. Dist. LEXIS 53556, *21 (S.D.N.Y. Apr. 16, 2012) ("The fact that the overwhelming majority of class members have neither objected nor opted out weighs in favor of settlement approval."); *Banyai v. Mazur*, 00 Civ. 9806 (SHS), 2007 U.S. Dist. LEXIS 22342, *27 (S.D.N.Y. Mar. 27, 2007) ("a small number of objections received when compared to the number of notices sent weighs in favor of approval," and finding that the fact that 12 objections were received from a class of 100,000 demonstrated that "the Class as a whole appears to have reacted favorably"); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("It has repeatedly been held that one indication of the fairness of a settlement is the lack of or small number of objections."); *Maley*, 186 F. Supp. 2d at 362 (it is "well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy," as the "lack of objections may well evidence the fairness of the Settlement"); *Marisol A. v. Giuliani*, 185 F.R.D. 152, 163 (S.D.N.Y. 1999) ("The Court views the small number of comments from a plaintiff class of over 100,000 children as evidence of the Settlement Agreements' fairness, reasonableness, and adequacy."); *Hammon v. Barry*, 752 F. Supp. 1087, 1093 (D.D.C. 1990) ("[O]ne indication of the fairness of a settlement is the lack of or small number of objections."); *Phemister v. Harcourt Brace Jonanovich, Inc.*, 77CV39, 1984 U.S. Dist. LEXIS 23595, *35 (N.D. Ill. Sept. 14, 1984) (approving settlement of antitrust action for cash and discount coupons for defendant's publications where out of 150,000 potential class members, 49 objections were filed, stating: "It appears that the settlement was deemed unobjectionable by more than 99 percent of those in the class and those filing claims.").

[12] *See also Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (approving settlement where 13% of class objected); *Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (finding objections from 10% of the class "strongly favors settlement"); *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 891 (7th Cir. 1985) (approving consent decree over objections of 15% of class); *Reed v. General Motors Corp.*, 703 F.2d 170, 174 (5th Cir. 1983) (approving settlement despite opposition of 40% of class); *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) ("The attitude of the members of the Class, as expressed directly or by failure to object, after notice, to the settlement, is a proper consideration for the trial court, though a settlement is not unfair nor unreasonable simply because a large number of class members oppose

although not the case here, courts regularly approve settlements even where the named plaintiffs object to the settlement. *E.g.*, *Laskey v. Int'l Union, UAW*, 638 F.2d 954, 957 (6th Cir. 1981) ("That the class counsel proposed a settlement which the named representatives opposed does not prove that the interests of the class were not protected.").[13] Here, the *de minimis* number of six opt-outs and four objectors heavily favors of approval of the Settlement.

Furthermore, as set forth in detail below, none of the objections have any factual or legal merit and the Court should approve the Settlement, Plan of Allocation, and Fee and Expense Application.

## II.  MESSRS. LILES AND ANDREWS HAVE NO STANDING TO OBJECT

The Supreme Court in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), established that to state a claim under §10(b) of the Exchange Act, a plaintiff must plead a loss proximately caused by the disclosure of the alleged fraud. *Id*. at 346. In so ruling, the Court held that a plaintiff cannot prove loss causation merely by establishing that a defendant's misconduct artificially inflated the price of the target company's stock on the date the plaintiff purchased its shares. Instead, a plaintiff must also prove that the company's stock price later declined (and thus caused plaintiff's shares to be worth less) immediately following a disclosure of the alleged misconduct to the public. *Id*.; *see also Lentell v. Merrill Lynch & Co., Inc*., 396 F.3d 161, 173 (2d Cir. 2005) (holding that to establish loss causation, a plaintiff must allege that the defendant's

---

it."); *Lasky v. International*, 638 F.2d 954, 957 (6th Cir. 1981) (settlement approved where 6% of the class objected); *Bryan v. Pittsburgh Plate Glass Co*., 494 F.2d 799, 803 (3d Cir. 1974) (approving settlement where more than 20% of class objected); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig*., 246 F.R.D. 156, 168 (S.D.N.Y. 2008) (approved settlement where 11 potential class members objected); *Wright*, 553 F. Supp. 2d at 344 (approved settlement where 13 class members objected).

[13] *See also Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1187-88 (10th Cir. 2002) (affirming settlement approval despite the objection of two named plaintiffs); *Lazy Oil Co. v. Witco Corp*., 166 F.3d 581, 589 (3d Cir. 1999) ("In many class actions, one or more class representatives will object to a settlement and become adverse parties to the remaining class representatives (and the rest of the class)"); *Thomas v. Albright*, 139 F.3d 227, 233 (D.C. Cir. 1998) (approving settlement despite objection of several named plaintiffs); *Reed*, 703 F.2d at 174; (approving settlement over the objections of 23 of 27 named-Plaintiffs and nearly 40% of the Class); *Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982) ("[A]greement of the named plaintiff is not essential to approval of a settlement which the trial court finds to be fair and reasonable"); *In re BankAmerica Corp. Sec. Litig*., 210 F.R.D. 694, 703-04 (E.D. Mo. 2002) (approving settlement over the objections of the three named plaintiffs); *Purcell v. Keane*, 54 F.R.D. 455 (E.D. Pa. 1972) (approving settlement over the objections of nine individuals, including four of the six named plaintiffs).

misstatement or omission concealed something from the market that negatively affected the value of the security when disclosed). Thus, under *Dura* and its progeny, any losses that a class member may have incurred before the alleged misconduct was disclosed to the public are not recoverable because those losses cannot be proximately linked to the misconduct at issue. Hammerslough Decl. ¶19; Hammerslough Supp. Decl. ¶39.

Consistent with that controlling legal principle, the Plan of Allocation here only provides for distribution of Settlement proceeds to Settlement Class members who purchased E*TRADE securities during the Class Period and held those shares through at least one of the alleged partial disclosures on July 25, 2007, August 13, 2007, October 18, 2007, and November 12, 2007. *E.g., In re CornerStone Propane Partners, L.P. Sec. Litig.*, C 03-2522 MHP, 2006 U.S. Dist. LEXIS 25819, *27-28 (N.D. Cal. May 3, 2006) (plaintiff who bought and sold before corrective disclosure cannot prove loss causation and therefore is not entitled to recover) (citation omitted). Neither Mr. Liles nor Mr. Andrews has objected to that portion of the Plan of Allocation. In turn, for a Settlement Class Member to have standing to object to some aspect of the Settlement or request for attorneys' fees, the objector must have an economic interest in the outcome of his objection. *E.g., In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1108 (S.D.N.Y. 1989) (finding objector lacked standing because he had no financial interest in the outcome of the litigation).[14] Thus, where a class member has no actionable injury or will not recover under a plan of allocation, that class member lacks standing to object. *E.g., In re First Cap. Holdings Corp. Fin. Prods. Sec. Litig.*, 33 F.3d 29, 30 (9th Cir. 1994) (rejecting objection of class member who realized gains on stock purchases, and, therefore had no possible recovery from the common fund; "Simply being a member of a class is not enough to establish standing. One must be an aggrieved class member.").[15]

---

[14] *See also Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011) ("If modifying the fee award would not 'actually benefit the objecting class member,' the class member lacks standing because his challenge to the fee award cannot result in redressing any injury.") (citation omitted); *Knisley v. Network Assocs.*, 312 F.3d 1123 (9th Cir. 2002) ("The court must closely scrutinize the terms of the settlement agreement to determine whether modifying the fee award would actually benefit the objecting class member. If not, the appeal would not redress his injuries, and he would lack standing to proceed").

[15] *New York v. Reebok Int'l Ltd.*, 96 F.3d 44, 47 (2d Cir. 1996) ("For standing to exist, a would-be litigant must have sustained a palpable injury that is likely to be redressed by a favorable decision."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1044 (C.D. Cal. 2007) ("Because Defendants did not cause

11

Mr. Liles purchased 31 shares of E*TRADE stock during the Settlement Class Period ***and sold all 31 of his shares in June 2006***. Supp. Brower Decl. ¶13. As a result, Mr. Liles has no compensable claim under the federal securities laws as he sold all of his E*TRADE shares before the first alleged curative disclosure in this Action on July 25, 2007.[16] Consequently, the Plan of Allocation expressly provides that for "[f]or each share of E*TRADE common stock purchased or otherwise acquired between April 19, 2006 and July 25, 2007, inclusive, and sold on or before July 25, 2007, the recognized loss is $0." *See* Notice §IX (Supp. Brower Decl. Ex. J). As a result, Mr. Liles cannot recover anything in this Action or under the Plan of Allocation and, therefore, has no standing to object to the Settlement or the Fee and Expense Application. *AOL*, 2006 U.S. Dist. LEXIS 17588, *52.

Mr. Andrews' only disclosed E*TRADE transaction was the purchase of 300 shares of E*TRADE stock on August 17, 2007 at $14.25 per share, and the sale of those 300 shares ***the same day*** for $14.56 per share – making a profit of $93.00 before commissions. Andrews. Obj. at 89. First, for the same reason that Mr. Liles has no injury by virtue of the rule set forth in *Dura*, Mr. Andrews has no cognizable claim under the federal securities laws because he purchased after a partially curative disclosure, but sold before the next partially curative disclosure. Thus, he too could suffer no compensable damages resulting from the revelation of a curative disclosure as required by *Dura*. Accordingly, the Plan of Allocation expressly provides that "[f]or each share of E*TRADE common stock purchased or otherwise acquired between August 13, 2007 and October 17, 2007, inclusive, and sold on or before October 17, 2007, the recognized loss is $0." *See* Notice §IX. Moreover, as the figures above make clear, Mr. Andrews made a ***profit*** on his one-day

---

any injury to Hayes, Hayes lacks standing to object to the Settlement, regardless of his membership in the Class.").

[16] *See* Hammerslough Decl. ¶12; *see also In re Comverse Tech., Inc. Sec. Litig.*, 06-1825, 2007 U.S. Dist. LEXIS 14878, *13 (E.D.N.Y. Mar. 2, 2007) (in-and-out transactions that took place during a class period, but before a curative announcement and corresponding decline in the price of the subject securities, are not compensable); *Lehocky v. Tidel Tech., Inc.*, 220 F.R.D 491 (S.D. Tex. 2004) (stock drops that occurred prior to the first partial disclosure could be the result of market "noise"); *Perlmutter v. Intuitive Surgical, Inc.*, 10-03451, 2011 U.S. Dist. LEXIS 16813, *15 (N.D. Cal. Feb. 15, 2011) (losses resulting from stock trades that occurred prior to any disclosure of the defendant's fraud are not considered under *Dura*); *In re Impax Labs., Inc. Sec. Litig.*, 04-04802, 2008 U.S. Dist. LEXIS 104485, *19 (N.D. Cal. Apr. 17, 2008) (no loss where plaintiff sold all of its shares before the disclosure); *Kops v. NVE Corp.*, 06-574, 2006 U.S. Dist. LEXIS 49713, *13-15 (D. Minn. July 17, 2006) (eliminating in-and-out losses from plaintiff's calculation).

E*TRADE investment. As Judge Kram explained in rejecting an objector identically situated to Mr. Andrews:

> Plaintiffs argue that Heyburn does not have standing to object to the Settlement. Indeed, *the transaction records attached to Heyburn's objection indicate that he profited from his AOL investment. (Heyburn Obj. Ex 1.) Consequently, he does not have a claim under the Plan of Allocation, which limits recovery to those shareholders that suffered a loss. Without an injury, Heyburn does not have standing to object*.

*AOL,* 2006 U.S. Dist. LEXIS 17588, *52 n.17 (emphasis added). As in *AOL*, and consistent with *Dura*, which requires a "loss" to have a claim under the Securities Exchange Act of 1934, the Plan of Allocation provides that, "[i]f you had a net gain from your overall transactions in E*TRADE securities during the Settlement Class Period, the value of [your] Recognized Claim will be **_zero_**." *See* Notice §IX (emphasis added). Thus, because he both purchased and sold his E*TRADE shares in between partially curative disclosures and, separately, because he sold his shares at a profit, Mr. Andrews has no standing to object here.

Thus, it is clear that because Mr. Liles and Mr. Andrews have no claim, suffered no compensable injury from their purchases of E*TRADE stock, and will not recover anything from the Settlement, they have no economic interest in the Settlement or the request for attorneys' fees or reimbursement of expenses, and thus have no standing to object to either.

## III.   PLAINTIFFS' RESPONSE TO THE OBJECTIONS

Notwithstanding Messrs. Liles' and Andrews' lack of standing, as demonstrated below, none of the arguments offered by Messrs. Liles, Behar, or Andrews have a scintilla of merit, and they should be overruled.[17] At the outset, it is noteworthy that none of the objectors has offered any evidence, by way of declaration or otherwise, to support their allegations. *See* Local Civil Rule 7.1(a)(3) and 7.1(b). This is in stark contrast to the opening declarations submitted by Plaintiffs from Mr. Hammerslough, Professor Geoffrey Miller, and Plaintiffs' Counsel in support of the instant Motions. The lack of cognizable evidence to support their contentions, in the face of the evidentiary record provided by Plaintiffs, coupled with their history of filing similar objections and

---

[17] As Plaintiffs' Counsel have agreed to modify the structure of their request for attorneys' fees and reimbursement of expenses as suggested by Mr. Ventris in his objection, and as he raises no other issues, Plaintiffs are not responding to Mr. Ventris' objection as it has been fully resolved.

their advance requests here for compensation from the Court for simply filing their frivolous objections, speaks volumes about the substance of those objections.[18]

A.      **The Liles Objection**

No one has raised an objection about the notice procedures – which, as set forth in Plaintiffs' opening papers, were reasonable and effective. Notice Mem. at 3-4. Only one individual (Mr. Liles) has complained about the content of the actual Notice.

As required by the PSLRA, the Notice: (1) indicates an estimated $0.145 average recovery, prior to deducting fees and expenses, based on Plaintiffs' Counsel's expert's estimate of the number of shares of stock that may have been damaged (some multiple times) by the alleged fraud; and (2) provides a detailed Plan of Allocation. Notice §§I, IX. The Notice further indicates that Plaintiffs and Defendants disagree on the "average amount of damages per share, if any, that would have been recoverable if Plaintiffs were to have prevailed at trial on each claim alleged." *Id*. The PSLRA requires that, when "the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, [the settlement notice must contain] a statement from each settling party concerning the issue or issues on which the parties disagree." 15 U.S.C. §78u-4(a)(7)(B)(ii). Accordingly, the Notice states that:

> The issues on which the parties disagree include: (1) whether any Defendant engaged in any conduct subject to challenge under the federal securities laws; (2)

---

[18] For years, courts have expressed concern about a phenomenon in class action litigation referred to as objector "blackmail." Fitzpatrick, Brian T., "The End of Objector Blackmail?," 62 VAND. L. REV. 1623 (Nov. 2009). Objector blackmail is often seen as something of a "tax" that class action lawyers must pay in order to settle class action litigation. Brunet, Edward, "Class Action Objectors: Extortionist Free Riders or Fairness Guarantors," 2003 U. CHI. LEGAL F. 403, 438-42 (providing a summary of several scholarly and judicial commentaries on objector "blackmail"). District court judges have also routinely complained of objectors "who seek out class actions to simply extract a fee by lodging generic, unhelpful protests" (*Shaw v. Toshiba Am. Info. Sys., Inc*., 91 F. Supp. 2d 942, 973-74 & n.18 (E.D. Tex. 2000)), and who "maraud proposed settlements – not to assess their merits – but in order to extort the parties . . . into ransoming a settlement that could otherwise be undermined by a time-consuming appeals process." *Snell v. Allianz Life Ins. Co*., 97-2784 (RLE), 2000 U.S. Dist. LEXIS 13611, *31 (D. Minn. Sept. 8, 2000); *see also Varacallo v. Mass. Mut. Life Ins. Co*., 226 F.R.D. 207, 240 (D.N.J. 2005) (noting that "federal courts are increasingly weary of professional objectors" (citing *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003))); *In re Holocaust Victim Assets Litig*., 311 F. Supp. 2d 363, 365 (E.D.N.Y. 2004) (characterizing notice of appeal as "an unsuccessful attempt to extort a significant cash award from the settlement fund"); *In re Compact Disc Minimum Advertised Price Antitrust Litig*., 216 F.R.D. 197, 218 n.52 (D. Me. 2003) (complaining of "professional objectors" in class action litigation); *O'Keefe*, 214 F.R.D. at 295 n.26 (noting that "some of the objections were obviously canned objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests" (quoting *Shaw*, 91 F. Supp. 2d at 973)).

the amounts by which E*TRADE securities were allegedly artificially inflated (if at all) during the Settlement Class Period (as defined above); (3) the effect of various market forces influencing the trading price of E*TRADE securities at various times during the Settlement Class Period; (4) the extent to which the various matters that Plaintiffs alleged were materially false or misleading influenced (if at all) the trading price of E*TRADE securities during the Settlement Class Period; (5) the extent to which the various allegedly adverse material facts that Plaintiffs alleged were omitted influenced (if at all) the trading price of E*TRADE securities during the Settlement Class Period; (6) whether the statements made or facts allegedly omitted were material, false, misleading, or otherwise actionable under the securities laws; and (7) whether, even if liability could be proven, total damages would be greater than $0.

Notice §I. All of the disputed issues identified in the Notice impact a damages evaluation: items (1) and (6) because a failure to establish liability would preclude any recovery, and items (2), (3), (4), (5), and (7) because various factors would directly affect the damages calculation even if Plaintiffs succeeded at trial. *Id.* The PSLRA requires nothing more and thus the Notice fully complied with the plain language of the PSLRA settlement disclosure provisions.

Mr. Liles' objection is premised entirely on his previously rejected argument that Plaintiffs have violated the notice requirements of the PSLRA by failing to provide an adequate "Statement of Potential Outcome of Case." Specifically, without citing a single case to support his proposition, Mr. Liles argues that the Notice provided to Settlement Class Members was inadequate because it failed to provide the dollar amount of Plaintiffs' estimate of damages if they had prevailed at trial. Liles Obj. ¶8. However, that is not what the PSLRA, the legislative history, or the case law require.

The PSLRA (15 U.S.C. §78u-4(a)(7)(B)) states:

(7) Disclosure of settlement terms to class members

Any proposed or final settlement agreement that is published or otherwise disseminated to the class shall include each of the following statements . . . .

* * *

(B) Statement of potential outcome of case

(i) Agreement on amount of damages: If the settling parties agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement concerning the average amount of such potential damages per share.

(ii) Disagreement on amount of damages: If the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement from each settling party concerning the issue or issues on which the parties disagree.

15

The proper interpretation of a statute begins with a determination of "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). If the language is "plain and unambiguous," considering the context, the court's inquiry ceases. *Id.* Here, the PSLRA unambiguously states that parties (plaintiffs and defendants) who **agree** on damages must provide, in dollars, an "average amount of such potential damages per share." However, where the parties **do not agree** on damages, as here, the notice need only provide a statement concerning "the issue or issues on which the parties disagree," 15 U.S.C. §78u-4(a)(7)(B)(i)-(ii), and no dollar figures are required. The statute could not be more clear.

Indeed, "'[where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation omitted). Congress only included language concerning the average amount of per share damages in subsection (i) (*i.e.*, when the parties *agree* on damages). Congress specifically excluded this language from subsection (ii) (*i.e.*, when, as here, the parties *do not agree* on damages). As the Supreme Court has counseled, courts cannot presume that "the differing language in the two subsections has the same meaning in each." *Russello*, 464 U.S. at 23.[19] Accordingly, a per share dollar damages estimate is only required when the parties **agree** on that figure. As the parties here **do not agree** on the damages that could have been recovered, the Notice was not required to include such a dollar estimate.

Although the language of the statute is "plain and unambiguous," so it is not necessary to examine the legislative history of the PSLRA, *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004)), the differing requirements under subsections (i) and (ii) are evident from the House Conference Report, dated Nov. 28, 1995. *See* 104 H. Rpt. 369 (1995) ("Report"). The Report contains a "Joint Explanatory Statement of the Committee of Conference," addressing the

---

[19] Mr. Liles also seems to argue that because the PSLRA renders any statements concerning damages made pursuant to subsections (i) and (ii) inadmissible, both subsections necessarily require a per share damages estimate. Liles Obj. ¶3. Mr. Liles' reading of the statute is strained and deviates from the principle that had Congress intended that an average per share damages estimate was required under both subsections (i) and (ii), it would have utilized the same language in each subsection. *Russello*, 464 U.S. at 23.

"[i]mproved settlement notice to class members" and states that a settlement notice "must contain a statement of the average amount of damages per share that would be recoverable *if the settling parties can agree on a figure, or a statement from each settling party on why there is disagreement*." *Id.* (emphasis added). The Report clearly evidences Congress' intent that a numerical "figure" need only be provided when the parties *agree*, just as the reasons "why there is disagreement" need only be provided when the parties *do not agree*. *Id.*; *see also* 104 S. Rep. 98 (1995) (statement by Senator Alfonse M. D'Amato, member of the Conference Committee for the PSLRA, commenting on the rule and stating that it "requires the settling parties, if they can agree, to state the average amount of damages per share that would be recoverable if the plaintiff prevailed. *If the parties cannot agree, each party must provide a statement on the issues on which they disagree*.") (emphasis added).

The Second Circuit has also put to rest the requirements of 15 U.S.C. §78u-4(a)(7)(B) in deciding an appeal premised on the precise grounds set forth in Mr. Liles' Objection. The Second Circuit confirmed that when the parties *do not agree* about per share damages, the PSLRA requires "*no more*" than a statement of the issues about which the parties disagree. *AIG*, 452 F. App'x 75, 77 (2d Cir. 2012) (emphasis added). The Second Circuit specifically held that the "plain language" of the statute "clearly requires an amount recoverable be provided *only* in the case that the parties agree on that amount." *Id.* (emphasis in original). Thus, as recognized by the Second Circuit, the language of the PSLRA is plain and unambiguous, and does not require the Notice to contain the information Mr. Liles requests.[20]

Thus, Plaintiffs' reading of the PSLRA is supported by the language of the statute, the legislative history, and the case law. Indeed, Mr. Liles' argument has not only been effectively rejected by the Second Circuit (*see AIG*, 452 F. App'x at 77), but in a recent Section 10(b) class action against Motorola in the Northern District of Illinois, Mr. Liles raised the same objection and

---

[20] Courts within the Second Circuit have repeatedly approved settlements involving notice forms with language virtually identical to the language in the Notice here and without a dollar per share damage figure where the parties disagree as to the amount. *E.g.*, *In re Flag Telecom Hldgs, Ltd. Sec. Litig.*, 02 Civ. 3400 (CM), 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 8, 2010); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 04 Civ. 8144 (CM) (S.D.N.Y. Nov. 10, 2009); *In re Bisys Sec. Litig.*, 04 Civ. 3840 (JRS), 2007 U.S. Dist. LEXIS 51087 (S.D.N.Y. July 16, 2007).

it was rejected by that court as well.[21] His objection, therefore, clearly has no merit.[22]

Furthermore, although not required by the PSLRA or in this Circuit, *cf.*, *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010), Plaintiffs' Counsel proposed a schedule to the Court that provided for the filing all papers in support of the Settlement over 30 days before the deadline for objections or request for exclusion. Included with those papers were Plaintiffs' expert's estimates, on a Class-wide and individual percentage basis, of the maximum amount of damages that Plaintiffs were likely to recover at trial if they prevailed on all issues of liability and damages and 100% of the Settlement Class Members filed claims in the post-trial claims process. Dkt. No. 138-3. Therefore, the very information that Mr. Liles, albeit incorrectly, claims should have been in the Notice was made available to Settlement Class Members in plenty of time for them to react to the information.

Next, Mr. Liles, based on his meritless claim that Plaintiffs' Counsel failed "to follow the notice requirements of the PSLRA with regard to the Notice to absent class members," argues that the proposed attorneys' fee is therefore "unreasonable and excessive." Liles Obj. ¶10. However, in the *Motorola* case (*supra* note 21), where Mr. Liles' same erroneous notice-related objection was rejected, and where he included the same non-specific corresponding objection to the requested attorneys' fees, the court also rejected his fee objection for failure to sufficiently explain its basis. *Silverman*, 2012 U.S. Dist. LEXIS 63477, *6 n.1. Mr. Liles has done no better here and this Court should similarly reject overrule his objections.

### B.      The Behar Objection

Mr. Behar's objection appears to relate to the Plan of Allocation.[23] However, while courts

---

[21] *Motorola*, slip op. at 4 ("The Court finds the reasoning in [*AIG*] persuasive and therefore overrules Mr. Liles' objection. In addition to the numerous other courts that have approved notices like the one here and the one in [*AIG*], this Court has previously approved a similar notice. *See Greater Penn. Carpenters Pension Fund v. Whitehall Jewelers, Inc*., 04-cv-1107 (N.D. Ill. July 24, 2006). Indeed, the Notice provided to the class in this case was even more focused on particular areas of disagreement relating to damages than the notice in [*AIG*].") (attached to the Supp. Brower Decl. at Ex. K).

[22] There can be no doubt that the Notice distributed to potential class members was "sufficient" and "comprehensible" to allow Settlement Class Members to evaluate the proposed settlement intelligently. *See In re Am. Int'l Group, Inc. Sec. Litig.*, 04 Civ. 9141 (DAB), 2010 U.S. Dist. LEXIS 129196, *14-15 (S.D.N.Y. Dec. 2, 2010); *see also In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 184 (S.D.N.Y. 2003) (finding that minor, technical violations of the PSLRA's notice requirement did not justify upsetting a notice procedure that informed class members adequately).

afford great weight to the views of experienced counsel on plans of allocation (*see* Settlement Mem. at 23), courts also consider the class's reaction to a proposed plan of allocation. Here, there are only two objections to the Plan of Allocation, one from Mr. Behar who, as demonstrated below, clearly does not understand it, and one from Mr. Andrews relating to the treatment of option purchasers, a security he did not purchase and for which he has no standing to object. The lack of objections from any affected Settlement Class Members, including from the sophisticated institutional investors, to the Plan of Allocation certainly favors its approval. *E.g.*, *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, *34 (S.D.N.Y. July 27, 2007) (courts should "consider the reaction of a class to a plan of allocation"); *Maley*, 186 F. Supp. 2d at 367 ("the favorable reaction of the Class supports approval of the proposed Plan of Allocation").

Specifically, Mr. Behar incorrectly claims that under the Plan of Allocation, the "expected settlement distribution will be approximately $22,012,800" and that the Plan "would fail to distribute over $45,000,000 of the Settlement Fund, more than 60%." Behar Obj. at 8-9. This is simply wrong and based on a complete misunderstanding of the Plan of Allocation and failure to read the Stipulation.[24] As explained in the initial Declaration of John Hammerslough, the face value of Recognized Losses that will be presented for payment will exceed the amount of the Settlement Fund. Hammerslough Decl. ¶¶37-38. The Plan of Allocation states that each authorized claimant will be paid *pro rata* the percentage of the Net Settlement Fund (which is defined as the $79,000,000 Settlement Amount, plus interest, less deductions for attorneys' fees and expenses, notice and administration costs, and taxes, etc.) that each authorized claimant's "Recognized Loss bears to the total of the Recognized Loss of all Authorized Claimants." Notice §IX. Thus, the *entire* Net Settlement Fund (or, if the Court awards Plaintiffs' Counsel their requested one-third of the recovery and expenses, in excess of $52 million) will be distributed to claiming Settlement

---

[23] This is not the first time Mr. Behar has objected in a securities case. *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 457 (S.D.N.Y. 2004) (rejecting Mr. Behar's objection; "None of these objections is substantial.").

[24] The Stipulation, which was available on the ECF filing system (to which Mr. Behar, who registered on the ECF, had access (Dkt. No. 126)), expressly provides in ¶¶5.2, 5.6, 5.7 that the entire Net Settlement Fund (after fees, costs, and expenses, etc.) will be distributed to authorized claiming Settlement Class Members.

Class Members who submit valid and properly completed Proofs of Claim. ***That is almost 2.5 times more than Mr. Behar's calculation***. Thus, Mr. Behar's objection is incorrect, based on a serious misreading of the Plan of Allocation, and must be rejected.[25]

Next, Mr. Behar makes a conclusory objection to the attorneys' fee request based solely on his incorrect contention that Plaintiffs' Counsel is seeking "a fee of approximately 120% of the expected settlement distribution." Behar Obj. at 9. Mr. Behar's 120% calculation is based on his same misunderstanding of the Plan of Allocation and flawed math under which he erroneously concludes that some $45 million of the Class recovery here will not be distributed to Settlement Class Members and somehow vanish into thin air. As demonstrated above, his assumptions and, correspondingly, his calculation, are wrong and therefore, it is the premise of Mr. Behar's objection that vanishes.

### C.    The Andrews Objection

As explained in Plaintiffs' opening papers, under all of the *Grinnell* factors, the $79 million Settlement is an excellent result. Settlement Mem. at 6-23 (Dkt. No. 137). This case reflects all of the hallmarks of a difficult, complex and high risk litigation, involving highly experienced counsel on both sides vigorously representing the interests of their clients at every turn for almost four years. A highly challenging motion to dismiss was overcome, massive discovery was undertaken, extended and adversarial negotiations were conducted, all leading to the Settlement. The risks of litigation were real and acute, and any suggestion that the recovery in this Action might not have been substantially smaller, or even nothing at all, is simply misinformed, naïve, or Quixotic. Plaintiffs faced significant, potentially meritorious defenses to liability and damages in a rapidly

---

[25] In doing his math Mr. Behar's also appears to confuse Mr. Hammerslough's calculation of the "average per share" recovery that the Settlement reflects required by the PSLRA to be contained on the cover of the Notice, with Mr. Hammerslough's (1) estimate of the maximum likely post-trial/appeal recoverable damages by individual Settlement Class Members (assuming Plaintiffs' complete success on all issues of liability and damages) and the percentage that the Settlement Amount represents to those recoverable damages, assuming a 100% post-trial claims rate, and (2) his estimate of the percentage of those maximum likely recoverable damages that individual Settlement Class Members will receive based on an estimate of the percentage of Settlement Class Members that will actually file claims. As explained in detail in Mr. Hammerslough's Supplemental Declaration, the calculations of the "average per share" recovery and the percentage of compensable damages recoverable require application of two entirely different formulas. Hammerslough Supp. Decl. ¶¶13-23. Mr. Behar apparently does not understand this distinction. Thus, Mr. Behar's attempts to use those figures interchangeably in his objection is fundamentally flawed.

changing legal environment; they received no assistance from any governmental proceedings; and their sources of recovery were a defendant corporation in serious financial straits, individual defendants without the means or incentive to make meaningful contributions, and wasting insurance coverage. Nevertheless, after three formal mediation sessions, and innumerable less formal discussions over a period of many months, Plaintiffs achieved a settlement representing the lion's share of E*TRADE's directors' and officers' available insurance coverage as well as a significant contribution from E*TRADE itself that reflects a recovery of *seven* times the normal percentage recovery of class members' likely potential recoverable damages at trial in similar securities cases. Decl. of Geoffrey Miller, dated Aug. 10, 2012, Dkt. No. 138, Ex. B, ¶29 ("Miller Decl.").

It is against these facts and real-world circumstances that Mr. Andrews wishes, without any basis in fact or law, or a sliver of cognizable evidence or supporting expert data, to second guess Plaintiffs' Counsel and attack the Settlement, the Plan of Allocation and the Fee and Expense Application. *See* Andrews Obj., *passim*.[26] To do so, Mr. Andrews does not evaluate the Settlement under the standards used by courts in this Circuit, but instead makes broad, unsupported pronouncements that reflect his apparent view of the world unrestrained by the facts, the law or reality, bolstering his assertions solely with unrestrained and insulting personal attacks on Plaintiffs' and Defendants' counsel, and Plaintiffs' well-respected and highly experienced experts. Mr. Andrews' strategy simply does not suffice for him to be a serious objector. *In re WorldCom, Inc. Sec. Litig.*, 02 CV 3288, 2004 U.S. Dist. LEXIS 22992, *41-42 (S.D.N.Y. Nov. 12, 2004) (rejecting objections that failed to "address the substantial legal obstacles to recovery by

---

[26] Mr. Andrews is not an attorney or an expert in finance, economics, capital markets or any other discipline relevant to litigating or evaluating a complex open-market securities class action, or valuing or estimating market losses or damages under the federal securities laws. Rather, Mr. Andrews is the former president of an alarm company (Great Lakes Alarm) that was part of a Tyco subsidiary (ADT) before the fraud at Tyco was discovered. *In re Tyco Sec. Litig.*, 02-md-1335 (D.N.H.) (Dkt. No. 1108). Since then, Mr. Andrews has become a regular objector to proposed settlements in such actions where he has sought payments to withdraw his objections. For example, in *In re Lehman Brothers Sec. and ERISA Litig.*, 09-md-02017 (S.D.N.Y), and *In re Tyco*, Mr. Andrews agreed to withdraw his objection in exchange for a $25,000 payment. *Lehman*, ECF No. 889-9; *Tyco*, ECF No. 1146-17 (Supp. Brower Decl. Exs. W, X). In *In re Nutella Mktg. & Sales Practices Litig.*, 11-1086(FLW)(DEA) (D.N.J.), Mr. Andrews demanded compensation in exchange for agreeing not to file his objection, Supp. Brower Decl. Ex. Y. Here, Mr. Andrews alerted Plaintiffs' Counsel that he would be objecting before he had even reviewed the materials filed with the Court. Supp. Brower Decl. ¶20.

shareholders in this action and the magnitude of this settlement in light of those obstacles").

For example, Mr. Andrews asserts that the Settlement is inadequate ("cheap") because, in his view, this is a "[s]lam dunk case, the only one's more so was Enron and WorldCom and Tyco." Andrews Obj. at 59. While the strength of Plaintiffs' liability claims is relevant to the Court's evaluation of the Settlement, *Grinnell*, 495 F.2d at 463, Mr. Andrews offers **nothing** by way of facts to support his contentions – just wild speculation and reckless accusations. Such assertions are inadequate to overcome the considered judgment of experienced counsel who have expended over 39,000 hours prosecuting this Action on behalf of the Settlement Class, which has included thoroughly investigating the facts, reviewing millions of pages of documents produced by Defendants and third-parties, participating in a lengthy mediation process with a retired Federal District Court Judge (Layn Phillips), and deposing the senior executives at E*TRADE who were primarily involved in the alleged fraud. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (class action settlement negotiated at arm's-length by experienced, capable counsel entitled to a "presumption of correctness"). This is in contrast to Mr. Andrews, who did not start his so-called "legal consulting work" on this case, as the self-appointed "aide who whispered into the king's ear," until August 11, 2012 – the day after Plaintiffs filed their opening papers on the instant Motions.

Mr. Andrews' objection also fails to consider any of the other *Grinnell* factors that must be examined to ensure that a settlement is fair, reasonable and adequate. Indeed, Mr. Andrews fails to address **any** of the risks to Plaintiffs and the Settlement Class in ultimately prevailing on their claims – apparently because he believes that no such risks exist. As anyone who has actually been a participant in a securities fraud class action knows full well, that perspective is unrealistic. Settlement Mem. at 13-19. For example, Mr. Andrews fails to consider the risks of proving damages when, at the time of the alleged curative disclosures in this case, the entire financial services industry was in meltdown. Nor does Mr. Andrews conduct an economically disciplined analysis of E*TRADE's ability to withstand a greater judgment – possibly years from now (assuming it is still around) and the Plaintiffs prevail on the merits in an amount that exceeds the Settlement, if at all. *See id*. at 19-20.

Mr. Andrews' positions also fail to recognize that no settlement provides complete relief. Rather, any settlement is, by definition, a compromise. *Duhaime v. John Hancock Mutual Life Ins. Co.*, 177 F.R.D. 54, 72 (D. Mass. 1997) ("The issue is whether the relief that the Settlement does provide is adequate and reasonable. The fact that some might have preferred more lucrative relief does not control that question. ***A settlement is, after all, not full relief but an acceptable compromise.***") (emphasis added); *see also Glover v. Crestwood Lake Section 1 Hldg. Corp.*, 89 Civ. 5386 (MJL), 1991 U.S. Dist. LEXIS 4995, *8 (S.D.N.Y. Apr. 10, 1991) ("Settlements, by definition, are compromises which 'need not satisfy every single concern of the plaintiff class, but may fall anywhere within a broad range of upper and lower limits.'") (citation omitted).[27]

There can be no question that the relief provided by the Settlement here is more than fair, reasonable and adequate. Joint Decl. ¶¶10, 186, 207, 237. While the Second Circuit made it clear that "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery," *Grinnell*, 495 F.2d at 455 n.2, here the Settlement represents a 14.1% to 17.6% recovery of Settlement Class Members' most likely maximum potential recovery at trial, assuming complete success on all issues and collectability after years of further litigation, trial and appeals. That amount is approximately seven times higher than the mean and median recoveries of class members' individual losses in securities actions. Miller Decl. ¶29. The fact that *one* Settlement Class Member (ironically one who ***profited*** on his one-day E*TRADE investment and will receive no payment from the Settlement) would prefer ***other*** Settlement Class Members, who did suffer damage and who have not objected, receive a larger Settlement does not indicate that the Settlement is not fair, reasonable, or adequate. *Prudential*, 962 F. Supp. at 557.[28] Thus, to the extent Mr. Andrews'

---

[27] *See also In re Philips/Magnavox TV Litig.*, 09-3072 (CCC), 2012 U.S. Dist. LEXIS 67287, *27-28 (D.N.J. May 14, 2012) (explaining that a court's role is to determine "whether the proposed relief is fair, reasonable and adequate, not whether some other relief would be more lucrative to the Class. A settlement is, after all, not full relief but an acceptable compromise."); *Wright*, 553 F. Supp. 2d at 339 ("[a] settlement is a compromise; it achieves a measure of success for both sides, and it eliminates the risks that accompany continued litigation, including the risk that a trial would result in no recovery at all.") (cited by this Court with approval in *Megabus*); *Varacallo*, 226 F.R.D. at 242 ("These objectors are not taking into account that a Settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.").

[28] *See also In re Metro. Life Ins. Co. Sales Practices Litig.*, MDL No. 1091, 1999 U.S. Dist. LEXIS 22688, *75 n.14 (W.D. Pa. Dec. 28, 1999) ("The Court finds that the fact that different or perhaps even more generous settlement terms can be proposed in a hypothetical context affords no basis to reject a settlement

23

objection is premised on a view that the Settlement Class would do better at trial than through the Settlement, without him providing some factual or legal basis for that view (other than conjecture or fantasy), his objection must be rejected. As the Court stated in *Garst v. Franklin Life Life Ins. Co.*, 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666 (N.D. Ala. June 28, 1999), in rejecting objections because they were "based on the mistaken assumption that [the defendant's] liability for the allegations in the complaint is not in dispute" must fail because "that is simply not the case. Questions of whether the settlement will sufficiently punish [defendant] thus do not enter into the fairness consideration. Instead, the focus is on the value to the Class." *Id.* at \*75-76 (citing *Duhaime*, 177 F.R.D. at 70). Thus, Mr. Andrews' objection to the Settlement based on his complaint that the consideration is insufficient, should be rejected.

### 1.    Mr. Andrews' Additional Points

#### a.    The Plan of Allocation

Mr. Andrews objects that taxes, commissions, and other transaction costs are excluded for reimbursement under the Plan of Allocation. Andrews Obj. at 12-13.[29] However, victims of

---

achieved through arduous, arms-length negotiations between the parties that is both fair and adequate in its proposed relief."); *Manners v. American Gen. Life Ins. Co.*, Civ. 3-98-0266, 1999 U.S. Dist. LEXIS 22880, \*75 (M.D. Tenn. Aug. 11, 1999) ("The objectors' preferences for other types of relief are irrelevant. The issue is not whether the proposed settlement could have offered different or even more generous relief, the only question is whether the benefits actually being offered are fair, reasonable and adequate. If they are, the settlement should be approved.") (citing *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 169 (S.D. Ohio 1992) (settlement is "not a wish-list of class members that the Defendant must fulfill.")); *Franklin Life*, 1999 U.S. Dist. LEXIS 22666, \*75 ("These objectors' preference for other types of relief are irrelevant. The issue is not whether the proposed settlement could have offered different or even more generous relief; the only question is whether the benefits actually being offered are fair, adequate and reasonable. If they are, the settlement is approved"); *Michels v. Phoenix Home Life Mut. Ins. Co.*, No. 5318-95, 1997 N.Y. Misc. LEXIS 171, \*59 (N.Y. Sup. Ct. Jan. 3, 1997) ("That some Class members would prefer cash or other forms of relief is irrelevant to the Court's determination of the adequacy of the settlement, the issue is whether the relief that has been provided is adequate and reasonable, not whether something more lucrative might enhance the settlement.").

[29] Numerous courts have held that a plan of allocation need not be perfect. *E.g.*, *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. Nov. 2, 2011); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997) (in "a large class action the apportionment of a settlement can never be tailored to the rights of each plaintiff with mathematical precision"), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Rather, an allocation plan "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 479 (S.D.N.Y. 2009); *WorldCom*, 388 F. Supp. 2d at 344 (same); *see also Curtiss-Wright Corp. v. Helfand*, 687 F.2d 171, 174-75 (7th Cir. 1982) ("To make an equitable allocation in this case the judge did not have to resolve trial-type issues of liability and therefore did not have to conduct a trial. He had only to weigh the relative deservedness of Curtiss-Wright and the other class members, and he could do this on the basis of the undisputed facts before him. . . . Curtiss-Wright should have withdrawn from the class action if it did not

securities fraud are limited to only the amount of stock price decline attributed to a corrective disclosure (*i.e.*, price movement caused by information that corrects a prior misrepresentation or omission). *Dura*, 544 U.S. at 346; Hammerslough Supp. Decl. ¶¶28, 39. Transaction costs, commissions, and taxes are not losses that result from the decline in the market value of a security. Those are costs that, theoretically, could only be recovered where rescissionary damages are available. There are no rescissionary damages in a Rule 10b-5 action. Rather, the PSLRA limitations on damages in cases like this, where damages are established with reference to "the market price of a security," restrict recoverable damages to the differences between "trading price[s]" (at purchase and sale) of the subject security. 15 U.S.C. §78u-4(e). Transaction costs, commission and taxes are not part of a "trading price" or "market price" of a security and, thus, not recoverable in a Rule 10b-5 action.

Mr. Andrews also objects to the cap on the total recovery payable to all authorized claimants from transactions in call or put options of 5% of the Net Settlement Fund as being arbitrary. Andrews Obj. at 13. First, Mr. Andrews, in addition to suffering no cognizable or recoverable loss himself in E*TRADE common stock, had no options transactions of his own during the Class Period and thus lacks standing to object on behalf of options investors. Second, no options investor has objected to their treatment under the Plan of Allocation. Third, a maximum payment threshold is a common feature of allocation plans.[30] Finally, the 5% cap is actually slightly higher than the proportion of option purchasers' estimated damages compared to common stock purchasers' estimated damages, and thus not arbitrary. Hammerslough Supp. Decl. ¶¶25, 37. Mr. Andrews' objection to the Plan of Allocation therefore has no merit.

### b.   The Absence of Collusion

Mr. Andrews posits that this is a "quid pro quo, . . . collusive, self dealing settlement for a

---

want to run the considerable risk that its equities would be found inferior to those of the other class members. Having decided not to opt out, . . . it cannot complain about a decision on the equities that was reasonable in the circumstances.").

[30] *Tyco*, 535 F. Supp. 2d at 264 ("John Nemfakos . . . objects to the different treatment of call options and put options. He also objects to the provision limiting losses from option trading to 1% of the total settlement amount. I overrule both objections. Call options are discounted relative to put options because the purchase of a call option includes a time premium – a wasting asset that will evaporate even if the stock price remains steady. The limitation of losses from option trading is because these derivative securities suffer from much greater volatility than stocks and bonds, making it more difficult to establish loss causation.")

gold mine size attorney fee in return for limiting defendants [sic] out of pocket damages to 'subway change' for them." Andrews Obj. at 10; *see also* Andrews Obj. at 55 ("collusive, self dealing fraud on the class and court"). These contentions are simply false and Mr. Andrews offers ***nothing*** to support those allegations. They are merely another product of his imagination. Absent "evidence" of collusion or fraud, these contentions must be rejected out-of-hand. *See In re Global*, 225 F.R.D. at 455. Nevertheless, aside from the uncontroverted declarations of counsel already before the Court attesting to the arm's-length nature of the negotiations, and the arduous process leading to the Settlement demonstrates the absence of collusion or fraud, Judge Phillips, who supervised the mediation that led to this Settlement, has now separately attested to the protracted arm's-length negotiations and his role in assisting the parties to reach the Settlement Amount. *See* Declaration of Judge Layn Phillips (Ret.), dated Oct. 2, 2012, annexed as Ex. V to the Supplemental Brower Declaration. This strongly supports the absence of any collusion or fraud.

### c.   "Errors in Pleadings, Missing Count, Error in Prayer for Relief Causing Low Settlement Recovery"

Mr. Andrews contends that Plaintiffs' claim under §20(a) of the Exchange Act was not properly pled. Andrews Obj. at 14. However, as Mr. Andrews may not know, Judge Sweet denied Defendants' motion to dismiss Plaintiffs' §20(a) claim, holding that "control person liability is adequately alleged." *Freudenberg v. E\*TRADE Fin. Corp*., 712 F. Supp. 2d 171, 205 (S.D.N.Y. 2010). To the extent Mr. Andrews meant to refer to §20A under the Exchange Act for insider trading, that claim has numerous limitations, including the requirement that the plaintiff purchased the subject security "contemporaneously" (*i.e*., within, at most, a few days after the insider sold, *In re Take–Two Interactive Sec. Litig*., 551 F. Supp. 2d 247, 310 n.50 (S.D.N.Y. 2008)), and limits recoverable damages from the insider to no more than the profit gained in the violative transaction. 15 U.S.C. §78t-1(b). Here, Plaintiffs alleged in their Amended Complaint that the Individual Defendants received some $13 million in trading proceeds. Thus, assuming Plaintiffs could satisfactorily allege all of the elements of a §20A claim for each and every sale by each of the Individual Defendants, the maximum possible recoverable damages would have increased (at most) from $559 million to $572 million – a relatively small difference that would have provided

no additional negotiating leverage in obtaining more than the Settlement Amount. In fact, however, approximately $10 million of the $13 million in insider sales were not contemporaneous with Plaintiffs' purchases; therefore, the true increase in maximum potential damages would have been approximately $3 million. And Mr. Andrews fails to explain how adding a $3 million claim to the existing $559 million in damages (not to mention his fanciful estimation of over $6 billion in damages, *cf.* Andrews Obj. at 29, *with* Supp. Hammerslough Decl. ¶¶46-54) would have increased the Settlement.[31]

### d. "Slam Dunk Fraud and Insider Trading Evidence Abounds"

Mr. Andrews contends that the Settlement is deficient given the "overwhelming, slam dunk material evidence." Andrews Obj. at 22. However, the "actual reality based evidence" that he bases his proclamation on is nothing more than lengthy quotes from Plaintiffs' Amended Complaint. Obviously those are allegations and not evidence. Moreover, Mr. Andrews' objection does not factor in the evidence (or lack thereof) adduced from the very extensive discovery that was obtained only after the Amended Complaint survived Defendants' motion to dismiss, or Defendants' responses to the allegations that were not permissibly interposed on their FED. R. CIV. P. 12(b)(6) motion. Simply, surviving a motion to dismiss on the pleadings is a long way from a victory at trial.

Had this case been the "slam dunk" that Mr. Andrews suggests – a case, he claims, second only to "Enron and WorldCom and Tyco" – the Department of Justice or the SEC undoubtedly would have intervened (as in Enron, WorldCom, and Tyco) and asserted claims against the Defendants. That did not happen and, unlike the situations with those companies, no one at E*TRADE was charged or convicted of any crimes. Mr. Andrews' "slam dunk" argument is simply more of his baseless hyperbole.

### e. "What About the Auditor?"

---

[31] Mr. Andrews also asks why Plaintiffs did not allege a violation of Rule 14e-3 or §14(e) of the Exchange Act. Andrews Obj. at 20. §14(e) prohibits "fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer." That statute is not applicable here because there was no E*TRADE tender offer. Mr. Andrews similarly asks why Plaintiffs did not allege a RICO claim. Andrews. Obj. at 21. Mr. Andrews is apparently unaware that the PSLRA expressly bars private RICO claims for predicate acts that would otherwise be actionable as securities fraud. *See MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 277 (2d Cir. 2011) (citing 18 U.S.C. §1964(c)).

Mr. Andrews asks a number of questions about why E*TRADE's auditor was not included as a defendant in this case. Andrews Obj. at 27. Again, Mr. Andrews may just be unaware, but courts have made pleading of a §10(b) claim against a company's auditor very difficult. For example, the Second Circuit recently affirmed the dismissal of claims under §10(b) against the outside auditors of hedge funds that invested in Bernard L. Madoff Investment Securities, LLC. *See Meridian Horizon Fund, L.P. v. KPMG (Cayman)*, 11-3311-cv, 11-3725-cv, 2012 U.S. App. LEXIS 14013, *13 (2d Cir. July 10, 2012) (summary order). That decision evidences the difficulty of pleading a §10(b) violation by an outside auditor even where there is a massive "Madoff-like" underlying fraud. To have named E*TRADE's outside auditors, Plaintiffs would need "cogent and compelling" facts to show the auditors knew that E*TRADE's financial statements were false and misleading when they signed off on them, or were reckless in doing so. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 174 (2d Cir. 1998). Plaintiffs simply did not, even after interviewing dozens of confidential witnesses used to draft the Amended Complaint, have the necessary information to make those allegations, and Mr. Andrews does not claim (or even speculate) that he had such information either.

### f.   "Expert's Fake, Maximum Damages Recoverable by the Class at Trial Claim Detailed"

Mr. Andrews claims – without any possible basis – that Plaintiffs have submitted the "intentionally rigged understatement of damages to the class" because it is "[p]ivotal to the success of this rigged settlement." Andrews Obj. at 27. Putting aside his overblown and inappropriate rhetoric,[32] Mr. Andrews' criticisms of Mr. Hammerslough's analysis are not only completely baseless and lacking in the type of scientific rigor that would be required to make such criticisms. Further, his own amateur damage "analysis," in which he claims "$6 billion dollars under *Dura*" (Andrews Obj. at 29), as explained in Mr. Hammerslough's Supplemental Declaration, relies on unsupported assumptions, is economically flawed, and is completely inconsistent with, and contrary to, the well-established economic and legal authorities governing the calculation of

---

[32] *E.g.*, "An absolutely epic deliberate misleading opinion"; "What a con"; "This is the most truly awful, intentionally flawed, misleading, utterly twisted attempted pseudo logic, babble explanation line of bull crap I have ever read in my life"; "Someone is smoking something"; "Is the expert high on crack?"

damages in open-market securities fraud class actions, including, among others, those set forth in *Dura*.

In fact, it appears that the only thing Mr. Andrews did was aggregate all the market price declines between the first alleged partial disclosure (July 25, 2007) and the end of the Class Period (November 12, 2007). As Mr. Hammerslough explains, while such an analysis will render a "market loss" amount, it will ***not*** result in the amount of ***compensable damages*** or even a proper formulation of a "loss" under *Dura*. The Court is respectfully referred to Mr. Hammerslough's Supplemental Declaration for a more detailed response to Mr. Andrews' unsophisticated and indefensible damages analysis. Hammerslough Supp. Decl. ¶¶38-54. Ironically, the materials attached to his objection defeat Mr. Andrews' arguments about the adequacy of the value of the Settlement, as well as demonstrating that his layman's methodology for calculating "damages" in a case of this type is incorrect. First, his own materials demonstrate that (at worst), even using his absurd $6 billion damages figure, the Settlement is well within the range of percentage recoveries.[33] Second, the article he relies on (as well as numerous other articles by the same entity, NERA, *see* Hammerslough Supp. Decl. ¶44 n.18), demonstrates Mr. Andrews' methodology for conjuring up the $6 billion figure is wrong and that Mr. Hammerslough's methodology was correct.[34]

**g.     "More Questions"**

Mr. Andrews again accuses the parties – this time in the form of questions – of, variously, engaging in undisclosed, nefarious arrangements, collusion, and kickbacks. Andrews Obj. at 34-37. Of course, Mr. Andrews offers no facts or evidence to support these allegations. These "questions" do not even rise to the level of a cognizable objection since they do not "provide[] a legal or factual

---

[33] Mr. Andrews repeatedly claims in his objection that the Settlement is inadequate because, according to his damage "calculations" (*i.e.*, $6 billion), the proposed Settlement represents "2% of the maximum recoverable damages at trial." Andrews Obj. at 24. However, even assuming Mr. Andrews is correct (which he is not) and the Settlement is 2% of the maximum recoverable damages, according to the document he attached to his objection from NERA Economic Consulting ("*Recent Trends in Securities Class Action Litigation: 2012 Mid-Year Review*") ("NERA Report"), in securities class action settlements since 1996, the median settlement value as a percentage of investor losses where losses are between $5 billion and $9.999 billion is 1.0%, while the average is 2.0%. *See* NERA Report at 29.

[34] The article relied on by Mr. Andrews explains that the way he calculated his $6 billion in damages is incorrect because if you simply consider market losses, "*any* stock that underperforms the S&P 500 would have 'investor losses' over the period of underperformance." *Id.* (emphasis in original).

29

basis for the alleged insufficiency of the Settlement." *AOL,* 2006 U.S. Dist. LEXIS 17588, *53. By contrast, the sworn declarations submitted by Plaintiffs make clear that Mr. Andrews is, like the would-be objector in the *AOL Time Warner ERISA* litigation, who alleged that the plaintiffs' incentive awards were a kickback scheme, nothing more than "continuing [his] unfortunate attempts to conjure allegations of villainy from thin air." *AOL*, 2008 U.S. Dist. LEXIS 28785, *16-17 ("Especially in light of the sworn declarations to the contrary, the Court refuses to indulge the Objectors' rank speculation.") (citing *In re AOL Time Warner ERISA Litig.*, 2007 U.S. Dist. LEXIS 99769, *11 (S.D.N.Y. Nov. 28, 2007) (characterizing objector's argument as "nothing more than a weak attempt to impute one unrelated firm's alleged illegalities to class counsel")). Since Mr. Andrews engages in nothing more than "rank speculation," this Court should not indulge his imaginings.

### h.    "$559 Million Trojan Horse Settlement"

Mr. Andrews claims that this is "a false $559 Million Trojan Horse Settlement" based on his same shopworn opinion that this is a "slam dunk case." Thus, this claim is as empty as his claim that the case could not be lost. *Supra* §III.C.1d. As to his facial speculation that Plaintiffs' Counsel "appear to have caved in intentionally in this collusive settlement," Andrews Obj. at 38, those assertions are clearly rebutted by the facts set forth in Plaintiffs' prior sworn submissions as well as the accompanying Phillips Declaration, which demonstrate not only the lack of collusion, but the opposite.

Moreover, Mr. Andrews' view that the Individual Defendants should have made a separate contribution to the Settlement is just another example of his unsophisticated, naïve approach to complex litigation. The Settlement here is funded largely by E*TRADE's 12 layers of D&O insurance coverage.[35] The reason it is called "directors' and officers'" insurance coverage is because it is intended to provide coverage for claims against directors and officers, like the Individual Defendants. The Individual Defendants, who did not found E*TRADE or rank among

---

[35] Mr. Andrews claims that there are a number of "unanswered questions" concerning the insurance policies in this Settlement, including the number of layers of insurance. Andrews Obj. at 33. However, the Joint Declaration provides specific detail about the insurance policies, among other things, including the number of layers (12), and how they impacted the Settlement negotiations. Joint Decl. ¶¶152-59. Mr. Andrews' baseless objection should therefore be rejected.

the nation's richest men, were required to agree to yield their insurance coverage to settle this case. In the real world, expecting to obtain payments from individual defendants where substantial insurance coverage exists and the corporation continues to be contractually obligated to indemnify them is unrealistic. Rather, the Individual Defendants, if pressed to make personal settlement contributions, have every incentive to refuse to allow the D&O insurers to settle any claims, continue to litigate (at the expense of the wasting insurance policies), and if they win, the case has cost them nothing, and if they lose, since a finding of fraud at trial would vitiate any coverage under the policies, Plaintiffs would be left trying to recover from their personal assets – assets that would, no doubt, by then be sheltered in bankruptcy or otherwise. Thus, Plaintiffs acted in the best interests of the Settlement Class by being practical and realistic, understanding the long-term risks of different possible strategies, avoiding an uncertain, and potentially Pyrrhic victory years down the line, and choosing to accept a definite (and substantial) recovery now, rather than seeking hypothetical contributions from individuals at some unknown future date. *E.g.*, *Global Crossing*, 225 F.R.D. at 457 (approving settlement based on insurance proceeds and noting that "[t]he objection that the individual defendants should have contributed more to the settlement is largely symbolic").

### i.     "E*TRADE's 'Trojan Horse' Token Contribution"

Mr. Andrews' speculation that E*TRADE has "the wherewithal to kick in a lot more money" to this Settlement appears to be based on a superficial review of E*TRADE's balance sheet, which includes billions of dollars of E*TRADE "assets." However, as Mr. Hammerslough explains, a significant portion of those "assets" are not cash, cash equivalents or other assets that could be monetized to pay a settlement. Hammerslough Supp. Decl. ¶¶6, 57-60. By excluding just some of those accounting entries from E*TRADE's balance sheet, it becomes clear that E*TRADE could not likely make a significantly greater settlement contribution without seriously injuring itself as an operating company. *See id.* ¶¶55-60.[36]

---

[36] Indeed, a meaningfully larger contribution by E*TRADE (whether in settlement or after trial) could potentially impair its ability to operate, raise additional funds, or continue as a going concern. Nor would forcing a Chapter 11 filing by E*TRADE likely result in a better post-petition recovery as upon such a filing, E*TRADE would almost certainly lose its entire core retail brokerage business. Few, if any, investors would want to invest through a brokerage firm that is in bankruptcy. Therefore, any contribution to a

Moreover, as this Court recently held in *Megabus*, even if Mr. Andrews was correct (which he is not), the fact that a "Defendant might be able to withstand a judgment greater than the Settlement Payment, 'standing alone, . . . does not suggest that the settlement is unfair.'" 2012 U.S. Dist. LEXIS 137683, *15 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000) (citing *PaineWebber*, 171 F.R.D. at 129 ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate the settlement is unreasonable or inadequate.")); *see also NASDAQ*, 187 F.R.D. at 477-78 ("While it appears that Defendants, which include some of Wall Street's most successful firms, would be able to pay a very substantial judgment collectively, that fact does not militate against settlement.")). This is especially true "where, as here, the other *Grinnell* factors weigh heavily in favor of settlement approval." *In re Global Crossing,* 225 F.R.D. at 460 (citing *D'Amato*, 236 F.3d at 86 (no abuse of discretion to approve settlement where, despite defendants' ability to withstand higher judgment, settlement was fair in light of other *Grinnell* factors)).

### j.      "The Glaring SEC Omission in Counsels' Declaration"

Mr. Andrews claims that "Counsel is intentionally ignoring and misleading the court," Andrews Obj. at 52, by failing to disclose that "they gained extremely useful and valuable knowledge and information obtained because of the inquiries and correspondence made and initiated by taxpayer funded United States Securities and Exchange Commission," Andrews Obj. at 50. This statement is completely false. Plaintiffs received no assistance whatsoever from the SEC or any other governmental entity. While E*TRADE announced at the end of the Class Period that the SEC had initiated an informal inquiry into matters related to E*TRADE's loan and securities portfolio, there was never any "SEC report," and the SEC's informal inquiry never led to any formal charges or actions by the SEC or any other governmental agency against any of the Defendants. Nor did the SEC share (as is its practice) ***any*** information whatsoever with Plaintiffs'

---

settlement that would impair E*TRADE's ability to continue as a going concern would not be a reasonable business decision by E*TRADE management; rather, management would likely view the risk of any significant contribution to a settlement similarly to how it would view a loss at trial – *i.e.*, a winner take all contest that E*TRADE would have to continue to the bitter end – an end, if Plaintiffs were ultimately successful, still in the bankruptcy courts but with few, if any assets available to pay a judgment and significantly more depleted insurance coverage.

Counsel (or the public) regarding any aspect of its investigation. Thus, Mr. Andrews' accusation that Plaintiffs' Counsel should (or even could) have revealed to the Court "[t]he SEC in this case is counsels' [sic] 'Deep Throat,'" Andrews Obj. at 52, is glaringly baseless.

Mr. Andrews' misconceptions about the sources of the facts alleged in the Amended Complaint may well explain his failure to properly credit Plaintiffs' Counsel's extensive efforts to assemble the evidence they needed to put the case in a position where Defendants were willing to settle in the magnitude reflected by the Settlement. As detailed in the Joint Declaration (Joint Decl. ¶¶24-142), this was not a case where "counsel piled on the hours towards the end," as Mr. Andrews speculates. Andrews Obj. at 57. Rather, as Plaintiffs' opening papers make clear, the organization and review of the 16 million pages of documents was complete before the parties engaged in the first mediation session. Settlement Mem. at 5, 9, 11. By that time, Plaintiffs' Counsel had developed their factual arguments, legal theories, and consulted extensively with their experts, which enabled them to prepare a detailed and well-supported mediation brief and armed them to negotiate from a position of strength and knowledge with Defendants to obtain the $79 million recovery. Joint Decl. ¶¶143-59.

### k.       "Unclaimed Funds"

Mr. Andrews claims that the Settlement is "one big epic failure due to material information being kept above top secret," asking "what happens to any funds that remain in the common fund after distribution." Andrews Obj. at 57. Had Mr. Andrews bothered to read the Stipulation, his question would have been answered, Supp. Brower Decl. ¶42, which is that in the first instance, if economically feasible, any remaining fund will be re-distributed to Settlement Class Members and if or when the amount becomes *de minimis*, the Court will order the remainder be paid to an appropriate charity. *See* Dkt. No. 126, Ex. 1.

### l.       The Fee and Expense Application

Mr. Andrews (like the other objectors) offers no factual or legal basis to challenge Plaintiffs' Counsel's attorneys' fee request under *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), or the other precedents in this Circuit. *See* Fee Br., *passim*. Rather, he speculates that, among other things, Plaintiffs' Counsel have falsified their time records and/or engaged in

overbilling and duplicative billing, Andrews Obj. at 57-61, based solely on his analysis of the number of documents filed on PACER (approximately 118 at the time of the MOU). By ignoring the investigatory and discovery processes that are not reflected on a docket, and assuming the work of counsel is reflected solely in the amount of motion practice, this contention illustrates Mr. Andrews' lack of understanding about complex securities litigation. That, of course, is incorrect. Indeed, the rules seek to force the parties to work cooperatively to resolve disputes without resort to the court. *See* Local Civil Rule 37.2; Individual Practice Rule 3.B. Thus, while there was some discovery motion practice (including a number of hearings before Magistrate Judge Dolinger), the fact that the parties here did not fill up the docket with endless motion practice is to be commended, not criticized. Moreover, as described in great detail in Plaintiffs' prior submissions, Plaintiffs' Counsel spent a substantial amount of time (effectively and efficiently) litigating the claims against the Defendants.

Mr. Andrews also contends that Plaintiffs' Counsel used "artificially inflated rate[s]." Andrews Obj. at 61. To the contrary, as explained in the Joint Declaration, Plaintiffs' Counsel's rates are based on their annual survey of the market rates for practitioners in the field using available sources and are comparable to, and for the most part less than, the reported hourly rates charged by their adversaries. Joint Decl. ¶¶221-22. Plaintiffs' Counsel's billing rates are also addressed at length by Professor Miller (Miller Decl. ¶¶36, 41-58), and Mr. Andrews never mentions or refers to his declaration. Simply, the regular hourly rates of the attorneys and paraprofessionals who worked on this Action, as set forth in Plaintiffs' Counsel's individual firm declarations (Joint Declaration Exs. D & E), have been accepted in other securities and shareholder litigation in this District and elsewhere. *See id.*; *see also* Miller Decl. ¶58.

Mr. Andrews cites an inapposite Ninth Circuit case, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011), which neither was a securities class action nor involved a common fund settlement. Rather, it was a products liability case, and the settlement provided no compensation (*i.e.*, common fund) to class members (unlike here), but only additional disclosures of safety information, a *cy pres* payment to non-profit organizations, and a payment of $800,000 in attorneys' fees to plaintiffs' counsel, which, if not approved by the Court, would revert to

34

defendants (unlike here). In *Bluetooth*, where the fees could not be awarded on a percentage-of-the-fund basis (since there was no fund), the Ninth Circuit was unable to perform a lodestar analysis because the record failed to disclose information about hours and rates. *Id*. at 943. In stark contrast, Plaintiffs' Counsel here have submitted detailed lawyer-by-lawyer information as to the hours devoted to the case and the billing rates of each lawyer and paraprofessional. Furthermore, unlike *Bluetooth*, Plaintiffs' Counsel recovered a $79 million fund for the Settlement Class. Thus, the Ninth Circuit's concern that the *Bluetooth* class received no monetary distribution while counsel would "receive a disproportionate distribution of the settlement," simply does not exist here. *Bluetooth*, 654 F. 3d at 947.

Equally without merit is Mr. Andrews' criticism, based on *Bluetooth*, of the "clear sailing" provision here that requires that Defendants take no position as to Plaintiffs' Counsels' request for attorneys' fees to be paid from the Settlement Fund. Andrews Obj. at 70. In *Bluetooth*, the Ninth Circuit voiced concern over a "clear sailing" provision because the plaintiffs' attorneys' fees were being paid directly by the defendants, and not from a common fund, which the court found carried "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." 654 F.3d at 947. Here, the Defendants are not paying Plaintiffs' Counsel's fees and, even if they successfully challenged the amount Plaintiffs' Counsel requested, unlike *Bluetooth*, the funds would still never revert to Defendants.[37] Moreover, while none of the Ninth Circuit's concerns with the fee arrangement in *Bluetooth* are present here, the Second Circuit took a very different position on a "clear sailing" provision in circumstances similar to *Bluetooth*. *See Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2d Cir. 1985) (with respect to "clear sailing" provisions, Judge Oakes, writing for the majority, stated that "an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the

---

[37] While a defendant in a common fund case like this have no interest in plaintiff's attorneys' fee or expense request (and, indeed, no standing to object to them), the "clear sailing" provision safeguards plaintiff's counsel from a settling defendant's attempts to take retribution against plaintiff's counsel for defendant's prior litigation defeats or for exacting a costly settlement. Thus, in a common fund case, the existence of such a clause evidences a lack of collusion between the parties as plaintiff's counsel in collusion with a defendant to exchange fees for an inadequate settlement would not need a "clear sailing" provision.

plaintiffs do not want to be sandbagged"),[38] *abrogated on other grounds by Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). Thus, in this Circuit, far from being disfavored, "clear sailing" agreements in class actions are routine, Phillips Decl. ¶¶24-25, and generally well-received.[39]

Mr. Andrews also asserts that the "expenses' [sic] gone wild." Andrews Obj. at 61. His colorful illusion aside, "[i]t is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advance to a class." *Flag*, 2010 U.S. Dist. LEXIS 119702, *86. Further, contrary to Mr. Andrews' complaints, Andrews Obj. at 61-71, as explained in Plaintiffs' Counsel's opening papers, the expenses incurred were appropriate and necessary – and, indeed, modest in a case of this magnitude – to the advancement and ultimate resolution of the Action.[40] Joint Decl. ¶¶238-43; Fee Br. at 21-23.

In fact, the majority of Plaintiffs' Counsel's expenses (approximately $207,000) relate to digitizing, maintaining and reviewing the 16 million pages of documents obtained in discovery from defendants and dozens of third-parties. This expense is fully justified by the scope of discovery here, and is comparable to (if not substantially less than) cases with similar size document productions. *E.g., In re Royal Ahold N.V. Sec. & ERISA Litig.*, 1:03-MD-01539 (D. Md.) ($631,092.58 expense relating to 15 million page plus document production and database). It is also substantially less than if Plaintiffs' Counsel had retained an outside vendor to host the materials. *E.g.*, *In re Tyco Int'l Ltd. Sec. Litig.*, MDL 02-1335-PB (D.N.H.) (approximately $14 million expense to maintain review system for 83 million pages of documents).

Plaintiffs' Counsel also spent approximately $81,000 on experts. The only thing Mr.

---

[38] In *Malchman*, an antitrust case where the settlement provided a separate amount for plaintiffs' attorneys' fees and included a "clear sailing" clause, the Second Circuit upheld the clear sailing provision and the District Court's award of attorneys' fees, noting that "settlements of disputes must be encouraged" and "[a]bsent special circumstances, . . . the negotiation of attorneys' fees cannot be excluded from this principle." 761 F.2d at 905 (citations omitted).

[39] *See also Blatt v. Dean Witter Reynolds Intercapital, Inc.*, 732 F.2d 304, 306-07 (2d Cir. 1984) (affirming fee award where the defendant had agreed it would not object to a fee application); *In re Excess Value Ins. Coverage Litig.*, MDL-1339, 2004 U.S. Dist. LEXIS 14822, *35 (S.D.N.Y. July 30, 2004) ("Nor does the so-called 'clear sailing agreement' by Defendants not to oppose Class Counsel's Fee Application bar approval of the Settlement, where, as here, the Court has strictly scrutinized both the process and substance of the Settlement.").

[40] In class action settlements nationwide, litigation expenses average about 2.8% of the total recovery. *Velez v. Novartis Pharms. Corp.*, 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, *67 (S.D.N.Y. Nov. 30, 2010). Here they are approximately 0.7%.

Andrews has to say about this expense is that it should not be reimbursed because of the experts' "purchased and tortured attempts at misleading the class and court in this fixed, bid rigging, self dealing, quid pro quo settlement." Andrews Obj. at 66. Not only did the experts provide services beyond assisting with the Settlement, but as demonstrated above, Mr. Andrews' attempts to malign the Settlement, Plaintiffs' Counsel and their well-respected experts have no merit whatsoever. For those reasons, these obviously necessary expenses should be reimbursed.

Ironically, Mr. Andrews criticizes the amount spent on private investigators. Andrews Obj. at 64. Given Mr. Andrews' (albeit incorrect) "slam dunk" arguments based upon the allegations of the Amended Complaint, this criticism is mystifying. In any event, it was largely the work resulting from identifying, locating, and interviewing confidential witnesses to sufficiently plead the elements of Plaintiffs' claims, including scienter, in the Amended Complaint, Joint Decl. ¶43, that led Judge Sweet to deny Defendants' motion to dismiss, 712 F. Supp. 2d at 197 ("'Plaintiffs' numerous confidential witnesses support a strong inference of a Company-wide culture that, at every level, emphasized increased loan origination volume in derogation of underwriting standards.'") (citation omitted). Plaintiffs' Counsel should hardly be criticized for spending approximately $60,000 to defeat Defendants' motion to dismiss because, if that motion was granted, there likely would have been no recovery in this case.

Mr. Andrews also objects to the per page copying costs. The costs here (which reflect a rate of $0.25 per page) are appropriate, and Courts in this District have approved similar amounts for similar costs. *E.g.*, *Ogilvy Group Swed., AB v. Tiger Telematics, Inc*., 05-CV-8488, 2006 U.S. Dist. LEXIS 54581, *21 (S.D.N.Y. July 20, 2006) ($0.25 per page copying cost reasonable); *LaBounty v. Rivera*, 95-CV-2617, 2000 U.S. Dist. LEXIS 1881, *3 (S.D.N.Y. Feb. 22, 2000) (same).[41]

## IV.   THE *PRO SE* OBJECTORS CANNOT BE COMPENSATED

A *pro se* objector, including one who is also an attorney, cannot recover attorneys' fees or payments for his own time spent on an objection. *E.g.*, *Kay*, 499 U.S. at 438 (a pro se litigant is not entitled to attorneys' fees even if he is an attorney). Nevertheless, objectors Liles, Behar and

---

[41] Mr. Andrews' remaining objections concerning fees and expenses are similarly without merit.

Andrews, who have each appeared *pro se*,[42] and who are each acting on their own behalf as a putative Settlement Class Member,[43] have requested fees or compensation for, apparently, just filing their objections. However, regardless of the outcome of their objections (which Plaintiffs believe should all be rejected in their entirety), these *pro se* objectors are barred from recovering any compensation for those objections.

There can be no dispute that a *pro se* litigant can never recover attorneys' fees since, by definition, there is no attorney representing that party. *Hudson*, 626 F.3d at 38-39 ("[A]n 'attorney' is 'one who is designated to transact business for another' or is 'a legal agent.' An agent is 'a representative'; so Mr. Hudson cannot have acted as an agent for himself").[44] In *Kay*, 499 U.S. at 438, the Supreme Court, noting that there was no dispute that a *pro se* litigant cannot recover attorneys' fees for his efforts, directly rejected the proposition that a pro se litigant who is also an attorney may recover attorneys' fees for his efforts pursuing his claim, reasoning that:

> A rule that authorizes awards of counsel fees to pro se litigants – even if limited to
> those who are members of the bar – would create a disincentive to employ counsel

---

[42] The right to proceed *pro se* in civil actions is guaranteed by 28 U.S.C. §1654. It is well-established, however, that this right to proceed *pro se* does not encompass the right to proceed *pro se* on behalf of the interests of another. *See In re Texaco Inc. S'holder Derivative Litig.*, 123 F. Supp. 2d 169, 172 (S.D.N.Y. 2000), *aff'd*, 28 F. App'x 83 (2d Cir. 2002) (citing *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997); *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990); *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983); *Phillips v. Tobin*, 548 F.2d 408, 411-12 (2d Cir. 1976)). In fact, such a position is self-contradictory because "appearance *pro se* denotes appearance for one's self." *Pridgen*, 113 F.3d at 393.

[43] Mr. Andrews states in his objection that he is appearing *pro se* (Andrews Obj. at 86), Mr. Liles, an attorney, appeared *pro se* and not as an attorney in this matter (Liles Obj. at 4), and Mr. Behar, while claiming that he is represented by counsel, is actually representing himself through his own law firm (Leon I. Behar, PC) (Behar Obj. at 13) so he is considered *pro se* as well. Any attempt by Mr. Behar to hide behind his own law firm's appearance to represent him must also fail as the courts have ignored that veil in refusing to award fees to a pro se litigant who is an attorney who claims to be represented by his own law firm. *E.g.*, *U.S. v. Hudson*, 626 F.3d 36, 38-40 (2d Cir. 2010); *Menton v. Experian Corp.*, 02 Civ. 4687(NRB), 2003 U.S. Dist. LEXIS 3325, *13 (S.D.N.Y. 2003).

[44] *See also Duncan v. Poythress*, 777 F.2d 1508, 1518, 1519 (11th Cir. 1985) (Roney, J., dissenting) (cataloguing the definition of "attorney" from more than two dozen dictionaries and finding that "[w]ithout exception they define the word 'attorney' in terms of someone who acts for *another*, someone who is employed as an agent to represent *another*, someone who acts at the appointment of another") (emphasis in original); *Frisch v. Comm'r*, 87 T.C. 838, 846 (1986) ("An 'attorney' is essentially an agent for another. Without the 'other' there can be no attorney, merely a pro se litigant who happens to earn a living as a lawyer. At any given time, an individual can be either a pro se litigant or an attorney, but not both."); 2A C.J.S. Agency §24 (2010) ("The parties to an agency relationship are the principal and the agent, and an agent cannot exist without a then–existing principal."); BLACK'S LAW DICTIONARY 1341 (9th ed. 2009) (defining pro se to mean "[o]ne who represents oneself in a court proceeding without the assistance of a lawyer").

whenever such a plaintiff considered himself competent to litigate on his own behalf. The statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case.

The Second Circuit has interpreted *Kay* broadly to mean that *pro se* litigants generally are not entitled to recover attorneys' fees for efforts on their own behalf. *See Pietrangelo v. United States Army*, 568 F.3d 341, 344 (2d Cir. 2009) ("Although *Kay* was decided pursuant to [42 U.S.C.] section 1988, its reasoning is not confined to that statute."); *SEC v. Price Waterhouse*, 41 F.3d 805, 808 (2d Cir. 1994) (applying *Kay* and holding that pro se attorneys may not be granted fees).[45] Following *Kay* and Second Circuit precedent, district courts within the Second Circuit have applied the *Kay* rule to deny attorneys' fees to *pro se* litigants who are also attorneys – including cases involving equitable fee awards, rather than statutory fee awards.

For example, in *Texaco*, 123 F. Supp. 2d 169, Judge Brieant denied attorneys' fees to a successful *pro se* objector who was also an attorney. In *Texaco*, the underlying shareholder action was settled by an agreement of Texaco to adopt certain corporate policies in the future and for plaintiffs' counsel to receive for this benefit up to $1.4 million in legal fees. *Id.* at 171. A *pro se* objector appealed the approval of the settlement and award of attorneys' fees, alleging that because the settlement had no value, the award of attorneys' fees should be reversed. The Second Circuit agreed, which resulted in the reversal of an award of $1 million in fees and disbursements to plaintiffs' attorneys. The objector then applied for attorneys' fees for his time successfully defeating plaintiffs' attorneys' fee award. Though the objector's application was also untimely, the court explained that, even if timely, the attorney-objector was nevertheless barred from collecting attorney's fees:

In this case, [the objector] Rand's legal services for which he seeks to be

---

[45] *See also Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 694 (2d Cir. 1998) (holding that a *pro se* attorney plaintiff is not permitted to recover attorney's fees); *SEC*, 41 F.3d at 808 (holding that a *pro se* attorney may not be granted fees); *BD et al., v. DeBuono*, 193 F.R.D. 117, 138 (S.D.N.Y. 2000) (*pro se* attorney litigant is not entitled to apply for attorney's fees); *Burka v. United States HHS*, 142 F.3d 1286, 1291 (D.C. Cir. 1998) ("Burka is not just the plaintiff in this case; he is also the only attorney to enter an appearance. He directed the litigation, argued on his own behalf in district court, and filed the briefs in district court as well as here. Thus, it appears incontrovertible that Burka has been both claimant and counsel. Accordingly, Burka is, by definition, a pro se attorney-litigant and thus is not eligible for attorney's fees. Burka's status as both attorney and litigant may be a 'technicality,' but it is a legally meaningful one and not to be ignored.").

reimbursed were rendered in the context of his pro se Objection to Texaco paying any part of Plaintiffs' legal fees and expenses incurred during the derivative suit. As Mr. Rand states in his declaration dated October 29, 2000 ("Rand Declaration"), "The grounds for the Objection were that the settlement did not constitute a substantial benefit to Texaco shareholders." Rand Declaration at ¶ 8. Because his representation during this stage of the derivative suit entailed interests other than those of Mr. Rand alone, i.e., the interests of the other Texaco shareholders, the action is not validly undertaken by Mr. Rand pro se to the extent he seeks to enforce the rights of others. Consequently, he is not entitled to receive attorney's fees for that representation.

* * *

Within the logic of *Kay* and its progeny, Mr. Rand did not appear in this case as independent, objective counsel. For that reason alone, payment of attorney's fees in a pro se situation ought to be discouraged: even a skilled lawyer who represents himself is at a tactical disadvantage in litigation [because] . . . he is denied the judgment of an independent third party in framing the legal theory of the case, evaluating methods of presenting evidence . . . and so on.

*Id*. at 172-73 ("[t]here is authority in many types of cases for the position that a *pro se* litigant who is also an attorney should not be awarded attorney's fees.") (citing *Kay*, 499 U.S. 432); *see also McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 817-18 (E.D. Wis. 2009) (holding that a *pro se* objector is not entitled to attorneys' fees because he is a *pro se* litigant).

Thus, while Plaintiffs believe they have demonstrated that each of these objector's claims are without merit, to the extent the Court sustains any part of them, none of the three *pro se* objectors – Messrs. Liles, Behar and Andrews – can be compensated for their efforts.

## CONCLUSION

For all of the reasons set forth above and in their other papers submitted in support of the Motions, Plaintiffs respectfully request that the Court overrule the objections submitted by Messrs. Liles, Behar and Andrews, deny them any compensation for filing their objections, and approve the Settlement, the Plan of Allocation, and Plaintiffs' Counsel's request for $554,950.23 in reimbursement of expenses and one-third of the balance of the Settlement Fund as attorneys' fees, together with interest thereon at the same rate as earned on the Settlement Fund until paid.

Dated:  October 4, 2012                    **BROWER PIVEN**
                                                      **A PROFESSIONAL CORPORATION**

                                                      */s/ David A.P. Brower*
                                                      David A.P. Brower
                                                      Brian C. Kerr
                                                      488 Madison Avenue, 8th Floor

New York, NY 10022
T: (212) 501-9000
F: (212) 501-0300

*Lead Counsel for Plaintiffs*

**LEVI & KORSINSKY, LLP**
Eduard Korsinsky
Shannon L. Hopkins
30 Broad Street, 15th Floor
New York, NY 10004
T: (212) 363-7500
F: (212) 363-7171

*Co-Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2012, I served true and correct copies of the foregoing Plaintiffs' Memorandum In Response To Objections And In Further Support Of (1) Plaintiffs' Motion For Final Approval Of Class Notice And Final Certification Of The Class For Purposes Of Settlement, (2) Plaintiffs' Motion For Final Approval Of The Proposed Settlement And The Proposed Plan Of Allocation, And (3) Plaintiffs' Counsel's Motion For An Award Of Attorneys' Fees And Reimbursement Of Litigation Expenses by causing copies to be sent as follows:

By the ECF System and By Electronic Mail

Dennis Glazer
Amelia T.R. Starr
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017

*Attorneys for Defendants*

By Electronic and Regular Mail

Objector Paul Liles
1304 Wakefield Lane
Birmingham, AL 35243

Objector Leon I. Behar
347 Fifth Avenue, Suite 1506
New York, NY 10016

Objector Chris Andrews
23610 Hazen Road
Southfield, MI 48033-2507

Brian Felgoise, Esq.
Felgoise Law Firm
The Pavilion, Suite 518
261 Old York Road, PO Box 706
Jenkintown, PA 19046

*Counsel for Objector Eldon R. Ventris*

　　　　　　　　　　　　　　　　　　　　　　*/s/ David A. P. Brower*＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　　　　David A.P. Brower